MEGAN A. MAITIA (Bar No. 285271)
megan@summaLLP.com
JENNIFER L. WILLIAMS (Bar No. 268782)
jenn@summaLLP.com
SUMMA LLP
1010 Sycamore Avenue, Unit 117
South Pasadena, California 91030
Telephone:  (213) 260-9455/52/56
Facsimile:   (213) 835-0939

Attorneys for Defendant
DOUGLAS J. CHRISMAS

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DOUGLAS J. CHRISMAS,<br><br>　　　　　Defendant. | Case No. 2:21-CR-00127-MCS<br><br>**DEFENDANT'S CONSOLIDATED:**<br><br>**(1) REPLY IN SUPPORT OF DEFENDANT'S MIL 1 TO EXCLUDE 1986 CRIMINAL CASE AND MIL 2 TO EXCLUDE OTHER ACTS; AND**<br><br>**(2) OPPOSITION TO GOVERNMENT'S MIL 4 TO EXCLUDE A "DURESS" DEFENSE and MIL 5 TO "EXCLUDE DEFENSE"**<br><br>**Judge:**　Hon. Mark C. Scarsi<br>**Hearing:**　April 22, 2024<br>**Time:**　3:00 p.m.<br>**Courtroom**: 7C<br><br>**Trial**:　May 7, 2024 |

## TABLE OF CONTENTS

A. The disputed element of the crime charged.......................................1

B. Mr. Chrismas's defense will go to the disputed element
of the crime charged.............................................................................2

C. The Rules of Evidence.........................................................................6

D. The 1986 Criminal Case does not satisfy the requirements of
FRE 609 or 404(b) (Defendant's MIL 1)............................................7

E. The purported "Other Acts" evidence does not satisfy the
requirements of FRE 404(b) or 403 (Defendant's MIL 2). .............9

F. The defense intends to hold the Government to their burden,
 and the Court should reject their efforts to exclude a relevant
defense (Government's MIL 4 and 5)...............................................11

# TABLE OF CONTENTS

**Cases**

*United States v. Charley*, 1 F.4th 637 (9th Cir. 2021) ........................................................... 7

*United States v. Osazuwa*, 564 F.3d 1169 (9th Cir. 2009) ..................................................... 7

**Other Authorities**

Fed. R. Evid. 401 ...................................................................................................................... 6

Fed. R. Evid. 402 ...................................................................................................................... 6

Fed. R. Evid. 403 ................................................................................................................. 6, 7

Fed. R. Evid. 404(b) ................................................................................................................. 7

Fed. R. Evid. 602 ...................................................................................................................... 7

Fed. R. Evid. 608 ...................................................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Before the Court are four motions *in limine*: Defendant's MIL 1 to exclude the 1986 Criminal Case (Dkt. 85) and MIL 2 to exclude "other acts" evidence (Dkt. 86), and the Government's MIL 4 to exclude a "duress" defense (Dkt. 89) and MIL 5 to exclude Mr. Chrismas's anticipated defense in its entirety (Dkt. 91).

In their briefs (Dkt. 87-89, 91), the Government makes inaccurate and absolute statements about the underlying bankruptcy proceeding, which they admittedly never investigated. They misconstrue the embezzlement charges and the corresponding elements they have the burden to prove at trial. They make contradictory arguments about the evidence they intend to introduce (or not introduce) at trial. And they misstate the rules of evidence governing the admissibility of that evidence.

The defense is concerned. The Government seeks to convict Mr. Chrismas by sidestepping their own burden of proof, all the while blocking him from defending himself consistent with the rules of evidence and the due process the law affords. Mr. Chrismas files this consolidated brief regarding the pending motions to ensure this does not happen.

### A. The disputed element of the crime charged.

On March 16, 2021, the Government filed an Indictment charging Mr. Chrismas with three counts of Embezzlement Against a Bankruptcy Estate, 18 U.S.C. § 153. (Dkt. 1.) The "bankruptcy estate" is ACE Gallery, a decades-old and famous art gallery owned by Mr. Chrismas, which filed for Chapter 11 bankruptcy in February 2013.

The three counts in the Indictment reflect three transactions between March 30 and April 1, 2016 when Mr. Chrismas directed $264,595 from ACE Gallery to ACE Museum, a 501(c)(3) nonprofit entity created by Mr. Chrismas that was related to ACE Gallery and had been the focus of the ACE Gallery bankruptcy case for much of the prior three years.

Before a jury can convict Mr. Chrismas, the Government must prove beyond a reasonable doubt that with respect to the March 30 and April 1, 2016 transactions:

> [Mr. Chrismas] knowingly and fraudulently embezzled, spent, transferred, or appropriated to the **Defendant's own use** property belonging to the bankruptcy estate. . . .
>
> The heart of the charge in the indictment is the **knowing and fraudulent** embezzlement or appropriation of property belonging to the Debtor's estate.
>
> "Fraudulent" means to **knowingly deceive or mislead someone, usually for personal gain**.
>
> To "embezzle" or "appropriate" means to **wrongfully take** someone's property and spend it, transfer it, convert it to **personal use, or convert it to someone else's use**.

(Dkt. 45, Joint Proposed Jury Instruction 31 at pp. 35-36, emphasis added.)

According to these jury instructions, along with the knowing, fraudulent, and wrongful nature of the conduct, the Government must also prove that Mr. Chrismas transferred the money with the intent that the money be used for his own **personal use** or **someone else's use**. In other words, they must prove he did not intend the money to be used for ACE Gallery. This is the disputed element at trial and the focus of the defense.

### B. Mr. Chrismas's defense will go to the disputed element of the crime charged.

This entire case stems from a complaint by Sam Leslie (and his team), who was appointed as an independent Trustee for the ACE Gallery bankruptcy estate on April 6, 2016. (Maitia Decl. ¶ 4.) The Government claims (without citation) that the Bankruptcy Court appointed Leslie "due to the embezzlement uncovered by the parties to the bankruptcy case." (Dkt. 91 at 4.) **This is false**. Leslie had been the proposed trustee (or really, "Plan Agent," to oversee the Debtor's "Plan of Reorganization") for months before April 6, 2016, and the order approving his appointment was entered March 18, 2016, before and unrelated to the March 30 and April 2016 transactions charged here. (Maitia Decl. ¶ 5.)

2

DEFENDANT DOUGLAS CHRISMAS'S CONSOLIDATED BRIEF RE: MOTIONS *IN LIMINE*

The Government has admitted that they conducted no independent investigation of the underlying bankruptcy case other than the documents Leslie voluntarily provided. (Maitia Decl. ¶ 6.) A basic investigation would have uncovered a slew of information that undermines the embezzlement charges here. For example:

- (First, necessary background for the examples. ACE Gallery (the Debtor) filed for Chapter 11 relief in February 2013.  That same year, the Creditor's Committee (consisting of the largest unsecured creditors of the Debtor) was appointed to participate in the Chapter 11 procedure. Between February 2013 and Leslie's appointment to implement the Reorganization in March 2016, Mr. Chrismas continued to operate the Debtor and work with the Creditor's Committee.  The Creditor's Committee knew of the Museum and its obligation to the Debtor for loan proceeds the Debtor provided to the Museum before the Chapter 11 petition.)
- On October 17, 2014, the Creditor's Committee (represented by Attorney Victor Sahn, a Government witness) entered a stipulation with ACE Gallery, for ACE Gallery (as the Debtor) to transfer and assign all rights to collect from the Museum on its loan obligation to ACE Gallery. (*See* Dkt. 92, Supplement to Government's MIL 5.[1]) As the defense will establish, the only way for the Committee to collect the loan was to keep the Museum lease (with a critical purchase option) current and active (requiring lease payments).
- On January 22, 2015, Sahn on behalf of the Creditor's Committee filed an amended complaint against ACE Museum in an adversary bankruptcy proceeding (to collect on the Museum loan). The amended complaint identifies the Museum lease and purchase option and alleges: "If ACE Museum is unable to [to fulfill the

---

[1] As part of recent settlement discussions, defense counsel provided this list of evidence to the Government, who was previously unaware of the information. The Government expressly told defense counsel that this information "moved the needle" on their view of the case. When plea negotiations fell apart, the Government moved to exclude the same information.  (Maitia Decl. ¶¶ 8-9, Exhibits A-B; *id*. ¶¶ 10-12, 14.)

terms and conditions of the [Museum] Purchase Option], the ability of the Debtor [ACE Gallery] to get repaid on the obligation owed to it by ACE Museum will end with the expiration of the [Museum] Purchase Option for the ACE Museum Real Property in approximately (71) days." Sahn and the Creditor's Committee made clear that Mr. Chrismas's ability to remain current on the Museum rent was the only way to monetize the Museum purchase option for the benefit of the ACE Gallery bankruptcy estate and its creditors.

- In February 2015, at the request of Sahn on behalf of the Creditor's Committee, ACE Museum executed a secured promissory note and leasehold deed of trust in favor of ACE Gallery and the Creditor's Committee, giving the ACE Gallery bankruptcy estate and the Creditor's Committee a legal interest in the Museum lease and purchase option.

- On February 18, 2015, in a stipulation filed with the Bankruptcy Court, the Creditor's Committee asked the Court to appoint a Receiver over ACE Museum to facilitate the collection of the Museum's debt to the Debtor, which the Committee characterized as a "substantial asset of the Debtor's bankruptcy estate."

- On June 22, 2015, Sahn on behalf of the Creditor's Committee threatened to file an involuntary bankruptcy petition against ACE Museum unless Mr. Chrismas confirmed the Museum rent was paid **that day**. The Museum rent was ultimately paid that day, and so Sahn did not pursue the involuntary bankruptcy petition threat.

- On June 24, 2015, Sahn on behalf of the Creditor's Committee told ACE Gallery counsel that taking "the Ace Museum asset off the table" in global settlement negotiations was a "non-starter" and "not going to lead to a global agreement" (between ACE Gallery and the Creditors Committee) in the bankruptcy case.

- On August 19, 2015, Sahn on behalf of the Creditor's Committee made a global settlement offer to ACE Gallery that required a court-appointed receiver over the

Museum, with the receiver having authority to exercise the Museum purchase option at the behest of the Committee, and that required Mr. Chrismas to obtain an extension of the Museum purchase option "from the landlord on terms which are acceptable to the Committee. This is a condition to confirmation of the Plan."

- On October 15, 2015, Sahn on behalf of the Creditor's Committee subpoenaed the landlord for the Museum, seeking documents and testimony that mostly related to the Museum purchase option.
- On October 16, 2015, Alan Nahmias (counsel for the lead creditor on Creditor's Committee, Eric Wilson) demanded that any settlement required the "approximately $3.5 Million owing by Ace Museum to [ACE Gallery] and the option(s) to acquire the La Brea property on which the Museum is located" as part of the "pool of assets" available to ACE Gallery's creditors.
- On January 22, 2016, Wilson, with the full knowledge of Sahn on behalf of the Creditor's Committee, filed a proof of claim for post-petition loans that Wilson made to the Museum, funds which "were used for the preservation of the [ACE Gallery] estate."

(Maitia Decl. ¶ 8, Exhibit A.)

On March 18, 2016, the Bankruptcy Court confirmed the Plan of Reorganization that appointed Leslie as Plan Agent for ACE Gallery. The day before, on March 17, 2016, Leslie asked Mr. Chrismas if ACE Gallery could use the Museum space, and in fact ACE Gallery occupied (rent free) the Museum space in the years before and after Leslie's appointment. (*Id*.)

After the Plan of Reorganization was confirmed and Leslie was appointed Plan Agent, the Creditor's Committee dissolved, and Victor Sahn became "special counsel" for Leslie (who also had another attorney, all, of course, paid by the estate). Almost immediately, Sahn and Leslie spearheaded criminal referrals against Mr. Chrismas and the years of adversary litigation against Mr. Chrismas, the Museum, and others. Sahn and Leslie and their teams charged millions of dollars for their services, paid for by ACE

Gallery bankruptcy estate. (*Id.*) The defense intends to prove that Sahn, Leslie, and their teams drained the estate of all its money, ensuring that the bankruptcy would never be discharged, and that Mr. Chrismas would never receive ACE Gallery back.

Based on this and additional evidence, the defense intends to prove that the March 30 and April 1, 2016 transactions went to pay the Museum lease to preserve the lease and accompanying purchase option, which everyone agreed was one of the most valuable assets for ACE Gallery. (This conflicts with a typical, and actual, embezzlement case where, say, the money was used to buy personal luxuries.) The defense intends to establish that Mr. Chrismas transferred the money for the use and benefit of ACE Gallery. (Given the Government's switcheroo—agreeing to accept information about the defense strategy as a part of a confidential settlement communication, proclaiming that the information changed the Government's view of the case, and then moving to exclude that same information—the defense will not disclose any other defense specifics here.)

### C.     The Rules of Evidence.

This trial is about one disputed element: whether Mr. Chrismas knowingly and fraudulently embezzled money from the ACE Gallery estate to use for himself or another when he made the March 30 and April 1, 2016 transfers. These rules of evidence govern the pending motions about this disputed element.

**Relevance and Unfair Prejudice.** Evidence is relevant if (a) it has **any** tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Federal Rule of Evidence 401. Relevant evidence is admissible unless the Court determines that its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Rules 402-403.

**Impeachment and Character for Truthfulness.** There is only one way to admit a prior conviction—Rule 609—and the only purpose for admitting a prior conviction is attacking a witness's character for truthfulness. If the elements of Rule 609 are satisfied, then "absent exceptional circumstances, evidence of a prior conviction admitted for

impeachment purposes may not include collateral details and circumstances attendant upon the conviction." *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009). Except for a criminal conviction under Rule 609, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Rule 608 ("But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of [] the witness.").

  **"Other Acts."** The Government is prohibited from offering "character evidence" unless it is offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Rule 404(b). The Government has the burden of proving that proposed evidence satisfies four requirements: (1) that the evidence tends to prove a material point; (2) that the other act is not too remote in time; (3) that the evidence supports a finding that defendant committed the other act; and (4) that the act is similar to the offense charged. *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021). Whatever the "other act" evidence, it can be introduced only through a witness with personal knowledge, *see* Rule 602, and it is always subject to the limits of unfair prejudice. Rule 403.

  **D. The 1986 Criminal Case does not satisfy the requirements of FRE 609 or 404(b) (Defendant's MIL 1).**

  Government now states that it "is not arguing that the 1986 theft case should be introduced via Federal Rule of Evidence 609," but "[n]evertheless, under Rule 404(b), it is still admissible, particularly as impeachment evidence." (Dkt. 87 at p. 2.) The Government then argues that the defense "seems to concede the point" because the 1986 Criminal Case was not addressed in the separate MIL 2 to exclude "other acts" evidence under Rule 404(b). (*Id*.)  The Government is wrong on both points.

  Mr. Chrismas does not concede that the 1986 Criminal Case is admissible under 404(b). Mr. Chrismas did not feel the need to specify this in MIL 2 because: (1) Rule 609 is the sole avenue to admit a prior conviction, and (2) Rule 404(b) has nothing to do with

7
DEFENDANT DOUGLAS CHRISMAS'S CONSOLIDATED BRIEF RE: MOTIONS *IN LIMINE*

impeachment, the Government's purported purpose for introducing the evidence under Rule 404(b). (*Id*.)

The Government finally argues that the 1986 Criminal Case otherwise satisfies the "knowledge" prong of Rule 404(b) because the Government would use the conduct—characterized as stealing "artwork that had been left in his care"—"to establish defendant's knowledge of responsibilities as a gallerist, i.e., his knowledge that art might be left in his care even though it belonged to another individual, and his knowledge that taking such art for his own benefit would be improper." (*Id*. at pp. 2-3.) The Government agrees that the 1986 conduct is old, but "it is also quite similar to the current case: like this case, defendant stole artwork that had been left in his care, so that he could use it for his own purposes. And defendant's guilty plea is certainly sufficient evidence for a jury to reasonably believe that he committed the theft." (*Id*. at p. 3.) The Government is wrong on each argument, any one of which is grounds to overrule their evidentiary position and grant Defendant's MIL 1:

- This case is not about "stolen art" or Mr. Chrismas's responsibilities as a gallerist to his clients or customers. It is about revenue belonging to ACE Gallery that Mr. Chrismas transferred to the Museum while a fiduciary to the gallery's bankruptcy estate, and whether Mr. Chrismas intended to embezzle from the ACE Gallery bankruptcy estate when he made those transfers.[2]

- Forty-year-old theft allegations reflected in a 1986 charging document is irrelevant to Mr. Chrismas's knowledge of and intent to embezzle from a bankruptcy estate. These dated allegations neither prove a material fact nor reflect an act like the charged offense.

---

[2] The Government's argument here is not credible, given their position in response to Defendant's MIL 2: "As for the third category [of "other acts], defendant has identified a non-issue. **The government does not intend to introduce evidence about other ways in which defendant wronged the artists or customers with whom he did business**." (Dkt. 88 at p. 1 (emphasis added).)

8

DEFENDANT DOUGLAS CHRISMAS'S CONSOLIDATED BRIEF RE: MOTIONS *IN LIMINE*

- The Government has no admissible evidence "to support a finding that the defendant committed the other act," as required under Rule 404(b). The plea is a form document provided by the Los Angeles District Attorney's Office, contains no factual basis, and was dismissed 24 years ago. (Maitia Decl. ¶ 13, Exhibit C.) The Government has two online articles dated February and August 1986 (both inadmissible hearsay) and have conducted no other investigation into the matter. They have not sought to interview any witnesses (including the purported victim), nor have they contacted the Los Angeles District Attorney's office or Los Angeles Police Department to determine whether any evidence (testimony or otherwise) about the 1986 conduct exists. (Maitia Decl. ¶ 13.)
- Finally, the "guilty plea" is inadmissible "extrinsic evidence" under Rules 608 and 609.

Because the Government cannot establish that the 1986 Criminal Case is admissible for any purpose, the Court should grant Defendant's MIL 1.

### E. The purported "Other Acts" evidence does not satisfy the requirements of FRE 404(b) or 403 (Defendant's MIL 2).

The Government argues that while they "do not intend to re-litigate the bankruptcy proceedings," "[s]ome context from the bankruptcy proceedings is necessary for the jury to understand defendant's actions, motives, intent, and knowledge." (Dkt. 88 at p. 5.) They then argue that Mr. Chrismas's purported "violations of bankruptcy rules, and evidence of his participation in uncharged financial transactions, are both highly probative of defendant's intent and knowledge." (*Id*. at p. 1.) The Court should see through the Government's tactics here: to have a jury convict Mr. Chrismas for bankruptcy missteps that are irrelevant to the disputed issue: whether in March and April 2016, he transferred $264,595 from ACE Gallery to the Museum with criminal intent necessary to commit **embezzlement**.

***September 2013 email chain (Gov. Trial Ex. 20)*.**[3] In quoting from Exhibit 20, an email chain involving an attorney for the bankruptcy estate, the Government ignores the multiple levels of hearsay, the remote nature, and the unfair prejudice of the communication. Nearly three years before the charged transactions, the attorney is communicating with a third party (not Mr. Chrismas) about unidentified and unspecified prior conversations with Mr. Chrismas regarding a debtor-in-possession (DIP) loan to ACE Gallery. In the end, the attorney **forwards** the email to Mr. Chrismas, with no apparent reply or acknowledgment by Mr. Chrismas. The Government interviewed this attorney **for the first time** in October 2023, just weeks before the then-scheduled trial date and over 10 years after the attorney authored the email. According to the Government's interview memorandum, the attorney "did not independently remember writing [the email] because he did not remember emails that were ten years old." (Maitia Decl. ¶ 3.) The attorney's references to "fraud on the bankruptcy court" will no doubt unfairly influence the jury on the ultimate issue in the case; the email chain will improperly cause the jury to believe that Mr. Chrismas should be convicted here (likely the Government's hope), even though this is an embezzlement case, not a bankruptcy fraud case.[4]

Here, Mr. Chrismas could have both had bankruptcy failures while debtor in possession and still not intended to embezzle the $264,595 from ACE Gallery. The jury should not be tricked into believing otherwise with the unfairly prejudicial nature of Government Exhibit 20.

***2014 uncharged transactions (Gov Exs. 21-23)*.**[5] The 2014 emails and invoices face the same problem. The Government argues that "defendant was advised no later than September 2013 that it would be illegal to transfer estate assets to a third party," and the

---

[3] *See* Dkt. 90 (attaching Government Trial Exhibit 20).

[4] It is also unclear whether the attorney-client privilege at issue in this exchange has been waived.

[5] *See* Dkt. 90 (attaching Government Trial Exhibits 21-23).

10

DEFENDANT DOUGLAS CHRISMAS'S CONSOLIDATED BRIEF RE: MOTIONS *IN LIMINE*

exhibits "show that, in spite of this knowledge, he continued to direct estate assets to a third party." (Dkt. 88 at p. 3.)

The Government again misstates the disputed element. The transfers themselves to the Museum are not enough to convict Mr. Chrismas (if they were, the Government would be doing away with the knowledge and intent element, 18 U.S.C. § 153 would be a strict liability defense, and no trial would be necessary.) Under the law, Mr. Chrismas could have transferred the money to the Museum and done so without the knowing, fraudulent, and wrongful intent to embezzle the funds away from (not for the use of) ACE Gallery. It's the Government's burden to prove otherwise, and they cannot short cut their burden through this backdoor propensity evidence. For these reasons, the Court should grant Defendant's MIL 2.

> **F.   The defense intends to hold the Government to their burden, and the Court should reject their efforts to exclude a relevant defense (Government's MIL 4 and 5).**

The Government's MILs 4 and 5 are an unsubtle attempt to win by default. Defense counsel has made crystal clear that the intended defense is aimed at the disputed element of whether Mr. Chrismas acted with the required criminal purpose and intent. (Maitia Decl. ¶ 12.) Part of that element is whether Mr. Chrismas transferred the money for the use of ACE Gallery (in which case there was no embezzlement) or some other use.

As laid out above (*see supra* Section B), the defense intends to prove that the March 30 and April 1, 2016 transactions were intended to pay the Museum lease to preserve the lease and accompanying purchase option for the benefit and use of ACE Gallery. This is not a "duress" defense, and the Government's MIL 4 addresses a non-issue and should have never been filed. (The defense has no opinion on whether the Court grants or denies MIL 4, so long as the ruling does not impede Mr. Chrismas's ability to defend himself at trial.)

The Government's MIL 5 arguments fare no better. They argue that the Museum lease and purchase options "never belonged to [ACE Gallery] or the bankruptcy estate," and "Defendant's intention of what he might have done with the funds if defendant or Ace

11

Museum was to exercise the purchase option (which never happened) is irrelevant and had no effect on the bankruptcy estate or the bankruptcy case." (Dkt. 91 at p. 1-2.) The Government then argues that any argument that the Museum was for the "eventual benefit" of ACE Gallery is "a factual and legal impossibility" because the Museum had no property interest in the estate, the Museum was a separate and distinct entity from the estate, and the Museum was "under no obligation" to use its assets for the benefit of the estate. (*Id*. pp. 5, 7-8.)

While the Government can make this factual argument to the jury during closing, there are no grounds to exclude it in a pre-trial motion *in limine*. The Government cites no authority that a transfer must go to a legally related entity to overcome a bankruptcy embezzlement charge. The Government's own complaining witnesses—Sam Leslie and Victor Sahn, the same people motivated to have the Government pursue this vindictive prosecution on their behalf—previously **pushed for and obtained** legally binding and enforceable obligations by the Museum for the sole benefit of ACE Gallery. (*See supra* Section B.)

The Government admittedly did not investigate this in the nearly 8 years since Leslie and Sahn first made their gripes against Mr. Chrismas, and the Government's investigative failures (and general lack of knowledge of the facts) is no basis to exclude this defense. The Government's MIL 5 should be denied.

Dated: April 19, 2024

Respectfully submitted,
Summa LLP

 /s/ *Megan A. Matia*
Megan A. Maitia
Jennifer L. Williams

Attorneys for Defendant
DOUGLAS J. CHRISMAS