E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
DAVID W. WILLIAMS (Cal. Bar No. 295204)
Assistant United States Attorneys
    Major Frauds/Appeals Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756/8485
    Facsimile: (213) 894-6265
    Email:   valerie.makarewicz@usdoj.gov
           david.williams3@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>DOUGLAS CHRISMAS<br><br>      Defendant. | No. 2:21-cr-00127-MCS<br><br>GOVERNMENT'S EX PARTE APPLICATION FOR ORDER QUASHING RULE 17(c) SUBPOENAS DEMANDING DOCUMENTS BY MAY 7, 2024; DECLARATION OF VALERIE L. MAKAREWICZ; EXHIBIT<br><br>Trial Date:  May 7, 2024<br>Trial Time:  8:30 a.m.<br>Location:    Courtroom of the Hon. Mark C. Scarsi |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Valerie L. Makarewicz and David W. Williams, hereby files this _ex parte_ Application to Quash Subpoenas issued by defendant DOUGLAS CHRISMAS and demanding documents from the Chapter 11 Bankruptcy Trustee and his attorney by May 7, 2024.

1    This _ex parte_ application is based upon the attached memorandum

2    of points and authorities, the Declaration of AUSA Valerie L.

3    Makarewicz and accompanying exhibit, the files and records in this

4    case, and such further evidence and argument as the Court may permit.

5         The government respectfully requests that any hearing on this

6    application be calendared for 1:00 p.m. on April 29, 2024, when

7    another hearing is scheduled on this case.

8         On April 24, 2024, pursuant to Local Rule 7-19 and the Court's

9    Procedures, the government asked defendant to withdraw the subpoenas

10   at issue, informed defendant of its intention to file this

11   application if he did not, informed counsel as to its deadline for an

12   opposition, and requested his position, which is as follows:

13        In my April 17 email to you, I asked if the Government had
          reviewed materials in Leslie, Sahn, and Dye's possession
14        for Brady and, if not, I asked that the Government conduct
          that review.  David responded on April 18: "We believe we
15        have produced any exculpatory material and information,
          because we have produced everything in our possession. We
16        do not believe that documents in the possession of Leslie,
          Sahn, and/or Dye 'extends to the government.'" You do not
17        have and apparently never sought any bankruptcy billing
          records from the complaining witness, which go to bias, and
18        which is always relevant and admissible through extrinsic
          evidence.

19

20    Dated: April 25, 2024          Respectfully submitted,

21                                   E. MARTIN ESTRADA
                                     United States Attorney
22                                   MACK E. JENKINS
                                     Assistant United States Attorney
23                                   Chief, Criminal Division

24

25

26                                   _____
                                     VALERIE L. MAKAREWICZ
27                                   DAVID W. WILLIAMS
                                     Assistant United States Attorneys
28
                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

2

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3     The government hereby applies <u>ex parte</u> for an order quashing the

4 Federal Rule of Criminal Procedure 17(c) subpoenas (the "Subpoenas")

5 that the defense served[1] on the Chapter 11 trustee in defendant's

6 bankruptcy case, Sam Leslie, his accounting firm, LEA Accountancy,

7 and his attorney, Carolyn Dye, which has a compliance deadline of May

8 7, 2024. A copy of the subpoenas is attached as Exhibit A to the

9 Declaration of AUSA Valerie L. Makarewicz, ¶ 2.

10    To obtain a Rule 17(c) subpoena a defendant must show, among

11 other things, that the subpoenaed documents "are not otherwise

12 procurable reasonably in advance of trial by exercise of due

13 diligence." <u>United States v. Nixon</u>, 418 U.S. 683, 699-700 (1974).

14 Here, even assuming the defense is subpoenaing "evidentiary and

15 relevant" documents in "good faith," as it must under Rule 17(c), <u>see</u>

16 <u>id.</u>, he cannot make the necessary showing of reasonable due

17 diligence.

18    Defendant's fishing expedition, seeking broad swaths of

19 documents spanning more than a decade of financial records, is just

20 an improper attempt to delay trial.

21 **II.   FACTS**

22    On April 25, 2024, counsel for the Chapter 11 Trustee in

23 defendant's bankruptcy case, <u>In re Art & Architecture Books of the</u>

24 <u>21st Century</u>, Case No. 2:13-bk-14135, received an email from defense

25 counsel that attached three subpoenas, for testimony and for

26

27 _____

28     [1] There is a question as to whether the subpoenas were actually
served—defense counsel informed the government that it emailed the
subpoenas to counsel informally but will serve them.

3

1  documents.  See Exhibit A.  The deadline for compliance with these

2  subpoenas is May 7, 2024, the trial date.

3      The subpoenas seek such categories as (1) "All records and

4  communications reflecting any billing records, invoices, and payments

5  received in connection with the chapter 11 bankruptcy," and (2) "All

6  communications . . . with any other person about Mr. Chrismas,

7  including" -- but apparently not limited to -- "regarding the above-

8  referenced bankruptcy proceedings and this pending criminal case."

9  Ex. A.

10 **III. ARGUMENT**

11     **A.    The United States Has Standing to Quash the Subpoenas**

12     A party to a criminal case "has standing to move to quash a

13 subpoena addressed to another if the subpoena infringes upon the

14 movant's legitimate interests." United States v. Raineri, 670 F.2d

15 702, 712 (7th Cir. 1982) (citing In re Grand Jury, 619 F.2d 1022,

16 1027 (3d Cir. 1980)).  Federal courts have recognized the

17 government's legitimate interest in quashing a defendant's subpoena

18 based upon preventing an undue lengthening of the trial, undue

19 harassment of a witness, and prejudicial over-emphasis on a witness's

20 credibility.  See, e.g., id.; United States v. Segal, 276 F. Supp. 2d

21 896, 900 (N.D. Ill. 2003); United States v. Orena, 883 F. Supp. 849,

22 869 (E.D.N.Y. 1995); United States v. Jenkins, 895 F. Supp. 1389,

23 1393 (D. Haw. 1995).

24     Here, the government has standing based on its interest in the

25 proper and efficient resolution of defendant's trial in this matter,

26 particularly where, as here, the subpoena is directed at

27 communications between the subpoenaed parties and the government.

28 See, e.g., United States v. Hughes, 895 F.2d 1135, 1145-46 (6th Cir.

1990) (district court properly granted government's motion to strike
Rule 17(c) subpoena to third party for pharmaceutical invoices "on
the grounds that the requested documents were not relevant or
admissible at trial, that the defendant was engaging in a 'fishing
expedition,' and that the subpoena was oppressive and unreasonable");
United States v. Vasquez, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009)
(finding that the government had standing to challenge the
defendant's subpoena to county police department based in part on the
fact that the government had a legitimate interest in preventing the
defendant from using a subpoena to obtain discovery materials that
would otherwise be protected from disclosure); United States v.
Smith, 245 F.R.D. 605, 611 (N.D. Ohio 2007) (finding that the
government had standing to challenge the defendant's subpoena to a
Catholic Diocese for records of a Diocese Bishop where the Bishop was
a government witness).

Furthermore, standing is really a "non-issue" because the Court
has a separate and independent "'interest in preserving the proper
procedure prescribed by the Rules of Criminal Procedure, irrespective
of the desires of the parties.'" United States v. Whittig, 250
F.R.D. 548, 551 (D. Kan. 2008) (citations omitted). "The Court must
ensure that Rule 17(c) does not become a means of conducting general
discovery, which is not permitted in criminal cases." Id. The Court
can withdraw the subpoenas on its own, irrespective of the
government's standing. See Bowman Diary Co. v. United States, 341
U.S. 214, 221 (1951) ("[t]he burden is on the court to see that the
subpoena is good in its entirety and it is not upon the [subpoenaed
party] to cull the good from the bad"). Rule 17 subpoenas are issued
under the Court's own power -- signed by the Clerk of Court -- so

"[r]egardless of the government's position, the Court is required to examine the subpoena for compliance with the test set forth in [United States v.] Nixon," 418 U.S. 683 (1974).  Wittig, 250 F.R.D. at 551.

**B.   General Requirements for a Rule 17 Subpoena**

Rule 17 of the Federal Rules of Criminal Procedure provides for the issuance of subpoenas to compel the testimony of witnesses at criminal proceedings and the production of evidentiary documents. Fed. R. Crim. P. 17.  A subpoena duces tecum issued under Rule 17, however, has a limited purpose: to procure evidence that will be introduced at the attendant proceeding, usually trial.  United States v. Nixon, 418 U.S. 683, 698-99 (1974).

In Nixon, the Supreme Court held that the proponent of the subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  Id. at 700.  As courts have noted, the failure to show relevance, admissibility, and specificity indicates that the requested Rule 17 subpoena is an impermissible fishing expedition. See, e.g., United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.").

Even upon a showing that the subpoena seeks relevant, admissible, and specific evidence, if the subpoenaing party requests pretrial production, a court must also consider whether the materials are "(2) . . . not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in

advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" Nixon, 418 U.S. at 699-700.  The burden is on the defendant to show that information that could potentially be disclosed in the discovery process is not otherwise reasonably procurable in advance of trial.  Id. at 699; see also United States v. Beckford, 964 F. Supp. 1010, 1032 (E.D. Va. 1997) (materials subject to disclosure in discovery are not materials that are "not otherwise procurable reasonably in advance of trial").

Courts have long held that, given the detailed rules set forth in Rule 16 of the Federal Rules of Criminal Procedure regarding the government's disclosure obligations before and during trial, a defendant may not circumvent Rule 16 by seeking broader discovery through the use of Rule 17(c) subpoenas.  As the Supreme Court long ago made clear in Bowman Dairy, "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. . . .  Rule 17(c) was not intended to provide an additional means of discovery."  341 U.S. 214, 220 (1951).  As a result, Rule 17(c) subpoenas in general are not proper if "intended as a general 'fishing expedition.'"  Nixon, 418 U.S. at 700; accord United States v. Reed, 726 F.2d 570, 577 (9th Cir. 1984) ("Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'").  "[Rule 17's] chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."  Bowman Dairy, 341 U.S. at 220.  Hence, any attempt to justify the subpoena as a method in order to obtain documents and

objects "material to preparing the defense" pursuant to Rule 16(a)(1)(E)(i), fails.

Upon the filing of a motion to quash, it is the defendant's burden to show the requested documents are relevant, admissible, and the request is sufficiently specific. <u>Nixon</u>, 418 U.S. at 700. Courts in this District routinely quash subpoenas upon motion by the government -- or refuse to issue subpoenas upon application by the defense -- for failure to meet the above requirements of Rule 17. <u>See, e.g.</u>, <u>United States v. Norris</u>, CR 12-450-JFW (Dkt. 28) (denying <u>ex parte</u> application requesting issuance of subpoenas seeking "entire categories of documents instead of specific documents" without any showing of relevancy); <u>United States v. Murillo</u>, CR 05-1111(A)-RGK (Dkt. 493) (granting government's motion to quash subpoenas issued to wide range of institutions seeking materials related to a confidential informant and a government witness because "[a] criminal defendant cannot use subpoenas to circumvent the discovery limitations of Rule 16"); <u>United States v. Roach, et al.</u>, CR 12-165-PSG (Dkt. 49) (granting government's motion to quash Rule 17(c) defense subpoenas filed under seal and <u>in camera</u>); <u>United States v. Sasenick et al.</u>, CR 11-442-PA (Dkt. 311, 313) (granting government's motion to quash subpoenas issued to a third party and challenged by the government as an impermissible fishing expedition); <u>United States v. Krug</u>, CR 09-1148-GHK (Dkt. 139) (granting government's motion to quash subpoenas challenged by the government as requesting documents outside the scope of Rule 17(c)).

**C.   The Court Should Quash the Subpoenas**

The subpoenas should be quashed for several reasons.

The documents requested are not relevant, admissible, or requested with any specificity, as required under Nixon.  As an initial matter, the Chapter 11 Trustee was not appointed until April 6, 2016, which is also the date that he took control and possession of Ace Gallery.  He has no firsthand, direct knowledge of the charged conduct against defendant.  As such, the billing records requested by defendant to all three parties are neither relevant nor admissible.

The next category of documents pertain to Eric Wilson, one of the main creditors in the bankruptcy, his son, Ian Wilson, and Alan Nahmais, Wilson's attorney.  Defendant seeks all communications with these individuals with the Chapter 11 trustee, as well as all business records of the debtor Ace Gallery in the Chapter 11 trustee's possession regarding art purchased/sold/consigned by Wilson.  None of the charges pending against defendant have anything to do with Wilson, his son, or his attorney.  Furthermore, the request is overbroad.

The final category of documents seeks for all communications of the Chapter 11 Trustee with anyone in the course of the bankruptcy regarding the pending criminal case.  This category could not be more overbroad and without specificity—-this is genuinely a fishing expedition and not made in good faith.

This overbreadth is pertinent (particularly in light of the inadmissibility or irrelevance of the requested documents) because it "infringes upon the [government's] legitimate interests" in a prompt resolution of the case.  See Raineri, 670 F.2d at 712.  That is, even if the subpoenaed individuals can comply by May 7, defendant will inevitably ask for a continuance at that time in order to review the (almost certainly) voluminous records he would receive.

1      Even if defendant could surpass the requirements of Rule 17(c)
2  and Nixon, which he cannot, defendant cannot meet his burden to show
3  that the materials could have otherwise been procured reasonably in
4  advance of trial by the exercise of due diligence.  The trial
5  subpoenas were issued 13 days before trial.  This matter has been
6  pending before the Court for four years.  Counsel substituted in this
7  matter in January 2024.  These subpoenas are an abuse of Rule 17 and
8  were issued to delay the commencement of defendant's trial.  Rule 17
9  trial subpoenas are not intended to be a discovery tool, which these
10 subpoenas clearly are intended to be.[2]

11 **IV.  CONCLUSION**

12     For these reasons, the subpoenas should be quashed.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

27     [2] The items requested were not intended to be used by defendant
   at trial, but rather, an anticipated Motion to Dismiss Indictment
28 based on alleged government bias by defendant.  This is evident in
   defendant's discovery motion filed on April 24, 2024, Docket No. 97.