E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
DAVID W. WILLIAMS (Cal. Bar No. 295204)
Assistant United States Attorneys
    Major Frauds/Appeals Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756/8485
    Facsimile: (213) 894-6265
    Email:   valerie.makarewicz@usdoj.gov
            david.williams3@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-cr-00127-MCS |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S BRIEF CONCERNING TESTIMONY BY/IMPEACHMENT OF SAM LESLIE |
| v. | |
| DOUGLAS CHRISMAS | Trial Date:  May 28, 2024 |
| Defendant. | Trial Time:  8:30 a.m.<br>Location:   Courtroom of the<br>          Hon. Mark C.<br>          Scarsi |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Valerie L. Makarewicz and David W. Williams, hereby submits the Government's Opposition to Defendant's Brief Concerning Sam Leslie.

///

///

///

This opposition is supported by the accompanying memorandum of points and authorities, the files and records in this case, and such further evidence and arguments as the Court may permit.

Dated: May 6, 2024                    Respectfully submitted,

                                      E. MARTIN ESTRADA
                                      United States Attorney

                                      MACK E. JENKINS
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                      */s/ David W. Williams*
                                      VALERIE L. MAKAREWICZ
                                      DAVID W. WILLIAMS
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

1

2                    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

3    **I.    INTRODUCTION**

4        A criminal defendant may attempt to discredit the investigation

5    against him.  So, defendant here can call Sam Leslie as a witness --

6    but only to the extent that Leslie can offer admissible non-hearsay

7    information about the investigation.  If he has no such information,

8    his testimony would not satisfy Rule of Evidence 402, 403, or 607.

9        As defendant complains, though, the government did not interview

10   Leslie before filing the indictment.  (<u>See</u> ECF 109 ("Leslie Br.") at

11   7.)  The case also was not presented to the grand jury because of

12   Leslie.  So it is unclear what admissible non-hearsay testimony

13   Leslie could possibly offer about the criminal investigation.

14   Defendant's brief on the issue does not shed any light as to what

15   that testimony might be.  (<u>Id.</u> at 6–7.)

16       In spite of his written position -- that he wants to call Leslie

17   to discredit the investigation (Leslie Br. at 4) -- defense counsel

18   indicated during a status conference on April 29, 2024, that they

19   plan to call Leslie for the sole purpose of impeaching him and

20   attempting to show that Leslie is personally biased.  It therefore

21   seems that defendant actually wants to argue for an acquittal based

22   on Leslie's supposed bias, regardless of whether or not Leslie was

23   involved in the government's investigation.

24       Defendant cannot do that; parties cannot call witnesses solely

25   to impeach them.  Whether under Rule 402 or Rule 403 or Rule 607 --

26   or all of them -- Leslie should not be permitted to testify unless

27   and until defendant points to specific information about the criminal

28   investigation that Leslie can provide.

                                        3

## II.   RELEVANT PROCEEDINGS

The government previously described the relevant procedural history in detail in its opposition to defendant's request for grand jury materials.  (See ECF 101.)

In short, defendant embezzled $264,595.32 from the bankruptcy estate of Ace Gallery in three transactions on March 30 and April 1, 2016.  He directed Ace Gallery's money to both (a) Ace Museum's bank account and (b) Ace Museum's landlord's bank account.  Because Ace Museum was an unaffiliated entity (but controlled by defendant), these transfers stole the money away from Ace Gallery's creditors.

About a week later, defendant was replaced as an independent trustee of the bankruptcy estate by Sam Leslie.  Leslie discovered the embezzlement almost immediately, and sent a letter to defendant on April 18, 2016, demanding an explanation.  (See D. Williams Decl., ¶ 4; Trial Ex. 27.)  Leslie identified the three transfers to Ace Museum, explained that he was "willing to give you an opportunity to explain these transactions," but "cannot imagine any legitimate purpose," given that "only a week later," Ace Gallery's own "payroll had to be met, rent . . . had not been paid, and . . . the bank account had insufficient funds . . . ."  (Id.)

Later in 2016, Leslie filed more formal allegations with the bankruptcy court on behalf of the estate, alleging that defendant had embezzled and stolen millions of dollars in the preceding three years.  The Office of the United States Trustee also referred the matter to the United States Attorney's Office in August 2016. (ECF 101, Ex. A.)

The bankruptcy judge eventually referred the matter to the United States Attorney's Office for prosecution too, but not until

4

1    February 2019, after Leslie had submitted significant supporting

2    documentation to the court.  The judge indicated in his referral

3    letter that he had decided to make the referral to the United States

4    Attorney's Office "based on reasonable grounds that Douglas James

5    Chrismas . . . committed [violations of the criminal bankruptcy

6    statutes]."  (ECF 101, Ex. B.)

7         In December 2019, the bankruptcy judge also found "substantial

8    probative evidence in support of [Leslie's] allegations of fraud by

9    Chrismas."  (See ECF 101; In re Art & Architecture Books of 21st

10   Century, No. 2:13-BK-14135-RK, 2019 WL 9243053, at *5 (Bankr. C.D.

11   Cal. Dec. 6, 2019).)

12        The government took no substantive action in response to

13   Leslie's allegations in 2016.  As reflected in discovery provided to

14   defendant, members of the FBI and the United States Attorney's Office

15   were informed of the allegations and held some preliminary

16   discussions between 2016 and early 2020.  But neither the United

17   States Attorney's Office nor the FBI formally opened a case until

18   August 2020, after the bankruptcy court itself had referred the

19   matter for prosecution and also found that defendant had engaged in

20   fraud.  (D. Williams Decl. ¶¶ 2-3.)

21        In other words, as the government has previously explained, the

22   timeline simply does not support defendant's assumption that Leslie

23   was the "complaining witness."  (See Leslie Br. at 4 (arguing that

24   biases of a "complaining witness" cast doubt on the investigation).)

25        The government did not pursue Leslie's allegations until after

26   the bankruptcy judge had made its own referral (in February 2019) and

27   findings (in December 2019).  So, to the extent someone could be

28

1  denominated as the "complaining witness," that someone was the

2  bankruptcy judge himself.

3  **III.  ARGUMENT**

4      **A.  Rule 607 Does Not Permit Parties to Call Witnesses Solely to Impeach Them**

5        Federal Rule of Evidence 607 provides that "[a]ny party,

6  including the party that called the witness, may attack the witness's

7  credibility."  But "[i]mpeachment evidence is to be used solely for

8  the purpose of impeachment, and it may not be used as a mere

9  subterfuge to get before the jury evidence not otherwise admissible."

10  United States v. Johnson, 802 F.2d 1459, 1466 (D.C. Cir. 1986)

11  (cleaned up).  In other words, "[i]mpeachment is not permitted where

12  it is employed as a guise for submitting to the jury substantive

13  evidence that is otherwise unavailable."  United States v. Gomez-

14  Gallardo, 915 F.2d 553, 556 (9th Cir. 1990) (cleaned up).  In fact,

15  "[b]ecause of the recognized conceptual difficulties juries may have

16  in distinguishing testimony admissible for impeachment from testimony

17  admissible for its substance, 'the maximum legitimate effect of the

18  impeaching testimony can never be more than the cancellation of the

19  adverse answer by which the party is surprised.'"  United States v.

20  Crouch, 731 F.2d 621, 623 (9th Cir. 1984) (quoting United States v.

21  Ragghianti, 560 F.2d 1376, 1381 (9th Cir. 1977).).

22        The Court can and should preclude the defense from calling any

23  witness for the sole purpose of impeaching him.  Beasley v. United

24  States, 218 F.2d 366, 368 (D.C. Cir. 1954) ("defense may not call a

25  witness who has not testified merely to attempt to discredit him in

26  the course of eliciting adverse testimony"); accord United States v.

27  Libby, 475 F. Supp. 2d 73, 80-84 (D.D.C. 2007) (barring the defense

28

from impeaching its own witnesses with hearsay statements); United States v. Gilbert, 57 F.3d 709, 711 (9th Cir. 1995) ("Impeachment is improper when employed as a guise to present substantive evidence to the jury that would be otherwise inadmissible."); Fong Lum Kwai v. United States, 49 F.2d 19, 20 (9th Cir. 1931) ("It is a fundamental rule of evidence that a party cannot call a witness for the sole purpose of impeaching him . . .") (citing Hickory v. United States, 151 U.S. 303, 309 (1894)).

There is no legitimate reason for defendant to call Leslie. Defense counsel has not identified any admissible evidence known by Leslie about the government's investigation, so he cannot claim that Leslie's testimony will "establish doubt about the Government's investigation." (Leslie Br. at 4.) All he is really seeking to do is tell the jury that someone else made money, potentially at his expense, during the bankruptcy proceedings. (Leslie Br. at 2 (arguing that Leslie had "a financial interest in characterizing the charged transactions as unlawful").)

Doing so might suggest to the jury that defendant has been civilly wronged by Leslie in the bankruptcy proceedings. But defendant has offered no reason to link Leslie's purported profits to the government's criminal investigation.

To the extent defendant wants to show that the government did not thoroughly interview Leslie, and that failing to do so was a defect in the investigation, it can do so by examining the law enforcement witness(es) who might testify. But Leslie himself -- by virtue of the fact that he was not the government's focus of investigation -- has no firsthand knowledge of the government's investigation. The only possible reason to call him, then, is to

argue that he was personally biased.  And the personal bias of a private individual, who was not part of the investigation, is not admissible evidence.  See Gomez- Gallardo, 915 F.2d at 556.

### B.   Kyles v. Whitley Does Not Help Defendant

Defendant relies almost exclusively on Kyles v. Whitley, 514 U.S. 419 (1995) for the argument that he may call a witness "to establish that the government's case is premised on a biased complaint."  (Leslie Br. at 7.)  That case does not help him here, though.

In Kyles, the state of Louisiana charged Kyles with capital murder and suppressed evidence about (among other things) someone named "Beanie."  On a Thursday afternoon in September 1984, as the murder victim "put her grocery bags into the trunk of her red Ford LTD, a man accosted her and after a short struggle drew a revolver, fired into her left temple, and killed her.  The gunman took [her] keys and drove away in the LTD."  Kyles, 514 U.S. at 423.

The police had no leads until the following Saturday, when Beanie called the police and reported that he had bought a red Thunderbird from a friend named Curtis Kyles on Thursday, the day of the murder.  Id.  Beanie then met with police and changed his story, saying that he actually bought a red LTD, and didn't do so until Friday.  He also expressed concern that he might be a suspect in the murder -- claiming he heard about the crime on the news -- because he had been seen driving the murder victim's car on Friday.  Id. at 425.

The police then used Beanie to investigate the case.  Beanie went to Kyles' apartment repeatedly without being surveilled by the police.  Id. at 427-28.  Following Beanie's visits, and apparently at Beanie's suggestion, police executed a warrant on Kyles' apartment

1    and recovered the murder weapon, along with some of the murder

2    victim's possessions.  Id. at 427-28.  At trial, defense counsel

3    argued that Beanie had planted the evidence.  Id. at 429.  But it did

4    not call Beanie himself, because the prosecution did not reveal

5    Beanie's statements -- including some that were self-contradictory or

6    otherwise implicated Beanie as the killer.  Id. at 446.

7         While nowhere near being a holding of the case, the Supreme

8    Court recognized that Beanie could have been called as a defense

9    witness, and he may well have been called if Louisiana had not

10   suppressed all of the evidence pointing to Beanie's own culpability.

11   Id.; see id. at 445 ("If the defense had called Beanie as an adverse

12   witness, he could not have said anything of any significance without

13   being trapped by his inconsistencies.")

14        Here, defendant says Kyles should allow him to call Leslie,

15   because defendants are allowed to put on evidence of a negligent or

16   defective investigation.[1]  (Leslie Br. at 6-7.)  But the government

17   is not disputing his ability to critique the investigation.

18        Rather, the dispute is about how that critique can be made.

19   Defendant must use admissible evidence.  Beanie could have been

20   called as a witness because he had relevant firsthand knowledge:  he

21   said he bought the victim's car from Kyles, thereby linking Kyles to

22   the murder.  He also told police that Kyles carried weapons like

23   those used in the murder, provided numerous inconsistent statements

24

25

26        [1] Defendant fails to identify any federal crime for which the
     United States could have had jurisdiction to investigate Leslie -- the
27   crimes at issue, embezzlement from a bankruptcy estate, was
     indisputably committed by defendant, and any alleged unjust
28   enrichment (a claim belied by the fact that the bankruptcy judge
     approved Leslie's fee requests) is not within federal jurisdiction.

about his own culpability, and had the means, motive, and opportunity to plant evidence against Kyles.

Unsurprisingly, the prosecutor in that case admitted that "Beanie was essential to its investigation and, indeed, 'made the case' against Kyles." <u>Kyles</u>, 514 U.S. at 445. And the defense attorney could have even asked Beanie point blank, "Did you commit the murder," then pinned him down as a likely killer based on his contradictory and self-incriminating statements and behavior.

Here, though, Leslie was not a percipient witness. Leslie knows nothing about the crime itself, apart from what he has seen in financial documents reviewed after the fact. Defendant vigorously claims that the government's case "was 'made' on" Leslie, just like the <u>Kyles</u> case was "made on" Beanie. (<u>Id.</u> at 6.) But it wasn't. The government's case was "made on" business records and financial transactions that were completed before Leslie even came onto the scene.

To this end: if defendant wants to call Leslie, and ask about any communications between Leslie and the government, that might be permissible. (At least, if he can identify such communications.)

Defendant cannot call Leslie, hear that he was uninvolved in the investigation, and then nevertheless impeach Leslie with a decades' worth of billing records. That would only tell the jury that bankruptcy professionals can make money -- which has nothing to do with this case.

### C.   Leslie's Testimony Should Be Excluded Under Rule 403

The Court should also exclude Leslie's testimony because it will be unduly prejudicial, confuse the issues, mislead the jury, unduly delay proceedings, waste time, and/or needlessly present cumulative

evidence.  <u>See</u> Fed. R. Evid. 403; <u>United States v. Olsen</u>, 704 F.3d 1172, 1184 n.4 (9th Cir. 2013) (holding that evidence potentially admissible under 608(b) is "subject . . . to the balancing analysis of Rule 403").

If defendant asks Leslie about the investigation, the government will be permitted to ask Leslie <u>why</u> he alleged fraud.  And Leslie was not actually motivated by any improper bias; rather, he alleged fraud because (as the bankruptcy judge also found) defendant stole millions from Ace Gallery's bankruptcy estate.[2]

Once the jury knows that, though, the parties would be required to explain the entire multi-million-dollar bankruptcy fraud.  The parties would need to put on evidence concerning dozens of uncharged transactions that occurred years before the charged conduct.  The probative value of any testimony by Leslie would therefore be substantially outweighed by all the other factors of Rule 403.[3]

---

[2] At the least, the Court should require defendant to make some offer of proof as to the basis of Leslie's supposed bias.  Generic allegations of financial motives are not enough.  To the best of government counsel's knowledge, the filing or success of a criminal case would have no financial consequences either way for a bankruptcy trustee.

[3] This is particularly true because defendant can introduce evidence about the investigation through other witnesses.  For instance, it can ask law enforcement officers why they investigated the case, what they considered, who they spoke to, etc.

## DECLARATION OF DAVID W. WILLIAMS

I, David W. Williams, declare as follow:

1.    I am one of the Assistant United States Attorneys assigned to United States v. Chrismas, 2:21-cr-127-MCS.  I was assigned to this case around December 2022.

2.    I have reviewed my office's internal tracking system for this case.  That tracking system shows that the United States Attorney's Office formally opened this matter in August 2020.

3.    I have also reviewed the discovery produced to defendant, including USAO_7927 through USAO_7931.  Those pages contain FBI "Serial 1," which was written in August 2020 "[t]o initiate captioned investigation."

4.    I have attached a potential trial exhibit to this declaration.  **Trial Exhibit 27** is a letter sent to defendant on April 18, 2016, by Sam Leslie.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on May 6, 2024.

David W. Williams

Trial Exhibit 27

**SAM S. LESLIE, as Plan Agent**

April 18, 2016

Art and Architecture Books of the 21st Century
Attn: Douglas Chrismas
55114 Wilshire Blvd.
Suite 200
Los Angeles, CA 90036

      Re:    Art and Architecture Books of the 21st Century;
              <u>Chapter 11 Case No. 2:13-bk-14135-RK</u>

Dear Douglas,

      It has come to my attention that on two occasions, both on March 30, 2016, you apparently diverted money from ACE Gallery to ACE Museum. The two transactions were a check written on March 30, 2016 from ACE Gallery to ACE Museum for $50,000 and a $100,000 wire you directed to be sent to ACE Museum from the sale of artwork by ACE Gallery. I have also learned that on March 30, you also directed a buyer of artwork to pay approximately $114,000 directly to the landlord for the ACE Museum. Although I am willing to give you an opportunity to explain these transactions, I frankly cannot imagine any legitimate purpose for these transactions. The documents upon which I base my conclusions are attached.

      You did this while knowing that only a week later payroll had to be met, rent on the Beverly Hills location had not been paid for March, and that the bank account had insufficient funds to cover the check you would tender to AERC the next day for rent due on the Desmond building.

      Because of my fiduciary responsibility to protect the assets of ACE Gallery, I am hereby demanding that you immediately tender a check for $264,000 to reimburse the ACE Gallery account. Further, the questionable nature of these transactions more than justifies my need to have access to all of the transactions among ACE New York, ACE Museum and ACE Gallery. You must immediately open the books and records to me for all these entities. If you fail to do so, I will cause a subpoena to be issued to obtain these records in the pending adversary lawsuits. I must also now demand that you open up the Cochran facility and the Museum space for an immediate physical inspection.

      As I have previously requested, we need to review with you all the accounts receivable so I can understand who owes money to the ACE Gallery and when we can expect payment. Finally, I also must confirm if any payment is due to Tara Donavan or Jonathan Monk for the sale of their work. Please produce any consignment agreements with these artists or show me proof these works are owned by the ACE Gallery.

      On a going forward basis, there should not be any transaction between ACE Gallery, the ACE Museum and ACE New York without my written consent.

                        Very truly yours,

                        Sam S. Leslie

3435 Wilshire Boulevard, Suite 990, Los Angeles, CA 90010   Phone: 213.368.5000     Fax: 213.368.5009
Emails: trustee@trusteeleslie.com  sleslie@trusteeleslie.com

Exhibit 27 - Page 1 of 1   USAO_00013280