1  MEGAN A. MAITIA (Bar No. 285271)
   megan@summaLLP.com
2  JENNIFER L. WILLIAMS (Bar No. 268782)
   jenn@summaLLP.com
3  SUMMA LLP
   1010 Sycamore Avenue, Unit 117
4  South Pasadena, California 91030
   Telephone:  (213) 260-9455/52/56
5  Facsimile:   (213) 835-0939
6
7  Attorneys for Defendant
   DOUGLAS J. CHRISMAS
8

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DOUGLAS J. CHRISMAS,<br><br>    Defendant. | Case No. 2:21-CR-00127-MCS<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31**<br><br>**Judge:**     Hon. Mark C. Scarsi<br><br>**Hearing:**   TBD<br><br>**Trial**:       May 28, 2024 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On the eve of trial, the prosecutors are taking the position for the first time that to convict under 18 U.S.C. § 153, the Government need only prove that Mr. Chrismas knowingly and fraudulently transferred property belonging to the estate, regardless of the intended *use* of that property. (Dkt. 106, citing Jury Instruction 31 in Dkt. 45 at p.43.)

In doing so, the Government relies on grammatical gymnastics and fancy graphics. But its interpretation ignores the most important guide: common sense. When read in its entirety and, as the Court must, consistent with due process notice requirements counseled by the Rule of Lenity, the only common-sense interpretation of the embezzlement statute is the one *already* reflected in Jury Instruction 31, as adopted from the Eleventh Circuit Model Jury Instructions (and previously sanctioned by this same prosecution team). That is, 18 U.S.C. § 153 criminalizes one who (a) knowingly and fraudulently (b) embezzled, spent, transferred, or appropriated to the Defendant's own use (c) property belonging to the estate. "To the Defendant's own use" is a concept understood from the context, and reflected by the Model Instruction, that applies to each word in the series, which each incorporate the everyday, common sense meaning of embezzlement.

The Government, trying to score a conviction without the literal burden it is required to carry, now argues that it can convict where there was a "knowingly and fraudulent transfer," period (that is, a transfer that was concealed, even if the transfer was intended to benefit the estate). This sudden position exposes what the Government has now come to understand based on evidence it long ignored. Without such a contorted (and constitutionally defective) reading, it cannot win; as the Government now knows, the transfers were, in fact, intended to benefit the estate. But just as the Government cannot change the facts—try as it might—to fit the law of the crime it charged, it likewise cannot change the law—try as it might—to fit the facts it now knows.

Consistent with applicable case law on criminal embezzlement and common sense, Jury Instruction 31 should be read as drafted (*see* Dkt. 45 at pp. 42-43).

---

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

## II.     ARGUMENT

### A.     The Government's interpretation contradicts context, common sense, and applicable case law.

As drafted, 18 U.S.C. § 153 prohibits conduct when a person (a) "knowingly and fraudulently appropriates to the person's own use, embezzles, spends, or transfers" property belonging to a bankruptcy estate, (b) when the person has access to and is entrusted with that same property. The Government's brief fails to read the series in subsection (a) together and in light of subsection (b). But when the whole statute is considered together and in context, the instruction already reflected by the Eleventh Circuit prevails.

First, the Government's tedious analysis of the Nearest Reasonable Referent and Series Qualifier Rule canons falls by the wayside as it disregards the "Whole Act Rule," the established canon of construction that, consistent with common sense, requires courts to look at the statute as a whole.

> When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature.

*Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) (cleaned up); *Azarte v. Ashcroft*, 394 F.3d 1278, 1288 (9th Cir. 2005), *abrogated on other grounds by Dada v. Mukasey*, 554 U.S. 1 (2008), ("The key to the whole act approach is, therefore, that all provisions and other features of the enactment must be given force, and provisions must be interpreted so as not to derogate from the force of other provisions and features of the whole statute.").

Mr. Chrismas has been charged with violations of § 153, an "Embezzlement against estate" statute by name. Federal case law defines "embezzlement" as "the fraudulent **appropriation** of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *United States v. Lequire*, 672 F.3d 724, 728 (9th Cir.

2012) (emphasis added) (collecting Ninth Circuit cases). Black's Law Dictionary similarly defines embezzlement as the "fraudulent **taking** of personal property with which one has been entrusted, especially as a fiduciary." EMBEZZLEMENT, Black's Law Dictionary (11th ed. 2019) (emphasis added). And Merriam-Webster defines to "embezzle" as "to appropriate (something, such as property entrusted to one's care) fraudulently **to one's own use**." "embezzle." Merriam-Webster.com. 2024. https://www.merriam-webster.com/dictionary/embezzle (6 May 2024) (emphasis added).

Though there is no Ninth Circuit model jury instruction for § 153, bankruptcy law defines embezzlement as "the fraudulent **appropriation** of property by a person to whom such property has been entrusted or into whose hands it has lawfully come," and requires proof of three elements: "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use **other than which [it] was entrusted**; and (3) circumstances indicating fraud." *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991) (citations omitted) (emphasis added).

In this context—where property is in one's hands for one purpose and then used for another—the words appropriate, embezzle, spend, and transfer are synonyms to describe the same conduct. Embezzlement (as understood in everyday life) requires that the alleged wrongdoer initially had lawful access to the property given his position of trust, *Lequire*, 672 F.3d at 728, and the crime occurs only when the property is used **in violation** of that position of trust. This, of course, requires the jury to evaluate *how* the defendant used (or, more to the point, intended to use) the property before it can vote to convict under § 153.

This interpretation is also consistent with, and does not make superfluous, the immediately preceding statute, 18 U.S.C. § 152, which criminalizes various acts when taken in relation to a bankruptcy proceeding, such as, for example, concealing assets of an estate (§ 152(1)) and making a false statement in relation to bankruptcy proceeding (§ 152(3)). Of note, § 152(7) criminalizes one who "knowingly and fraudulently transfers or conceals" property with the intent to defeat bankruptcy rules. The Government's interpretation of § 153 (as reflected in Jury Instruction 31)—that is, "embezzlement of the

3

1 estate" can be completed where one, in the course of a bankruptcy proceeding, knowingly

2 and fraudulently transfers money from an estate—is no different than what is already

3 proscribed in § 152(7). The Government's interpretation would, therefore, mean Congress

4 criminalized the same conduct twice, in back-to-back statutes.  Such interpretation is not

5 only inconsistent with common sense, but also not endorsed by caselaw. *See e.g., Mackey*

6 *v. Lanier Collection Agency*, 486 U.S. 825, 836-37 (1988) (declining "to adopt an

7 interpretation of a congressional enactment which renders superfluous another portion of

8 the same law").

9        The defense's commonsense interpretation of Jury Instruction 31 also follows the

10 Ninth Circuit model instruction for the analogous 18 U.S.C. § 641, Theft of Government

11 Money or Property, which criminalizes conduct when the defendant "embezzles, steals,

12 purloins, or knowingly converts to his use or the use of another" government property.

13 According to the model instruction, the Government must prove beyond a reasonable

14 doubt:

15            [T]he defendant knowingly [[embezzled] [stole] [converted to the

16            defendant's use] [converted to the use of another]] [money]

17            [property of value] with the intention of depriving the owner of

18            the use or benefit of the [money] [property]."

19 Ninth Circuit Model Criminal Jury Instruction 23.1. Thus for § 641, embezzlement,

20 stealing, and conversion are synonyms to describe the ways for a defendant to commit the

21 crime, that is, wrongfully depriving the government of the *use or benefit* of its own

22 property. *United States v. Dupee*, 569 F.2d 1061, 1064 (9th Cir. 1978) (affirming

23 conviction under 18 U.S.C. § 641 when the defendant, a postal office clerk, failed to turn

24 over money he received for processing customer money orders) ("This is a classic case of

25 embezzlement the fraudulent conversion of the property of another by one who is lawfully

26 in possession of it."); *United States v. Bui*, 2004 WL 57082, at *4 (E.D. Pa. Jan. 9, 2004),

27 aff'd, 152 F. App'x 159 (3d Cir. 2005) (denying motion for judgment of acquittal following

28 conviction under 18 U.S.C. § 1711, Misappropriation of Postal funds) ("[T]he gravamen of

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

1 the offense is the **personal use** of the money or property by the employee.") (emphasis

2 added).

3        The defense's interpretation is reinforced by the traditional canon of construction,

4 *noscitur a sociis*, which "dictates that 'words grouped in a list should be given related

5 meaning." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990). In *Dole*, the

6 question involved the Office of Management and Budget's scope under the Paperwork

7 Reduction Act in regulating other agencies' requests to businesses for "a written report

8 form, application form, schedule, questionnaire, reporting or recordkeeping requirement,

9 collection of information requirement, or other similar method calling for the collection of

10 information." *Id*. at 34. The question was whether OMB's authority to regulate "reporting

11 or recordkeeping requirements" included the authority to approve the Department of

12 Labor's substantive OSHA-related disclosure rules for hazardous chemicals. The Supreme

13 Court, relying on *noscitur a sociis* and the Whole Act Rule, said, obviously, no:

14                The other examples listed in the definitions of "information

15                collection request" and "collection of information" are forms for

16                communicating information to the party requesting that

17                information. If "reporting and recordkeeping requirements" is

18                understood to be analogous to the examples surrounding it, the

19                phrase would comprise only rules requiring information to be

20                sent or made available to a federal agency, not disclosure rules.

21 *Id*.; *United States v. Williams*, 553 U.S. 285, 294 (2008) (describing *noscitur a sociis* as the

22 "commonsense canon" that "counsels that a word is given more precise content by the

23 neighboring words with which it is associated").

24        Finally, but perhaps most importantly, the defense's position is supported by the

25 Rule of Lenity, which tips the balance in favor of the defendant not only when faced with

26 ambiguous text but also when faced with ambiguous legislative history. *Liparota v. United*

27 *States*, 471 U.S. 419, 427 (1985) ("Although the rule of lenity is not to be applied where to

28 do so would conflict with the implied or expressed intent of Congress, it provides a time-

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

honored interpretive guideline when the congressional purpose is unclear."). Here, the Government does not cite, and the defense has not located, any legislative history to support the Government's interpretation of Jury Instruction 31. The Rule of Lenity prohibits such an interpretation because it would necessarily impose criminal liability on the public under an embezzlement statute without proof of the everyday meaning of embezzlement, the *wrongful use* of property. The Court's "job is always in the first instance to follow Congress's directions. But if those directions are unclear, the tie goes to the presumptively free citizen and not the prosecutor." *United States v. Rentz*, 777 F.3d 1105, 1113 (10th Cir. 2015); *Wooden v. United States*, 595 U.S. 360, 389 (2022) (GORSUCH, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws.") (offering detailed history on the Rule of Lenity).

> **B.     The commonsense interpretation of 18 U.S.C. § 153 is supported by the plain language of Jury Instruction 31.**

The actual instructive language in Jury Instruction 31 confirms the defense's position here: "embezzle" and "appropriate" mean the same thing, and those terms are further defined by the synonyms "spend," "transfer," and "convert," when the spending, transfer, or conversion is for personal use or someone else's use (and not for the use of the bankruptcy estate):

> The heart of the charge in the indictment is the knowing and fraudulent embezzlement or appropriation of property belonging to the Debtor's estate.
>
> "Fraudulent" means to knowingly deceive or mislead someone, **usually for personal gain**.
>
> To "embezzle" or "appropriate" means to **wrongfully take someone's property and spend it, transfer it, convert it to personal use, or convert it to someone else's use**.

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

1  (Dkt. 45 at PACER p.43 (emphasis added).) The Government sanctioned this explanatory

2  language in Jury Instruction 31 when these prosecutors filed the Joint Proposed Jury

3  Instructions. But the Government ignored this language in their brief and offered no basis

4  for the Court to excise it from Jury Instruction 31.

5        The case law cited by the Government does not change the analysis. The

6  Government first cites *United States v. Love*, 17 F. App'x 796 (10th Cir. 2001), arguing

7  that the debtor (FACC) "did not relinquish control transferred to Impact [FACC's affiliate]

8  accounts," and the Tenth Circuit affirmed the § 153(a) convictions because the "statute

9  prohibits knowing and fraudulent embezzlement, spending, transference, etc., whether or

10  not such activity is occasioned toward the offender's own use." (Dkt. 106 at 9-10 and n.8,

11  citing *Love*, 17 App'x at 800.) The Government's characterization of *Love* is misleading.

12        The focus of *Love* was the defendant's criminal "concealment of bankruptcy assets"

13  from creditors as prohibited under 18 U.S.C. § 152, a statute the Government has not

14  charged here. Love was convicted based on evidence that he (the CFO of FACC)

15  transferred FACC money from the bankruptcy estate to the affiliate company "in order to

16  conceal [the] property from its creditors," and the money was "almost entirely depleted" by

17  the time the affiliate's assets were consolidated with the bankruptcy estate. *Id*. at 800. But

18  Love was charged under the 1993 version of 18 U.S.C. § 153, which applied only to

19  "property that came into one's charge as trustee or other officer of the court." *Love*, 17 F.

20  App'x at 801. Love was neither and argued that his § 153 conviction should be overturned

21  he was outside the statute's reach. The Court affirmed the conviction because Love was

22  charged under 18 U.S.C. § 2 for aiding and abetting his co-defendant who *was* the trustee,

23  and in this context, the Court explained, the "embezzlement, spending, transference, etc."

24  need not be for the aiding and abetting offender's own use. The court did not speak to, let

25  alone adopt, the interpretation the Government now presses. *Id*.

26        Unlike *Love*, Mr. Chrismas is charged with violating § 153 directly (not through a

27  § 2 aiding and abetting theory of liability). Consistent with his charges, his defense is that

28  he made the Museum rent payments to preserve the Museum lease as an asset to the estate

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

and its creditors. The Government tries to cut off this defense by arguing that the Museum would have been "legally prohibited from giving money back to Ace Gallery in the manner defendant now suggests" (even though the Government knows, because the defense told the prosecutors, that the ACE Gallery creditors had legally enforceable financial interests to the Museum) (Dkt. 106 at 11 n.9.) The Government can make this "closing argument" to the jury, but it is far from conclusive on the legal issue before the Court and says nothing about Chrismas's *intent*, which is the main issue in the case.[1]

The Government then cites *United States v. Klupt*, 475 F.2d 1015 (2d Cir. 1973) (*see* Dkt. 106 at 10). Like *Love*, *Klupt* turned on 18 U.S.C. § 152, the "concealment of bankruptcy assets" statute that the Government has not charged here and does not govern the jury instructions in a § 153 embezzlement case. Last, the Government cites *United States v. Coin*, 753 F.2d 1510 (9th Cir. 1985) for the argument that embezzlement is a crime because the "victim of the crime is deprived of its right to make decisions about how its property or funds are to be used." (Dkt. 106 at 11, arguing that "[s]o too here," "Ace Gallery was deprived of its right to make decisions about the embezzled property the moment that property left the bankruptcy estate.") But *Coin* supports the defense's position on Jury Instruction 31: the defendant was convicted of embezzling tribal funds because he, as vice-chairman of the tribe, used some tribal funds ostensibly to pay bills related to the tribe and "*used the remainder for his personal benefit*." *Coin*, 753 F.2d 1510 (emphasis added).

### C.   The Government's position lacks credibility because it is inconsistent with its previous position.

For this entire case, the Government has put forth a legal theory consistent with the plain reading of Jury Instruction 31. And in every substantive filing, the Government has

---

[1] Factually, at the time of the charged transactions, Mr. Chrismas was the debtor in possession of the bankruptcy estate and authorized to operate the business, and he was permitted to enter many transactions that did not require prior approval from the bankruptcy court.

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

argued that the charged transactions violated § 153 because they benefitted the Museum to the exclusion of the ACE Gallery bankruptcy estate:

> In March and April 2016, defendant embezzled $264,595 from the bankruptcy estate of Ace Gallery. He was the estate's trustee at the time, and he used this position to transfer assets out of the estate **for the benefit of a different company, which he also controlled, called Ace Museum**. . . .
>
> Prior to the appointment of the independent trustee, though, defendant embezzled $264,595 from the bankruptcy estate over the course of three separate transactions. . . . **Defendant used that money to benefit a completely different company, Ace Museum, wherein he was the chief executive and financial officers**.

(Dkt. 47 at 3-4; *see also* Gvt. filings at Dkt. 48 at 3-4 (same), Dkt. 54 at 3-4 (same), Dkt. 87 at 3 (same), Dkt. 88 at 3 (same), Dkt. 89 at 3-4 (same), Dkt. 91 at 3, 6 (same).)

In the Joint Statement of the Case, which the Government has asked this Court to read to the jury pool, the Government summarized its theory as follows:

> The government alleges that during his time as trustee of the bankruptcy estate, Mr. Chrismas embezzled property belonging to Ace Gallery's bankruptcy estate. Specifically, the government alleges that Mr. Chrismas used his position as trustee to embezzle approximately $264,595 from the bankruptcy estate over the course of three separate transactions -- two transactions on March 30, 2016, and one transaction on April 1, 2016 -- **by using that money to benefit a completely different company, which he also controlled, and not using it to benefit Ace Galle[r]y**.

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

(Dkt. 51 at 3 (emphasis added); *see also* Department of Justice's archived Criminal Resource Manual § CRM 500-99, part of DOJ's Justice Manual, which characterizes the relevant § 153 language as prohibiting "embezzling property" and nothing else.)

A few weeks ago, the defense provided evidence to the prosecutors that the ACE Gallery bankruptcy estate had legal interests in the Museum lease, such that payments to preserve the lease would benefit the bankruptcy estate, and the Government *agreed* that this evidence changed its view of the case in an exculpatory way. (*See* Dkt. 94-1 at ¶¶ 8-10). But now, heading to trial and realizing their case is legally flawed, the Government has suddenly changed its theory:

> MS. MAKAREWICZ: The focus is wrong, Your Honor. It
> doesn't have to do with the benefit of the estate. **It has to do**
> **with the fact that it left the estate. The fact that the money**
> **was moved from the debtor**. Even if we take the defendant at
> his word, he is allowed to present [his defense], that is not
> relevant, **because the fact that it went to the landlord is where**
> **the focus needs to be, because then [the money] definitely left**
> **the estate**. . . .
> That's why the use and benefit is the wrong analysis, Your
> Honor. **The fact that the money went out of the estate is where**
> **the focus should be, because it did.**

(April 29, 2024 Tr. at pp. 22:7-23:18 (emphasis added).)

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

1       This about face is the Government's attempt to win by default without meeting their

2 burden of proof.[2] The Court should reject the Government's interpretation of Jury

3 Instruction 31, read the instruction to the jury as drafted at Docket 45, and allow Mr.

4 Chrismas to put on a defense consistent with the plain language of this instruction.

5

6 Dated: May 6, 2024                                Respectfully submitted,
                                              Summa LLP

7

8                                              */s/ Megan A. Matia*

9                                           Megan A. Maitia
                                          Jennifer L. Williams

10

11                                           Attorneys for Defendant
                                          DOUGLAS J. CHRISMAS

12

13

14

15

16

17

18

19

20

21

22

23

24 _____

25 [2] The Government's theory change here raises new constitutional issues, that the
Government seeks to convict Mr. Chrismas for a theory not presented to the grand jury and
26 for conduct not charged in the indictment. If true, this could amount to a constructive
amendment or fatal variance of the indictment in violation of the 5th Amendment and
27 require reversal of any conviction. *United States v. Ward*, 747 F.3d 1184, 1188–89 (9th Cir.
2014).
28

11

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31