E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
DAVID W. WILLIAMS (Cal. Bar No. 295204)
Assistant United States Attorneys
    Major Frauds/Appeals Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756/8485
    Facsimile: (213) 894-6265
    Email:   valerie.makarewicz@usdoj.gov
             david.williams3@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-cr-00127-MCS |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE TO ADMIT 404(b) EVIDENCE AND FOR JUDICIAL INQUIRY; DECLARATION; EXHIBITS |
| v. | |
| DOUGLAS CHRISMAS | Trial Date:  May 28, 2024<br>Trial Time:  8:30 a.m.<br>Location:   Courtroom of the<br>           Hon. Mark C.<br>           Scarsi |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Valerie L.
Makarewicz and David W. Williams, hereby submits the Government's
Motion in Limine to Admit 404(b) Evidence, and for Judicial Inquiry.

///

///

///

This brief is supported by the accompanying memorandum of points and authorities, the files and records in this case, and such further evidence and arguments as the Court may permit.

Dated: May 16, 2024                    Respectfully submitted,

                                       E. MARTIN ESTRADA
                                       United States Attorney

                                       MACK E. JENKINS
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       */s/ David W. Williams*
                                       VALERIE L. MAKAREWICZ
                                       DAVID W. WILLIAMS
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

Defendant embezzled assets from the Ace Gallery bankruptcy

4 estate in early 2016.  If allowed by the Court, he plans to argue at

5 trial that he only took the bankruptcy estate assets in order to

6 benefit the estate itself.[1]  Briefly, defendant claims he transferred

7 estate assets from Ace Gallery to the unaffiliated/unrelated Ace

8 Museum, a 501(c)(3) nonprofit, so that Ace Museum could exercise a

9 valuable purchase option on a piece of real property, and that Ace

10 Gallery itself would have benefited in turn from the exercise of that

11 option.

12

Defendant's claim -- that his motive for taking Ace Gallery's

13 money was in fact to benefit Ace Gallery -- is contradicted by recent

14 events.  The government therefore requests permission to present

15 404(b) evidence contradicting defendant's argument, showing that

16 defendant never had any intent to benefit the Ace Gallery estate at

17 all, and showing that his true motive was personal profit.

18

In December 2023, defendant sold real property in Tuna Canyon,

19 and he personally received sale proceeds of $352,247.15.  (ECF 117-1

20 ¶¶ 3-4.)  He did so without alerting either the estate or this Court,

21 in spite of an order compelling him to obtain permission for any

22 transactions greater than $50,000.  And, rather than pay back some of

23 what he had previously stolen from Ace Gallery -- as reflected, at

24 least, by the $14 million judgment against him -- defendant kept the

25 Tuna Canyon profits for himself.  Then, in the aftermath of this

26

27

[1] This potential defense may be affected by the resolution of
Government's Motion in Limine #5.  (See ECF 91.)  It may also be
28 affected by the resolution of the parties' briefing on Jury
Instruction #31.  (See ECF 102, 106, 109.)

sale, defendant falsely told a representative of the estate that he was judgment-proof and "uncollectible."  And defendant did all this even though Ace Gallery itself had paid the property taxes on defendant's Tuna Canyon land during the bankruptcy period.

In other words, even when defendant has identifiable assets at his disposal, and even when the bankruptcy estate has an interest in those assets, defendant still does not seek to "benefit the estate" of Ace Gallery.  Instead, he hides those assets for his own benefit.  The government has provided 404(b) notice, and now moves for the Court to admit evidence concerning the Tuna Canyon sale and asset transfers at trial.

Additionally, the government requests that the Court inquire into any potential conflicts created by defense counsel's continued participation in this case.  Defense counsel personally profited from the Tuna Canyon sale, and counsel have indicated that they represent another individual who participated in that sale.

## II.  REQUEST TO ADMIT EVIDENCE UNDER RULE 404(b)

### A.  Relevant Law

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b)(1).  However, evidence of such other acts may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

The Ninth Circuit has "uniformly recognized that [Rule 404(b)] is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity."  United States v. Mehrmanesh, 689 F.2d 822, 830 (9th

Cir. 1982); United States v. Rrapi, 175 F.3d 742, 748 (9th Cir. 1999)

("Unless the evidence of other crimes tends only to prove propensity,

it is admissible.") (citations omitted).

Before other acts evidence may be admitted under Rule 404(b),

the following prerequisites must be met: (1) the evidence tends to

prove a material point; (2) the prior act is not too remote in time;

(3) the evidence is sufficient to support a finding that the

defendant committed the other act; and (4) the act is similar to the

offense charged.  United States v. Castillo, 181 F.3d 1129, 1134 (9th

Cir. 1999).  If the proffered evidence meets this four-part test,

then it is admissible so long as the probative value of the evidence

is not substantially outweighed by the danger of unfair prejudice.

United States v. Bailleaux, 685 F.2d 1105, 1109-10 (9th Cir. 1982).

**B.  Evidence of December 2023 Sale and Money Transfers Is Admissible**

Defendant sold the Tuna Canyon property in December 2023.

Before completing the sale, though, he had used Ace Gallery

bankruptcy estate assets to pay the Tuna Canyon property taxes.

For instance, while in bankruptcy in June 9, 2015, Ace Gallery

sold artwork by Mary Corse that was part of the bankruptcy estate.

Defendant directed the purchaser to wire the proceeds of the sale to

a bank account ending 0229, held by Ace Gallery New York

Corporation.[2]  (See Ex. A.)  The next day, defendant wrote check no.

01465 to the Los Angele County Tax Collector, payable from account

ending 0229, to pay property taxes for the Tuna Canyon property,

---

[2] Ace Gallery New York Corporation was a company owned by
defendant, which had no inventory of its own, and which he created
the week before filing Ace Gallery's bankruptcy so that he could sell
artwork without revealing that the true seller (Ace Gallery) was in
bankruptcy.

3

identifying the Tuna Canyon property by parcel number in the memo section of the check.  (Ex. A.)[3]

While defendant used Ace Gallery bankruptcy assets to stay current on the Tuna Canyon property taxes, the Tuna Canyon land was still encumbered by other liens.  Before the sale, defendant had been facing IRS tax liens totaling more than $250,000.  (See Ex. B.)  So, while the Ace Gallery trustee knew about the Tuna Canyon property, they also knew about the liens (as well as similar liens by state authorities), and therefore believed the property to be beyond the reach of the estate.

Most of the IRS tax liens had apparently been released by early 2023, though.  (See Ex. B.)  Defendant listed the property for sale within a few months and, during the sale, the IRS confirmed to an escrow agent that the liens had expired.  Defendant then completed the sale, cleared title, and cashed out the remaining value of the land:  $352,247.15.  The proceeds of the sale went to his personal bank account, then to the bank account of his new company (Art Collection Development LLC), then somewhere else, within a matter of hours.  Most of the proceeds were apparently sent to defense counsel in the end.  None of the proceeds went to Ace Gallery.  (See ECF 132, 136 (briefs regarding pretrial detention.)

Instead, shortly after the sale had been completed, defendant rebuffed the trustee's attempts to collect against him.  Counsel for

---

[3] The government has not yet traced every year of property tax payments, so it cannot confirm how much Ace Gallery paid in total toward the Tuna Canyon property.  It appears that Ace Gallery may have paid the property taxes every year of the bankruptcy.  (See Ex. G (reflecting at least $4,041.37 in payments for Tuna Canyon property taxes).)

the trustee emailed defendant in January 2024 trying to locate his assets.  She asked him to provide a list of assets, and he refused.

Complying with her request, he said, "will cost me time (not a lot of time)," and in light of the criminal proceedings, it would not "be to [his] advantage to focus" on the $14 million he owed the estate.  (Ex. C at 1.)  Defendant also claimed that he still had "an indebtedness to the IRS of approximately $244,000," and that even the IRS had found him to be "uncollectible."  (Ex. C at 3.)[4]

In addition to preventing Ace Gallery from learning about the sale, defendant prevented the parties involved in the sale from learning about Ace Gallery.  For instance, he lied in the escrow paperwork about his former place of employment.  Specifically, he told escrow that he had been employed by Art Collection Development for the past 26 years.  (See Ex. D.)  In reality, most of those years were spent working for Ace Gallery.  By omitting his true employer from the escrow disclosures, he necessarily reduced any likelihood that Ace Gallery's $14 million judgment against him would be discovered.[5]

Defendant also actively attempted to prevent escrow from contacting his creditors.  For instance, concerning one lienholder, defendant instructed escrow, "I don't want anything to be sent to

---

[4] Defendant previously submitted part of this email chain to the Court, objecting that the trustee had "never followed through" on any collection efforts.  (ECF 122 at 7.)  The version submitted by defendant, though, redacted defendant's response.  (See ECF 122-5.)

[5] Defendant apparently lied to escrow about his marital status too.  In the initial disclosure for the sale, he indicated that he was selling as an individual, with no spouse.  He also granted the deed to the land as "a single man."  As the government recently learned, he was, in fact, married.  Even if they were separated, as the government believes, by stating that he was "a single man" defendant deprived his wife of any community property interest in the property.

[the lienholder] from Eon Escrow.  This is how I would like to work with you on this." (Ex. E.)  Defendant (with D.K., discussed below) managed the communications himself instead.

In short, defendant hid the Tuna Canyon sale from the Ace Gallery bankruptcy estate -- the same creditor from whom he stole the money in the first place -- even though Ace Gallery had paid the property taxes and therefore had at least some equitable interest in the land itself.  Cf. In re Marriage of Walter, 57 Cal. App. 3d 802, 806-07 (1976) (where appellant paid property taxes on his separate property using community property funds, "the community is entitled to reimbursement" upon divorce).

The Tuna Canyon sale, as well as the subsequent transfers that obscured the source of defendant's money, were intended to prevent Ace Gallery from seizing the money.  They are yet another series of transactions where defendant kept Ace Gallery from recovering estate assets.  They should therefore be admitted pursuant to Rule 404(b).

The post-judgment attempt to hide the sale and money transfers from both this Court and from the bankruptcy estate -- thereby keeping the estate from recovering money to which it was entitled -- is admissible under Rule 404(b), and satisfies the four factors identified in Castillo:

(1) They prove a material point, namely, defendant's motive, knowledge, intent, and/or lack of mistake.  See United States v. Sarault, 840 F.2d 1479, 1486 (9th Cir. 1988) (government can offer other-acts evidence during the case-in-chief when it is obvious that the defense will raise lack of intent or knowledge as a defense).

(2) They are self-evidently not remote in time.

1        (3) The pertinent transactions will be corroborated by

2      documentary evidence.  These documents, produced in discovery,

3      provides both direct and circumstantial evidence that defendant

4      committed the other acts.  See Huddleston v. United States, 485

5      U.S. 681, 691 (1998) (to be admissible, the evidence need only

6      be such that "the jury reasonably could have concluded" that the

7      other act occurred).

8        (4) The pertinent transactions are quite similar to the

9      charged conduct: in each instance, defendant hid (or embezzled)

10     assets from the bankruptcy estate.  See Johnson, 132 F.3d at

11     1283 (rule 404(b) "conduct need not be identical to the conduct

12     charged, but instead need only be similar enough to be probative

13     of intent").  In each instance, defendant hid the transactions

14     from a supervising court too, thereby attempting to guarantee

15     its secrecy.

16 See Castillo, 181 F.3d at 1134.

17    The Tuna Canyon sale and subsequent transfers also rebut a

18 primary defense theory.  Defendant claims he was only motivated to

19 help Ace Gallery.  It is therefore incredibly probative for the jury

20 to learn that defendant (a) refused to pay Ace Gallery back even when

21 he had the opportunity to do so, (b) in spite of a judgment against

22 him and in favor of Ace Gallery, (c) in spite of the fact that Ace

23 Gallery had itself invested in the same property, obtaining an

24 equitable interest by paying defendant's property taxes, and (d)

25 instead hid the fact that he had any assets at all from Ace Gallery,

26 to ensure that they would remain unable to collect on their judgment.

27 See Fed. R. Evid. 403.

28

1    This sort of evidence also is not "unduly" prejudicial.  It

2    simply provides good evidence of defendant's intent.  In other words,

3    "evidence of other bad acts is not rendered inadmissible because it

4    is of a highly prejudicial nature[;] the best evidence often is."

5    United States v. Blitz, 151 F.3d 1002, 1009 (9th Cir. 1998) (cleaned

6    up).

7    **III. REQUEST FOR JUDICIAL INQUIRY REGARDING POTENTIAL CONFLICT**

8         **A.    Relevant Law**

9         "[T]rial courts, when alerted by an objection from one of the

10   parties, have an independent duty to ensure that criminal defendants

11   receive a trial that is fair and does not contravene the Sixth

12   Amendment."  Wheat v. United States, 486 U.S. 153, 161 (1988).  Thus,

13   in situations where the court "knows or reasonably should know that a

14   particular conflict [of interest] exists[,]" it has a duty to inquire

15   into the potential conflict of interest.  Cuyler v. Sullivan, 446

16   U.S. 335, 347 (1980); Garcia v. Bunnell, 33 F.3d 1193, 1199 (9th Cir.

17   1994).  "When the court is 'sufficiently apprised of even the

18   possibility of a conflict of interest,' its initial obligation is to

19   'investigate the facts and details of the attorney's interests to

20   determine whether the attorney in fact suffers from an actual

21   conflict, a potential conflict, or no genuine conflict at all.'"

22   United States v. Blount, 291 F.3d 201, 211 (2d Cir. 2002).  Likewise,

23   the government has a duty to bring the risk of a conflict of interest

24   to the attention of the trial judge.  Mannhalt v. Reed, 847 F.2d 576,

25   583-84 (9th Cir. 1988).

26        Although the Supreme Court recognizes the Sixth Amendment right

27   to be represented by one's preferred attorney, it has also made clear

28   that "the essential aim of the Amendment is to guarantee an effective

advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat, 486 U.S. at 159. Indeed, a criminal defendant's Sixth Amendment right to the assistance of counsel includes an entitlement to "representation that is free from conflicts of interest," that is, to representation by an attorney who pursues the defendant's interest "single-mindedly," and whose strategic decisions are not influenced by obligations to others. Wood v. Georgia, 450 U.S. 261, 271-72 (1981); see also United States v. Elliot, 463 F.3d 858, 867 (9th Cir. 2006) ("Few aspects of our criminal justice system are more vital to the assurance of fairness than the right to be defended by counsel, and this means counsel not burdened by a conflict of interest[.]") (citing United States v. Henke, 222 F.3d 633, 638 (9th Cir. 2000) (per curiam)); United States v. Baker, 256 F.3d 855 (9th Cir. 2001) (the Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation); United States v. Partin, 601 F.2d 1000, 1006 (9th Cir. 1979) (the Sixth Amendment includes "the right to be represented by counsel whose loyalties are undivided").

"The District Court must recognize a presumption in favor of [a defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Wheat, 486 U.S. at 164; see also United States v. Kenney, 911 F.2d 315, 321 (9th Cir. 1990). Although a party may attempt to waive his right to conflict-free representation, waiver does not automatically cure conflict problems because the federal courts "have an independent interest in ensuring that criminal trials are conducted within the ethical standards of

the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160; accord United States v. Rewald, 889 F.2d 836, 857, amended, 902 F.2d 18 (9th Cir. 1989). Trial courts also have "an institutional interest in the rendition of just verdicts in criminal cases," and in seeing that these verdicts "remain intact on appeal." Wheat, 486 U.S. at 160-61.  By threatening these interests, "an actual or potential conflict of interest poses a serious challenge indeed to the integrity of the judicial process." Rewald, 889 F.2d at 857.

To protect these important interests, district courts have "substantial latitude" in determining whether to allow a criminal defendant to be represented by counsel burdened by a potential conflict of interest. Wheat, 486 U.S. at 163; Kenney, 911 F.2d at 319 ("The trial court must be given 'substantial latitude' in refusing waivers of potential conflicts of interest"); see also Wheat, 486 U.S. at 164 ("The evaluation of the facts and circumstances of each case [raising potential conflicts] must be left primarily to the informed judgment of the trial court.").  Such substantial latitude is necessary because the district court's evaluation of both actual and potential conflicts is done "not with the wisdom of hindsight after the trial takes place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." Id. at 162.  Wheat's substantial latitude standard recognizes that a district court need not have perfect information nor need it wait until potential conflicts have ripened into actual conflicts. Id. at 162-63.

In Wheat and in numerous other cases, therefore, courts frequently hold that a defendant may not waive his right to conflict-

1  free counsel in the face of a serious potential conflict of interest.

2  See, e.g., Wheat, 486 U.S. at 164; Rewald, 889 F.2d at 857-58; United

3  States v. Baker, 10 F.3d 1374, 1399 (9th Cir. 1993) (despite waiver,

4  court did not err by disqualifying attorney who previously

5  represented government witness), overruled on other grounds by United

6  States v. Nordby, 225 F.3d 1053 (9th Cir. 2000).

7  **B.  Discussion: Witness/Beneficiary and Multiple Representation**

8  As described above, defendant's ongoing decision to hide money

9  from Ace Gallery tends to disprove his claim that the original theft

10  was motivated by a desire to benefit Ace Gallery.  It also, as

11  previously noted by the government, may itself constitute a new

12  crime.  (See ECF 115, 120, 122, 132, 136; e.g., 18 U.S.C. § 152(1),

13  (9).)[6]

14  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[6] See Stegeman v. United States, 425 F.2d 984, 986 (9th Cir.
1970) ("Section 152 is not limited . . . to providing criminal
penalties for the nonperformance of particular duties which the
Bankruptcy Act imposes upon various identified classes of persons.
. . . It attempts to cover all the possible methods by which a
bankrupt or any other person may attempt to defeat the Bankruptcy Act
through an effort to keep assets from being equitably distributed
among creditors.") (emphasis in original);

1 Collier on Bankruptcy P 7.02 ("Under section [11 U.S.C. §]
541, property of the estate includes 'all legal and equitable
interests of the debtor . . . Legal interests in property can often
be determined with reference to title records or a chain of
ownership.  Courts have however, treated the issue of just what
interests are 'equitable' interests in property as a question of fact
for the jury.");

5 Collier on Bankruptcy P 541.16 ("Section 541(a)(7) provides
for the inclusion in the estate of any interest in property that is
acquired by the estate after the case is commenced.  An example . . .
would be if the trustee entered into a contract after commencement of
the case.  The estate's interest in such a contract would, pursuant
to section 541(a)(7), be property of the estate.");

In re Glaser, No. 2:16-BK-15483-ABL, 2019 Bankr. LEXIS 669, at
*8 [2019 WL 1075613, at *3] (B.A.P. 9th Cir. Mar. 5, 2019), aff'd,
816 F. App'x 103 (9th Cir. 2020) ("'[p]roperty interests are created
and defined by state law'");

*(footnote cont'd on next page)*

11

Defense counsel recently acknowledged to the Court that proceeds from the Tuna Canyon sale were eventually paid to them. Defense counsel is therefore a witness to, and likely beneficiary of, the 404(b) conduct. See United States v. Prantil, 764 F.2d 548, 552-53 (9th Cir. 1985) ("The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation."); United States v. DiFazio, 899 F.2d 626, 631 (7th Cir. 1990) (attorney who represented defendant during bankruptcy in which alleged false statements were made risked becoming sworn or unsworn witness in subsequent criminal case).

Defense counsel's personal stake in the validity of the sale, and subsequent transfers between defendant's bank accounts, raises a similar possibility of conflict. See, e.g., United States v. Murray, No. CR-12-0278 EMC, 2013 U.S. Dist. LEXIS 33394, at *6 [2013 WL 942514, at

---

Norton Bankruptcy Law and Practice § 61.3 (3d ed. 2016) ("State law determines the existence, nature, and extent of any property interests a debtor may have.");

Fid. Nat'l Title Ins. Co. v. Schroeder, 179 Cal. App. 4th 834, 841 (2009) ("A fraudulent conveyance under the UFTA involves '"a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim."' [Citations.] "A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." [Citation.] Civil Code section 3439.07 sets forth a creditor's remedies under the UFTA, including 'avoidance of a transfer, attachment, and the equitable remedies of injunction and receivership as well as '[a]ny other relief the circumstances may require.'") (statutes modified in part in 2016 under the UVTA, see Cal. Civ. Code § 3439 et seq., Stats 2015 ch 44 § 3 (SB 161), effective January 1, 2016);

Compare In re Marriage of Walter, 57 Cal. App. at 806-07 (where appellant paid property taxes on his separate property using community property funds, "the community is entitled to reimbursement if community funds are used to discharge the husband's separate indebtedness") with Ex. A (Ace Gallery bankruptcy estate funds were used to pay defendant's Tuna Canyon property taxes)

*2] (N.D. Cal. Mar. 11, 2013) (disqualifying defense counsel in a wire fraud case where counsel "ha[d] a personal stake in the allegedly tainted funds because . . . $150,000 out of the allegedly tainted $410,000 was sent to [defense counsel, who] kept a portion of the $150,000 as payment for legal services. . . . While both share the interest of establishing no taint, the question is whether [counsel's] self-interest might nevertheless compromise his representation of [defendant].").[7]

Even if no defense attorney is ever called as a witness, their personal knowledge of the events could put them in the role of an unsworn witness because the jury may make inferences from their inability to comment on their own participation in eliciting the declaration.  See, e.g., United States v. Kerik, 531 F. Supp. 2d 610, 616 (S.D.N.Y. 2008); United States v. Rahman, 861 F.Supp. 266, 278-79 (S.D.N.Y. 1994).

Separately, defense counsel have indicated that they represent D.K., who assisted defendant with the sale of the Tuna Canyon property.  The government has been informed that D.K. handled many communications on defendant's behalf regarding the sale -- for instance, she communicated directly with the IRS and escrow company on defendant's behalf in order to help facilitate the sale, and

---

[7] If untainted, as defendant claims, the money would not be forfeitable by the government before trial.  See Luis v. United States, 578 U.S. 5, 10 (2016) ("pretrial restraint of a criminal defendant's legitimate, untainted assets . . . needed to retain counsel of choice violates the Fifth and Sixth Amendments"); but see fn. 4, above).  It may still be seizable in civil proceedings by the trustee (which has previously clawed back several million dollars in estate assets from at least one third party).  See Fid. Nat'l Title Ins. Co. v. Schroeder, 179 Cal. App. 4th at 841.

1   defendant authorized her to deal with the Tuna Canyon escrow company
2   on his behalf.  (<u>See</u> Ex. F.)

3       The multiple representation of defendant and D.K. raises an
4   additional conflict question, involving the prospect of divided
5   loyalties.  Defendant's intent and mental state during the Tuna
6   Canyon sale should be introduced at trial.  To that end, either
7   defendant or the government may need to call D.K. as a witness -- and
8   she may tell a different story than defendant's.  <u>See</u> <u>United States</u>
9   <u>v. Henke</u>, 222 F.3d 633, 636 (9th Cir. 2000) (per curiam) (reversing
10  and remanding where defendants' attorney entered into a joint defense
11  agreement with a government witness); <u>United States v. Ross</u>, 33 F.3d
12  1507, 1523 (11th Cir. 1994) ("an attorney has an actual conflict of
13  interest . . . when he has previously represented a person who will
14  be called as a witness against a current client at a criminal
15  trial.")

16      Even if not called as a witness, defense counsel will have
17  learned privileged information from defendant (or D.K.), which could
18  be readily deployed against D.K. (or defendant).  The decision to use
19  that information (or not use it) implicates the conflict of counsel
20  concerns described above.

21      Finally:  the government asked defense counsel whether they had
22  obtained a waiver concerning the proceeds from the Tuna Canyon sale.
23  Counsel stated that they "will be prepared to respond to your implied
24  motion to disqualify."  The government also asked about a conflict
25  waiver for D.K., and for written confirmation (following a prior oral
26  statement) that D.K. was being represented by defense counsel.
27  Counsel responded by asking to clarify the scope of the government's

28

14

request.  Counsel did not indicate whether conflict waivers had been completed as to either issue or individual.

 To be clear, the government is not asking for disqualification at this time.  However, consistent with the ethical obligations contemplated by Mannhalt v. Reed, 847 F.2d at 583-84, the government respectfully requests that the Court inquire whether any waivers have been procured, and whether such waivers satisfy the conflict concerns described above.

1

<u>**DECLARATION OF DAVID W. WILLIAMS**</u>

2        I, David W. Williams, declare as follow:

3        1.   I am one of the Assistant United States Attorneys assigned

4   to <u>United States v. Chrismas</u>, 2:21-cr-127-MCS.  I have knowledge of

5   the facts set forth herein and could and would testify to those facts

6   fully and truthfully if called and sworn as a witness.

7        2.   Attached as <u>**Exhibit A**</u> are redacted financial records

8   related to the sale of an Ace Gallery artwork and the June 2015

9   payment of property taxes on Los Angeles County Parcel No. 4448-007-

10  061 (the "Tuna Canyon property").

11       3.   Attached as <u>**Exhibit B**</u> are a request for release of lien and

12  a record of recorded IRS liens.

13       4.   Attached as <u>**Exhibit C**</u> are copies of emails between

14  defendant and Carolyn Dye.

15       5.   Attached as <u>**Exhibit D**</u> is an excerpted information page

16  signed and dated by defendant in October 2023, in connection with

17  escrow for the sale of the Tuna Canyon property.

18       6.   Attached as <u>**Exhibit E**</u> is an email from defendant to an

19  employee of the escrow company for the sale of the Tuna Canyon

20  property.

21       7.   Attached as <u>**Exhibit F**</u> is an authorization page permitting

22  defendant's assistant, D.K., to communicate with escrow regarding the

23  sale of the Tuna Canyon property.

24       8.   My office's production logs indicate that all of the

25  preceding items were produced to defense counsel as reflected in

26  their respective Bates stamps.

27       9.   Attached as <u>**Exhibit G**</u> is an initial financial analysis for

28  Ace Gallery, compiled in May 2016, showing that the bankruptcy estate

16

paid $4,041.37 for property taxes on defendant's Tuna Canyon property during the bankruptcy period alone.  I downloaded this document from PACER on May 16, 2024.

9.   On May 15, 2024, I asked defense counsel whether they had obtained any conflict waivers regarding either the money transfers associated with the sale of the Tuna Canyon property, or the multiple representation of defendant and D.K.  As to the Tuna Canyon property, defense counsel answered in part that they "will be prepared to respond to your implied motion to disqualify."  In response to the government's request concerning their representation of D.K., counsel asked to clarify the scope of the question.  Counsel did not indicate whether conflict waivers had been completed as to either issue or individual.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on May 16, 2024.

David W. Williams

Exhibit A

# ACE GALLERY NEW YORK

### 5514 WILSHIRE BOULEVARD ·11TH FLOOR
### LOS ANGELES · CALIFORNIA · 90036 · TEL 323.935.0088

## BILL OF SALE

JUNE 9, 2015

PAGE 1 OF 1

L▮▮▮ M▮▮▮ IS PURCHASING THE FOLLOWING ARTWORKS FROM ACE GALLERY:

|  |  |
|---|---|
| ARTIST: | MARY CORSE |
| TITLE: | *UNTITLED (WHITE, BLACK & RED)*, 2015 |
| MEDIUM: | GLASS MICROSPHERES IN ACRYLIC ON CANVAS |
| SIZE: | 90" (H) X 90" (W) |
| PRICE: | $275,000.00 |

|  |  |
|---|---|
| ARTIST: | MARY CORSE |
| TITLE: | *UNTITLED (WHITE INNER BAND WITH FLAT WHITE OUTER BAND)*, 2012 |
| MEDIUM: | GLASS MICROSPHERES IN ACRYLIC ON CANVAS |
| SIZE: | 6'6"(H) X 4'11" (W) |
| PRICE: | $165,000.00 |

| | |
|---|---|
| SUBTOTAL: | $440,000.00 |
| MINUS 20% DISCOUNT FOR RECEIPT OF FUNDS 6/9/15: | - $88,000.00 |
| NO SALES TAX (RESALE CERTIFICATE ON FILE) | |
| SUBTOTAL: | $352,000.00 |

| | |
|---|---|
| 60% OF TOTAL DUE TO ACE GALLERY: | $211,200.00 |

*Douglas Chrismas (signature)*   June 9/15

DOUGLAS CHRISMAS                         DATE
DIRECTOR AND CHIEF CURATOR
INVOICE # 2081

DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICITY OF THE ABOVE DESCRIBED
ARTWORK. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORKS PASSES TO THE BUYER UPON RECEIPT
OF PAYMENT IN FULL.

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY
LOS ANGELES UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE.
A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. PURCHASER AGREES TO PAY 3% PER MONTH INTEREST ON DELINQUENT
ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND
ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK IS PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF
THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID, ANY DEPOSIT BE RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND
THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHES TO RESELL THE ARTWORK, ACE GALLERY MUST BE NOTIFIED IN WRITING BEFORE SUCH SALE TAKES PLACE AND ACE
GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION
FROM THE CLIENT.

00530

Case 2:15-ap-01679-RK   Doc 1001-4   Filed 06/09/21   Entered 06/09/21 17:19:52
Desc Exhibit Part 4   Page 81 of 150

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CNB | | 287 | UBS AG | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140522 | 2014 | 889.2 |
| CNB | | 287 | FIRST REPUBLIC BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140527 | 5397 | 179850 |
| CNB | | 229 | ACE GALLERY NEW YORK CORPORATION | | 402 | ART AND ARCHITECTURE BOOKS OF THE | | 20140602 | 3813 | 30400 |
| CNB | | 287 | CITIBANK, NEW YORK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140605 | 228 | 50000 |
| CNB | | 287 | HSBC BANK USA, NA | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140611 | 3083 | 57000 |
| CNB | | 287 | CITIBANK, NEW YORK | | 402 | ART AND ARCHITECTURE BOOKS OF THE | | 2014063D | 2625 | 325000 |
| CNB | | 229 | ACE GALLERY NEW YORK CORPORATION | | 402 | ART AND ARCHITECTURE BOOKS OF THE | | 20140701 | 6693 | 250000 |
| CNB | | 287 | CITIBANK, NEW YORK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140710 | 2058 | 83500 |
| CNB | | 8287 | UBS AG | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140723 | 3651 | 13090 |
| CNB | | 229 | ACE GALLERY NEW YORK CORPORATION | | 287 | | | 20140807 | 3103 | 200000 |
| CNB | | 126 | FX WIRE CLEARING - CNY | | 126 | FX WIRE CLEARING - CNY | | 20140807 | 8892 | 45559.53 |
| CNB | | 287 | TD BANK, NA | | 287 | UNION BANK OF CALIFORNIA | | 20140812 | 6811 | 4000 |
| CNB | | 126 | FX WIRE CLEARING - CNY | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140820 | 7257 | 44036.62 |
| CNB | | 287 | CITIBANK, NEW YORK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140912 | 4979 | 12885 |
| CNB | | 287 | BANK OF AMERICA, N.A., NY | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140922 | 6052 | 225000 |
| CNB | | 402 | ART AND ARCHITECTURE BOOKS OF THE | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140924 | 5966 | 54000 |
| CNB | | 287 | CITIBANK, NEW YORK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20140929 | 4284 | 20000 |
| CNB | | 287 | CITIBANK, NEW YORK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20141006 | 2388 | 45000 |
| CNB | | 229 | ACE GALLERY NEW YORK CORPORATION | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20141020 | 4741 | 27250 |
| CNB | | 287 | WELLS FARGO BANK | | 287 | HSBC BANK USA, NA | | 20141021 | 4711 | 700 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20141204 | 361 | 15696 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20141218 | 652 | 319980 |
| CNB | | 287 | BARCLAYS BANK, PLC | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150102 | 6172 | 219980 |
| CNB | | 287 | BANKERS' BANK NORTHEAST | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150114 | 1729 | 19980 |
| CNB | | 287 | WELLS FARGO BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150115 | 5240 | 188500 |
| CNB | | 229 | ACE GALLERY NEW YORK CORPORATION | | 287 | HSBC BANK USA, NA | | 20150116 | 5041 | 43600 |
| CNB | | 287 | BARCLAYS BANK, PLC | | 287 | | | 20150116 | 5857 | 20000 |
| CNB | | 287 | THE NORTHERN TRUST COMPANY | | 287 | CHASE MANHATTAN BANK | | 20150120 | 2577 | 74261.2 |
| CNB | | 287 | CITIBANK, NEW YORK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150120 | 1012 | 8720 |
| CNB | | 229 | ACE GALLERY NEW YORK CORPORATION | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150211 | 2007 | 30000 |
| CNB | | 287 | BARCLAYS BANK, PLC | | 87 | WELLS FARGO BANK | | 20150211 | 3284 | 30000 |
| CNB | | 229 | ACE GALLERY NEW YORK CORPORATION | | 87 | WELLS FARGO BANK | | 20150212 | 5913 | 30000 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150217 | 2969 | 108738.8 |
| CNB | | 287 | WELLS FARGO BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150224 | 6244 | 12000 |
| CNB | | 287 | CITIZENS BUSINESS BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150319 | 5917 | 258000 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150402 | 5281 | 60000 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150424 | 9281 | 399200 |
| CNB | | 287 | WELLS FARGO BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150428 | 9811 | 52320 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150504 | 4694 | 7000 |
| CNB | | 287 | FIVE POINTS BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150515 | 6894 | 252000 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150515 | 678 | 99980 |
| CNB | | 287 | WELLS FARGO BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150529 | 2337 | 28000 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION L M | | 20150609 | 6080 | 211200 |
| CNB | | 287 | WELLS FARGO BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150615 | 588 | 24080 |
| CNB | 827 | | WP6 RESTAURANT MANAGEMENT GROUP LLC | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150706 | 6195 | 4800 |
| CNB | | 287 | THE BANK OF NEW YORK MELLON | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150707 | 1999 | 165000 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150715 | 9046 | 108000 |
| CNB | | 287 | BANK OF AMERICA, N.A., NY | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150716 | 7558 | 108000 |
| CNB | | 000 | WIRE SUSPENSE LIABILITY ACCOUNT | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150728 | 3129 | 48000 |
| CNB | | 287 | CHASE MANHATTAN BANK | | 229 | ACE GALLERY NEW YORK CORPORATION | | 20150804 | 7229 | 159972 |
| CNB | | | | | 229 | | | 20150811 | 512 | 20165 |

CNB 000157

00531

0229

Page 1      (19)

Account #:  ▮▮▮▮0229

This statement: June 30, 2015          Contact us:
Last statement: May 29, 2015           213 673-7700

                                       City National Bank
                                       400 N Roxbury Drive
001                    0830L            Beverly Hills CA  90210
ACE GALLERY NEW YORK CORPORATION
5514 WILSHIRE BLVD 2ND FL               cnb.com
LOS ANGELES CA  90036

WITH BOOK2BANK YOU CAN REDUCE THE COST OF PAYING BILLS AND SYNC YOUR
CITY NATIONAL ACCOUNTS WITH YOUR ACCOUNTING SOFTWARE. FOR MORE
INFORMATION, CONTACT YOUR RELATIONSHIP MANAGER.

Business Elite Checking

| Account Summary | | Account Activity | | |
|---|---|---|---|---|
| Account number | 123720229 | Beginning bal | (5/29/2015) | $37,111.71 |
| Minimum balance | $-921.34 | Deposits | (4) | + 18,448.00 |
| Average balance | $7,343.17 | Electronic cr | (2) | + 235,280.00 |
| Avg. collect bal | $6,973.00 | Other credits | (1) | + 6,000.00 |
| | | Total credits | | +$259,728.00 |
| | | Checks paid | (19) | - 261,643.18 |
| | | Electronic db | (8) | - 5,639.14 |
| | | Other debits | (8) | - 27,667.30 |
| | | Total debits | | - $294,949.62 |
| | | Ending balance | (6/30/2015) | $1,890.09 |

DEPOSITS

| Date | Description | Reference | Credits | Control Number |
|---|---|---|---|---|
| 6-2 | Deposit | | 688.00 | 8600 |
| 6-11 | Deposit | | 10,960.00 | 8100 |
| 6-12 | Deposit | | 1,800.00 | 1900 |
| 6-29 | Deposit | | 5,000.00 | 7500 |

ELECTRONIC CREDITS

| Date | Description | | Credits | ber |
|---|---|---|---|---|
| 6-9 | Incoming Wire-Dom | | 211,200.00 | 6080 |
| 6-15 | Incoming Wire-Dom | | 24,080.00 | 0588 |

OTHER CREDITS

| Date | Description | Reference | Credits | ber |
|---|---|---|---|---|
| 6-8 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0123206347 | | 6,000.00 | 2152 |

0229

ACE GALLERY NEW YORK CORPORATION          Page 3
June 30, 2015                             Account #:     0229

ELECTRONIC DEBITS (Continued)

| Date | Description | Debits | Control Number |
|------|-------------|--------|----------------|
| 6-26 | Preauthorized Debit ANTHEM BC RA-0201004 000000614815554 | | 1302 |
| | DOUGLAS J CHRISMAS CCD | 649.41 | |

OTHER DEBITS

| Date | Description | Reference | Debits | Control Number |
|------|-------------|-----------|--------|----------------|
| 6-9 | Service Charge INCOMING WIRE-DOM | | 13.00 | 6080 |
| 6-10 | Legal Process Debit | | 100.00 | 2626 |
| 6-10 | Legal Process Debit | | 27,414.30 | 2626 |
| 6-11 | NSF Paid Item Fee FOR OVERDRAFT CHECK # 1465 | | 37.00 | 1200 |
| 6-15 | Service Charge INCOMING WIRE-DOM | | 13.00 | 0588 |
| 6-15 | NSF Paid Item Fee FOR OVERDRAFT CHECK # 1460 | | 37.00 | 5819 |
| 6-30 | Service Charge BUS PACKAGE FEE | | 50.00 | 0000 |
| 6-30 | Service Charge ENHANCED IMAGE STM | | 3.00 | 0000 |

DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 05-29 | 37,111.71 | 06-10 | 1,937.53 | 06-22 | 3,862.23 |
| 06-01 | 24,376.83 | 06-11 | -921.08 | 06-25 | 2,592.50 |
| 06-02 | 1,064.83 | 06-12 | -921.34 | 06-26 | 1,943.09 |
| 06-03 | 464.83 | 06-15 | 16,308.66 | 06-29 | 1,943.09 |
| 06-08 | 6,464.83 | 06-16 | 4,808.66 | 06-30 | 1,890.09 |
| 06-09 | 61,451.83 | 06-17 | 4,362.23 | | |



Date:20150611 Check:1465 Account 0229 Amount:1414.01    Date:20150611 Check:1465 Account 0229 Amount:1414.01

USAO_00005288
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Exhibit B



3700 Wilshire Blvd., Suite 1005, Los Angeles CA 90010
Tel 213.769.0044 • Fax 213.769.0045

IRS
Attn: Penny K. Hays
Via Email: ▮▮▮▮▮▮▮▮

Date: November 16, 2023
Escrow No.: 134940-JY

Form 8821 Attached

**REQUEST FOR DEMAND
AND RELEASE OF RECORDED LIEN**

Ladies/Gentlemen:

Douglas J Chrismas has/have opened an escrow with us covering property legally described as:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

and commonly known as:  Vacant Land : 2825 Tuna Canyon Road | APN 4448-007-061  Topanga, CA 90290

The instructions provide for the payment of the Recorded Lien now held by you.  **At the request of the parties in interest, please fill in and sign the original of the attached Beneficiary's Demand, and return this entire page to this office, along with the release of the recorded lien.**

Thank you for your prompt attention to this matter.

Sincerely,
Eon Escrow, Inc.


Jessica Yu
Escrow Officer

USAO_00034914

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Page:  2

Date:  November 16, 2023                                        Escrow No.:  134940-JY

## DEMAND FOR PAYMENT

Eon Escrow, Inc.

I/We hand you herewith:

Release of Recorded Lien

You are authorized to use all of the above described documents provided you hold for the undersigned the

Sum of $_____ with interest on the sum of $_____

At the rate of _____ % per annum from _____ to _____.

Make disbursement check payable to: _____

_____

In the event that the conditions of this Demand have not been complied with at the time provided herein, you are instructed, nevertheless, to use said documents at any time thereafter as soon as the conditions (except as to time) have been complied with, unless I/We shall have made written demand upon you for their return to me/us.

MAIL CHECK TO: _____

_____

SIGNATURE:_____   SIGNATURE:_____

Telephone Number:  _____

USAO_00034915

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Recording Requested By Internal Revenue Service. When recorded mail to:

INTERNAL REVENUE SERVICE
300 N Los Angeles St Mail Stop 5027
LOS ANGELES, CA 90012

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**

# 20130324325

**March 04, 2013 AT 8:37 AM**

**FEE $18.00**

For Optional Use by Recording Office

| Form 668 (Y)(c) (Rev. October 2000) | Department of the Treasury - Internal Revenue Service **Notice of Federal Tax Lien** |
|---|---|
| Area: SMALL BUSINESS/SELF EMPLOYED AREA #7 Lien Unit Phone: (800) 913-6050 | Serial Number 923969713 |

**As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

Name of Taxpayer  DOUGLAS J CHRISMAS

Residence  5514 WILSHIRE BLVD
LOS ANGELES    CA    90036-3829

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 6672 | 12/31/2008 | XXX-XX-5056 | 02/27/2012 | 03/29/2022 | 0300.40 |
| 6672 | 03/31/2009 | XXX-XX-5056 | 02/27/2012 | 03/29/2022 | 1181.62 |
| 6672 | 06/30/2009 | XXX-XX-5056 | 02/27/2012 | 03/29/2022 | 25787.40 |
| 6672 | 06/30/2010 | XXX-XX-5056 | 06/27/2011 | 07/27/2021 | 25442.09 |
| 6672 | 09/30/2010 | XXX-XX-5056 | 06/27/2011 | 07/27/2021 | 22194.98 |
| 6672 | 12/31/2010 | XXX-XX-5056 | 06/27/2011 | 07/27/2021 | 23319.62 |
| 6672 | 03/31/2011 | XXX-XX-5056 | 02/27/2012 | 03/29/2022 | 23309.19 |
| 6672 | 06/30/2011 | XXX-XX-5056 | 02/27/2012 | 03/29/2022 | 25867.51 |
| 6672 | 12/31/2011 | XXX-XX-5056 | 12/03/2012 | 01/02/2023 | 21594.38 |
| 6672 | 03/31/2012 | XXX-XX-5056 | 12/03/2012 | 01/02/2023 | 24986.15 |
| 6672 | 06/30/2012 | XXX-XX-5056 | 12/03/2012 | 01/02/2023 | 25736.20 |

Place of Filing

COUNTY RECORDER
LOS ANGELES

Total  $   219719.54

This notice was prepared and signed at   OAKLAND, CA   , on this, the   21   day of   February   2013  .

| Signature  R. A. Mitchell | Title   TERRITORY MANAGER |
|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 – Kept By Recording Office

Form 668(Y)(c) (Rev. 10-00)
CAT. NO 60025X

USAO_00034916

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Recording Requested By Internal Revenue
Service. When recorded mail to:

INTERNAL REVENUE SERVICE
300 N Los Angeles St Mail Stop 5027
LOS ANGELES, CA 90012

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**

# 20140450610

**May 01, 2014 AT 8:09 AM**
                **FEE $18.00**

For Optional Use by Recording Office

| Form 668 (Y)(c)<br>(Rev. October 2000) | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** |
|---|---|
| Area: SMALL BUSINESS/SELF EMPLOYED AREA #7<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br>995990714 |

**As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

Name of Taxpayer  DOUGLAS J CHRISMAS

Residence        5514 WILSHIRE BLVD
                 LOS ANGELES       CA   90036-3829

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 6672<br>6672 | 12/31/2012<br>03/31/2013 | XXX-XX-5056<br>XXX-XX-5056 | 02/24/2014<br>02/24/2014 | 03/25/2024<br>03/25/2024 | 25839.73<br>7082.75 |

| Place of Filing | | | |
|---|---|---|---|
| COUNTY RECORDER<br>LOS ANGELES | | Total  \$ | 32922.48 |

This notice was prepared and signed at  OAKLAND, CA                                   , on this,
the ___21___ day of April  2014  .

| Signature  *R. A. Mitchell* | Title   TERRITORY MANAGER |
|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 – Kept By Recording Office

Form 668(Y)(c) (Rev. 10-00)
CAT. NO 60025X

USAO_00034917
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Exhibit C

**Carolyn Dye**

| | |
|---|---|
| **From:** | Art Collection Development ██████████████████████ |
| **Sent:** | Tuesday, January 30, 2024 2:10 PM |
| **To:** | Carolyn Dye |
| **Subject:** | Re: Financial information |

Carolyn,

Thank you for your response. I will discuss this situation concerning the judgment and your request with an attorney, as I feel it would be prudent for me to get legal advice before moving forward with your requests.

Douglas

On Jan 30, 2024, at 12:05 PM, Carolyn Dye ████████████ wrote:

Mr. Chrismas, I find that in this life, one must multi task. Your trial has been put over several times, and now is not calendared until May. As you admit what I have asked you for is not going to take that much time.
As or why now, Sam is trying to close out this case once and for all, so he needs to be able to figure out your likely collectability.
He has the right to examine you under oath once every 120 days. It would be easier on all parties if you just forwarded the requested information and thereby cooperate with him.
Carolyn

**From:** Art Collection Development ████████████████████████
**Sent:** Tuesday, January 30, 2024 11:38 AM
**To:** Carolyn Dye ████████████
**Subject:** Re: Financial information

Carolyn,

What you are asking me to do, will cost me time (not a lot of time) to put together diverting my main focus right now which is on my forthcoming trial. Could you please indicate to me why it might be to my advantage to focus time now on the judgement, rather than focusing on it after the trial is over.

Douglas

On Jan 30, 2024, at 8:37 AM, Carolyn Dye ████████████ wrote:

Mr. Chrismas, in lieu of submitting to a court-ordered debtor exam, please provide to Mr. Leslie a copy of the last two years of tax returns filed and a copy

1

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

of the last 12bmonths of bank statements for each and every account on which you have signature authority. If these documents are not received by February 9, 2024, then I will seek a court order compelling you to appear for an examination under oath.

Carolyn Dye
Carolyn A. Dye
Law Offices of Carolyn A. Dye
15030 Ventura Blvd. Ste. 527
Sherman Oaks, CA 91403

NOTICE: This communication is intended for the use of the individual or entity to which it is addressed and may contain attorney/client information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email or by telephone and immediately delete this communication and all its attachments.

USAO_00036380
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**Carolyn Dye**

| | |
|---|---|
| **From:** | Art Collection Development |
| **Sent:** | Friday, February 9, 2024 11:29 AM |
| **To:** | Carolyn Dye |
| **Attachments:** | Scan.pdf |

Carolyn,

Regarding your inquiry about my tax returns. I have an indebtedness to the IRS of approximately $244,000. Last month, an IRS agent spent an entire afternoon reviewing all my financial information. Yesterday, I received this notice from the IRS, declaring my current tax situation uncollectible.

FYI.

Douglas

Please confirm the receipt of this email.

1

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Exhibit D

PLEASE COMPLETE, SIGN AND RETURN

Escrow No.: **134940-JY**
Order No.: **SOT2301191-AW**

## CONFIDENTIAL INFORMATION STATEMENT

Proper completion of this form will help protect you by enabling the title company to eliminate the problems that might arise through similarity of your name with the name of another person against whom there may be judgments, tax liens, or other matters affecting property ownership.

COMPLETION OF THIS FORM WILL EXPEDITE YOUR ORDER AND WILL HELP PROTECT YOU

| Name (1st Party) | Name (2nd Party) |
|---|---|
| *DOUGLAS J. CHRISMAS* | |
| First    Middle    Last | First    Middle    Last |
| X ████44    x *VANCOUVER* | |
| Date of birth  *1968*    Birthplace *CANADA* | Date of Birth    Birthplace |
| x ████ | |
| I have lived in California since    Social Security No. | I have lived in California since    Social Security No. |
| Home Phone ████    Business Phone | Home Phone ____    Business Phone ____ |
| Cell Phone ████ | Cell Phone ____ |
| Driver's licen ████ | Driver's license # ____ |

ARE PARTIES 1 and 2  ( ) Married  ( ) Domestic Partners  Married on _____ at _____ Maiden Name _____

**RESIDENCE(S) DURING PRECEDING 10 YEARS**

| NUMBER AND STREET | CITY | FROM | TO |
|---|---|---|---|
| ████ *OGDEN DR LA 90036* | | *2017* | *NOW* |
| *5314 WILSHIRE BLVD LA* | | *1986* | *2016* |
| | | | |
| | | | |

(If more space is needed, use reverse side of form)

**OCCUPATION (S)** ████

| | OCCUPATION | FIRM NAME | ADDRESS | NO. YEARS |
|---|---|---|---|---|
| 1st Party PRESENT OCCUPATION | *ART COLLECTION DEVELOPMENT* | *OGDEN LA* | | *6 YEARS* |
| PRIOR OCCUPATION | *" SAME* | *5314 WILSHIRE BLVD* | | *20 YEARS* |
| 2nd Party PRESENT OCCUPATION | | | | |
| PRIOR OCCUPATION | | | | |

(If more space is needed, use reverse side of form)
**FORMER MARRIAGE(S)/PARTNERSHIPS**

If no former marriages/Domestic Partnerships, write "none"

1st Party - Name of former Spouse/Domestic Partner _____

Deceased _____ Divorced/Termination _____ When _____ Where _____

2nd Party - Name of former Spouse/Domestic Partner _____

Deceased _____ Divorced/Termination _____ When _____ Where _____

(If more space is needed, use reverse side of form)

THE STREET ADDRESS of the property in this transaction is:  Vacant Land : 2825 Tuna Canyon Road | APN 4448-007-061, Topanga, CA 90290

IMPROVEMENT: ( ) SINGLE RESIDENCE   ( ) MULTIPLE RESIDENCE   ( ) COMMERCIAL
OCCUPIED BY: ( ) OWNER   ( ) LESSEE   ( ) TENANTS
ANY PORTION OF NEW LOAN FUNDS TO BE USED FOR CONSTRUCTION:   ( ) YES   ( ) NO

HAS ANY CONSTRUCTION OR IMPROVEMENTS BEEN MADE TO THE PROPERTY IN THIS TRANSACTION DURING THE LAST SIX MONTHS?
( ) YES   ( ) NO

| *[signature]* | |
|---|---|
| SIGNATURE | SIGNATURE |
| *Oct 27/23* | |
| DATE | DATE |
| Email _____ | Email _____ |

USAO_00036052

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Exhibit E

**From:** Art Collection Development ███████████████████
**To:** Jessica Yu ████████████████
**Subject:**
**Date:** Tue, 31 Oct 2023 21:41:14 +0000
**Importance:** Normal

---

Jessica,

Please forward me the documents you would like The Frederick Weisman Company to sign so that I can deliver them to the Frederick Weisman Company. I don't want anything to be sent to The Frederick Weisman Company from Eon Escrow. This is how I would like to work with you on this. Please bear with me.

Also, D███ will be contacting the other Tax Agencies to see if we can receive a deduction regarding those liens.

Thank you for all your assistance regarding this sale.

Cordially,

Douglas
█████5610

Please confirm the receipt of this email.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Exhibit F



3700 Wilshire Blvd., Suite 1005,  Los Angeles CA 90010
Tel 213.769.0044 • **Fax** 213.769.0045

Escrow No.: 134940-JY
Escrow Officer: Jessica Yu
Date: October 31, 2023

## CONTACT AUTHORIZATION

The undersigned party hereby designate the following individuals as contact parties for the undersigned ("Contacts") in connection with the above-referenced escrow and further authorize the Contacts to make binding decisions for the undersigned in connection with the same escrow.  The undersigned instructs Eon Escrow, Inc. to send all notices to the Contacts, and Eon Escrow, Inc. is expressly authorized to receive binding instructions from any one of the Contacts on behalf of the undersigned in connection with the above-entitled escrow.  The instructions of any one of the Contacts will have the same force and effect as if the undersigned party gave the instruction. Parties herein agree to indemnify, defend and hold Eon Escrow, Inc., its agents, employees and officers of the corporation, harmless from any liability or loss in connection with this instruction.

### CONTACTS

Name: D███ K███ _____

Relationship: Assistant _____

Phone Number:███████-5694 _____

 Email:██████████████ _____


Name: _____

Relationship: _____

Phone Number: _____

 Email: _____

I hereby agree to the above Contact Authorization.

By: *Douglas Chrismas* [Electronic Signature] _____     Date:___October 31, 2023_____
    Douglas Chrismas

USAO_00034380

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Exhibit G

**ACE GALLERY NEW YORK CORPORATION**
**ACE GALLERY NEW YORK, INC.**
**Case Number: 2:13-bk-14135-RK**
CASH FROM FROM FEBRUARY 2013 THROUGH FEBRUARY 2016

CASH OUT

| | | |
|---|---:|---:|
| Transfers of Funds to Related Entities | | |
| Transfers to Art & Architecture | 4,693,383.89 | |
| Transfers to Ace Museum (net) | 4,568,382.02 | |
| Transfers to Ace Gallery New York, Inc. | 160,000.00 | |
| | | |
| Total Transfers of Funds to Related Entities | 9,421,765.91 | |
| | | |
| Personal Payments | | |
| Payments Marked "Cash for DC" | 29,213.50 | |
| Payments to Jennifer Kellen | 5,582.07 | |
| Payments for Chrismas' Apartment | 174,977.79 | |
| Payments to LA County for Tuna Canyon taxes | 4,041.37 | |
| Payments to Credit Cards | 180,715.24 | |
| Repayment from Chrismas (net) | (2,900.00) | |
| | | |
| Total Personal Payments | 391,629.97 | |
| | | |
| Business Payments | | |
| Payments to Laywers | 165,039.46 | |
| Payments to Owner of Secondary Art | 4,000,000.00 | |
| Payments to Artists | 953,933.18 | |
| Payments marked "Miscellaneous" | 105,400.00 | |
| Rent Payments | | |
| Payments to AERC | 626,742.73 | |
| Payments for Storage at Cochran | 240,056.25 | |
| Payment to Culver Center Partners | 452,171.15 | |
| Payments to 400 S La Brea | 48,000.00 | |
| Payments to Greg Econn | 35,000.00 | |
| Other Business Operation Payments | 453,257.52 | |
| | | |
| Total Business Payments | 7,079,600.29 | |
| | | |
| TOTAL CASH OUT | | 16,892,996.17 |
| | | |
| NET CASH AT FEBRUARY 29, 2016 | | 17,157.32 |