1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS J. CHRISMAS,<br><br>Defendants. | Case No. 2:21-cr-00127-MCS-1<br><br>**ORDER ON DEFENDANT'S MOTION TO COMPEL DISCOVERY (ECF NO. 97), DEFENDANT'S MOTIONS IN LIMINE (ECF NOS. 85, 86), AND THE GOVERNMENT'S MOTIONS IN LIMINE (ECF NOS. 89, 91)** |

Defendant Douglas J. Chrismas filed two motions in limine to exclude: (1) evidence pertaining to Defendant's 1986 criminal case and (2) evidence of other acts, specifically: uncharged financial transactions involving himself, evidence relating to his violation of the bankruptcy rules, and evidence suggesting he wronged others in contracts. (Def. MIL 1, ECF No. 85; Def. MIL 2, ECF No. 86.) The Government opposed both motions. (Def. MIL 1 Opp'n, ECF No. 87; Def. MIL 2 Opp'n, ECF No. 88.) Defendant filed a reply. (Def. MIL Reply & Gov't MIL Opp'n, ECF No. 94.)

Separately, Defendant moved to compel the disclosure of grand jury transcripts of witness testimony and legal instructions given to the grand jury in the instant case. (MTC, ECF No. 97.) The Government opposed the motion. (MTC Opp'n, ECF No.

101.) Defendant did not file a reply.

The Government filed two motions in limine to exclude: (1) Defendant's presentation of a duress defense and (2) Defendant's presentation of a defense that he transferred funds with the intent to make a profit that would benefit Ace Gallery. (Gov't MIL 4, ECF No. 89; Gov't MIL 5, ECF No. 91.)[1] Defendant opposed both motions. (Def. MIL Reply & Gov't MIL Opp'n.)

The Court denied Defendant's motions in limine and the Government's fourth motion in limine at the April 22, 2024, status conference. Herein, the Court provides further reasoning in support of its oral rulings. Relatedly, the Court made tentative findings regarding Defendant's motion to compel and the Government's fifth motion in limine at the April 29, 2024, status conference. (4/29/24 Mins., ECF No. 105.) The Court requested supplemental briefing on issues pertaining to the remaining motions. (Suppl. Br. Order, ECF No. 102.) The Government filed a responsive brief, (Gov't Suppl. Br., ECF No. 106), which Defendant opposed, (Def. Suppl. Br. Opp'n, ECF No. 117). Defendant filed a responsive brief, (Def. Suppl. Br., ECF No. 109), which the Government opposed, (Gov't Suppl. Br. Opp'n, ECF No. 114). The Court heard oral argument on the motions at the April 22 and 29 status conferences.

## I. BACKGROUND

Defendant is charged with three counts of embezzlement against a bankruptcy estate in violation of 18 U.S.C. § 153. (Indictment, ECF No. 1.) Defendant was previously an officer of Art and Architecture Books of the 21st Century, a company operating as "Ace Gallery." (Joint Statement of the Case 3, ECF No. 51.) On February 12, 2013, Ace Gallery declared bankruptcy and filed a petition for bankruptcy protection in federal court. (*Id.*) When that petition was filed, a bankruptcy estate was created, which included all of the property owned by Ace Gallery. (*Id.*) After Ace

---

[1] The Court previously resolved three other motions in limine filed by the Government. (10/2/23 Mins., ECF No. 62.)

1 Gallery declared bankruptcy, Defendant became the trustee of the bankruptcy estate. (*Id.*) In this role, he was responsible for controlling the bankruptcy estate's property. (*Id.*) Defendant remained trustee of the Ace Gallery estate until April 6, 2016. (*Id.*)

The Government alleges that, during Defendant's time as trustee of the bankruptcy estate, Defendant embezzled property from it. (*Id.*) Specifically, the Government alleges that Defendant used his position as trustee to embezzle approximately $264,595 from the bankruptcy estate over the course of three transactions. (*Id.*) The Government alleges Defendant used this money to benefit a different company, which he also controlled, and not to benefit Ace Gallery. (*Id.*) Defendant denies the Government's allegations and has pleaded not guilty to all charges. (*Id.* at 3–4.)

**II.   DISCUSSION**

   **A.   Defendant's Motions**

Defendant filed two motions in limine, which the Court denied from the bench at the April 22 status conference. Defendant subsequently filed a motion to compel discovery from the Government, which the Court considers after receiving supplemental briefing pertinent to the motion.

      1.   Motion In Limine No. 1

Defendant seeks an order precluding the Government from introducing evidence from Defendant's 1986 criminal case pursuant to Federal Rule of Evidence 609(b). (Def. MIL 1.) The Government proffers it does not intend to introduce anything about the 1986 case in its case-in-chief, but that evidence of the case is admissible pursuant to Federal Rule of Evidence 404(b), particularly for impeachment purposes, if Defendant opens the door. (Def. MIL 1 Opp'n 1.)

The Court denies the motion. Federal Rule of Evidence 609 "appl[ies] to attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a). By Defendant's own admission, his 1986 criminal case "did not result in a conviction at all." (Def. MIL 1, at 3.) Therefore, Rule 609 does not apply.

3

*See United States v. Buck*, No. 2:19-cr-00595-CAS-1, 2021 WL 1127163, at *6 (C.D. Cal. Mar. 24, 2021) (finding evidence of a defendant's prior arrest was not admissible under Rule 609 because the rule "permits admission only of 'criminal conviction[s]'" (alteration in original)). On the other hand, Federal Rule of Evidence 404(b) pertains to evidence of other crimes, wrongs, or acts. Rule 404(b) "requires the prosecution to provide notice, regardless of how it intends to use the extrinsic act evidence at trial, i.e., during its case-in-chief, *for impeachment*, or for possible rebuttal." Fed. R. Evid. 404(b) advisory committee's note to 1991 amendment (emphasis added). The Court finds Rule 404(b) applies in assessing whether evidence of Defendant's 1986 case should be excluded. *See, e.g.*, *United States v. Gonzalez-Lira*, 936 F.2d 184, 189 (5th Cir. 1991) (Rule 404(b) applies to "wrongs" and "acts" in addition to "crimes," so "there is no requirement that the prior conduct even have resulted in an indictment or a formal charge.") The Ninth Circuit has "uniformly recognized that [Rule 404(b)] is one of inclusion and that other acts evidence *is admissible whenever relevant* to an issue other than the defendant's criminal propensity." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added).

The Court accepts the Government's proffer that it will not introduce evidence of the 1986 criminal case in its case-in-chief unless Defendant opens the door. (Def. MIL 1 Opp'n 3 n. 1.) However, if Defendant testifies at trial, the Government may be permitted to use evidence of the 1986 case pursuant to Rule 404(b) if it meets the four-part test articulated in *United States v. Montgomery*, 150 F.3d 983, 1000 (9th Cir. 1998), subject to the limitations of Rule 403. The Court reserves ruling on the admissibility of evidence from the 1986 case until trial. Defendant's first motion in limine to exclude evidence of Defendant's 1986 case pursuant to Rule 609 is denied.

        2.     <u>Motion In Limine No. 2</u>

Defendant seeks an order precluding the Government from introducing "other acts" evidence, specifically, "(1) [e]vidence relating to uncharged financial transactions involving Mr. Chrismas [Government Trial Exhibit 20]; (2) [e]vidence relating to Mr.

4

Chrismas's violation of any bankruptcy rules, including as his role as a fiduciary of the bankruptcy estate [Government Trial Exhibits 21–23]; [and] (3) [e]vidence suggesting that Mr. Chrismas wronged artists or others in contractual dealings" pursuant to Federal Rule of Evidence 404. (Def. MIL 2, at ii.) The Government opposes the motion as to the first two categories and argues this evidence is admissible as probative of Defendant's intent, knowledge, and motive. (Def. MIL 2 Opp'n 3.) The Government represents that it does not intend to proffer evidence in the third category. (*Id.*)[2]

As previously articulated, Rule 404(b) allows the introduction of evidence of other crimes, wrongs, or acts. "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). The Ninth Circuit has developed a four-part test to determine the admissibility of Rule 404(b) evidence:

> Evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

*United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999) (citation omitted). Evidence falling in the first two categories discussed in Defendant's motion clearly meets this four-factor test.

Government Trial Exhibit 20, a September 2013 email chain between the former Ace Gallery controller and an attorney for the bankruptcy estate, includes an explanation from the attorney that, if Mr. Chrismas "'caused the debtor to have lent bankruptcy estate funds' to an entity outside the bankruptcy estate, that 'would be a

---

[2] Neither the Government nor the Defendant provides the Court with copies of the trial exhibits Defendant seeks to exclude from evidence. The Court relies on the representations of the exhibits as described by both parties in adjudicating Defendant's motion.

complete fraud on the bankruptcy court for which [Mr. Chrismas] can be in big trouble.'" (Def. MIL 2 Opp'n 3 (quoting Government Trial Ex. 20).) The Government argues this evidence is admissible because it is "incredibly probative for the jury to learn that Defendant (a) knew what the rules were, and (b) did not make a mistake when he violated those rules." (Def. MIL 2 Opp'n 5.) The Court agrees that this evidence relates to the charged conduct at issue, that the 2013 email exchange is close in time to when the charged conduct occurred and while Defendant was trustee of the estate, that this email could support a finding that Defendant committed the charged crimes, and that the discussion is directly related to the offenses charged. Therefore, all *Castillo* factors weigh in favor of denying Defendant's motion as to Government Trial Exhibit 20.

Though the briefing leaves unclear whether Government Trial Exhibits 21–23 are invoices, emails, or a combination of the two, (Def. MIL 2, at 5; Def. MIL 2 Opp'n 3), it is undisputed that these exhibits reflect payments of bankruptcy assets by Defendant to a third party in 2014, (*id.*). These exhibits support the Government's argument that Defendant continued to direct assets of the bankruptcy estate to a third party after obtaining knowledge from an attorney that doing so would be illegal. These exhibits also appear to relate to the charged conduct, occurred while Defendant was trustee of the estate, could support a finding that Defendant committed the charged crimes, and relate to the offenses charged. *Castillo*, 181 F.3d at 1134. The Court denies Defendant's motion as to Government Trial Exhibits 21–23.

The Court denies Defendant's motion as to the third category at issue as moot. The Court accepts the Government's proffer that it will not introduce evidence falling within the third category. The Court reserves ruling on this issue at trial should it become live.

The Court denies Defendant's second motion in limine.

### 3. Motion to Compel

Defendant moves to compel the grand jury transcripts of witness testimony and legal instructions related to the instant case pursuant to Federal Rule of Criminal

6

1 Procedure 6(e) and *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (MTC 5–9.)
2 Specifically, Defendant avers the requested materials must be disclosed based on his
3 belief that the Government: "(1) failed to acknowledge, let alone present to the Grand
4 Jury, any evidence of [Sam Leslie] and his team's bias (and evidencing the
5 Government's own bias in its lack of investigation) and (2) misled the Grand Jury that
6 the indictment was based on a 'referral' by a Bankruptcy Court." (*Id.* at 6.)

7 As discussed at the April 29 status conference, Sam Leslie is the court-appointed
8 plan agent who took control of Ace Gallery on April 26, 2016. (*See* Maitia Decl. ¶ 5,
9 ECF No. 97-1.) Defendant intends to argue that Mr. Leslie and his counsel were
10 complaining witnesses who "had a financial interest in characterizing the charged
11 transactions as unlawful." (Def. Suppl. Br. 2.)

12 As a preliminary matter, and as ventilated at the April 29 status conference, it is
13 unclear to the Court, even after reviewing the supplemental briefing, how Mr. Leslie is
14 relevant to the presentation of a defense for the charged transactions, which occurred
15 prior to Mr. Leslie commencing his role as plan agent of Ace Gallery. (*See* Indictment;
16 Maitia Decl. ¶ 5.) Defendant avers the requested documents and the testimony of Mr.
17 Leslie are relevant to his defense that the Government's case against him is premised
18 on a biased complaint. (*See generally* MTC; Def. Suppl. Br. 7.) As the Court iterated at
19 the April 29 status conference, Defendant is entitled to call any witness to establish his
20 defense, though all testimony remains subject to the Federal Rules of Evidence.
21 Therefore, the only question for the Court to address is whether Defendant is entitled to
22 the requested grand jury instructions and transcripts.

23 Neither Rule 6(e) nor the Constitution dictates that Defendant is entitled to the
24 grand jury testimony and grand jury legal instructions pertaining to the Government's
25 case against him. Federal Rule of Criminal Procedure 6(e)(3)(E)(i) and (ii) permit a
26 court to disclose "at a time, in a manner, and subject to any other conditions that it
27 directs," "a grand jury matter: (i) preliminarily to or in connection with a judicial
28 proceeding" or "(ii) at the request of a defendant who shows that a ground may exist to

dismiss the indictment because of a matter that occurred before the grand jury." It is well established that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Unless a "particularized need exists which outweighs the policy of secrecy," grand jury materials should not be disclosed. *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (cleaned up). Defendant cites *United States v. Alter*, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973), to support his argument that the Court should mandate disclosure of the legal instructions given to the grand jury. However, the *Alter* court did not conclude that the defendant was entitled to the specific charging instructions the grand jury was given—it concluded that he was entitled to know the contents of the court's charges to the grand jury and the rules for the conduct of the grand jury, but it declined to address the merits of his instruction argument since the defendant suffered no prejudice. *Id.* at 1028–29; *see also United States v. Larson*, No. 07CR304S, 2012 WL 4112026, at *4–5, 7 (W.D.N.Y. Sept. 18, 2012) (denying defendant's motion requesting the production of grand jury materials, including legal instructions given to the grand jury, in part because the particular case instructions were protected by grand jury secrecy.)

One court in this circuit, *United States v. Belton*, No. 14-cr-00030-JST, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015), granted a defendant's motion to compel disclosure of grand jury instructions on the grounds that they did "not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect." However, another court in this circuit, *United States v. Morales*, No. S-05-0443 WBS, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007), denied a defendant's request for legal instructions given to a grand jury, unpersuaded by the argument that the instructions were not covered by grand jury secrecy.[3] The Court is persuaded by *Morales* and agrees that *Alter* does not stand for

---

[3] Defendant also cites *United States v. Diaz*, 236 F.R.D. 470, 477–78 (N.D. Cal. 2006),

the proposition that grand jury instructions are not protected by the secrecy afforded to grand jury proceedings. *See Douglas Oil Co. of Cal.*, 441 U.S. at 218. Therefore, the Court finds both the legal instructions given to the jury and the transcript of witness testimony are presumed to be subject to grand jury secrecy absent Defendant's showing that a "particularized need" exists warranting disclosure of the grand jury transcripts, *Walczak*, 783 F. 2d at 857, and absent a showing that any of the requested material may contain grounds to dismiss the indictment. Fed. R. Crim. P. 6(e)(3)(E)(i)–(ii).

Defendant avers the requested materials may contain evidence that the Government failed to present evidence of Mr. Leslie and his counsel's bias to the grand jury, and instead misled the grand jury that the indictment was based on a referral by a bankruptcy court. (MTC 6.) He speculates that if his "suspicious [sic] are correct, then disclosure of the factual testimony is required by the government's *Brady* obligation." (*Id.*) However, Defendant presents no argument explaining how any potential bias by Mr. Leslie and his counsel, or a referral to the Government by the bankruptcy court, suggests he has a "particularized need" entitling him to the requested materials. In fact, "[t]he prosecutor has no duty to present to the grand jury all matters bearing on witness credibility." *United States v. Benjamin*, 852 F.2d 413, 416 (9th Cir. 1988), *cert. granted, judgment vacated*, 490 U.S. 1043 (1989). And, even assuming arguendo that the Government provided the grand jury with improper legal instruction, "[e]rroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment." *United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989) (internal quotation marks omitted). Defendant has not provided the Court with the argument or facts necessary to support his assertion that he has a "particularized need" for the requested documents.

---

in support of his argument. With respect to the *Diaz* court, this Court is unpersuaded by its conclusory finding, absent citation of any binding or persuasive authority, that grand jury instructions "do not fall within the bar of Rule 6(e)." *Id.* at 477. The Court elects to engage with the ventilated discussions of *Alter* set forth in *Morales* and *Belton*.

9

What's more, Defendant accuses the Government of retaining *Brady* material without ventilating what the standard for disclosure is under *Brady* or articulating the basis for which he believes the requested materials fall under *Brady*. Instead, he leaves the Court to address his half-baked theories.

In *Brady v. Maryland*, the Supreme Court held that the government has a constitutional duty to disclose, upon request, all evidence favorable to a defendant. *See* 373 U.S. at 87. While *Brady* arose in a post-trial context, the Ninth Circuit clarified that, pretrial, *Brady* requires the government to disclose favorable information in its possession without attempting to predict whether disclosure would be material to the outcome of the trial. *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020). Evidence can be favorable "either because it is exculpatory or impeaching." *Id*. at 1031 (internal quotation marks omitted).

It is the responsibility of the government, not the trial court or the defendant, to decide what information must be disclosed under *Brady*. *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016). A defendant's "mere speculation about materials in the government's files [does] not require the district court to make those materials available, or mandate an *in camera* inspection." *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009) (internal quotation marks omitted).

Both in his motion and at oral argument, Defendant offered no evidence to support his belief that the requested materials contain information favorable to the defense. (*See generally* MTC.) Defendant's theories, which the Court only deciphers from the brief discussion at the status conference and the one-line accusation in his motion, that the grand jury instructions and transcripts constitute *Brady* material are entirely speculative. That is not enough. *See United States v. Lischewski*, No. 18-cr-00203-EMC-1, 2019 WL 2211328, at *2 (N.D. Cal. May 22, 2019) ("[A] defendant must provide more than mere speculation that *Brady* material exists . . . .").

Defendant's motion is denied.

### B. Government's Motions

#### 1. Motion In Limine No. 4

The Government seeks an order precluding Defendant from asserting a duress defense. (Gov't MIL 4.) Defendant does not oppose the motion, (Def. MIL Reply & Gov't MIL Opp'n 11 ("The defense has no opinion on whether the Court grants or denies [the motion], so long as the ruling does not impede Mr. Chrismas's ability to defend himself at trial.")), but he signals his intent to present a defense that the transactions at issue "were intended to pay the Museum lease to preserve the lease and accompanying purchase option for the benefit and use of ACE Gallery," but not that he intends to present a duress defense, (*id.*).

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," *Jones v. Davis*, 8 F.4th 1027, 1035 (9th Cir. 2021) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This includes "the right to put before a jury evidence that might influence the determination of guilt." *Id.* (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)). Nonetheless, "[t]he accused does not have an unfettered right to offer testimony that is inadmissible under standard rules of evidence." *Id.* at 1036 (cleaned up). "A trial court therefore may, consistent with the Constitution, exclude defense evidence through the proper application of evidentiary rules that serve a valid purpose in a given case, including when proposed evidence is 'only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues.'" *Id.* (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006)).

Here, the Government avers Defendant should be precluded from presenting a duress defense to the jury, or receiving a jury instruction on duress, given his failure to make "a *prima facie* showing of duress in a pre-trial offer of proof." (Gov't MIL 4, at 2 (quoting *United States v. Ibarra-Pino*, 657 F.3d 1000, 1004 (9th Cir. 2011)).)

Because Defendant avers he does not intend to present specifically a duress defense, the Court preliminarily denies the Government's motion as moot. *See, e.g.*, *D.A. v. Meridian Joint Sch. Dist. No. 2*, No. 1:11-cv-00119-CWD, 2013 WL 12147769,

11

at \*1 (D. Idaho June 14, 2013) (denying unopposed motions in limine as moot). If Defendant changes course and elects to present a duress defense at trial, he must do so subject to the standard set forth in *Ibarra-Pino*, 657 F.3d at 1004. The Court reserves ruling substantively on Defendant's ability to present a duress defense at trial.

          2.      <u>Motion In Limine No. 5</u>

The Government seeks an order precluding Defendant from presenting a defense that he transferred property from the bankruptcy estate to a separate property with the ultimate goal of having Ace Gallery emerge from bankruptcy. (Gov't MIL 5, at 1.) Defendant asks the Court to deny the motion on the basis that he intends to prove that the transactions at issue were "for the use and benefit of ACE Gallery." (Def. MIL Reply & Gov't MIL Opp'n 6.) The crux of the dispute is whether Defendant can present a defense that he is not guilty for the crimes for which he is charged, three counts of violations of 18 U.S.C. § 153, on the basis that the transactions took place for the eventual benefit of Ace Gallery. (*Compare* Def. MIL Reply & Gov't MIL Opp'n 1–2, 11–12, *with* Gov't Suppl. Br. 3, 10.)

Because the Ninth Circuit has no available case law interpreting 18 U.S.C. § 153, the Court turns to a sister circuit to discern whether Defendant's proffered defense is legally available. *United States v. Ross*, 206 F.3d 896, 899 (9th Cir. 2000) (finding "the district court properly granted the government's motion *in limine* to preclude evidence of the legally unavailable defense"). Here, *United States v. Love*, 17 F. App'x 796 (10th Cir. 2001), is instructive. There, a defendant appealed his conviction for a number of crimes, including embezzlement against a bankruptcy estate pursuant to pursuant to 18 U.S.C. §§ 2 and 153. 17 F. App'x at 798. The *Love* court affirmed conviction under both statutes. *Id.* In affirming the conviction, the court found that, contrary to defendant's position, 18 U.S.C. § 153 "prohibits knowing and fraudulent embezzlement, spending, transference, etc., whether or not such activity is occasioned toward the offender's own use." *Id.* at 801. In other words, the crime of embezzlement from a bankruptcy estate was complete once a defendant, with the requisite mens rea,

acted pursuant to one of the statutory verbs, regardless of what happened to the funds once they left the bankruptcy estate.[4]

The Government, both in its briefing and at the April 29 status conference, takes the same position. (*See* Tr. 22–23, ECF No. 110 ("The fact that the money went out of the estate is where the focus should be . . . .").) The statute itself reads, in relevant part, that it applies to a person "who knowingly and fraudulently appropriates to the person's own use, embezzles, spends, or transfers any property or secretes or destroys any documenting belonging to the estate of a debtor." 18 U.S.C. § 153(a). As the Government discusses in its supplemental brief, Defendant disclosed at the April 29 status conference that he interprets the clause "to the person's own use" to apply antecedently to each verb within the relevant portion of the statute. By Defendant's reading, therefore, the statute applies to a person who (1) knowingly and fraudulently, (2) appropriates to the person's own use; embezzles to the person's own use; spends to the person's own use; or transfers to the person's own use any property belonging to the bankruptcy estate. Given the Ninth Circuit does not have a model instruction for the relevant portion of 18 U.S.C. § 153, the parties previously agreed to the relevant Eleventh Circuit model instruction, which changes the order of the statutory text. Joint Proposed Instruction No. 31 reads that 18 U.S.C. § 153 applies to someone who "knowingly and fraudulently embezzled, spent, transferred, or appropriated to the

---

[4] Defendant attempts to distinguish his case from *Love* by arguing that the *Love* defendant was only charged under § 153 because of his role in aiding and abetting his codefendant, who was the trustee of the estate. (Def. Suppl. Br. Opp'n 7.) Defendant fails to marry his argument with the language of *Love*. Even though the *Love* defendant was found liable because of his role in assisting his codefendant, the court's substantive findings regarding liability pursuant to 18 U.S.C. § 153 were not premised in the role he played in commissioning the offense. What's more, amendments to the statute between 1993 and now do not bear on the actions for which a defendant can be found liable, but bear on the person who can be charged pursuant to the statute. *Compare* 18 U.S.C. § 153 (1993), *with* 18 U.S.C. § 153. This difference is irrelevant for purposes of analogizing *Love* here.

Defendant's own use property belonging to the bankruptcy estate." (Joint Proposed Jury Instructions 35, ECF No. 45.)

The Court agrees, in part, with the reasoning of the *Love* court. It interprets 18 U.S.C. § 153 to apply to a person who (1) knowingly and fraudulently (2) appropriates to the person's own use, embezzles, spends, or transfers any property or secretes or destroys any documents belonging to the estate of a debtor." 18 U.S.C. § 153.[5] "[T]o the person's own use" follows only the verb "appropriates," and applying the clause across all other verbs in the statute would be an atextual interpretation. *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("Because '[w]ords are to be given the meaning that proper grammar and usage would assign them,' the 'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose.'") (citations omitted) (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 140 (2012)). Defendant does not cite, and the Court has not located, any legislative history or case law suggesting that the legislature intended to distribute the clause "to the person's own use" to each verb in the statute. Therefore, the Court does not interpret 18 U.S.C. § 153 under the tortured reading proposed by Defendant, but instead interprets the statutory verbs to require appropriation of funds to a defendant's own use, or transfer of the funds, or spending of the funds, or embezzlement of the funds.

The Court, consistent with its prior decision precluding Defendant from presenting a defense that he intended to repay the bankruptcy estate, (10/2/23 Mins., ECF No. 62), grants the Government's motion in part. Pursuant to the statutory language, Defendant may argue that he is not liable under 18 U.S.C. § 153 because he did not appropriate funds from the bankruptcy estate to his own use, that he did not transfer the funds from the bankruptcy estate, that he did not spend the funds from the

---

[5] While the *Love* court "[did] not read . . . § 153 to require appropriation of funds to one's own use," the Court finds that, if appropriation is the verb on which the Government intends to prove its case, then it must show that the funds at issue were appropriated to Defendant's own use.

bankruptcy estate, that he did not embezzle the funds from the bankruptcy estate, and that he did not secrete or destroy any documents belonging to the bankruptcy estate. Defendant is precluded from arguing that he evades liability under the statute on the basis that he did not transfer, spend or embezzle funds from the bankruptcy estate for, or to, his own use. This defense is not legally available to him. *See Ross*, 206 F.3d at 898. The Court reserves the ability to modify this ruling, as appropriate, at any point during trial.

### III. CONCLUSION

Defendant's motions in limine are denied. Defendant's motion to compel is denied. The Government's fourth motion in limine is denied. The Government's fifth motion in limine is granted in part and denied in part. All decisions on motions in limine are subject to reevaluation at trial. *See* Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing . . . prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce v. United States*, 469 U.S. 38, 41–42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

**IT IS SO ORDERED.**

Dated: May 22, 2024

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE