E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
DAVID W. WILLIAMS (Cal. Bar No. 295204)
Assistant United States Attorneys
     Major Frauds/Appeals Sections
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0756/8485
     Facsimile: (213) 894-6265
     Email:    valerie.makarewicz@usdoj.gov
               david.williams3@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-cr-00127-MCS |
|---|---|
| Plaintiff, | GOVERNMENT'S BRIEF REGARDING THE COURT'S MAY 29 ORAL ORDER FOR SUPPLEMENTAL BRIEFING |
| v. | |
| DOUGLAS CHRISMAS, | Trial Date: May 28, 2024 |
| Defendant. | Trial Time: 8:30 a.m. |
| | Location: Courtroom of the Hon. Mark C. Scarsi |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Valerie L. Makarewicz and David W. Williams, respectfully submit the following brief responsive to the Court's May 29 order for supplemental briefing.

///

///

///

This brief is based upon the attached memorandum of points and authorities; the files and records in this case; and such further evidence and argument as the Court may permit.

Dated: May 29, 2024           Respectfully submitted,

                                    E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ David W. Williams*
VALERIE L. MAKAREWICZ
DAVID W. WILLIAMS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The Court ordered the parties to file briefs concerning trial evidence.  The question is whether to allow defendant to argue that he intended to preserve some Ace Gallery bankruptcy estate assets (i.e., an interest in the Ace Museum property) when he transferred other Ace Gallery estate assets (i.e., the property charged in the indictment) away from Ace Gallery.[1]

This issue is at least closely intertwined with defendant's supposed intent to repay the embezzled assets, which was previously the subject of two government motions.  This is because the only way defendant could have possibly "preserved" estate assets by his conduct would have been to repay the money he embezzled.

The Court has already found that intent to repay is not a defense.  As described by defense counsel earlier today, though, it appears that defendant's theory of admissibility now may be slightly different than his prior theories.  Rather than saying he planned to repay the stolen money, he seems to be arguing that his actions somehow did preserve estate assets.

The distinction between "preserving estate assets" and "repaying embezzled assets" is razor thin, at most, given the facts of this case. Allowing testimony about "preserving estate assets" -- where that preservation took the form of (a) embezzling (b) in order to reap profits elsewhere, and then (c) planning to repay the embezzled money -- at least risks substantial jury confusion, particularly

---

[1] To be clear, the government does not concede that defendant actually intended to preserve estate assets, nor does it agree with defendant's characterization of the bankruptcy estate assets.

since intent to repay itself is not a defense. See Fed. R. Evid. 403.

Moreover, what defendant describes would have been a legal impossibility. As described in government's motion in limine #5, as a non-profit, Ace Museum could never have lawfully given Ace Gallery a portion of the proceeds even if it exercised the purchase option. (See ECF 91.) For instance, Ace Museum's articles of incorporation provided that "<u>no part of the net income or assets of Ace Museum shall ever inure to the benefit</u> to any director, officer, or member thereof or to the benefit <u>of any private person</u>." (Gov. Trial Ex. 28 at 2 (articles of incorporation) (emphasis added).) In other words, even if Ace Museum exercised the purchase option described by defense counsel, and even if Ace Museum made a fabulous profit, it would have been legally prohibited from using that money "to the benefit" of Ace Gallery's bankruptcy estate.

Finally, to the extent the Court decides to admit evidence on this issue notwithstanding the risks of confusion, and the legal impossibility of defendant's claim that he was preserving estate assets, the government requests that the Court provide an additional jury instruction concerning intent-to-repay. Such an instruction will be necessary to address the likely jury confusion, and to ensure that the jury only considers defendant's argument and evidence for legally valid purposes. The proposed modification is set forth on pages 5-6, below.

II. **RELEVANT CASE HISTORY**

Given the facts introduced so far in trial, and suggested in argument by defense counsel, the only way defendant could have possibly "preserved" estate assets by transferring those assets away

2

from the estate would have been if he planned to repay the money he embezzled. That is, if he didn't repay the embezzled money, he couldn't have "preserved" the estate.

The question presented now is therefore bound up in two prior motions: government's motion in limine #1 (ECF 47 ("MIL #1") and government's motion in limine #5 (ECF 91 ("MIL #5")).

The government previously moved to exclude evidence of intent to repay, because intent to repay is not a legally cognizable defense to embezzlement. (See MIL #1 at 3.) The Court granted that motion and excluded all evidence or argument that defendant intended to repay the property he embezzled. (ECF 62.)

The government also moved to exclude evidence that defendant "transferred the estate's property to Ace Museum . . . to maintain the [Ace Museum] lease so either he or Ace Museum could exercise the purchase option, sell 400 S. La Brea, realize an enormous profit, and use the proceeds of the sale to pay off the creditors of Ace Gallery and have it emerge from bankruptcy." (MIL #5 at 1.) As the government noted, Ace Museum had no obligation to give any portion of that hypothetical profit to Ace Gallery (apart from repaying an entirely separate $4.4 million loan). (Id. at 1-2.)[2] Again, the Court granted the government's motion. (ECF 153 ("May 22 Order") at 12-15.)

---

[2] During argument today, May 29, defense counsel characterized MIL #5 as being related to the question of whether he "appropriated [estate assets] to his own use." But MIL #5 had nothing to do with that question, which was separately briefed. (See ECF 106 (government's brief concerning the phrase "to his own use"); ECF 117 (defense brief).)

In fact, MIL #5 never used the word "appropriate," nor did it use the phrase "own use." Intent-to-repay and appropriation-to-defendant's-own-use are entirely distinct issues.

3

## III. ARGUMENT

As the government has previously argued (MIL #1 at 3), and as the Court agreed (ECF 62; ECF 153 at 14), intent to repay is not a legally cognizable defense to embezzlement. See, e.g., United States v. Ross, 206 F.3d 896, 899 (9th Cir. 2000) (collecting cases for the holding that intent to repay is not a defense to various types of embezzlement or misappropriation).  "[I]ntent to return property is not a defense to embezzlement.  Such crimes are complete when the misapplication occurs." United States v. Coin, 753 F.2d 1510, 1511 (9th Cir. 1985); accord United States v. Eriksen, 639 F.3d 1138, 1147 (9th Cir. 2011) ("'[i]ntent to repay generally is not a defense to embezzlement . . . [or] conversion.'"); United States v. Wiseman, 274 F.3d 1235, 1241 (9th Cir. 2001) ("Intent to repay generally is not a defense to embezzlement . . . The government thus did not need to disprove Defendants' intent to borrow the funds to convict them of embezzlement.").

As described in MIL #5, it would have been impossible for Ace Museum to legally do what defendant claims.  Ace Museum profits could not be given to any entity outside Ace Museum.  And even if they could, the decision about spending money in that way would have been required to be made by Ace Museum's board of trustee's -- such as it was -- rather than defendant personally.  In other words, even if it exercised the purchase option, Ace Museum would have been prohibited from using the proceeds of that sale to dig Ace Gallery out of its bankruptcy, and defendant would have had no legal ability to force it to do so.  (MIL #5 at 3; id. at 2 n.1.)

Finally, to the extent none of those points merit exclusion, defendant's argument and proposed evidence should still be excluded

4

under Rule of Evidence 403.  Even if the evidence is potentially admissible, it poses a serious risk of jury confusion.  <u>See</u> Fed. R. Evid. 403 (evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury").

As the Court and counsel discovered during argument on the issue earlier today, the distinction between intent-to-repay (which is inadmissible) and intent-to-preserve-through-diversions-and-potential-reinvestment (which defendant claims is admissible) is both confusing and difficult to explain.  What's worse, it is likely to mislead the jury into believing that intent-to-repay is itself a legitimate defense.  <u>See</u> Fed. R. Evid. 403.

**IV. Proposed Jury Instruction**

Given the facts of the case, testimony and argument about an intent to preserve assets is likely to confuse or mislead the jury into thinking that, if defendant planned to repay the money he took, he would not have been committing a crime.

Accordingly, to the extent the Court reverses its prior rulings from MIL #1 and MIL #5, the government requests that it modify the closing paragraphs of Instruction #31 to read as follows:

> . . .
>
> The heart of the charge in the indictment is the knowing and fraudulent embezzlement of property belonging to the Debtor's estate.
>
> "Fraudulent" means to knowingly deceive or mislead someone, usually for personal gain.
>
> To "embezzle" means to wrongfully take someone's property and spend it or transfer it.
>
> <u>Intent to repay or return property is not a defense to embezzlement.  If someone embezzles, they are not excused just because they intended to replace the money.  They imposed a</u>

5

<u>risk of loss, and deprived the estate of the right to make decisions about how its property is to be used, and that is harm enough to trigger criminal liability.</u>

The proposed modification, in underline, is supported by the intent to repay caselaw described above, and taken specifically from the following cases:

- <u>United States v. Treadwell</u>, 593 F.3d 990, 998 (9th Cir. 2010) (approving a Seventh Circuit decision upholding an instruction that "If you embezzle from your employer you are not excused just because you had an honest intention of replacing the money, maybe with interest . . . . You imposed a risk of loss on the employer -- deliberately, fraudulently, and without a shadow of excuse or justification -- and that is harm enough to trigger criminal liability.") (citing <u>United States v. Hamilton</u>, 499 F.3d 734, 736 (7th Cir. 2007))

- <u>United States v. Miller</u>, 953 F.3d 1095, 1103 (9th Cir. 2020) (citing <u>Treadwell</u> and <u>Hamilton</u> with approval, including part of the instruction, that "If you embezzle from your employer you are not excused just because you had an honest intention of replacing the money . . .")

- <u>United States v. Coin</u>, 753 F.2d 1510, 1511 (9th Cir. 1985) ("The intent to return property is not a defense to embezzlement, [citation] . . . . Such crimes are complete when the . . . embezzlement occurs. [Citation.] The victim of the crime is deprived of its right to make decisions about how its property or funds are to be used.")

6

Government's Trial Exhibit 28

3214279

FILED
In the Office of the Secretary of State
of the State of California

JUN 0 8 2009

ARTICLES OF INCORPORATION

OF

ACE MUSEUM
A California Nonprofit Public Benefit Corporation

ARTICLE I

The name of the Corporation is
ACE MUSEUM

ARTICLE II

A. This Corporation is a nonprofit public benefit corporation and is not organized for the private gain of any person. It is organized under the Nonprofit Public Benefit Corporation Law for charitable purposes.

B. The purpose of this Corporation is to promote, foster, and support religious, charitable and educational activities and organizations, all within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States internal revenue law (the "Code"), and this Corporation is organized exclusively for such purposes.

C. Notwithstanding any other provision of these Articles, this Corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the purposes of this Corporation, and the Corporation shall not carry on any other activities not permitted to be carried on (1) by a corporation exempt from federal income tax under Section 501(c)(3) of the Code or (2) by a corporation, contributions to which are deductible under Section 170(c)(2) of the Code.

ARTICLE III

The name and address in California of the Corporation's initial agent for service of process are:

Robert C. Kopple
10866 Wilshire Blvd., Suite 1500
Los Angeles, CA 90024

Exhibit 28 - Page 1 of 2                              USAO_00030320

ARTICLE IV

No substantial part of the activities of this Corporation shall consist of carrying on propaganda or otherwise attempting to influence legislation, and the Corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

ARTICLE V

The property of this Corporation is irrevocably dedicated to charitable and educational purposes, and no part of the net income or assets of this Corporation shall ever inure to the benefit of any director, officer, or member thereof or to the benefit of any private person. Upon the dissolution or winding up of the Corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of this Corporation shall be distributed to a nonprofit fund, foundation or corporation which is organized and operated exclusively for charitable or educational purposes and which has established its tax-exempt status under Section 501(c)(3) of the Code.

_____
SHARON R. FLAVIN

I declare that I am the person who executed the foregoing Articles of Incorporation, which execution is my act and deed.

_____
SHARON R. FLAVIN

2

Exhibit 28 - Page 2 of 2                                                                USAO_00030321