MEGAN A. MAITIA (Bar No. 285271)
megan@summaLLP.com
JENNIFER L. WILLIAMS (Bar No. 268782)
jenn@summaLLP.com
SUMMA LLP
1010 Sycamore Avenue, Unit 117
South Pasadena, California 91030
Telephone:   (213) 260-9455/52/56
Facsimile:   (213) 835-0939

Attorneys for Defendant
DOUGLAS J. CHRISMAS

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DOUGLAS J. CHRISMAS,<br><br>　　　　　Defendant. | Case No. 2:21-CR-00127-MCS<br><br>**DEFENDANT'S BRIEF RE: JURY INSTRUCTION 31 (WRONGFULLY)**<br><br>**Judge:**　　Hon. Mark C. Scarsi<br><br>**Trial**:　　May 28, 2024 |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCITON

Mr. Chrismas is being tried for three counts of Bankruptcy Embezzlement under 18 U.S.C. § 153.

The Parties dispute Jury Instruction 31, which instructs on the elements of the offense.  (See Government Proposal at ECF 156 and Defendant's Proposal at 160.)

One of the main differences between the Disputed Instruction is the last line.

The Government's version:

> To "embezzle" means to wrongfully take someone's property and spend it or transfer it.

The Defense's version:

> To "embezzle" or "appropriate" means to wrongfully take someone's property and spend it, transfer it, convert it to personal use, or convert it to someone else's use.

The Court has stated it is inclined to use the Government's version of the jury instruction because the Government has indicated that it is not proceeding on an "appropriate for one's own use" theory.[1]  (See ECF 160 p.7, describing prosecution's notice that it "will not be proceeding on the theory that the defendant appropriated for his own use funds of the bankruptcy estate, therefore, the instruction has been modified.).[2]

The Court has asked the parties to focus on the term "wrongfully" in the last line of the Government's proposed Instruction 31, with the question being, does "wrongfully" mean (as the Government would have it), without authorization; or does the "wrongfully"

---

[1] The Defense is re-capping Court comments based on its notes and a "rough" transcript for May 29, 2024; it does not yet have a final transcript to submit.

[2] The Defense preserves its objection to the Government's instruction as improperly interpreting the elements of 18 U.S.C. § 153 and lowering the Government's burden of proof.  (Defense Briefing at ECF 117 and 160.)

account for (as the Defense would have it) the Defendant's intent to preserve assets of the estate.

As the Court recognized, this is a "crucial" issue in the case.  The Government's theory is that Mr. Chrismas embezzled money from the Gallery because he transferred money to the Museum (or the Museum's landlord) without authorization.  The Defense's entire defense is that Mr. Chrismas transferred the money to preserve an asset of the estate, namely the Museum Loan Obligation (owed to the Gallery) and the related claim the Creditors had over the Museum Purchase Option, to secure the Loan Obligation.  (Indeed, the Creditors' Committee held a Promissory Note for the Museum Loan Obligation, which was secured the Museum's Purchase Option).[3]

The Government has been able to argue its theory; the Defense should be permitted to do the same.

## II.   ARGUMENT

### A.   Whether the Defendant Acted "Wrongfully" Is A Jury Issue

The Ninth Circuit Model Jury Instructions do not provide a legal instruction for "wrongfully."  It is an issue for the jury.  *See United States v. Ford*, 632 F.2d 1354, 1360 (9th Cir. 1980), overruled on other grounds by *United States v. De Bright*, 730 F.2d 1255 (9th Cir. 1984) (en banc).  In *Ford*, the defendants were trustees of Labor Union funds and, after they created and paid pensions for themselves (even though they were not employees), they were charged with 18 U.S.C. § 664, "Theft or embezzlement from employee benefit plan." *Id*. at 1361.  The Court held that the criminal intent required for a conviction of § 664 "exists when a defendant knowingly acts wrongfully to deprive another of property" and that "[t]he existence of such criminal intent is a question for the trier of fact." *Id*. 1362 (citations omitted).  The Court went on to explain that such intent cannot

---

[3] Significantly, Government's Jury Instruction 31 (ECF 156) defines an estate – by law – to include, among other things, "the Debtor's claims on or rights to other property."  In other words, the jury could find – and the defense should be able to argue – that the Museum Purchase Option, over which the Creditors ah a claim, was part of the estate.

usually be proven directly, "but must be inferred from circumstantial evidence." *Id.* (same). The Court, in undertaking a sufficiency of evidence analysis determined "whether the government produced sufficient circumstantial evidence to permit a rationale trier of fact to conclude, beyond a reasonable doubt, that [defendants] acted with specific intent to deprive the trust beneficiaries of trust funds; that is, that [defendants] were sufficiently aware of the facts to know that they were acting wrongfully and contrary to the trust placed in them by the pension beneficiaries." *Id.* (same). In looking at the evidence in the light most favorable to the government, the Court found that the defendants' knowledge that certain compensation plans were illegal was "probative of their knowledge of intent." *Id.* n.5. In other words, whether the defendants knew a pension plan was legal (or not) was one (but not the sole) factor that the jury could consider in reaching its verdict.

*United States v. Della Porta*, 653 F.3d 1043 (9th Cir. 2011) is also instructive. There, the defendant was a bookkeeper for a Union and was responsible for handling the Union's deposits. Id. at 1405. When its auditor discovered that deposits were missing, she was investigated and ultimately charged with "embezzlement and theft of labor union assets" under 29 U.S.C. 501(c). *Id.* The Government's evidence was that she used a double deposit slip scheme: one deposit slip that would go to the union books and another (lower) deposit slip to the bank; during that time there were increased deposits into her personal account. *Id.* In her defense, she testified that the union's president authorized her to withhold cash for the deposits, with the withheld cash being donated to labor-related organizations; and the influx of cash in her account was due to unrelated matters.

She was convicted and on appeal argued that the district court committed error by failing to instruct the jury that her actions were authorized. *Id.* at 1051-52. The Ninth Circuit held that "although lack of authorization is not an essential element of [§ 501 – embezzlement and theft of union assets], it is nevertheless likely to bear on the essential element of fraudulent intent." Id. 1052. The Court explained that while "[i]n a case where lack of authorization is "crucial in determining the defendant's intent," a jury instruction *concerning the defense* is 'likely to be appropriate.'" *Id.* (citing *United States v.*

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

*Thordarson*, 646 F.2d 1323, 1336 (9th Cir. 1981).  But because the defendant's defenses was not that the union, as a body, authorized her, but rather another person, the district court did not err in not giving the "authorization defense" instruction.  But – critically – she was allowed to put on and argue her defense.  The jury was then instructed with the same language in *Ford* – that criminal intent means ""knowingly acting wrongfully to deprive another of property."  *Id*. at 1052 n.5.

Finally, *United States v. Thordarson*: This case involved the same 29 U.S.C. § 501 charge (embezzlement of union assets).  The Court held that "proof of a specific criminal intent to deprive the union of its funds is required" for a violation.  *Id*. at 1331.  The Court held that "neither lack of authorization nor lack of good faith belief in [operating for] union benefit" is an essential element and so need not be alleged in the indictment but the Court recognized "that evidence of either or both is likely to be admissible at trial as bearing on the issue of criminal intent to convert union funds to the defendant's own use or the use of another."  *Id*. at 1334.[4]

Here, the evidence of criminal intent is directly at issue.  The government has already put on evidence and will no doubt argue that Mr. Chrismas was acting wrongfully to deprive the estate (or creditors) of property.  The defense should be permitted to argue – and introduce evidence (including evidence to impeach the government's witness who is offering his personal opinion on the issue) – that Mr. Chrismas was acting to preserve assets for the estate (or creditors).  This is the question for the jury.

---

[4] As may be relevant here, the *Thordarson* Court cited *United States v. Marolda*, 615 F.2d 867 (9th Cir. 1980) which reversed a conviction because of a prejudicial variance between the jury instruction and the language of the indictment; the indictment alleged both lack of authorization and lack of benefit to the union.  Here, the indictment charged Mr. Chrismas with embezzlement and appropriation for his own use; the government's proposed jury instructions – which has changed the view of the "meaning of embezzlement" and created this larger legal issue, may constitute such prejudicial variance.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.      The Government's Position Would Mislead the Jury

The Government's theory to the Court on this jury instruction issue – i.e. that wrongfully means without authorization – is noticeably narrower (and less salacious) than the theory they have made repeatedly to the jury.

The Government now asserts that Mr. Chrismas embezzled when he transferred money without authorization, period.  But in trial, the Government has told the jury that (1) Mr. Chrismas was "required to run Ace Gallery for the benefit of the creditors to maximize and earn as much money as possible for them"[5] and (2) he was expected "to run ACE Gallery, not just for the benefit of the Gallery itself, but for the creditors of ACE Gallery who were owed that $17 million."

But, if (according to the Government) all that is relevant is whether Mr. Chrismas transferred money without authorization, then why did the Government make these statements to the jury?  If the Defense is not permitted to answer these claims – by arguing that he *was* operating for the benefit of the Creditors – he will not have received a fair trial.  Of course, the jury may reject his defense, but based on basic principles of fairness, he should be able to make it.

### C.      The Defense's Position Is not Contrary to the Court's Prior Rulings

The Government asserts that allowing the defense to make this argument would be contrary to the Court's rulings on Government's MIL 1 (intent to repay) and Government's MIL 5 (exclude defense).  Not so.

First, intent to repay presumes embezzlement first.  True, intent to repay after one has embezzled is not a defense.  That is not the defense here.  The defense here is there was no embezzlement in the first place, because Mr. Chrismas did not intend them to be wrongful; he intended to persevere a purchase option over which the estate had a claim (and therefore it was part of the estate).

---

[5] Again, from a rough (not-final) transcript.

Second, as the MIL 5, the Court granted the motion "in part" and specifically reserved "the ability to modify the ruling, as appropriate, at any point during trial." (Order ECF 153). In ruling on the motion, the Court sided with the government's interpretation of the 18 U.S.C. § 153, in that "to one's use" is not distributed to the remaining verbs of embezzlement, transfer or spend. So the Court held only that: "Defendant is precluded from arguing that he evades liability under the statute on the basis that he did not transfer, spend or embezzle funds from the bankruptcy estate for, or to, his own use." The Court did not rule that Mr. Chrismas could not argue that the transactions were to benefit the estate. Nor did it rule on the precise issue here – whether Mr. Chrismas could argue that he transferred the money to preserve an asset of the estate.

### D. The Government's Assertion that the Museum Could not have Legally Paid the Gallery is Inaccurate

The Government argues that exercising the Museum Purchase Option – which the Creditors had an interest in, as an asset of the estate (because it had a claim over it) – would not have increased the estate because the Museum's Articles of Incorporation provide that "no part of the net income or assets of Ace Museum shall ever inure to the benefit of any … private person." (ECF 165). But the critical word there is "net." The Museum Loan Obligation was an asset of the estate; the Purchase Option that secured that obligation (for which the Creditors Committee had a promissory note) became an asset of the estate because, by law, the estate includes "Debtor's claims on or rights to other property." So, the Museum's "net" income or assets would not include what was property of the estate.

The government can make its arguments to the jury; that Mr. Chrismas did not seek court authorization for the transactions (though cannot offer expert opinion about what needed court authorization); the government can argue that on all the circumstantial evidence it introduces, that Mr. Christmas embezzled – that is that he "wrongfully took someone's property and spent or transferred it." But the Defense should also be able to argue that he did not wrongfully take someone's property and spend or transfer it. It is a question for the jury.

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31

Dated: May 30, 2024

Respectfully submitted,
Summa LLP

_/s/ Jennifer L. Williams_
Megan A. Maitia
Jennifer L. Williams

Attorneys for Defendant
DOUGLAS J. CHRISMAS

DEFENDANT'S OPPOSITION TO GOVERNMENT'S INTERPRETATION OF JURY INSTRUCTION 31