1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
4  DAVID W. WILLIAMS (Cal. Bar No. 295204)
   Assistant United States Attorneys
5       Major Frauds/Appeals Sections
        1100 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-0756/8485
        Facsimile: (213) 894-6265
8       Email:    valerie.makarewicz@usdoj.gov
                  david.williams3@usdoj.gov
9

10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

11

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,          No. 2:21-cr-00127-MCS

15          Plaintiff,                GOVERNMENT'S OPPOSITION TO
                                      DEFENDANT'S CONSOLIDATED POST-
16          v.                        TRIAL MOTIONS FOR ACQUITTAL, TO
                                      DISMISS, AND FOR A NEW TRIAL
17 DOUGLAS J. CHRISMAS,
                                      [*DECLARATION AND APPENDIX OF TRIAL*
18          Defendant.                *EXHIBITS IN SUPPORT OF*
                                      *GOVERNMENT'S OPPOSITION TO*
19                                    *DEFENDANT'S CONSOLIDATED MOTIONS*
                                      *FILED CONCURRENTLY HEREWITH*]
20
                                      Hearing Date: October 15, 2024
21                                    Hearing Time: 3:00 p.m.
                                      Location:     Courtroom of the
22                                                  Hon. Mark C. Scarsi

23

24      Plaintiff United States of America, by and through its counsel

25 of record, the United States Attorney for the Central District of

26 California and Assistant United States Attorneys Valerie L.

27 Makarewicz and David W. Williams, hereby submits the Government's

28

Opposition to Defendant's Consolidated Post-Trial Motions, CR 194 (collectively referred to herein as "Motion").

This Opposition is based upon the attached memorandum of points and authorities, the declaration of AUSA Valerie L. Makarewicz and appendix of trial exhibits concurrently filed, Government's Opposition to Defendant's Motion to Dismiss for Misconduct concurrently filed at CR 201, the files and records in this case, and such further evidence and argument as the Court may permit.

As set forth in the declaration of AUSA Makarewicz, true and correct copies of the trial exhibits that are cited in this opposition have been included in the concurrently filed appendix of trial exhibits.

This opposition also cites the reporter's transcripts of proceedings from the trial in this matter.  Because the reporter's transcripts of proceedings from the trial have already been filed with the Court and appear on the docket, see CR 181-83, 186, 189-192, the government has not attached copies of the transcripts to this opposition and has instead cited to the relevant portions of the transcripts.

//

//

//

Because the memorandum of points and authorities in support of this opposition exceeds 10 pages, the government has concurrently filed an <u>ex parte</u> application seeking the Court's permission to file an oversize brief.

Dated: September 13, 2024          Respectfully submitted,

                                 E. MARTIN ESTRADA
                                 United States Attorney

                                 MACK E. JENKINS
                                 Assistant United States Attorney
                                 Chief, Criminal Division

                                 */s/ Valerie L. Makarewicz*
                                 VALERIE L. MAKAREWICZ
                                 DAVID W. WILLIAMS
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION....................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND..............................2

    A.   The Charges Against Defendant...............................2

    B.   The Trial..............................................................3

    C.   The Jury's Verdict................................................3

III. DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL SHOULD BE
     DENIED..................................................................3

    A.   Legal Standard....................................................3

    B.   The Evidence Presented at Trial Was Sufficient for Any
         Rational Jury to Find Defendant Guilty of Embezzlement
         from a Bankruptcy Estate.....................................5

         1.   Substantial Evidence Supports Count 1................7

         2.   Substantial Evidence Supports Count 2..............12

         3.   Substantial Evidence Supports Count 3..............13

IV.  DEFENDANT'S PROSECUTORIAL MISCONDUCT CLAIMS ARE FRIVOLOUS.....16

    A.   Legal Standard..................................................17

    B.   The government did not constructively amend and/or
         vary the Indictment...........................................17

    C.   No misconduct exists pertaining the government's
         theory of the case presented..............................21

    D.   The government did not abuse the grand jury process......25

    E.   The government did not improperly illicit fact or
         expert testimony from Richardson.........................25

    F.   The government did not violate the 6th Amendment or
         Crawford..........................................................27

V.   DEFENDANT'S MOTION FOR NEW TRIAL SHOULD BE DENIED............32

    A.   Legal Standard..................................................33

    B.   The Evidence Supports the Verdict.........................34

VI.  CONCLUSION..........................................................37

# TABLE OF AUTHORITIES

DESCRIPTION                                                                    PAGE

**Cases**

Bank of China, N.Y. Branch v. NBM LLC,
    359 F.3d 171 (2d Cir. 2004).................................. 26

Crawford v. Washington,
    541 U.S. 36 (2004)..................................... 30, 31

Davis v. Washington,
    547 U.S. 813 (2006)................................... 28, 31

Greenwood v. FAA,
    28 F.3d 971 (9th Cir.1994)................................. 16

Harris v. Rivera,
    454 U.S. 339 (1981)....................................... 23

Jackson v. Virginia,
    443 U.S. 307 (1979)........................................ 4

Kumho Tire Co. v. Carmichael,
    526 U.S. 137 (1999)....................................... 27

McDaniel v. Brown,
    130 S. Ct. 665 (2010)...................................... 4

Nguyen v. Lindsay,
    232 F.3d 1236 (9th Cir. 2000)............................. 24

Ohio v. Clark,
    576 U.S. 237 (2015)....................................... 31

Schad v. Arizona,
    501 U.S. 624 (1991)....................................... 19

Tedesco v. United States,
    118 F.2d 737 (9th Cir. 1941).............................. 23

Trillo v. Biter,
    769 F.3d 995 (9th Cir. 2014).............................. 23

Turner v. United States,
    396 U.S. 398 (1970)....................................... 18

United States v. Adamson,
    291 F.3d 606 (9th Cir. 2002).......................... 17, 18

United States v. Alston,
    974 F.2d 1206 (9th Cir. 1992)............................. 33

1

**TABLE OF AUTHORITIES (CONTINUED)**

2  DESCRIPTION                                                                                PAGE

3  United States v. Amuso,
       21 F.3d 1251 (2d Cir.1994)....................................... 26
4
   United States v. Begay,
5      673 F.3d 1038 (9th Cir. 2011)..................................... 5

6  United States v. Camacho,
       555 F.3d 695 (8th Cir. 2009...................................... 34
7
   United States v. Capati,
8      980 F. Supp. 1114 (S.D. Cal. 1997)............................ 34

9  United States v. Chang,
       No. 16-CR-00047-EJD-1, 2020 WL 5702131(N.D. Cal. Sept. 24,
10     2020)............................................................ 36

11 United States v. Del Toro-Barboza,
       673 F.3d 1136 (9th Cir. 2012).................................... 34
12
   United States v. Gandy,
13     926 F.3d 248 (6th Cir. 2019)..................................... 19

14 United States v. Garcia,
       978 F.2d 746 (1st Cir. 1992)..................................... 34
15
   United States v. Grace,
16     455 F. Supp. 2d 1199 (D. Mont. 2006)............................ 31

17 United States v. Kaiser,
       660 F.2d 724 (9th Cir. 1981)..................................... 18
18
   United States v. Kusniar,
19     881 F.2d 466 (7th Cir. 1989)..................................... 34

20 United States v. Long,
       301 F.3d 1095 (9th Cir. 2002).................................... 19
21
   United States v. Love,
22     17 F.App'x 796 (10th Cir. 2001)................................. 22

23 United States v. Mahler,
       452 F.2d 547 (9th Cir. 1971)..................................... 23
24
   United States v. Miller,
25     471 U.S. 130 (1985).............................................. 19

26 United States v. Nevils,
       598 F.3d 1158 (9th Cir. 2010).................................... 4
27
   United States v. Pang,
28     362 F.3d 1187 (9th Cir. 2004).................................... 17

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                            <u>PAGE</u>

<u>United States v. Parker</u>,
        549 F.2d 1217 (9th Cir. 1977..................................23

<u>United States v. Pelisamen</u>,
        641 F.3d 399 (9th Cir. 2011)...................................5

<u>United States v. Pimentel</u>,
        654 F.2d 538 (9th Cir. 1981)..................................33

<u>United States v. Reed</u>,
        575 F.3d 900 (9th Cir. 2009)...................................4

<u>United States v. Reyes</u>,
        660 F.3d 454 (9th Cir. 2011)..................................16

<u>United States v. Rocha</u>,
        598 F.3d 1144 (9th Cir. 2010)..................................4

<u>United States v. Ross</u>,
        206 F.3d 896 (9th Cir. 2000)..................................22

<u>United States v. Rush</u>,
        749 F.2d 1369 (9th Cir. 1984).................................33

<u>United States v. Sanchez</u>,
        969 F.2d 1409 (2d Cir. 1992)..................................34

<u>United States v. Shipsey</u>,
        190 F.3d 1081 (9th Cir. 1999).................................21

<u>United States v. Smith</u>,
        962 F.2d 923 (9th Cir.1992)...................................17

<u>United States v. Solorio</u>,
        669 F.3d 943 (9th Cir. 2012)...................................5

<u>United States v. Soto-Barraza</u>,
        947 F.3d 1111 (9th Cir. 2020).................................18

<u>United States v. Tsinhnahijinnie</u>,
        112 F.3d 988 (9th Cir. 1997)..................................21

<u>United States v. Von Stoll</u>,
        726 F.2d 584 (9th Cir. 1984)..................................18

<u>United States v. Weatherspoon</u>,
        410 F.3d 1142 (9th Cir.2005)..................................17

<u>United States v. Wilbur</u>,
        674 F.3d 1160 (9th Cir. 2012).................................20

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

**Statutes**

11 U.S.C. § 364..................................................... 9

18 U.S.C. § 153.................................................. 1, 3, 18


**Rules**

Fed. R. Crim. P. 7.................................................. 19

Fed. R. Crim. P. 29................................................. 1

Fed. R. Crim. P. 30................................................ 33

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      Following a four-day trial, the jury found defendant DOUGLAS J.

4  CHRISMAS ("defendant") guilty of the three charges alleged in the

5  Indictment, embezzlement from a bankruptcy estate, in violation of 18

6  U.S.C. § 153.

7      Defendant has moved for judgment of acquittal under Fed. R.

8  Crim. Pro. 29 on the basis that the government failed to present

9  sufficient evidence to support the jury's verdict.  CR 194.[1]

10 Defendant's motion fails to satisfy the highly deferential Rule 29

11 standard.  When viewing the evidence in the light most favorable to

12 the government, it is apparent that any rational juror could find

13 defendant guilty of each of these charges beyond a reasonable doubt.

14     Additionally, defendant has moved to set aside the jury's

15 verdicts and dismiss all charges on the basis of alleged

16 prosecutorial misconduct.  Specifically, defendant claims that the

17 government committed "flagrant and cumulative misconduct" in

18 connection with five areas.  Defendant's claims are meritless.  There

19 was no misconduct and, even assuming defendant's allegations were

20 true (and they are not), defendant's allegations do not come close to

21 justifying the extreme remedy of dismissal.  See also, CR 201.

22     Finally, defendant moved for a new trial under Rule 33.  All of

23 defendant's challenges are unavailing. Defendant cannot establish

24

25

26

27 ───────────

[1] "CR" refers to the Clerk's Record and is followed by the
docket number.  "Tr. Ex." refers to the trial exhibits and is
followed by the exhibit number.  "RT" refers to the reporter's
28 transcript of proceedings and is preceded by the date and followed by
the applicable page references.

that this is the sort of "exceptional" case in which the "interest of justice" compels a new trial.

The jury's guilty verdicts should stand and defendant's motions should be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Charges Against Defendant

For several decades, defendant was the president of Art and Architecture Books of the 21st Century, a company that did business under the name "Ace Gallery."  Ace Gallery sold art in Los Angeles and, as its president, sole shareholder, and its primary officer, defendant had sole control over Ace Gallery's financial operations.

On February 19, 2013, Ace Gallery declared bankruptcy in the United States Bankruptcy Court, Central District of California. Beginning on this date, defendant continued to manage the debtor's day-to-day business, however in a new role, as fiduciary for the bankruptcy estate. On April 6, 2016, due to suspected malfeasance of defendant, the bankruptcy judge appointed an independent trustee to oversee and manage the bankruptcy estate, as part of the plan confirmed by the bankruptcy court.

Just prior to the appointment of the independent trustee, defendant embezzled, spent, and transferred $264,595 from the bankruptcy estate via three separate transactions -- two transactions on March 30, 2016, and one transaction on April 1, 2016.  Defendant used that money to benefit a completely different non-profit corporation, Ace Museum, wherein he was the chief executive and financial officers.

Three transactions were the subject of an Indictment returned by the grand jury in March 2021, that charged defendant with

2

embezzlement from a bankruptcy estate, in violation of 18 U.S.C. § 153.  CR 1 (the "Indictment").

As alleged in Count 1 of the Indictment, defendant wrote a $50,000 check directly to Ace Museum drawn against the bankruptcy estate's account.  As alleged in Count 2, defendant directed a third party to send $100,000 to Ace Museum, even though the funds belonged to the bankruptcy estate.  And, as alleged in Count 3, defendant directed a third party to send $114,595.32 to Ace Museum's creditor as payment for Ace Museum's rent for its location, again, even though those funds were actually owed to (and owned by) the bankruptcy estate of Ace Gallery.

**B.    The Trial**

This case proceeded to trial on May 28, 2024.  CR 163.  During its case-in-chief, the government presented testimony from four witnesses and introduced approximately 42 exhibits into evidence.  CR 175.  The evidence presented at trial relevant to the Motions is described in detail below.

On May 31, 2024, the defense moved for judgment of acquittal under Rule 29(a).  CR 171.  The Court reserved judgment.  Id. Defendant did not call any witnesses in his case and rested on the same day.  Id.

**C.    The Jury's Verdict**

The jury found defendant guilty on all counts on May 31, 2024. CR 171, 176.

**III. DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL SHOULD BE DENIED**

**A.    Legal Standard**

"The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high."  United States v.

1  <u>Rocha</u>, 598 F.3d 1144, 1153 (9th Cir. 2010).  The jury's verdict must

2  stand if, "viewing the evidence in the light most favorable to the

3  prosecution, any rational trier of fact could have found the

4  essential elements of the crime beyond a reasonable doubt."  <u>United</u>

5  <u>States v. Reed</u>, 575 F.3d 900, 923 (9th Cir. 2009) (quotations

6  omitted).  The sufficiency analysis for a Rule 29 motion is two-fold.

7       "First, a reviewing court must consider the evidence presented

8  at trial in the light most favorable to the prosecution."  <u>United</u>

9  <u>States v. Nevils</u>, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc)

10  (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)).  In so doing,

11  this Court "may not usurp the role of the finder of fact by

12  considering how it would have resolved the conflicts, made the

13  inferences, or considered the evidence at trial."  <u>Id.</u> (citing

14  <u>Jackson</u>, 443 U.S. at 318-19).  Thus, when "'faced with a record of

15  historical facts that supports conflicting inferences,' a reviewing

16  court 'must presume -- even if it does not affirmatively appear in

17  the record -- that the trier of fact resolved any such conflicts in

18  favor of the prosecution, and must defer to that resolution.'"  <u>Id.</u>

19  (citing <u>Jackson</u>, 443 U.S. at 326, and <u>McDaniel v. Brown</u>, 130 S. Ct.

20  665, 673-74 (2010)).  "[T]he government does not need to rebut all

21  reasonable interpretations of the evidence that would establish the

22  defendant's innocence, or 'rule out every hypothesis except that of

23  guilt beyond a reasonable doubt.'"  <u>Nevils</u>, 598 F.3d at 1163-64

24  (quoting <u>Jackson</u>, 443 U.S. at 326).  Only where "mere speculation,

25  rather than reasonable inference, supports the government's case, or

26  where there is a total failure of proof of a requisite element" is

27  the evidence legally insufficient.  <u>Id.</u> at 1167 (citations,

28  quotations, and alterations omitted).

4

1    Second, because "[a] jury's verdict is not to be disturbed

2  lightly," United States v. Begay, 673 F.3d 1038, 1043 (9th Cir.

3  2011), and is afforded "great deference," United States v. Pelisamen,

4  641 F.3d 399, 409 n.6 (9th Cir. 2011), "the reviewing court must

5  [next] determine whether this evidence . . . is adequate to allow

6  'any rational trier of fact [to find] the essential elements of the

7  crime beyond a reasonable doubt.'"  Nevils, 598 F.3d at 1164 (quoting

8  Jackson, 443 U.S. at 319 (emphasis and alteration in original)); see

9  also United States v. Solorio, 669 F.3d 943, 954-56 (9th Cir. 2012)

10  (even where there was a "major gap" in evidence relating to one

11  required element and "facts could certainly support an inference"

12  that the element was unsatisfied, "the record as a whole" and the

13  "'great deference'" accorded jury verdicts precluded court from

14  setting guilty verdict aside).  "At this second step, ... a reviewing

15  court may not 'ask itself whether it believes that the evidence at

16  the trial established guilt beyond a reasonable doubt,' only whether

17  'any' rational trier of fact could have made that finding." Nevils,

18  598 F.3d at 1164 (quoting Jackson, 443 U.S. at 318-19) (emphasis in

19  original).

20    Defendant cannot satisfy this standard.  Viewing the evidence in

21  the light most favorable to the verdict, a rational juror could have

22  easily found beyond a reasonable doubt that defendant embezzled from

23  Ace Gallery's bankruptcy estate.

24    **B.    The Evidence Presented at Trial Was Sufficient for Any
        Rational Jury to Find Defendant Guilty of Embezzlement from**
25        **a Bankruptcy Estate**

26    Counts One through Three charged defendant with embezzlement

27  from a bankruptcy estate tied to his transfers, spending, and

28

embezzlement of $264,595 from Ace Gallery's bankruptcy estate to pay the rent of Ace Museum for April 2016.  CR 1.

To convict defendant of such embezzlement, the government was required to prove the following elements beyond a reasonable doubt: (1) on March 30 and April 1, 2016, a bankruptcy case docketed as In Re: Art and Architecture Books of the 21st Century, d.b.a. Ace Gallery, Case Number 2:13-bk-14135-RK was pending in the United States Bankruptcy Court for Central District of California, and Art and Architecture Books of the 21st Century, d.b.a. Ace Gallery was the Debtor;[2] (2) the property or interest described in the indictment was part of the bankruptcy estate of the Debtor;[3] (3) the defendant had access to the property as a trustee or custodian of the bankruptcy estate;[4] and (4) the defendant knowingly and fraudulently embezzled, spent, or transferred property belonging to the bankruptcy estate.  See Eleventh Circuit Model Criminal Jury Instructions, No. O4 (2020 ed.). "Fraudulent" means to knowingly deceive or mislead someone, usually for personal gain.  To "embezzle" means to wrongfully take someone's property and spend it or transfer it.  Id.

In his Motion, the sole issue defendant raises is that the government did not prove that the $264,595 "left the estate without

[2] Defendant does not assert that Elements 1 through 3 were not proven by the Government.  In an abundance of caution, the government provides the citations/exhibits that establish the government met its burden on these elements. As for Element 1, see Tr Ex. 15; 5/28/24 PM RT 116:7-117:16, 126:22-127-10.

[3] Between March 18, 2016 and April 6, 2016, Richardson testified that defendant sold art that was part of the bankruptcy estate and the subject of Counts 1 through 3 of the Indictment.  5/29/24 AM RT 97:11-15.  Richardson testified that the sales proceeds eventually went to the landlord of Ace Museum, not the estate of debtor Ace Gallery. 5/29/24 AM RT 97:18-19. See, also Tr. Ex. 32, p. 6, line 30; 5/28/24 PM RT 133:14-23, 5/28/24 PM RT 134:5-7.

[4] 5/28/24 PM RT 122:12-123:8.

6

permission from the bankruptcy court." (Motion, 3:8-9).[5]  As seen below, the government did prove that defendant did not get permission from the bankruptcy court.  But defendant's claim is legally frivolous, because "getting permission" is not an element to the crime charged. The paramount element that the government needed to prove was that defendant "knowingly deceived or mislead" when he wrongfully took estate property and embezzled, spent, or transferred it outside the estate.  The government did so with ample and sufficient evidence.

    1.   Substantial Evidence Supports Count 1

The jury saw Exhibit 1, the bank account statement for March 2016 for the debtor Ace Gallery's general operating account ending 8402. Tr. Ex. 1; 5/29/24 AM RT 102:24-103:9. The jury saw that Check No. 3164, made payable to Ace Museum, was cashed on March 30, 2016 in the amount of $50,000.  Ace Museum was not part of the estate of debtor Ace Gallery.  Tr. Ex. 19, 28; 5/28/24 PM RT 141:18-19. The jury then saw Exhibit 3, the March 2016 account statement for Ace Museum's account ending 6347, where in defendant deposited Check No. 3164. Tr. Ex. 3. On both accounts, defendant was the sole signatory and authorized user.  5/28/24 PM 137:6-138:10, Tr. Ex. 2; 5/29/24 AM RT 53:17-54:16, Tr. Ex. 4.  Defendant's actions of transferring $50,000 of estate funds to Ace Museum deprived the estate and its creditors of the use of that money, and the Bankruptcy Court was none the wiser.

Very simply, defendant:

---

[5] In his Motion, defendant himself admits that he "merely transferred" the money that belonged to the estate to Ace Museum. Motion, 3:6-7.

- Signed Check No. 3164 that obligated $50,000 of funds that
  belonged to the estate.

- Deposited or caused to be deposited Check No. 3164 into the
  account of Ace Museum ending 6347, an account that is not
  part of the estate of debtor Ace Gallery.

- Fraudulently transferred/embezzled/spent the $50,000 when
  he knowingly deceived and mislead the Bankruptcy Court,
  creditors, and other interested parties of the right to
  make decisions about how its property was to be used and
  imposed a risk of loss.

- Transferred/embezzled/spent the $50,000 for his personal
  gain which was to pay the monthly rent of the Ace Museum
  property.

- Embezzled the money when he wrongfully took the $50,000 of
  the estate's money and spent it and transferred it to Ace
  Museum's account.

That is all the government needed to prove beyond a reasonable
doubt to meet the burden of Element 4 of Count 1.  On the evidence
and testimony above underline alone, the government met its burden.

The government further met it burden with other evidence.
First, with Exhibit 17, days after the charged conduct, defendant's
personal attorney, David Shemano, admitted to the plan agent that
defendant "caused Ace Gallery to transfer $264,000 to Ace Museum,"
stated that defendant "recognized that the loaned funds must promptly
be repaid" and promised repayment by Ace Museum.  Tr. Ex. 17; 5/29/24
AM RT 114:25-115:5 (emphasis added).  Had defendant not needed court
permission to "loan" the funds, defendant would not have promised to
repay the fund, plus interest.  If defendant did not need court

8

1  permission to loan the estate's money, defendant's personal attorney

2  would have stated as such to the plan administrator. In other words,

3  if defendant was free to do what he wanted with estate property, his

4  personal attorney would have stated as much.  But Shemano didn't,

5  because both he and defendant knew that court permission was needed

6  to transfer estate funds to Ace Museum.

7       Second, Ron Bender, defendant's bankruptcy attorney from 2013

8  through the charged offenses,[6] testified how the debtor needed court

9  permission to borrow money pursuant to 11 U.S.C. § 364.[7] 5/30/24 AM

10 RT 35:23-25.  Through Exhibit 29, Bender explained how defendant

11 attested that he understood the terms of the loan sought and it was

12 regular practice for his firm to review the pleading with defendant

13 prior to filing it with the Court, which included a request for Court

14 permission.  5/30/24 AM RT 40:2-23; Tr. Ex. 29, p. 25.  One of the

15 purposes of Exhibit 29 and Bender's testimony was to show the jury

16 that defendant knew that obtaining loans for the debtor needed

17 permission of the bankruptcy court, and likewise, transferring

18 debtor's money, like the $264,595 defendant "lent" to Ace Museum,

19 would also need court permission.

20      Then, the government confirmed that defendant did not receive

21 permission of the bankruptcy court to write and deposit check no.

22 3164 or make any of the transfers that are the subject of the

23 Indictment.  First, from Richardson:

24

25  _____

26      [6] Telling was Bender's testimony that he did not even know what
    Ace Museum was.  5/30/24 AM RT 63:4.

27      [7] This section is not a "special" occasion section like
    defendant says it is – section 364, entitled "Obtaining Credit" is
28  the main provision that guides debtors in obtaining money from
    lenders that requires court permission.

Q Did Mr. Chrismas ask the bankruptcy court permission to write this check to Ace Museum on or around March 30, 2016?

A No, he did not.

5/29/24 AM RT 104:11-14.

Q  Did Mr. Chrismas get permission from the bankruptcy court to do either -- any of these three transactions?

A No, he did not.

Q Did he get permission from the bankruptcy court to deposit the money either into Ace Museum or directly to Cathay Bank for the payment of rent of Ace Museum?

A No, he did not.

5/29/24 AM RT 113:6-13.

Q At your time on the matter, did defendant ever get court permission to transfer money to Ace Museum?

MS. MAITIA: Objection, Your Honor. 402, 403.

THE COURT: You can answer.

THE WITNESS: No.

5/29/24 AM RT 81:5-9.

In fact, both parties showed the jury that court permission was regularly needed and sought by parties in the bankruptcy. Hearings on the competing bankruptcy plans attended by defendant spanned several weeks and the jury heard how the plan needed court approval, with defendant attending the hearing. 5/29/24 AM RT 82:6-8, 96:6-16; 5/29/24 PM RT 7:5-12. Defense showed the jury Exhibits 58 and 217, both stipulations for different purposes wherein the parties sought the bankruptcy court's permission.  5/30/24 AM RT 8:23-13:9, Tr. Ex. 58, 3:14, 3:23, 4:1; Tr. Ex. 217, 10:20-22. In fact, except the debtor running its business in its ordinary course, the provisions of

10

1  Title 11, U.S.C., often requires parties to seek permission from the

2  court to act.  To that end, the government presented evidence to the

3  jury that debtor Ace Gallery was not in the business of lending

4  money; its business was selling art.  Richardson confirmed.

5      Q What business did Ace Gallery do?

6      A It ran an art gallery, sold art. It primarily focused on

7        usually living artists, current 20th century artists. It would -

8        - it sold a mix of art that it owned and art that artists would

9        consign to it.

10 5/28/24 PM RT 115:2-6. Richardson testified transactions outside the

11 debtor's very ordinary, ongoing transactions, that the debtor

12 operated before filing bankruptcy, the debtor would need to "bring it

13 before the Court to obtain approval." 5/28/24 PM RT 121:17-122:2.

14     Defendant takes great issue with the fact that Richardson

15 testified about debtor Ace Gallery's ordinary course of business,[8] as

16 if it was in dispute that Ace Gallery sold art, or that Richardson's

17 statement of fact was an expert opinion. Motion, pp. 4:21-22; 17:24;

18 20:3. Defendant's outrage is baffling – it is undisputed that debtor

19 Ace Gallery sold art and was not a hard money lender. The jury did

20 not have to take Richardson's word (despite the fact that it was

21 true), the government showed the jury other documentary evidence that

22 confirmed debtor Ace Gallery's ordinary course of business was

23 selling art, not lending.  As seen in Exhibit 15, the initial

24 bankruptcy petition filed by defendant, he listed as a description of

25

26 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27     [8] Ordinary course of a business is not only a bankruptcy term,
   but also a common term used. "Ordinary course of business." Merriam-
   Webster.com Legal Dictionary, Merriam-Webster, https://www.merriam-

28 webster.com/legal/ordinary%20course%20of%20business. Accessed 11 Sep.
   2024.

1  debtor's business as "Commercial Art Gallery." Tr. Ex. 15, p. 6.

2  Exhibit 32, the amended schedules signed and filed with the

3  bankruptcy court by defendant listed the nature of the debtor's

4  business as "Art Gallery and Art Sales," listed the only income

5  received by the debtor in the prior two years as "Art Sales and

6  Rentals." Tr. Ex. 32, p. 35, 38.

7      Once Check No. 3169 was deposited into the account of Ace Museum

8  by defendant or someone defendant caused to deposit, defendant

9  completed the crime. The government proved Element 4 to Count 1 to

10  the jury beyond a reasonable doubt with ample evidence.

11          2.  <u>Substantial Evidence Supports Count 2</u>

12      The jury saw Exhibit 5, the invoice of debtor Ace Gallery, that

13  was evidence of the sale of two artworks, one each by Tara Donovan

14  and Jonathan Monk, to purchaser Michael Strauss, dated March 30,

15  2016. Tr. Ex. 5. The jury saw Exhibits 46, the consignment sheets

16  maintained by debtor Ace Gallery that proved that the pieces by

17  Donovan and Monk were part of the inventory of debtor Ace Gallery on

18  March 30, 2016. Tr. Ex. 46; 5/29/24 AM RT 98:15-100:9. The jury saw

19  page 2 of Exhibit 5, the wire instructions from defendant that told

20  Strauss to wire the sale proceeds, $100,000, to the bank account of

21  Ace Museum, whereas the proceeds belonged to debtor Ace Gallery. Tr.

22  Ex. 5; 5/29/24 AM RT 100:22-101:17. Then, the jury saw Exhibit 3, the

23  relevant monthly statement from Ace Museum's bank account ending

24  6347, evidence that the account received two wires that totaled

25  $100,000, the sales proceeds, not the bank account of the debtor Ace

26  Gallery. Tr. Ex. 3; 5/29/24 AM RT 102:7-12. Ace Museum is not debtor

27  Ace Gallery. 5/28/24 PM RT 141:18-19; Tr. Ex. 19, 28. As seen in

28  Exhibit 14, the sales proceeds from the Strauss sale were part of the

wire that defendant cause to happen to pay the rent for Ace Museum,
which was due on April 1, 2016. Tr. Ex. 14; 5/29/24 AM RT 105:1-14.

The aforementioned exhibits and testimony are the entirety of
what the government needed to prove pertaining to Count 2, Element 4.
Very simply, defendant:

- Sold art that belonged to the estate of Ace Gallery.
- Caused Strauss to wire the sales proceeds to the bank
  account of Ace Museum, not the bank account of debtor,
  wrongfully taking the property of the estate and
  transferring it from the estate. By definition, defendant
  embezzled.
- Acted fraudulently when he deceived and mislead the
  bankruptcy court, creditors, and other interested parties
  in the bankruptcy case as to the disposition estate's
  money, as defendant used the money to pay the rent for Ace
  Museum, a personal gain to the defendant and the museum.

Once the wired sale proceeds were deposited into the account of
Ace Museum, the crime was completed. The government proved Element 4
to Count 2 beyond a reasonable doubt with ample evidence.

### 3.    Substantial Evidence Supports Count 3

The jury saw Exhibit 6, the invoice of debtor Ace Gallery, that
was evidence of the sale of two artworks, one each by Mary Corse and
Sylvie Fleury, to purchaser Henning Freybe, dated March 30, 2016. Tr.
Ex. 6; 5/29/24 AM RT 105:15-25.  The jury saw Exhibit 7, the
consignment agreement or artist contract between debtor Ace Gallery
and Corse. Tr. Ex. 7; 5/29/24 AM RT 106:3-18. Richardson testified
that the Corse piece sold to Freybe was part of the estate of debtor
Ace Gallery.  5/29/24 AM RT 106:24-107:5. The jury saw Exhibit 46,

13

page 3, which was a consignment sheet showing it held the Fleury piece in the inventory of debtor's estate when defendant sold it to Freybe. Tr. Ex. 46; 5/29/24 AM RT 107:21-108:10. The jury saw page 2 of Exhibit 6, the wire instructions from defendant that told Freybe, among other things, to send a check in the amount of $114,595.32 made payable to the landlord of Ace Museum by overnight Fedex to defendant at debtor's address. Tr. Ex. 6; 5/29/24 AM RT 108:19-109:9. The jury saw Exhibit 8, the check Freybe wrote to the landlords of Ace Museum pursuant to defendant's instruction. Tr. Ex. 8; 5/29/24 AM RT 109:10-110:2. The jury saw Exhibit 14, page 9, the accounting from the landlords of Ace Museum, 400 S. La Brea LLC, where on April 1, 2016, it recorded the receipt of the Freybe check in the amount of $114,595.32. Tr. Ex. 14; 5/29/24 AM RT 111:11-12. Then, the jury saw Exhibit 13, the April 2016 monthly statement for 400 S. La Brea LLC with Cathay Bank, evidence that the landlord deposited the Freybe's check and received funds pursuant to the check. Tr. Ex. 13; 5/29/24 AM RT 112:14-113:13. Part of the sales proceeds from the Freybe sale of art that belonged to the estate of debtor Ace Gallery went to pay the rent for Ace Museum, which was due on April 1, 2016, and defendant did not receive permission from the bankruptcy court to use estate funds to pay the rent for Ace Museum for April 1, 2016. 5/29/24 AM RT 105:1-14.

The aforementioned exhibits and testimony are the entirety of what the government needed to prove pertaining to Count 3, Element 4. Very simply, defendant:

- Sold art that belonged to the estate of Ace Gallery.
- Caused Freybe to write a check addressed to 400 S. La Brea LLC.

14

- Sent the Freybe check or caused someone to send the check to 400 S. La Brea LLC, wherein it was deposited into its account, not the bank account of debtor, wrongfully taking the property of the estate and transferring it from the estate and spending it. By definition, defendant <u>embezzled</u>.

- Acted fraudulently when he deceived and mislead the bankruptcy court, creditors, and other interested parties in the bankruptcy case as to the disposition estate's money, as defendant used the money to pay the rent for Ace Museum, a personal gain to the defendant and the museum.

The government proved Element 4 to Count 3 beyond a reasonable doubt with ample evidence.

The charged transactions weren't a mistake —- they were part of a pattern of conduct that defendant undertook for time when he was the trustee for the debtor-in-possession. Richardson testified that money, over $5 million, that belonged to the estate was transferred by defendant to Ace Museum. 5/29/24 AM RT 52:21-53:16. In other transactions, the government showed how defendant sold art belonging to the estate, instructed the buyers to send the sale proceeds to the bank account of Ace New York, transferred the money from that account to the account of Ace Museum, and then wired the money to the landlords of the Ace Museum location to pay rent. 5/29/24 AM RT 61:8-81:9.

At trial, the government presented sufficient evidence to establish each element of embezzlement from a bankruptcy estate. Defendant's arguments to the contrary lack merit. The evidence offered at trial clearly and unmistakably proved that defendant

1  embezzled from the estate of debtor Ace Gallery. The evidence was
2  sufficient to warrant a rational jury's conclusion that defendant
3  embezzled, spent, and transferred estate property outside of the
4  estate when he was a fiduciary of such estate. The Court find the
5  same and deny defendant's motion.

6  **IV.  DEFENDANT'S PROSECUTORIAL MISCONDUCT CLAIMS ARE FRIVOLOUS**

7       Defendant adds five additional reasons to his original motion
8  for dismissal based on prosecutorial misconduct, originally filed on
9  May 27, 2024 (CR 159).

10      At the outset, none of the five reasons enumerated in the
11 instant motion are reasons for dismissal due to the alleged
12 prosecutors' misconduct. The points defendant insists are misconduct
13 that warrants dismissal are qualms defendant has with evidentiary
14 rulings made by the Court during trial or disputes as to fact.
15 Defendant did not object to the introduction of testimony or evidence
16 on prosecutorial misconduct grounds; he simply raised an evidentiary
17 objection to their admissions. Further, defendant fails to explain
18 how the admission of certain evidence is irrelevant or unfairly
19 prejudicial to establish prosecutorial misconduct, and the Court
20 should not manufacture an argument for defendant. Greenwood v. FAA,
21 28 F.3d 971, 977 (9th Cir.1994) ("We will not manufacture arguments
22 for [a party]...."); United States v. Reyes, 660 F.3d 454, 463 (9th
23 Cir. 2011). Neither has defendant shown evidence of the Government's
24 relying on known false or misleading statements.

25      As such, defendant's allegations do not rise to the level of
26 improper conduct that "so affected the jury's ability to consider the
27 totality of the evidence fairly that it tainted the verdict and
28 deprived [defendant] of a fair trial." United States v. Weatherspoon,

1   410 F.3d 1142, 1151 (9th Cir.2005) (quoting United States v. Smith,

2   962 F.2d 923, 935 (9th Cir.1992)).

3   **A.    Legal Standard**

4   The government provides the court the legal standard in opposing

5   defendant's original motion, CR 157, in its opposition, filed

6   concurrently herewith, and incorporated herein.  CR 201, 5:25:6:26.

7   **B.    The government did not constructively amend and/or vary the
        Indictment**

8   Defendant argues that the government constructively amended or

9   fatally varied the Indictment when the government proved that

10  defendant knowingly and fraudulently embezzled, spent, or transferred

11  estate funds to Ace Museum and its landlord, rather than proving that

12  defendant also appropriated the money for his own personal use. The

13  government did not.

14  Constructive amendment occurs when the government proves at

15  trial an offense different from the one the grand jury charged.

16  United States v. Pang, 362 F.3d 1187, 1194 (9th Cir. 2004).  A

17  constructive amendment may be shown if "(1) there is a complex set of

18  facts [presented at trial] distinctly different from those set forth

19  in the charging instrument, or (2) the crime charged [in the

20  indictment] was substantially altered at trial, so that it was

21  impossible to know whether the grand jury would have indicted for the

22  crime actually proved."  United States v. Adamson, 291 F.3d 606, 615

23  (9th Cir. 2002) (emphasis added) (quotations and citation omitted).

24  Courts reject constructive amendment claims when the government does

25  not introduce evidence at trial that would enable the jury to convict

26  the defendant for conduct with which he was not charged."  United

27

28

17

1  States v. Soto-Barraza, 947 F.3d 1111, 1119 (9th Cir. 2020)

2  (quotations and citation omitted).

3      In contrast, variance occurs when the government's trial

4  evidence differs materially from the facts alleged or implied in the

5  indictment. United States v. Adamson, 291 F.3d 606, 614 (9th Cir.

6  2002)(quotations and citation omitted). "A variance between

7  indictment and proof does not require reversal unless it affects the

8  substantial rights of the parties." United States v. Von Stoll, 726

9  F.2d 584, 587 (9th Cir. 1984)(quoting United States v. Kaiser, 660

10 F.2d 724, 730 (9th Cir. 1981)).

11     Neither doctrine applies because nether occurred at trial. As

12 the Court is well aware, defendant has exhaustively litigated the

13 applicability of "appropriated for one's own use" means of violating

14 18 U.S.C. § 153, mostly through Motion in Limine #5. CR 91, 92, 94,

15 105, 106, 117, 153, 156.  The Court, on multiple occasion, has denied

16 defendant's "tortured reading" pertaining to this means, both before

17 trial and during. CR 153, p. 14:16; 5/31/24 AM RT 61:2-5. Here again,

18 defendant refuses to acknowledge there are multiple means to violate

19 a criminal statute and the statute does not require the government to

20 prove all the ways defendant violated the statute, just one way.

21     When a statute may be violated by multiple means, like section

22 153, the government charged defendant with the statutory alternatives

23 in the conjunctive rather than the disjunctive by using "and" rather

24 than "or." In other words, even when the statute uses "or," the

25 government charged defendant in the conjunctive and proved the

26 violations in the disjunctive. Fed R. Crim P. 7(c)(1)(a count may

27 allege . . . that the defendant committed it by one or more specified

28 means); Turner v. United States, 396 U.S. 398, 420 (1970)(The general

18

rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as defendant's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged); United States v. Long, 301 F.3d 1095, 1106 (9th Cir. 2002). The trial jury, with a disjunctive instruction, would not need to agree on which means the defendant used to commit the crime, so long as they agreed unanimously on each of the elements. Fed. R. Crim. P. 7(c), advisory committee notes, n. 2 (1944); Schad v. Arizona, 501 U.S. 624, 631 (1991) ("[A]n indictment need not specify which overt act, among several named, was the means by which a crime was committed."); United States v. Gandy, 926 F.3d 248, 262-63 (6th Cir. 2019).

The government did not constructively amend the indictment when, at trial, it proceeded to prove defendant knowingly and fraudulently embezzled, spent, or transferred property belonging to the bankruptcy estate. Constructive amendment only applies to the broadening, rather than the narrowing, of indictments. In United States v. Miller, the Supreme Court rejected a claim of constructive amendment where the complaint was "not that the indictment failed to charge the offense for which he was convicted, but that the indictment charged more than was necessary." 471 U.S. 130, 140, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). In that case, Miller was indicted for various fraudulent acts in connection with a burglary at his place of business. Id., at 131. Proof at trial concerned only one of the many alleged fraudulent acts. Id., at 132. The Court specifically rejected the argument that "it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that

1  is clearly contained within it." Id., at 144; United States v.

2  Wilbur, 674 F.3d 1160, 1178 (9th Cir. 2012).

3       Here, by eliminating one of the four means of violating the

4  statute, the government, with the Court's agreement, proceeded to

5  prove at least one of the remaining three means of embezzlement from

6  Ace Gallery's bankruptcy estate.[9]  The government did not expand or

7  broaden the Indictment, did not add or modify any essential elements

8  to the charged offenses, and did not proceed to convict defendant on

9  any different theory or facts for which defendant was charged.  When

10  the Court eliminated "appropriated for one's own use" from one of the

11  four means of violating Section 153, the Court narrowed the

12  indictment.  By definition, under Miller, such narrowing does not

13  constructively amend the Indictment.

14       Neither did the government fatally vary from the Indictment.

15  The proof offered at trial matched the charges made in the

16  indictment. The testimony and exhibits offered by the government (as

17  listed above in Part III., B.) proved that defendant embezzled from

18  the estate of debtor Ace Gallery.  The grand jury alleged that

19  defendant embezzled, spent, and transferred property belonging to the

20  estate of Ace Gallery $264,595.32, which was in defendant's charge

21  and custody as an agent for Ace Gallery, and trustee and custodian

22  for the bankruptcy court in the case, and paid either Ace Museum

23  (Corporation 1 in Indictment) or the landlords of Ace Museum (400 S.

24  La Brea LLC, creditor of Corporation 1 in Indictment).

25       The Grand Jury Clause gives defendants "a substantial right to

26  be tried only on the charges set forth in an indictment by a grand

27

28       [9] The government proved all three means of violating section 153, but only one was required.

jury." <u>United States v. Shipsey</u>, 190 F.3d 1081, 1085 (9th Cir. 1999).
The purpose of the right is to ensure that a defendant is informed of
the charges against him, to allow him to prepare a defense and not be
taken by surprise at trial, and to protect against another
prosecution for the same offense." <u>United States v. Tsinhnahijinnie</u>,
112 F.3d 988, 991 (9th Cir. 1997).  Here, defendant had been on
notice for over three years that the grand jury alleged he violated
section 153 by four different means, and that the government did not
need to prove all four means, just one. The government did so, not by
constructively amending the Indictment, or causing a fatal variance -
by proving the elements of section 153 in full by at least one of the
remaining three means.  The proof presented by the government
corresponded to the offenses that were clearly set out in the
Indictment.  Defendant's argument otherwise is meritless.

**C.    No misconduct exists pertaining the government's theory of
the case presented.**

The government finds it difficult to understand what defendant
is arguing in his second point, or how anything alleged by the
defendant rises to the level of misconduct that warrants dismissal.
As best as it can tell, defendant argues that it is misconduct for
the government to state defendant did not repay the embezzled funds
(which is an undisputed fact) when he was prohibited from arguing he
intended to repay the estate its property.

To review, defendant was prohibited from arguing his intent to
repay the estate because it is not a legally cognizable defense.[10] CR

---

[10] While intent-to-repay was not a defense to the charged crimes,
defendant actually did argue that he intended to repay the money.
(<u>See</u>, <u>e.g.</u>, 5/28PM RT at 105 (defense opening statement, arguing that
"I showed you three pictures . . . the Ace Gallery location in
*(footnote cont'd on next page)*

21

47, 3:12-16; <u>United States v. Ross</u>, 206 F.3d 896, 899 (9th Cir. 2000) (collecting cases for the holding that intent to repay is not a defense to various types of embezzlement or misappropriation). Defendant's crimes were complete when the $264,595.32 left the estate of debtor Ace Gallery on March 30, 2016 and April 1, 2016. Defendant was further prohibited by the Court from presenting a defense that he transferred property from the bankruptcy estate to a separate property with the ultimate goal of having Ace Gallery emerge from bankruptcy. CR 153. The Court found the holding in <u>United States v. Love</u>, 17 F.App'x 796, 801 (10th Cir. 2001), instructive.  In <u>Love</u>, the Court affirmed convictions when it found that the crime of embezzlement from a bankruptcy estate was complete one a defendant, with the requisite <u>mens rea</u>, acted pursuant to one of the statutory very, regardless of what happened to the funds once they left the bankruptcy estate.  Further discussion regarding intent to repay was heard by the Court prior to jury instruction, and the Court <u>agreed</u> with defendant's proposed "intent to repay" language regarding Jury Instruction 31. 5/31/24 AM RT 5:8-8:17.

Defendant argues that the government's opening statement and closing arguments before the jury highlighted that defendant did not repay, something which he was barred from refuting. Motion, p. 11. First, the Court clearly instructed that what was said in both were not evidence and could not be considered in deciding the facts. 5/31/24 AM RT 23:23-24:2. It is well-established that juries are

---

Miracle Mile, the Ace Gallery location in Beverly Hills, and the Ace Museum location on La Brea.  Each one of them had a lease and a valuable purchase option" and "one of the ways Mr. Chrismas tried to pay his creditors was by exercising his purchase options on real estate".)

22

1  presumed to follow jury instructions. <u>Harris v. Rivera</u>, 454 U.S. 339,

2  346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981)(per curiam); <u>Trillo v.

3  Biter</u>, 769 F.3d 995, 1000 (9th Cir. 2014). Defendant has done nothing

4  to rebut that presumption. Secondly, while defendant completed the

5  crime of embezzlement from an estate when he embezzled, spent, or

6  transferred the estate's funds out of the estate, the reason

7  defendant did so is relevant evidence and highly probative as to

8  defendant's motive – which is admissible against defendant. "As this

9  court stated in <u>United States v. Mahler</u>, 452 F.2d 547 (9th Cir.

10 1971), <u>cert. denied</u>, 405 U.S. 1069, 31 L. Ed. 2d 801, 92 S. Ct. 1517

11 (1972), evidence relevant to a defendant's motive "is not rendered

12 inadmissible because it is of a highly prejudicial nature. . . . The

13 best evidence often is." <u>United States v. Parker</u>, 549 F.2d 1217,

14 1222 (9th Cir. 1977); "'[W]here the intent of the party is matter in

15 issue, it has always been deemed allowable, as well in criminal as in

16 civil cases, to introduce evidence of other acts and doings of the

17 party, of a kindred character, in order to illustrate or establish

18 his intent or motive in the particular act directly in judgment'."

19 <u>Tedesco v. United States</u>, 118 F.2d 737, 740 (9th Cir. 1941).

20      Then, defendant concluded that the government committed

21 misconduct and acted in bad faith when took inconsistent positions

22 regarding what can and cannot be included in the estate, <u>i.e.</u>, Ace

23 Museum's lease and the Tuna Canyon.  The government did not commit

24 misconduct and the government's position on each asset are not

25 inconsistent. As enumerated in government's Motion <u>in Limine</u> #5, CR

26 91, the government argued that the estate's interest in Ace Museum

27 was only up to the $4.4 million loan Ace Museum owed debtor Ace

28 Gallery for pre-petition loans. CR 91, 2:4-15. The government has

shown the Court how Ace Museum or its lease could not have been part of the estate of debtor Ace Gallery. CR 91, p. 8:4-15. Consistently, the government has shown the Court how defendant's embezzlement of estate funds to "preserve the estate's assets" would have been a legal impossibility given the section 501(c)(3) status of Ace Museum. CR 165, 1:20-2:15, 4:2-26.

The sale of the Tuna Canyon property falls with significantly different facts and legal positions of those involved. Defendant held the Tuna Canyon personally and is not a section 501(c)(3) organization that was legally prohibited by law from transferring money into the estate of debtor Ace Gallery.  As the government consistently explained, that defendant 1) used estate funds to pay the property taxes on the Tuna Canyon; and 2) has a personal judgment entered by the Court to repay the estate at least $14 million, defendant should be giving the estate of debtor Ace Gallery funds owed to it.

Neither position of the government is inapposite, and the case cited by defendant to support his claim to the contrary is inapplicable. In Nguyen v. Lindsay, 232 F.3d 1236 (9th Cir. 2000) in two separate trials, the government introduced different evidence as to who initiated a voluntary gun battle where a shot killed a third person.  In Nguyen, the Court held that given that prosecutor argued consistently, in both cases, that those taking part in gang warfare were equally responsible for death of innocent bystander, regardless of who fired first shot, and given absence of allegations that prosecutor falsified evidence or acted in bad faith. Id., at 1240. The Court found that the prosecutor did not violate defendant's right to due process in presenting conflicting evidence in separate trials

arising from same killing. Id., at 1241. Here, no such due process violation exists; the government did not falsify evidence or act in bad faith.

**D.    The government did not abuse the grand jury process.**

The government addressed this allegation in opposing defendant's Motion for Dismissal based on Prosecutorial Misconduct, CR 201, filed concurrently and incorporated herein.

**E.    The government did not improperly illicit fact or expert testimony from Richardson.**

Despite defendant's cries to the contrary, Richardson was not an expert witness, and the government did not elicit expert testimony from him – far from it by any measure.

At the onset of his testimony, the government asked basic, primer-like questions of Richardson, which were non-controversial and undisputed, and were intended to aid the jury in organizing proof admitted in the government's case in chief.  For example, upon admission of the operative bankruptcy petition, the government asked Richardson about terms like "debtor" and noted to the Court that 1) the words are commonplace and 2) he had personal knowledge as to what a debtor was based on his involvement in the specific bankruptcy proceedings underlying the charged conduct here.  5/28/24 PM RT 118:15-18.

Being in debt, owing money to another entity, is not an unfamiliar concept to any member of the jury -- and the counterparty, a creditor, the party that is owed money, is also common in everyday life. There is nothing about these terms that requires "scientific, technical, or other specialized knowledge" and certainly, does not concern a subject that the average juror is not capable of

understanding.  FRE 702; United States v. Amuso, 21 F.3d 1251, 1263 (2d Cir.1994)("A district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror.").  Other basic terms the government asked Richardson to explain to the jury, like "debtor-in-possession, "estate," and "ordinary course of business," are not terms that can only be mastered by specialists in the field of bankruptcy.  Under defendant's theory that such testimony is "expert," all persons who elect to file their own bankruptcy cases would be experts.  Richardson, as part of his job for the unsecured creditors committee, was tasked with knowing relevant provisions of the Bankruptcy Code in Title 11, just as the defendant, the debtor-in-possession and trustee for the estate, was responsible for knowing about his fiduciary duty to use estate funds permissibly under the same title.  That Richardson had specialized knowledge, or the fact that Richardson was chosen to carry out an investigation because of this knowledge, does not render his testimony "expert" as long as the testimony was based on his investigation and reflected his investigatory findings and conclusions, which it was, and was not rooted exclusively in his expertise, which it was not.  Bank of China, N.Y. Branch v. NBM LLC, 359 F.3d 171, 181 (2d Cir. 2004). As to Richardson's investigation into defendant's $14 million diversion of estate funds, Richardson's testimony was permissible under FRE 701 because it was based on his perceptions. FRE 701(a). Richardson testified as to the steps he took, as part of his job, in reviewing documents to conclude that

26

defendant diverted money from the estate.  5/28/24 PM RT 145:15-148:2.

Further, the Court was attuned to defendant's objections as to Richardson's testimony and utilized its position as gatekeeper for any potential "expert" testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The Court showed sensitivity to defendant's concerns, even sustaining objections to questions where no expert testimony was solicited.  See, e.g., 5/28/24 PM RT 123:10-14; 134:15-17 (regarding consignments). At other times, the Court reasonably required the government to reformulate its question.  5/28/24 PM RT 135:24-136:13.  The Court overruled many of defendant's objections because the government did not solicit or ask questions of an expert nature of Richardson.  See, e.g., 5/28/24 PM RT 121:14-16; 139:7-10. Defendant did/does not dispute the substance of the testimony sought and received through Richardson, mainly because the testimony was not controversial and accurate.  Furthermore, the bankruptcy terms the government asked Richardson to explain to the jury were not the question in this case.

No dual role testimony jury instruction was needed -— Richardson did not render any opinions as to the ultimate questions that were the provenance of the jury.

**F.    The government did not violate the 6th Amendment or Crawford**

Defendant argues that the government intentionally elicited "testimonial hearsay" about declarations signed in connection with the bankruptcy proceedings.  Defendant is wrong.

The declarations described at trial were prepared in connection with a non-criminal matter, so they could only possibly be

1  evidentiary hearsay, rather than testimonial hearsay; their admission

2  therefore cannot violate the Sixth Amendment.  See Davis v.

3  Washington, 547 U.S. 813, 822 (2006).  Moreover, the government did

4  not intentionally elicit testimony about those declarations in the

5  first place.

6      The government asked Richardson about Exhibit 45, a loan

7  document supposedly prepared in July 2009.  Tr. Ex. 45; 5/30/24 PM RT

8  at 47.  That document indicated that a meeting of the supposed board

9  of directors for Ace Museum had taken place, and that the board had

10 authorized Ace Museum to borrow money from Ace Gallery.  Id., at 47-

11 48.  The government then asked "Who, on this document, are the

12 directors that voted on this loan."  Id., at 48.

13     Richardson began to explain his "discussions with, at least two

14 of them," but he was cut off, thereby preventing him from offering

15 hearsay testimony.  Id., at 49 (prosecutor instructing Richardson to

16 instead "Just answer who is on it?"  Who is listed as being

17 voting?").  The government then asked further questions:

18     Q: Scott Schaefer wasn't a board of director member?

19     MS. MAITIA: Objection, lacks foundation. Calls for hearsay,
                       confrontation clause.

20
21     THE COURT: He can answer whether he has an understanding of
                     whether Scott Schaefer was a board member.

22     MS. MAITIA:  Your Honor, may I be heard at sidebar please?

23     THE COURT: No. Go ahead.

24     A:  I interviewed Mr. Schaefer and obtained a declaration
            from him confirming under penalty of perjury that he was
25          not a member of the board of directors of Ace Museum.

26 Id., at 49.

27     At sidebar, the Court immediately explained its prior ruling:

28 "I didn't realize he was going to testify to a sworn statement.  I

thought maybe he had personal knowledge whether this person was a director from this work on this case." Id., at 49-50. Government counsel then agreed, saying, "He did, he testified yesterday . . . He testified that they were not [on the board], based upon his personal knowledge." Id., at 50. Defense counsel then argued that "the personal knowledge is based on testimony statements." Id. And the government immediately explained that the sworn statements were not deliberately elicited: "I asked him to answer who is listed and does he know . . . That is all – I specifically interrupted him." Id., at 50-51.

The parties and the Court subsequently questioned Richardson to determine the full source of his knowledge:

> THE COURT: You indicated in your answer you saw signed statements from these individuals that they were not on the board. [¶]  My question for you, other than working with these people coming up with these statements, do you have any independent knowledge of the fact of whether or not they were on the board?
>
> A:  No other independent knowledge <u>other than what I would refer to as a complete lack of credible board documents, minutes, any evidence that this was an active board</u> on behalf of a charitable organization.
>
> THE COURT: But other than the statements you don't have any personal knowledge of whether or not they were on the board?
>
> A:  No other personal knowledge, sort of, like, proving a negative.
>
> . . .
>
> THE COURT: So, your knowledge of them not being on the board, generally comes from their statements and from your failure to see any evidence of them being on the board.
>
> A:  I think that is fair. Yes, Your Honor.

Id., at 62-63 (emphasis added).

> Q:  Did you review Ace Museum records as part of your investigation in this case?

29

1     A:   Yes. We asked for all of them, everything we were able to get, I reviewed.

2

3     Q:   All of those records, did you ever see any sign that any of these people were actually involved in Ace Museum?

4

5     A:   I did see one document that appeared to have been signed by Andrea Nasher, but only that.

6     Q:   What about Scott Schaefer and Fred Nicholas?

7     A:   No.

8     Q:   You reviewed all records at Ace Museum provided, they never were in any of those records?

9

10    A:   Not anything that indicated their active awareness or active knowing involvement.

11 Id., at 63-64.

12    MS. MAITIA: . . . They asked you, if Scott Schaefer was a member of the board, and you said no.

13

14    A:   Correct.

15    Q:   Right. That was based on his declaration that was sworn?

16    A:   Confirmed by his declaration, yes. . . . I reached out to him because the records indicated to me about the invalidity of this board.

17

18 Id., at 66.

19     Defendant asserts that Richardson's initial response was a

20 violation of the Confrontation Clause because it implicated

21 "testimonial hearsay" in violation of Crawford v. Washington, 541

22 U.S. 36 (2004).  Motion, p. 20.  He cites one out-of-district case

23 for the proposition that "there is no 'exception to the confrontation

24 rule where the testimony was not given during the course of the

25 criminal process.'"  Id., quoting United States v. Grace, 455 F.

26 Supp. 2d 1199, 1202 (D. Mont. 2006).

27     Defendant and Grace are both wrong.

28

_Crawford_ had held that the Confrontation Clause "bars 'admission of testimonial statements of a witness who did not appear at trial . . .'" _Davis_, 547 U.S. at 821. However, as the Supreme Court explained long ago, "testimonial hearsay" is a term of art for the purposes of a Confrontation Clause analysis: "[a] critical portion of [_Crawford_'s] holding . . . is the phrase 'testimonial statements.'" _Davis_, 547 U.S. at 821. "_Only_ statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." _Id._

As _Davis_ then explained, statements are only testimonial hearsay "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." _Davis_, 547 U.S. at 822 (emphasis added). Otherwise, they "are nontestimonial," and therefore do not implicate the Sixth Amendment. _Id._; see _Ohio v. Clark_, 576 U.S. 237, 245 (2015) (reiterating that "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. 'Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause.'")[11]

The statements at issue here were plainly "nontestimonial." Richardson referred to sworn statements that were prepared in anticipation of (and filed in) a bankruptcy proceeding. The "primary

---

[11] The government cited _Davis_ orally at trial, explaining to defense counsel why _Crawford_'s testimonial hearsay rule did not apply. 5/30/24 PM RT 69, 71. Nevertheless, the Motion omits _Davis_, and instead relies on a district court decision (_Grace_) that is apparently contrary to _Davis_ and all other Confrontation Clause caselaw for the past 20 years. Motion, p. 21-22.

purpose" of these declarations (compiled by a private practitioner

for use in bankruptcy proceedings) was not for "later criminal

prosecution." Davis, 547 U.S. at 822.  The testimony therefore does

not implicate the Sixth Amendment's Confrontation Clause.

Even if it did, though, it would not give rise to a misconduct

finding.  Defendant claims the government committed misconduct

because it "intentionally elicited" the testimony about sworn

declarations.  In fact, the government initially prevented Richardson

from conveying any hearsay.  5/30 PM RT 49 (prosecutor instructing

Richardson to "Just answer who is on it?"  Who is listed as being

voting?").  And, when it asked the question, the government believed

that Richardson's response would be based on his personal familiarity

with the business records of Ace Museum -- which showed (albeit by

"prov[ing] a negative," Id., at 63 that the specified people were not

part of the board, because they never appeared in Ace Museum's

records.  See id., 63-64.

In short, while Richardson's reference to sworn declarations was

hearsay, it was not "testimonial hearsay" within the meaning of

Crawford and Davis.  It was therefore properly cured by this Court's

curative instruction telling the jury to disregard it.  5/30/24 PM RT

70.  It also was not intentionally elicited, and therefore cannot be

grounds for a misconduct finding.

**V.   DEFENDANT'S MOTION FOR NEW TRIAL SHOULD BE DENIED**

Just as mere disagreement with how a jury viewed the trial

evidence does not entitle a defendant to replace its verdict with his

opinion, nor does it grant him an automatic mulligan under Rule 33.

The court must conclude "that a serious miscarriage of justice may

1  have occurred" to merit a new trial.  United States v. Alston, 974
2  F.2d 1206, 1211 (9th Cir. 1992).  No miscarriage occurred.

3  **A.  Legal Standard**

4  "Upon the defendant's motion, a court may vacate any judgment
5  and grant a new trial if the interest of justice so requires."  Fed.
6  R. Crim. P. 33(a).  While no longer constrained, as under Rule 29(c),
7  to view the evidence in the light most favorable to the jury's
8  verdict, the court should grant a new trial "only in exceptional
9  cases in which the evidence preponderates heavily against the
10  verdict."  United States v. Pimentel, 654 F.2d 538, 545 (9th Cir.
11  1981) (internal quotations and citations omitted).

12  A decision to grant a defendant a new trial in the wake of a
13  guilty verdict is an exceptional remedy limited to extraordinary
14  cases.  As the Ninth Circuit has stated on a number of occasions, a
15  motion for a new trial "should be granted only in exceptional cases
16  in which the evidence preponderates heavily against the verdict."
17  See, e.g., Pimentel, 654 F.2d at 545; United States v. Rush, 749 F.2d
18  1369, 1371 (9th Cir. 1984).

19  In exercising its discretion to grant a new trial pursuant to
20  Rule 33, a court is entitled to weigh the evidence and evaluate the
21  credibility of witnesses.  However, as several courts have
22  recognized, it is only in limited circumstances – such as where the
23  testimony of a witness is patently incredible or defies physical
24  realities – that a court should intrude upon the jury's assessment of
25  the credibility of a witness and completely substitute its own
26  credibility assessment of a witness.  See, e.g., United States v.
27  Sanchez, 969 F.2d 1409, 1413-14 (2d Cir. 1992) (recognizing that a
28  court should intrude upon the jury's function of assessing

1  credibility of witnesses only in "exceptional circumstances"); United

2  States v. Garcia, 978 F.2d 746, 748 (1st Cir. 1992) (where witness'

3  testimony is material and so inherently implausible that it could not

4  be believed by a reasonable jury, a new trial may be granted); United

5  States v. Kusniar, 881 F.2d 466, 470-71 (7th Cir. 1989) (conflicting

6  testimony or question as to credibility do not present sufficient

7  basis for granting a new trial unless testimony at issue contradicts

8  indisputable physical facts or laws); United States v. Capati, 980 F.

9  Supp. 1114, 1132 (S.D. Cal. 1997) ("[b]ut despite the label, it is

10  clear that the court does not act as a 'thirteenth' juror in the

11  sense that a new trial should be granted whenever the court happens

12  to disagree with the conclusion of twelve jurors that the government

13  has proved its case beyond a reasonable doubt." (citing Pimentel, 654

14  F.2d at 545)).

15  **B.  The Evidence Supports the Verdict**

16  Defendant wants the Court to rule that a new trial is warranted

17  based on every evidentiary deficiency, trial error and instance of

18  misconduct raised therein, independently and cumulatively "in the

19  interests of justice." Motion, p. 23:24-28. Defendant failed to show

20  why he is entitled to such.

21  As to defendant's argument that the evidence presented was

22  sufficiently against the verdict, such could not be further from the

23  truth. Courts disfavor new trial motions based on the sufficiency of

24  the evidence. See United States v. Del Toro-Barboza, 673 F.3d 1136,

25  1153 (9th Cir. 2012); United States v. Camacho, 555 F.3d 695, 705

26  (8th Cir. 2009) ("New trial motions based on the weight of the

27  evidence are generally disfavored[.]").

28

In this section, defendant claims that the government entire case was the testimony of Richardson, and ignores the documentary evidence the government also introduced, like:

- the invoice wherein defendant directed the purchaser if estate inventory to send wire of $100,000 into Ace Museum's account which occurred, Tr. Ex. 3, 5, 46.

- the check defendant signed and deposited from the debtor's account into the Ace Museum account, Tr. Ex. 1, 3.

- the invoice that directed the purchaser of estate inventory to write a check directly payable to the landlords of Ace Museum, which occurred, Tr. Ex. 6, 8.

- his acknowledgement that he transferred $264,595 of estate funds to Ace Museum made through Shemano. Tr. Ex. 17.

This evidence alone is sufficient to sustain the jury's verdict. And as further detailed above in part III., there is further evidence that supports the jury's verdict.  Even under the less rigorous Rule 33 standard, defendant fails to demonstrate how the "evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred[.]" In fact, the opposite is true and even the defendant acknowledges that the jury understood and agreed. Motion, CR 194-1, 7:4-8.

As to defendant's request for a new trial based on prosecutorial misconduct, there was no misconduct. Defendant raises the same issues in the context of Rule 33, as it did in his motion under Rule 29 and his Motion to Dismiss, CR 159; 1) the government's position regarding Tuna Canyon (addressed in Part IV. C., above and the government's opposition, filed concurrently at CR 201); 2) the preclusion of defendant's "defense" (addressed in section III. C., above); 3)

35

constructive amendment/fatal variance (addressed in section III. B.,
above), and 4) expert/lay testimony (addressed in section III. E.,
above).  The government incorporates its arguments as noted, herein.

As to defendant's request for a new trial based on evidentiary
errors, the mere existence of evidentiary errors at trial is not a
sufficient basis for a new trial. United States v. Chang, No. 16-CR-
00047-EJD-1, 2020 WL 5702131, at *10 (N.D. Cal. Sept. 24, 2020).
Furthermore, the Court's allowance of Richardson's testimony is not
an error -— it's just one that defendant dislikes.  The government
has shown why he was not an expert in Section III.E., above.  Even if
the Court somehow made an error in allowing Richardson's testimony,
the outcome of the trial would not have been different.  Defendant
does not account for all the other testimonial and documentary
evidence that was presented to the jury, again enumerated above in
Part III.

As to defendant's request for new trial based on cumulative
errors, none exist.  None of the cases cited by defendant support his
request for a new trial.  In United States v. Frederick, the errors
made by the prosecutor included improper comments about defendant's
lawyer, erroneous representation about a witness's testimony during
closing arguments, and eliciting testimony from witnesses that made
improper suggestions.  The government did none of that here.  In
Frederick, the court noted that the government's case was weak —-
here, the government's case, as seen by the arguments above, was
strong.  Setting aside Richardson's testimony, defendant again
ignores other, strong evidence against him.

The motion should be denied.

1  **VI.    CONCLUSION**

2          For the foregoing reasons, the government respectfully requests

3  that the Court deny defendant's motions.