E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
DAVID W. WILLIAMS (Cal. Bar No. 295204)
Assistant United States Attorneys
     Major Frauds/Appeals Sections
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0756/8485
     Facsimile: (213) 894-6265
     Email:     valerie.makarewicz@usdoj.gov
                david.williams3@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>DOUGLAS CHRISMAS,<br><br>　　　　Defendant. | No. 2:21-cr-00127-MCS<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO TRANSFER $10,000 OR MORE (ECF 209) AND APPLICATION UNDER THE ALL WRITS ACT; APPENDIX 1<br><br>Hearing Date: October 15, 2024<br>Hearing Time: 3:00 p.m.<br>Location:　　Courtroom of the<br>　　　　　　　Hon. Mark C. Scarsi |

　　　Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Valerie L. Makarewicz and David W. Williams, hereby submits the Government's Response to Defendant's Motion to Transfer $10,000 or More (ECF 209), and Application Under the All Writs Act.

///

///

This Response and Application is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 18, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ David W. Williams*
VALERIE L. MAKAREWICZ
DAVID W. WILLIAMS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant wants to pay his lawyers.  (ECF 209 ("Transfer Mot.") at 1.)  He also claims his right to representation by counsel of his choosing will be infringed if he is not allowed to transfer money for that purpose.  (Id. at 3.)  But, as applicable here, the Sixth Amendment only guarantees a defendant the right to be represented by an attorney "whom that defendant can afford to hire."  Luis v. United States, 578 U.S. 5, 12 (2016).  It does not guarantee the right to steal money, then pay an attorney rather than make victims whole.

A jury has already found that defendant stole $264,595.  All of that must be awarded as restitution pursuant to the Mandatory Victims Restitution Act.  Defendant also still owes $14 million on the civil judgment entered by Judge Anderson -- for conduct that will likely result in further restitution as "relevant conduct" here.  Given the information provided by defense counsel so far, and his own assertion that he is "uncollectible," it appears that defendant cannot pay any of those sums.

If defendant cannot afford to pay his mandatory restitution, he also cannot afford to pay his current attorneys.  If he cannot afford to pay his attorneys, he has no Sixth Amendment right to their services. And this Court has the power (under the All Writs Act, at the least) "to preserve his assets for restitution" pending sentencing. United States v. Johnson, 2022 U.S. App. LEXIS 11999, at *7 [2022 WL 1315305, at *2] (unpub.) (9th Cir. May 3, 2022), cert. denied, 143 S. Ct. 265 (2022).  In short:  while restitution has not yet been imposed, it is mandatory, and defendant should not be allowed to dissipate his assets in the meantime.

## II. RELEVANT LAW

The Mandatory Victims Restitution Act of 1996 authorizes the government to enforce restitution by "all" "available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii). As numerous courts have held, this includes the issuance of orders pursuant to the All Writs Act, which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). And, as courts across the country "have uniformly" agreed, this authority also "enables a court to restrain a convicted defendant's property <u>in anticipation of</u> ordering restitution." <u>United States v. Catoggio</u>, 698 F.3d 64, 67 (2d Cir. 2012) (collecting cases) (emphasis added).

The Sixth Amendment, meanwhile, "provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" <u>United States v. Lillard</u>, 57 F.4th 729, 733 (9th Cir. 2023). "That guarantee includes, among other things, the right to 'be represented by an otherwise qualified attorney whom the defendant can afford to hire, or who is willing to represent the defendant even though he is without funds,' which we commonly refer to as the right to counsel of choice." <u>Id.</u> (quoting <u>Caplin & Drysdale, Chartered v. United States</u>, 491 U.S. 617, 624 (1989)).

## III. ARGUMENT

### A. The Court may prevent defendant from transferring assets

This Court has the authority to restrain a defendant's assets in anticipation of a sentence that will include restitution.

It has already restrained his assets as a condition of bail. (ECF 139, 140, 141.) Now that trial has passed, such a restraint is

2

1 also authorized under the All Writs Act, 28 U.S.C. § 1651.
2 Specifically, "a district court may exercise its authority under the
3 All Writs Act to restrain a convicted defendant's funds in
4 anticipation of sentencing." Catoggio, 698 F.3d at 66.

5     As the Ninth Circuit recently found, district courts may "order
6 [a defendant] not to dispose of his personal property without court
7 permission in order to preserve his assets for restitution."
8 Johnson, 2022 U.S. App. LEXIS 11999, at *7 [2022 WL 1315305, at *2].
9 This is because "the All Writs Act" empowers a court to "prevent[] a
10 convicted defendant from frustrating collection of restitution debt,"
11 even if the restitution order itself has not yet been imposed. Id.
12 (citing Catoggio, 698 F.3d at 66); see United States v. Johnson, 2021
13 WL 5236724, at *7 (9th Cir.) (defendant's opening brief on appeal in
14 Johnson, describing how the post-trial order preventing dissipation
15 of assets was entered in February 2020, more than a year before the
16 restitution order was entered in May 2021).

17     For decades, district courts both inside and outside the Ninth
18 Circuit have done just that, preventing convicted defendants from
19 dissipating their assets to the frustration of their victims. See,
20 e.g., United States v. Fuechtener, 2017 U.S. Dist. LEXIS 221648, at
21 *5 [2017 WL 10243515, at *2] (D. Nev. June 2, 2017), R&R adopted at
22 2018 U.S. Dist. LEXIS 142616 [2018 WL 4005176] ("the All Writs Act is
23 an appropriate mechanism to restrain a defendant's property between
24 the period of plea and sentencing"); United States v. Sullivan, 2010
25 U.S. Dist. LEXIS 136656, at *13-19 [2010 WL 5437243, *1, 6-8]
26 (E.D.N.C. Nov. 16, 2010), R&R adopted at 2010 U.S. Dist. LEXIS 136389
27 [2010 WL 5437242] (restraining defendant from disposing of assets
28 following entry of a guilty plea but before his sentencing hearing);

1  United States v. Numisgroup Int'l Corp., 169 F. Supp.2d 133, 138
2  (E.D.N.Y. 2001) (restraining assets under the All Writs Act where
3  "sentencing and a substantial Order of Restitution is imminent," in
4  order "to preserve the Court's ability to reach and enforce its
5  decision in a case over which it has proper jurisdiction"); United
6  States v. Gates, 777 F.Supp. 1294, 1296, n.7 (E.D.Va. 1991)
7  (restraining assets pre-sentencing "to fulfill the intent and mandate
8  of Congress that a financially able defendant pay fines and costs").
9     Here, defendant has been found guilty and is awaiting
10 sentencing.  Sentencing must include restitution under the MVRA.  See
11 18 U.S.C. § 3663A(a)(1) ("the court shall order . . . that the
12 defendant make restitution to the victim of the offense").  Given the
13 verdicts already rendered by the jury, that restitution order must be
14 at least $264,595 -- and, in light of the $14 million civil judgment
15 for related conduct, is likely to be far higher.[1]
16    But defendant has repeatedly insisted that he has no money.  See
17 ECF 144 at 34 (defendant claiming to be "uncollectible").  Defense
18 counsel herself conceded that he only sold the land in Tuna Canyon in
19 December 2023 (a violation of defendant's bond conditions) because
20 "he was desperate to try to find some assets in order to fund his
21 defense."  (ECF 201-2 at 6 (bond revocation transcript).)  If he has
22 now come up with any substantial assets, it is necessary to preserve
23 those assets while he has them, to ensure that defendant can repay
24 the victims of his crime.  Cf. United States v. Swenson, 2014 U.S.

---

[1] Defendant claims "the amount of restitution (if any) is yet to be established and will be contested."  (Transfer Mot. at 2.)  However, the first $264,595 in restitution was already established, when the jury found that he stole that amount from his victims in the counts of conviction.

4

Dist. LEXIS 76861, at *11 [2014 WL 2506300, at *4] (D. Idaho June 3, 2014) (citing <u>Catoggio</u> for proposition that pre-sentencing restraint was "particularly" necessary "where, as here, the defendant likely does not have the assets necessary to satisfy the anticipated order of restitution").

Often, the Government's enforcement efforts begin post-judgment, based on the lien that arises when the Court pronounces its sentence. <u>See</u> 18 U.S.C. § 3613. Here, however, that remedy will not prevent defendant from dissipating his limited assets. The government therefore requests that the current order restraining his assets be supplemented by the Court's authority under the All Writs Act.

Absent a showing that defendant will be able to make his victims whole, after spending "well more than $10,000" (ECF 209, Maitia Decl. ¶ 4), he should not be allowed now to move large sums of money beyond the Court's reach.[2] The request to transfer an unspecified sum to his attorneys (something "well more than $10,000") should be denied.

### B. Preventing the transfer will not violate defendant's Sixth Amendment right to counsel

As explained above, the Court has the authority to (and should) restrain defendant's assets in anticipation of a sentence that will include restitution. If it does not, his victims will likely never be compensated for their losses. Doing so also will not violate his Sixth Amendment right to counsel of his choosing.

"[T]he right to counsel of choice is 'circumscribed in several important respects.'" <u>Miller v. Blacketter</u>, 525 F.3d 890, 895 (9th

---

[2] Some courts have even frozen <u>all</u> of a defendant's assets, and required a court order prior to any expenditure whatsoever. <u>E.g.</u>, <u>Sullivan</u>, 2010 U.S. Dist. LEXIS 136389, at *20 [2010 WL 5437242, at *8] (adopting R&R and restraining "all or part of [defendant's] interest, direct or indirect, in all property, real or personal").

5

Cir. 2008) (quoting <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988). Indeed, there are some "specific situations in which the Sixth Amendment does not entitle a defendant to preferred counsel: A defendant does not have the right to be represented by (1) an attorney he cannot afford; [or] (2) an attorney who is not willing to represent the defendant . . ." <u>Miller v. Blacketter</u>, 525 F.3d 890, 895 (9th Cir. 2008); <u>see</u> <u>Wheat</u>, 486 U.S. at 159 ("a defendant may not insist on representation by an attorney he cannot afford").

Defendant claims to have no money. (ECF 144 at 34 (claiming to be "uncollectible").) He was only able to pay his attorneys the last time around by selling the Tuna Canyon land in December 2023, in a "desperate" attempt "to find some assets in order to fund his defense." (ECF 201-2 at 6 (bond revocation transcript).) And he already has massive outstanding (civil) and imminent (mandatory restitution) debts, owed to the victims of crimes charged here.

In short, he "cannot afford" to pay his current counsel. <u>See</u> <u>Wheat</u>, 486 U.S. at 159.[3]

**C. If the Court views the origin of the requested transfer as relevant, the government requests a hearing concerning their source**

As explained above, the Court can and should freeze defendant's assets to safeguard restitution. <u>Johnson</u>, 2022 U.S. App. LEXIS 11999, at *7 [2022 WL 1315305, at *2] (addressing pre-sentencing orders to protect restitution); <u>Catoggio</u>, 698 F.3d at 66 (same); <u>Wheat</u>, 486 U.S. at 159 (addressing Sixth Amendment implications).

---

[3] Defense counsel might say their fees have already accrued, and those past fees must be paid. But they have known for months that defendant could not pay them without this Court's permission. Continuing to work and bill defendant, without seeking permission first, was a risk they chose to take.

6

Defendant, though, has suggested that the government can only seize or freeze tainted assets. (Transfer Mot. at 1.) He is wrong. The defendant in Lillard made a similar argument, saying that "the Sixth Amendment bars the government from seizing untainted funds when doing so prevents the defendant from retaining their counsel of choice." Lillard, 57 F.4th at 734. As the Ninth Circuit said: "We disagree." Id. "The dispositive distinction" is "not whether the assets were tainted, but instead whether the government had a substantial property interest in the assets." Id.[4]

Defendant also claims "that the concept of 'tainted assets' is related to criminal forfeiture, a non-issue in this case because the government has never brought a forfeiture action." (Transfer Mot. at 2.) Again, he is wrong. The "concept of 'tainted assets'" certainly has implications for forfeiture cases. However, it is not limited to forfeiture. It also affects property interests more broadly. As the Supreme Court recently explained, untainted assets "belong[] to the defendant, pure and simple." Luis, 578 U.S. at 12. By contrast, tainted assets like "a robber's loot" do not. Id. A criminal "defendant's ownership interest" in tainted assets "is imperfect. The robber's loot belongs to the victim, not to the defendant." Id.[5]

---

[4] Lillard considered the (non-meritorious) Sixth Amendment implications of pre-trial enforcement of a restitution order from a separate criminal case. Here, the government is seeking post-trial restraint in advance of a restitution order. As in the Ninth Circuit's Johnson decision, the difference does not matter. A pre-sentencing restraint is permissible, given the mandatory nature of restitution and the government's resulting interest in the property. Johnson, 2022 U.S. App. LEXIS 11999, at *7 [2022 WL 1315305, at *2].

[5] Luis discussed the interplay between property rights and the "concept of 'tainted assets.'" However, it did not consider the circumstances here, with a post-trial restitution order imminent. It therefore does not address assets implicated by the Mandatory Victims
*(footnote cont'd on next page)*

In other words, regardless of any forfeiture allegations, a victim's money can never "belong" to a thief. Luis, 578 U.S. at 12. The thief therefore has no property right in spending it. When considering whether to let defendant spend "well more than $10,000" here (ECF 209, Maitia Decl. ¶ 4), the Court must consider whose money defendant plans on spending. If the money is tainted, it simply is not his, regardless of whether the government alleged forfeiture: stolen money "belongs to the victim, not to the defendant."

The distinction between tainted and untainted funds has a direct effect on defendant's property rights, so it must be considered before allowing him to spend "well more than $10,000." So, if the Court is inclined to allow defendant to transfer assets notwithstanding the imminent restitution order, the government at least requests a hearing into the source of defendant's wealth.[6]

---

Restitution Act, which were covered in Section III(A), above. See also Lillard, 57 F.4th at 734 ("dispositive distinction" in Luis was "not whether the assets were tainted, but whether the government had a substantial property interest in the assets").)

[6] On July 2, 2024, defense counsel in this criminal case signed a stipulation in connection with defendant's civil judgment enforcement proceedings -- she postponed his debtor's exam by representing that defendant would "assert his Fifth Amendment privilege and would refuse to answer any and all questions about his financial affairs and assets due to his pending criminal case (Case No. 21-cr-00127) . . . ." (See In Re Art And Architecture Books Of The 21st Century, C.D.Cal. Case No. 2:22-cv-01265-PA-SK, Dkt. No. 23 (attached to this brief as Appendix 1).)

The government therefore recognizes that, if the Court inquires into the source of his funds, defendant might refuse to answer any questions. Other pertinent records or witnesses, however, could be compelled and reviewed. See Doe v. United States, 487 U.S. 201, 206–07 (1988) ("the Constitution 'necessarily does not proscribe incriminating statements elicited from another'"); Fisher v. United States, 425 U.S. 391, 408 (1976) ("the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a testimonial communication that is incriminating").

8

**IV. CONCLUSION**

The Court should deny the Transfer Motion, and instead prohibit the requested transfer pursuant to both the bail order and the All Writs Act. In the alternative, it should at least inquire into the source of defendant's money.