E. MARTIN ESTRADA
United States Attorney
LINDSAY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
DAVID W. WILLIAMS (Cal. Bar No. 295204)
Assistant United States Attorneys
    Major Frauds/Appeals Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756/8485
    Facsimile: (213) 894-6265
    Email:    valerie.makarewicz@usdoj.gov
        david.williams3@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-cr-00127-MCS |
|---|---|
|     Plaintiff, | VICTIM IMPACT STATEMENTS |
|       v. | |
| DOUGLAS J. CHRISMAS | |
|     Defendant. | |

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

TO THE HONORABLE MARK C. SCARSI, UNITED STATES DISTRICT JUDGE:

Re:  United States v. Douglas J. Chrismas, No. 2:21-cr-00127 MCS (C.D. Cal.)

Dear Judge Scarsi:

The United States Attorney's Office has advised the undersigned United States Bankruptcy Judge on behalf of the United States Bankruptcy Court that the Bankruptcy Court is considered a victim in the above-captioned criminal case of Defendant Douglas J. Chrismas for purposes of the Crime Victims' Rights Act and may submit a victim impact statement in the case.

I am the presiding judge in the bankruptcy case of In re Art and Architecture Books of the 21st Century, No. 2:13-bk-14135-RK Chapter 11 (Bankr. C.D. Cal., bankruptcy petition filed on February 19, 2013), and in this capacity, I am submitting this victim impact statement on behalf of the Bankruptcy Court.

Art and Architecture Books of the 21st Century is a California corporation which operated an art gallery in Los Angeles, California, under the name of Ace Gallery.  Defendant Chrismas was the president of the corporation, and in this capacity, he caused the corporation to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C., which commenced the corporation's bankruptcy case.  The corporation was in financial distress and needed reorganization because as reflected on its initial bankruptcy schedules, as of the date the bankruptcy petition was filed, the corporation's debts valued at $22 million substantially exceeded its assets valued at $12 million (Bankruptcy Docket No. 74, No. 2:13-bk-14135-RK).  Because Art and Architecture Books of the 21st Century filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, the business reorganization chapter of the code, it remained in possession of its assets through the protection of the Bankruptcy Code as a debtor-in-possession under the management of Defendant Chrismas as its president.  Art and Architecture Books of the 21st Century as a debtor-in-possession, and its president, Defendant Chrismas, who controlled it, owed fiduciary duties to the corporation's creditors pursuant to 11 U.S.C. § 1107.  In re Perez, 30 F.3d 1209, 1214 and n. 5 (9th Cir. 1994) (citations omitted); In re Woodson, 839 F.2d 610, 614 and n. 5 (9th Cir. 1988).  As stated in In re Intermagnetics America, Inc., 926 F.2d 912, 917 (9th Cir. 1991) (citations omitted), "Officers of a debtor-in-possession are officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties."   As part of their fiduciary duties, bankruptcy debtors are required to file accurate, complete and truthful schedules and statements in their bankruptcy cases, and they are required to subscribe to, and file, their bankruptcy schedules and statements under penalty of perjury.  Federal Rule of Bankruptcy Procedure 1008; see also, Cusano v. Klein, 264 F.3d 936, 946 (9th Cir. 2001); In re Rolland, 317 B. R. 402, 413-414 (Bankr. C.D. Cal. 2004).  As noted in In re Searles, 317 B.R. 368, 378 (9th Cir. BAP 2004), "the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs."  Moreover, bankruptcy estate assets are considered held in trust by the

bankruptcy fiduciaries for the benefit of creditors and may not be used or distributed without court authorization.  In re Woodson, 839 F.2d at 614 and n. 5; see also, 11 U.S.C. §§ 363, 726 (Chapter 7 distributions) and 1129 (Chapter 11 plan distributions).

Defendant Chrismas violated his fiduciary duties as an officer of Art and Architecture Books of the 21st Century, the debtor-in-possession, to its creditors in committing the crimes of embezzlement of funds of the estate in the approximate amount of $264,000 as charged in the indictment in the criminal case.  These crimes of embezzlement of funds of approximately $264,000 as found in the criminal case were only "the tip of the iceberg," that is, only a part of a pervasive pattern and practice of wrongful diversion of funds of the bankruptcy estate by Defendant Chrismas during the pendency of the corporate bankruptcy case to his controlled entities outside the supervision of the Bankruptcy Court, resulting in losses of over $14 million to the bankruptcy estate.  In an adversary proceeding in the bankruptcy case brought by the plan agent of the confirmed reorganization plan of Art and Architecture Books of the 21st Century, as set forth in my report and recommendation to the United States District Court, Defendant Chrismas had converted over funds from sales of over 150 artworks owned by or consigned to the corporation during the administration of its bankruptcy case and use of diverted funds to his controlled entity, Ace Museum, to improperly repay its loan debts to the debtor with funds diverted from the debtor while he was in control of the debtor between 2013 and 2016, resulting in losses of over $14 million to the bankruptcy estate.  Leslie v. Ace Gallery New York Corp., et al., No. 2:13-bk-14135-RK Chapter 11, Adv. No. 2:15-ap-01679, 2022 WL 481880 (Bankr. C.D. Cal., report and recommendation filed and entered on February 16, 2022).  Defendant Chrismas had formed a shell entity with no assets or business of its own, Ace Gallery New York Corp., several days before he caused Art and Architecture Books of the 21st Century to file for bankruptcy, and much of the funds diverted from the bankruptcy estate was funneled to this shell entity for transfer to other entities controlled by Defendant Chrismas by his instructing the customers of Art and Architecture Books of the 21st Century to send the money for purchases of artwork owned by or consigned to Art and Architecture Books of the 21st Century to the bank account of the shell entity named Ace Gallery New York, very similar to the debtor's name of Ace Gallery, that he controlled rather than to the bankruptcy estate.  Because Art and Architecture Books of the 21st Century filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, it remained in possession of its assets under the protection of the Bankruptcy Code as a debtor-in-possession under the management of Defendant Chrismas as its president.  Thus, Defendant Chrismas hid his diversions of bankruptcy estate assets by keeping these sales and the proceeds off the books of the bankruptcy estate and the debtor's bankruptcy statements filed with the Bankruptcy Court to evade the scrutiny of the creditors and the Bankruptcy Court in the bankruptcy case as the diverted sales proceeds were not reported in the monthly operating reports that he signed under penalty of perjury for Art and Architecture Books of the 21st Century as debtor-in-possession under Defendant Chrismas's control was required to file under 11 U.S.C. §§ 1106(a)(1), 1107(a) and 704(a)(8); see also, www.justice.gov/ust (regarding United States Trustee monthly operating report requirements). Defendant Chrismas's diversion scheme is described in great detail by the plan agent in his brief and declaration describing Chrismas's "unclean hands" in Bankruptcy Docket No. 2485 and 2486, No. 2:13-bk-14135-RK, filed on June 12, 2019).

My report and recommendation determining Defendant Chrismas's conversion of bankruptcy estate assets resulting in losses of over $14 million to the bankruptcy estate was adopted by the Honorable Percy Anderson, United States District Judge, who approved the report and recommendation

and entered a final judgment.  In re Art and Architecture Books of the 21st Century, No. 2:22-cv-01265
PA, 2022 WL 1405660 (C.D. Cal. May 3, 2022).  No appeal of this judgment was taken.

Defendant Chrismas's $14 million conversion of assets of the bankruptcy estate of Art and
Architecture Books of the 21st Century defrauded its creditors, and his fraudulent actions in breach of his
fiduciary duties to the creditors undermined the integrity of the bankruptcy court system, which
depends on the full, complete and candid disclosure of a bankruptcy debtor's financial affairs.
Defendant Chrismas's creation of a shell entity to siphon off bankruptcy estate funds before putting the
corporation into bankruptcy was a premediated exploitation of the bankruptcy system to stymie the
corporate debtor's creditors by restricting their nonbankruptcy collection remedies through the
reorganization bankruptcy case while shielding his unfettered control and use of corporate bankruptcy
assets for his personal purposes by diverting the assets to his shell entity, Ace Gallery New York Corp.,
and another controlled entity, Ace Museum, outside of bankruptcy, and hiding his fraudulent diversions
and dissipation of bankruptcy estate assets from the creditors and the Bankruptcy Court by failing to
disclose such diversions by not reporting the sales of corporate assets on the debtor's required monthly
operating reports.  Defendant Chrismas's diversion scheme and his dishonest lack of candid disclosures
deluded the creditors and the court and lulled them into a false sense of security in the reorganization
bankruptcy case that the estate assets were under the supervision and protection of the bankruptcy
system while he was surreptitiously diverting and dissipating bankruptcy estate assets to the tune of $14
million.

Defendant Chrismas's diversion scheme also did intangible harm to the bankruptcy system
though his breaches of his fiduciary duties to the creditors of Art and Architecture Books of the 21st
Century by ignoring his obligations of complete and candid voluntary disclosure of its financial affairs as
an officer of a debtor-in-possession, forcing a costly investigation by the plan agent, the successor
fiduciary, on behalf of the creditors to uncover Defendant Chrismas's embezzlement and conversion of
bankruptcy estate assets.  As stated in Payne v. Wood, 775 F.2d 202, 206 (7th Cir. 1985) (citations
omitted), also cited and quoted in In re Woodson, 839 F.2d at 614, in upholding denial of discharge of
bankruptcy debtors in a Chapter 7 liquidation case, the court stated: "[t]he operation of the bankruptcy
system depends on honest reporting.  If debtors could omit assets at will, with the penalty that they had
to file an amended claim once caught, cheating would be altogether too attractive.  The omission of
assets may be a good reason to deny or revoke a discharge.  When it is hard to detect an effort to evade
the law, the penalty must exceed the profits of the evasion."

Defendant Chrismas's fraudulent acts and lack of honest reporting of the debtor's financial
affairs caused intangible harm to the bankruptcy system by thwarting its effective and cost-efficient
operation to protect the interests of creditors, resulting in costly investigation and litigation to uncover
his fraudulent acts and diminishing the recovery for creditors.  That is, while the parties and their
counsel and the Bankruptcy Court were busily engaged in extensive and expensive litigating and
negotiating activities in the bankruptcy case to work out disputes diligently and in good faith to
reorganize the business of the debtor, Art and Architecture Books of the 21st Century, and to develop a
confirmable plan of reorganization, unbeknownst to the parties and the Bankruptcy Court, at the same
time, Defendant Chrismas, despite his being an officer of the court as a bankruptcy fiduciary, was busily
subverting the bankruptcy reorganization efforts of the parties and the Bankruptcy Court in bad faith in
depleting the bankruptcy estate by diverting and substantially dissipating its assets for his personal
purposes, including his pet project, the Ace Museum, and making it difficult for the other parties and the

Bankruptcy Court to detect his fraud.   In this court's view, Defendant Chrismas's fraud arose out of his arrogance and disrespect for the legal system, and an appropriate sentence is needed to deter such arrogance and disrespect.

On behalf of the United States Bankruptcy Court, the undersigned respectfully submits that the great intangible harm caused by Defendant Chrismas's fraudulent acts to the integrity of the bankruptcy system as described herein be considered in determining the appropriate sentence for his crimes.

Sincerely,

/s/ ROBERT N. KWAN, United States Bankruptcy Judge

**SAM S. LESLIE, CPA**
**Plan Agent**
**1130 S. Flower Street, Suite 312**
**Los Angeles, CA 90015**

December 26, 2024

Honorable Mark Scarsi
United States District Court
First Street Courthouse
350 W. 1st Street Courtroom 7C
Los Angeles, CA 90012

      Re:  United States of America v. Douglas J. Chrismas;
           Case No. 2:21-CR-00127-MCS

Dear Judge Scarsi:

    I was appointed as the Plan Agent under the Amended Plan of Reorganization of Art and Architecture Books of the 21st Century, the debtor in bankruptcy Case no. 2:13-14135-RK ("Debtor"). For years the Debtor operated its art gallery business under the name ACE Gallery. Douglas Chrismas (hereafter "Chrismas"), the Defendant, was the sole shareholder of the Debtor and controlled the operations of it until he was replaced by me on April 18, 2016, after I confirmed the details of the theft for which he was indicted in this case.  I am providing this letter as a Victim Statement for your consideration.  I am writing both as an injured party and as representative of the bankruptcy estate and its creditors who were damaged by Chrismas' actions.

    By way of background, I have served as a Chapter 7 trustee in this District since December 2003. In the time frame I have also been a Court appointed examiner, Chapter 11 trustee and the accountant for many other trustees. In all that time, I have taken my responsibilities to acquit my duties seriously and am careful and diligent with respect for the constituent parties. As this Court well knows, many of the documents filed with the Bankruptcy Court are filed under penalty of perjury and we, as trustees, are required to report any instance when we learn a debtor or its principals has not been truthful in its dealings. I am clear at my 341(a) meetings of creditors  that such conduct is subject to prosecution.  In my capacity as Plan Agent, I reported my findings in this case to both the Office of the U.S. Trustee and later provided evidence to the FBI to assist in its investigation.

In all my time as a Trustee and working on other bankruptcy cases, I have never seen a case where a debtor's principal engaged in so many instances of failing in his responsibilities to the creditors and blatant misrepresentations to the Court.  You are undoubtedly going to be told how gifted a curator and recognition of artistic talent he is, which may be true, but his history shows that over the years, he built his financial career on taking advantage of his artists and creditors. You will also no doubt be told he is now an elderly man and does not "need" or "deserve" to be confined. In my view, those considerations should not sway you from holding him accountable for his conduct, including sentencing him to a term of confinement commensurate with the upper limit on the sentencing guideline for the crimes for which he was convicted.  Considering the wide range of misconduct, in my view, this is simply not an instance where the defendant's age should entitle him to the Court's mercy.

Indeed, he was lucky only to be indicted for the crimes identified.   His bankruptcy fraud was far larger and continued for far longer than the instances for which he was charged.

The damage caused by his pattern of conduct in the bankruptcy case is undeniable. The total amount of money he diverted, more than $14M, would have been sufficient to pay all creditors in the Chapter 11 case.  Instead, the remaining claims will never be paid. The creditors in the case include an elderly collector to whom he owes in excess of $11M, many artists who were not paid from sales of their work, and professionals who were owed fees in the bankruptcy case which accrued because of his lies which allowed the continuance of the bankruptcy case.

After years of proceedings in the Bankruptcy case, the Bankruptcy Court made factual findings and recommendations to the District Court that Chrismas should be found liable for diversions from the Debtor's bankruptcy estate for in excess of $14m. The District Court approved of that report and recommendation and entered judgment against him. The copy of the Bankruptcy Court's findings which is enclosed lays out the many instances of criminal conduct identified in the case. That judgment was based on evidence presented to the Bankruptcy Court supported by a detailed forensic accounting review. That analysis confirmed that the pattern of lies and thefts started from the earliest phase of the case.  Had Chrismas  filed accurate and truthful Monthly Operating Reports, as he was required to do, he would have been promptly replaced by a Chapter 11 trustee and none of this would have occurred. To avoid that, he deliberately misrepresented virtually every aspect of the Debtor's operations, from reporting fictitious accounts receivable, using estate funds to pay non-estate rents, selling works of art and failing to pay the artists, and failing to disclose his personal expenses being paid by the Debtor, even though he stated, under oath, he was foregoing any compensation from the Debtor.

Just days after the effective date of my appointment as Plan Agent, I learned that Chrismas had diverted $248,000 out of the Debtor's accounts to pay rent on a building he had rented through a different entity. That resulted in the termination of his employment relationship with ACE Gallery and that discovery spurred a deeper examination of the books and records of the Debtor. I learned that that diversion was not an isolated incident but a part of a pattern of false representations to the Bankruptcy Court and steps to hide that conduct from the Court and his own counsel. In addition to the diversions he was convicted for, he had operated in such a way to hide similar transactions and to make an investigation into his conduct more difficult. These actions included:

- The Debtor had a history of keeping a printed annual general ledger in binders. However, the binder covering the period from June 2013 through May 2014 could not be located by the forensic accountants. Additionally, most of the financial data for that period – including bank account transactions – had been deleted from the accounting software database. The accountants were forced to re-create cash transaction information by reviewing bank statements and such paper documentation as could be identified. This violated the duty to maintain books and records for the Debtor which could be made available to the Creditors.

- As just one example, during the accountants' re-creation of records, they identified Check 1822 made payable to ACE Museum (a non-profit corporation formed by Chrismas) in the amount of $150,000 which cleared the bank on March 18, 2014. This payment had been reported to the Court and the creditors in the Monthly Operating Report for March 2014 as "Refund Customer Deposit – Misc" and the purpose was listed as "error". The bank statement for the ACE Museum for March 2014 was not located in the records maintained and I had to subpoena a copy. This violated Chrismas' duty to accurately report receipts and disbursements in the Debtor's Monthly Operating Reports signed under penalty of perjury.

- In reviewing the invoices issued and recorded for the Debtor, the forensic accountants discovered that many of the "invoices" did not reflect sales of art. Rather, they were used to disguise transfers to and from Ace New York, an entity Chrismas formed to hide these transactions. For example, an Ace Gallery invoice would be created showing the sale of a piece of art to a client. The art listed might be either a piece of art that was sold fraudulently through an Ace New York invoice (in essence a duplicate invoice) or sometimes art that wasn't sold at all and was still in the gallery. Then, the purchaser would wire funds to ACE New York for the Debtor's inventory sale. Whenever Chrismas wired

some funds into ACE Gallery from ACE New York, that transfer would be recorded not as being from the entity, "Ace New York," but as though it was the receipt of a payment from the client. This practice disguised the reality of the financial position of the Debtor to the detriment of the creditors and was erroneously reflected in the monthly operating reports signed under penalty of perjury. These shenanigans obviously significantly slowed down any reconciliation of artist detail as it was difficult and complicated to determine whether an invoice showed an actual sale or was created to hide the existence of transfers to ACE New York.

- Payments were made by ACE New York (from funds diverted from the Debtor) to pay for rent on Chrismas' residence. It was confirmed that during the time of the Chapter 11 bankruptcy, $174,977.79 was paid to Chrismas' landlord for his personal residence. It is likely this amount was not reported as compensation to Chrismas or reported by him as such to the Internal Revenue Service as no 1099 was found reflecting this practice.

- The artist reconciliations revealed that there were a significant number of instances in which Chrismas sold art without informing the artists or paying them their commission. For example, on October 12, 2011, an acrylic column by Robert Irwin was sold for a seven-figure sum. Though no consignment agreement with Irwin was located, it was understood by Irwin that 50% of the sale was the Debtor's commission and 50% would be paid to him. Irwin was not informed of the sale by Chrismas nor was he paid anything.

- Although the books and records of ACE New York and the ACE Museum had been housed at the Debtor's premises, several bank statements for those entities in the period of the Chapter 11 case were not located on site. I had to subpoena these bank accounts from the bank and that caused a delay in the finalization of reconciliations.

I could continue this list for many more instances but suffice to say that the misrepresentations made by Chrismas caused a case that could have been concluded with a very good result to creditors being turned into one that lasted many years, to the detriment of the creditors.

This conduct caused real damage. In one conversation with an artist who, after I told him he had been defrauded and his work had been sold without any payment to him, literally cried, saying that was money he could have used to send his children to summer camp over the years. Cal State Fullerton was another victim. A work donated to it was given to ACE Gallery, i.e., Chrismas, on consignment. That work was sold to a collector, but Cal State was never paid. (After the sale, Chrismas induced Cal State to extend the consignment period impliedly representing he still had possession of the work.) The purchaser took the position she was a bona fide purchaser and

despite the theft would not return the work to Cal State. Cal State was deprived of at least $35,000 by this theft. Another collector sold artwork but the record keeping as to her purchases was so convoluted that she believed she had purchased many more pieces than I could verify from the business records. I ended up having to make a settlement with her that resulted in the Debtor recovering only a few of the disputed pieces.  Another artist was defrauded of no less than $40,969 of value from sale of her artwork. There were many more instances. All of this was a pattern of conduct that preceded the filing of the Debtor's case and continued through its pendency until I was appointed.

Notwithstanding the fact that I and my accounting firm incurred substantial fees that were unpaid, I do not provide this letter for any purpose other than give the Court background from my perspective. I continued to work on this case over the years to both acquit my own responsibilities in the case and to hopefully assist in holding Chrismas accountable for his actions.

Again, the damage to victims by Chrismas was wide and deep. Just because he used the proverbial "suitcase" to steal instead of a gun should in no way diminish the punishment meted out to him. In my hope that this Court will take all of this into consideration and impose an appropriate sentence.

Very truly yours,

Sam S. Leslie, CPA

Plan Agent

**2:22-CV-01265-PA**

FILED
CLERK, U.S. DISTRICT COURT

FEB 24 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ___RS___ DEPUTY

FILED & ENTERED

FEB 16 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY vandenst DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:13-bk-14135-RK |
| ART & ARCHITECTURE BOOKS OF THE 21st CENTURY, | Chapter 11 |
| Debtor. | Adv. No. 2:15-ap-01679-RK |

SAM LESLIE, PLAN AGENT FOR ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,

        Plaintiff,

        vs.

ACE GALLERY NEW YORK CORPORATION, a California corporation; ACE GALLERY NEW YORK, INC., a dissolved New York corporation; ACE MUSEUM, a California corporation; DOUGLAS CHRISMAS, an individual; 400 S. LA BREA, LLC, a California limited liability company, JENNIFER KELLEN, an individual, CATHAY BANK, a California corporation, DARYOUSH DAYAN, an individual, KAMRAN GHARIBIAN, an individual, and MICHAEL D. SMITH, an individual,

        Defendants.

400 S. La Brea, LLC, a California limited liability company,

        Cross-Complainant,

v.

**REPORT AND RECOMMENDATION OF THE UNITED STATES BANKRUPTCY COURT THAT THE UNITED STATES DISTRICT COURT ADOPT THE BANKRUPTCY COURT'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR CONVERSION AND BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT DOUGLAS CHRISMAS AND GRANT SUMMARY JUDGMENT ON THESE CLAIMS**

| | |
|---|---|
| Date: | July 8, 2021 |
| Time: | 2:00 p.m. |
| Courtroom: | U.S. Bankruptcy Court |
| | Courtroom 1675 |
| | 255 E. Temple St. |
| | Los Angeles, CA 90012 |

ACE GALLERY NEW YORK CORPORATION, a
California corporation; ACE GALLERY NEW YORK,
INC., a dissolved New York corporation; ACE MUSEUM,
a California corporation; DOUGLAS CHRISMAS, an
individual; SAM LESLIE as TRUSTEE OF THE PLAN
TRUST FOR ART & ARCHITECTURE BOOKS OF
THE 21st CENTURY,

        Cross-Defendants.

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

      The United States Bankruptcy Court hereby issues the following report and recommendation pursuant to Federal Rules of Bankruptcy Procedure 7056 and 9033 on the Motion of Plaintiff Sam S. Leslie, in his exclusive capacity as Plan Agent ("Plaintiff" or "Plan Agent") for Debtor Art & Architecture Books of the 21st Century, under the confirmed Second Amended Plan of Reorganization of the Official Committee of Unsecured Creditors (the "Plan") for Summary Judgment on Plaintiff's Claims for Conversion and Breach of Fiduciary Duty Against Defendant Douglas Chrismas, Electronic Case Filing No. ("ECF" or Docket No.) 870, filed on February 12, 2021, in the above-captioned adversary proceeding. Plaintiff's claims for conversion and breach of fiduciary duty against Defendant Douglas Chrismas are the eleventh and seventeenth claims for relief in the Sixth Amended Consolidated Complaint, ECF 699, filed on February 19, 2020.

      The United States Bankruptcy Court recommends that the United States District Court for the Central District of California adopt the following Statement of Uncontroverted Facts and Conclusions of Law on the Motion of Plaintiff for Summary Judgment on Plaintiff's Claims for Conversion and Breach of Fiduciary Duty Against Defendant Douglas Chrismas and issue an order granting summary judgment in favor of Plaintiff on his claims for conversion and breach of fiduciary duty against Defendant Douglas Chrismas.

      The United States Bankruptcy Court determines that it may not enter a final judgment on Plaintiff's claims for conversion and breach of fiduciary duty against Defendant Douglas Chrismas based on the following circumstances. Plaintiff's claims against Defendant Chrismas for conversion and breach of fiduciary duty are noncore claims based on nonbankruptcy law under state law or the

1    common law.

2        The United States Bankruptcy Court has subject matter jurisdiction over Plaintiff's claims

3   for conversion and breach of fiduciary duty against Defendant Douglas Chrismas under its

4   jurisdiction of 28 U.S.C. § 1334(b) over matters related to a bankruptcy case under the Bankruptcy

5   Code, 11 U.S.C., because such claims are based on alleged tortious acts against the Debtor and its

6   bankruptcy estate as the Plaintiff Plan Agent on behalf of the Debtor seeks to vindicate its rights

7   pursuant to the confirmed plan of reorganization. The Bankruptcy Court may enter final judgment

8   on noncore claims within its related to jurisdiction if such claims relate to the claims allowance

9   process or when the parties consent to the bankruptcy court jurisdiction. *Wellness International*

10   *Network, Ltd. v. Sharif,* 575 U.S. 665, 674-686 (2015). The plan agent has expressly consented to

11   bankruptcy court jurisdiction in this adversary proceeding by his statements of consent in status

12   reports filed in this adversary proceeding. Defendant Chrismas in his answers to Plaintiff's

13   complaints expressly stated that he does not consent to the jurisdiction of the bankruptcy court to

14   enter a final judgment.

15        The United States Bankruptcy Court finds that Defendant Chrismas has not impliedly

16   consented to bankruptcy court jurisdiction to enter a final judgment to determine Plaintiff's claims

17   against him. Absent consent of all of the parties to Plaintiff's claims for conversion and breach of

18   fiduciary duty against Defendant Chrismas, this court lacks jurisdiction to enter a final judgment on

19   these claims.

20        The United States Bankruptcy Court, however, does have jurisdiction to hear Plaintiff's

21   claims for conversion and breach of fiduciary duty against Defendant Chrismas, which are noncore

22   claims under its "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) and issue proposed

23   findings of fact and conclusions of law for *de novo* review by the United States District Court. 28

24   U.S.C. § 157 (c)(1); *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25, 39-40 (2014).

25   Accordingly, the United States Bankruptcy Court determines that it may issue proposed findings of

26   fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9033 in submitting

27   its ruling on the motion as a report and recommendation to the United States District Court for the

28   Central District of California for *de novo* review.

1    Having considered the papers and oral and written arguments of the parties on Plaintiff's

2    pursuant to Federal Rules of Bankruptcy Procedure 7056 and Local Bankruptcy Rule 7056-1,

3    including the Proposed Statement of Uncontroverted Facts and Conclusions of Law submitted by

4    Plaintiff, [1] which the bankruptcy court has independently reviewed and modified, the bankruptcy court

5    adopts the following Statement of Uncontroverted Facts and Conclusions of Law, subject to *de novo*

6    review of the United States District Court.

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | **GENERAL FACTS** | |
| 1. | From February 19, 2013, the date on which Debtor commenced this bankruptcy case by filing its petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"), through the Effective Date of the confirmed Plan of reorganization (the "Plan") in Debtor's bankruptcy case (the "Effective Date"), April 6, 2016, Chrismas managed the Debtor's business as a Debtor-in-Possession ("DIP") and was its principal and sole shareholder and its primary officer, responsible for its day-to-day management. | Sixth Amended Consolidated Complaint ("6AC"), ECF 699, filed on February 19, 2020, at ¶¶ 1, 23, 25, 26, 27. Defendant Chrismas's Answer to the Sixth Amended Complaint ("Ans."), ECF 703, filed on March 16, 2020, at ¶ 1, 17, 18, 19, 20. |

---

[1] Pursuant to the Court's April 27, 2021 tentative ruling for a hearing on the pending summary judgment motion against Douglas Chrismas scheduled for April 28, 2021, Plaintiff Sam S. Leslie, in his exclusive capacity as Plan Agent (the "Plan Agent" or "Plaintiff") for Art & Architecture Books of the 21st Century, under the confirmed Second Amended Plan of Reorganization of the Official Committee of Unsecured Creditors (the "Plan"), hereby submitted a Supplemental Statement of Uncontroverted Facts and Conclusions of Law ("SSUF") in support of his Motion for Summary Judgment Against Defendant Douglas Chrismas previously filed pursuant to Federal Rule of Bankruptcy Procedure 7056 and Local Bankruptcy Rule 7056-1 (ECF 1000, filed on June 9, 2021). Included as Exhibit A to Plaintiff's SSUF is Exhibit C to the Expert Report of Jennifer Ziegler, which is a chart representing, as stated on the exhibit, "Debtor's Art Sales Deposited into Ace Gallery New York Corporation & Inc., Ace Museum, and 400 S. La Brea, LLC," and the chart has been modified only to add line item references and is referred to herein as "Ziegler Referenced Exhibit C (Diverted Art Sales Chart)". The Expert Report of Jennifer Ziegler, dated October 30, 2020, is attached as Exhibit 1 to the Declaration of Jennifer E. Ziegler in Support of Plaintiff's Motion for Summary Judgment ("Ziegler Decl. II"), ECF 873, filed on February 12, 2021, and to the [Corrected] Supplemental Declaration of Jennifer E. Ziegler, CPA, in Support of Motion for Summary Judgment on Plaintiff's Claims for Conversion and Breach of Fiduciary Duty against Defendant Douglas Chrismas, ECF 1196, filed on December 20, 2021.

| 2. | At various times prior to the Effective Date, Chrismas was in control of Defendants Ace Gallery NY Corporation ("Ace NY"), Ace Gallery NY, Inc. ("Old Ace NY"), and Ace Museum, a non-profit California Corporation. | 6AC at ¶ 21. Ans. at ¶ 15. |
|---|---|---|
| 3. | On April 6, 2016, the effective date of the Plan Agent's appointment under the Plan (the "Effective Date"), Plan Agent took control and possession of the Debtor's premises and operations located at: (i) 5514 Wilshire Blvd, Los Angeles, CA 90036 (the "Mid-Wilshire Location"); and (ii) 9430 Wilshire Blvd., Beverly Hills, CA 90212 (the "BH Gallery"). | Declaration of Sam S. Leslie in Support of Plaintiff's Motion for Summary Judgment ("Leslie Decl. II"), ECF 872, filed on February 12, 2021, at ¶ 3. |
| | **FACTS RELATED TO PLAN AGENT'S INVESTIGATION** **OF DEBTOR AND ACE NYC** | |
| 4. | When Plan Agent took over Debtor, Plan Agent immediately took steps to capture the data on the computers on the premises of the Debtor, among other things, by "mirroring" all the hard drives of the computers on site and ensuring that all paper files were all preserved, maintained and safeguarded. | Leslie Decl. II at ¶ 4. |
| 5. | Based on the preservation of the data on and subsequent review of the Debtor's computer system and files and from my interviews with former employees who helped to prepare and maintain the Debtor's books and records, by taking control of the Debtor's computers and files, Plan Agent was also able to obtain the books and records of certain corporations owned and operated by Mr. Chrismas because they were all maintained on the same computers and server over which the Plan Agent had control. | Leslie Decl. II at ¶ 4. |
| 6. | These additional records included accounting information for Ace Museum, Ace Gallery New York Corporation, and the dissolved Ace Gallery New York Inc. (collectively, the "Non-Debtor Entities"), as well as certain "paper" files. | Leslie Decl. II at ¶ 4. |
| 7. | When Plan Agent took over the Debtor's business, he needed to gain an immediate and intricate understanding of the Debtor's ordinary course business operations so that he could continue to operate the business as required under the Court's order appointing the Plan | Leslie Decl. II at ¶ 5. |

| | | Agent. | |
|---|---|---|---|
| 8. | | On April 6, 2016, Mr. Chrismas admitted to Plan Agent that he had taken funds from the Debtor's bank account to pay rent for Ace Museum. | Leslie Decl. II at ¶ 5. |
| 9. | | Over the course of the initial weeks of Plan Agent's engagement, he became familiar with the Debtor's inventory of owned artworks, inventory of consigned artworks, past customers, artists under contract, employees and vendors. | Leslie Decl. II at ¶ 6. |
| 10. | | In addition, Plan Agent became familiar with the basic business operations of Debtor, such as the form contracts used with artists, the accounting program, the procedures for invoicing purchasers, and other such ordinary course practices. | Leslie Decl. II at ¶ 6. |
| 11. | | As a result of this analysis, Plan Agent developed an extensive understanding of the Debtor's pre and post-petition operations, including the details of the fraud that was carried out by Douglas Chrismas during his tenure running the Debtor's operations prior to and after the Effective Date. | Leslie Decl. II at ¶ 7. |
| 12. | | Plan Agent and his staff discovered that Douglas Chrismas had not accurately recorded proceeds from Art Property for sales in the Debtor's books and records and bank accounts, but instead had deposited proceeds from the sales to non-debtor accounts, i.e., the non-debtor entity Ace Gallery New York Corporation ("Ace NYC") and others even though the sale proceeds were property of the Debtor's estate. | Leslie Decl. II at ¶ 7. Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction, ECF 216 ("Kincaid Decl.") at 1-15 and exhibits attached thereto. |
| 13. | | Plan Agent's investigation revealed that Ace NYC was a shell entity that had no actual business or assets of its own. | Leslie Decl. II at ¶ 8. |
| 14. | | The investigation revealed that Ace NYC was a corporate name and a bank account that was used by Mr. Chrismas to funnel assets of Debtor's Bankruptcy Estate to third parties. | Leslie Decl. II at ¶ 8. Kincaid Decl. at 1-15 and exhibits attached thereto. |
| 15. | | The Plan Agent's investigation revealed that although all of the artist contracts and consignment agreements that Plan Agent located in the Debtor's and Non-Debtor Entities' books and records were contracts between the artist and the Debtor, many of the sales invoices recorded the sale as having been carried out by Ace NYC rather than by the Debtor. | Leslie Decl. II at ¶ 9. Kincaid Decl. at 1-15 and exhibits attached thereto. |

| 16. | The Plan Agent's investigation revealed that the post-petition sales that were alleged to have been carried out by Ace NYC were actually sales of the Debtor's property. | Leslie Decl. II at ¶ 9.<br><br>Kincaid Decl. at 1-15 and exhibits attached thereto. |
|---|---|---|
| 17. | Mr. Chrismas incorporated Ace Gallery New York Corporation ("Ace NYC") on February 14, 2013, five days before the Petition Date. | Leslie Decl. II at ¶ 12.<br><br>Kincaid Decl. at ¶ 7.<br><br>Declaration of Victor Sahn Submitted in Support of Motion for Summary Judgment ("Sahn Decl."), ECF 874, at Exhibit 6 attached thereto (January 28, 2016 Chrismas Deposition) at page 11, lines 2-13 ("Q. Does Ace New York have an artwork that it owns or has on consignment? A. Maybe one or two pieces. It's a – it's consulting."). |
| 18. | During the post-petition period, Plan Agent's investigation revealed that there were approximately 158 sales of artworks that were the property of Debtor, yet the funds from these sales were deposited into Non-Debtor Entities accounts.  Sales proceeds from 147 sales of artwork were deposited into the Ace NY Account.  Sales proceeds from 9 pieces of artwork were directly deposited into an Ace | Leslie Decl. II at ¶ 20 and Exhibit D attached thereto, Chart entitled "Debtor's Art Sales Deposited into Ace Gallery New York Corporation & Inc., Ace Museum, and 400 S. La Brea, LLC,"("Diverted Art Sales Chart").[2] |

[2] Regarding this exhibit, Exhibit D to Leslie Decl. II, Plan Agent stated in his SSUF, ECF 1000, filed on June 9, 2021, that consistent with Federal Rule of Evidence 1006, the entirety of the underlying banking records original Ziegler Report Exhibit C summary are too voluminous to resubmit and were therefore presented in factual summary form.  "Leslie Decl. II at ¶ 20 and Exhibit D thereto" is the original spreadsheet prepared by Jennifer Ziegler (*i.e.*, Ziegler Referenced Exhibit C (Diverted Art Sales Chart)) summarizing evidence related to Debtor's post-petition sales and depositing of proceeds into non-Debtor entity Accounts, and incorporates and synthesizes the sales, deposits and total amounts as reflected in the banking records and statements and invoices in the record.  The bank records and statements themselves were previously submitted as Exhibits A, B and U to the Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction, ECF 216 ("Kincaid Decl.") at 3.  A set of Ace NYC banking records are also currently submitted as Exhibits A, A1, B, B1 and C to the Leslie Decl. II.  At this court's request, Plan Agent submitted a Compendium of Exhibits, ECF 1001, filed on June 9, 2021, which organized this evidence consisting of artist contracts, sales invoices and bank records and statements showing the Debtor's artwork sales and deposits of the sales proceeds into non-Debtor entity bank accounts by

*(continued)*

| | | Museum account. Sale proceeds from the sale of 2 pieces of artwork were directly deposited into a 400 S. La Brea account. | Kincaid Decl. at 1-15 and exhibits attached thereto. |
|---|---|---|---|
| 19. | | The investigation revealed that the 158 pieces of artwork sold during this post-petition period belonged to Debtor. | Leslie Decl. II at ¶¶ 20 and 21, and Exhibit D thereto (Diverted Art Sales Chart).<br><br>Kincaid Decl. at 1-15 and exhibits attached thereto. |
| 20. | | During the post-petition period, Non-Debtor Entities, Ace Museum and Ace Gallery New York Corporation, received proceeds from the sales of Debtors artworks by Mary Corse, Gary Lang, Helen Pashgian, Natalie Arnoldi, Justin Bower, Laurie Lipton, De Wain Valentine, Alexander Yulish, Peter Alexander, Alex Berg, Matt Hope, the Date Farmers, Ruth Pastine, Ben Jones, Phil Frost, Bernar Venet, Gisela Colon, Ellsworth Kelly, Johnathan Monk, Tara Donovan, Brian Willis, Robert Morris, Sylvie Fleury, Carl Andre and Robert Rauchenberg, many of whom were artists with which the Debtor had agreements to sell their artwork and others representing artwork owned by the Debtor outright. | Leslie Decl. II at ¶¶ 20 and 21, and Exhibit D thereto (Diverted Art Sales Chart).<br><br>Kincaid Decl. at 1-15 and exhibits attached thereto. |
| 21. | | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). |
| 22. | | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 23. | | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching |

transaction, and his supplemental declaration authenticating the evidence in the Compendium of Exhibits, ECF 1117, filed on October 4, 2021.

| | | | copy of Helen Pashgian Contract). |
|---|---|---|---|
| 24. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 25. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 26. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 27. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). |
| 28. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| | | | |

| 29. | Peter Alexander and the Debtor are parties to a Consignment Agreement dated August 24, 2015, by which the Debtor had the exclusive right thereafter to sell certain consigned artworks by Peter Alexander (the "Alexander Contract"). | Peter Alexander Contract at Leslie Decl. II at ¶ 36 (discussing factual foundation regarding Peter Alexander contract) and Exhibit Q thereto (attaching copy of Peter Alexander Contract). |
|---|---|---|
| 30. | Alex Berg and the Debtor are parties to a contract dated August 21, 2013, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alex Berg (the "Berg Contract"). | Alex Berg Contract at Leslie Decl. II at ¶ 37 (discussing factual foundation regarding Alex Berg contract) and Exhibit R thereto (attaching copy of Alex Berg Contract). |
| 31. | Matt Hope and the Debtor are parties to a contract dated September 22, 2006, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Matt Hope (the "Hope Contract"). | Matt Hope Contract at Leslie Decl. II at ¶ 38 (discussing factual foundation regarding Matt Hope contract) and Exhibit S thereto (attaching copy of Matt Hope Contract). |
| 32. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 33. | Ruth Pastine and the Debtor are parties to two Consignment Agreements dated February 25, 2015, and October 1, 2015 (the "Pastine Contract"). | Ruth Pastine Contract at Leslie Decl. II at ¶ 40 (discussing factual foundation regarding Ruth Pastine contract) and Exhibit U thereto (attaching copy of Ruth Pastine Contract). |
|  |  |  |

| 34. | The Debtor sold artworks by Ben Jones in sales dating from March 28, 2013. | Ben Jones sales documents at Leslie Decl. II at ¶ 41 (discussing factual foundation Ben Jones sale) and Exhibit V thereto (attaching copy of sales documents). |
|---|---|---|
| 35. | The Debtor sold artworks by Phil Frost in sales dating from June 25, 2013. | Phil Frost sales documents at Leslie Decl. II at ¶ 42 (discussing factual foundation Phil Frost sale) and Exhibit W thereto (attaching copy of sales documents). |
| 36. | In July 2013, the Debtor hosted a show of sculptures by Bernar Venet at its Wilshire Blvd. and Beverly Hills location. | Bernar Venet sales documents at Leslie Decl. II at ¶ 43 (discussing factual foundation Bernar Venet sale) and Exhibit X thereto (attaching copy of sales documents). |
| 37. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 38. | The Ellsworth Kelly artwork was owned by a private collector, and was sold as a secondary art sale using the Debtor's facilities for displaying the artwork and the Debtor's staff and costs for shipping the piece. In addition, internal emails from Debtor discussing the provenance and describing the artwork on Ace Gallery Los Angeles Letterhead were found in Debtors' records. | Ellsworth Kelly sales documents at Leslie Decl. II at ¶ 45 (discussing factual foundation Ellsworth Kelly sale) and Exhibit Z thereto (attaching copy of sales documents). |
| 39. | The Debtor sold artworks from Jonathan Monk on March 30, 2016 which is reflected on Ace | Ace Gallery Invoice K1012 at Leslie Decl. II at ¶ 46 and |

| | | Gallery invoice No. K-1012, a true and correct copy of which is attached hereto as Exhibit AA. The invoice demonstrates that Debtor sold the artwork and was entitled to the proceeds funds from the sale. | Exhibit AA thereto. |
|---|---|---|---|
| | 40. | The Debtor sold artworks from Tara Donovan on March 30, 2016 which is reflected on Ace Gallery invoice No. K-1012, a true and correct copy of which is attached hereto as Exhibit BB. The Debtor also sold artworks from Tara Donovan on March 26, 2013 which is reflected on Ace Gallery invoice No. 1592, a true and correct copy of which is attached hereto as Exhibit BB. The invoices demonstrate that Debtor sold the artwork and was entitled to the proceeds funds from the sales. | Ace Gallery Invoice K1012 at Leslie Decl. II at ¶ 47 and Exhibit BB thereto. |
| | 41. | The Debtor sold artwork by John Millei on June 5, 2013 (entitled "Maritime #18") as evidenced by Ace Gallery Invoice No. 2005. On May 30, 2013, the Estate of Pentti J.K. Kouri filed a "Notice of Motion and Motion for Relief from the Automatic Stay under 11 U.S.C. Section 362" seeking return of various artwork from Debtor that was subject to a consignment agreement between the Kouri estate and Debtor including the John Millei artwork referred to here. | Ace Gallery Invoice 2005 at Leslie Decl. II at ¶ 48 and Exhibit CC thereto. |
| | 42. | The Debtor sold artworks from Brian Willis on March 5, 2013, which is reflected on Ace Gallery invoice No. 2003. The invoice demonstrates that Debtor sold the artwork and was entitled to the proceeds funds from the sale. These works were consigned from another gallery pursuant to a consignment agreement. | Ace Gallery Invoice 2003 at Leslie Decl. II at ¶ 49 and Exhibit DD thereto. |
| | 43. | The Debtor sold artworks from Robert Morris on March 20, 2013, which is reflected on Ace Gallery invoice No. 2005. | Ace Gallery Invoice 2005 at Leslie Decl. II at ¶ 50 and Exhibit EE thereto. |
| | 44. | The Debtor sold artworks from Sylvie Fleury on March 16, 2016, which is reflected on Ace Gallery Los Angeles Invoice No. K-1013. | Ace Gallery Invoice K1013 at Leslie Decl. II at ¶ 51 and Exhibit FF thereto. |
| | 45. | The Debtor sold artwork from Robert Rauschenberg on June 22, 2015 that is reflected on Ace Gallery Los Angeles Invoice No. 1819. | Ace Gallery Invoice 1819 at Leslie Decl. II at ¶ 52 and Exhibit GG thereto. |
| | 46. | The Debtor sold artworks from Carl Andre on May 17, 2013 (including fees from the sale on May 22, 2013), which is reflected on Ace Gallery Los Angeles Invoice Nos. 2012 and 2014. | Ace Gallery Invoice 2012 and 2014 at Leslie Decl. II at ¶ 53 and Exhibit HH thereto. |

| | | |
|---|---|---|
| | **FACTS RELATED TO DOUGLAS CHRISMAS'S POST-PETITION CONVERSION OF DEBTOR'S PROPERTY THROUGH ACE NEW YORK** | |
| | **MR. CHRISMAS ASSERTED THE FIFTH AMENDMENT PRIVILEGE REGARDING QUESTIONS POSED ABOUT HIS CONVERSION OF FUNDS THROUGH ACE NEW YORK[3]** | |
| 47. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that ACE NY carried out sales on behalf of artists with whom Debtor had consignment contracts that were in force at the time of such sales." | Declaration of Victor Sahn Submitted in Support of Motion for Summary Judgment ("Sahn Decl."), ECF 874, ¶¶ 1-11; Exhibits 1 (Request for Admission to Douglas Chrismas, Set 1, RFA No. 1. |
| 48. | Mr. Chrismas asserted the Fifth Amendment in response to Interrogatories requesting that he identify all assets that belonged to ACE NYC when it was incorporated on the eve of the Debtor's Chapter 11 bankruptcy case in 2013. | Sahn Decl., Exhibit 2 (Interrogatories to Douglas Chrismas, Set 1, Nos. 63, 64 and 65). |
| 49. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that ACE NYC obtained funds of Debtor during the post-petition period." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 17 and Douglas Chrismas Response to the same). |
| 50. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that you used ACE NYC to process sales of artwork that were owned by or subject to the consignment agreements of Debtor." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 18 and Douglas Chrismas Response to the same). |
| 51. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that ACE NYC never had an inventory of artworks to which it had legal title." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, |

[3] This section outlines a number of key questions related to Mr. Chrismas's conversion of Debtor's funds related to Debtor's artwork assets sold during the post-petition time period. The facts in this section are relevant to each transaction listed below. Plan Agent requested that these facts be incorporated into each set of facts related to the Invoices outlined below to the extent an adverse inference determination is made by the Court. Where appropriate, Plan Agent had cited in the SSUF Chrismas's specific invocations of the Fifth Amendment regarding specific artists, invoices or artworks as they relate to the specific transactions.

| | | |
|---|---|---|
| | | No. 25 and Douglas Chrismas Response to the same). |
| 52. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that ACE NYC never entered into a fully executed consignment agreement with any artists prior to April 6. 2016." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 26 and Douglas Chrismas Response to the same). |
| 53. | Mr. Chrismas asserted the Fifth Amendment in response to the following Request for Admission "Admit that you never disclosed to the Bankruptcy Court during the pendency of the Chapter 11 proceedings that sales proceeds received by ACE NYC arising from the sales of artworks belonging to Debtor or subject to Debtor's consignment agreements were not being transferred to Debtor." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 27 and Douglas Chrismas Response to the same). |
| 54. | Mr. Chrismas asserted the Fifth Amendment in response to the following Request for Admission "Admit that between February 19, 2013 and April 16, 2016 you diverted Debtor Funds to ACE NYC." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 54 and Douglas Chrismas Response to the same). |
| | **FEBRUARY 2013 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1541** | |
| 55. | On February 18, 2103, Debtor charged its client for packing and shipping costs for the sale of two Laurie Lipton paintings in the amount of $600.00 as reflected on Ace Gallery Los Angeles Invoice No. 1541. | Invoice No. 1541, Exhibit 1 of Compendium of Evidence, ECF 1001, filed on June 9, 2021, p. 2; Supplemental Declaration of Sam Leslie in Support of Plaintiff's Motion for Summary Adjudication, ECF 1117, filed on October 4, 2021 (setting forth evidentiary foundation for Compendium of Evidence). |

-14-

| | | |
|---|---|---|
| | | 4 |
| 56. | The total amount of the sale on Invoice No. 1541 was $600.00. | *Id.* |
| 57. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 58. | On February 26, 2013, $600.00 was deposited into Ace New York checking account no. ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 1 of Compendium of Evidence, pp. 3-4. |
| | **ACE GALLERY INVOICE NO. 2000A** | |
| 59. | On February 18, 2013, Debtor sold two pieces of artwork by the Date Farmers -- Duk Fug, 2012 and Jerk Off 2012 as reflected on Ace Gallery Invoice No. 2000A. | Invoice No. 2000A, Ex. 2 of Compendium of Evidence, p. 6. |
| 60. | The total amount of the sale on Invoice No. 2000A was $38,368.00. | *Id.* |
| 61. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 62. | On February 19, 2013, $38,368.00 was deposited into Ace New York account ending in #9951 at Wells Fargo. | Ace NY Bank Records, Exhibit 2 of Compendium of Evidence, pp. 7-8. |
| 63. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2000A. | Chrismas Deposition, at [page:line(s)] 153:7-165:21; and Exhibits 84-91 attached |

---

[4] The references to Plaintiff's Compendium of Evidence are supported by the Supplemental Declaration of Sam Leslie in Support of Plaintiff's Motion for Summary Adjudication, ECF 1117, filed on October 4, 2021, which provides the evidentiary foundation for the exhibits attached to the Compendium.

| | | thereto. |
|---|---|---|
| | **ACE GALLERY NEW YORK INVOICE NO. 2000** | |
| 64. | On February 20, 2013, Debtor sold nine pieces of artwork by The Date Farmers – Ateen, 2010, Southern Comfort (Hello Kitty), 2010; Armagetnoutofhre, 2011; medU.S.A., 2011; Child Soldier, 2011, Regal Beer, 2010; Butterscotch, 2010. Chang044, 2010, and Plastico, 2011 as reflected on Ace Gallery New York Invoice No. 2000. | Invoice No. 2000, Exhibit 3 of Compendium of Evidence, p. 23. |
| 65. | The total amount of the sale on Invoice No. 2000 was $84,210.00 for all nine art pieces. | *Id.* |
| 66. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 67. | On March 1, 2013, $84,177.00 was deposited into Ace New York account no. ending in #9951 at Wells Fargo. | Ace NY Bank Records, Exhibit 3 of Compendium of Evidence, pp. 24-25. |
| 68. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2000. | Chrismas Deposition, 181:17-185:1; 185:2-190:23; and Exhibits 59, 98-99 attached thereto. |
| | **ACE GALLERY INVOICE NO. 2001A** | |
| 69. | On February 26, 2013, Debtor sold two pieces of artwork by Laurie Lipton – Reality TV, 2009 and Icon, 2003 as reflected on Ace Gallery Invoice No. 2001A. | Invoice No. 2001A, Exhibit 4 of Compendium of Evidence, p. 31. |
| 70. | The total amount of the sale on Invoice No. 2001A was $32,000.00. | *Id.* |
| 71. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual |

| | | Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
|---|---|---|---|
| 72. | | On March 8, 2013, $32,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 4 of Compendium of Evidence, pp. 32-33. |
| | | **ACE GALLERY INVOICE NO. 1557A** | |
| 73. | | On February 28, 2013, Debtor sold one piece of artwork by Mary Corse – Untitled (Grey Grid with Red), 1988 as reflected on Ace Gallery Invoice No. 1557A. | Invoice No. 1557A, Exhibit 5 of Compendium of Evidence, p. 35. |
| 74. | | The total amount of the sale on Invoice No. 1557A was $200,000.00. | *Id.* |
| 75. | | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 76. | | On March 8, 2013, 199,980.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 5 of Compendium of Evidence, pp. 36-37. |
| 77. | | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 1557A. | Chrismas Deposition, 171:4-175:10; 178:14-18; and Exhibit 95 attached thereto. |
| | | | |

### MARCH 2013 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY INVOICE NO. 2001

| | | |
|---|---|---|
| 78. | On March 1, 2013, Debtor SOLD five pieces of artwork by The Date Farmers – 44 Skull, 2010, Vampirito, 2010, Pro Sports, 2010, Albert Medina, 2010, and Amor, 2009 – as reflected on Ace Gallery Invoice No. 2001. | Invoice No. 2001, Exhibit 6 of Compendium of Evidence, pp. 40-41. |
| 79. | The total amount of the sale on Invoice No. 2001 was $27,860.00. | *Id.* |
| 80. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 81. | On March 20, 2013, $27,835.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 6 of Compendium of Evidence, pp. 42-43. |

### ACE GALLERY INVOICE NO. 2002

| | | |
|---|---|---|
| 82. | On March 1, 2013, Debtor sold two pieces of artwork by The Date Farmers – O Lord My Mistakes, 2010 and Old School, 2011 – as reflected on Ace Gallery Invoice No. 2002 | Invoice No. 2002, Exhibit 7 of Compendium of Evidence, p. 46. |
| 83. | The total amount of the sale on Invoice No. 2002 was $11,900.00 | *Id.* |
| 84. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers |

| | | | Contract). |
|---|---|---|---|
| 85. | On March 15, 2013, $11,900.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 7 of Compendium of Evidence, pp. 47-48. |

<table>
<tr><td colspan="4" align="center"><b><u>ACE GALLERY INVOICE NO. 2003</u></b></td></tr>
<tr><td>86.</td><td colspan="2">On March 5, 2013, Debtor sold one piece of artwork by Brian Wills – Untitled (Spectrum), 2013 – as reflected on Ace Gallery Invoice No. 2003.</td><td>Invoice No. 2003, Exhibit 8 of Compendium of Evidence, p. 51.</td></tr>
<tr><td>87.</td><td colspan="2">The total amount of the sale on Invoice No. 2003 was $14,824.00.</td><td><i>Id.</i></td></tr>
<tr><td>88.</td><td colspan="2">On March 7, 2013, $25,288.00 was deposited into Ace New York checking account ending in #0229 at City National Bank (for both invoice 2003 and invoice 1557B).</td><td>Ace NY Bank Records, Ex. 8 of Compendium of Evidence, pp. 53-54.</td></tr>
<tr><td colspan="4" align="center"><b><u>ACE GALLERY INVOICE NO. 1557B</u></b></td></tr>
<tr><td>89.</td><td colspan="2">On March 5, 2013, Debtor sold one piece of artwork by The Date Farmers – Watermelon Spider, 2011 – as reflected on Ace Gallery Invoice No. 1557B.</td><td>Invoice No. 1557B, Ex. 9 of Compendium of Evidence, p. 58.</td></tr>
<tr><td>90.</td><td colspan="2">The total amount of the sale on Invoice No. 1557B was $10,464.00.</td><td><i>Id.</i></td></tr>
<tr><td>91.</td><td colspan="2">Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "<u>Date Farmers Contract</u>").</td><td>Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract).</td></tr>
<tr><td>92.</td><td colspan="2">On March 7, 2013, $25,288.00 was deposited into Ace New York checking account ending in #0229 at City National Bank (for both invoice 2003 and invoice 1557B).</td><td>Ace NY Bank Records, Ex. 9 of Compendium of Evidence, pp. 59-60.</td></tr>
</table>

| ACE GALLERY INVOICE NO. 2005A | | |
|---|---|---|
| 93. | On March 5, 2013, Debtor sold one piece of artwork by Gary Lang – Ayre, 2015 – as reflected on Ace Gallery Invoice No. 2005A. | Invoice No. 2005A, Exhibit 10 of Compendium of Evidence, p. 63. |
| 94. | The total amount of the sale on Invoice No. 2005A was $45,000.00. | *Id.* |
| 95. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 96. | On March 18, 2013, $45,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 10 of Compendium of Evidence, pp. 64-67. |
| 97. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2005A. | Chrismas Deposition, 191:23-194:12; and Exhibit 101 attached thereto. |
| ACE GALLERY INVOICE NO. 2006 | | |
| 98. | On March 18, 2013, Debtor sold four pieces of artwork by Mary Corse – Untitled (White 4 Inner Band Beveled) 2012, Untitled (White 1 Inner Band Beveled) 2012 SH29/LN7, Untitled (White 1 Inner Band Beveled) 2012 SH30/LN1, and Untiled (White 1 Inner Band W/Outer Band, Beveled) 2012 – as reflected on Invoice No. 2006. | Invoice No. 2006, Exhibit 11 of Compendium of Evidence, pp. 69-70. |
| 99. | The total amount of the sale on Invoice No. 2006 was $430,000.00 less special discount of $215,000.00 for a total of $215,000.00. | *Id.* |
| 100. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). |

| | | |
|---|---|---|
| | | *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 101. | On March 1, 2013, $150,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 11 of Compendium of Evidence, pp. 71-72. |
| 102. | On March 27, 2013, $65,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 11 of Compendium of Evidence, pp. 71-72. |
| 103. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2006. | Chrismas Deposition, 165:22-172:3; and Exhibits 92-94 attached thereto. |
| | **ACE GALLERY INVOICE NO. 2005** | |
| 104. | On March 20, 2013, Debtor sold one piece of artwork by Robert Morris – Working Drawing for Vertical Column, Horizontal Column, Hanging Slab, 1973 – as reflected on Invoice No. 2005. | Invoice No. 2005, Exhibit 12 of Compendium of Evidence, p. 75. |
| 105. | The total amount of the sale on Invoice No. 2005 was $18,000.00. | *Id.* |
| 106. | On March 21, 2013, $18,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 12 of Compendium of Evidence, pp. 76-77. |
| | **ACE GALLERY INVOICE NO. 2007** | |
| 107. | On March 28, 2013, Debtor sold one piece of artwork by Ben Jones – Roadtrip Video Painting, 2013 – as reflected on Invoice No. 2005. | Invoice No. 2007, Exhibit 13 of Compendium of Evidence, p. 80. |
| 108. | The total amount of the sale on Invoice No. 2007 was $26,160.00. | *Id.* |
| 109. | On March 28, 2013, $26,160.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 13 of Compendium |

| 1 | | | of Evidence, pp. 81-82. |
|---|---|---|---|
| 2 | | **APRIL 2013 POST-PETITION SALES AND DEPOSITS** | |
| 3 | | | |
| 4 | | | |
| 5 | | **ACE GALLERY INVOICE NO. 2009** | |
| 6 | | | |
| 7 | 110. | On April 15, 2013, Debtor sold one piece of artwork by Gary Lang – Metal Painting #2, 2011 – as reflected on Invoice No. 2009. | Invoice No. 2009, Exhibit 14 of Compendium of Evidence, p. 85. |
| 8 | | | |
| 9 | 111. | The total amount of the sale on Invoice No. 2009 was $49,050.00. | *Id.* |
| 10 | 112. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | 113. | On April 22, 2013, $49,387.50 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 14 of Compendium of Evidence, p. 86. |
| 16 | | | |
| 17 | | **ACE GALLERY INVOICE NO. 2010** | |
| 18 | | | |
| 19 | 114. | On April 16, 2013, Debtor received 50% of the cost of an advertisement related to gallery artists Benar Venet on the back cover of the May/June issue of Flash Art Magazine as reflected on Invoice No 2010. | Invoice No. 2010, Ex. 15 of Compendium of Evidence, p. 90. |
| 20 | | | |
| 21 | | | |
| 22 | 115. | The total amount of the sale on Invoice No. 2010 was $3,600.00. | *Id.* |
| 23 | | | |
| 24 | 116. | On April 22, 2013, $3,600.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 15 of Compendium of Evidence, p. 91. |
| 25 | | | |
| 26 | | **ACE GALLERY INVOICE NO. 2011** | |
| 27 | | | |
| 28 | 117. | On April 26, 2013, Debtor sold one piece of | Invoice No. 2011, Exhibit |

| | | artwork by Justin Bower – Spaceboy V, 2013 – as reflected on Invoice No. 2011. | 16 of Compendium of Evidence, p. 95. |
|---|---|---|---|
| 118. | | The total amount of the sale on Invoice No. 2011 was 18,750.00, less a discount per the agreement for a total of $9,375.00. | *Id.* |
| 119. | | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 120. | | On May 6, 2013, $9,355.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 16 of Compendium of Evidence, pp. 96-97. |

## MAY 2013 POST-PETITION SALES AND DEPOSITS

## ACE GALLERY INVOICE NO. 2012

| | | | |
|---|---|---|---|
| 121. | | On May 17, 2013, Debtor sold one piece of artwork by Carl Andre – 100 Ace Zinc Square, 2007 – as reflected on Invoice No. 2012. | Invoice No. 2012, Exhibit 17 of Compendium of Evidence, p. 102. |
| 122. | | The total amount of the sale on Invoice No. 2012 was $533,500.00. | *Id.* |
| 123. | | On May 20, 2013, $533,500.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 17 of Compendium of Evidence, pp. 103-204. |
| 124. | | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2012. | Chrismas Deposition, 203:22-206:11; 211:6-213:7; and Exhibits 108-109; 113 attached thereto. |

## ACE GALLERY INVOICE NO. 2013

| | | | |
|---|---|---|---|
| 125. | | On May 17, 2013, Debtor sold one piece of artwork by Mary Corse – Untitled (White Inner Band), 2012 – as reflected on Invoice No. 2013. | Invoice No. 2013, Exhibit 18 of Compendium of Evidence, p. 109. |

| 126. | The total amount of the sale on Invoice No. 2013 was $125,225.00. | *Id.* |
|---|---|---|
| 126.5. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 127. | On May 21, 2013, $125,225.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 18 of Compendium of Evidence, p. 110. |

### ACE GALLERY INVOICE NO. 2014

| 128. | On May 22, 2013, Debtor sold one piece of artwork by Carl Andre – 100 Ace Zinc Square, 2007 – as reflected on Invoice No 2012. The freight for that sale was charged to the client who purchased the artwork as reflected on Invoice No. 2014 | Invoice No. 2014, Exhibit 19 of Compendium of Evidence, p. 115. |
|---|---|---|
| 129. | The total amount of the sale on Invoice No. 2014 was $3,535.00. | *Id.* |
| 130. | On May 22, 2013, $3,535.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 19 of Compendium of Evidence, p. 116. |

### ACE GALLERY INVOICE NO. 2015A

| 131. | On May 24, 2013, Debtor sold one piece of artwork by John Millei – Maritime #18 (Black Pearl), 2004 – as reflected on Invoice No. 2015A. | Invoice No. 2015A, Exhibit 20 of Compendium of Evidence, p. 121. |
|---|---|---|

| 132. | The total amount of the sale on Invoice No. 2015A was $140,000.00. | *Id.* |
| 133. | On June 5, 2013, $140,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 20 of Compendium of Evidence, p. 122. |
| 134. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2015A. | Chrismas Deposition, 221:2-226:6, and Exhibits 118-120 attached thereto. |

### ACE GALLERY INVOICE NO. 2015

| 135. | On May 28, Debtor sold one piece of artwork by The Date Farmers – Untitled, (American Flag Theme), 2013 – as reflected on Invoice No. 2015. | Invoice No. 2015, Exhibit 21 of Compendium of Evidence, p. 126. |
| 136. | The total amount of the sale on Invoice No. 2015 was $18,000.00. | *Id.* |
| 137. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 138. | On June 18, 2013, $8,980.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 21 of Compendium of Evidence, pp. 127-128. |
| 139. | On September 4, 2013, another $8,980.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 21 of Compendium of Evidence, pp. 127, 131. |

### ACE GALLERY INVOICE NO. 2016

| 140. | On May 31, 2013, Debtor sold one piece of artwork by Laurie Lipton – Wanda Always Wanted to Be A Sex Object, 1991 – as reflected on Invoice No. 2016. | Invoice No. 2016, Exhibit 22 of Compendium of Evidence, p. 135. |
| 141. | The total amount of the sale on Ace Gallery Invoice No. 2016 was $15,260.00. | *Id.* |

| 142. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
|---|---|---|
| 143. | On June 3, 2013, $15,260.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 22 of Compendium of Evidence, p. 136. |

**ACE GALLERY INVOICE NO. 2017**

| 144. | On June 5, 2013, Debtor sold one piece of artwork by Justin Bower – Untitled, 2013 – as reflected on Invoice No. 2017. | Invoice No. 2017, Exhibit 23 of Compendium of Evidence, p. 140. |
|---|---|---|
| 145. | The total amount of the sale on Invoice No. 2017 was $20,000.00. | Id. |
| 146. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 147. | On June 6, 2013, $20,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 23 of Compendium of Evidence, pp. 141-142. |

**ACE GALLERY NEW YORK INVOICE NO. 2019**

| 148. | On June 25, 2013, Debtor sold one piece of artwork by The Date Farmers – Meteor Shower, 2013 – as reflected on Invoice No. 2019. | Invoice No. 2019, Exhibit 24 of Compendium of Evidence, p. 146. |
|---|---|---|
| 149. | The total amount of the sale on Invoice No. 2019 was $20,000.00. | Id. |
| 150. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date |

| | | right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "<u>Date Farmers Contract</u>"). | Farmers Contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
|---|---|---|---|
| 151. | | On July 3, 2013, $20,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 24 of Compendium of Evidence, pp. 147-148. |
| | | **<u>JULY 2013 POST-PETITION SALES AND DEPOSITS</u>** | |
| | | **<u>ACE GALLERY NEW YORK INVOICE NO. 2020</u>** | |
| 152. | | On July 2, 2013, Debtor sold one piece of artwork by David Amico – Fast Line 2006; one piece of artwork by Phil Frost – Untitled, 2013 [4' x' 3']; and one piece of artwork by Gary Lang – One (With The) Sting #3, 2011 – as reflected on Invoice No. 2020. | Invoice No. 2020, Exhibit 25 of Compendium of Evidence, p. 152. |
| 153. | | The total amount of the sale on Invoice No. 2020 was $132,000.00. | *Id.* |
| 154. | | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "<u>Lang Contract</u>"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 155. | | On July 2, 2013, $132,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 25 of Compendium of Evidence, pp. 152-154. |
| 156. | | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2020. | Chrismas Deposition, 396:14-399:3; and Exhibit 184 attached thereto. |
| | | **<u>ACE GALLERY NEW YORK INVOICE NO. 2020A</u>** | |
| 157. | | On July 3, 2013, Debtor sold three pieces of artwork by Helen Pashgian – Untiled, #18, 2012; Untitled #19, 2012; and Untitled (Blue Sphere), | Invoice No. 2020A, Exhibit 26 of Compendium of |

| | | |
|---|---|---|
| | 2013 – as reflected on Invoice No. 2020A. | Evidence, p. 158. |
| 158. | The total amount of the sale on Invoice No. 2020A was $51,200.00 | *Id.* |
| 159. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 160. | On July 8, 2013, $51,200.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 26 of Compendium of Evidence, pp. 159-160. |
| | **ACE GALLERY INVOICE NO. 2021** | |
| 161. | On July 22, 2013, Debtor sold one piece of artwork by Phil Frost – Untitled, 2013 [5' x 4'] – as reflected on Invoice No. 2021. | Invoice No. 2021, Exhibit 27 of Compendium of Evidence, p. 164. |
| 162. | The total amount of the sale on Invoice No. 2021 was $52,320.00. | *Id.* |
| 163. | On July 19, 2013, $52,320.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 27 of Compendium of Evidence, p. 165. |
| 164. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2021. | Chrismas Deposition, 391:3-393:24; and Exhibit 181 attached thereto. |
| | **ACE GALLERY NEW YORK INVOICE NO. 2022** | |
| 165. | On July 30, 2013, Debtor sold one piece of artwork by Bernar Venet,– Indetermined Line, 1990 and one piece of artwork by Charles Fine – Flor De Incino, 2012, as reflected on Invoice No. | Invoice No. 2022, Exhibit 28 of Compendium of Evidence, p. 169. |

| | | |
|---|---|---|
| | 2022. | |
| 166. | The total amount of the sale on Invoice No. 2015A was $172,000.00. | *Id.* |
| 167. | On August 2, 2013, $172,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 28 of Compendium of Evidence, pp. 170-171; 174. |
| 168. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2022. | Chrismas Deposition, 234:24-240:15; and Exhibits 127-131 attached thereto. |
| 169. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2022. | Chrismas Deposition, 387:10-389:20; and Exhibit 179 attached thereto. |
| | **SEPTEMBER 2013 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1614A** | |
| 170. | On September 12, 2013, Debtor invoiced the commission due on a direct sale of art by Helen Pashgian. | Invoice No. 1614A, Exhibit 29 of Compendium of Evidence, p. 176. |
| 171. | The total amount of the sale on Invoice No. 1614A was $10,000.00. | *Id.* |
| 172. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 173. | On September 20, 2013, $10,000.00 was deposited into Ace New York checking account | Ace NY Bank Records, Exhibit 29 of Compendium |

| | | |
|---|---|---|
| | ending in #0229 at City National Bank. | of Evidence, p. 177. |

**OCTOBER 2013 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY NEW YORK INVOICE NO. 2026**

| | | |
|---|---|---|
| 174. | On October 11, 2013, Debtor sold one piece of artwork by Alex Berg – Young Girls Hair, 2012 – as reflected on Invoice No. 2026. | Invoice No. 2026, Exhibit 30 of Compendium of Evidence, p. 181. |
| 175. | The total amount of the sale on Invoice No. 2026 was $1,962.00. | Id. |
| 175.5 | Alex Berg and the Debtor are parties to a contract dated August 21, 2013, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alex Berg (the "Berg Contract"). | Alex Berg Contract at Leslie Decl. II at ¶ 37 (discussing factual foundation regarding Alex Berg contract) and Exhibit R thereto (attaching copy of Alex Berg Contract). |
| 176. | On October 17, 2013, $1,962.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 30 of Compendium of Evidence, pp. 182-183. |

**ACE GALLERY NEW YORK INVOICE NO. 2027**

| | | |
|---|---|---|
| 177. | On October 14, 2013, Debtor sold two pieces of artwork by Gary Lang – Metallines 1, 2013 and Metal Lines 2, 2013 – as reflected on Invoice No. 2027. | Invoice No. 2027, Exhibit 31 of Compendium of Evidence, p. 187. |
| 178. | The total amount of the sale on Invoice No. 2027 was $120,000.00. | Id. |
| 179. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |

| 180. | On October 16, 2013, $120,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 31 of Compendium of Evidence, p. 188. |
| 181. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2027. | Chrismas Deposition, 259:10-263:10; and Exhibits 143-145 attached thereto. |

## ACE GALLERY NEW YORK INVOICE NO. 2028

| 182. | On October 17, 2013, Debtor sold one piece of artwork by Helen Pashgian – Untitled, (Elliptical Spheroid), 1969 – as reflected on Invoice No. 2028. | Invoice No. 2028, Exhibit 32 of Compendium of Evidence, p. 192. |
| 183. | The total amount of the sale on Invoice No. 2028 was $37,060.00. | *Id.* |
| 184. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint ECF 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 185. | On October 18, 2013, $37,060.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 32 of Compendium of Evidence, pp. 193-194. |

## NOVEMBER 2013 POST-PETITION SALES AND DEPOSITS

## ACE GALLERY NEW YORK INVOICE NO. 2030

| 186. | On November 25, 2013, Debtor sold two pieces of artwork by Mary Corse – 1 White Painting, | Invoice No. 2030, Exhibit 33 of Compendium of |

| | 1968 and 1 Black Painting, 1979 – as reflected on Invoice No. 2030. | Evidence, p. 198. |
|---|---|---|
| 187. | The total amount of the sale on Invoice No. 2030 was $300,000.00. | *Id.* |
| 188. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 189. | On November 25, 2013, $200,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 33 of Compendium of Evidence, pp. 199-200. |
| 190. | On November 25, 2013, $100,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 33 of Compendium of Evidence, pp. 199-200. |
| 191. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2030. | Chrismas Deposition, 266:15-267:22; 270:17-271:1; 273:4-274:2; and Exhibits 147-149 attached thereto. |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1660** | |
| 192. | On November 27, 2013, Debtor sold three pieces of artwork by De Wain Valentine – Column Gray, 1972-75 [1 of 2]; Column Gray, 1972-75 [2 of 2], and Skyline 001, 2004 – as reflected on Invoice No. 1660. | Invoice No. 1660, Exhibit 34 of Compendium of Evidence, p. 204. |
| 193. | The total amount of the sale on Invoice No. 1660 was $153,900.00. | *Id.* |
| 194. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts | De Wain Valentine Contract at Leslie Decl. II |

| | | by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 195. | | On February 18, 2014, $153,900.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 34 of Compendium of Evidence, pp. 205-206. |
| 196. | | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 1660. | Chrismas Deposition, 274:3-276:19; Chrismas Depo. Exs. 150-152. |
| | | **ACE GALLERY INVOICE NO. 1661** | |
| 197. | | On November 27, 2013, Debtor sold three pieces of artwork by De Wain Valentine – Column Gray #5, 1970; Column Gray #1, 1970; and Column Gray #2, 1970 – as reflected on Invoice No. 1661. | Invoice No. 1661, Ex. 35 of Compendium of Evidence, p. 211. |
| 198. | | The total amount of the sale on Invoice No. 1661 was $225,000.00. | *Id.* |
| 199. | | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |

| | | |
|---|---|---|
| 200. | On December 24, 2013, $50,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 35 of Compendium of Evidence, pp. 212-213. |
| 201. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 1661. | Chrismas Deposition, 276:20-277:25; and Exhibit 153 attached thereto. |

### DECEMBER 2013 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2031A

| | | |
|---|---|---|
| 202. | On December 8, 2013, Debtor sold one piece of artwork by De Wain Valentine – Column Gray With Cloud, 1969-70 – as reflected on Invoice No. 2031A. | Invoice No. 2031A, Exhibit 36 of Compendium of Evidence, p. 217. |
| 203. | The total amount of the sale on Invoice No. 2031A was $480,000.00. | *Id.* |
| 204. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 205. | On December 13, 2013, $240,000.00 (two payments of $120,000.00) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 36 of Compendium of Evidence, pp. 218-291. |
| 206. | On January 3, 2014, $240,000.00 (two payments of $120,000.00) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 36 of Compendium of Evidence, pp. 218, 222. |

| 207. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2031A. | Chrismas Deposition, 278:1-282:1; and Exhibits 154-157 attached thereto. |
|---|---|---|
| | **ACE GALLERY NEW YORK INVOICE NO. 2031** | |
| 208. | On December 17, 2013, Debtor sold one piece of artwork by De Wain Valentine – Diamond Column Blue, 1968 – as reflected on Invoice No. 2031. | Invoice No. 2031, Exhibit 37 of Compendium of Evidence, p. 226. |
| 209. | The total amount of the sale on Invoice No. 2031 was $37,060.00. | *Id.* |
| 210. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 211. | On December 18, 2013, $37,060.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 37 of Compendium of Evidence, p. 227. |
| | **2014 POST-PETITION SALES AND DEPOSITS** | |
| | **JANUARY 2014 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY NEW YORK INVOICE NO. 2032** | |
| 212. | On January 16, 2014, Debtor sold one piece of | Invoice No. 2032, Exhibit |

| | | artwork by Gisela Colon – Rectangle Torque Glo-Pod (Iridescent Hot Red/Pink), 2013 – and one piece of artwork by Helen Pashgian – Sphere (Red, Pale Blue Eyes), 2013 – as reflected on Invoice No. 2032. | 38 of Compendium of Evidence, p. 231. |
|---|---|---|---|
| 213. | | The total amount of the sale on Invoice No. 2032 was $64,310.00. | *Id.* |
| 214. | | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "<u>Pashgian Contract</u>"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 215. | | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation of Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 216. | | On January 16, 2014, $64,310.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 38 of Compendium of Evidence, p. 232. |
| 217. | | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2032. | Chrismas Deposition, 351:25-354:10; 354:9-357:17; and. Exhibits 166-167 attached thereto. |
| | | **ACE GALLERY NEW YORK INVOICE NO. 2033** | |
| 218. | | On January 16, 2014, Debtor sold one piece of artwork by Gisela Colon – Skewed Square Glo-Pod (iridescent Indigo Glue), 2014 – as reflected on Invoice No. 2033. | Invoice No. 2033, Exhibit 39 of Compendium of Evidence, p. 236. |

| 219. | The total amount of the sale on Invoice No. 2033 was $12,000.00. | *Id.* |
| 220. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 221. | On January 17, 2014, $12,000.00 (within the $80,000.00 deposit) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 39 of Compendium of Evidence, pp. 237-283. |

### ACE GALLERY NEW YORK INVOICE NO. 2034

| 222. | On January 19, 2014, Debtor sold one piece of artwork by Justin Bower – Untitled, 2009 – as reflected on Invoice No. 2034. | Invoice No. 2034, Exhibit 40 of Compendium of Evidence, p. 242. |
| 223. | The total amount of the sale on Invoice No. 2034 was $29,750.00. | *Id.* |
| 224. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 225. | On January 21, 2014, $5,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 40 of Compendium of Evidence, pp. 243-244. |
| 226. | On January 23, 2014, $9,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 40 of Compendium of Evidence, pp. 243-244. |
| 227. | On January 24, 2014, $7,500.00 ($15,750.00 total deposit) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 40 of Compendium of Evidence, pp. 243-244. |
| 228. | On January 24, 2014, $8,250.00 ($15,750.00 total deposit) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 40 of Compendium of Evidence, pp. 243-244. |

| 229. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2034. | Chrismas Deposition, 357:22-360:5; and Exhibit 168 attached thereto. |

### ACE GALLERY NEW YORK INVOICE NO. 2035

| 230. | On January 19, 2014, Debtor sold one piece of artwork by Gisela Colon – Dome Melt Glo-Pod (Iridescent Blue Green), 2014– as reflected on Invoice No. 2035. | Invoice No. 2035, Exhibit 41 of Compendium of Evidence, p. 247. |
| | The total amount of the sale on Invoice No. 2035 was $14,715.00. | Id. |
| 231. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Colon sales) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 232. | On January 21, 2014, $14,715.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 41 of Compendium of Evidence, p. 248. |
| 233. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2035. | Chrismas Deposition, 366:22-369:4; 369:5-371:9; 371:10-372:10; and Exhibits 170-173 attached thereto. |

### FEBRUARY 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2037

| 234. | On February 5, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (White Inner Bank with Flat White Outer Bands, Beveled), 2012 – as reflected on Invoice No. 2037. | Invoice No. 2037, Exhibit 42 of Compendium of Evidence, p. 252. |
| 235. | The total amount of the sale on Invoice No. 2037 was $72,000.00. | Id. |
| 236. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the | Mary Corse Contract at Leslie Decl. II at ¶ 28 |

-38-

| | | Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
|---|---|---|---|
| 237. | | On January 16, 2014, $72,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 42 of Compendium of Evidence, pp. 253-254. |
| | | **ACE GALLERY NEW YORK INVOICE NO. 2036** | |
| 238. | | On February 11, 2014, Debtor sold one piece of artwork by Peter Alexander – Seven Part Bar, 2013 – as reflected on Invoice No. 2036. | Invoice No. 2036, Exhibit 43 of Compendium of Evidence, p. 258. |
| 239. | | The total amount of the sale on Invoice No. 2032 was $163,500.00. | *Id.* |
| 240. | | Peter Alexander and the Debtor are parties to a Consignment Agreement dated August 24, 2015, by which the Debtor had the exclusive right thereafter to sell certain consigned artworks by Peter Alexander (the "Alexander Contract"). | Peter Alexander Contract at Leslie Decl. II at ¶ 36 (discussing factual foundation regarding Peter Alexander contract) and Exhibit Q thereto (attaching copy of Peter Alexander Contract). |
| 241. | | On February 4, 2014, $150,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 43 of Compendium of Evidence, pp. 259-260. |
| 242. | | On February 12, 2014, $13,500.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 43 of Compendium of Evidence, pp. 259-260. |
| 243. | | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2036. | Chrismas Deposition, 373:11-377:15; and Exhibit |

| | | 174 attached thereto. |
|---|---|---|
| | **MARCH 2014 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY NEW YORK INVOICE NO. 2038** | |
| 244. | On March 19, 2014, Debtor sold three pieces of artwork by Gisela Colon – Slab Glo-Pod (Iridescent Green Blue), 2013– as reflected on Invoice No. 2038; Ovoid Glo-Pod (Iridescent Aqua Violet), 2013; and Ovoid Glo-Pod (Iridescent Aqua Gold), 2013 – as reflected on Invoice No. 2038. | Invoice No. 2038, Exhibit 44 of Compendium of Evidence, pp. 264-265. |
| 245. | The total amount of the sale on Invoice No. 2038 was $38,368.00. | *Id.* |
| 246. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Colon sales) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 247. | On March 20, 2014, $38,368.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 44 of Compendium of Evidence, p. 266. |
| | **ACE GALLERY NEW YORK INVOICE NO. 2040** | |
| 248. | On March 31, 2014, Debtor sold one piece of artwork by De Wain Valentine – Ring Agate, 1968 – as reflected on Invoice No. 2040. | Invoice No. 2040, Exhibit 45 of Compendium of Evidence, p. 270. |
| 249. | The total amount of the sale on Invoice No. 2040 was $150,000.00. | *Id.* |
| 250. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain |

| | | | |
|---|---|---|---|
| | | | Valentine Contract). |
| | | | *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 251. | On April 4, 2014, $150,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 45 of Compendium of Evidence, pp. 271-272. |

| **APRIL 2014 POST-PETITION SALES AND DEPOSITS** |
|---|

| **ACE GALLERY NEW YORK INVOICE NO. 2041** |
|---|

| | | |
|---|---|---|
| 252. | On April 17, 2014, Debtor invoiced a part for the crating of the De Wain Valentine artwork Ring Agate, 1968 as reflected on Invoice No. 2041. | Invoice No. 2041, Exhibit 46 of Compendium of Evidence, p. 276. |
| 253. | The total amount of the sale on Invoice No. 2041 was $648.39. | *Id.* |
| 254. | On January 16, 2014, $648.39 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 46 of Compendium of Evidence, pp. 277-278. |

| **ACE GALLERY NEW YORK INVOICE NO. 2042** |
|---|

| | | |
|---|---|---|
| 255. | On April 23, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled (Sphere), 2014 – as reflected on Invoice No. 2042. | Invoice No. 2042, Exhibit 47 of Compendium of Evidence, p. 282. |
| 256. | The total amount of the sale on Invoice No. 2042 was $39,240.00. | *Id.* |
| 257. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian |

| | | Contract). |
| | | *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 258. | On April 30, 2014, $39,240.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 47 of Compendium of Evidence, p. 283. |

## MAY 2014 POST-PETITION SALES AND DEPOSITS

## ACE GALLERY NEW YORK INVOICE NO. 2043

| | | |
|---|---|---|
| 259. | On May 2, 2014, Debtor invoiced the delivery and installation for the Peter Alexander painting Seven Part bar, 2013 – as reflected on Invoice No. 2043. | Invoice No. 2043, Exhibit 48 of Compendium of Evidence, p. 287. |
| 260. | The total amount of the sale on Invoice No. 2043 was $889.20. | *Id.* |
| 261. | On May 22, 2014, $889.20 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 48 of Compendium of Evidence, pp. 288-289. |

## [NO LETTERHEAD] INVOICE NO. 2044

| | | |
|---|---|---|
| 262. | On May 9, 2014, Debtor sold two pieces of artwork by Alex Berg – Plane Crash, 2013 and Boy in Costume, 2013 – as reflected on Invoice No. 2044. | Invoice No. 2044, Exhibit 49 of Compendium of Evidence, p. 293. |
| 263. | The total amount of the sale on the Invoice No. 2032 was $2,725.00. | *Id.* |
| 264. | Alex Berg and the Debtor are parties to a contract dated August 21, 2013, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alex Berg (the "Berg Contract"). | Alex Berg Contract at Leslie Decl. II at ¶ 37 (discussing factual foundation regarding Alex Berg contract) and Exhibit R thereto (attaching copy of |

-42-

| | | | |
|---|---|---|---|
| | | | Alex Berg Contract). |
| 265. | On May 9, 2014, $2,725.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 49 of Compendium of Evidence, p. 294. |

### ACE GALLERY NEW YORK INVOICE NO. 2045

| | | | |
|---|---|---|---|
| 266. | On May 27, 2014, Debtor sold one piece of artwork by De Wain Valentine – Cantilevered Projections, 1965 – as reflected on Invoice No. 2045. | | Invoice No. 2045, Exhibit 50 of Compendium of Evidence, p. 298. |
| 267. | The total amount of the sale on Invoice No. 2045 was $179,850.00. | | *Id.* |
| 268. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 269. | On May 27, 2014, $179,850.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 50 of Compendium of Evidence, pp. 299-300. |
| 270. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2045. | | Chrismas Deposition, 419:8-421:18; and Exhibit 196 attached thereto. |

### ACE GALLERY NEW YORK INVOICE NO. 2046

| | | | |
|---|---|---|---|
| 271. | On May 27, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled, Sphere, 2013-14 – as reflected on Invoice No. 2046. | | Invoice No. 2046, Exhibit 51 of Compendium of Evidence, p. 304. |

| 272. | The total amount of the sale on Invoice No. 2046 was $36,000.00. | *Id.* |
|---|---|---|
| 273. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 274. | On January 16, 2014, $36,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 51 of Compendium of Evidence, pp. 305-306. |

### ACE GALLERY NEW YORK INVOICE NO. 2047

| 275. | On May 27, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled, White Inner Ban Beveled – as reflected on Invoice No. 2047 (Invoice No. 2044 marked out to reflect Invoice No. 2047). | Invoice No. 2047, Exhibit 52 of Compendium of Evidence, p. 309. |
|---|---|---|
| 276. | The total amount of the sale on Invoice No. 2047 was $57,000.00. | *Id.* |
| 277. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests |

| | | in her artwork). |
|---|---|---|
| 278. | On January 16, 2014, $57,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 52 of Compendium of Evidence, pp. 310-311. |
| 279. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2047 (referred to as Invoice 2044 but sale reflecting same May 27, 2014 Mary Corse artwork as Invoice 2047). | Chrismas Deposition, 444:25-447:23; and Exhibit 206 attached thereto. |

### JUNE 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2048

| | | |
|---|---|---|
| 280. | On June 5, 2014, Debtor sold two pieces of artwork by Justin Bower – Embedded, Beveled 2010 and Feed Back loop II, 2010– as reflected on Invoice No. 2048. | Invoice No. 2048, Exhibit 53 of Compendium of Evidence, p. 315. |
| 281. | The total amount of the sale on Invoice No. 2048 was $50,000.00. | Id. |
| 282. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 283. | On June 5, 2014, $50,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 53 of Compendium of Evidence, pp. 316-317. |

### ACE GALLERY INVOICE NO. 4449

| | | |
|---|---|---|
| 284. | On June 13, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (White Multi Inner Band Beveled), 2013 – as reflected on Invoice No. 4449. | Invoice No. 4449, Exhibit 54 of Compendium of Evidence, p. 321. |
| 285. | The total amount of the sale on Invoice No. 4449 was $70,850.00 | Id. |

| 286. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
|------|------|------|
| 287. | On June 16, 2014, $70,850.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 54 of Compendium of Evidence, p. 322. |

### ACE GALLERY INVOICE NO. 2050

| 288. | On June 29, 2014, Debtor sold one piece of artwork by Laurie Lipton – Hung Up and Over, 2003 – as reflected on Invoice No. 2050. | Invoice No. 2050, Exhibit 55 of Compendium of Evidence, pp. 326-327 |
|------|------|------|
| 289. | The total amount of the sale on Invoice No. 2050 was $18,530.00. | *Id.* |
| 290. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 291. | On June 26, 2014, $18,530.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 55 of Compendium of Evidence, pp. 328-329; 332. |

### ACE GALLERY INVOICE NO. 2051

| | | |
|---|---|---|
| 292. | On June 25, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (White Light Series), 1966 – as reflected on Invoice No. 2051. | Invoice No. 2051, Exhibit 56 of Compendium of Evidence, p. 334. |
| 293. | The total amount of the sale on Invoice No. 2051 was $325,000.00. | *Id.* |
| 294. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 295. | On June 30, 2014, $325,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 56 of Compendium of Evidence, pp. 335-336. |

### JULY 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY LOS ANGELES INVOICE NO. 1739

| | | |
|---|---|---|
| 296. | On July 14, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled (Disc), 2014 – as reflected on Invoice No. 1739. | Invoice No. 1739, Exhibit 57 of Compendium of Evidence, pp. 340-341. |
| 297. | The total amount of the sale on Invoice No. 1739 was $200,000.00. | *Id.* |
| 298. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching |

| | | copy of Helen Pashgian Contract). |
| | | *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| | On August 8, 2014, $200,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 57 of Compendium of Evidence, pp. 342-343. |

<h3 style="text-align:center">ACE GALLERY INVOICE NO. 2052</h3>

| 299. | On July 22, 2014, Debtor sold one piece of artwork by De Wain Valentine – Smoke Grey Column, 1972 – as reflected on Invoice No. 2045. | Invoice No. 2052, Exhibit 58 of Compendium of Evidence, p. 347. |
| 300. | The total amount of the sale on Invoice No. 2052 was $115,812.50. | *Id.* |
| 301. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 302. | On July 22, 2014, $115,812.50 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 58 of Compendium of Evidence, p. 348. |

<h3 style="text-align:center">ACE GALLERY INVOICE NO. 2053</h3>

| 303. | On July 22, 2014, Debtor invoiced a customer for a discussion with Douglas Chrismas and Laurie Lipton as reflected on Invoice No. 2045. | Invoice No. 2053, Exhibit 59 of Compendium of Evidence, p. 352. |
|---|---|---|
| 304. | The total amount of the sale on Invoice No. 2053 was $13,090.00. | *Id.* |
| 305. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 306. | On July 23, 2014, $13,090.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 59 of Compendium of Evidence, pp. 353-354. |

### ACE GALLERY NEW YORK INVOICE NO. 2054

| 307. | On July 29, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled (Column #1), 2010 – as reflected on Invoice No. 2054. | Invoice No. 2054, Exhibit 60 of Compendium of Evidence, p. 358. |
|---|---|---|
| 308. | The total amount of the sale on Invoice No. 2054 was $174,400.00. | *Id.* |
| | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 309. | On July 30, 2014, $174,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 60 of Compendium |

| | | | of Evidence, p. 359. |
|---|---|---|---|

### SEPTEMBER 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2058

| | | | |
|---|---|---|---|
| 310. | On September 11, 2014, Debtor sold one piece of artwork by Laurie Lipton – Bone China, 2009 – as reflected on Invoice No. 2058. | | Invoice No. 2058, Exhibit 61 of Compendium of Evidence, p. 363. |
| 311. | The total amount of the sale on Invoice No. 2058 was $12,885.00. | | *Id.* |
| 312. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 313. | On September 12, 2014, $12,885.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 61 of Compendium of Evidence, pp. 364-365. |

### ACE GALLERY NEW YORK INVOICE NO. 2059A

| | | | |
|---|---|---|---|
| 314. | On September 17, 2014, Debtor invoiced a customer for the rental of Ace Gallery Beverly Hills, as reflected on Invoice No. 2059A. | | Invoice No. 2059A, Exhibit 62 of Compendium of Evidence, pp. 369-370. |
| 315. | The total amount of the sale on Invoice No. 2059A was $3,500.00. | | *Id.* |
| 316. | On September 18, 2014, $3,500.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 62 of Compendium of Evidence, p. 371. |

### ACE GALLERY NEW YORK INVOICE NO. 2060

| | | | |
|---|---|---|---|
| 317. | On May 27, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled, 2010 and one | | Invoice No. 2060, Exhibit |

| | | piece of artwork by Gary Lang – Lluvial, 1991 – as reflected on Invoice No. 2060. | 63 of Compendium of Evidence, p. 375. |
|---|---|---|---|
| 318. | | The total amount of the sale on Invoice No. 2060 was $225,000.00. | *Id.* |
| 319. | | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 320. | | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 321. | | On September 22, 2014, $225,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 63 of Compendium of Evidence, pp 376-377. |
| | | **ACE GALLERY NEW YORK INVOICE NO. 2061** | |
| 322. | | On September 24, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled (Blue & Green with Acrylic Rod), 2014 – as reflected on Invoice No. 2061. | Invoice No. 2061, Exhibit 64 of Compendium of Evidence, p. 381. |
| 323. | | The total amount of the sale on Invoice No. 2061 was $54,000.00. | *Id.* |
| 324. | | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 |

| | | | |
|---|---|---|---|
| | | Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). |
| | | | *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| | 325. | On September 24, 2014, $54,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 64 of Compendium of Evidence, pp. 382-383. |

**OCTOBER 2014 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY NEW YORK INVOICE NO. 2062**

| | | | |
|---|---|---|---|
| | 326. | On October 10, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (Black/White Bands Beveled) 2005 – as reflected on Invoice No. 2062. | Invoice No. 2062, Exhibit 65 of Compendium of Evidence, p. 387. |
| | 327. | The total amount of the sale on Invoice No. 2062 was $27,250.00. | *Id.* |
| | 328. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). |
| | | | *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests |

| | | |
|---|---|---|
| | | in her artwork). |
| 329. | On October 10, 2014, $27,250.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 65 of Compendium of Evidence, pp. 388-389. |

### NOVEMBER 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 1769

| | | |
|---|---|---|
| 330. | On November 18, 2014, Debtor invoiced a customer for crating and packaging of a Judy Fox painting entitled Snow White as reflected on Invoice No. 1769. | Invoice No. 1769, Exhibit 66 of Compendium of Evidence, p. 393. |
| 331. | The total amount of the sale on Invoice No. 1769 was $650.00. | *Id.* |
| 332. | On November 20, 2014, $650.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 66 of Compendium of Evidence, p. 394. |

### DECEMBER 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2063

| | | |
|---|---|---|
| 333. | On December 3, 2014, Debtor sold one piece of artwork by Ruth Pastine – Blue Orange 5-V6032 (Orange Ocre), Interplay Series, 2005 – as reflected on Invoice No. 2063. | Invoice No. 2063, Exhibit 67 of Compendium of Evidence, p. 398. |
| 334. | The total amount of the sale on Invoice No. 2063 was $15,696.00. | *Id.* |
| 335. | Ruth Pastine and the Debtor are parties to two Consignment Agreements dated February 25, 2015, and October 1, 2015 (the "Pastine Contract"). | Ruth Pastine Contract at Leslie Decl. II at ¶ 40 (discussing factual foundation regarding Ruth Pastine contract) and Exhibit U thereto (attaching copy of Ruth Pastine Contract). |

| | | |
|---|---|---|
| 336. | On December 4, 2014, $15,696.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 63 of Compendium of Evidence, pp. 399-400. |

### ACE GALLERY NEW YORK INVOICE NO. 2064

| | | |
|---|---|---|
| 337. | On December 22, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (White Multi Inner Band Beveled), 2012; one piece of artwork by Helen Pashgian – Untitled (Red), 1991; and one piece of artwork by De Wain Valentine – Circle, Sepia to Rose, 1970 as reflected on Invoice No. 2064. | Invoice No. 2064, Exhibit 68 of Compendium of Evidence, pp. 404-405. |
| 338. | The total amount of the sale on Invoice No. 2045 was $203,000.00. | *Id.* |
| 339. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 340. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party |

| | | | to a contract with Debtor). |
|---|---|---|---|
| 341. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 342. | On January 14, 2015, $19,980.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 68 of Compendium of Evidence, pp. 406-407. |
| 343. | On January 20, 2015, $74,261.20 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 68 of Compendium of Evidence, pp. 406-407. |
| 344. | On February 17, 2015, $108,738.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 68 of Compendium of Evidence, pp. 406, 410. |

### 2015 POST-PETITION SALES AND DEPOSITS

### JANUARY 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2066

| 345. | On January 11, 2015, Debtor invoiced a customer for the delivery and sale of Mary Corse artworks, as reflected on Invoice No. 2066. | Invoice No. 2066, Exhibit 69 of Compendium of Evidence, p. 145. |
|---|---|---|
| 346. | The total amount of the sale on Invoice No. 2066 was $1,360.00. | *Id.* |

| 347. | On February 6, 2015, $1,360.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 69 of Compendium of Evidence, p. 416. |
|---|---|---|
| | **ACE GALLERY NEW YORK INVOICE NO. 2067** | |
| 348. | On January 14, 2015, Debtor sold one piece of artwork by Gary Lang – Three Planets, 2011 – as reflected on Invoice No. 2067. | Invoice No. 2067, Exhibit 70 of Compendium of Evidence, p. 421. |
| 349. | The total amount of the sale on Invoice No. 2067 was $188,500.00. | *Id.* |
| 350. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 351. | On January 15, 2015, $188,500.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 70 of Compendium of Evidence, pp. 422-423. |
| | **ACE GALLERY NEW YORK INVOICE NO. 2068** | |
| 352. | On January 15, 2015, Debtor sold one piece of artwork by The Date Farmers – Varrio, 2012 – as reflected on Invoice No. 2068. | Invoice No. 2068, Exhibit 71 of Compendium of Evidence, p. 429. |
| 353. | The total amount of the sale on Invoice No. 2068 was $8,720.00. | *Id.* |
| 354. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers").and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 355. | On January 20, 2015, $8,720.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 71 of Compendium |

|  |  |  | of Evidence, pp. 430-431. |
|---|---|---|---|
|  | **ACE GALLERY NEW YORK INVOICE NO. 2069** | | |
| 356. | On January 15, 2015, Debtor sold one piece of artwork by Justin Bower – Vivisection (1), 2012 – as reflected on Invoice No. 2069. | | Invoice No. 2069, Exhibit 72 of Compendium of Evidence, p. 437. |
| 357. | The total amount of the sale on Invoice No. 2069 was $43,600.00. | | *Id.* |
| 358. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 359. | On January 16, 2015, 43,600.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 72 of Compendium of Evidence, pp. 438-439. |
|  | **FEBRUARY 2015 POST-PETITION SALES AND DEPOSITS** | | |
|  | **ACE GALLERY LOS ANGELES INVOICE NO. 1790** | | |
| 360. | On February 2, 2015, Debtor sold one piece of artwork by Peter Alexander – Flow Lime Exile Wedge, 2014 – as reflected on Invoice No. 1790. | | Invoice No. 1790, Exhibit 73 of Compendium of Evidence, pp. 445-446. |
| 361. | The total amount of the sale on Invoice No. 1790 was $21,800.00. | | *Id.* |
| 362. | Peter Alexander and the Debtor are parties to a Consignment Agreement dated August 24, 2015, by which the Debtor had the exclusive right thereafter to sell certain consigned artworks by Peter Alexander (the "Alexander Contract"). | | Peter Alexander Contract at Leslie Decl. II at ¶ 36 (discussing factual foundation regarding Peter Alexander contract) and Exhibit Q thereto (attaching copy of Peter Alexander Contract). |

| 363. | On January 27, 2015, $21,800.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 73 of Compendium of Evidence, p. 447. |
|---|---|---|
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1792** | |
| 364. | On February 13, 2015, Debtor sold one piece of artwork by Laurie Lipton – Round and Round, 2012 – as reflected on Invoice No. 1792. | Invoice No. 1792, Ex. 74 of Compendium of Evidence, p. 453. |
| 365. | The total amount of the sale on Invoice No. 1792 was $35,970.00. | *Id.* |
| 366. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 367. | On February 17, 2015, $35,970.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 74 of Compendium of Evidence, pp. 454, 458. |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1797** | |
| 368. | On February 15, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled, 2010 White Flat w 3 Inner Bands; one piece of artwork by Gisela Colon – Ultra Spheroid Glo-Pod (Iridescent Lilac), 2014; and one piece of artwork by Helen Pashgian – Untitled (Column #8), 2011 -- as reflected on Invoice No. 1797. | Invoice No. 1797, Exhibit 75 of Compendium of Evidence, pp. 460-463. |
| 369. | The total amount of the sale on Invoice No. 1979 was $258,000.00. | *Id.* |
| 370. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas |

| | | |
|---|---|---|
| | | Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 371. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 372. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 373. | On March 19, 2015, $258,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 75 of Compendium of Evidence, pp. 464-465. |
| 374. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 1797. | Chrismas Deposition, 574:7-577:10; 577:11-579:15; and Exhibits 253-254 attached thereto. |
| | **[NO LETTERHEAD] INVOICE NO. 2074A** | |
| 375. | On February 17, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Red Eye, 2014 – as reflected on Invoice No. 2074A. | Invoice No. 2074A, Exhibit 76 of Compendium of Evidence, p. 470. |

| 376. | The total amount of the sale on Invoice No. 2074A was $12,000.00. | *Id.* |
| 377. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 378. | On February 24, 2015, $12,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 76 of Compendium of Evidence, pp. 471-472. |
| | **MARCH 2015 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1801** | |
| 379. | On March 13, 2015, Debtor sold one piece of artwork by Gisela Colon – Ovoid Glo-Pod (Iridescent Orange), 2013 – as reflected on Invoice No. 1801. | Invoice No. 1801, Exhibit 77 of Compendium of Evidence, pp. 477-478. |
| 380. | The total amount of the sale on Invoice No. 1801 was $13,080.00. | *Id.* |
| 381. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 382. | On March 20, 2015, $13,080.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 77 of Compendium of Evidence, p. 479. |
| | **APRIL 2015 POST-PETITION SALES AND DEPOSITS** | |
| | | |

| ACE GALLERY NEW YORK INVOICE NO. 2075 | | |
|---|---|---|
| 383. | On April 10, 2015, Debtor sold two pieces of artwork by Mary Corse – Untitled (Gold), 1975 and Untitled (White Inner Band Beveled), 2010; and one piece of art by Helen Pashgian (Untitled Sphere, (Bright Green With Crossed Rods), 2014 – as reflected on Invoice No. 2075. | Invoice No. 2075, Exhibit 78 of Compendium of Evidence, p. 484. |
| 384. | The total amount of the sale on Invoice No. 2075 was $85,000.00. | *Id.* |
| 385. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 386. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 387. | On April 13, 2015, $85,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 78 of Compendium of Evidence, p. 485. |
|  |  |  |

| ACE GALLERY LOS ANGELES INVOICE NO. 1828 | | |
|---|---|---|
| 388. | On April 11, 2015, Debtor sold one piece of artwork by Alexander Yulish – Sitting with Dolores, 2015 – as reflected on Invoice No. 1828. | Invoice No. 1828, Exhibit 79 of Compendium of Evidence, p. 489. |
| 389. | The total amount of the sale on Invoice No. 1828 was $50,000.00. | *Id.* |
| 390. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 391. | On February 11, 2016, $25,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 79 of Compendium of Evidence, pp. 490-491. |
| 392. | On March 16, 2016, $25,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 79 of Compendium of Evidence, pp. 490, 494. |
| ACE GALLERY NEW YORK INVOICE NO. 2076 | | |
| 393. | On April 23, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Quarter Past, 2014 and one piece of artwork from Mary Corse – White Multiple Inner Band Beveled, 2012 as reflected on Invoice No. 2076. | Invoice No. 2076, Exhibit 80 of Compendium of Evidence, p. 497. |
| 394. | The total amount of the sale on Invoice No. 2076 was $399,200.00 and $35,928.00 for sales tax. | *Id.* |
| 395. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, |

| | | 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
|---|---|---|
| 396. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 397. | On April 24, 2015, $399,200.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 80 of Compendium of Evidence, pp. 498-499. |
| 398. | On November 18, 2015, $35,928.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 80 of Compendium of Evidence, pp. 502-502. |
| 399. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2076. | Chrismas Deposition, 579:16-582:12; 591:14-592:9; and Exhibits 255, 259 attached thereto. |

### ACE GALLERY NEW YORK INVOICE NO. 2079

| | | |
|---|---|---|
| 400. | On April 25, 2015, Debtor sold two pieces of artwork by Mary Corse – Untitled, (White, Black & Red) 2014 and Untitled (Black, White), 2014 – as reflected on Invoice No. 2079. | Invoice No. 2079, Exhibit 81 of Compendium of Evidence, p. 506. |
| 401. | The total amount of the sale on Invoice No. 2079 was $252,000.00. | *Id.* |
| 402. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, |

| | | | 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
|---|---|---|---|
| 403. | On May 15, 2015, $252,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 81 of Compendium of Evidence, pp. 507-508. |

### ACE GALLERY NEW YORK INVOICE NO. 2077

| 404. | On April 27, 2015, Debtor sold one piece of artwork by Gisela Colon – Ultra Spheroid Glo-Pod (Iridescent Orange), 2014 – as reflected on Invoice No. 2077. | | Invoice No. 2077, Exhibit 82 of Compendium of Evidence, p. 512. |
|---|---|---|---|
| 405. | The total amount of the sale on Invoice No. 2077 was $52,320.00. | | *Id.* |
| 406. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 407. | On April 28, 2015, $52,320.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 82 of Compendium of Evidence, pp. 513-514. |

### MAY 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2078

| 408. | On May 4, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Socket, 2001 – as reflected on Invoice No. 2078. | | Invoice No. 2078, Exhibit 83 of Compendium of Evidence, p. 518. |
|---|---|---|---|
| 409. | The total amount of the sale on Invoice No. 2078 was $7,000.00. | | *Id.* |

| 410. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "<u>Arnoldi Contract</u>"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| --- | --- | --- |
| 411. | On May 4, 2015, $7,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 83 of Compendium of Evidence, pp. 519-520. |

### ACE GALLERY NEW YORK INVOICE NO. 2080

| 412. | On May 19, 2015, Debtor sold one piece of artwork by Alexander Yulish – Indrani (White, Black & Red), 2015 – as reflected on Invoice No. 2080. | Invoice No. 2080, Exhibit 84 of Compendium of Evidence, p. 524. |
| --- | --- | --- |
| 413. | The total amount of the sale on Invoice No. 2080 was $28,000.00. | *Id.* |
| 414. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "<u>Yulish Contract</u>"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 415. | On May 29, 2015, $28,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 84 of Compendium of Evidence, pp. 525-526. |

### JUNE 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2081

| 416. | On June 9, 2015, Debtor sold two pieces of artwork by Mary Corse – Untitled (White, Black & Red), 2015 and Untitled (White Inner Band | Invoice No. 2081, Exhibit 85 of Compendium of |
| --- | --- | --- |

| | | | |
|---|---|---|---|
| 1 | | With Flat White Outer Band), 2012 – as reflected on Invoice No. 2081. | Evidence, p. 530. |
| 2 3 | 417. | The total amount of the sale on Invoice No. 2081 was $211,200.00. | *Id.* |
| 4 5 6 7 | 418. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). |
| 8 9 10 11 12 13 | | | *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint ECF 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 14 15 | 419. | On June 9, 2015, $211,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 85 of Compendium of Evidence, pp. 531-532. |
| 16 17 | | **ACE GALLERY NEW YORK INVOICE NO. 2082** | |
| 18 19 | 420. | On June 12, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Untitled, 2015 – as reflected on Invoice No. 2082. | Invoice No. 2082, Exhibit 86 of Compendium of Evidence, p. 536. |
| 20 21 | 421. | The total amount of the sale on No. 2082 was $24,080.00. | *Id.* |
| 22 23 24 25 26 | 422. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 27 28 | 423. | On June 15, 2015, $24,080.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 86 of Compendium of Evidence, p. 538. |

| | **ACE GALLERY LOS ANGELES INVOICE NO. 1827** | |
|---|---|---|
| 424. | On June 24, 2015, Debtor sold one piece of artwork by Gisela Colon – Hyper Ellipsoid Glo-Pod (Iridescent Blue), 2014 – as reflected on Invoice No. 1827. | Invoice No. 1827, Exhibit 87 of Compendium of Evidence, pp. 542-543. |
| 425. | The total amount of the sale on Invoice No. 1827 was $96,000.00. | *Id.* |
| 426. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 427. | On January 15, 2015, $48,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 87 of Compendium of Evidence, pp. 544-545. |
| | **JULY 2015 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY NEW YORK INVOICE NO. 2082A** | |
| 428. | On January 14, 2015, Debtor by Jennifer Kellen, Director, "Ace Gallery Beverly Hills," invoiced a customer for the installation of photos by Martin Schoeller at a restaurant in Beverly Hills. California as reflected on Invoice No. 2082A. | Invoice No. 2082A, Exhibit 88 of Compendium of Evidence, p. 549. |
| 429. | The total amount of the sale on Invoice No. 2082A was $4,800.00. | *Id.* |
| 430. | On July 6, 2015, $4,800.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 88 of Compendium of Evidence, pp. 550-551. |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1826** | |

| 431. | On July 4, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled (White, Black and Beveled), 2006 – as reflected on Invoice No. 1826. | Invoice No. 1826, Exhibit 89 of Compendium of Evidence, pp. 555-556. |
| 432. | The total amount of the sale on Invoice No. 1826 was $175,000.00. | *Id.* |
| 433. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint ECF 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 434. | On July 7, 2015, $165,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 89 of Compendium of Evidence, pp. 557-558. |

### ACE GALLERY NEW YORK INVOICE NO. 2084

| 435. | On July 15, 2015, Debtor sold three pieces of artwork by Mary Corse – Untitled (Blue, Black and White), 2015; Untitled (Yellow, Black, White), 2015; and Untitled (Black, White) 2014 – as reflected on Invoice No. 2084. | Invoice No. 2084, Exhibit 90 of Compendium of Evidence, p. 562. |
| 436. | The total amount of the sale on Invoice No. 2084 was $216,000.00. | *Id.* |
| 437. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract).<br><br>*See also* Answer of Douglas |

| | | Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint ECF 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
|---|---|---|
| 438. | On July 15, 2015, $108,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 90 of Compendium of Evidence, pp. 563-564. |
| 439. | On July 16, 2015, $108,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 90 of Compendium of Evidence, pp. 563-564. |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1837** | |
| 440. | On July 25, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled, (Black Light), 1989 – as reflected on Invoice No. 1837. | Invoice No. 1837, Exhibit 91 of Compendium of Evidence, pp. 568-569. |
| 441. | The total amount of the sale on Invoice No. 1837 was $160,000.00. | *Id.* |
| 442. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 443. | On August 4, 2015, $159,972.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 91 of Compendium of Evidence, pp. 570-571. |

| ACE GALLERY LOS ANGELES INVOICE NO. 1838 | | |
|---|---|---|
| 444. | On July 25, 2015, Debtor sold one piece of artwork by Alexander Yulish – The Two of Them, 2014 – as reflected on Invoice No. 1838. | Invoice No. 1838, Exhibit 92 of Compendium of Evidence, pp. 575-577; 584. |
| 445. | The total amount of the sale on Invoice No. 1838 was $28,000.00. | Id. |
| 446. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 447. | On August 6, 2015, $29,500.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 92 of Compendium of Evidence, pp. 578-579. |
| 448. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 1838. | Chrismas Deposition, 588:2-591:13; and Exhibit 258 attached thereto. |
| ACE GALLERY LOS ANGELES INVOICE NO. 1836 | | |
| 449. | On July 30, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Dume, 2012 – as reflected on Invoice No. 1836. | Invoice No. 1836, Exhibit 93 of Compendium of Evidence, p. 592. |
| 450. | The total amount of the sale on Invoice No. 1836 was $20,165.00. | Id. |
| 451. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 452. | On August 11, 2015, $20,165.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 93 of Compendium of Evidence, pp. 593-594. |

| | **AUGUST 2015 POST-PETITION SALES AND DEPOSITS** | |
|---|---|---|
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1846** | |
| 453. | On August 17, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled (Red Double Arch), 1999 – as reflected on Invoice No. 1846. | Invoice No. 1846, Exhibit 94 of Compendium of Evidence, pp. 598-599. |
| 454. | The total amount of the sale on Invoice No. 1846 was $100,000.00. | *Id.* |
| 455. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 456. | On September 17, 2015, $100,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 94 of Compendium of Evidence, pp. 599-560. |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1848** | |
| 457. | On August 25, 2015, Debtor sold one piece of artwork by Alexander Yulish – The Two of Us, 2003 and With Dog, 2015 – as reflected on Invoice No. 1848. | Invoice No. 1848, Exhibit 95 of Compendium of Evidence, pp. 604-605. |
| 458. | The total amount of the sale on Invoice No. 1848 was $49,000.00. | *Id.* |
| 459. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 |

| | | |
|---|---|---|
| | Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 460. | On October 19, 2015, $48,965.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 95 of Compendium of Evidence, pp. 606-607. |

### SEPTEMBER 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2089

| | | |
|---|---|---|
| 461. | On September 3, 2015, Debtor sold two pieces of artwork by Matt Hope – Meltdown, 2008 and Meltdown, 2009 – as reflected on Invoice No. 2089. | Invoice No. 2089, Exhibit 96 of Compendium of Evidence, p. 611. |
| 462. | The total amount of the sale on Invoice No. 2089 was $33,572.00. | *Id.* |
| 463. | Matt Hope and the Debtor are parties to a contract dated September 22, 2006, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Matt Hope (the "Hope Contract"). | Matt Hope Contract at Leslie Decl. II at ¶ 38 (discussing factual foundation regarding Matt Hope contract) and Exhibit S thereto (attaching copy of Matt Hope Contract). |
| 464. | On September 3, 2015, $33,572.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 96 of Compendium of Evidence, p. 512. |

### OCTOBER 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2092

| 465. | On October 10, 2015, Debtor sold two pieces of artwork by Mary Corse – Untitled (White Multiple Inner Band, Beveled) 2012 and Untitled, (White Inner Band), 2003– as reflected on Invoice No. 2092. | Invoice No. 2092, Exhibit 97 of Compendium of Evidence, pp. 615-616. |
| --- | --- | --- |
| 466. | The total amount of the sale on Invoice No. 2092 was $240,000.00 and $21,600.00 for sales tax. | *Id.* |
| 467. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint ECF 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 468. | On September 30, 2015, $240,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 97 of Compendium of Evidence, pp. 617-618. |
| 469. | On November 2, 2015, $7,200.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 97 of Compendium of Evidence, p. 621. |
| 470. | On November 4, 2015, $14,400.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 97 of Compendium of Evidence, pp. 617, 621. |

### ACE GALLERY NEW YORK INVOICE NO. 2093

| 471. | On October 2, 2015, Debtor sold one piece of artwork by Ellsworth Kelly – Block Island II, 1960 – as reflected on Invoice No. 2093. | Invoice No. 2093, Exhibit 98 of Compendium of Evidence, pp. 624, 629. |
| --- | --- | --- |
| 472. | The total amount of the sale on Invoice No. 2093 was $4,800,000.00. | *Id.* |
| 473. | The Ellsworth Kelly artwork was owned by a private collector, and was sold as a secondary art sale using the Debtor's facilities for displaying | Ellsworth Kelly sales documents at Leslie Decl. II at ¶ 45 (discussing factual |

| | | | |
|---|---|---|---|
| | | the artwork and the Debtor's staff and costs for shipping the piece. In addition, internal emails from Debtor discussing the provenance and describing the artwork on Ace Gallery Los Angeles Letterhead were found in Debtors' records | foundation Ellsworth Kelly sale) and Exhibit Z thereto (attaching copy of sales documents). |
| 474. | | On October 5, 2015, $4,800,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 98 of Compendium of Evidence, pp. 625-626. |
| 475. | | On October 5, 2015, $432,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 98 of Compendium of Evidence, pp. 625-626. |
| 476. | | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2093. | Chrismas Deposition, 619:5-623:18; and Exhibits 274-275 attached thereto. |
| | | **EMAIL INVOICE** | |
| 477. | | On October 2, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled (White Multiple Inner Band, Beveled) 2012 – as reflected on the Email Invoice. | Email Invoice, Exhibit 99 of Compendium of Evidence, pp. 631-645. |
| 478. | | The total amount of the sale on the Email Invoice was $95,000.00. | *Id.* |
| 479. | | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 480. | | On October 2, 2015, $95,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Email Invoice, Exhibit 99 of Compendium of Evidence, pp. 631-645; *see* |

| | | *also* Ace NY Bank Records, Exhibit 101 of Compendium of Evidence, p. 652 (Lehmann-Maupin LLC Originator, Transaction No. 8167) (transaction not highlighted). |
|---|---|---|

**NOVEMBER 2015 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY NEW YORK INVOICE NO. 2094**

| 481. | On November 3, 2015, Debtor sold one piece of artwork by Sam Francis – Untitled, 1964 – as reflected on Invoice No. 2094. | Invoice No. 2094, Exhibit 100 of Compendium of Evidence, p. 647. |
|---|---|---|
| 482. | The total amount of the sale on Invoice No. 2094 was $15,000.00. | *Id.* |
| 483. | On January 15, 2015, $15,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 100 of Compendium of Evidence, p. 648. |

**DECEMBER 2015 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY NEW YORK INVOICE NO. 2095**

| 484. | On December 10, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled (White/Yellow Innerband, Beveled) 2015 – as reflected on Invoice No. 2095. | Invoice No. 2095, Exhibit 101 of Compendium of Evidence, p. 651. |
|---|---|---|
| 485. | The total amount of the sale on Invoice No. 2095 was $125,000.00. | *Id.* |
| 486. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary |

| | | by Mary Corse (the "Corse Contract"). | Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 487. | | On December 11, 2015, $125,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 101 of Compendium of Evidence, pp. 652-653. |

### 2016 POST-PETITION SALES AND DEPOSITS

### JANUARY 2016 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2096

| 488. | | On January 4, 2016, Debtor sold one piece of artwork by David Amico –Silver, 2014 – as reflected on Invoice No. 2096. | Invoice No. 2096, Exhibit 102 of Compendium of Evidence, p. 656. |
| 489. | | The total amount of the sale on Invoice No. 2096 was $36,000.00. | *Id.* |
| 490. | | On January 5, 2016, $36,000.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 102 of Compendium of Evidence, pp. 657-658. |

### ACE GALLERY NEW YORK INVOICE NO. 2097

| 491. | | On January 25, 2016, Debtor sold one piece of artwork by Alexander Yulish – Movement in | Invoice No. 2097, Exhibit 103 of Compendium of |

| | | |
|---|---|---|
| | Time, 2015 – as reflected on Invoice No. 2097. | Evidence, p. 661. |
| 492. | The total amount of the sale on Invoice No. 2097 was $32,427.50. | *Id.* |
| 493. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 494. | On January 25, 2016, $32,427.50 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 103 of Compendium of Evidence, pp. 662-663. |

### ACE GALLERY NEW YORK INVOICE NO. 2098

| | | |
|---|---|---|
| 495. | On January 25, 2016, Debtor sold one piece of artwork by Alexander Yulish – In Limbo, 2015 – as reflected on Invoice No. 2098. | Invoice No. 2098, Exhibit 104 of Compendium of Evidence, p. 666. |
| 496. | The total amount of the sale on Invoice No. 2098 was $32,427.50. | *Id.* |
| 497. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 498. | On January 25, 2016, $32,427.50 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 104 of Compendium of Evidence, pp. 667-668. |

### ACE GALLERY NEW YORK INVOICE NO. 2099

| 499. | On January 25, 2016, Debtor sold one piece of artwork by Alexander Yulish – The Orange Shirt, 2015 – as reflected on Invoice No. 2099. | Invoice No. 2099, Exhibit 105 of Compendium of Evidence, p. 671. |
|---|---|---|
| 500. | The total amount of the sale on Invoice No. 2099 was $32,427.50. | *Id.* |
| 501. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract) |
| 502. | On January 25, 2016, $32,427.50 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 105 of Compendium of Evidence, p. 672. |

### ACE GALLERY NEW YORK INVOICE NO. 2100

| 503. | On January 26, 2016, Debtor sold one piece of artwork by Mary Corse – Untitled (White Diamond, Positive Strip), 1965– as reflected on Invoice No. 2100. | Invoice No. 2100, Exhibit 106 of Compendium of Evidence, p. 675. |
|---|---|---|
| 504. | The total amount of the sale on Invoice No. 2100 was $150,000.00. | *Id.* |
| 505. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 506. | On January 26, 2016, $150,000.00 was deposited | Ace NY Bank Records, |

| | into Ace New York checking account ending in #4773 at City National Bank. | Exhibit 106 of Compendium of Evidence, pp. 676-677. |
|---|---|---|
| | **FEBRUARY 2016 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1881** | |
| 507. | On February 2, 2016, Debtor sold one piece of artwork by Ben Jones – Ladder Series, 2015 – as reflected on Invoice No. 1881. | Invoice No. 1881, Exhibit 107 of Compendium of Evidence, p. 680. |
| 508. | The total amount of the sale on Invoice No. 1881 was $12,000.00. | *Id.* |
| 509. | On March 10, 2016, $12,000.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 107 of Compendium of Evidence, pp. 681-682. |
| | **ACE GALLERY NEW YORK INVOICE NO. 2101** | |
| 510. | On February 23, 2016, Debtor sold one piece of artwork by Peter Alexander – 5/24/15 (Pink Puff), 2015 – as reflected on Invoice No. 2101. | Invoice No. 2101, Exhibit 108 of Compendium of Evidence, p. 685. |
| 511. | The total amount of the sale on Invoice No. 2101 was $73,575.00. | *Id.* |
| 512. | Peter Alexander and the Debtor are parties to a Consignment Agreement dated August 24, 2015, by which the Debtor had the exclusive right thereafter to sell certain consigned artworks by Peter Alexander (the "Alexander Contract"). | Peter Alexander Contract at Leslie Decl. II at ¶ 36 (discussing factual foundation regarding Peter Alexander contract) and Exhibit Q thereto (attaching copy of Peter Alexander Contract). |
| 513. | On February 25, 2012, $73,575.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Ex. 108 of Compendium of Evidence, pp. 686-687. |

| ACE GALLERY NEW YORK INVOICE NO. 2102 | | |
|---|---|---|
| 514. | On February 26, 2016, Debtor sold one piece of artwork by Laurie Lipton – Illusion of Control Tower, 2012 – as reflected on Invoice No. 2102. | Invoice No. 2102, Exhibit 109 of Compendium of Evidence, p. 691. |
| 515. | The total amount of the sale on Invoice No. 2101 was $78,480.00. | *Id.* |
| 516. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 517. | On February 29, 2016, $78,480.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 109 of Compendium of Evidence, pp. 692-693. |

**FACTS RELATED TO DOUGLAS CHRISMAS'S POST-PETITION CONVERSION OF DEBTOR'S PROPERTY THROUGH ACE MUSEUM**

**MR. CHRISMAS ASSERTED THE FIFTH AMENDMENT REGARDING QUESTIONS POSED ABOUT HIS CONVERSION OF FUNDS THROUGH ACE MUSEUM[5]**

| | | |
|---|---|---|
| 518. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that between February 19, 2013 and April 16, 2016 you diverted Debtor Funds to ACE MUSEUM." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 55 and Douglas Chrismas Response to the same). |

**FEBRUARY 2013 POST-PETITION SALES AND DEPOSITS**

| | |
|---|---|
| | |

---

[5] This fact should be incorporated into each of the following transfers related to Ace Museum.

| **ACE GALLERY INVOICE NO. 1554** | | |
|---|---|---|
| 519. | On February 18, 2013, Debtor sold one piece of artwork by Mary Corse – Untitled (Shadow Painting, Black Beveled Series) 1983 – as reflected on Invoice No. 1554. | Invoice No. 1554, Exhibit 110 of Compendium of Evidence, p. 697. |
| 520. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrisman at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 521. | On February 20, 2013, $150,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 110 of Compendium of Evidence, pp. 698-699. |
| **SEPTEMBER 2013 POST-PETITION SALES AND DEPOSITS** | | |
| **ACE GALLERY NEW YORK INVOICE NO. 2025** | | |
| 522. | On September 21, 2013, Debtor sold one piece of artwork by De Wain Valentine – Smoke Grey Column, 1972-75– as reflected on Invoice No. 2025. | Invoice No. 2025, Exhibit 111 of Compendium of Evidence, p. 702. |
| 523. | The total amount of the sale on Invoice No. 2025 was $68,000.00. | *Id.* |
| 524. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De |

| | | |
|---|---|---|
| | "Valentine Contracts"). | Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 525. | On September 9, 2013, $68,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 111 of Compendium of Evidence, pp. 703-704. |

### JULY 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY LOS ANGELES INVOICE NO. 1726

| | | |
|---|---|---|
| 526. | On June 26, 2014, Debtor sold one piece of artwork by Mary Corse – Black Glitter, White Beads, 1975 – as reflected on Invoice No. 1726. | Invoice No. 1726, Exhibit 112 of Compendium of Evidence, p. 708. |
| 527. | The total amount of the sale on Invoice No. 1726 was $175,000.00. | *Id.* |
| 528. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |

| 529. | On July 18, 2014, $175,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 112 of Compendium of Evidence, pp. 709-710. |
|---|---|---|
| | **JUNE 2015 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1819** | |
| 530. | On June 22, 2015, Debtor sold one piece of artwork by Robert Rauschenberg – Joust (Jammer), 1976 – as reflected on Invoice No. 1819. | Invoice No. 1819, Exhibit 113 of Compendium of Evidence, p. 714. |
| 531. | The total amount of the sale on Invoice No. 1819 was $225,000.00. | *Id.* |
| 532. | On June 22, 2015, $200,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 113 of Compendium of Evidence, pp. 715-716. |
| | **AUGUST 2015 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY NEW YORK INVOICE NO. 2088** | |
| 533. | On August 31, 2015, Debtor sold one piece of artwork by Gisela Colon – Slab Ovopoid Glo-Pod (iridescent Orange Pink), 2014; one piece of artwork by Helen Pashgian – Standing Disk, Yellow in Tine; and one piece of artwork by Robert Rauschenberg – Stallion Jammer, 1976 – as reflected on Invoice No. 2088. | Invoice No. 2088, Exhibit 114 of Compendium of Evidence, p. 719. |
| 534. | The total amount of the sale on Invoice No. 2088 was $225,000.00. | *Id.* |
| 535. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon |

| | | |
|---|---|---|
| | | documents). |
| 536. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 537. | On August 31, 2015, $225,000 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 114 of Compendium of Evidence, p. 720-721. |
| | **MARCH 2016 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. K-1012** | |
| 538. | On March 30, 2016, Debtor sold one piece of artwork by Tara Donovan – Colony, 2002; and one piece of artwork by Jonathan Monk – The Moment Before You Realize You Are Not Lost, 2005 – as reflected on Invoice No. K-1012. | Invoice No. K-1012, Exhibit 115 of Compendium of Evidence, p. 725. |
| 539. | The total amount of the sale on Invoice No. K-1013 was $100,000.00. | *Id.* |
| 540. | On March 30, 2016, $100,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 115 of Compendium of Evidence, pp. 726-727. |
| | **FACTS RELATED TO DOUGLAS CHRISMAS'S POST-PETITION CONVERSION OF DEBTOR'S PROPERTY THROUGH 400 S. LA BREA** | |

| | | |
|---|---|---|
| | **MR. CHRISMAS ASSERTED THE FIFTH AMENDMENT REGARDING QUESTIONS POSED ABOUT HIS CONVERSION OF FUNDS THROUGH 400 S. LA BREA[6]** | |
| 541. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that between February 19, 2013 and April 16, 2016 you diverted Debtor Funds to 400 S. LA BREA." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 56 and Douglas Chrismas Response to the same). |
| | **MARCH 2016 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. K-1013** | |
| 542. | On March 30, 2016, Debtor sold one piece of artwork by Mary Corse – Untitled (Black Light Grid Series), 1987 and one piece of artwork by Sylvie Fleury – Life Can Get Heavy Mascara Shouldn't, 1999 -- as reflected on Invoice No. K-1013. | Invoice No. K1013, Exhibit 116 of Compendium of Evidence, pp. 731-734. |
| 543. | The total amount of the sale on Invoice No. K-1013 was $200,000.00. | *Id.* |
| 544. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts |

[6] This fact should be incorporated into each of the following transfers to 400 S. La Brea.

| | | | related to Debtor's interests in her artwork). |
|---|---|---|---|
| 545. | | On April 1, 2016, $114,595.32 was deposited into 400 S. La Brea's account ending in #1679 at Cathay Bank. | 400 S. La Brea Bank Records, Exhibit 116 of Compendium of Evidence, pp. 735-736. |

### FACTS RELATED TO AMOUNTS CONVERTED BY MR. CHRISMAS

| | | | |
|---|---|---|---|
| 546. | | Between the Petition Date and the Effective Date, Defendant Chrismas sold $15,392,536 of Debtor's Art Property, from which proceeds were diverted to non-Debtor entity accounts controlled by Chrismas. The court infers that Chrismas sold Debtor's property and diverted the sales proceeds based on the uncontroverted facts that he was the principal of the Debtor, having management and supervisory control over the Debtor, that he set up a new entity controlled by him, Ace Gallery New York Corporation, right before Debtor filed for bankruptcy, Debtor's property was sold, the sales proceeds from the sales of Debtor's property were diverted to this new entity or to, or on behalf of, another entity controlled by him, Ace Museum, and he has refused to answer questions about these transactions involving the sales of Debtor's property and diversion of the sales proceeds to non-Debtor entities, invoking his Fifth Amendment testimonial privilege against self-incrimination. | Uncontroverted Facts, Nos. 1-545. [7] Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction, ECF 216 ("Kincaid Decl.") at 1-15 and exhibits attached thereto. Declaration of Jennifer E. Ziegler in Support of Plaintiff's Motion for Summary Judgment ("Ziegler Decl. II"), ECF 873, filed on February 12, 2021, at 3-4 and Ziegler Report, Exhibit 1 attached thereto. Ziegler Referenced Exhibit C (Diverted Art Sales Chart). [Corrected] Supplemental Declaration of Jennifer E. Ziegler, CPA, in Support of Motion for Summary |

[7] In support of this uncontroverted fact, Plaintiff cited to the finding in in the court's December 6, 2019 Order on Rule 2004 Motion of Chrismas, Main Bankruptcy Case ECF 2568 ("2004 Order") at 17. The court does not rely upon its prior finding in determining this uncontroverted fact, but the underlying evidence submitted by Plaintiff supporting Uncontroverted Facts, Nos. 1-545, showing the sales of Debtor's artwork for which the sales proceeds were diverted to other non-Debtor entities that Chrismas controlled, based on evidence of specific diversions, including artists' contracts, sales invoices, and bank account statements. The Plaintiff's declaration and the declarations of Plaintiff's accountants, Kincaid and Ziegler, constitute demonstrative evidence in explaining how the evidence shows that the sales proceeds of Debtor's artwork were diverted to non-Debtor entities that Chrismas controlled.

| | | | Judgment on Plaintiff's Claims for Conversion and Breach of Fiduciary Duty against Defendant Douglas Chrismas ("Ziegler Decl. III"), ECF 1196, filed on December 20, 2021, at 3-4 and Ziegler Report, Exhibit 1 attached thereto. |
| | | | Declaration of Sam S. Leslie in Support of Plaintiff's Motion for Summary Judgment ("Leslie Decl. II"), ECF 872, filed on February 12, 2021, at ¶¶ 2-53 and Exhibit D thereto (Diverted Art Sales Chart). |
| 547. | | There were six invoices for the sale of Debtor's artwork reflecting sales proceeds totaling $918,000 that were deposited directly into City National Bank account #6347 owned by Ace Museum, Defendant Chrismas's controlled entity. | Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto, at 19 (internal page citation). Ziegler Decl. III at 3, 5 and Ziegler Report, Exhibit 1 attached thereto, at 19 (internal page citation). Leslie Decl. II at ¶¶ 20 and 21 and Exhibit D thereto (Diverted Art Sales Chart). |
| 548. | | Two pieces of art, created by artists with signed contracts with the Debtor, were sold to a client for $200,000 with instructions to make one check payable to 400 S. La Brea LLC, Ace Museum's landlord, a non-Debtor entity, for $114,595.32 and one check payable to Ace Gallery for $85,404.68. | Leslie Decl. II at ¶¶ 20 and 21 and Exhibit D thereto (Diverted Art Sales Chart). Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto, at 19-20 (internal page citations). Ziegler Referenced Exhibit C (Diverted Art Sales Chart). Ziegler Decl. III at 5-6 and Ziegler Report, Exhibit 1 attached thereto, at 19-20 (internal page citation). |
| | | | |

| 549. | The diverted funds were not used to benefit the Debtor, but to pay for Chrismas's personal obligations, including monthly rent of non-Debtor Ace Museum, Defendant Chrismas's controlled entity. | Uncontroverted Facts, Nos. 1-545. |
|------|------|------|
| | | Declaration of Sam Leslie in Support of Plaintiff's Ex Parte Application of Sam Leslie, Plan Agent, ECF 73 ("Leslie Decl. I"), ¶ 6. |
| | | Kincaid Decl. at ¶¶ 69, 70. |
| | | Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto. |
| | | Ziegler Decl. III at 3-4 and Ziegler Report, Exhibit 1 attached thereto. |
| 550. | Proceeds from sales of Debtor's property was diverted to "repay" non-Debtor Ace Museum's debt to the Debtor, that is, funds were diverted to Ace Museum and then paid to Debtor to reduce the amount of the alleged loan indebtedness of Ace Museum to Debtor on Debtor's books and records. | Uncontroverted Facts, Nos. 1-545. |
| | | Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto, at 21-26 (internal page citations). |
| | | Ziegler Decl. III at 3-6 and Ziegler Report, Exhibit 1 attached thereto, at 21-26 (internal page citations). |
| | | Declaration of Jennifer Ziegler in Support of Plaintiff's Motion to Interpret Confirmation Order and Confirmed Plan ("Ziegler Decl. I"), ECF 542, filed on March 21, 2019, at ¶¶ 10-14 |
| 551. | Debtor suffered $14,242,884[8] in damages by | Uncontroverted Facts, Nos. |

---

[8] Chrismas is liable to the Debtor for $14,243,884 of damages he caused the debtor to incur. Regarding his conversion claim, the Plan Agent asserts Chrismas is liable to the Debtor for $15,392,536 of damages he caused the debtor to incur. This was the gross amount of the funds from sales of the Debtor's assets diverted to non-debtor parties as determined by the Plan Agent's expert witness, Jennifer Ziegler, as detailed in her report at 21 ($14,359,941 to Ace Gallery New York Corporation and Inc., $918,000 to Ace Museum and $114,595 to 400 South La Brea, LLC). However, as discussed in her report at 21-23, Ziegler made adjustments in the gross amount of diverted sales proceeds to account for additional diversions of Debtor's DIP (Debtor in Possession) and other loan proceeds ($916,822 to Ace Museum and $2,614,862 to Ace Gallery New York

*(continued)*

| | having funds representing the sales of its artwork assets by Defendant Chrismas diverted to accounts other than its own, namely, the sales of Debtor's property with the sales proceeds being diverted to, or on their behalf of, non-Debtor entities controlled by Defendant Chrismas, Ace Gallery New York Corporation and Ace Museum (e.g., rent payments on behalf of Ace Museum to its landlord, 400 South La Brea, LLC). | 1-545; Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto. Ziegler Referenced Exhibit C (Diverted Art Sales Chart). Ziegler Decl. III at 3-4 and Ziegler Report, Exhibit 1 attached thereto, at 21-26 (internal page citations). |
|---|---|---|

### ADDITIONAL FACTS RE: BREACH OF FIDUCIARY DUTY

| 552. | Chrismas caused the transfer of funds into the Debtor's operating account of over $250,000 immediately before turnover of control of the Debtor's bankruptcy estate to the Plan Agent pursuant to the confirmed Plan of Reorganization, depriving the Plan Agent of any operating funds to manage the Reorganized debtor. | Leslie Decl. II, ¶ 5. Status Report and Declaration of Sam S. Leslie in Support Thereof, ECF 2478, Main Bankruptcy Case, at 4, 5, 24 and Exhibit A. |
|---|---|---|
| 553. | Chrismas knowingly signed the Monthly Operating Reports filed and submitted to this Court in this bankruptcy case on behalf of the Debtor with falsified important account balances. | Ziegler Decl. I at ¶¶ 6 and 9. |
| 554. | Debtor's Monthly Operating Reports signed by | Ziegler Decl. I at ¶¶ 15-16. |

Corporation for a total of $3,531,684) and further diversions of funds from the Debtor in transfers to Ace Museum ($322,180) and Ace Gallery New York Corporation ($20,000) for a total of $342,180, and to account for repayments of the Debtor's DIP loans by transfers back from Ace Gallery New York Corporation ($68,257 and $421,186) for a total of $489,443 and other transfers to Debtor by Ace Museum ($1,434,692) and Ace Gallery New York Corporation ($4,533,072) for a total of $5,967,764. Based on her analysis in her report at 22, reflecting these adjustments, Ziegler computed that the net Debtor's funds not returned totaled $12,809,192. The court adjusts this net amount of diverted funds of $12,809,192 upwards by the amount of $1,434,692 repaid by Ace Museum to the Debtor, which was credited against the outstanding loan by the Debtor to Ace Museum because Ace Museum should not be credited with a repayment of its loan for this amount because these funds were Debtor's sales proceeds, that is, Ace Museum was using Debtor's money to repay its loan to the Debtor as explained by Ziegler in her report at 21-22 based on her prior analysis in her declaration dated March 6, 2019. Thus, the court determines that the amount of damages suffered by the Debtor from the conversion of its funds by Chrismas is $14,243,884.

| | | Chrismas and filed in this bankruptcy case indicated an increase in accounts receivable of $4.3 Million, most of which was invalid because it had already been paid by buyers. | |
|---|---|---|---|
| 555. | | Debtor's Monthly Operating Reports signed by Chrismas and filed in this bankruptcy case contained a falsified reduction in Debtor's notes receivable in the Monthly Operating Reports by transferring Debtor's own diverted funds back to the Debtor and recording the transfers as payments from Ace Museum to the Debtor. | Ziegler Decl. I at ¶ 10. |

### OTHER FACTS RELATED TO CHRISMAS'S ASSERTION OF THE FIFTH AMENDMENT

| | | | |
|---|---|---|---|
| 556. | | During his deposition, Mr. Chrismas asserted the Fifth Amendment to questions related to Ace Gallery and Debtor's bankruptcy. | Uncontroverted Facts, Nos. 1-545; Declaration of Victor Sahn Submitted in Support of Motion for Summary Judgment ("Sahn Decl.") ¶¶ 1-11; Exhibits 9, 10 and 11. |
| 557. | | Mr. Chrismas asserted the Fifth Amendment in response to discovery served on him. | Uncontroverted Facts, Nos. 1-545; Sahn Decl. ¶ 1, Exhibits 3, 4, 5, and 6. |
| 558. | | Mr. Chrismas refused to answer questions about the ownership of the proceeds from the sale of artwork rightfully belonging to Debtor and asserted the Fifth Amendment as the basis for his refusal to answer. | Uncontroverted Facts, Nos. 1-545; Sahn Decl. (August 7, 2019 Volume I Chrismas Deposition) at Exhibit 7 at 207, 4-10. |
| 559. | | Mr. Chrismas refused to answer questions about the ownership of proceeds from the sales of Debtor's artwork assts used to pay Ace Museum's rent and asserted the Fifth Amendment as the basis for his refusal to answer. | Uncontroverted Facts, Nos. 1-545; Sahn Decl. (August 7, 2019 Volume I Chrismas Deposition) at Exhibit 7 at 179, 5-12; *id*. at 258:19-259:1; *id.* at 280:19-281:11. |
| 560. | | Mr. Chrismas refused to answer questions regarding his diversion of sales proceeds from | Uncontroverted Facts, Nos. 1-545; |

| 1 2 3 | sales of artwork assets belonging to the Debtor into the Ace Gallery New York accounts and asserted the Fifth Amendment as the basis for his refusal to answer. | Sahn Decl. (August 7, 2019 Volume I Chrismas Deposition.) at Exhibit 7 at 280:19-281:11. |
|---|---|---|

**NO EVIDENCE OFFERED IN OPPOSITION TO THE EVIDENCE OFFERED**

**REGARDING THE CLAIMS FOR CONVERSION AND BREACH OF FIDUCIARY DUTY**

| 561. | There was no evidence offered to dispute or raise a triable issue of fact regarding the Plan Agent's claims for Conversion and Breach of Fiduciary Duty in the Plan Agent's Summary Judgment Motion. | *See* Opposition to (related document(s): [870] Motion For Summary Judgment (With Proof of Service) filed by Counter-Defendant Sam S. Leslie, Plan Agent for Post-Confirmation Debtor Art & Architecture Books of the 21st Century filed by Douglas Chrismas, Docket No. 913; *See* Declaration of Jonathan S. Shenson in Support of Opposition to MSJ by Plan Agent Filed by Defendant Douglas Chrismas, Docket No. 914; *See* Declaration of Jonathan S. Shenson in Support of Opposition to MSJ by Plan Agent Filed by Defendant Douglas Chrismas, Docket No. 915; *See* Opposition to Motion for Summary Judgment of Plaintiff Sam S. Leslie, filed by 400 South La Brea LLC, Daryoush Dayan, Kamran Gharibian, and Michael D. Smith, Docket No. 910; *See* Statement of 400 South La Brea Defendants of the Genuine Issues in Support of Opposition of 400 South La Brea Defendants to Plan Agent's Motion for Summary Judgment on Conversion and Breach of |
|---|---|---|

| | | Fiduciary Duty, Docket no. 911; *See* Statement of Genuine Issues for Opposition to Motion by Plan Agent for MSJ Filed by Defendant Douglas Chrismas, Docket No. 916; *See* Notice of lodgment of Transcript of Deposition of Sam S. Leslie relating to Opposition to Plan Agent's MSJ Filed by Defendant Douglas Chrismas, Docket No. 917. |

## CONCLUSIONS OF LAW

| NO. | CONCLUSIONS OF LAW | SUPPORTING AUTHORITY |
|---|---|---|
| 562. | This United States Bankruptcy Court has "related-to" jurisdiction and may properly issue findings of fact and conclusions of law to be submitted to the District Court for de novo review and entry of final judgment. | 28 U.S.C. §1334(b); 11 U.S.C. § 157(c)(1); *Executive Benefits Insurance Agency v. Arkison,* 573 U.S. 25, 37-40 (2014); *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1436 (9th Cir. 1995). |
| 563. | This United States Bankruptcy Court specifically retained post-confirmation jurisdiction over the three adversary proceedings that were consolidated within the present Complaint. | Section 16.1 of the Modified Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors, confirmed on March 18, 2016, Main Bankruptcy Case, ECF 1858. |

### ASSERTION OF THE FIFTH AMENDMENT

| NO. | | |
|---|---|---|
| 564. | In each instance where Chrismas has asserted a Fifth Amendment right against self-incrimination, this Court may draw a negative inference that Chrismas is unable to deny the fact or allegation where, as here, there was a substantial need for the information withheld by Chrismas in asserting the privilege, there is not a less burdensome way to obtain such information, and there is independent evidence corroborating the facts asserted by Plaintiff as | *U.S. Securities & Exchange Commission v. Fujinaga*, 698 Fed.Appx. 865, 867 (9th Cir. 2017); *Nationwide Life Insurance Co. v. Richards,* 541 F.3d 903, 912 (9th Cir. 2008); |

| | | |
|---|---|---|
| | constituting acts of conversion and breach of fiduciary duty. . | *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997). |
| 565. | The Court may strike any testimony Chrismas offers on topics to which he has asserted the Fifth Amendment privilege, because allowing him to testify now would be allowing him to mutilate the truth. Accordingly, Chrismas may not testify as to the ownership of the Debtor Artwork. | *U.S. v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 642 (9th Cir. 2012);<br><br>*U.S. v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1277 (10th Cir. 2008). |

**FAILURE TO NAME AN EXPERT**

| | | |
|---|---|---|
| 566. | Due to Chrismas's failure to comply with Fed.R.Civ.P. 26(a), he may not now name an expert to refute Ms. Ziegler's findings. | *ClearOne Communications, Inc. v. Biamp Systems*, 653 F.3d 1163, 1176 (10th Cir. 2011). |

**CONCLUSIONS OF LAW RE: CONVERSION**

| | | |
|---|---|---|
| 567. | The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. | *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015). |
| 568. | It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. | *Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489, 1507 (2008). |
| 569. | Any act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion. | *Plummer v. Day/Eisenberg, LLP,* 184 Cal.App.4th 38, 50 (2010). |
| 570. | Artwork owned by the Debtor and rights of consignment of artworks are tangible and intangible personal property owned by the Plaintiff, susceptible to conversion. | *Don King Productions/ Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995);<br><br>*Welco Electronics, Inc. v. Mora*, 223 Cal.App.4th 202, 209 (2014). |
| 571. | Neither an intention to return property to the rightful owner nor actual return of property to the rightful owner is relevant to a determination of liability for conversion of property. | *Los Angeles Federal Credit Union v. Madatyan,* 209 Cal.App.4th 1383, 1387 (2012);<br><br>*Bradley v. Becerra*, Case No. CV 20-6479-ODW (KK), 2020 WL 7407918, at * 9 (C.D. Cal. 2020). |
| 572. | The basis of a conversion action "rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results." | *Los Angeles Federal Credit Union v. Madatyan,* 209 Cal.App.4th 1383, 1387 (2012). |

| 573. | The disposal of the Debtor's property through unauthorized sale and diversion of proceeds for non-Debtor purposes is cognizable injury and damage. | *MTC Electronic Technologies Co., Ltd. v. Leung*, 889 F.Supp. 396, 403 (C.D. Cal. 1995); *Cerra v. Blackstone*, 172 Cal.App.3d 604, 609 (1985). |
|---|---|---|
| 574. | Chrismas wrongfully converted valuable property and rights owned by the Debtor, causing damage to the Debtor. | *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015). Uncontroverted Facts, Nos. 1-545. |
| 575. | Chrismas is liable to the Debtor for $14,243,884 of damages he caused the debtor to incur. | *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015); Uncontroverted Facts, Nos. 1-561. |

### CONCLUSIONS OF LAW RE: BREACH OF FIDUCIARY DUTY

| 576. | The existence and scope of a fiduciary duty are questions of law. | *Kirschner Brothers Oil, Inc. v. Natomas Co.,* 185 Cal.App.3d 784, 790 (1986) |
|---|---|---|
| 577. | A Debtor-in-Possession is a fiduciary to the estate and its creditors. | *Thompson v. Margen (In re McConville)*, 110 F.3d 47, 50 (9th Cir. 1997); *In re Pacific Forest Industries, Inc.*, 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989). |
| 578. | Officers and directors of Debtors-in-Possession owe fiduciary duties to the Debtor-in-Possession and its creditors. | *In re Intermagnetics America, Inc.*, 926 F.2d 912, 917 (9th Cir. 1991); *In re Anchorage Nautical Tours, Inc.*, 145 B.R. 637, 643 (9th Cir. BAP 1992). |
| 579. | As the admitted primary officer of the Debtor, Chrismas owed fiduciary duties to the Debtor and to the creditors of the Debtor's bankruptcy estate. | *Id.;* Uncontroverted Fact, No. 1. |
| 580. | An agent has a duty not to use the property of the principal for the agent's own purposes or those of a third party. | Restatement (Third) of Agency, § 8.05. |
| 581. | Chrismas violated his fiduciary duty by entering into transactions that benefitted himself and non-Debtor third parties to the detriment of the Debtor. | Restatement (Third) of Agency, § 8.02; *Xum Speegle, Inc. v. Fields,* 216 Cal.App.2d 546, 554 (1963); Uncontroverted Facts, Nos. 1-561. |

| | | | |
|---|---|---|---|
| 1<br>2 | 582. | Chrismas's transfer of funds of about $250,000 into the Debtor's bank account before turning over the bankruptcy estate to Plaintiff was a breach of fiduciary duty to the Debtor. | *Id.* |
| 3<br>4 | 583. | Chrismas's signing and filing false Monthly Operating Reports submitted to the Court from February 28, 2013 to November 30, 2013 was a breach of fiduciary duty to the Debtor. | *Id.* |
| 5<br>6 | 584. | Chrismas's diverting the sales proceeds of Debtor's artwork assets for the benefit of Chrismas and non-Debtor third parties was a breach of fiduciary duty to the Debtor. | *Id.* |

**CONCLUSIONS OF LAW REGARDING CHRISMAS'S STATEMENT OF GENUINE ISSUES**

| | | | |
|---|---|---|---|
| 585. | The issue raised by defendant Chrismas whether the court can accept the Ziegler Report as subject to a rebuttal process (ECF 916) is not a genuine issue of material fact as Chrismas does not identify in his statement of genuine issues or otherwise submit admissible evidence in opposition to the Ziegler Report as required by Federal Rule of Civil Procedure 56(c) and Local Bankruptcy Rules 7056-1(c) and 9013-1(i). The opposing party must direct the court's attention to specific, triable facts by "citing to particular parts of materials in the record." [FRCP 56(c)(1)(A). | Fed. R. Civ. P. 56(c) (The opposing party must direct the court's attention to specific, triable facts by "citing to particular parts of materials in the record" pursuant to Fed. R. Civ. P. 56(c)(1)(A)); Fed. R. Bankr. P. 7056; Local Bankruptcy Rules 7056-1 and 9013-1(i). |
| 586. | The issue raised by defendant Chrismas whether the court should reject the Plan Agent's attempts to inject into this action its order in the bankruptcy case denying defendant Chrismas's Rule 2004 motion (ECF 916) is not a genuine issue of material fact as the court does not consider its order as relevant to this matter. | Memorandum Decision and Order thereon on Motion of Douglas Chrismas for Order Pursuant to Bankruptcy Rule 2004 and Bankruptcy Code Sections 105 and 1142, Main Bankruptcy Case ECF 2568 and 2569, filed and entered on December 6, 2019. The court's decision is also cited as *In re Art & Architecture Books of the 21st Century, Inc.,* 2019 WL 9243053 (Bankr. C.D. Cal. Dec. 6, 2019). |
| 587. | The issue raised by defendant Chrismas whether the conversion claim fails as a matter of law because the Plan Agent alleges that he, as opposed to the Debtor, did not consent to use of the debtor's property to fund rent payment for Ace Museum (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. | 11 U.S.C. §§ 363 (authorization to use bankruptcy estate property out of the ordinary course of business requires court approval), 704, 1106 and 1107 (debtor in possession has fiduciary duty to creditors with respect to use of bankruptcy estate property, and unauthorized use of such |

| | | | property is a breach of this fiduciary duty). |
|---|---|---|---|
| 588. | | The issue raised by defendant Chrismas whether his actions are imputed to the debtor as a matter of law (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. | The court rejects the defense raised by Chrismas that any alleged misconduct by him as the sole person in control of debtor is imputed to the postconfirmation Reorganized Debtor. Memorandum Decision and Order thereon on Motion of Douglas Chrismas for Order Pursuant to Bankruptcy Rule 2004 and Bankruptcy Code Sections 105 and 1142, Main Bankruptcy Case ECF 2568 and 2569, filed and entered on December 6, 2019. Although there is apparently no definitive case law in the Ninth Circuit regarding whether the so-called in pari delicto defense may be asserted against a bankruptcy trustee, or here, the plan agent, as to the bad acts of prior management post-petition, as recognized by the court in *C&S Wholesale Grocers, Inc. v. Delano Retail Partners, LLC* (*In re Delano Retail Partners, LLC*), 2014 WL 4966476, slip op. at *3-6 (Bankr. E.D. Cal. 2014), this court finds persuasive the Third Circuit's decision and opinion in *In re Personal and Business Insurance Agency*, 334 F.3d 239 (3d Cir. 2003), which held that under the doctrine of imputation, or in pari delicto, the bad acts of a debtor's principal could only be imputed to a bankruptcy trustee in the case of prepetition acts relating to a prepetition claim brought into the bankruptcy estate under 11 U.S.C. § 541, but rights arising under the Bankruptcy Code, such as avoidance claims for fraudulent transfer under 11 U.S.C. § 548, which are not brought into the bankruptcy estate by virtue of |

11 U.S.C. § 541, may not be affected by imputation. *Id.*, citing *In re Personal and Business Insurance Agency*, 334 F.3d at 242-247 (citing and distinguishing *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001), involving prepetition claims brought into the estate under 11 U.S.C. § 541 to hold that the so-called "sole actor exception" does not apply to rights arising under other provisions of the Bankruptcy Code, i.e., 11 U.S.C. § 548). The acts of Chrismas as the person in control of the Debtor-in-Possession during the post-petition administration of the Chapter 11 bankruptcy case are not prepetition acts relating to a prepetition claim brought into the bankruptcy estate under 11 U.S.C. § 541, and therefore, do not implicate the doctrine of imputation, so that any bad acts by him are imputed to the Reorganized Debtor and the Plan Agent. *Id.*; *see also, Notinger v. Migliaccio (In re Financial Resources Mortgage, Inc.)*. 454 B.R. 6, 24 (Bankr. D. N.H. 2011) ("Courts have reasoned that it is inequitable to impute a debtor's bad conduct to a trustee who comes to the court with clean hands to pursue claims on behalf of innocent creditors."), citing inter alia, *In re Personal & Business Insurance Agency*, 334 F.3d at 246-247 and *Cooper v. United States*, 362 F.Supp.2d 649, 656 (W.D.N.C. 2005)("Imputing the bad acts of the debtor onto the bankruptcy trustee in the present case renders a categorically inequitable result, that is, the innocent victimized creditors get

| | | | |
|---|---|---|---|
| | | | nothing."). |
| 589. | | The issue raised by defendant Chrismas whether there was a lack of assent by the Debtor (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. | Whether the Debtor consented to the conversion of its assets by Chrismas presents the same issue and concern raised by Chrismas's imputation argument addressed in the preceding entry. |
| 590. | | The issue raised by defendant Chrismas whether the conversion claim is barred by the doctrine of in pari delicto (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code. | Whether the Plan Agent's conversion claim against defendant Chrismas is barred by the doctrine of in pari delicto presents the same issues and concerns raised by Chrismas's imputation and consent arguments addressed in the preceding entries. |
| 591. | | The issue raised by defendant Chrismas whether he knowingly acted against the Debtor's interest or acted on behalf of a party whose interests were adverse to the Debtor. | Whether Chrismas's defense against the Plan Agent's conversion claim that he did not knowingly act against the Debtor's interest presents the same issues and concerns raised by Chrismas's imputation, consent and in pari delicto arguments addressed in the preceding entries. Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. |
| 592. | | The issue raised by defendant Chrismas whether his actions are imputed to the debtor as a matter of law (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. | Whether Chrismas's defense against the Plan Agent's conversion claim that he did not knowingly act against the Debtor's interest presents the same issues and concerns raised by Chrismas's imputation, consent and in pari delicto arguments addressed in the preceding entries. Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. |

| 593. | The issue raised by defendant Chrismas whether the subject claims for conversion and breach of fiduciary duty were released on grounds that he achieved certain milestones under the so-called Committee-Museum Stipulation Order (Adversary Proceeding No. 2:14-ap-01771, ECF 28) (ECF 950 and 1021) is not a genuine issue of material fact as Chrismas does not offer admissible evidence in opposition to the Ziegler Report as required by Federal Rule of Civil Procedure 56(c). | Fed. R. Civ. P. 56(c). |
|---|---|---|

### CONCLUSIONS OF LAW RE: APPLICABILITY OF RULING TO OTHER PARTIES

| 594. | Because Plaintiff's Motion for Summary Judgment on Conversion and Breach of Fiduciary Duty Against Douglas Chrismas seeks entry of summary judgment against Douglas Chrismas and no other party, the motion does not seek relief against other parties, the other parties retain their rights to defend against any factual or legal allegations that may be the subject of the motion. | *See In re Flashcom, Inc.,* 361 B.R. 519, 522-527 (Bankr. C.D. Cal. 2007) (parties have a constitutional right to defend claims asserted against them before they can be deprived of their property), *affirmed,* 503 B.R. 99 (C.D. Cal. 2013), *affirmed,* 647 Fed.Appx. 689 (2016). |
|---|---|---|
| 595. | The court makes no determination of the applicability of the preclusive effect of the ruling on the motion since such applicability is not before the court at this time. | *Id.* *See also, e.g., Khaligh v. Hadaegh (In re Khaligh),* 338 B.R. 817, 824-825 (9th Cir. BAP 2006). |

Plaintiff's claims in his complaint against Defendant Chrismas for conversion and breach of fiduciary duty are discrete claims separate and apart from the other claims in this adversary proceeding, and therefore, the Bankruptcy Court recommends that the United States District Court expressly determine that there is no just reason for delay and that the District Court may and should direct entry of final judgment on these claims pursuant to Federal Rule of Civil Procedure 54(b) made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7054.

IT IS THEREFORE RECOMMENDED by the United States Bankruptcy Court that for the foregoing reasons, the United States District Court accept this Report and Recommendation, adopt the above-stated statement of uncontroverted facts and conclusions of law, and grant the motion for summary judgment. This Report and Recommendation containing the findings of uncontroverted

1  facts and recommended conclusions of law are submitted to the United States District Judge

2  assigned to the case, pursuant to the provisions of 28 U.S.C. § 157(c)(1) and Federal Rule of

3  Bankruptcy Procedure 9033. Accordingly, within fourteen days after being served with these

4  findings and recommendations, any party may file written objections with the court and serve a copy

5  on all parties. Such a document should be captioned "Objections to Bankruptcy Court's Report and

6  Recommendation." Failure to file objections within the specified time may waive the right to object

7  to this Report and Recommendation.  Federal Rule of Bankruptcy Procedure 9033; *In re Delano*

8  *Retail Partners, LLC,* No. 11-37711-B-7, Adv. No. 13-2250-B, 2014 WL 4966476, slip op. at *13

9  (Bankr. E.D. Cal. Sept. 29, 2014), *citing, Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.1998) and

10  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

11       IT IS SO ORDERED.

12                          ###

13

14

15

16

17

18

19

20

21

22

23

24  Date: February 16, 2022

25                                           Robert Kwan
                                         United States Bankruptcy Judge

26

27

28

RECORDING REQUESTED BY

Sam S. Leslie

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME Sam S. Leslie

STREET ADDRESS

1130 S. Flower Street  #312

CITY, STATE &
ZIP CODE

LOS ANGELES, CA 90015

**SPACE ABOVE FOR RECORDER'S USE ONLY**

# ABSTRACT OF JUDGMENT

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

*WHEN RECORDED MAIL TO:*
Carolyn A. Dye (SBN 97527)
Law Office of Carolyn A. Dye
15030 Ventura Blvd. Ste 527
Sherman Oaks, CA 91403

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY | CASE NUMBER: |
|---|---|
| PLAINTIFF(S), | CV 22-01265-PA |
| v. | |
| DOUGLAS CHRISMAS ET AL | **ABSTRACT OF JUDGMENT/ORDER** |
| DEFENDANT(S). | |

I certify that in the above-entitled action and Court, Judgment/Order was entered on May 4, 2022

in favor of Sam S. Leslie Plan Agent for Art and Architecture Books of the 21st Century

whose address is 11130 S. Flower Street #312 Los Angeles CA 90015

and against Douglas Chrismas

whose last known address is 736 Ogden Drive Apt. 401, Los Angeles CA 90036

for $ 14,243,884.00        Principal,    $ at judgment rate    Interest,    $ 0                        Costs,

and $ 0                        Attorney Fees.

ATTESTED this ___23ʳᵈ___ day of ___August___, 2024.

Judgment debtor's driver's license no. and state; _____ (last 4 digits) ☑ Unknown.

Judgment debtor's Social Security number; _____ 5056 _____ (last 4 digits) ☐ Unknown.

☑ No stay of enforcement ordered by Court

☐ Stay of enforcement ordered by Court, stay date ends _____

Judgment debtor's attorney's name and address and/or
address at which summons was served:

Jennifer Williams, Suma LLP (current atty)

1010 Sycamore Ave. #117

South Pasadena Ca 91030

CLERK, U.S. DISTRICT COURT

By _____

Deputy Clerk

1257

MEGAN ZARI

*NOTE: JUDGMENTS REGISTERED UNDER 28 U.S.C. §1963 BEAR THE RATE OF INTEREST OF THE DISTRICT OF ORIGIN
AND CALCULATED AS OF THE DATE OF ENTRY IN THAT DISTRICT.*

G-18 (03/12)                              ABSTRACT OF JUDGMENT/ORDER

cc:USBC

JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

IN RE DEBTOR ART &
ARCHITECTURE BOOKS OF THE
21ˢᵗ CENTURY

SAM LESLIE, PLAN AGENT FOR
ART & ARCHITECTURE BOOKS OF
THE 21st CENTURY,

     Plaintiff,

     v.

ACE GALLERY NEW YORK
CORPORATION, a California
corporation; ACE GALLERY NEW
YORK, INC., a dissolved New York
corporation; ACE MUSEUM,
a California corporation; DOUGLAS
CHRISMAS, an individual; 400 S. LA
BREA, LLC, a California limited
liability company, JENNIFER KELLEN,
an individual, CATHAY BANK, a
California corporation, DARYOUSH
DAYAN, an individual, KAMRAN
GHARIBIAN, an individual, and
MICHAEL D. SMITH, an individual,

     Defendants.

No.  CV 22-01265 PA

USBC Central District of California
Los Angeles, 2:13-bk-14135-RK
2:15-ap-01679-RK

JUDGMENT

400 S. La Brea, LLC, a California limited liability company,

Cross-Complainant,

v.

ACE GALLERY NEW YORK CORPORATION, a California corporation; ACE GALLERY NEW YORK, INC., a dissolved New York corporation; ACE MUSEUM, a California corporation; DOUGLAS CHRISMAS, an individual; SAM LESLIE as TRUSTEE OF THE PLAN TRUST FOR ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,

Cross-Defendants.

In accordance with the Court's May 3, 2022 orders, in which the Court granted summary judgment in favor of Plaintiff Sam S. Leslie, in his exclusive capacity as Plan Agent for Debtor, on Plaintiff's claims for conversion and breach of fiduciary duty against Defendant Douglas Chrismas, and found entry of judgment appropriate pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Judgment shall be entered in the sum of $14,243,884 in favor of Plaintiff and against Defendant Douglas Chrismas; and

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Plaintiff shall recover his costs of suit.

DATED:  May 3, 2022

Percy Anderson
UNITED STATES DISTRICT JUDGE

-2-

**Victor A. Sahn, Esq.**

**1875 Century Park East, 19th Floor**

**Los Angeles, CA 90067**

The Honorable Mark Scarsi
United States District Court
First Street Courthouse
350 W. 1st Street, Courtroom 7C
Los Angeles, CA 90012

Re:    United States of America v. Douglas J. Chrismas
       Case No. 2:21-CR-00127-MCS

Dear Judge Scarsi:

      I write to you with regard to the upcoming sentencing hearing for Douglas J. Chrismas ("Defendant") in *United States of America v. Douglas J. Chrismas*, Case No. 2:21-CR-00127-MCS ("Criminal Case").

      I am an attorney at law and have been licensed to practice law in California since 1981. During almost the entirety of this time, my law practice has been heavily concentrated in the areas of Commercial Bankruptcy and Business Litigation. In connection with the Bankruptcy Case that gave rise to the claims against the Defendant, known as "Art & Architecture Books ("Debtor") of the 21st Century" ("Bankruptcy Case" or "Case"), I represented the Creditors Committee in that Case from approximately April 2013 until April 2016. I then represented Sam Leslie, as Plan Agent under the confirmed Reorganization Plan in the Bankruptcy Case which was proposed, filed, and confirmed by my client, the Creditors Committee. My position representing Mr. Leslie was as his Special Litigation Counsel from approximately April 2016 when the confirmed Reorganization Plan in the Bankruptcy Case became effective until approximately December 2021. Nearly the entire focus of my representation of Mr. Leslie was in recovering the illegal "transfers" of property of the Debtor from the Debtor to Mr. Chrismas (through his wholly-owned and controlled entity Ace New York), and then from Mr. Chrismas to certain third parties, which took place almost entirely after the filing of the Chapter 11 Case with the Bankruptcy Court. Three of those transfers gave rise to the criminal complaint in the Criminal Case against Mr. Chrismas and his conviction on three separate counts of embezzlement as detailed in the "Proposed Jury Instruction Re: Counts (Docket No. 169 in the Criminal Case) ("Conviction").

      The conduct of Mr. Chrismas like that which resulted in the Conviction has caused egregious harm to multiple parties in this Bankruptcy Case. The illegal transfers

that he made during the Bankruptcy Case, from approximately February 13, 2013, through April 6, 2016, before Mr. Leslie took over operations and discovered that fraud that was committed totaled **$15,392,536.00** ("Embezzled Funds").

Exhibit "1" to this correspondence is "Declaration of Jennifer E. Ziegler in Support of Plaintiff's Notice of Motion and Motion: (1) to Interpret Confirmation Order and Confirmed Plan; and (2) To Vacate Order Approving Stipulation with Ace Museum, and Strike Stipulation from the Docket Pursuant to FRBP 9024 and FRCP 60(d)(3)" which concerned Ms. Ziegler's investigation of the transaction between the Chapter 11 Debtor, Douglas Chrismas and Ace New York. The report attached to Ms. Ziegler's Declaration is more than two-hundred pages and has not been attached here, however, her report and this Declaration resulted in the Bankruptcy Court ultimately awarding judgment against Mr. Chrismas for Conversion and Breach of Fiduciary Duty in the amount of **$14,243,884** ("Conversion Judgment"). *See Adversary Number 2:15-ap-01679-RK, Docket No. 1244.* The Court's attention is directed to the sixth page of the Declaration from lines 13-21 (highlighted) regarding the total misappropriations of funds during the Chapter 11 case by Mr. Chrismas. The Court's attention is directed to the ninth page of Ms. Ziegler's declaration from lines 10-14 (highlighted) regarding the intentionally inaccurate information regarding the "notes receivable" from Ace New York to the Chapter 11 Debtor shown on **33 of 36** of the Debtor's Monthly Operating Reports, all of which were signed by Mr. Chrismas under the penalty of perjury.

The exact transactions which were found in Counts 1, 2, and 3 by the jury before this Court where Mr. Chrismas was adjudged guilty of three counts of embezzlement are included among the approximately 180 separate transactions reviewed in Ms. Ziegler's forensic accounting report which the Bankruptcy Court exhaustively analyzed in finding Mr. Chrismas responsible for the Conversion judgment. In short, there were 180 other transactions engaged in by Mr. Chrismas where he was found responsible by the Bankruptcy Court for embezzling funds equaling $14,243,884. The criminality engaged in by Mr. Chrismas during the Bankruptcy Case is much more far-reaching than the three transactions which served as the basis for the jury's finding in this Criminal Case of guilt on all three counts.

Mr. Chrismas' fraudulent conduct was not limited to conversion of bankruptcy estate property in terms of his embezzlement of the proceeds of sales of art which artwork and proceeds therefrom were the Debtor's property. Mr. Chrismas was the Bankruptcy Estate's fiduciary in the Bankruptcy Case. The other illegal acts in which he engaged, without limitation:

.

A.     When asked directly in the Bankruptcy Court early in the Bankruptcy Case about the formation and his utilization of Ace New York to sell artwork of the Debtor, he testified to the Bankruptcy Court, under oath, that his formation and utilization of Ace New York through which funds of the Debtor from art sales were deposited, was for the purpose of avoiding the reputational harm that would result if customers dealt with Art & Architecture Books of the 21st Century, a Chapter 11 Debtor. This testimony was perjurious. He formed Ace New York as the vehicle for the embezzlement of the

proceeds of sale of the Debtor's artwork and not to save the Chapter 11 Debtor from reputational harm.

B.     Mr. Chrismas stated under the penalty of perjury that prior to confirmation of the Plan of Reorganization of the Creditors Committee, that the Debtor had accumulated "accounts receivable" in the amount of $6,039,444.40. *See Debtor's Monthly Operating Report, filed in Bankruptcy Case No. 2:13-bk-14135-RK, Docket No. 1855, pg. 28/32 and 31/32.* A true and correct copy of the last Monthly Operating Report filed in the Bankruptcy Case is attached hereto as Exhibit "2". Exhibit "2" is a 31-page document. Page 27/31 has (highlighted) the falsely report "accounts receivable" which never existed-a fact that references to Ms. Ziegler's declaration above, also confirmed. The last page of the Monthly Operating Report contains the signature of Mr. Chrismas where he declared (highlighted) under the penalty of perjury that "*I declare under the penalty of perjury that I have fully read and understood the foregoing debtor-in-possession operating report and that the information contained herein is true and complete to the best of my knowledge.*"   The accounts receivable identified under the penalty of perjury by Mr. Chrismas to exist, did not exist. He knowingly inserted this false information (there were no accounts receivable whatsoever) in order to make it appear that the funds he was depositing into the accounts of Ace New York constituted an" account receivable" from Ace New York to the Chapter 11 Debtor.  In short, he falsely reported this information in order to aid in hiding from the Bankruptcy Estate the fact that funds were being deposited with Ace New York and then paid by Ace New York for the benefit of a non-Debtor entity, Ace Museum.  Mr. Chrismas filed 36 separate Monthly Operating Reports, all signed by him under the penalty of perjury in the exact same manner as the Report discussed in this paragraph.  Just as this last Report attached here falsely reported accounts receivable of $6,039,444, each prior report filed and signed by him contained similar false and perjurious information.

The Plan Agent and the Plan of Reorganization confirmed by the Creditors Committee relied heavily upon the accounts receivable of $6,039,444 as a source of crucial liquid capital with which to operate the business after confirmation of the Reorganization Plan. As stated, the accounts receivable were fiction. Further, the last three transactions engaged in by Mr. Chrismas as the Debtor's fiduciary before he turned over possession of the business to Mr. Leslie, were the three transactions that resulted in his conviction for embezzlement-which three separate acts deprived the Debtor of its last $264,595.32. As a result, when Mr. Leslie as Plan Agent took possession of the operations of the Debtor's art gallery business, the Debtor's bank account had <u>no cash</u>. The Debtor employed approximately twelve (12) employees at that time. There was accrued payroll that was due, accrued withholding taxes that were due. There was rent which was due to landlords and multiple other operating expenses including utilities, insurance, equipment, and other lease payments, in the hundreds of thousands of dollars. Mr. Leslie took possession of this business without any capital to pay for any of these obligations. That is because Mr. Chrismas, prior to turning over possession of the art business as required under the confirmed Reorganization Plan, drained the last cash that existed and hid the fact that the accounts receivable which he represented under the penalty of perjury to be worth more than $6 Million were actually worth zero.

C.    Mr. Chrismas, through the Chapter 11 Debtor, held multiple consignment agreements with artists affiliated with him. Under those agreements, he was obligated to sell the artwork for agreed upon prices and remit a portion of the sales proceeds to the artist with whom the Debtor held the consignment agreement. These agreements provided for a division of the sale proceeds that ranged between thirty percent (30%) and fifty percent (50%) between the artist and the Chapter 11 Debtor. Mr. Chrismas did not remit proceeds owed to many artists during the course of the Bankruptcy Case and he did not adhere to agreements regarding the minimum sale prices for artwork consigned to him to sell.  Based upon an analysis of these transactions, the amounts owed to artists from the date of filing of the Debtor's Bankruptcy Case until April 6, 2016, totaled $3,401,085.00. A true and correct copy of the Report by Mr. Leslie as the Plan Agent analyzing the funds owed to artists is attached hereto as Exhibit "3". The Court's is directed to the highlighted language at the bottom of the fifth page, from lines 25-28 and the sixth page, lines 1-6. This is a specific postpetition loss resulting from Mr. Chrismas' criminal conduct.

Contrary to the letters addressed to this Court in support of Mr. Chrismas in connection with the sentencing for his guilt for three counts of embezzlement, the artists spoken of hereinabove do not speak of "…his profound love for the arts and his commitment to fostering talent and sharing art with the community…" (Exhibit A to Docket 225), or as someone who is "… private, pleasant and serious. He is an expert obsessed by art alone, living modestly, and displaying no outward show…" (Exhibit B to Docket 225), or that they would agree with the statement "…When I look back at Doug Chrismas' dedication to art, artists, and the landscape of art and culture in our community, I am hard pressed to think of anyone who has done more. It is my honor to act as a character witness for Mr. Chrismas…" (Exhibit C to Docket No. 225) These artists whose proceeds of sale of their consigned artwork were converted by Mr. Chrismas spoke of him as a bully who constantly made threats including lawsuits against any artist who dared to take issue with his conversion of the proceeds of sale of artwork that they had consigned to him.

As stated, the report prepared by Ms. Jennifer Ziegler, CPA detailed approximately 180 additional transactions in addition to the three transactions which resulted in Mr. Chrismas' criminal conviction. The undersigned understands that those additional transactions were not before this Court or its jury, but they are of the exact same series of transactions throughout the Bankruptcy Case of which the three which are subject to conviction are indistinguishable from the 180 which were not charged before this Court.

Artists, as discussed, have been deprived of $3,401085 in proceeds due to them by Mr. Chrismas' conduct. This was all after the Chapter 11 filing date. They were additionally deprived of and had misappropriated the sum of $3,758,091 (sixth page, line 2) before the Chapter 11 case for the Debtor was filed.

Chapter 11 claims totaling more than $9,000,000 (in addition to artist claims for converted proceeds of sales of consigned artwork) were not paid as a result of Mr. Chrismas' embezzlement of the proceeds of sale of his artwork. Litigation was commenced after the confirmation of the Chapter 11 Plan of Reorganization of the Creditors Committee, which should not have been necessary if Mr. Chrismas had not caused more than $7,000,000 in sale proceeds of the Debtor's artwork to be transferred to third parties who had no entitlement to those funds. For this litigation alone, between the Plan Agent, his expert witness and Special Litigation Counsel, there were over $3,000,000 in professional fees incurred which were not paid and will likely never be paid unless Mr. Chrismas pays the Judgment that the Plan Agent holds against him in the amount of $14,243,884. Mr. Chrismas has not paid anything toward satisfaction of that claim even though the Judgment against him is nearly three years old.

Douglas Chrismas, in response to the foregoing, might inform this Court that I have personal antipathy toward him or that my law firm lost a great deal in uncollected fees (occasioned by his criminal conduct) in an attempt to undermine or falsely explain the reason for the contents of this correspondence. It is true-I do not like him personally, but that is because of what he has done in this Bankruptcy Case. And my firm does have a great deal of uncollected fees and costs which may never be collected, however, that has not stopped me from doing everything possible to assist the United States Attorney in this case, spending many dozens or hundreds of hours that I did not bill to the file, in pursuing this criminal action and helping to pull together the information that was needed so that Valerie Makarewicz and David Williams could bring on and complete this prosecution as they have so ably done.

For the damage that he has caused to creditors and for the completely nefarious conduct in which he engaged, Mr. Chrismas should receive a sentence for his crimes that is commensurate with his conduct.

Thank you for the opportunity to present this information to you.

Respectfully submitted,

Victor A. Sahn.

# EXHIBIT 1

Case 2:21-cr-00127-MCS    Document 229    Filed 12/27/24    Page 121 of 208    Page ID
#:3485
Case 2:13-bk-14135-RK    Doc 2486-1    Filed 06/12/19    Entered 06/12/19 17:13:57
Desc  Exhibits    Page 15 of 202

Case 2:15-ap-01679-RK    Doc 542    Filed 03/21/19    Entered 03/21/19 16:22:21    Desc
Main Document    Page 1 of 109

1  Victor A. Sahn (CA Bar No. 97299)
     vsahn@sulmeyerlaw.com
2  David J. Richardson (CA Bar No. 168592)
     drichardson@sulmeyerlaw.com
3  Asa S. Hami (CA Bar No. 210728)
     ahami@sulmeyerlaw.com
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Grand Avenue, Suite 3400
   Los Angeles, California 90071-1406
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520
7
   Carolyn Dye (CA Bar No. 97527)
8  Law Offices of Carolyn A. Dye
   3435 Wilshire Boulevard, Suite 990
9  Los Angeles, CA 90010
   Telephone: 213-368-5000
10 Facsimile: 213-368-5009

11 Attorneys for Sam Leslie, Plan Agent

12             **UNITED STATES BANKRUPTCY COURT**

13     **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

14 In re                                    Case No. 2:13-bk-14135-RK

15 ART & ARCHITECTURE BOOKS OF THE          Chapter 11
   21st CENTURY,
16                                           Adv No. 2:15-ap-01679-RK
                Debtors.
17                                           Consolidated with Adv. No. 2:14-ap-01771-
                                             RK
18 SAM LESLIE, PLAN AGENT FOR ART &
   ARCHITECTURE BOOKS OF THE 21st           **DECLARATION OF JENNIFER**
19 CENTURY,                                  **ZIEGLER IN SUPPORT OF PLAINTIFF'S**
                                             **NOTICE OF MOTION AND MOTION: (1)**
20                Plaintiff,                 **TO INTERPRET CONFIRMATION**
                                             **ORDER AND CONFIRMED PLAN; AND**
21         vs.                               **(2) TO VACATE ORDER APPROVING**
                                             **STIPULATION WITH ACE MUSEUM,**
22 ACE GALLERY NEW YORK CORPORATION,         **AND STRIKE STIPULATION FROM**
   a California corporation; et al.          **THE DOCKET, PURSUANT TO F.R.B.P.**
23                                           **9024, AND F.R.C.P. 60(d)(3))**
                Defendants.
24                                           **[MOTION AND SUPPORTING**
                                             **DECLARATIONS FILED HEREWITH]**
25
                                             **Hearing Date:**
26 And Related Counterclaims and Crossclaims  Date:        April 16, 2019
                                             Time:        2:30 p.m.
27                                           Courtroom:   1675
                                                          255 E. Temple St.
28                                                        Los Angeles, CA 90012

                                                              EXHIBIT 2   -   30

Case 2:21-cr-00127-MCS    Document 229    Filed 12/27/24    Page 122 of 208    Page ID
Case 2:13-bk-14135-RK    Doc 2486-1    #:1866 06/12/19    Entered 06/12/19 17:13:57
              Desc  Exhibits     Page 16 of 202

Case 2:15-ap-01679-RK    Doc 542    Filed 03/21/19    Entered 03/21/19 16:22:21    Desc
              Main Document      Page 2 of 109

1                          **DECLARATION OF JENNIFER ZIEGLER**

2      I, Jennifer Ziegler, declare as follows:

3            1.      I am a Certified Public Accountant (CPA) in California and Oregon and hold the

4      CFF (Certified in Financial Forensics) and CFE (Certified Fraud Examiner) designations. I have

5      worked in accounting for more than 30 years, specializing in forensic accounting for 20 of those

6      years. I began my career as an internal auditor at UCLA, performing audits, investigating

7      allegations of fraud, and supporting external audits by KPMG. KPMG offered me a job in which

8      I spent five years auditing SEC registrants for insurance companies, not-for-profits, and

9      governmental entities. I took those skills in accounting to my next role at Gursey Schneider,

10     where I became a partner and applied my expertise in accounting-related litigation support roles.

11     I later continued this role as a partner at Hemming Morse and then as a Managing Director at

12     Berkeley Research Group ("BRG"), where I am currently employed.

13           2.      I have worked on hundreds of matters over the last 20 years involving many types

14     of businesses including, but not limited to, insurance providers, public companies, government

15     agencies, homeowners' associations, retailers, wholesalers and start-up companies.  The different

16     kinds of retailer and wholesalers that have been the subject of my various engagements include

17     agricultural companies, oil producers, jewelry and precious gems' wholesalers, and garment

18     manufacturers. Many of these were litigation and/or forensic engagements that included matters

19     pending in bankruptcy and probate courts.  At times, the forensic engagements were for the

20     purpose of calculating lost profits in a litigation context such as wrongful termination, or for

21     related valuation work in the context of a business or partnership dissolution—all of which can,

22     and often do, lead to testimony at trial on these types of disputes.  Furthermore, many of the

23     forensic engagements, like the engagement for the Plan Agent in this litigation, were for the

24     purpose of tracing funds and identifying and tracking the use of funds. At other times, I assisted

25     lenders whose borrowers had tendered incorrect financial statements to them. For these

26     engagements, the scope of my retention was for the purpose of analyzing and coming up with an

27     accurate financial picture of what should have been, had the financial statement(s) tendered been

28

                                                - 1 -
                          **DECLARATION OF JENNIFER E. ZIEGLER**

                                        EXHIBIT 2  -  31

1   accurate. I have also worked on criminal matters that were referred to the IRS, FTB (California

2   Franchise Tax Board), and the FBI. I have testified in more than 70 depositions in Superior and

3   Federal Court cases, and have qualified as an expert in 15 trials related to issues involving

4   accounting, testimony regarding the results of my forensic investigation in cases where fraud and

5   similar wrong doing was alleged, accountants' standards of care, and disputes resulting in

6   damages or lost profits. I have been court-appointed as the neutral expert in two separate matters

7   and designated as a trustee of an estate. As a result of my work in investigations, I have, on two

8   separate occasions, overseen the financial operations for businesses while acting as the interim

9   CFO.

10      3.      I am the former chair of the California Society of CPAs—the largest state CPA

11   society in the country—and am currently the chair of its Government Relations and Nominations

12   Committees. Concurrently, I serve as a California delegate on the American Institute of CPAs

13   Council, which is the governing and standard-setting body for CPAs in the United States. I also

14   serve as the treasurer and a board member of the LA Center for Law and Justice, which provides

15   free litigation services to survivors of domestic violence and sexual assault. Attached hereto as

16   "Exhibit A" is my current CV.

17      4.      I was retained to provide services to the Plan Agent, Sam Leslie, to evaluate and

18   verify the conclusions presented in the October 19, 2017 declaration of Timothy Kincaid for the

19   purpose of providing opinions and testimony relating to the issues of this litigation.   My

20   assignment expanded with the discovery of new information received after my retention, which

21   included the review of the Debtor's books and records as well as documents produced in

22   discovery for the primary purpose of identifying assets of the Debtor.   The facts stated herein are

23   true and correct and, if called as a witness, I could and would testify thereto.

24      5.      I have prepared this declaration in connection with a motion that I understand will

25   be filed by the Plan Agent pertaining to a stipulation and related documents that were signed in

26   February 2015. For that reason, although my engagement covers a broader period from February

27   2013 through April 2016, much of the analysis discussed below pertains to the first 25 months of

28

- 2 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  32

Case 2:21-cr-00127-MCS   Document 229   Filed 12/27/24   Page 124 of 208   Page ID #:3488
Case 2:13-bk-14135-RK   Doc 2486-1   Filed 06/12/19   Entered 06/12/19 17:13:57
Desc  Exhibits    Page 18 of 202

Case 2:15-ap-01679-RK   Doc 542   Filed 03/21/19   Entered 03/21/19 16:22:21   Desc
Main Document      Page 4 of 109

1   Art & Architecture Books of the 21st Century's (hereinafter "Debtor") Chapter 11 bankruptcy

2   case and the financial information that the Debtor had disclosed or filed with the Court during

3   that period.

4        6.      In order to complete my analysis, I reviewed thousands of documents supporting

5   the activity of the Debtor for the time period of February 2013 through April 2016, including

6   Monthly Operating Reports (hereinafter "MOR") prepared by the Debtor and signed by Douglas

7   Chrismas, bank statements of the Debtor that were referenced in its MORs, electronic general

8   ledgers of the Debtor, and sales invoices of the Debtor, among other documents. I interviewed

9

10  staff and accounting personnel who worked for the Debtor during this period in order to

11  understand their accounting processes, such as sales invoice processing, inventory maintenance,

12  cash processing, and bill payments.  I also reviewed accounting documents and correspondence

13  independently obtained from the Debtor's computers, as well as the bank records of Ace Gallery

14  New York Corporation (hereinafter "Ace NY") and Ace Museum Corporation (hereinafter "Ace

15  Museum"). The documents I reviewed are listed in "Exhibit B", attached hereto.

16

17       7.      I understand that the Official Committee of Unsecured Creditors (hereinafter

18  "Committee"), in furtherance of its duties, relied heavily on the Debtor's filed MORs to

19  understand the nature of the Debtor's business and its ability to reorganize.

20       8.      The documents that I reviewed pertaining to Ace NY included the initial Ace NY

21  tax return for the period of February 1, 2013, through October 31, 2013, which was filed on

22  Form 1120. The Form 1120 includes an opening balance sheet on page 5[1] showing there were no

23  assets or capital at the formation of the corporation. This tax return establishes that Ace NY did

24  not have any artwork or assets around the time the Debtor's bankruptcy was declared, as the

25  February 2013 formation date is the same month as the Debtor's Chapter 11 case was filed. But

26

27

28

_____

[1] Attached as Exhibit C – pg. 5 of Ace NY 2012 Form 1120

- 3 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  33

Case 2:21-cr-00127-MCS    Document 229    Filed 12/27/24    Page 125 of 208    Page ID
#:3489
Case 2:13-bk-14135-RK    Doc 2486-1    Filed 06/12/19    Entered 06/12/19 17:13:57
Desc  Exhibits    Page 19 of 202

Case 2:15-ap-01679-RK    Doc 542    Filed 03/21/19    Entered 03/21/19 16:22:21    Desc
Main Document    Page 5 of 109

1    based on Ace NY's tax returns, Ace NY received $2,103,866[2] in artwork sales revenue during

2    the nine-month period after its formation. Based on my review of the documents, including sales

3    invoices, wire instructions, bank statements, deposit information, artist contracts, and

4    consignment agreements, the $2 million was the Debtor's money for this 8-month time frame of

5    February 2013 through October 2013. Although Ace NY had no assets when formed, it was able

6    to produce $2 million of revenue—and I was able to confirm that the $2 million was from the

7    sale of the Debtor's artwork sales.

8

9        9.      As detailed above, $2 million from sales of the Debtor's artwork went to another

10   company, Ace NY, and not the Debtor. This was consistent throughout the periods I reviewed,

11   and the actual activity was not reflected in the Debtor's MORS filed with the court. Based on

12   my review of 25 MORs from February 2013 through February 2015 (the relevant time period of

13   this motion) at least 20 of the 25 MORs' important account balances--Accounts Receivable,

14   Notes Receivable, Inventory, and Cash Receipts--were not reported accurately in the MORs, as

15   shown in Exhibit Z. As more fully explained herein based on my review of the MORs, I opine

16   that critical information contained in the Debtor's MORs is incorrect, not representative of the

17   activity during the respective periods, and replete with misinformation. The following are a *few*

18   *examples* of deficiencies in the information contained within the MORs for the months of

19   February 2013 through November 2014.

20

21                           **Monthly Operating Reports Analysis**

22

23       10.     <u>Notes Receivable Balance</u> – Notes Receivable is an account to record amounts

24   owed for services or sales that have not been paid as of the reporting period. The Debtor filed

25   MORs[3] with the court through January 2016. I reviewed the MORs filed by the Debtor,

26

27   ─────────────────────
     [2] Attached as Exhibit D – pg. 1 of Ace NY 2012 Form 1120

28   [3] I am informed that the MORs will be included in the filings of this action and therefore are not
     attached to my declaration.

                                    - 4 -
                      **DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  34

1   including the first MOR for the month ending February 28, 2013 and stamped "Filed 03/15/13".

2   This MOR indicates there is a Notes Receivable balance of $4,501,971.82[4].   The Debtor's

3   Submission of Amended and Corrected Schedules of Assets and Liabilities and Statement of

4   Financial Affairs from April 2013 also lists a similar amount[5] as being due from Ace Museum to

5   the Debtor. My understanding is that this receivable was owed by Ace Museum and is listed as

6   an asset of the Debtor. The MOR dated November 30, 2014[6] lists the same Notes Receivable as

7   $3,306,959.80, indicating there were repayments totaling $1,195,012.02 over the approximately

8   22-month period (I understand the relevance of this time period is explained in the motion).

9   Based on my review of the documents during this time frame, millions of dollars of the Debtor's

10   money were deposited into the bank accounts of two entities, Ace Museum and Ace NY, and

11   some of the Debtor's money was transferred back to the Debtor and described/represented as

12   Ace Museum's repayments of this debt. However, the source of the majority of the money was

13   not Ace Museum, but the Debtor. Over the time period when Mr. Chrismas ran the operations

14   from February 2013 to April 2016, more than $14 million[7] from sales of the Debtor's artwork

15   was deposited into Ace NY's bank accounts.   During the 22 months of the Chapter 11 case

16   through November 30, 2014, approximately $5.4 million[8] from sales of the Debtor's artwork was

17   deposited into Ace NY's bank accounts. Over this same time period, Ace NY transferred a net

18   total of nearly $2.5 million[9] to Ace Museum.   Based on my research described herein, it is my

19   opinion and conclusion that the funds deposited to Ace NY's bank accounts, and then transferred

20   from Ace NY to Ace Museum, were the Debtor's funds and that many of the deposits to Ace

21   Museum's bank account were also the Debtor's funds.

22

23

24   _____

25   [4] Attached as Exhibit E is the MOR For the Month Ending 2/28/2013 pg. 15 of 16
[5] Attached as Exhibit F is part of Schedule B – Personal Property from the April 2013
submission showing $4,482,856 is due from Ace Museum to the Debtor
26   [6] Attached as Exhibit G is the MOR For the Month Ending 11/30/14 pg. 18 of 18
[7] Attached as Exhibit H is BRG schedule "Sales Proceeds Deposited Into Ace Gallery New York
27   Bank Accounts"
[8] Ibid.
[9] Attached as Exhibit I is BRG schedule "Transfers Between Ace Museum and Ace Gallery New
28   York"

- 5 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  35

Case 2:21-cr-00127-MCS    Document 229    Filed 12/27/24    Page 127 of 208    Page ID
#:3491
Case 2:13-bk-14135-RK    Doc 2486-1    Filed 06/12/19    Entered 06/12/19 17:13:57
Desc  Exhibits    Page 21 of 202

Case 2:15-ap-01679-RK    Doc 542    Filed 03/21/19    Entered 03/21/19 16:22:21    Desc
Main Document    Page 7 of 109

11. **Debtor in Possession Loans:** I have reviewed documents that detail Debtor in Possession (hereinafter "DIP") loans that were made to the Debtor. In some cases, the DIP proceeds were deposited directly into the Ace NY or Ace Museum accounts rather than having these DIP loan proceeds deposited into DIP accounts, as these proceeds were the Debtor's property. Many of the DIP proceeds deposited into the Ace Museum account were transferred to the Debtor and classified as reductions of the Ace Museum Loan. The following are DIP proceeds that were deposited into Ace Museum's bank account, not the Debtor's bank accounts, between February 2013 and November 2014 (detailed below):

| Date | Amount[10] |
|------|------------|
| 4/11/2013 | $ 80,000 |
| 4/23/2014 | $ 85,000 |
| 5/12/2014 | $ 85,000 |
| 5/14/2014 | $ 75,000 |
| 5/30/2014 | $ 100,000 |
| 8/20/2014 | $ 135,000 |
| 10/23/2014 | $ 52,000 |
| 11/20/2014 | $ 180,000 |
| | $ 792,000 |

For example, the DIP loan of $180,000, advanced by Eric Wilson in November 2014 and deposited into the Ace Museum account, was transferred into the Debtor's account and declared on the November 2014 MOR as a repayment of the Ace Museum loan. This repayment was misrepresented, as the funds used to make the payment were directly traced back to the DIP loan proceeds received from Mr. Wilson. In short, the reduction in the Ace Museum debt was nothing more than a recycling of the Debtor's own money through Ace Museum.

12. **Artist Consignment Agreements:** I reviewed documents that included the Debtor's internal inventory records, artist contracts, and consignment sheets. All of the contracts I reviewed were signed by Douglas Chrismas on behalf of the Debtor, the majority of which were signed before the bankruptcy filing and some of which were signed after the bankruptcy

---

[10] Attached as Exhibit J is a wire transfer statement for Ace Museum CNB account – Telford Building LTD is Eric Wilson's company. Note each wire was reduced by a $20 wire fee.

- 6 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  36

Case 2:21-cr-00127-MCS   Document 229   Filed 12/27/24   Page 128 of 208   Page ID
#:3492
Case 2:13-bk-14135-RK   Doc 2486-1   Filed 06/12/19   Entered 06/12/19 17:13:57
Desc  Exhibits   Page 22 of 202

Case 2:15-ap-01679-RK   Doc 542   Filed 03/21/19   Entered 03/21/19 16:22:21   Desc
Main Document   Page 8 of 109

1   filing.  I have not reviewed or located any contracts between Ace NY and any artist. Many of

2   these same pieces of art were listed on Ace NY invoices, indicating the artwork was sold under

3   the name of Ace NY when in fact the artwork appeared to be owned and/or contracted by the

4   Debtor. For example, even though Charles Fine's *Flor De Incino* is in an inventory list in the

5   Debtor's Exhibit Binder Volume 3[11], it was sold on an Ace NY invoice[12] and the $172,000 check

6   payment for that invoice was deposited into Ace NY's bank account on August 2, 2013.[13] In

7   following the trail of funds for that $172,000 invoice after it was deposited, the records indicate

8   that, days later, $165,000 was transferred to Ace Museum's bank account on August 6, 2013[14].

9   Then, on the same day, $165,000 was wired out of the Ace Museum account in two wire

10   transfers[15]—one for an Ace Museum rent expense for $150,000 and the other to the Debtor's

11   general account for $15,000[16]. Thus, in instances such as this, funds that belonged to the Debtor

12   were deposited first into Ace NY's bank account and then transferred to Ace Museum.

13   Sometimes portions were subsequently transferred from Ace Museum's bank account to the

14   Debtor's bank account, and at other times, funds were used to pay non-Debtor expenses.

15         13.   Additionally, customers were sometimes instructed to wire funds for purchases of

16   the Debtor's artwork to bank accounts other than the Debtor's. For example, in one method a

17   customer was given Ace NY wire instructions with a $200,000 Ace Gallery invoice[17]. In some

18   other instances, funds from sales of the Debtor's artwork were deposited into bank accounts

19   other than that of the Debtor, including three sales transactions totaling $393,000 that were

20

21

22

-----

[11] Attached as Exhibit K is the page from the Debtor's inventory listing Charles Fine's *Flor De Incino*

[12] Attached as Exhibit L is the invoice for the sale of Charles Fine's *Flor De Incino*

[13] Attached as Exhibit M are documents showing that the check was deposited into Ace Gallery NY's account

[14] Attached as Exhibit N are pages from Ace Gallery NY's and Ace Museum's bank statements showing that the $165,000 was transferred from Ace Gallery NY's account to Ace Museum's

[15] Attached as Exhibit O is a page from Ace Museum's bank statement showing the two wires out

[16] Attached as Exhibit P are documents showing the wires

[17] Attached as Exhibit Q are documents emailed to the customer including the invoice and Ace NY wire instructions.

- 7 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2   -   37

deposited into the Ace Museum bank account rather than the Debtor's bank account (detailed below):

14.

| Deposit Date | Amount | Artist |
|---|---|---|
| 02/20/2013 | $ 150,000.00 | Mary Corse |
| 09/09/2013 | $ 68,000.00 | De Wain Valentine |
| 07/18/2014 | $ 175,000.00 | Mary Corse |
| **TOTAL** | $ 393,000.00 | |

Therefore, Ace Museum's Notes Receivable balance listed as $3,306,959.80 as of November 30, 2014, was not properly reported on the MOR Balance Sheet. These decreasing Notes Receivable balances on the MORs suggest that Ace Museum had been repaying the money owed to the Debtor. However, much of the money Ace Museum paid to the Debtor was actually the Debtor's money and was incorrectly reported as repayments of the Notes Receivable balance from Ace Museum. The bank records demonstrate to me that a small percentage of the funds used to pay down the Ace Museum loan balance during this period could have been funds donated to Ace Museum. However, a majority of the funds (more than $1 million) consisted of the Debtor's money transferred through the Ace Museum account from the Ace NY account.

15.    Accounts Receivable Balance – Like Notes Receivable, Accounts Receivable is an account to record amounts owed for services or sales that have not been paid as of the reporting period. Accounts Receivable usually have shorter terms than Notes Receivable. The Debtor's business is the sale of artwork that results in either a payment of cash or a promise to pay in the future, which is recorded in Accounts Receivable. The first MOR filed by the Debtor indicated there were no Accounts Receivable as of February 28, 2013, demonstrating to me that the Debtor typically received payment in full at the time of the sale. An Accounts Receivable

- 8 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  38

Case 2:21-cr-00127-MCS    Document 229    Filed 12/27/24    Page 130 of 208    Page ID #:3494
Case 2:13-bk-14135-RK    Doc 2486-1    Filed 06/12/19    Entered 06/12/19 17:13:57    Desc  Exhibits    Page 24 of 202
Case 2:15-ap-01679-RK    Doc 542    Filed 03/21/19    Entered 03/21/19 16:22:21    Desc
Main Document    Page 10 of 109

balance of $318,990.61[18] was reported in the April 30, 2013 MOR. The amount increased to $4,359,643.13[19] through November 30, 2014. If accurate, this increase in unpaid sales clearly indicates that somebody, or a combination of entities, owes the Debtor $4.3 million for artwork sold. Yet the payment for the art has not been made as of November 30, 2014.

16.    I reviewed the Debtor's Accounts Receivable listing in the accounting system, along with internally maintained spreadsheets[20], invoices, and bank records, and found that the majority of the Accounts Receivable were not supported by actual sales or prospective sales. The Accounts Receivable balance was $0 in the first MOR dated February 2013, and increased to $6,039,444 in February 2016.   The internal records indicate (See Exhibit T) that there are approximately 50 outstanding invoices that comprise the Accounts Receivable balance.   Based on my analysis of the detailed invoices, I found that most of the invoices did not indicate valid Accounts Receivable or were already paid.   The following are a few examples (See Exhibit T for Invoices):

  a.  Invoice #1660 for $153,900, which is the Debtor's invoice, was included in Accounts Receivable detail. Invoice #1660 was paid in February 2014, and the proceeds were deposited into Ace NY's bank account. Yet the invoice remained on the Debtor's list of Accounts Receivable.

  b.  Invoice # 1632 for $92,500, which is the Debtor's Invoice dated July 27, 2013, was included in the Accounts Receivable detail.  However, the invoice has a huge line through it saying it was cancelled in November 2015, which demonstrates to me that the invoice was not valid Accounts Receivable.

  c.  Invoice # 1696 for $431.65, which is the Debtor's Invoice dated May 13, 2014 and crossed off with a date of April 10, 2014, was included in the Accounts

---

[18] Attached as Exhibit R MOR For the Month Ending 4/30/2013 pg. 15 of 16
[19] Attached as Exhibit S MOR For the Month Ending 11/30/14 pg. 18 of 18
[20] Attached as Exhibit T Excel spread sheet "A& AR APR 15.xls"

- 9 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  39

Case 2:21-cr-00127-MCS    Document 229    Filed 12/27/24    Page 131 of 208    Page ID
#:3495
Case 2:13-bk-14135-RK    Doc 2486-1    Filed 06/12/19    Entered 06/12/19 17:13:57    Desc    Exhibits    Page 25 of 202
Case 2:15-ap-01679-RK    Doc 542    Filed 03/21/19    Entered 03/21/19 16:22:21    Desc
Main Document    Page 11 of 109

Receivable detail.  This invoice was for delivery of artwork including "Gas for Truck". However, the invoice has a huge line through it saying it was cancelled in November 2015, which demonstrates to me that the invoice was not valid Accounts Receivable.

d.   Invoice #1739 for $200,000, which is the Debtor's invoice, was included in Accounts Receivable detail. Invoice #1739 was paid in August 2014, and the proceeds were deposited into Ace NY's bank account. Yet the invoice remained on the Debtor's listing of Accounts Receivable.

The examples above reflect a small sampling of invoices making up the Accounts Receivable balance dated April 2015.  I believe that the majority of sales listed in the Debtor's Accounts Receivable do not correlate to sales, have no correlation to amounts owed, and do not represent an accurate list of amounts due to the Debtor.

17.   <u>Inventory</u> – Inventory represents the artwork owned by the Debtor at the Debtor's determined values.   The MORs list the inventory balance each month, with the February 2013 MOR (the first MOR) stating the Debtor's inventory amounted to $3,356,134[21]. Based on my review of the documents, discussions with the Debtor's accounting personnel in charge of maintaining the inventory, and review of sales documentation, I believe that all the artwork discussed herein was the property of the Debtor or subject to the Debtor's consignment rights. Additionally, based on my review of the inventory listings, I found that the listings were misleading, as they still included artwork that had already been sold.

18.   <u>Cash Receipts and Disbursements</u> - The MORs contain a one-page listing of the Debtor's monthly cash receipts and disbursements on a cash basis (this is also referred to as a profit and loss statement). Based on my analysis, there are two issues with the profit and loss statements (hereinafter "P&L") attached to each MOR filed by the Debtor with the court.  First

---

[21] Attached as Exhibit E is the MOR For the Month Ending 2/28/2013 pg. 15 of 16

- 10 -

**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  40

Case 2:21-cr-00127-MCS   Document 229   Filed 12/27/24   Page 132 of 208   Page ID
#:3496
Case 2:13-bk-14135-RK   Doc 2486-1   Filed 06/12/19   Entered 06/12/19 17:13:57
Desc  Exhibits   Page 26 of 202

Case 2:15-ap-01679-RK   Doc 542   Filed 03/21/19   Entered 03/21/19 16:22:21   Desc
Main Document   Page 12 of 109

the P&Ls do not list any sales proceeds deposited into the Ace NY account.  For example, by the

filing of the last MOR the P&L reported total sale since the petition date of $11,061,741[22], which

approximates the Debtor's sales but fails to account for the $14.5 million deposited into the Ace

NY account.  However, on a monthly basis the reported monthly sales figures varied widely

from the bank records and sales invoices. In several instances, the discrepancies between sales

reported on the MORs and the artwork sales proceeds deposited into the Debtor's general

account are substantial. The following are just a few examples:

The May 2013 MOR shows that the Debtor's general account received the following

artwork sales proceeds totaling $362,977.06[23] that month:

| | |
|---|---|
| Accounts Receivable – Post filing | $ 318,990.61 |
| General Sales | $  43,986.45 |
| | $ 362,977.06 |

However, an analysis of bank account deposits and artwork sales invoices indicate that the

Debtor received only $92,807.50 from artwork sales.  Thus, of the $362,977.06 sales-related

cash receipts reported on the MOR, invoices totaling $270,169.56 was not received from sales by

the Debtor. That same month, Ace NY received $671,615[24] in sales deposits derived from sales

of the Debtor's artwork, and transferred $255,000[25] from Ace NY's account to the Debtor's

general account—an amount close to the aforementioned $270,169.56 of cash receipts reported

on the MOR that do not have corresponding invoices identified.  Based on my review of the bank

records, it is my understanding that transfers such as this from the Ace NY account to the

Debtor's account were carried out when the Debtor had an immediate need for cash to pay rent,

---

[22] See Exhibit Z for BRG Account Balance Listings
[23] Attached as Exhibit U MOR For the Month Ending 5/31/2013 pg. 1 of 16
[24] See Exhibit H BRG schedule "Sales Proceeds Deposited Into Ace Gallery New York Bank Accounts"
[25] Attached as Exhibit V are documents showing the $255,00 wire from the Ace New York bank account to the Debtor's general account

- 11 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  41

Case 2:21-cr-00127-MCS    Document 229    Filed 12/27/24    Page 133 of 208    Page ID
#:3497
Case 2:13-bk-14135-RK    Doc 2486-1    Filed 06/12/19    Entered 06/12/19 17:13:57
Desc  Exhibits    Page 27 of 202

Case 2:15-ap-01679-RK    Doc 542    Filed 03/21/19    Entered 03/21/19 16:22:21    Desc
Main Document    Page 13 of 109

1  payroll, taxes, and other such immediate payment needs. The transactions below from the

2  Debtor's bank statements show cash in from Ace NY[26] to the Debtor's account[27] on January 17,

3  2014. Once deposited, it was used to pay Debtor expenses like payments to artists (such as Mary

4  Corse) and payroll expenses.

5

6

| Date | Amount | Description |
|------|--------|-------------|
| 01/16/2014 | 6,943.44 | Prior Debtor Bank Balance |
| 01/17/2014 | 52,000.00 | Cash In: Check |
| 01/17/2014 | 10,000.00 | Cash In: Check |
| 01/17/2014 | (40,000.00) | Cash Out: Check – Mary Corse, Inc. |
| 01/17/2014 | (16,000.00) | Cash Out: Transfer – Debtor Payroll Account |

13  Days later and within the same month, money was once again transferred into the Debtor's

14  account from Ace NY and then immediately used to pay Debtor expenses:

15

16

| Date | Amount | Description |
|------|--------|-------------|
| 01/23/2014 | 5,360.41 | Prior Debtor Bank Balance |
| 01/24/2014 | 24,000.00 | Cash In: Check |
| 01/24/2014 | (22,440.00) | Cash Out: Check – LA Art Show |

21  19.    As a second example, we identified more than $1 million in sales of the Debtor's

22  artwork on Debtor invoices and Ace NY invoices for June 2014.  The MOR for that month

23  shows that the Debtor's account only received the following artwork sale proceeds totaling

24  $548,650.77[28]:

25

26

27  _____

28  [26] Attached as Exhibit W is Ace NY's CNB bank statement for January 2014
[27] Attached as Exhibit X is Debtor's CNB bank statement for January 2014
[28] Attached as Exhibit Y MOR For the Month Ending 6/30/14 pg. 1 of 16

- 12 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2   -   42

Case 2:21-cr-00127-MCS    Document 229    Filed 12/27/24    Page 134 of 208    Page ID
#3498
Case 2:13-bk-14135-RK    Doc 2486-1    Filed 06/12/19    Entered 06/12/19 17:13:57
Desc  Exhibits    Page 28 of 202

Case 2:15-ap-01679-RK    Doc 542    Filed 03/21/19    Entered 03/21/19 16:22:21    Desc
Main Document    Page 14 of 109

|  |  |  |
|---|---|---|
| Accounts Receivable – Post filing | $ 541,760.00 |  |
| Accounts Receivable – Pre filing | $ 6,360.00 |  |
| General Sales | $ 530.77 |  |
|  | $ 548,650.77 |  |

I was able to find $517,456.65 of invoiced artwork sales in the name of the Debtor that corresponded to the deposits for that month. The Ace NY bank account received the rest of the $1 million—specifically, $521,380[29]—for sales of the Debtor's artwork. The Debtor's accounting records demonstrate that the foregoing are examples of the Debtor's regular monthly practices through April 2016. In summary, I opine that the MORs do not reflect the true activity of the Debtor. The reported artwork sales, the balance on the Notes Receivable due from Ace Museum, and the Accounts Receivable information presented in the MORs are not true reflections of the Debtor's activities, assets, or respective values.

20.    Term Sheet - I reviewed a stipulation and plan support term sheet made between the Debtor, the Official Committee of Unsecured Creditors, Ace Museum, and Douglas Chrismas on or about February 11, 2015. In the plan term sheet, among other terms, the Debtor agreed[30] to generate at least $25,000 each month in sales between March 2015 and June 2015 to facilitate payments to creditors. Based on the MORs and bank statements during this time period, the goal was met; but the funds were not retained in the Debtor's account beyond June 2015. Over this same four-month period, funds from sales of the Debtor's artwork totaling more than $1,000,000 were deposited into Ace NY and Ace Museum's bank accounts instead of the Debtor's bank accounts.

//////

---

[29] See Exhibit H BRG schedule "Sales Proceeds Deposited Into Ace Gallery New York Bank Accounts"

[30] "Term Sheet Between the Official Committee of Unsecured Creditors of Art & Architecture Books of the 21st Century, Art & Architecture Books of the 21st Century, Douglas Chrismas, and Ace Museum, a California Corporation" pg. 5 item 6

- 13 -
**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2   -   43

Case 2:21-cr-00127-MCS    Document 229    Filed 12/27/24    Page 135 of 208    Page ID
#:3499
Case 2:13-bk-14135-RK    Doc 2486-1    Filed 06/12/19    Entered 06/12/19 17:13:57
Desc  Exhibits    Page 29 of 202

Case 2:15-ap-01679-RK    Doc 542    Filed 03/21/19    Entered 03/21/19 16:22:21    Desc
Main Document    Page 15 of 109

1

## SUMMATION

2

Based on the analysis performed, I believe that the Accounts Receivable balance in the MORs

3

was substantially overstated for at least 30 of the 36 MORs filed, the Ace Museum Notes

4

Receivable balance was incorrectly reduced in 33 of the 36 MORs filed, the Inventory balance

5

was not support by a complete inventory for all 36 MORs, and the Cash Receipts for 32 of 36

6

MORs were incorrect and failed to report sale proceeds that were deposited into the Ace NY

7

account and never received by the Debtor.  This is indicative of a practice of reporting incorrect

8

information with the court.

9

10          I declare under penalty of perjury under the laws of the State of California that the

11      preceding is true and correct. Executed this March 6, 2019, in Los Angeles, California.

12

13

14                                                          *Jennifer Ziegler*

15                                                  _____

16                                                  Jennifer E. Ziegler, CPA

17

18

19

20

21

22

23

24

25

26

27

28

- 14 -

**DECLARATION OF JENNIFER E. ZIEGLER**

EXHIBIT 2  -  44

**EXHIBIT 2**

OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

| In Re:<br>Art and Architecture Books of the 21st Century<br><br><br>Debtor(s). | CHAPTER 11 (BUSINESS) | |
|---|---|---|
| | Case Number: | 2:13-bk-14135-RK |
| | Operating Report Number: | 36 |
| | For the Month Ending: | 1/31/2016 |

I. CASH RECEIPTS AND DISBURSEMENTS
A. (GENERAL ACCOUNT*)

1. TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS — 19,086,647.36

2. LESS: TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL ACCOUNT REPORTS — 19,026,955.32

3. BEGINNING BALANCE: — 59,692.04

4. RECEIPTS DURING CURRENT PERIOD:

| | | |
|---|---|---|
| Accounts Receivable - Post-filing | | 195,265.00 |
| Accounts Receivable - Pre-filing | | |
| General Sales | | |
| Other (Specify) | Ace Museum | 40,000.00 |
| Other | Rent Income | |
| Other | Miscellaneous&Parking | 4,705.00 |
| Transfer from Rent Account & P/R | | 85,860.00 |

TOTAL RECEIPTS THIS PERIOD: — 325,830.00

5. BALANCE: — 385,522.04

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD

| | |
|---|---|
| Transfers to Other DIP Accounts (from page 2) | 33,235.00 |
| Disbursements (from page 2) | 344,215.44 |

TOTAL DISBURSEMENTS THIS PERIOD:*** — 377,450.44

7. ENDING BALANCE: — 8,071.60

8. General Account Number(s): — ███402

Depository Name & Location: — City National Bank
400 N Roxbury Dr
Beverly Hills, Ca. 90210

*    All receipts must be deposited into the general account.
**  Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold,
      to whom, terms, and date of Court Order or Report of Sale.
***This amount should be the same as the total from page 2.

**TOTAL DISBURSEMENTS FROM GENERAL ACCOUNT FOR CURRENT PERIOD**

| Date mm/dd/yyyy | Check Number | Payee or DIP account | Purpose | *Amount Transferred | **Amount Disbursed | Amount |
|---|---|---|---|---|---|---|
| 11/10/15 | 2933 | ACCURACY LOCKSMITH | SECUITY | | (21.80) | (21.80) |
| 12/30/15 | 3013 | ASHLEY DISTRIBUTORS | REPAIRS | | 266.85 | 266.85 |
| 1/2/16 | 3012 | AERC DESMOND'S TOWER, LLC | RENT | | $222,439.49 | $222,439.49 |
| 1/4/16 | 3015 | GENNADIY MENDELSON | OUTSIDE SERVICES | | $225.00 | $225.00 |
| 1/4/16 | 3016 | SHIRLEY HOLST | ACCOUNTING | | $525.60 | $525.60 |
| 1/4/16 | B/C | CITY NATIONAL BANK | BANK CHARGES | | $13.00 | $13.00 |
| 1/4/16 | EFT | UNITED PARCEL SERVICE | POSTAGE | | $32.48 | $32.48 |
| 1/4/16 | EFT | NORTHERN LEASING | CREDIT CARD FEES | | $87.36 | $87.36 |
| 1/4/16 | EFT | WASTE MANAGEMENT | UTILITIES | | $874.33 | $874.33 |
| 1/4/16 | EFT | L.A. DEPT OF WATER & POWER | UTILITIES | | $2,400.00 | $2,400.00 |
| 1/5/16 | 3014 | LOWE'S | REPAIRS | | $272.41 | $272.41 |
| 1/6/16 | EFT | NPC | CREDIT CARD FEES | | $384.62 | $384.62 |
| 1/6/16 | TRANSFE | ART & ARCHITECTURE | TRANSFER PAYROLL | $17,075.00 | | $17,075.00 |
| 1/7/16 | 3017 | TAYLOR MARTIN | OFFICE SUPPLIES | | $9.90 | $9.90 |
| 1/7/16 | 3018 | L.A. COUNTY METROPOLITAN TRANSPO | RENT | | $7,000.00 | $7,000.00 |
| 1/7/16 | 3019 | WILLSON, JACOB | MISCELLANEOUS | | $37.76 | $37.76 |
| 1/8/16 | 3011 | VOID | VOID | | $0.00 | $0.00 |
| 1/8/16 | 3020 | LOWE'S | REPAIRS | | $390.18 | $390.18 |
| 1/8/16 | 3021 | DMV RENEWAL | AUTO | | $119.00 | $119.00 |
| 1/8/16 | 3022 | STAPLES | OFFICE SUPPLIES | | $34.41 | $34.41 |
| 1/8/16 | EFT | UNITED PARCEL SERVICE | POSTAGE | | $48.82 | $48.82 |
| 1/8/16 | EFT | L.A. DEPT OF WATER & POWER | UTILITIES | | $418.56 | $418.56 |
| 1/9/16 | 3023 | LOWE'S | REPAIRS | | $774.74 | $774.74 |
| 1/11/16 | 3025 | MIDWEST LIGHTING | REPAIRS | | $289.90 | $289.90 |
| 1/11/16 | 3027 | BRAD WRIGHT | OUTSIDE SERVICES | | $619.63 | $619.63 |
| 1/11/16 | 3028 | GENNADIY MENDELSON | OUTSIDE SERVICES | | $240.00 | $240.00 |
| 1/11/16 | EFT | L.A. DEPT OF WATER & POWER | UTILITIES | | $243.38 | $243.38 |
| 1/11/16 | EFT | AT & T | TELEPHONE | | $10.06 | $10.06 |
| 1/11/16 | EFT | AT & T | TELEPHONE | | $73.40 | $73.40 |
| 1/11/16 | EFT | AT & T | TELEPHONE | | $204.15 | $204.15 |
| 1/11/16 | EFT | AT & T | TELEPHONE | | $370.33 | $370.33 |
| 1/12/16 | EFT | NORTHERN LEASING | CREDIT CARD FEES | | $87.36 | $87.36 |
| 1/12/16 | EFT | CAPITAL ONE | CREDIT CARD | | $312.70 | $312.70 |
| 1/12/16 | EFT | AT&T MOBILITY | TELEPHONE | | $45.00 | $45.00 |
| 1/12/16 | EFT | AT&T MOBILITY | TELEPHONE | | $45.00 | $45.00 |
| 1/12/16 | EFT | AT & T WIRELESS | TELEPHONE | | $154.17 | $154.17 |
| 1/13/16 | 3029 | ALBERTO HERNANDEZ | SUPPLIES | | $86.71 | $86.71 |
| 1/13/16 | 3030 | TYCO INTEGRATED SECURITY LLC | SECURITY | | $468.33 | $468.33 |
| 1/13/16 | EFT | AT & T | TELEPHONE | | $379.16 | $379.16 |
| 1/13/16 | EFT | CAPITAL ONE | CREDIT CARD | | $623.30 | $623.30 |
| 1/13/16 | EFT | CHASE CARD SERVICES | CREDIT CARD | | $713.15 | $713.15 |
| 1/14/16 | B/C | CITY NATIONAL BANK | BANK CHARGE | | $35.00 | $35.00 |
| 1/14/16 | WIRE | MARY CORSE, INC. | ARTIST PAYMENT | | $30,000.00 | $30,000.00 |
| 1/16/16 | 3031 | STAPLES | OFFICE SUPPLIES | | $43.68 | $43.68 |
| 1/18/16 | 3032 | GENNADIY MENDELSON | OUTSIDE SERVICES | | $250.00 | $250.00 |
| 1/18/16 | EFT | CAPITAL ONE | CREDIT CARD | | $468.34 | $468.34 |
| 1/18/16 | EFT | CAPITAL ONE | CREDIT CARD | | $488.18 | $488.18 |
| 1/18/16 | EFT | CAPITAL ONE | CREDIT CARD | | $508.97 | $508.97 |
| 1/18/16 | EFT | CHASE CARD SERVICES | CREDIT CARD | | $601.24 | $601.24 |
| 1/19/16 | B/C | CITY NATIONAL BANK | BANK CHARGE | | $5.00 | $5.00 |
| 1/20/16 | 3033 | SHIRLEY HOLST | ACCOUNTING | | $642.00 | $642.00 |
| 1/20/16 | TRANSFE | ART & ARCHITECTURE | TRANSFER PAYROLL | $16,160.00 | | $16,160.00 |
| 1/22/16 | B/C | CITY NATIONAL BANK | BANK CHARGES | | $35.00 | $35.00 |
| 1/22/16 | EBT | CITY NATIONAL BANK | BANK CHARGES | | $100.00 | $100.00 |
| 1/22/16 | EFT | UNITED PARCEL SERVICE | POASTAGE | | $12.22 | $12.22 |
| 1/22/16 | WIRE | L.A. COUNTY METROPOLITAN TRANSPO | RENT | | $80,000.00 | $80,000.00 |
| 1/25/16 | 3035 | SSR MIRACLE MILE | PARKING | | $1,800.00 | $1,800.00 |



| 1/25/16 | 3036 | GENNADIY MENDELSON | OUTSIDE SERVICES | | $220.00 | $220.00 |
| 1/26/16 | EFT | CAPITAL ONE | CREDIT CARD | | $298.91 | $298.91 |
| 1/26/16 | EFT | STATE FUND WORKER'S COMP. INS. | INSURANCE | | $2,389.58 | $2,389.58 |
| 1/29/16 | EFT | UNITED PARCEL SERVICE | POSTAGE. | | $40.88 | $40.88 |
| 1/25/16 | 3034 | NATALIE ARNOLDI | ARTIST PAYMENT | | $5,040.00 | $5,040.00 |
| | | | | | | |
| | | | | | | |
| | | TOTAL DISBURSEMENTS | | $33,235.00 | 344,215.44 | 377,450.44 |

## GENERAL ACCOUNT
## BANK RECONCILIATION

Bank statement Date: _____1/31/2016_____ Balance on Statement: _____$16,648.86_____

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

TOTAL DEPOSITS IN TRANSIT      | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| 1958 | 6/3/14 | 300.00 |
| 2350 | 1/16/15 | 106.25 |
| 2479 | 3/30/15 | 44.00 |
| 2641 | 6/30/15 | $150.00 |
| 2998 | 7/21/15 | $15.25 |
| 2707 | 7/28/15 | $292.10 |
| 2794 | 9/21/15 | $220.00 |
| 2933 | 11/10/15 | VOIDED |
| 2936 | 11/10/15 | $1,948.06 |
| 2948 | 11/16/2015 | $200.00 |
| 2956 | 11/19/15 | $261.60 |
| 3034 | 1/25/2016 | $5,040.00 |

TOTAL OUTSTANDING CHECKS:      | 8,577.26 |

Bank statement Adjustments:
Explanation of Adjustments-      _____

ADJUSTED BANK BALANCE:      $8,071.60



**CITY NATIONAL BANK**
The way up.®

Page 1          (73)

Account #: ████402

This statement: February 29, 2016
Last statement: January 29, 2016

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA  90210

001                                    0830K
ART AND ARCHITECTURE BOOKS OF THE 21ST
CENTURY DBA ACE GALLERY (GENERAL ACCT)          cnb.com
DIP CASE NO. 2:13-BK-14135-RK
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

## Checking Account

| Account Summary | | Account Activity | | |
|---|---|---|---|---|
| Account number | ████402 | Beginning balance (1/29/2016) | | $16,648.86 |
| Minimum balance | $3,765.62 | | | |
| Average balance | $44,498.38 | **Credits** Deposits (9) | + 94,488.00 | |
| Avg. collected balance | $36,752.00 | Electronic cr (8) | + 183,128.34 | |
| | | Other credits (4) | + 75,135.00 | |
| | | **Total credits** | | + $352,751.34 |
| | | **Debits** Checks paid (73) | - 178,523.04 | |
| | | Electronic db (28) | - 152,893.54 | |
| | | Other debits (6) | - 34,218.00 | |
| | | **Total debits** | | - $365,634.58 |
| | | **Ending balance (2/29/2016)** | | $3,765.62 |

## DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 2-1 | Deposit | | 13,310.00 |
| 2-3 | Deposit | | 960.00 |
| 2-4 | Deposit | | 27,155.00 |
| 2-9 | Deposit | | 604.00 |
| 2-11 | Deposit | | 4,525.00 |
| 2-12 | Deposit | | 20,800.00 |
| 2-19 | Deposit | | 26,274.00 |
| 2-23 | Deposit | | 60.00 |
| 2-25 | Deposit | | 800.00 |

## ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 2-2 | Incoming Wire-Dom | 162,137.50 |
| 2-3 | Preauthorized Credit SQUARE INC 160203P2 PPD ART AND ARCHIT | 1,512.00 |
| 2-5 | Preauthorized Credit SQUARE INC 160205P2 PPD ART AND ARCHIT | 420.59 |
| 2-10 | Preauthorized Credit SQUARE INC 160210P2 PPD ART AND ARCHIT | 233.40 |
| 2-16 | Preauthorized Credit SQUARE INC 160216P2 PPD ART AND ARCHIT | 57.75 |
| 2-18 | Preauthorized Credit SQUARE INC 160218P2 PPD ART AND ARCHIT | 347.10 |
| 2-19 | Preauthorized Credit SQUARE INC 160219P2 PPD ART AND ARCHIT | 424.00 |
| 2-24 | Wire Tsfr Credit | 17,996.00 |



**CITY NATIONAL BANK**
The way up.®

ART AND ARCHITECTURE BOOKS OF THE 21ST        Page 2
February 29, 2016                                            Account #: ███ 402

## OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 2-4 | Account Transfer Cr. FR ACC ███ 337 | | 9,990.00 |
| 2-9 | Account Transfer Cr. FR ACC ███ 337 | | 5,990.00 |
| 2-19 | Account Transfer Cr. FR ACC ███ 337 | | 55,170.00 |
| 2-23 | Account Transfer Cr. FR ACC ███ 337 | | 3,985.00 |

## CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2479 | 2-1 | 44.00 | 3055 | 2-19 | 24.00 | 3076 | 2-19 | 250.00 | 3103 * | 2-29 | 52.19 |
| 3034 * | 2-22 | 5,040.00 | 3056 | 2-9 | 124.97 | 3077 | 2-17 | 445.00 | 3104 | 2-26 | 52.50 |
| 3037 * | 2-3 | 23,520.00 | 3058 * | 2-11 | 52.25 | 3078 | 2-19 | 52.25 | 3106 * | 2-26 | 52.50 |
| 3039 * | 2-3 | 220.00 | 3059 | 2-17 | 49.50 | 3079 | 2-18 | 46.75 | 3107 | 2-26 | 42.00 |
| 3040 | 2-8 | 468.33 | 3060 | 2-12 | 46.75 | 3080 | 2-22 | 1,646.85 | 3108 | 2-26 | 42.00 |
| 3041 | 2-8 | 46.65 | 3061 | 2-11 | 52.25 | 3081 | 2-22 | 221.20 | 3109 | 2-26 | 42.00 |
| 3042 | 2-9 | 8.71 | 3062 | 2-11 | 52.25 | 3082 | 2-17 | 402.35 | 3111 * | 2-26 | 30.00 |
| 3043 | 2-5 | 535.43 | 3063 | 2-16 | 52.25 | 3085 * | 2-23 | 1,800.00 | 3112 | 2-26 | 60,000.00 |
| 3044 | 2-10 | 742.21 | 3064 | 2-16 | 79.75 | 3086 | 2-24 | 20.24 | 3113 | 2-29 | 26.00 |
| 3045 | 2-4 | 20.00 | 3065 | 2-16 | 79.75 | 3087 | 2-24 | 45.72 | 3117 * | 2-29 | 41.00 |
| 3046 | 2-8 | 25,000.00 | 3067 * | 2-12 | 35.75 | 3088 | 2-25 | 462.50 | 3120 * | 2-29 | 41.00 |
| 3047 | 2-10 | 612.00 | 3068 | 2-29 | 434.14 | 3089 | 2-22 | 42.00 | 3122 * | 2-29 | 50.00 |
| 3048 | 2-10 | 45.92 | 3069 | 2-16 | 2,430.60 | 3090 | 2-22 | 42.00 | 3123 | 2-29 | 50.00 |
| 3049 | 2-9 | 123.99 | 3070 | 2-11 | 44.00 | 3091 | 2-23 | 42.00 | 3126 * | 2-29 | 15.98 |
| 3050 | 2-9 | 397.46 | 3071 | 2-11 | 48.95 | 3094 * | 2-25 | 240.00 | 3127 | 2-29 | 391.62 |
| 3051 | 2-8 | 300.00 | 3072 | 2-22 | 960.00 | 3096 * | 2-29 | 501.70 | 9999 * | 2-24 | 5,858.93 |
| 3052 | 2-11 | 346.69 | 3073 | 2-17 | 7,900.00 | 3097 | 2-29 | 468.33 | | | |
| 3053 | 2-12 | 240.00 | 3074 | 2-16 | 38.50 | 3099 * | 2-24 | 30,000.00 | * Skip in check sequence | | |
| 3054 | 2-14 | 325.00 | 3075 | 2-22 | 38.50 | 3100 | 2-25 | 4,425.88 | | | |

## ELECTRONIC DEBITS

| Date | Description | Debits |
|---|---|---|
| 2-2 | Domestic Wire | 55,439.49 |
| 2-2 | Domestic Wire | 87,000.00 |
| 2-2 | Preauthorized Debit SO CAL EDISON CO BILL PAYMT WEB ART AND ARCHIT | 209.38 |
| 2-3 | Preauthorized Debit ATT PAYMENT TEL ART ARCHTR BK | 20.78 |
| 2-3 | Preauthorized Debit ATT PAYMENT TEL ACE GALLERY IN | 40.90 |
| 2-3 | Preauthorized Debit ATT PAYMENT TEL BLANK NAME | 68.63 |
| 2-3 | Preauthorized Debit ATT PAYMENT TEL ACE GALLERY IN | 73.46 |
| 2-3 | Preauthorized Debit CITY OF LA DWP W 8003425397 PPD ACE GALLERY | 204.12 |
| 2-3 | Preauthorized Debit ATT PAYMENT TEL ACE GALLERY IN | 471.53 |
| 2-3 | Preauthorized Debit WASTE MANAGEMENT 8668342080 100297376184 ART AND ARCHITECTU CCD | 880.35 |
| 2-4 | Preauthorized Debit CAPITAL ONE ONLINE PMT 603439919382638 8676879547CHRISMAS CCD | 468.79 |
| 2-4 | Preauthorized Debit CHASE EPAY WEB DOUGLAS CHRISM | 1,063.21 |
| 2-5 | Preauthorized Debit U. P. S. UPS BILL 160300000F89312 ACE CONTEMPORARY E CCD | 13.76 |
| 2-10 | Preauthorized Debit ATT PAYMENT TEL ACE GALLERYDIP | 204.34 |
| 2-10 | Preauthorized Debit CITY OF LA DWP W 8003425397 PPD ACE GALLERY | 465.91 |
| 2-10 | Preauthorized Debit CITY OF LA DWP W 8003425397 PPD ACE GALLERY | 565.86 |
| 2-12 | Preauthorized Debit U. P. S. UPS BILL 160370000F89312 ACE CONTEMPORARY E CCD | 31.23 |
| 2-16 | Preauthorized Debit ATT PAYMENT TEL ACE GALLERY IN | 45.00 |
| 2-16 | Preauthorized Debit ATT PAYMENT TEL ACE GALLERY IN | 45.00 |



**ART AND ARCHITECTURE BOOKS OF THE 21ST**  
February 29, 2016

Page 3  
Account #: ▊▊▊402

## ELECTRONIC DEBITS (Continued)

| Date | Description | Debits |
|------|-------------|-------:|
| 2-16 | Preauthorized Debit ATT PAYMENT TEL ART ARCHTR BK | 374.13 |
| 2-16 | Preauthorized Debit STATE COMP INS F 8887828338 PPD ART AND ARCHIT | 2,369.58 |
| 2-18 | Preauthorized Debit ATT PAYMENT TEL ACE GALLERY IN | 444.56 |
| 2-22 | Preauthorized Debit CAPITAL ONE ONLINE PMT 605039919544643 8213109887CHRISMAS CCD | 293.00 |
| 2-22 | Preauthorized Debit CAPITAL ONE ONLINE PMT 605039919544644 8676879547CHRISMAS CCD | 600.45 |
| 2-24 | Preauthorized Debit ATT PAYMENT TEL BLANK NAME | 68.90 |
| 2-25 | Preauthorized Debit BEVERLY HILLS CA E-CHECK 000000017387022 ART AND ARCHITECTU CCD | 312.70 |
| 2-26 | Preauthorized Debit U. P. S. UPS BILL 160510000F89312 ACE CONTEMPORARY E CCD | 54.90 |
| 2-29 | Preauthorized Debit CHASE EPAY WEB DOUGLAS CHRISM | 1,063.58 |

## OTHER DEBITS

| Date | Description | Reference | Debits |
|------|-------------|-----------|-------:|
| 2-2 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 2-2 | Service Charge DOMESTIC WIRE | | 35.00 |
| 2-2 | Service Charge DOMESTIC WIRE | | 35.00 |
| 2-5 | Account Transfer Dr. TO ACC 00123718410 | | 18,350.00 |
| 2-19 | Service Charge BUSINESS ONLINE AD D'L ACCTS FOR 01/16 | | 5.00 |
| 2-22 | Account Transfer Dr. TO ACC 00123718410 | | 15,780.00 |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|------|-------:|------|-------:|------|-------:|------|-------:|
| 1-29 | 16,648.86 | 2-8 | 17,592.14 | 2-17 | 30,924.39 | 2-25 | 67,217.06 |
| 2-1 | 29,914.86 | 2-9 | 23,531.01 | 2-18 | 30,780.18 | 2-26 | 6,901.16 |
| 2-2 | 49,320.49 | 2-10 | 21,128.17 | 2-19 | 112,316.93 | 2-29 | 3,765.62 |
| 2-3 | 26,246.07 | 2-11 | 25,056.78 | 2-22 | 87,652.93 | | |
| 2-4 | 61,839.07 | 2-12 | 45,503.05 | 2-23 | 89,855.93 | | |
| 2-5 | 43,360.47 | 2-16 | 39,721.24 | 2-24 | 71,858.14 | | |

## OVERDRAFT/RETURN ITEM FEES

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $ 0.00 | $ 0.00 |
| Total Returned Item Fees | $ 0.00 | $ 0.00 |

**Thank you for banking with City National Bank**



**IMPORTANT NOTICE**

Please examine your statement at once. You are in the best position to find errors or unauthorized transactions and you must tell us at once. If nothing is reported to us promptly this statement will be considered correct and any liability we may have to you may be limited.

**In case of errors or questions about your electronic funds transfers**:  Call or write us at the telephone number or address shown on the front of this statement if you think your statement or receipt is wrong or you need more information about a transfer listed on the statement or receipt.

**For Consumer accounts**:  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. (1) Tell us your name and account number. (2) Tell us the dollar amount of the suspected error. (3) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information. We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days for new accounts), we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**For Business and other non-Consumer accounts**:  We must hear from you at once if there is an error on your account or you think a transaction is unauthorized. We will investigate promptly. Failure to contact us may prevent us from blocking further unauthorized transactions or recovering money for you. If we made an error we will correct your account at the conclusion of our investigation.

**Direct Deposits**:  If you have arranged to have direct deposits (e.g. Social Security) made to your consumer account at least once every 60 days from the same person or company, you can call us at the telephone number on the front of this statement to find out whether the deposit has been made.

You may obtain a form to help you **balance your account** at www.cnb.com/reconcile or call us at the telephone number shown on the front of this statement to have a form mailed to you.

**All items credited are subject to final payment. See your *Account Agreement and Disclosures* or *Treasury Management Disclosure and Agreement* and *Fee Schedules* for other terms and conditions applicable to your account**.

## I. CASH RECEIPTS AND DISBURSEMENTS
## B. (PAYROLL ACCOUNT)

1. TOTAL RECEIPTS PER ALL PRIOR PAYROLL ACCOUNT REPORTS          1,106,392.41

2. LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR PAYROLL          1,106,375.64
ACCOUNT REPORTS

3. BEGINNING BALANCE:          16.77

4. RECEIPTS DURING CURRENT PERIOD:          33,235.00
   (Transferred from General Account)

5. BALANCE:          33,251.77

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
   TOTAL DISBURSEMENTS THIS PERIOD:***          33,247.44

7. ENDING BALANCE:          4.33

8. PAYROLL Account Number(s):          ████410

   Depository Name & Location:          **City National Bank**
                                        **400 N Roxbury Dr**
                                        **Beverly Hills, Ca. 90210**

## TOTAL DISBURSEMENTS FROM PAYROLL ACCOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| | | | | |
| | | | | |
| 1/5/16 | 2100 | RUBEN PARDO | PAYROLL 12/16/15-12/31/15 | $1,228.05 |
| 1/5/16 | 2101 | JENNIFER KELLEN | PAYROLL 12/16/15-12/31/15 | $2,113.50 |
| 1/5/16 | 2102 | JOAQUIN RAMIREZ | PAYROLL 12/16/15-12/31/15 | $1,545.29 |
| 1/5/16 | 2103 | ZACHARY FRIEDLINE | PAYROLL 12/16/15-12/31/15 | $1,890.63 |
| 1/5/16 | 2104 | ZACHARY FRIEDLINE | PAYROLL 12/16/15-12/31/15 | $435.31 |
| 1/5/16 | 2105 | TAYLOR MARTIN | PAYROLL 12/16/15-12/31/15 | $746.57 |
| 1/5/16 | 2106 | SARAH GRANETT | PAYROLL 12/16/15-12/31/15 | $1,054.36 |
| 1/5/16 | 2107 | JACOB WILLSON | PAYROLL 12/16/15-12/31/15 | $1,417.77 |
| 1/5/16 | 2108 | KATHRYN TAYLOR | PAYROLL 12/16/15-12/31/15 | $938.45 |
| 1/5/16 | 2109 | JOSE THOMAS | PAYROLL 12/16/15-12/31/15 | $1,202.84 |
| 1/5/16 | 2110 | FRANCISCO ORELLANA | PAYROLL 12/16/15-12/31/15 | $306.25 |
| 1/5/16 | 2111 | PEDRO RODRIGUEZ | PAYROLL 12/16/15-12/31/15 | $1,606.88 |
| 1/5/16 | 2112 | ALBERTO HERNANDEZ | PAYROLL 12/16/15-12/31/15 | $1,554.27 |
| 1/5/16 | 2113 | LUSINE ZMBOYAN | PAYROLL 12/16/15-12/31/15 | $1,045.84 |
| 1/20/16 | 2114 | LUSINE ZMBOYAN | PAYROLL 1/1/16-1/15/16 | $974.45 |
| 1/20/16 | 2115 | RUBEN PARDO | PAYROLL 1/1/16-1/15/16 | $1,179.69 |
| 1/20/16 | 2116 | JOAQUIN RAMIREZ | PAYROLL 1/1/16-1/15/16 | $1,566.35 |
| 1/20/16 | 2116 | JENNIFER BRYAN | PAYROLL 1/1/16-1/15/16 | $144.72 |
| 1/20/16 | 2118 | KATHRYN TAYLOR | PAYROLL 1/1/16-1/15/16 | $1,345.72 |
| 1/20/16 | 2121 | ZACHARY FRIEDLINE | PAYROLL 1/1/16-1/15/16 | $1,976.52 |
| 1/20/16 | 2122 | TAYLOR MARTIN | PAYROLL 1/1/16-1/15/16 | $975.17 |
| 1/20/16 | 2123 | JENNIFER KELLEN | PAYROLL 1/1/16-1/15/16 | $2,113.50 |
| 1/20/16 | 2125 | FRANCISCO ORELLANA | PAYROLL 1/1/16-1/15/16 | $1,005.95 |
| 1/20/16 | 2126 | ALBERTO HERNANDEZ | PAYROLL 1/1/16-1/15/16 | $1,361.89 |
| 1/20/16 | 2128 | SARAH GRANETT | PAYROLL 1/1/16-1/15/16 | $966.38 |
| 1/22/16 | 2129 | JACOB WILLSON | PAYROLL 1/1/16-1/15/16 | $1,301.09 |
| 1/21/2016 | TRANSFER | ART & ARCHITECTURE | TRANSFER | $1,250.00 |
| | | TOTAL DISBURSEMENTS | | $33,247.44 |

## PAYROLL ACCOUNT
## BANK RECONCILIATION

Bank statement Date: _____1/31/2016_____    Balance on Statement: _____$4.33_____

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                                     | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                    | |

Bank statement Adjustments:                                  _____
Explanation of Adjustments-

| |

ADJUSTED BANK BALANCE:                                       | $4.33 |

* It is acceptable to replace this form with a similar form
** Please attach a detailed explanation of any bank statement adjustment



**CITY NATIONAL BANK**
The way up.®

Page 1          (24)

Account #: ███████410

This statement: February 29, 2016
Last statement: January 29, 2016

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA  90210

cnb.com

001                                    0830K
ART AND ARCHITECTURE BOOKS OF THE 21ST
CENTURY DBA ACE GALLERY
DIP CASE NO. 2:13-BK-14135-RK
(PAYROLL ACCOUNT)
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

## Checking Account

| Account Summary | | Account Activity | | |
|---|---|---|---|---|
| Account number ███████410 | | Beginning balance  (1/29/2016) | | $ 4.33 |
| Minimum balance | $ 4.33 | | | |
| Average balance | $ 1,983.38 | Credits   Deposits      (0) | + 0.00 | |
| Avg. collected balance | $ 1,983.00 | Electronic cr  (0) | + 0.00 | |
| | | Other credits  (2) | + 34,130.00 | |
| | | **Total credits** | | + $ 34,130.00 |
| | | Debits   Checks paid   (24) | - 32,018.68 | |
| | | Electronic db  (0) | - 0.00 | |
| | | Other debits  (0) | - 0.00 | |
| | | **Total debits** | | - $ 32,018.68 |
| | | **Ending balance  (2/29/2016)** | | $ 2,115.65 |

## OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 2-5 | Account Transfer Cr. FR ACC ████ 402 | | 18,350.00 |
| 2-22 | Account Transfer Cr. FR ACC ████ 402 | | 15,780.00 |

## CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2130 | 2-5 | 1,698.73 | 2139 | 2-8 | 2,113.50 | 2146 | 2-23 | 457.67 | 2153 | 2-22 | 1,314.32 |
| 2131 | 2-5 | 1,880.70 | 2140 | 2-5 | 1,195.18 | 2147 | 2-22 | 958.09 | 2154 | 2-24 | 1,223.28 |
| 2132 | 2-8 | 2,438.06 | 2141 | 2-5 | 1,079.53 | 2148 | 2-24 | 1,003.95 | 2155 | 2-22 | 1,044.91 |
| 2133 | 2-8 | 435.31 | 2142 | 2-5 | 1,752.32 | 2149 | 2-23 | 1,578.70 | * Skip in check sequence | | |
| 2135 * | 2-9 | 1,166.80 | 2143 | 2-10 | 1,827.66 | 2150 | 2-22 | 1,521.24 | | | |
| 2136 | 2-8 | 1,284.77 | 2144 | 2-5 | 1,224.50 | 2151 | 2-22 | 2,046.96 | | | |
| 2138 * | 2-16 | 246.23 | 2145 | 2-23 | 1,088.27 | 2152 | 2-23 | 1,438.00 | | | |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|---|---|
| 1-29 | 4.33 | 2-9 | 2,084.93 | 2-22 | 8,905.52 | | |
| 2-5 | 9,523.37 | 2-10 | 257.27 | 2-23 | 4,342.88 | | |
| 2-8 | 3,251.73 | 2-16 | 11.04 | 2-24 | 2,115.65 | | |



ART AND ARCHITECTURE BOOKS OF THE 21ST          Page 2
February 29, 2016                               **Account #:** ███410

**OVERDRAFT/RETURN ITEM FEES**

|  | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $ 0.00 | $ 0.00 |
| Total Returned Item Fees | $ 0.00 | $ 0.00 |

Thank you for banking with City National Bank



**IMPORTANT NOTICE**

Please examine your statement at once. You are in the best position to find errors or unauthorized transactions and you must tell us at once. If nothing is reported to us promptly this statement will be considered correct and any liability we may have to you may be limited.

**In case of errors or questions about your electronic funds transfers**: Call or write us at the telephone number or address shown on the front of this statement if you think your statement or receipt is wrong or you need more information about a transfer listed on the statement or receipt.

　　**For Consumer accounts**:  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. (1) Tell us your name and account number. (2) Tell us the dollar amount of the suspected error. (3) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information. We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days for new accounts), we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

　　**For Business and other non-Consumer accounts**:  We must hear from you at once if there is an error on your account or you think a transaction is unauthorized. We will investigate promptly. Failure to contact us may prevent us from blocking further unauthorized transactions or recovering money for you. If we made an error we will correct your account at the conclusion of our investigation.

**Direct Deposits**:  If you have arranged to have direct deposits (e.g. Social Security) made to your consumer account at least once every 60 days from the same person or company, you can call us at the telephone number on the front of this statement to find out whether the deposit has been made.

You may obtain a form to help you **balance your account** at www.cnb.com/reconcile or call us at the telephone number shown on the front of this statement to have a form mailed to you.

**All items credited are subject to final payment. See your *Account Agreement and Disclosures* or *Treasury Management Disclosure and Agreement* and *Fee Schedules* for other terms and conditions applicable to your account**.

## I. CASH RECEIPTS AND DISBURSEMENTS
### C. (TAX ACCOUNT)

1.  TOTAL RECEIPTS PER ALL PRIOR TAX ACCOUNT REPORTS                948,357.98

2.  LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR TAX                    948,352.29
ACCOUNT REPORTS

3.  BEGINNING BALANCE:                                              5.69

4.  RECEIPTS DURING CURRENT PERIOD:
    (Transferred from General Account )

5.  BALANCE:                                                        5.69

6.  LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
    TOTAL DISBURSEMENTS THIS PERIOD:***

7.  ENDING BALANCE:                                                 5.69

8.                                              █████437

    Depository Name & Location:          **City National Bank**
                                         **400 N Roxbury Dr**
                                         **Beverly Hills, Ca. 90210**

| Date | Payee | Purpose | Amount |
|------|-------|---------|--------|
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
|      |       |         |        |
| TOTAL DISBURSEMENTS THIS PERIOD: | | | $0.00 |

TAX ACCOUNT
BANK RECONCILIATION

Bank statement Date: _____1/31/2016_____  Balance on Statement: _____$5.69_____

**Plus deposits in transit (a):**

| Deposit Date | Deposit Amount |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                                     [_____]

**Less Outstanding Checks (a):**

| Check Number | Check Date | Check Amount |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                    [_____]

Bank statement Adjustments:                                  _____
Explanation of Adjustments-

                                                             _____

ADJUSTED BANK BALANCE:                                       [$5.69.]

\* It is acceptable to replace this form with a similar form
\*\* Please attach a detailed explanation of any bank statement adjustment



Page 1          (0)

**Account #:** ████ 437

This statement: February 29, 2016
Last statement: January 29, 2016

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA  90210

001                                    0830K
ART AND ARCHITECTURE BOOKS OF THE 21ST
CENTURY DBA ACE GALLERY (T ACCOUNT)
DIP CASE NO. 2:13-BK-14135-RK
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

cnb.com

## Checking Account

| Account Summary | | Account Activity | |
|---|---|---|---|
| Account number | ████ 437 | Beginning balance  (1/29/2016) | $ 5.69 |
| Minimum balance | $ 5.69 | | |
| Average balance | $ 5.69 | Credits | + $ 0.00 |
| Avg. collected balance | $ 5.00 | Debits | - $ 0.00 |
| | | Ending balance  (2/29/2016) | $ 5.69 |

**\* \* No activity this statement period \* \***

## OVERDRAFT/RETURN ITEM FEES

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $ 0.00 | $ 0.00 |
| Total Returned Item Fees | $ 0.00 | $ 0.00 |

Thank you for banking with City National Bank



**IMPORTANT NOTICE**

Please examine your statement at once. You are in the best position to find errors or unauthorized transactions and you must tell us at once. If nothing is reported to us promptly this statement will be considered correct and any liability we may have to you may be limited.

**In case of errors or questions about your electronic funds transfers**: Call or write us at the telephone number or address shown on the front of this statement if you think your statement or receipt is wrong or you need more information about a transfer listed on the statement or receipt.

**For Consumer accounts**: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. (1) Tell us your name and account number. (2) Tell us the dollar amount of the suspected error. (3) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information. We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days for new accounts), we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**For Business and other non-Consumer accounts**: We must hear from you at once if there is an error on your account or you think a transaction is unauthorized. We will investigate promptly. Failure to contact us may prevent us from blocking further unauthorized transactions or recovering money for you. If we made an error we will correct your account at the conclusion of our investigation.

**Direct Deposits**: If you have arranged to have direct deposits (e.g. Social Security) made to your consumer account at least once every 60 days from the same person or company, you can call us at the telephone number on the front of this statement to find out whether the deposit has been made.

You may obtain a form to help you **balance your account** at www.cnb.com/reconcile or call us at the telephone number shown on the front of this statement to have a form mailed to you.

**All items credited are subject to final payment. See your *Account Agreement and Disclosures* or *Treasury Management Disclosure and Agreement* and *Fee Schedules* for other terms and conditions applicable to your account**.



Equal Housing Lender

I. CASH RECEIPTS AND DISBURSEMENTS
SUBRENTS ACCOUNT

1. TOTAL RECEIPTS PER ALL PRIOR RENTAL ACCOUNT REPORTS   3,519,419.00

2. LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR TAX    3,519,417.79
ACCOUNT REPORTS

3. BEGINNING BALANCE:                                1.21

4. RECEIPTS DURING CURRENT PERIOD:
        (Transferred from General Account)
        Accounts Receivable& Bank Charge
        Rents Collected                              84,669.32
5. BALANCE:                                          84,670.53

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
        TOTAL DISBURSEMENTS THIS PERIOD:***
        Disbursement - Other                52.00
        (Transferred to General Account)    84,610.00    84,662.00


7. ENDING BALANCE:                                   8.53

        8 Rental Account Numbers              ███ 337
                                       City National Bank
        Depository Name & Location:    400 N Roxbury Dr
                                       Beverly Hills, Ca. 90210

TOTAL DISBURSEMENTS FROM SUBRENTS ACCOUNT FOR CURRENT PERIOD

| mm/dd/yyy | Number | Payee | Purpose | Transfered | Disbursed | Amount |
|---|---|---|---|---|---|---|
| 1/26/15 | SC013116 | CITY NATIONAL | BANK CHARGE | | 13.00 | 13.00 |
| 1/6/16 | SC013116 | CITY NATIONAL | BANK CHARGE | | 13.00 | 13.00 |
| 1/6/16 | TRANSFER | TRANSFER | TRANSFER | 19,985.00 | | 19,985.00 |
| 1/19/16 | SC013116 | CITY NATIONAL | BANK CHARGE | | 13.00 | 13.00 |
| 1/20/16 | TRANSFER | TRANSFER | TRANSFER | 1,990.00 | | 1,990.00 |
| 1/22/16 | TRANSFER | TRANSFER | TRANSFER | 55,160.00 | | 55,160.00 |
| 1/26/16 | TRANSFER | TRANSFER | TRANSFER | 5,995.00 | | 5,995.00 |
| 1/29/16 | SC013116 | CITY NATIONAL | BANK CHARGE | | 13.00 | 13.00 |
| 1/29/16 | CR008410 | TRANSFER | TRANSFER | 1,480.00 | | 1,480.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | 84,610.00 | 52.00 | 84,662.00 |

SUBRENTS ACCOUNT
BANK RECONCILIATION

Bank statement Date: ___January 31, 2016___    Balance on Statement:    $8.53

Plus deposits in transit (a):

| Deposit Date | | Deposit Amount |
|---|---|---|
| ———————— | | ———————— |
| ———————— | | ———————— |
| ———————— | | ———————— |
| ———————— | | ———————— |

TOTAL DEPOSITS IN TRANSIT

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |

TOTAL OUTSTANDING CHECKS:

Bank statement Adjustments:
Explanation of Adjustments-

ADJUSTED BANK BALANCE:    $8.53

* It is acceptable to replace this form with a similar form
** Please attach a detailed explanation of any bank statement adjustment



**CITY NATIONAL BANK**
The way up.®

Page 1          (0)

Account #: ▮▮▮▮337

This statement: February 29, 2016
Last statement: January 29, 2016

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

001                                    0830K
ART AND ARCHITECTURE BOOKS OF THE 21ST
CENTURY DBA ACE GALLERY (RENTS ACCOUNT)
DIP CASE NO. 2:13-BK-14135-RK
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA  90036

cnb.com

## Checking Account

| Account Summary | | Account Activity | | |
|---|---|---|---|---|
| Account number ▮▮▮337 | | Beginning balance (1/29/2016) | | $8.53 |
| Minimum balance | $1.85 | | | |
| Average balance | $197.32 | Credits  Deposits  (0) | + 0.00 | |
| Avg. collected balance | $197.00 | Electronic cr  (4) | + 75,169.32 | |
| | | Other credits (0) | + 0.00 | |
| | | **Total credits** | | +$75,169.32 |
| | | | | |
| | | Debits  Checks paid  (0) | - 0.00 | |
| | | Electronic db  (0) | - 0.00 | |
| | | Other debits  (7) | - 75,174.00 | |
| | | **Total debits** | | -$75,174.00 |
| | | | | |
| | | Ending balance  (2/29/2016) | | $3.85 |

### ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 2-4 | Incoming Wire-Dom | 10,000.00 |
| 2-8 | Incoming Wire-Dom | 6,000.00 |
| 2-19 | Preauthorized Credit FEDEX SVCS ACH ACCTS PAY ▮▮▮239 ART & ARCHITECTU CTX | 55,169.32 |
| 2-23 | Incoming Wire-Dom | 4,000.00 |

### OTHER DEBITS

| Date | Description | Reference | Debits |
|---|---|---|---|
| 2-4 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 2-4 | Account Transfer Dr. TO ACC▮▮▮402 | | 9,990.00 |
| 2-8 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 2-9 | Account Transfer Dr. TO ACC▮▮▮402 | | 5,990.00 |
| 2-19 | Account Transfer Dr. TO ACC▮▮▮402 | | 55,170.00 |
| 2-23 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 2-23 | Account Transfer Dr. TO ACC▮▮▮402 | | 3,985.00 |

### DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|---|---|
| 1-29 | 8.53 | 2-8 | 5,992.53 | 2-19 | 1.85 | | |
| 2-4 | 5.53 | 2-9 | 2.53 | 2-23 | 3.85 | | |



ART AND ARCHITECTURE BOOKS OF THE 21ST
February 29, 2016

Page 2
Account #: ███337

**OVERDRAFT/RETURN ITEM FEES**

|  | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $ 0.00 | $ 0.00 |
| Total Returned Item Fees | $ 0.00 | $ 0.00 |

Thank you for banking with City National Bank



**IMPORTANT NOTICE**

Please examine your statement at once. You are in the best position to find errors or unauthorized transactions and you must tell us at once. If nothing is reported to us promptly this statement will be considered correct and any liability we may have to you may be limited.

**In case of errors or questions about your electronic funds transfers**:  Call or write us at the telephone number or address shown on the front of this statement if you think your statement or receipt is wrong or you need more information about a transfer listed on the statement or receipt.

    **For Consumer accounts**:  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. (1) Tell us your name and account number. (2) Tell us the dollar amount of the suspected error. (3) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information. We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days for new accounts), we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

    **For Business and other non-Consumer accounts**:  We must hear from you at once if there is an error on your account or you think a transaction is unauthorized. We will investigate promptly. Failure to contact us may prevent us from blocking further unauthorized transactions or recovering money for you. If we made an error we will correct your account at the conclusion of our investigation.

**Direct Deposits**:  If you have arranged to have direct deposits (e.g. Social Security) made to your consumer account at least once every 60 days from the same person or company, you can call us at the telephone number on the front of this statement to find out whether the deposit has been made.

You may obtain a form to help you **balance your account** at www.cnb.com/reconcile or call us at the telephone number shown on the front of this statement to have a form mailed to you.

**All items credited are subject to final payment. See your *Account Agreement and Disclosures* or *Treasury Management Disclosure and Agreement* and *Fee Schedules* for other terms and conditions applicable to your account.**

City National Bank, Member FDIC                                                                                                    Equal Housing Lender

ID 23001E (Rev 06/2014)

## I. D SUMMARY SCHEDULE OF CASH

**ENDING BALANCES FOR THE PERIOD:**

(Provide a copy of monthly account statements for each of the below)

|  |  |  |
|---|---|---|
| General Account: | 8,071.60 |
| Payroll Account: | 4.33 |
| Tax Account: | 5.69 |
| *Other Accounts: | Rent Account | 8.53 |
| | | |
| *Other Monies: | | |
| | **Petty Cash (from below): | 591.00 |

**TOTAL CASH AVAILABLE:**                              8,681.15

**Petty Cash Transactions:**

| Date | Purpose | Amount |
|------|---------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**TOTAL PETTY CASH TRANSACTIONS:**                        0.00

* Specify the Type of holding (e.g. CD, Savings Account, Investment Security), and the depository name, location & account#
** Attach Exhibit Itemizing all petty cash transactions

## II. STATUS OF PAYMENTS TO SECURED CREDITORS, LESSORS AND OTHER PARTIES TO EXECUTORY CONTRACTS

| Creditor, Lessor, Etc. | Frequency of Payments (Mo/Qtr) | Amount of Payment | Post-Petition payments not made (Number) | Total Due |
|---|---|---|---|---|
| AERC Desmond's 5500 Wilshire LLC | Monthly | $ 168,516.47 | 0 | 0.00 |
| L A County Metro | Monthly | $ 70,000.00 | 0 | 0.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DUE: | 0.00 |

## III. TAX LIABILITIES

FOR THE REPORTING PERIOD:

| | | |
|---|---|---|
| Gross Sales Subject to Sales Tax: | 81,584.00 | |
| Total Wages Paid: | 40,733.02 | |

| | Total Post-Petition Amounts Owing | Amount Delinquent | Date Delinquent Amount Due |
|---|---|---|---|
| Federal Withholding | 8,727.43 | Pd 4590.51 3/10/16 | |
| State Withholding& SDI | 5,829.61 | | |
| FICA- Employer's Share | 6,617.35 | Pd 3501.25 3/10/16 | |
| FICA- Employee's Share | 6,617.35 | Pd 3501.25 3/10/16 | |
| Federal Unemployment | | | |
| Sales and Use | 48,872.01 | | |
| Real Property | | | |
| Other: | | | |
| TOTAL: | 76,663.75 | 0.00 | |

## IV.  AGING OF ACCOUNTS PAYABLE AND RECEIVABLE

|  | *Accounts Payable Post-Petition | Accounts Receivable | |
|---|---|---|---|
|  |  | Pre-Petition | Post-Petition |
| 30 days or less | 299,474.92 |  | 368,894.00 |
| 31 - 60 days | 195,760.00 | 22,180.00 | 428,707.50 |
| 61 - 90 days | 300,120.00 |  | 307,000.00 |
| 91 - 120 days | 35,330.00 |  | 17,440.00 |
| Over 120 days | 1,490,584.47 | 3,165,359.80 | 4,917,402.90 |
| TOTAL: | 2,321,269.39 | 3,187,539.80 | 6,039,444.40 |

## V. INSURANCE COVERAGE

|  | Name of Carrier | Amount of Coverage | Policy Expiration Date | Premium Paid Through (Date) |
|---|---|---|---|---|
| General Liability | Golden Eagle | 4,000,000.00 | 6/11/2016 | 1/15/2016 |
| Worker's Compensation | Liberty Mutual | 1,000,000.00 | 1/1/2017 | 2/1/2016 |
| General Liability-Parking Lot | General Star | 1,000,000.00 | No longer have parking lot |  |
| Vehicle | Golden Eagle | 1,000,000.00 | 6/11/2016 | 1/15/2016 |
| Others: Commercial Umbrella | Golden Eagle | 1,000,000.00 | 6/11/2016 | 1/15/2016 |
| Commercail Fine Art | C N A INS | 2,700,000.00 | 6/11/2016 | 1/15/2016 |

## VI.  UNITED STATES TRUSTEE QUARTERLY FEES
## (TOTAL PAYMENTS)

| Quarterly Period Ending (Date) | Total Disbursements | Quarterly Fees | Date Paid | Amount Paid | Quarterly Fees Still Owing |
|---|---|---|---|---|---|
| 31-Mar-2013 | 326,673.07 | 4,875.00 | 25-Apr-2013 | 4,875.00 | 0.00 |
| 30-Jun-2013 | 1,322,985.77 | 6,500.00 | 13-Jul-2013 | 6,500.00 | 0.00 |
| 30-Sep-2013 | 2,780,005.71 | 9,750.00 | 28-Oct-2013 | 9,750.00 | 0.00 |
| 31-Dec-2013 | 1,564,672.97 | 6,500.00 | 31-Jan-2014 | 6,500.00 | 0.00 |
| 31-Mar-2014 | 1,830,594.71 | 6,500.00 | 30-Apr-2014 | 6,500.00 | 0.00 |
| 30-Jun-2014 | 1,556,449.01 | 6,500.00 | 30-Jun-2014 | 6,500.00 | 0.00 |
| 30-Sep-2014 | 1,761,782.15 | 6,500.00 | 30-Sep-2014 | 6,500.00 | 0.00 |
| 31-Dec-2014 | 1,862,333.06 | 6,500.00 | 3-Feb-2015 | 6,500.00 | 0.00 |
| 31-Mar-2015 | 1,820,878.39 | 6,500.00 | 30-Apr-2015 | 6,500.00 | 0.00 |
| 30-Jun-2015 | 1,833,480.72 | 6,500.00 | 15-Aug-2015 | 6,500.00 | 0.00 |
| 30-Sep-2015 | 1,573,645.42 | 6,500.00 | 30-Sep-2015 | 6,500.00 | 0.00 |
| 31-Dec-2015 | 2,069,876.54 | 9,750.00 | 31-Dec-2015 | 0.00 | 9,750.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  | 82,875.00 |  | 73,125.00 | 9,750.00 |

\* Post-Petition Accounts Payable SHOULD NOT include professionals' fees and expenses which have been incurred but not yet awarded by the court.  Post-Petition Accounts Payable SHOULD include professionals' fees and expenses authorized by Court Order but which remain unpaid as of the close of the period report

## VII SCHEDULE OF COMPENSATION PAID TO INSIDERS

| Name of Insider | Date of Order Authorizing Compensation | *Authorized Gross Compensation | Gross Compensation Paid During the Month |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## VIII.  SCHEDULE OF OTHER AMOUNTS PAID TO INSIDERS

| Name of Insider | Date of Order Authorizing Compensation | Description | Amount Paid During the Month |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

* Please indicate how compensation was identified in the order (e.g. $1,000/week, $2,500/month)

## IX. PROFIT AND LOSS STATEMENT
### (ACCRUAL BASIS ONLY)

| | Current Month | Cumulative Post-Petition |
|---|---|---|
| **Sales/Revenue:** | | |
| Gross Sales/Revenue | 421,991.67 | 22,601,105.72 |
| Less: Returns/Discounts | | |
| Net Sales/Revenue | 421,991.67 | 22,601,105.72 |
| | | |
| **Cost of Goods Sold:** | | |
| Beginning Inventory at cost | | |
| Purchases | 32,500.00 | 7,643,741.26 |
| Less: Ending Inventory at cost | | |
| Cost of Goods Sold (COGS) | 32,500.00 | 7,643,741.26 |
| | | |
| **Gross Profit** | 389,491.67 | 14,957,364.46 |
| | | |
| Other Operating Income (Itemize) | | |
| | | |
| **Operating Expenses:** | | |
| Payroll - Insiders | | |
| Payroll - Other Employees | 42,319.80 | 1,454,587.88 |
| Payroll Taxes | 5,967.43 | 155,539.05 |
| Other Taxes (Itemize)  10% Parking Tax | | 7,165.07 |
| Misc Taxes-Property | | 130,574.58 |
| Depreciation and Amortization | | |
| Rent Expense - Real Property | 306,439.49 | 9,864,601.79 |
| Lease Expense - Personal Property | | 10,394.37 |
| Insurance | (5,545.51) | 158,726.06 |
| Depreciation and Amortization | | 41,675.00 |
| Real Property Taxes | | 458,087.46 |
| Telephone and Utilities | 6,737.66 | 234,439.29 |
| Repairs and Maintenance | 583.88 | 58,730.65 |
| Parking | 1,852.15 | 32,031.00 |
| Office | 885.56 | 55,421.10 |
| Accounting | | 31,197.04 |
| Freight & Postage | 168.48 | 103,021.86 |
| Exhibition Expense | (6,501.53) | 227,250.84 |
| Legal & Professional Fees | | 12,537.39 |
| Travel and Meals | 2,654.91 | 103,043.03 |
| Advertising | | 14,932.06 |
| Commission | | 79,970.00 |
| Security | 446.53 | 21,691.25 |
| Miscellaneous Operating Expenses (Itemize) | 4,606.79 | 133,511.07 |
| Total Operating Expenses | 360,615.64 | 13,389,127.84 |
| Net Gain/(Loss) from Operations | 28,876.03 | 1,568,236.62 |
| | | |
| **Non-Operating Income:** | | |
| Interest Income | | 67.35 |
| Net Gain on Sale of Assets (Itemize) | | 20,690,553.03 |
| Other (Itemize) | | 13,350.00 |
| Total Non-Operating income | | 20,703,970.38 |
| | | |
| **Non-Operating Expenses:** | | |
| Interest Expense-Escrow loan payoffs | | 338,277.95 |
| Legal and Professional (Itemize) | 732,645.06 | 8,253,096.52 |
| Other (Itemize) Trustee Fee | | 82,627.85 |
| Total Non-Operating Expenses | 732,645.06 | 8,674,002.32 |
| | | |
| **NET INCOME/(LOSS)** | (703,769.03) | 13,598,204.68 |

**Compiled for Court**

(Attach exhibit listing all itemizations required above)

## X. BALANCE SHEET
### (ACCRUAL BASIS ONLY)

**ASSETS** — Current Month End

| | |
|---|---:|
| Current Assets: | |
| Unrestricted Cash | 8,675.46 |
| Restricted Cash | 5.69 |
| Lawyer's Bankruptcy Trust Account | 2,705,135.32 |
| Accounts Receivable | 6,039,444.40 |
| Inventory (Need to Adj for updated inventory list) | 3,014,459.02 |
| Notes Receivable | 3,187,539.80 |
| Prepaid Expenses | |
| Other (Itemize)-Escrow Deposit-Holdback AERC | 5,054,000.00 |
| **Total Current Assets** | **20,009,259.69** |

| | | |
|---|---:|---:|
| Property, Plant, and Equipment | 655,195.91 | |
| Accumulated Depreciation/Depletion | (268,719.00) | |
| Net Property, Plant, and Equipment | | 386,476.91 |

| | | |
|---|---:|---:|
| Other Assets (Net of Amortization): | | |
| Due from Insiders | | |
| Other (Itemize)Deposit | 60,474.00 | |
| Total Other Assets | | 60,474.00 |

| | |
|---|---:|
| **TOTAL ASSETS** | **20,456,210.60** |

**LIABILITIES**

| | |
|---|---:|
| Post-petition Liabilities: | |
| Accounts Payable | 2,321,269.39 |
| Taxes Payable | 76,663.75 |
| Accounts Payable-Legal | |
| Loan Payable Douglas Chrismas | 14,094.79 |
| Loan Payable Eric Wilson | - |
| Secured Debt | |
| Other (Itemize) | 16,500.00 |
| **Total Post-petition Liabilities** | **2,428,527.93** |

| | |
|---|---:|
| Pre-petition Liabilities: | |
| Secured Liabilities | 632,884.90 |
| Priority Liabilities | 755,054.13 |
| Unsecured Liabilities (Payments to Landlords per Cour during Sept.) | 12,357,804.85 |
| Other (Itemize) | |
| Total Pre-petition Liabilities (Subject to Debtor's adjustments based on its review | 13,745,743.88 |

| | |
|---|---:|
| **TOTAL LIABILITIES** | **16,174,271.81** |

| | |
|---|---:|
| EQUITY: | |
| Pre-petition Owners' Equity | (9,316,265.89) |
| Post-petition Profit/(Loss) | 13,598,204.68 |
| Direct Charges to Equity | |
| **TOTAL EQUITY** | **4,281,938.79** |

| | |
|---|---:|
| **TOTAL LIABILITIES & EQUITY** | **20,456,210.60** |

COMPILED FOR COURT

## XI. QUESTIONNAIRE

|  |  | No | Yes |
|---|---|---|---|
| 1. | Has the debtor-in-possession made any payments on its pre-petition unsecured debt, except as have been authorized by the court? If "Yes", explain below: | x | _____ |

|  |  | No | Yes |
|---|---|---|---|
| 2. | Has the debtor-in-possession during this reporting period provided compensation or remuneration to any officers, directors, principals, or other insiders without appropriate authorization? If "Yes", explain below: | x | _____ |

3. State what progress was made during the reporting period toward filing a plan of reorganization
Management is still in the process of evaluating future sales, determining revenue sources, cash flow and projected expenses in order to prepare a comprehensive basis for creating a reorganization plan. Management is also focusing on creating an sound program for increasing sales revenue and positive cash flow of the company that will support the future proposed reorganization plan.

4. Describe potential future developments which may have a significant impact on the case:
The company's ability to generate sales revenue that will support its reorganization program can be severely damaged, if not completely destroyed, if due to future negative developments in company's dispute with the property owner / landlord, the gallery loses the lease for its location where the gallery conducts 50% of its business.

5. Attach copies of all Orders granting relief from the automatic stay that were entered during the reporting period.
N/A

|  |  | No | Yes |
|---|---|---|---|
| 6. | Did you receive any exempt income this month, which is not set forth in the operating report? If "Yes", please set forth the amounts and sources of the income below. | X | _____ |

I, [enter your name and title here], DOUGLAS CHRISMAS
declare under penalty of perjury that I have fully read and understood the foregoing debtor-in-possession operating report and that the information contained herein is true and complete to the best of my knowledge.

# EXHIBIT 3

1  CAROLYN A. DYE (SBN 97527)
   3435 Wilshire Blvd.
2  Suite 990
   Los Angeles, CA 90010
3  Telephone: 213/368-5000
   Facsimile: 213/368-5009
4  Email: trustee@cadye.com

5  Attorney for Sam S. Leslie,
   Plan Agent

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

11

12  In re                           ) Case No. 2:13-bk-14135-RK
                                     )      [Chapter 11]
13  ART AND ARCHITECTURE BOOKS OF    )
    THE 21ST CENTURY, a California   ) PLAN IMPLEMENTATION REPORT OF
14  corporation,                     ) PLAN AGENT AND REQUEST FOR
                                     ) CONTINUANCE
15                                   )
                          Debtor.    ) Date:  September 21, 2016
16                                   ) Time:  11:00 a.m.
                                     ) Place: Courtroom 1675
17                                   )        255 E. Temple Street
                                     )        Los Angeles, CA 90012
18  ─────────────────────────────────)

19  TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE:

20       Sam S. Leslie, the Plan Agent in the Chapter 11 Plan of the

21  Committee of Unsecured Creditors ("Plan Agent"), hereby delivers

22  to the Court this Plan Implementation Report.

23       This report supplements the matters discussed in the

24  previous Status Reports filed on May 12, 2016 (Docket No. 2026)

25  and on June 28, 2016 (Docket No. 2076) by Plan Agent, at the

26  hearing held on July 6, 2016, and in the Plan Implementation

27  Report (Docket No. 2093) filed on July 14, 2016.  In particular,

28  this report updates the Court on current operations, the status

**00001**

1 | of available cash and explains the Plan Agent's continuing

2 | inability to make the payments required to be made, in the Plan's

3 | language, "as soon as practicable" after the Effective Date.

4 |     <u>Plan Agent's Effective Date Responsibilities</u>.  The Plan

5 | provides in Section 3.1 that "...each holder of an Administrative

6 | Claim shall receive from the estate...cash equal to the unpaid

7 | portion of such Allowed Administrative Expense on or as soon as

8 | practicable after (a) the Effective Date or (b) the date such

9 | administrative expense becomes an Allowed Administrative

10 | Expense."

11 |     For all the reasons previously explained by Plan Agent and

12 | due to the lack of available cash, Plan Agent has been and

13 | remains unable to comply with this portion of the Plan. The Plan

14 | Agent assumed management control on April 6, 2016, of a business

15 | which was markedly different than the one portrayed in the MOR's

16 | filed with the Court and which was considered when the Plan was

17 | negotiated and confirmed. The cash available, the sales, and

18 | accounts receivable were materially misrepresented.

19 |     Around March 30, 2016, Douglas Chrismas caused to be

20 | transferred $50,000 from the ACE bank account to ACE Museum,

21 | caused $100,000 in proceeds from the sale of art belonging to ACE

22 | to be sent to his affiliate, ACE Museum, and caused an additional

23 | $114,595 in proceeds from the sale art belonging to ACE to be

24 | sent directly to ACE Museum's landlord. As a result, on April 6,

25 | 2016, the date Plan Agent assumed his operational

26 | responsibilities a payroll was due, there were insufficient funds

27 | to cover the check that had been tendered for the rent on the

28 | Mid-Wilshire gallery and employee payroll, the rent on the

-2-

00002

1  Beverly Hills gallery space was behind by two months, and a
2  significant amount of trade payables had accrued. It was quickly
3  determined that the accounts receivable disclosed in the Debtor's
4  most recent MORs filed did not reflect true receivables due from
5  customers and provided no basis for funding operations. For
6  example, the MOR for January 2016 (the most recently filed MOR)
7  showed a post-petition Accounts Receivable balance of
8  $6,039,444.00 and a pre-petition Accounts Receivable balance of
9  $3,187,539.80 (reported on the balance sheet attached to that MOR
10  as Notes Receivable as disclosed in the MOR Report.) (See Exhibit
11  A.) However, when the Plan Agent assumed control and inquired as
12  to the nature of the receivables, he discovered that the total
13  receivable on trade accounts consisted of one partially recovered
14  recent sale in the total amount of $30,000.  Further, the "Notes
15  Receivable" reflected a "note" that Chrismas had arranged to
16  authorize the transfer of the debtor's funds to his affiliate,
17  ACE Museum, an entity without cash, assets, revenues, projected
18  revenues, nor any way either presently or in the future to repay
19  the "note".  Additionally, the Plan Agent found that basic
20  operational matters such as insurance, security, and inventory
21  procedures were either woefully inadequate or non-existent and
22  needed immediate attention. Not only was the Plan Agent unable to
23  make the payments required under the Plan for Allowed
24  Administrative Expenses, Plan Agent had to borrow on an emergency
25  basis $200,000 from Wilson Administrative Services, Inc. (Eric
26  Wilson's company) ("Wilson"), simply to cover the rents, payroll
27  and other immediate operational obligations.
28  ///

-3-

1     For the reasons described herein, the most realistic

2     prospect for the payments due after the Effective date to be made

3     and the Plan to be fully implemented as contemplated will require

4     a Monetization Event.

5     <u>Accrued Professional Fees</u>. The chart below summarizes the

6     number and amount of the applications for professional fees and

7     other administrative expenses to be heard on September 21, 2016.

8     (See Exhibit B.)

9     The amount of these requested accumulated fees in total

10     $3,058,209.22 adds a significant financial burden to the Plan's

11     Implementation.

12     <u>Additional Artists' Chapter 11 Administrative Claims</u>. In

13     addition to the professional fees for which payment is now sought

14     to be approved and allowed, since the Effective Date, the amount

15     of the Chapter 11 Administrative Claims has been increased by the

16     amounts now known to be owed to artists whose work was sold

17     during the Chapter 11 but who were not paid. Some of these

18     artists did not even realize ACE was in bankruptcy and thus had

19     not filed claims. Despite California state law requiring

20     disclosure of a sale and the payment due to the artist whose work

21     was consigned to ACE,  most artists had not been informed when

22     their works were sold and even those who may have been aware of

23     the bankruptcy were uncertain whether they were owed funds and

24     unable to calculate the amount of their claim.

25     Reconciliations for approximately 31 artists have been

26     substantially completed or are in process with upwards of 30 more

27     to be done. Stipulations quantifying the Chapter 11 and

28     pre-petition claims have been reached with 5 artists and more

00004

1    will be completed in the coming weeks. As of the date of this

2    report, Plan Agent has identified approximately $3,758,091 in

3    prepetition claims and $3,401,085 in Chapter 11 administrative

4    claims for artists whose work was sold but for which they were

5    not paid, most of whom were not even aware a bankruptcy case had

6    been filed and thus could not have filed a proof of claim. These

7    will need to be added to the pool of Administrative and general

8    unsecured creditors' claims.[1] In addition, one purchaser has come

9    forward claiming it is owed $858,727.50 arising from a "credit"

10   allowed after the purchaser returned artwork and that Chrismas

11   had resolved the issue by allowing a credit for future purchases,

12   none of which were ever made. This is potentially an additional

13   pre-petition general unsecured claim which is still being

14   investigated.

15       Generally following the format approved by the Court for one

16   artist, plan Agent is agreeing to partially satisfy those Chapter

17   11 Administrative Claims by paying an additional 20% of the sales

18   price (in additional to the amount owed to the artist of 50%) as

19   sales of the works are completed. While this does reduce the

20   funds available to ACE from sales of those artists' work for

21   operations, it has had the positive effect of enhancing the

22   relationship with the artists and providing an opportunity for

23   continued representation of these artists. Other personal

24   outreach efforts by Plan Agent, art consultants and staff has

25   resulted in restoring the artists' confidence in ACE's

26   operations.

27   _____

28   1/ This figure is subject to adjustment as the reconciliations are finalized
     and completed for those whose accounting has not been reviewed.

**00005**

1    <u>Operational Status</u>.  On the brighter side, from an

2    operational aspect, things are running smoothly. Relationships

3    with artists have been repaired, new exhibitions have been held

4    and more are planned and ACE's staff is motivated, committed and

5    constructively helpful.(See Exhibit C, ACE Gallery News) Traction

6    for sales has been building and the rate of increase in sales

7    revenue, especially recently, is positive.

8        The tax return for fiscal year ended May 31, 2016, has been

9    completed in draft form subject to confirming accruals for

10   certain items, including accruals for the final amounts due

11   artists.  After taking into account certain information that was

12   not available when the tax reserve was established and the net

13   operating loss carryforward available for fiscal year ended May

14   31, 2016, Plan Agent is of the belief that ACE is actually in a

15   tax loss position and no tax will be owed for that period. That

16   conclusion and the lien releases obtained through resolutions

17   reached with the Internal Revenue Service, the Employment

18   Development Department, and State Board of Equalization, has

19   allowed Plan Agent to release the full amount previously held on

20   reserve for payment of these tax lien liabilities.  These funds

21   were used to stabilize operations and pay operating expenses as

22   they came due and enabled operations (including sizeable rent

23   obligations) to continue without obtaining any further advances

24   from Wilson.

25       Plan Agent is current on operating expenses, rent, payroll

26   and all payroll and sales tax payments due. There is adequate

27   insurance coverage in force. (Plan Agent had to substantially

28   increase the level of coverage after evaluating the inventory and

**00006**

1 the previous coverage limits.) A new security system has been

2 installed at the Mid-Wilshire location, locks rekeyed and certain

3 door access reinforced.

4     Chrismas's departure from the gallery has provided an

5 opportunity to "re-brand" ACE and interest collectors and

6 institutions who in the past were reluctant to do business with

7 ACE and Chrismas.[2] Through the work of his art consultants, ACE

8 has been visited by no less than six representatives from

9 prestigious museums and some have indicated interest in acquiring

10 artwork. No fewer than 40 institutions and collectors have been

11 personally contacted by the art consultants and among them many

12 have requested images and prices of certain work, which is often

13 the first step to acquisitions. The timetable for consummating

14 these types of acquisitions, as Plan Agent has learned, is

15 complicated by the approval process of the institutional

16 acquisition committees (if required by the institution), budget

17 funds available, and/or obtaining the agreement of collectors who

18 buy specific artwork for donation to museums. Through the

19 continued effort of staff, art consultants and Plan Agent,

20 collectors and other notables from the art community are now

21 reaching out to ACE. Based on input from his art consultants,

22 Plan Agent believes these contacts and restored relationships

23 will result in sales over time (and some are in process). The

24 interest of these institutions will also bolster collectors'

25 ///

26

27 2/ Jennifer Kellen has resigned and Plan Agent is in discussion with her
counsel on settlement of her claims against ACE and ACE's claims against

28 her.

00007

1  desires to acquire artwork from ACE due to the enhancement of the

2  artists' reputation that museum acquisitions provide.

3      One serious issue impeding adequate accounting and reporting

4  to artists and providing information to prospective buyers was

5  the lack of a digitized real time inventory system.  To remedy

6  this, a professional inventory management software was purchased,

7  has been installed and the staff is working on uploading the

8  information relating to inventory into the database. The reports

9  able to be generated by this database provide the information

10  required to comply with California's art consignment law and the

11  system generally allows for management  of inventory designed for

12  a gallery. Plan Agent has begun issuing consignment payments and

13  reports to each artist upon sale of their work (something which

14  was not routinely done while Chrismas was in charge).

15      Since his appointment Plan Agent has provided daily services

16  as the Acting Director of ACE. He has begun the process of

17  searching for a Director who can work with Plan Agent in the day

18  to day art and curating duties.  One obstacle to recruiting that

19  person has been the uncertainty about the future of the

20  Mid-Wilshire location for Gallery operations due to the ongoing

21  litigation/disputes with AERC. (This issue is one of the

22  discussion items which is ongoing with AERC and Plan Agent.)

23  Plan Agent has removed from the Cochran storage facility the 61

24  pieces of art which Chrismas had taken from the gallery and

25  placed there on the eve of Plan Agent's appointment.  Plan Agent

26  has inventoried the remaining art at Cochran and believes that it

27  is ACE inventory and/or art stored for certain collectors. Plan

28  Agent is in the process of making arrangements for the movement

-8-

**00008**

1   of the art to a different professional art storage facility but

2   the projected expense of that and lack of on-site storage space

3   has hampered the decision. (This is required as there is no room

4   at the Mid-Wilshire location for any additional stored art.) An

5   estimate of the expense for this move and storage has been

6   included in the projected cash flow. Plan Agent has not yet been

7   able to inventory the art in the ACE Museum location. Chrismas

8   has not yet made the facility available at a time when Plan Agent

9   and staff could perform the inventory. These discussions for

10  access are ongoing.

11       In an effort to reduce expenses, Plan Agent has obtained an

12  agreement with the MTA to reduce the rent at Beverly Hills

13  location to $25,000 per month commencing October 2016 through

14  January 2017. (The MTA is asking for Court approval of the

15  modification which Plan Agent will promptly seek.) The portion of

16  rent not paid for these months ($180,000) will be subsequently

17  paid through a debit against relocation benefits and/or any

18  purchase proceeds of the property arising from the exercise of

19  the option on that property. This saves $45,000 per month in rent

20  and this savings has been reflected in the cash flow projections.

21  Plan Agent currently plans that these premises be completely

22  vacated no later than the first week of November 2016. Although

23  the location is a desirable venue for Exhibitions, the sales from

24  that location, as currently projected, do not justify the rent

25  payments and other associated costs.

26       Cash Flow Analysis. Average weekly operating expenses

27  (including rents) are approximately $85,000. Making certain

28  assumptions about continued sales and expenses, Plan Agent has

**00009**

1  prepared a projected cash flow analysis for the next six months

2  of operations. The attached projected cash flow (Exhibit D)

3  shows that based on these assumptions ACE can continue to meet

4  its expenses to allow an opportunity for a Monetization Event to

5  come to fruition.

6    Using this approximation, it is anticipated that additional

7  sales, including some in process, will extend the date through

8  which ACE will have adequate funds for operations. (If funds

9  became inadequate (i.e., if sales do not materialize as

10  projected) and it appeared likely that one of the real estate

11  opportunities would materialize in the near term, Plan Agent

12  would request additional borrowings from Wilson to bridge the

13  gap.)

14    However, it appears that the operations will not, in the

15  immediate future, generate sufficient funds to begin payment of

16  Allowed Administrative Claims.  The most likely source of funds

17  for such payments would be either a ramp up of sales and/or a

18  monetization event or events.

19    <u>Status of Real Estate Matters</u>. After allowing Chrismas

20  approximately 145 days to bring an interested party for the sale

21  of acquisition rights to the Beverly Hills location without any

22  discernible results, Plan Agent engaged his own broker, KW

23  Commercial, to market the ACE's rights to the Beverly Hills

24  gallery property (See the link to the listing:

25  www.9430wilshireblvd.com.) In additional to offering the

26  opportunity to their known developers, the listing has been

27  widely advertised locally and internationally by digital means,

28  including the Commercial MLS, Loopnet, Costar, KW Global, Proxico

**00010**

1 and other sites. The broker has interested parties but as of the
2 date of this report no offers have yet come to fruition.
3     The Plan Agent has also been in discussion with individuals
4 outside the listing process and has received an offer at the
5 listing price which he is now evaluating.
6     In addition, Plan Agent is pursing settlement discussions
7 with an individual tasked by AERC to engage in discussions
8 related to the dispute over leasing and purchase rights at the
9 Mid-Wilshire property. Plan Agent is hopeful that these will
10 result in a definitive proposal or an agreement to attempt a
11 mediation in order to resolve these issues.
12     <u>Payment to Plan Agent and his Professionals</u>.  Plan Agent has
13 not paid himself for any of the work he has done to date and has
14 not paid in full the accrued fees of his professionals. LEA
15 Accountancy has been paid only $75,000 of its accrued billing
16 which does not cover the actual direct costs of the LEA staff.
17 Payments on account have been made to legal counsel (Carolyn A.
18 Dye) and art consultants totaling $106,000 to date.  The firm of
19 Sulmeyer Kupetz has been engaged to continue certain work as to
20 which it had the most familiarity and it has not been paid
21 anything on account of that work to date. Each of these
22 professionals have provided significant service to address the
23 problems that were identified as having arisen due to Chrismas'
24 conduct in the Chapter 11 phase (and prior) and continue to
25 provide services without the prospect for immediate payment. The
26 projected cash flow anticipates payments on account for such
27 services but these interim payments are not sufficient to fully
28 satisfy these bills.

-11-

00011

SUMMARY

The status of this business on April 6, 2016, was materially different than what the Plan contemplated it would be at the Effective Date. Plan Agent needs additional time to develop the gallery business and/or bring about a Monetization Event. In the interim, assuming professional fees will be approved at the September 21, 2016, hearings in some amount, Plan Agent requests that the Plan's language of "as soon as practicable" be construed to mean the earlier of when he has available cash over and above that required for operations (from whatever sources), a Monetization Event has been closed, or until the Court orders otherwise.

Dated: September 9, 2016

Sam S. Leslie, Plan Agent

**EXHIBIT A**

## IV. AGING OF ACCOUNTS PAYABLE AND RECEIVABLE

|  | *Accounts Payable Post-Petition | Accounts Receivable | |
|---|---|---|---|
|  |  | Pre-Petition | Post-Petition |
| 30 days or less | 299,474.92 | . | 368,894.00 |
| 31 - 60 days | 195,760.00 | 22,180.00 | 428,707.50 |
| 61 - 90 days | 300,120.00 |  | 307,000.00 |
| 91 - 120 days | 35,330.00 |  | 17,440.00 |
| Over 120 days | 1,490,584.47 | 3,165,359.80 | 4,917,402.90 |
| TOTAL: | 2,321,269.39 | 3,187,539.80 | 6,039,444.40 |

## V. INSURANCE COVERAGE

|  | Name of Carrier | Amount of Coverage | Policy Expiration Date | Premium Paid Through (Date) |
|---|---|---|---|---|
| General Liability | Golden Eagle | 4,000,000.00 | 6/11/2016 | 1/15/2016 |
| Worker's Compensation | Liberty Mutual | 1,000,000.00 | 1/1/2017 | 2/1/2016 |
| General Liability-Parking Lot | General Star | 1,000,000.00 | No longer have parking lot | |
| Vehicle | Golden Eagle | 1,000,000.00 | 6/11/2016 | 1/15/2016 |
| Others: Commercial Umbrella | Golden Eagle | 1,000,000.00 | 6/11/2016 | 1/15/2016 |
| Commercail Fine Art | C N A INS | 2,700,000.00 | 6/11/2016 | 1/15/2016 |

## VI. UNITED STATES TRUSTEE QUARTERLY FEES
### (TOTAL PAYMENTS)

| Quarterly Period Ending (Date) | Total Disbursements | Quarterly Fees | Date Paid | Amount Paid | Quarterly Fees Still Owing |
|---|---|---|---|---|---|
| 31-Mar-2013 | 326,673.07 | 4,875.00 | 25-Apr-2013 | 4,875.00 | 0.00 |
| 30-Jun-2013 | 1,322,985.77 | 6,500.00 | 13-Jul-2013 | 6,500.00 | 0.00 |
| 30-Sep-2013 | 2,780,005.71 | 9,750.00 | 28-Oct-2013 | 9,750.00 | 0.00 |
| 31-Dec-2013 | 1,564,672.97 | 6,500.00 | 31-Jan-2014 | 6,500.00 | 0.00 |
| 31-Mar-2014 | 1,830,594.71 | 6,500.00 | 30-Apr-2014 | 6,500.00 | 0.00 |
| 30-Jun-2014 | 1,556,449.01 | 6,500.00 | 30-Jun-2014 | 6,500.00 | 0.00 |
| 30-Sep-2014 | 1,761,782.15 | 6,500.00 | 30-Sep-2014 | 6,500.00 | 0.00 |
| 31-Dec-2014 | 1,862,333.06 | 6,500.00 | 3-Feb-2015 | 6,500.00 | 0.00 |
| 31-Mar-2015 | 1,820,878.39 | 6,500.00 | 30-Apr-2015 | 6,500.00 | 0.00 |
| 30-Jun-2015 | 1,833,480.72 | 6,500.00 | 15-Aug-2013 | 6,500.00 | 0.00 |
| 30-Sep-2015 | 1,573,645.42 | 6,500.00 | 30-Sep-2015 | 6,500.00 | 0.00 |
| 31-Dec-2015 | 2,069,876.54 | 9,750.00 | 31-Dec-2015 | 0.00 | 9,750.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  | 82,875.00 |  | 73,125.00 | 9,750.00 |

* Post-Petition Accounts Payable SHOULD NOT include professionals' fees and expenses which have been incurred but not yet awarded by the court.  Post-Petition Accounts Payable SHOULD include professionals' fees and expenses authorized by Court Order but which remain unpaid as of the close of the period report

## X. BALANCE SHEET
### (ACCRUAL BASIS ONLY)

| ASSETS | Current Month End | |
|---|---|---|
| Current Assets: | | |
| Unrestricted Cash | 8,675.46 | |
| Restricted Cash | 5.69 | |
| Lawyer's Bankruptcy Trust Account | 2,705,135.32 | |
| Accounts Receivable | 6,039,444.40 | |
| Inventory (Need to Adj for updated inventory list) | 3,014,459.02 | |
| Notes Receivable | 3,187,539.80 | |
| Prepaid Expenses | | |
| Other (Itemize)-Escrow Deposit-Holdback AERC | 5,054,000.00 | |
| Total Current Assets | | 20,009,259.69 |
| | | |
| Property, Plant, and Equipment | 655,195.91 | |
| Accumulated Depreciation/Depletion | (268,719.00) | |
| Net Property, Plant, and Equipment | | 386,476.91 |
| | | |
| Other Assets (Net of Amortization): | | |
| Due from Insiders | | |
| Other (Itemize)Deposit | 60,474.00 | |
| Total Other Assets | | 60,474.00 |
| | | |
| TOTAL ASSETS | | 20,456,210.60 |
| | | |
| LIABILITIES | | |
| Post-petition Liabilities: | | |
| Accounts Payable | | 2,321,269.39 |
| Taxes Payable | | 76,663.75 |
| Accounts Payable-Legal | | |
| Loan Payable Douglas Chrismas | | 14,094.79 |
| Loan Payable Eric Wilson | | - |
| Secured Debt | | |
| Other (Itemize) | | 16,500.00 |
| Total Post-petition Liabilities | | 2,428,527.93 |
| | | |
| Pre-petition Liabilities: | | |
| Secured Liabilities | | 632,884.90 |
| Priority Liabilities | | 755,054.13 |
| Unsecured Liabilities (Payments to Landlords per Cour during Sept.) | | 12,357,804.85 |
| Other (Itemize) | | |
| Total Pre-petition Liabilities (Subject to Debtor's adjustments based on its review | | 13,745,743.88 |
| | | |
| TOTAL LIABILITIES | | 16,174,271.81 |
| | | |
| EQUITY: | | |
| Pre-petition Owners' Equity | | (9,316,265.89) |
| Post-petition Profit/(Loss) | | 13,598,204.68 |
| Direct Charges to Equity | | |
| TOTAL EQUITY | | 4,281,938.79 |
| | | |
| TOTAL LIABILITIES & EQUITY | | 20,456,210.60 |
| COMPILED FOR COURT | | |

00015

**EXHIBIT B**

## ART & ARCHITECTURE BOOKS OF THE 21ST CENTURY

### PROFESSIONAL FEE CHART

| Professional | Prior Fees and Costs Requested | Prior Fees and Costs Allowed | Prior Fees and Costs Paid | Prior Fees and Costs Still Owing | Current Fee & Expense Request | Total All Fees and Expenses | Balance Due from Prior and Current Fee and Expense Requests |
|---|---|---|---|---|---|---|---|
| Levene | $3,915,904.17 | Same | $3,826,592.17 | $89,312.00 | $662,095.52 | $4,369,058.00 | $751,407.52 |
| Sulmeyer | $3,420,304.79 | Same | $3,138,922.40 | $176,224.00 | $1,293,284.77* | $4,537,237.30 | $1,293,284.77* |
| Grobstein | $136,518.50 | Same | $104,659.50 | $20,920.90 | $158,096.10 | $294,804.94 | $179,017.00 |
| Crowe | $148,218.00 | Same | $148,218.00 | $0.00 | $72,203.00 | $220,421.00 | $72,203.00 |
| Meadows | $52,257.94 | Same | $52,257.94 | $0.00 | $42,379.91 | $94,237.50 | $42,379.91 |
| Alexander Valuation | $0.00 | $0.00 | $0.00 | $0.00 | $25,000.00 | $25,000.00 | $25,000.00 |
| Haberbush | $0.00 | $0.00 | $0.00 | $0.00 | $9,480.00 | $9,480.00 | $9,480.00 |
| Lavar Taylor | $0.00 | $0.00 | $0.00 | $0.00 | $21,235.00 | $21,235.00 | $21,235.00 |
| Sklar Kirsh | $70,169.50 | Same | $70,169.50 | $0.00 | $0.00 | $71,169.50 | $0.00 |
| Winston Art | $9,090.10 | Same | $9,090.10 | $0.00 | $41,238.29 | $50,328.39 | $41,238.29 |
| Jones Day | $78,344.17 | $0.00 | $0.00 | $0.00 | $0.00 | $78,344.17 | $59,628.50** |
| Robins Kaplan | $0.00 | $0.00 | $0.00 | $0.00 | $445,634.00 | $1,329.12 | $446,963.12 |
| Sam S. Leslie | $0.00 | $0.00 | $0.00 | $0.00 | $88,495.00 | $58.11 | $88,553.11*** |
| Carolyn A. Dye | $0.00 | $0.00 | $0.00 | $0.00 | $27,819.00 | $0.00 | $27,819.00*** |

Total: $3,058,209.22*

* Figure will be adjusted upwards by approximately $5,051.30 for underestimated expenses incurred by Sulmeyer in preparing the omnibus notice of final fee hearing, preparing supplement to fee application to capture those fees, and $1,755 for uncaptured time omitted from the final fee application.

** Allowed per Memorandum Decision (Docket No. 2110)

*** Retainer of $50,000 paid (used to pay Law Office of Carolyn A. Dye $8,500.00 and Art Consultants $7,500)

00017

**EXHIBIT C**

| Subscribe | Share ▾ | Past Issues | | Translate |

# ACE GALLERY

## LOS ANGELES   BEVERLY HILLS

## ACE GALLERY NEWS

### SEPTEMBER 7, 2016

## UPCOMING AT ACE GALLERY
## BEVERLY HILLS

### 9430 WILSHIRE BLVD, BEVERLY HILLS, CA 90212



**RUTH PASTINE**

## ETHEREAL MATERIAL

OPENING RECEPTION
SEPTEMBER 10, 2016
7-9PM

THROUGH OCTOBER 29, 2016

For more about Ruth Pastine and her work, please visit www.acegallery.net/artist/ruth-pastine.

Ace Gallery News & Reminders — September 7, 2016    https://us3.campaign-archive1.com/?u=85a34d0497602ab5cbf912bbb...

Subscribe    Share ▾    Past Issues    Translate



**GARY LANG**

# RISING

OPENING RECEPTION
SEPTEMBER 10, 2016
7-9PM

THROUGH OCTOBER 29, 2016

For more about Gary Lang and his work, please visit www.acegallery.net/artist/gary-lang.

# ON VIEW AT ACE GALLERY LOS ANGELES

## 5514 WILSHIRE BLVD, LOS ANGELES, CA 90036

Ace Gallery News & Reminders — September 7, 2016          https://us3.campaign-archive1.com/?u=85a34d0497602ab5cbf912bbb...

| Subscribe | Share ▼ | Past Issues | | Translate |



## DEBORAH SALT: VERTICAL

### THROUGH DECEMBER 17, 2016

AT ACE GALLERY LOS ANGELES, 5514 WILSHIRE BLVD, LOS ANGELES CA 90036

For more about Deborah Salt and her work, please visit www.acegallery.net/artist/deborah-salt.



## HEATHER CARSON: light/WHITE

### THROUGH OCTOBER 8, 2016

AT ACE GALLERY LOS ANGELES, 5514 WILSHIRE BLVD, LOS ANGELES CA 90036

For more about Heather Carson and her work, please visit www.acegallery.net/artist/heather-carson.

Ace Gallery News & Reminders — September 7, 2016    http://us8.campaign-archive1.com/?u=85a34d0497602ab5cbf912bbb...

Subscribe    Share ▾    Past Issues    Translate



## LADDIE JOHN DILL: CONTAINED RADIANCE: MIRACLE MILE

AT ACE GALLERY LOS ANGELES, 5514 WILSHIRE BLVD, LOS ANGELES CA 90036

For more about Laddie John Dill and his work, please visit www.acegallery.net/artist/laddie-john-dill.

Ace Gallery News & Reminders — September 7, 2016                https://us3.campaign-archive1.com/?u=85a34d0497602ab5cbf912bbb...

| Subscribe | Share ▼ | Past Issues | | Translate |



## SELECTED ARTWORKS

JOHN ARMLEDER, MARY CORSE, IAN HAMILTON FINLAY, SYLVIE FLEURY,
BEN JONES, JANNIS KOUNELLIS, GARY LANG, DENNIS OPPENHEIM,
JULIAN SCHNABEL

THROUGH NOVEMBER 19, 2016

AT ACE GALLERY LOS ANGELES, 5514 WILSHIRE BLVD, LOS ANGELES CA 90036

---

## IN OUR LOBBY GALLERY:

DAVID AMICO, JOHN CHAMBERLAIN, MARY CORSE, SAM FRANCIS, TIM
HAWKINSON, BEN JONES, HELEN PASHGIAN, ALEXANDER YULISH

THROUGH NOVEMBER 12, 2016

Ace Gallery News & Reminders — September 7, 2009    http://us3.campaign-archive1.com/?u=85a34d0497602ab5cbf912bbb...

| Subscribe | Share ▼ | Past Issues | | Translate |

# *AND IN OTHER NEWS...*



Sam S. Leslie of Ace Gallery, and artist Mary Corse on the scaffolding at Los Angeles
Federal Courthouse. Corse's paintings are characterized by delicate surfaces of microbeads which create
prisms refracting and reflecting light.

## MARY CORSE, BIG AT THE COURTHOUSE

00025

Ace Gallery News & Reminders — September 7, 2016    https://us3.campaign-archive1.com/?u=85a34d0497602ab5cbf912bbb...

The Ace Gallery team recently joined artist Mary Corse to install her new 42 foot painting at the Los Angeles Federal Courthouse. Here is a time-lapse video of the installation process.



Melissa Kretschmer, *Drawdown*, 2015, vellum, gesso, gouache and plywood, 40.5 x 48 in.

# MELISSA KRETSCHMER IN
## *PAINTING AFTER POSTMODERNISM*

Melissa Kretschmer is featured in *Painting After Postmodernism | Belgium – USA*, a "manifesto exhibition" curated by Barbara Rose which opens September 15 2016, in

Ace Gallery News & Reminders — September 7, 2016    https://us3.campaign-archive1.com/?u=85a34d0497602ab5cbf912bbb...

Subscribe    Share ▾    Past Issues    Translate

investigating tactility, material surface and capacity for metphor in painting. Please visit the exhbition site for more information.

---



*Inevitability of Truth 16-S6060*, 2015, Oil on canvas, 60 x 60 inches

## RUTH PASTINE, *INEVITABILITY OF TRUTH* ACQUIRED BY MOCASD

Ruth Pastine's *Inevitability of Truth 16-S6060* has been acquired by the Museum of Contemporary Art, San Diego's permanent collection. Congratulations Ruth!

---

Ace Gallery News & Reminders — September 7, 2016    https://us3.campaign-archive1.com/?u=85a34d0497602ab5cbf912bbb...

| Subscribe | Share ▾ | Past Issues | | Translate |



*Ruben's Elevator* a popular hit on Vimeo receiving over 50 thousand views.

## STARRING RUBEN PARDO

You may have met Ruben in the elevator at Ace LA's Wilshire Tower, which he has operated for 40 years. Now Ruben is the subject of a documentary by New York production company Dress Code. It's a wonderful piece and we are over the moon to share it with you.

**ACE GALLERY**
LOS ANGELES   BEVERLY HILLS

   

COPYRIGHT © 2016 ACE GALLERY, ALL RIGHTS RESERVED.

unsubscribe from this list   update subscription preferences

00028

EXHIBIT D

Actual Ambisonance Books of the 21st Century
Case Number 2:13-bk-14135-RK
Six Month Cash Flow Projection

Prepared by LEA Accountancy, LLP

00030



**Art & Architecture Books of the 21st Century**
**Case Number 2:13-bk-14135-RK**
**Notes to Six Month Cash Flow**

**Cash Projection**

This projection is for the following six months. Based on our assumptions, we currently have sufficient projected cash to operate through the next six months.

While it is our belief that there is adequate cash flow to project the next twelve months, the variables relating to site location, monetization of options, negotiations with the landlord, and other uncertainties make a meaningful analysis of cash flow over the next twelve months difficult to project.

**Beginning Balance**

The beginning balance on this schedule is $1,958,624.60. However, of that amount, $1,732,064.70 was held in a trust account in reserve for tax obligations. The account available to the Plan Agent had balances totaling $226,559.90.

At the time that the Plan Agent assumed control, Chrismas had issued checks which had not yet cashed (including the Mid-Wilshire rent check of $222,439.49 and payroll checks totaling $15,8478.86) which were in excess of the balances in the available bank accounts. In addition he was in arrears on rent on the Beverly Hills property.

The Plan Agent's counsel negotiated agreements with the State Board of Equalization and the Employment Development Department which released their lien on the reserve funds. The Plan Agent's accountants prepared draft income tax returns which determined that there were sufficient tax attributes to offset any capital gains, resulting in no income tax obligation for the outstanding year. This allowed the full amount of the reserved funds to be released for operations.

**Projected Sales**

The projected sales are comprised of a combination of potential sales. They include:

- Sales that have been concluded and for which the payment is immediately anticipated.

- Specific sales of pieces to selected customers based upon their expressed interest.

- Identified museums and institutions which have expressed interest in specific artists and for which a budget can be projected.

- Unspecified sales that are not identifiable but which, based on the past five month history, can be expected to materialize.

1

**Projected Space Rental**

Other than the most immediate entry, the projections for the short-term rental of the first floor empty showrooms are estimates based on recent history.

**Borrowed Funds**

We have only used $200,000 of the total funds ($1,050,000) committed by Eric Wilson to keep the gallery operational. The loan matures on October 31, 2016 and may be called by Mr. Wilson thereafter.

Should the predicted sales not materialize before that date, we will request that Mr. Wilson extent the repayment date so at allow the gallery to operate while pursuing monetization of the real estate options and/or litigation rights.

**Artist Payments**

Upon assuming control of the gallery, the Plan Agent began performance of analysis of the book and records and discovered that artists had not been paid for (or even informed about) sales, that the gallery, under the control of Chrismas, had transacted sales for amounts significantly below the agreed consignment price, and that most of the artists represented by the gallery were owed significant sums of money. Several of the artists' accounts have been reconciled and others are nearly so and it currently appears that the gallery may have a cumulative obligation to its artists of around nine million dollars.

Prior to the Plan Agent's appointment, one of the artists reached a court appointed agreement whereby he would receive 20% of the proceeds of a sale (in addition to the 50% of the proceeds he would ordinarily receive) which would be applied toward the outstanding balance. As this was public record, other artists became aware of the agreement and, so as to retain the artists, the Plan Agent agreed to treat them the same.

Upon sale of an artist's work, we give the artist a notification of the sale, the name of the buyer, the amount for which it was sold, the artist's 50% of the sale and, for those with an outstanding balance, an additional 20% of the sale.

In addition, there are two artists who have a contract which calls for providing them with a monthly stipend which serves as an advance against future sales. Payments to those artists are current to date.

**Sales Commissions**

For the most part, the staff who were employed upon the Plan Agent's assumption of control chose to stay with the gallery and have shown loyalty to the galley and its artists and clients. We are confident in their abilities and see them melding into a team that fits clients and artists together in a way that is beneficial to both and to the gallery.

00033

Prior to the Plan period, these employees were not allowed to make sales or compensated for efforts in building relationships with customers. The Plan Agent has implemented a sales commission program whereby the employees can benefit from facilitating sales and meeting clients' needs. Much of the specific sales to selected customers portion of the projected sales flows from the relationships the staff have developed.

### Rents

Rents are projected on the continued use of the locations in Mid-Wilshire and Beverly Hills.

Upon our request, the MTA has agreed to a reduction in rent from October through January to $25,000 per month with the remaining $45,000 deducted from either relocation benefits that may be paid and/or the proceeds of a monetization.

We are reviewing this option and are still determining whether there is a benefit to continuing to occupy the space beyond October.

We are pursuing negotiation with AERC to settle the dispute. We cannot predict how that will impact space, location, or future rents.

### Payroll and Sales Commission

The Plan Agent is in the process of searching for a Director to run the gallery. However, he is determined to make the selection based on the best fit for the gallery and is not in a rush to fill the position. This projection makes no provision for a Director.

### Installation and Exhibition

The most significant direct cost of an exhibition is the promotion of the art through contact with potential clients. Most exhibitions include a three-part promotion which includes an opening reception which introduces the art to the public, a hosted dinner for select potential clients, and a closing reception. The projections are based on the planned exhibitions and estimated costs associate with these exhibitions.

### Repairs and Maintenance

The Mid-Wilshire building is the last in Los Angeles to have manual operation of its elevator. Ruben Pardo, the charming older man who works as elevator operator, has recently been the subject of newspaper articles and a documentary as he completed his fortieth year driving the elevator in the building.

But while the manual elevator adds to the experience of visiting the gallery, the elevator mechanism is elderly and, unfortunately, in need of frequent repair. Because of tenants on the upper floors of the

00034

eleven story tower, the elevator must be kept operational. And due to the uncertainty of the gallery's right to continued future use, the Plan Agent is unwilling to outlay such a capital expenditure as would be required to replace the elevator mechanism.

**Beverly Hills Option Monetization**

The Plan Agent has received an offer for option to acquire the Beverly Hills property. He is reviewing the offer and expects to bring a motion to approve the sale once the contingencies to the offer are cleared. Should this offer be approved by the court, and depending on the timing of the transaction, it could materially impact the cash flow projected on this schedule.

4

00035

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 3435 Wilshire Blvd., Suite 990, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled Plan Implementation Report of Plan Agent and Request for Continuance will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.**    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On September 9, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Simon Aron | saron@wrslawyers.com |
| Todd M Bailey | todd.bailey@ftb.ca.gov |
| Jason Balitzer | jbalitzer@sulmeyerlaw.com, jbalitzer@ecf.inforuptcy.com; dwalker@ecf.inforuptcy.com |
| Bruce Bennett | bbennett@jonesday.com |
| J Scott Bovitz | bovitz@bovitz-spitzer.com |
| Peter M Bransten | PBransten@lgbfirm.com, kmorin@lgbfirm.com |

■    Service information continued on attached page

**2.**    **SERVED BY UNITED STATES MAIL:**  On September 9, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Robert N. Kwan
United States Bankruptcy Judge
Bin Outside of Suite 1682
255 East Temple Street
Los Angeles, CA 90012

■    Service information continued on attached page

**3.**    **SERVED BY PERSONAL DELIVERY - N/A:**  Pursuant to Fed.R.Civ.P. 5 and/or controlling LBR, on _____, 2016, I arranged for service on the following person as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 9, 2016

Shawn Sterrett

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1. PROOF OF SERVICE**

**00036**

**ADDITIONAL SERVICE INFORMATION:**

<u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):**</u>

| | |
|---|---|
| Lisa W Chao | lisa.chao@doj.ca.gov |
| Carol Chow | carol.chow@ffslaw.com |
| Jerome S Cohen | jsc@cohenbordeaux.com, bordeaux.ecf@gmail.com |
| Daniel Denny | ddenny@gibsondunn.com |
| Caroline Djang | cdjang@rutan.com |
| Carolyn A Dye | trustee@cadye.com |
| Mark C Fields | fields@markfieldslaw.com |
| Marina Fineman | mfineman@stutman.com |
| Michael F Frank | mfrankatty@aol.com |
| Jeffrey K Garfinkle | jgarfinkle@buchalter.com, docket@buchalter.com;dcyrankowski@buchalter.com |
| Thomas M Geher | tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com |
| Eric D Goldberg | egoldberg@gordonsilver.com |
| Michael I Gottfried | mgottfried@lgbfirm.com, kalandy@lgbfirm.com;cboylas@lgbfirm.com; srichmond@lgbfirm.com;sdeiches@lgbfirm.com;mmocciaro@lgbfirm.com |
| Asa S Hami | ahami@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com; agonzalez@ecf.inforuptcy.com;ahami@ecf.inforuptcy.com |
| Allan H Ickowitz | aickowitz@nossaman.com, mwiman@nossaman.com |
| David S Kupetz | dkupetz@sulmeyerlaw.com, dperez@sulmeyerlaw.com; dperez@ecf.inforuptcy.com;dkupetz@ecf.inforuptcy.com |
| Daniel A Lev | dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com; dlev@ecf.inforuptcy.com;dwalker@sulmeyerlaw.com |
| Sidney P Levinson | slevinson@jonesday.com |
| Alvin Mar | alvin.mar@usdoj.gov |
| David W. Meadows | david@davidwmeadowslaw.com |
| Hutchison B Meltzer | hutchison.meltzer@doj.ca.gov |
| Krikor J Meshefejian | kjm@lnbrb.com |
| Alan I Nahmias | anahmias@mbnlawyers.com, jdale@mirmanbubman.com |
| Lisa Nelson | lnelson@taylorlaw.com, ltaylor@taylorlaw.com |
| Christine M Pajak | cpajak@stutman.com |
| Danielle A Pham | dpham@gordonsilver.com |
| Kurt Ramlo | kr@lnbyb.com, kr@ecf.inforuptcy.com |
| David J Richardson | drichardson@sulmeyerlaw.com, drichardson@ecf.inforuptcy.com |
| Christopher O Rivas | crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com |
| Victor A Sahn | vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com, agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com; vsahn@ecf.inforuptcy.com |
| Gregory M Salvato | gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com; jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com |
| Michael C Schneidereit | mschneidereit@jonesday.com, gmarinelli@jonesday.com; scollymore@jonesday.com;tckowalski@jonesday.com;bievanson@jonesday.com |
| David B Shemano | dshemano@robinskaplan.com |
| Bennett L Spiegel | blspiegel@jonesday.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| Jessica Vogel | Jvogel@sulmeyerlaw.com, jvogel@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com |
| Howard J Weg | hweg@robinskaplan.com |
| Steven Werth | swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com; slee@sulmeyerlaw.com;slee@ecf.inforuptcy.com; asokolowski@ecf.inforuptcy.com;swerth@ecf.inforuptcy.com |
| Beth Ann R Young | bry@lnbyb.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION:**

**TO BE SERVED BY U.S. MAIL:**

AERC Desmond's Tower LLC
1 AEC Parkway
Richmond Heights, OH 44143-1500

American Express
PO Box 53765
Phoenix, AZ 85072-9945

Culver Center Partners - West #1 LLC
3844 Culver Center Street, Suite B
Culver City, CA 90232

Employers
7110 North Fresno Street, Suite 250
Fresno, CA 93720

Estate of Pentti Kouri
c/o Reed Smith LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022

Kenneth Feingold
59 Whitney Street
Westport, CT 06880

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

Gallet D & Berkey
845 Third Avenue
New York, NY 10022-6601

Alan and Vivien Hassenfeld
85 Shire Road
Bristol, RI 02809

Jennifer Kellen
16137 Sunset Blvd., Suite 303
Pacific Palisades, CA 90272

LA Department of Water & Power
433 East Temple Street, Building 1
Los Angeles, CA 90012

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1. PROOF OF SERVICE**

**00038**

**ADDITIONAL SERVICE INFORMATION:**

<u>**TO BE SERVED BY U.S. MAIL**</u>:

Seth Landsberg, as Trustee of the Seth Landsberg
and the Seth Landsberg Family Foundation
423 North Faring Road
Los Angeles, CA 90077-3518

Paul Hastings LLP
515 S. Flower Street, 25th Floor
Los Angeles, CA 90071

Ponte Equities
c/o Altschul & Altschul LLP
18 East 12th Street
New York, NY 10003-4458

Noble Iron, fka Rolls High Reach
PO Box 6100
Ventura, CA 93006-6100

South Beverly Wilshire Jewelry & Loan
249 S. Beverly Drive
Beverly Hills, CA 90212

The Hapsmith Company
3844 Culver Center Street, Suite B
Culver City, CA 90232

Westminster Finance, Inc.
9665 Wilshire Blvd., Suite M10
Beverly Hills, CA 90212

Eric Wilson
6025 Canarvon Street
Vancouver, BC V6N 1J9

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1. PROOF OF SERVICE**

**00039**