**FILED**
CLERK, U.S. DISTRICT COURT

FEB 24 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RS _____ DEPUTY

**2:22-CV-01265-PA**

FILED & ENTERED

FEB 16 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY vandenst DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:13-bk-14135-RK |
| ART & ARCHITECTURE BOOKS OF THE 21st CENTURY, | Chapter 11 |
| Debtor. | Adv. No. 2:15-ap-01679-RK |

SAM LESLIE, PLAN AGENT FOR ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,

Plaintiff,

vs.

ACE GALLERY NEW YORK CORPORATION, a California corporation; ACE GALLERY NEW YORK, INC., a dissolved New York corporation; ACE MUSEUM, a California corporation; DOUGLAS CHRISMAS, an individual; 400 S. LA BREA, LLC, a California limited liability company, JENNIFER KELLEN, an individual, CATHAY BANK, a California corporation, DARYOUSH DAYAN, an individual, KAMRAN GHARIBIAN, an individual, and MICHAEL D. SMITH, an individual,

Defendants.

400 S. La Brea, LLC, a California limited liability company,

Cross-Complainant,

v.

**REPORT AND RECOMMENDATION OF THE UNITED STATES BANKRUPTCY COURT THAT THE UNITED STATES DISTRICT COURT ADOPT THE BANKRUPTCY COURT'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR CONVERSION AND BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT DOUGLAS CHRISMAS AND GRANT SUMMARY JUDGMENT ON THESE CLAIMS**

Date:       July 8, 2021
Time:       2:00 p.m.
Courtroom:  U.S. Bankruptcy Court
            Courtroom 1675
            255 E. Temple St.
            Los Angeles, CA 90012

1  ACE GALLERY NEW YORK CORPORATION, a
   California corporation; ACE GALLERY NEW YORK,
2  INC., a dissolved New York corporation; ACE MUSEUM,
   a California corporation; DOUGLAS CHRISMAS, an
3  individual; SAM LESLIE as TRUSTEE OF THE PLAN
   TRUST FOR ART & ARCHITECTURE BOOKS OF
4  THE 21st CENTURY,

5                     Cross-Defendants.

6

7  **TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF**

8  **CALIFORNIA:**

9        The United States Bankruptcy Court hereby issues the following report and recommendation

10 pursuant to Federal Rules of Bankruptcy Procedure 7056 and 9033 on the Motion of Plaintiff Sam

11 S. Leslie, in his exclusive capacity as Plan Agent ("Plaintiff" or "Plan Agent") for Debtor Art &

12 Architecture Books of the 21st Century, under the confirmed Second Amended Plan of

13 Reorganization of the Official Committee of Unsecured Creditors (the "Plan") for Summary

14 Judgment on Plaintiff's Claims for Conversion and Breach of Fiduciary Duty Against Defendant

15 Douglas Chrismas, Electronic Case Filing No. ("ECF" or Docket No.) 870, filed on February 12,

16 2021, in the above-captioned adversary proceeding.  Plaintiff's claims for conversion and breach of

17 fiduciary duty against Defendant Douglas Chrismas are the eleventh and seventeenth claims for

18 relief in the Sixth Amended Consolidated Complaint, ECF 699, filed on February 19, 2020.

19       The United States Bankruptcy Court recommends that the United States District Court for

20 the Central District of California adopt the following Statement of Uncontroverted Facts and

21 Conclusions of Law on the Motion of Plaintiff for Summary Judgment on Plaintiff's Claims for

22 Conversion and Breach of Fiduciary Duty Against Defendant Douglas Chrismas and issue an order

23 granting summary judgment in favor of Plaintiff on his claims for conversion and breach of

24 fiduciary duty against Defendant Douglas Chrismas.

25       The United States Bankruptcy Court determines that it may not enter a final judgment on

26 Plaintiff's claims for conversion and breach of fiduciary duty against Defendant Douglas Chrismas

27 based on the following circumstances.  Plaintiff's claims against Defendant Chrismas for conversion

28 and breach of fiduciary duty are noncore claims based on nonbankruptcy law under state law or the

1  common law.

2      The United States Bankruptcy Court has subject matter jurisdiction over Plaintiff's claims

3  for conversion and breach of fiduciary duty against Defendant Douglas Chrismas under its

4  jurisdiction of 28 U.S.C. § 1334(b) over matters related to a bankruptcy case under the Bankruptcy

5  Code, 11 U.S.C., because such claims are based on alleged tortious acts against the Debtor and its

6  bankruptcy estate as the Plaintiff Plan Agent on behalf of the Debtor seeks to vindicate its rights

7  pursuant to the confirmed plan of reorganization.  The Bankruptcy Court may enter final judgment

8  on noncore claims within its related to jurisdiction if such claims relate to the claims allowance

9  process or when the parties consent to the bankruptcy court jurisdiction. *Wellness International*

10 *Network, Ltd. v. Sharif,* 575 U.S. 665, 674-686 (2015).  The plan agent has expressly consented to

11 bankruptcy court jurisdiction in this adversary proceeding by his statements of consent in status

12 reports filed in this adversary proceeding.  Defendant Chrismas in his answers to Plaintiff's

13 complaints expressly stated that he does not consent to the jurisdiction of the bankruptcy court to

14 enter a final judgment.

15     The United States Bankruptcy Court finds that Defendant Chrismas has not impliedly

16 consented to bankruptcy court jurisdiction to enter a final judgment to determine Plaintiff's claims

17 against him.  Absent consent of all of the parties to Plaintiff's claims for conversion and breach of

18 fiduciary duty against Defendant Chrismas, this court lacks jurisdiction to enter a final judgment on

19 these claims.

20     The United States Bankruptcy Court, however, does have jurisdiction to hear Plaintiff's

21 claims for conversion and breach of fiduciary duty against Defendant Chrismas, which are noncore

22 claims under its "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) and issue proposed

23 findings of fact and conclusions of law for *de novo* review by the United States District Court.  28

24 U.S.C. § 157 (c)(1); *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25, 39-40 (2014).

25 Accordingly, the United States Bankruptcy Court determines that it may issue proposed findings of

26 fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9033 in submitting

27 its ruling on the motion as a report and recommendation to the United States District Court for the

28 Central District of California for *de novo* review.

Having considered the papers and oral and written arguments of the parties on Plaintiff's pursuant to Federal Rules of Bankruptcy Procedure 7056 and Local Bankruptcy Rule 7056-1, including the Proposed Statement of Uncontroverted Facts and Conclusions of Law submitted by Plaintiff, [1] which the bankruptcy court has independently reviewed and modified, the bankruptcy court adopts the following Statement of Uncontroverted Facts and Conclusions of Law, subject to *de novo* review of the United States District Court.

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | **GENERAL FACTS** | |
| 1. | From February 19, 2013, the date on which Debtor commenced this bankruptcy case by filing its petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"), through the Effective Date of the confirmed Plan of reorganization (the "Plan") in Debtor's bankruptcy case (the "Effective Date"), April 6, 2016, Chrismas managed the Debtor's business as a Debtor-in-Possession ("DIP") and was its principal and sole shareholder and its primary officer, responsible for its day-to-day management. | Sixth Amended Consolidated Complaint ("6AC"), ECF 699, filed on February 19, 2020, at ¶¶ 1, 23, 25, 26, 27. Defendant Chrismas's Answer to the Sixth Amended Complaint ("Ans."), ECF 703, filed on March 16, 2020, at ¶ 1, 17, 18, 19, 20. |

---

[1] Pursuant to the Court's April 27, 2021 tentative ruling for a hearing on the pending summary judgment motion against Douglas Chrismas scheduled for April 28, 2021, Plaintiff Sam S. Leslie, in his exclusive capacity as Plan Agent (the "Plan Agent" or "Plaintiff") for Art & Architecture Books of the 21st Century, under the confirmed Second Amended Plan of Reorganization of the Official Committee of Unsecured Creditors (the "Plan"), hereby submitted a Supplemental Statement of Uncontroverted Facts and Conclusions of Law ("SSUF") in support of his Motion for Summary Judgment Against Defendant Douglas Chrismas previously filed pursuant to Federal Rule of Bankruptcy Procedure 7056 and Local Bankruptcy Rule 7056-1 (ECF 1000, filed on June 9, 2021). Included as Exhibit A to Plaintiff's SSUF is Exhibit C to the Expert Report of Jennifer Ziegler, which is a chart representing, as stated on the exhibit, "Debtor's Art Sales Deposited into Ace Gallery New York Corporation & Inc., Ace Museum, and 400 S. La Brea, LLC," and the chart has been modified only to add line item references and is referred to herein as "Ziegler Referenced Exhibit C (Diverted Art Sales Chart)". The Expert Report of Jennifer Ziegler, dated October 30, 2020, is attached as Exhibit 1 to the Declaration of Jennifer E. Ziegler in Support of Plaintiff's Motion for Summary Judgment ("Ziegler Decl. II"), ECF 873, filed on February 12, 2021, and to the [Corrected] Supplemental Declaration of Jennifer E. Ziegler, CPA, in Support of Motion for Summary Judgment on Plaintiff's Claims for Conversion and Breach of Fiduciary Duty against Defendant Douglas Chrismas, ECF 1196, filed on December 20, 2021.

| 2. | At various times prior to the Effective Date, Chrismas was in control of Defendants Ace Gallery NY Corporation ("Ace NY"), Ace Gallery NY, Inc. ("Old Ace NY"), and Ace Museum, a non-profit California Corporation. | 6AC at ¶ 21. Ans. at ¶ 15. |
| --- | --- | --- |
| 3. | On April 6, 2016, the effective date of the Plan Agent's appointment under the Plan (the "Effective Date"), Plan Agent took control and possession of the Debtor's premises and operations located at: (i) 5514 Wilshire Blvd, Los Angeles, CA 90036 (the "Mid-Wilshire Location"); and (ii) 9430 Wilshire Blvd., Beverly Hills, CA 90212 (the "BH Gallery"). | Declaration of Sam S. Leslie in Support of Plaintiff's Motion for Summary Judgment ("Leslie Decl. II"), ECF 872, filed on February 12, 2021, at ¶ 3. |
| | **FACTS RELATED TO PLAN AGENT'S INVESTIGATION OF DEBTOR AND ACE NYC** | |
| 4. | When Plan Agent took over Debtor, Plan Agent immediately took steps to capture the data on the computers on the premises of the Debtor, among other things, by "mirroring" all the hard drives of the computers on site and ensuring that all paper files were all preserved, maintained and safeguarded. | Leslie Decl. II at ¶ 4. |
| 5. | Based on the preservation of the data on and subsequent review of the Debtor's computer system and files and from my interviews with former employees who helped to prepare and maintain the Debtor's books and records, by taking control of the Debtor's computers and files, Plan Agent was also able to obtain the books and records of certain corporations owned and operated by Mr. Chrismas because they were all maintained on the same computers and server over which the Plan Agent had control. | Leslie Decl. II at ¶ 4. |
| 6. | These additional records included accounting information for Ace Museum, Ace Gallery New York Corporation, and the dissolved Ace Gallery New York Inc. (collectively, the "Non-Debtor Entities"), as well as certain "paper" files. | Leslie Decl. II at ¶ 4. |
| 7. | When Plan Agent took over the Debtor's business, he needed to gain an immediate and intricate understanding of the Debtor's ordinary course business operations so that he could continue to operate the business as required under the Court's order appointing the Plan | Leslie Decl. II at ¶ 5. |

| | | Agent. | |
|---|---|---|---|
| 8. | | On April 6, 2016, Mr. Chrismas admitted to Plan Agent that he had taken funds from the Debtor's bank account to pay rent for Ace Museum. | Leslie Decl. II at ¶ 5. |
| 9. | | Over the course of the initial weeks of Plan Agent's engagement, he became familiar with the Debtor's inventory of owned artworks, inventory of consigned artworks, past customers, artists under contract, employees and vendors. | Leslie Decl. II at ¶ 6. |
| 10. | | In addition, Plan Agent became familiar with the basic business operations of Debtor, such as the form contracts used with artists, the accounting program, the procedures for invoicing purchasers, and other such ordinary course practices. | Leslie Decl. II at ¶ 6. |
| 11. | | As a result of this analysis, Plan Agent developed an extensive understanding of the Debtor's pre and post-petition operations, including the details of the fraud that was carried out by Douglas Chrismas during his tenure running the Debtor's operations prior to and after the Effective Date. | Leslie Decl. II at ¶ 7. |
| 12. | | Plan Agent and his staff discovered that Douglas Chrismas had not accurately recorded proceeds from Art Property for sales in the Debtor's books and records and bank accounts, but instead had deposited proceeds from the sales to non-debtor accounts, i.e., the non-debtor entity Ace Gallery New York Corporation ("Ace NYC") and others even though the sale proceeds were property of the Debtor's estate. | Leslie Decl. II at ¶ 7. Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction, ECF 216 ("Kincaid Decl.") at 1-15 and exhibits attached thereto. |
| 13. | | Plan Agent's investigation revealed that Ace NYC was a shell entity that had no actual business or assets of its own. | Leslie Decl. II at ¶ 8. |
| 14. | | The investigation revealed that Ace NYC was a corporate name and a bank account that was used by Mr. Chrismas to funnel assets of Debtor's Bankruptcy Estate to third parties. | Leslie Decl. II at ¶ 8. Kincaid Decl. at 1-15 and exhibits attached thereto. |
| 15. | | The Plan Agent's investigation revealed that although all of the artist contracts and consignment agreements that Plan Agent located in the Debtor's and Non-Debtor Entities' books and records were contracts between the artist and the Debtor, many of the sales invoices recorded the sale as having been carried out by Ace NYC rather than by the Debtor. | Leslie Decl. II at ¶ 9. Kincaid Decl. at 1-15 and exhibits attached thereto. |

| 16. | The Plan Agent's investigation revealed that the post-petition sales that were alleged to have been carried out by Ace NYC were actually sales of the Debtor's property. | Leslie Decl. II at ¶ 9. Kincaid Decl. at 1-15 and exhibits attached thereto. |
|---|---|---|
| 17. | Mr. Chrismas incorporated Ace Gallery New York Corporation ("Ace NYC") on February 14, 2013, five days before the Petition Date. | Leslie Decl. II at ¶ 12. Kincaid Decl. at ¶ 7. Declaration of Victor Sahn Submitted in Support of Motion for Summary Judgment ("Sahn Decl."), ECF 874, at Exhibit 6 attached thereto (January 28, 2016 Chrismas Deposition) at page 11, lines 2-13 ("Q. Does Ace New York have an artwork that it owns or has on consignment? A. Maybe one or two pieces. It's a – it's consulting."). |
| 18. | During the post-petition period, Plan Agent's investigation revealed that there were approximately 158 sales of artworks that were the property of Debtor, yet the funds from these sales were deposited into Non-Debtor Entities accounts. Sales proceeds from 147 sales of artwork were deposited into the Ace NY Account. Sales proceeds from 9 pieces of artwork were directly deposited into an Ace | Leslie Decl. II at ¶ 20 and Exhibit D attached thereto, Chart entitled "Debtor's Art Sales Deposited into Ace Gallery New York Corporation & Inc., Ace Museum, and 400 S. La Brea, LLC,"("Diverted Art Sales Chart").[2] |

[2] Regarding this exhibit, Exhibit D to Leslie Decl. II, Plan Agent stated in his SSUF, ECF 1000, filed on June 9, 2021, that consistent with Federal Rule of Evidence 1006, the entirety of the underlying banking records original Ziegler Report Exhibit C summary are too voluminous to resubmit and were therefore presented in factual summary form. "Leslie Decl. II at ¶ 20 and Exhibit D thereto" is the original spreadsheet prepared by Jennifer Ziegler (i.e., Ziegler Referenced Exhibit C (Diverted Art Sales Chart)) summarizing evidence related to Debtor's post-petition sales and depositing of proceeds into non-Debtor entity Accounts, and incorporates and synthesizes the sales, deposits and total amounts as reflected in the banking records and statements and invoices in the record. The bank records and statements themselves were previously submitted as Exhibits A, B and U to the Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction, ECF 216 ("Kincaid Decl.") at 3. A set of Ace NYC banking records are also currently submitted as Exhibits A, A1, B, B1 and C to the Leslie Decl. II. At this court's request, Plan Agent submitted a Compendium of Exhibits, ECF 1001, filed on June 9, 2021, which organized this evidence consisting of artist contracts, sales invoices and bank records and statements showing the Debtor's artwork sales and deposits of the sales proceeds into non-Debtor entity bank accounts by

*(continued)*

| | | | |
|---|---|---|---|
| | | Museum account. Sale proceeds from the sale of 2 pieces of artwork were directly deposited into a 400 S. La Brea account. | Kincaid Decl. at 1-15 and exhibits attached thereto. |
| | 19. | The investigation revealed that the 158 pieces of artwork sold during this post-petition period belonged to Debtor. | Leslie Decl. II at ¶¶ 20 and 21, and Exhibit D thereto (Diverted Art Sales Chart). Kincaid Decl. at 1-15 and exhibits attached thereto. |
| | 20. | During the post-petition period, Non-Debtor Entities, Ace Museum and Ace Gallery New York Corporation, received proceeds from the sales of Debtors artworks by Mary Corse, Gary Lang, Helen Pashgian, Natalie Arnoldi, Justin Bower, Laurie Lipton, De Wain Valentine, Alexander Yulish, Peter Alexander, Alex Berg, Matt Hope, the Date Farmers, Ruth Pastine, Ben Jones, Phil Frost, Bernar Venet, Gisela Colon, Ellsworth Kelly, Johnathan Monk, Tara Donovan, Brian Willis, Robert Morris, Sylvie Fleury, Carl Andre and Robert Rauchenberg, many of whom were artists with which the Debtor had agreements to sell their artwork and others representing artwork owned by the Debtor outright. | Leslie Decl. II at ¶¶ 20 and 21, and Exhibit D thereto (Diverted Art Sales Chart). Kincaid Decl. at 1-15 and exhibits attached thereto. |
| | 21. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). |
| | 22. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| | 23. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching |

transaction, and his supplemental declaration authenticating the evidence in the Compendium of Exhibits, ECF 1117, filed on October 4, 2021.

| | | | copy of Helen Pashgian Contract). |
|---|---|---|---|
| 24. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 25. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 26. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 27. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). |
| 28. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| | | | |

| 29. | Peter Alexander and the Debtor are parties to a Consignment Agreement dated August 24, 2015, by which the Debtor had the exclusive right thereafter to sell certain consigned artworks by Peter Alexander (the "Alexander Contract"). | Peter Alexander Contract at Leslie Decl. II at ¶ 36 (discussing factual foundation regarding Peter Alexander contract) and Exhibit Q thereto (attaching copy of Peter Alexander Contract). |
| --- | --- | --- |
| 30. | Alex Berg and the Debtor are parties to a contract dated August 21, 2013, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alex Berg (the "Berg Contract"). | Alex Berg Contract at Leslie Decl. II at ¶ 37 (discussing factual foundation regarding Alex Berg contract) and Exhibit R thereto (attaching copy of Alex Berg Contract). |
| 31. | Matt Hope and the Debtor are parties to a contract dated September 22, 2006, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Matt Hope (the "Hope Contract"). | Matt Hope Contract at Leslie Decl. II at ¶ 38 (discussing factual foundation regarding Matt Hope contract) and Exhibit S thereto (attaching copy of Matt Hope Contract). |
| 32. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 33. | Ruth Pastine and the Debtor are parties to two Consignment Agreements dated February 25, 2015, and October 1, 2015 (the "Pastine Contract"). | Ruth Pastine Contract at Leslie Decl. II at ¶ 40 (discussing factual foundation regarding Ruth Pastine contract) and Exhibit U thereto (attaching copy of Ruth Pastine Contract). |
|  |  |  |

| | | | |
|---|---|---|---|
| 34. | The Debtor sold artworks by Ben Jones in sales dating from March 28, 2013. | Ben Jones sales documents at Leslie Decl. II at ¶ 41 (discussing factual foundation Ben Jones sale) and Exhibit V thereto (attaching copy of sales documents). |
| 35. | The Debtor sold artworks by Phil Frost in sales dating from June 25, 2013. | Phil Frost sales documents at Leslie Decl. II at ¶ 42 (discussing factual foundation Phil Frost sale) and Exhibit W thereto (attaching copy of sales documents). |
| 36. | In July 2013, the Debtor hosted a show of sculptures by Bernar Venet at its Wilshire Blvd. and Beverly Hills location. | Bernar Venet sales documents at Leslie Decl. II at ¶ 43 (discussing factual foundation Bernar Venet sale) and Exhibit X thereto (attaching copy of sales documents). |
| 37. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 38. | The Ellsworth Kelly artwork was owned by a private collector, and was sold as a secondary art sale using the Debtor's facilities for displaying the artwork and the Debtor's staff and costs for shipping the piece.  In addition, internal emails from Debtor discussing the provenance and describing the artwork on Ace Gallery Los Angeles Letterhead were found in Debtors' records. | Ellsworth Kelly sales documents at Leslie Decl. II at ¶ 45 (discussing factual foundation Ellsworth Kelly sale) and Exhibit Z thereto (attaching copy of sales documents). |
| 39. | The Debtor sold artworks from Jonathan Monk on March 30, 2016 which is reflected on Ace | Ace Gallery Invoice K1012 at Leslie Decl. II at ¶ 46 and |

| | | Gallery invoice No. K-1012, a true and correct copy of which is attached hereto as Exhibit AA. The invoice demonstrates that Debtor sold the artwork and was entitled to the proceeds funds from the sale. | Exhibit AA thereto. |
|---|---|---|---|
| | 40. | The Debtor sold artworks from Tara Donovan on March 30, 2016 which is reflected on Ace Gallery invoice No. K-1012, a true and correct copy of which is attached hereto as Exhibit BB. The Debtor also sold artworks from Tara Donovan on March 26, 2013 which is reflected on Ace Gallery invoice No. 1592, a true and correct copy of which is attached hereto as Exhibit BB. The invoices demonstrate that Debtor sold the artwork and was entitled to the proceeds funds from the sales. | Ace Gallery Invoice K1012 at Leslie Decl. II at ¶ 47 and Exhibit BB thereto. |
| | 41. | The Debtor sold artwork by John Millei on June 5, 2013 (entitled "Maritime #18") as evidenced by Ace Gallery Invoice No. 2005.  On May 30, 2013, the Estate of Pentti J.K. Kouri filed a "Notice of Motion and Motion for Relief from the Automatic Stay under 11 U.S.C. Section 362" seeking return of various artwork from Debtor that was subject to a consignment agreement between the Kouri estate and Debtor including the John Millei artwork referred to here. | Ace Gallery Invoice 2005 at Leslie Decl. II at ¶ 48 and Exhibit CC thereto. |
| | 42. | The Debtor sold artworks from Brian Willis on March 5, 2013, which is reflected on Ace Gallery invoice No. 2003.  The invoice demonstrates that Debtor sold the artwork and was entitled to the proceeds funds from the sale. These works were consigned from another gallery pursuant to a consignment agreement. | Ace Gallery Invoice 2003 at Leslie Decl. II at ¶ 49 and Exhibit DD thereto. |
| | 43. | The Debtor sold artworks from Robert Morris on March 20, 2013, which is reflected on Ace Gallery invoice No. 2005. | Ace Gallery Invoice 2005 at Leslie Decl. II at ¶ 50 and Exhibit EE thereto. |
| | 44. | The Debtor sold artworks from Sylvie Fleury on March 16, 2016, which is reflected on Ace Gallery Los Angeles Invoice No. K-1013. | Ace Gallery Invoice K1013 at Leslie Decl. II at ¶ 51 and Exhibit FF thereto. |
| | 45. | The Debtor sold artwork from Robert Rauschenberg on June 22, 2015 that is reflected on Ace Gallery Los Angeles Invoice No. 1819. | Ace Gallery Invoice 1819 at Leslie Decl. II at ¶ 52 and Exhibit GG thereto. |
| | 46. | The Debtor sold artworks from Carl Andre on May 17, 2013 (including fees from the sale on May 22, 2013), which is reflected on Ace Gallery Los Angeles Invoice Nos. 2012 and 2014. | Ace Gallery Invoice 2012 and 2014 at Leslie Decl. II at ¶ 53 and Exhibit HH thereto. |

## FACTS RELATED TO DOUGLAS CHRISMAS'S POST-PETITION CONVERSION OF DEBTOR'S PROPERTY THROUGH ACE NEW YORK

## MR. CHRISMAS ASSERTED THE FIFTH AMENDMENT PRIVILEGE REGARDING QUESTIONS POSED ABOUT HIS CONVERSION OF FUNDS THROUGH ACE NEW YORK[3]

| | | |
|---|---|---|
| 47. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that ACE NY carried out sales on behalf of artists with whom Debtor had consignment contracts that were in force at the time of such sales." | Declaration of Victor Sahn Submitted in Support of Motion for Summary Judgment ("Sahn Decl."), ECF 874, ¶¶ 1-11; Exhibits 1 (Request for Admission to Douglas Chrismas, Set 1, RFA No. 1. |
| 48. | Mr. Chrismas asserted the Fifth Amendment in response to Interrogatories requesting that he identify all assets that belonged to ACE NYC when it was incorporated on the eve of the Debtor's Chapter 11 bankruptcy case in 2013. | Sahn Decl., Exhibit 2 (Interrogatories to Douglas Chrismas, Set 1, Nos. 63, 64 and 65). |
| 49. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that ACE NYC obtained funds of Debtor during the post-petition period." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 17 and Douglas Chrismas Response to the same). |
| 50. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that you used ACE NYC to process sales of artwork that were owned by or subject to the consignment agreements of Debtor." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 18 and Douglas Chrismas Response to the same). |
| 51. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that ACE NYC never had an inventory of artworks to which it had legal title." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, |

---

[3] This section outlines a number of key questions related to Mr. Chrismas's conversion of Debtor's funds related to Debtor's artwork assets sold during the post-petition time period. The facts in this section are relevant to each transaction listed below. Plan Agent requested that these facts be incorporated into each set of facts related to the Invoices outlined below to the extent an adverse inference determination is made by the Court. Where appropriate, Plan Agent had cited in the SSUF Chrismas's specific invocations of the Fifth Amendment regarding specific artists, invoices or artworks as they relate to the specific transactions.

| | | No. 25 and Douglas Chrismas Response to the same). |
|---|---|---|
| 52. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that ACE NYC never entered into a fully executed consignment agreement with any artists prior to April 6. 2016." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 26 and Douglas Chrismas Response to the same). |
| 53. | Mr. Chrismas asserted the Fifth Amendment in response to the following Request for Admission "Admit that you never disclosed to the Bankruptcy Court during the pendency of the Chapter 11 proceedings that sales proceeds received by ACE NYC arising from the sales of artworks belonging to Debtor or subject to Debtor's consignment agreements were not being transferred to Debtor." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 27 and Douglas Chrismas Response to the same). |
| 54. | Mr. Chrismas asserted the Fifth Amendment in response to the following Request for Admission "Admit that between February 19, 2013 and April 16, 2016 you diverted Debtor Funds to ACE NYC." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 54 and Douglas Chrismas Response to the same). |
| | **FEBRUARY 2013 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1541** | |
| 55. | On February 18, 2103, Debtor charged its client for packing and shipping costs for the sale of two Laurie Lipton paintings in the amount of $600.00 as reflected on Ace Gallery Los Angeles Invoice No. 1541. | Invoice No. 1541, Exhibit 1 of Compendium of Evidence, ECF 1001, filed on June 9, 2021, p. 2; Supplemental Declaration of Sam Leslie in Support of Plaintiff's Motion for Summary Adjudication, ECF 1117, filed on October 4, 2021 (setting forth evidentiary foundation for Compendium of Evidence). |

| | | | 4 |
|---|---|---|---|
| 56. | The total amount of the sale on Invoice No. 1541 was $600.00. | | *Id.* |
| 57. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 58. | On February 26, 2013, $600.00 was deposited into Ace New York checking account no. ending in #0229 at City National Bank. | | Ace NY Bank Records, Ex. 1 of Compendium of Evidence, pp. 3-4. |
| | **ACE GALLERY INVOICE NO. 2000A** | | |
| 59. | On February 18, 2013, Debtor sold two pieces of artwork by the Date Farmers -- Duk Fug, 2012 and Jerk Off 2012 as reflected on Ace Gallery Invoice No. 2000A. | | Invoice No. 2000A, Ex. 2 of Compendium of Evidence, p. 6. |
| 60. | The total amount of the sale on Invoice No. 2000A was $38,368.00. | | *Id.* |
| 61. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 62. | On February 19, 2013, $38,368.00 was deposited into Ace New York account ending in #9951 at Wells Fargo. | | Ace NY Bank Records, Exhibit 2 of Compendium of Evidence, pp. 7-8. |
| 63. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2000A. | | Chrismas Deposition, at [page:line(s)] 153:7-165:21; and Exhibits 84-91 attached |

---

[4] The references to Plaintiff's Compendium of Evidence are supported by the Supplemental Declaration of Sam Leslie in Support of Plaintiff's Motion for Summary Adjudication, ECF 1117, filed on October 4, 2021, which provides the evidentiary foundation for the exhibits attached to the Compendium.

| | | thereto. |
|---|---|---|
| | **ACE GALLERY NEW YORK INVOICE NO. 2000** | |
| 64. | On February 20, 2013, Debtor sold nine pieces of artwork by The Date Farmers – Ateen, 2010, Southern Comfort (Hello Kitty), 2010; Armagetnoutofhre, 2011; medU.S.A., 2011; Child Soldier, 2011, Regal Beer, 2010; Butterscotch, 2010. Chang044, 2010, and Plastico, 2011 as reflected on Ace Gallery New York Invoice No. 2000. | Invoice No. 2000, Exhibit 3 of Compendium of Evidence, p. 23. |
| 65. | The total amount of the sale on Invoice No. 2000 was $84,210.00 for all nine art pieces. | *Id.* |
| 66. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 67. | On March 1, 2013, $84,177.00 was deposited into Ace New York account no. ending in #9951 at Wells Fargo. | Ace NY Bank Records, Exhibit 3 of Compendium of Evidence, pp. 24-25. |
| 68. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2000. | Chrismas Deposition, 181:17-185:1; 185:2-190:23; and Exhibits 59, 98-99 attached thereto. |
| | **ACE GALLERY INVOICE NO. 2001A** | |
| 69. | On February 26, 2013, Debtor sold two pieces of artwork by Laurie Lipton – Reality TV, 2009 and Icon, 2003 as reflected on Ace Gallery Invoice No. 2001A. | Invoice No. 2001A, Exhibit 4 of Compendium of Evidence, p. 31. |
| 70. | The total amount of the sale on Invoice No. 2001A was $32,000.00. | *Id.* |
| 71. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual |

| | | Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "<u>Lipton Contract</u>"). | foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
|---|---|---|---|
| 72. | | On March 8, 2013, $32,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 4 of Compendium of Evidence, pp. 32-33. |

**ACE GALLERY INVOICE NO. 1557A**

| | | | |
|---|---|---|---|
| 73. | On February 28, 2013, Debtor sold one piece of artwork by Mary Corse – Untitled (Grey Grid with Red), 1988 as reflected on Ace Gallery Invoice No. 1557A. | | Invoice No. 1557A, Exhibit 5 of Compendium of Evidence, p. 35. |
| 74. | The total amount of the sale on Invoice No. 1557A was $200,000.00. | | *Id.* |
| 75. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "<u>Corse Contract</u>"). | | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 76. | On March 8, 2013, 199,980.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 5 of Compendium of Evidence, pp. 36-37. |
| 77. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 1557A. | | Chrismas Deposition, 171:4-175:10; 178:14-18; and Exhibit 95 attached thereto. |

**MARCH 2013 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY INVOICE NO. 2001**

| | | |
|---|---|---|
| 78. | On March 1, 2013, Debtor SOLD five pieces of artwork by The Date Farmers – 44 Skull, 2010, Vampirito, 2010, Pro Sports, 2010, Albert Medina, 2010, and Amor, 2009 – as reflected on Ace Gallery Invoice No. 2001. | Invoice No. 2001, Exhibit 6 of Compendium of Evidence, pp. 40-41. |
| 79. | The total amount of the sale on Invoice No. 2001 was $27,860.00. | *Id.* |
| 80. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 81. | On March 20, 2013, $27,835.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 6 of Compendium of Evidence, pp. 42-43. |

**ACE GALLERY INVOICE NO. 2002**

| | | |
|---|---|---|
| 82. | On March 1, 2013, Debtor sold two pieces of artwork by The Date Farmers – O Lord My Mistakes, 2010 and Old School, 2011 – as reflected on Ace Gallery Invoice No. 2002 | Invoice No. 2002, Exhibit 7 of Compendium of Evidence, p. 46. |
| 83. | The total amount of the sale on Invoice No. 2002 was $11,900.00 | *Id.* |
| 84. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers |

| | | |
|---|---|---|
| | | Contract). |
| 85. | On March 15, 2013, $11,900.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 7 of Compendium of Evidence, pp. 47-48. |

### ACE GALLERY INVOICE NO. 2003

| | | |
|---|---|---|
| 86. | On March 5, 2013, Debtor sold one piece of artwork by Brian Wills – Untitled (Spectrum), 2013 – as reflected on Ace Gallery Invoice No. 2003. | Invoice No. 2003, Exhibit 8 of Compendium of Evidence, p. 51. |
| 87. | The total amount of the sale on Invoice No. 2003 was $14,824.00. | *Id.* |
| 88. | On March 7, 2013, $25,288.00 was deposited into Ace New York checking account ending in #0229 at City National Bank (for both invoice 2003 and invoice 1557B). | Ace NY Bank Records, Ex. 8 of Compendium of Evidence, pp. 53-54. |

### ACE GALLERY INVOICE NO. 1557B

| | | |
|---|---|---|
| 89. | On March 5, 2013, Debtor sold one piece of artwork by The Date Farmers – Watermelon Spider, 2011 – as reflected on Ace Gallery Invoice No. 1557B. | Invoice No. 1557B, Ex. 9 of Compendium of Evidence, p. 58. |
| 90. | The total amount of the sale on Invoice No. 1557B was $10,464.00. | *Id.* |
| 91. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 92. | On March 7, 2013, $25,288.00 was deposited into Ace New York checking account ending in #0229 at City National Bank (for both invoice 2003 and invoice 1557B). | Ace NY Bank Records, Ex. 9 of Compendium of Evidence, pp. 59-60. |

| **ACE GALLERY INVOICE NO. 2005A** | | |
|---|---|---|
| 93. | On March 5, 2013, Debtor sold one piece of artwork by Gary Lang – Ayre, 2015 – as reflected on Ace Gallery Invoice No. 2005A. | Invoice No. 2005A, Exhibit 10 of Compendium of Evidence, p. 63. |
| 94. | The total amount of the sale on Invoice No. 2005A was $45,000.00. | *Id.* |
| 95. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 96. | On March 18, 2013, $45,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 10 of Compendium of Evidence, pp. 64-67. |
| 97. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2005A. | Chrismas Deposition, 191:23-194:12; and Exhibit 101 attached thereto. |
| **ACE GALLERY INVOICE NO. 2006** | | |
| 98. | On March 18, 2013, Debtor sold four pieces of artwork by Mary Corse – Untitled (White 4 Inner Band Beveled) 2012, Untitled (White 1 Inner Band Beveled) 2012 SH29/LN7, Untitled (White 1 Inner Band Beveled) 2012 SH30/LN1, and Untiled (White 1 Inner Band W/Outer Band, Beveled) 2012 – as reflected on Invoice No. 2006. | Invoice No. 2006, Exhibit 11 of Compendium of Evidence, pp. 69-70. |
| 99. | The total amount of the sale on Invoice No. 2006 was $430,000.00 less special discount of $215,000.00 for a total of $215,000.00. | *Id.* |
| 100. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). |

| | | |
|---|---|---|
| | | *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 101. | On March 1, 2013, $150,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 11 of Compendium of Evidence, pp. 71-72. |
| 102. | On March 27, 2013, $65,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 11 of Compendium of Evidence, pp. 71-72. |
| 103. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2006. | Chrismas Deposition, 165:22-172:3; and Exhibits 92-94 attached thereto. |
| | **ACE GALLERY INVOICE NO. 2005** | |
| 104. | On March 20, 2013, Debtor sold one piece of artwork by Robert Morris – Working Drawing for Vertical Column, Horizontal Column, Hanging Slab, 1973 – as reflected on Invoice No. 2005. | Invoice No. 2005, Exhibit 12 of Compendium of Evidence, p. 75. |
| 105. | The total amount of the sale on Invoice No. 2005 was $18,000.00. | *Id.* |
| 106. | On March 21, 2013, $18,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 12 of Compendium of Evidence, pp. 76-77. |
| | **ACE GALLERY INVOICE NO. 2007** | |
| 107. | On March 28, 2013, Debtor sold one piece of artwork by Ben Jones – Roadtrip Video Painting, 2013 – as reflected on Invoice No. 2005. | Invoice No. 2007, Exhibit 13 of Compendium of Evidence, p. 80. |
| 108. | The total amount of the sale on Invoice No. 2007 was $26,160.00. | *Id.* |
| 109. | On March 28, 2013, $26,160.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 13 of Compendium |

| 110. | On April 15, 2013, Debtor sold one piece of artwork by Gary Lang – Metal Painting #2, 2011 – as reflected on Invoice No. 2009. | Invoice No. 2009, Exhibit 14 of Compendium of Evidence, p. 85. |

of Evidence, pp. 81-82.

**APRIL 2013 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY INVOICE NO. 2009**

| 110. | On April 15, 2013, Debtor sold one piece of artwork by Gary Lang – Metal Painting #2, 2011 – as reflected on Invoice No. 2009. | Invoice No. 2009, Exhibit 14 of Compendium of Evidence, p. 85. |
|---|---|---|
| 111. | The total amount of the sale on Invoice No. 2009 was $49,050.00. | *Id.* |
| 112. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 113. | On April 22, 2013, $49,387.50 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 14 of Compendium of Evidence, p. 86. |

**ACE GALLERY INVOICE NO. 2010**

| 114. | On April 16, 2013, Debtor received 50% of the cost of an advertisement related to gallery artists Benar Venet on the back cover of the May/June issue of Flash Art Magazine as reflected on Invoice No 2010. | Invoice No. 2010, Ex. 15 of Compendium of Evidence, p. 90. |
|---|---|---|
| 115. | The total amount of the sale on Invoice No. 2010 was $3,600.00. | *Id.* |
| 116. | On April 22, 2013, $3,600.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 15 of Compendium of Evidence, p. 91. |

**ACE GALLERY INVOICE NO. 2011**

| 117. | On April 26, 2013, Debtor sold one piece of | Invoice No. 2011, Exhibit |

| | artwork by Justin Bower – Spaceboy V, 2013 – as reflected on Invoice No. 2011. | 16 of Compendium of Evidence, p. 95. |
|---|---|---|
| 118. | The total amount of the sale on Invoice No. 2011 was 18,750.00, less a discount per the agreement for a total of $9,375.00. | *Id.* |
| 119. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 120. | On May 6, 2013, $9,355.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 16 of Compendium of Evidence, pp. 96-97. |
| | **MAY 2013 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY INVOICE NO. 2012** | |
| 121. | On May 17, 2013, Debtor sold one piece of artwork by Carl Andre – 100 Ace Zinc Square, 2007 – as reflected on Invoice No. 2012. | Invoice No. 2012, Exhibit 17 of Compendium of Evidence, p. 102. |
| 122. | The total amount of the sale on Invoice No. 2012 was $533,500.00. | *Id.* |
| 123. | On May 20, 2013, $533,500.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 17 of Compendium of Evidence, pp. 103-204. |
| 124. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2012. | Chrismas Deposition, 203:22-206:11; 211:6-213:7; and Exhibits 108-109; 113 attached thereto. |
| | **ACE GALLERY INVOICE NO. 2013** | |
| 125. | On May 17, 2013, Debtor sold one piece of artwork by Mary Corse – Untitled (White Inner Band), 2012 – as reflected on Invoice No. 2013. | Invoice No. 2013, Exhibit 18 of Compendium of Evidence, p. 109. |

| 126. | The total amount of the sale on Invoice No. 2013 was $125,225.00. | *Id.* |
|---|---|---|
| 126.5. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 127. | On May 21, 2013, $125,225.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 18 of Compendium of Evidence, p. 110. |

### ACE GALLERY INVOICE NO. 2014

| 128. | On May 22, 2013, Debtor sold one piece of artwork by Carl Andre – 100 Ace Zinc Square, 2007 – as reflected on Invoice No 2012.  The freight for that sale was charged to the client who purchased the artwork as reflected on Invoice No. 2014 | Invoice No. 2014, Exhibit 19 of Compendium of Evidence, p. 115. |
|---|---|---|
| 129. | The total amount of the sale on Invoice No. 2014 was $3,535.00. | *Id.* |
| 130. | On May 22, 2013, $3,535.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 19 of Compendium of Evidence, p. 116. |

### ACE GALLERY INVOICE NO. 2015A

| 131. | On May 24, 2013, Debtor sold one piece of artwork by John Millei – Maritime #18 (Black Pearl), 2004 – as reflected on Invoice No. 2015A. | Invoice No. 2015A, Exhibit 20 of Compendium of Evidence, p. 121. |
|---|---|---|

| | | |
|---|---|---|
| 132. | The total amount of the sale on Invoice No. 2015A was $140,000.00. | *Id.* |
| 133. | On June 5, 2013, $140,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 20 of Compendium of Evidence, p. 122. |
| 134. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2015A. | Chrismas Deposition, 221:2-226:6, and Exhibits 118-120 attached thereto. |

### ACE GALLERY INVOICE NO. 2015

| | | |
|---|---|---|
| 135. | On May 28, Debtor sold one piece of artwork by The Date Farmers – Untitled, (American Flag Theme), 2013 – as reflected on Invoice No. 2015. | Invoice No. 2015, Exhibit 21 of Compendium of Evidence, p. 126. |
| 136. | The total amount of the sale on Invoice No. 2015 was $18,000.00. | *Id.* |
| 137. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 138. | On June 18, 2013, $8,980.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 21 of Compendium of Evidence, pp. 127-128. |
| 139. | On September 4, 2013, another $8,980.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 21 of Compendium of Evidence, pp. 127, 131. |

### ACE GALLERY INVOICE NO. 2016

| | | |
|---|---|---|
| 140. | On May 31, 2013, Debtor sold one piece of artwork by Laurie Lipton – Wanda Always Wanted to Be A Sex Object, 1991 – as reflected on Invoice No. 2016. | Invoice No. 2016, Exhibit 22 of Compendium of Evidence, p. 135. |
| 141. | The total amount of the sale on Ace Gallery Invoice No. 2016 was $15,260.00. | *Id.* |

| 142. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
|---|---|---|
| 143. | On June 3, 2013, $15,260.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 22 of Compendium of Evidence, p. 136. |

### ACE GALLERY INVOICE NO. 2017

| 144. | On June 5, 2013, Debtor sold one piece of artwork by Justin Bower – Untitled, 2013 – as reflected on Invoice No. 2017. | Invoice No. 2017, Exhibit 23 of Compendium of Evidence, p. 140. |
|---|---|---|
| 145. | The total amount of the sale on Invoice No. 2017 was $20,000.00. | Id. |
| 146. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 147. | On June 6, 2013, $20,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 23 of Compendium of Evidence, pp. 141-142. |

### ACE GALLERY NEW YORK INVOICE NO. 2019

| 148. | On June 25, 2013, Debtor sold one piece of artwork by The Date Farmers – Meteor Shower, 2013 – as reflected on Invoice No. 2019. | Invoice No. 2019, Exhibit 24 of Compendium of Evidence, p. 146. |
|---|---|---|
| 149. | The total amount of the sale on Invoice No. 2019 was $20,000.00. | Id. |
| 150. | Armando Lerma and Carlos Ramirez, a/k/a The Date Farmers (the "Date Farmers") and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date |

| | | |
|---|---|---|
| | right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "<u>Date Farmers Contract</u>"). | Farmers Contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 151. | On July 3, 2013, $20,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 24 of Compendium of Evidence, pp. 147-148. |

**JULY 2013 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY NEW YORK INVOICE NO. 2020**

| | | |
|---|---|---|
| 152. | On July 2, 2013, Debtor sold one piece of artwork by David Amico – Fast Line 2006; one piece of artwork by Phil Frost – Untitled, 2013 [4' x' 3']; and one piece of artwork by Gary Lang – One (With The) Sting #3, 2011 – as reflected on Invoice No. 2020. | Invoice No. 2020, Exhibit 25 of Compendium of Evidence, p. 152. |
| 153. | The total amount of the sale on Invoice No. 2020 was $132,000.00. | *Id.* |
| 154. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "<u>Lang Contract</u>"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 155. | On July 2, 2013, $132,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 25 of Compendium of Evidence, pp. 152-154. |
| 156. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2020. | Chrismas Deposition, 396:14-399:3; and Exhibit 184 attached thereto. |

**ACE GALLERY NEW YORK INVOICE NO. 2020A**

| | | |
|---|---|---|
| 157. | On July 3, 2013, Debtor sold three pieces of artwork by Helen Pashgian – Untiled, #18, 2012; Untitled #19, 2012; and Untitled (Blue Sphere), | Invoice No. 2020A, Exhibit 26 of Compendium of |

| | | |
|---|---|---|
| | 2013 – as reflected on Invoice No. 2020A. | Evidence, p. 158. |
| 158. | The total amount of the sale on Invoice No. 2020A was $51,200.00 | *Id.* |
| 159. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 160. | On July 8, 2013, $51,200.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 26 of Compendium of Evidence, pp. 159-160. |
| | **ACE GALLERY INVOICE NO. 2021** | |
| 161. | On July 22, 2013, Debtor sold one piece of artwork by Phil Frost – Untitled, 2013 [5' x 4'] – as reflected on Invoice No. 2021. | Invoice No. 2021, Exhibit 27 of Compendium of Evidence, p. 164. |
| 162. | The total amount of the sale on Invoice No. 2021 was $52,320.00. | *Id.* |
| 163. | On July 19, 2013, $52,320.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 27 of Compendium of Evidence, p. 165. |
| 164. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2021. | Chrismas Deposition, 391:3-393:24; and Exhibit 181 attached thereto. |
| | **ACE GALLERY NEW YORK INVOICE NO. 2022** | |
| 165. | On July 30, 2013, Debtor sold one piece of artwork by Bernar Venet,– Indetermined Line, 1990 and one piece of artwork by Charles Fine – Flor De Incino, 2012, as reflected on Invoice No. | Invoice No. 2022, Exhibit 28 of Compendium of Evidence, p. 169. |

| | | |
|---|---|---|
| | 2022. | |
| 166. | The total amount of the sale on Invoice No. 2015A was $172,000.00. | *Id.* |
| 167. | On August 2, 2013, $172,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 28 of Compendium of Evidence, pp. 170-171; 174. |
| 168. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2022. | Chrismas Deposition, 234:24-240:15; and Exhibits 127-131 attached thereto. |
| 169. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2022. | Chrismas Deposition, 387:10-389:20; and Exhibit 179 attached thereto. |

### SEPTEMBER 2013 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY LOS ANGELES INVOICE NO. 1614A

| | | |
|---|---|---|
| 170. | On September 12, 2013, Debtor invoiced the commission due on a direct sale of art by Helen Pashgian. | Invoice No. 1614A, Exhibit 29 of Compendium of Evidence, p. 176. |
| 171. | The total amount of the sale on Invoice No. 1614A was $10,000.00. | *Id.* |
| 172. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 173. | On September 20, 2013, $10,000.00 was deposited into Ace New York checking account | Ace NY Bank Records, Exhibit 29 of Compendium |

| | | |
|---|---|---|
| | ending in #0229 at City National Bank. | of Evidence, p. 177. |

**OCTOBER 2013 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY NEW YORK INVOICE NO. 2026**

| | | |
|---|---|---|
| 174. | On October 11, 2013, Debtor sold one piece of artwork by Alex Berg – Young Girls Hair, 2012 – as reflected on Invoice No. 2026. | Invoice No. 2026, Exhibit 30 of Compendium of Evidence, p. 181. |
| 175. | The total amount of the sale on Invoice No. 2026 was $1,962.00. | *Id.* |
| 175.5 | Alex Berg and the Debtor are parties to a contract dated August 21, 2013, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alex Berg (the "Berg Contract"). | Alex Berg Contract at Leslie Decl. II at ¶ 37 (discussing factual foundation regarding Alex Berg contract) and Exhibit R thereto (attaching copy of Alex Berg Contract). |
| 176. | On October 17, 2013, $1,962.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 30 of Compendium of Evidence, pp. 182-183. |

**ACE GALLERY NEW YORK INVOICE NO. 2027**

| | | |
|---|---|---|
| 177. | On October 14, 2013, Debtor sold two pieces of artwork by Gary Lang – Metallines 1, 2013 and Metal Lines 2, 2013 – as reflected on Invoice No. 2027. | Invoice No. 2027, Exhibit 31 of Compendium of Evidence, p. 187. |
| 178. | The total amount of the sale on Invoice No. 2027 was $120,000.00. | *Id.* |
| 179. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |

| 180. | On October 16, 2013, $120,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 31 of Compendium of Evidence, p. 188. |
|---|---|---|
| 181. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2027. | Chrismas Deposition, 259:10-263:10; and Exhibits 143-145 attached thereto. |

### ACE GALLERY NEW YORK INVOICE NO. 2028

| 182. | On October 17, 2013, Debtor sold one piece of artwork by Helen Pashgian – Untitled, (Elliptical Spheroid), 1969 – as reflected on Invoice No. 2028. | Invoice No. 2028, Exhibit 32 of Compendium of Evidence, p. 192. |
|---|---|---|
| 183. | The total amount of the sale on Invoice No. 2028 was $37,060.00. | *Id.* |
| 184. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint ECF 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 185. | On October 18, 2013, $37,060.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 32 of Compendium of Evidence, pp. 193-194. |

### NOVEMBER 2013 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2030

| 186. | On November 25, 2013, Debtor sold two pieces of artwork by Mary Corse – 1 White Painting, | Invoice No. 2030, Exhibit 33 of Compendium of |
|---|---|---|

| | | |
|---|---|---|
| | 1968 and 1 Black Painting, 1979 – as reflected on Invoice No. 2030. | Evidence, p. 198. |
| 187. | The total amount of the sale on Invoice No. 2030 was $300,000.00. | *Id.* |
| 188. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 189. | On November 25, 2013, $200,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 33 of Compendium of Evidence, pp. 199-200. |
| 190. | On November 25, 2013, $100,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 33 of Compendium of Evidence, pp. 199-200. |
| 191. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2030. | Chrismas Deposition, 266:15-267:22; 270:17-271:1; 273:4-274:2; and Exhibits 147-149 attached thereto. |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1660** | |
| 192. | On November 27, 2013, Debtor sold three pieces of artwork by De Wain Valentine – Column Gray, 1972-75 [1 of 2]; Column Gray, 1972-75 [2 of 2], and Skyline 001, 2004 – as reflected on Invoice No. 1660. | Invoice No. 1660, Exhibit 34 of Compendium of Evidence, p. 204. |
| 193. | The total amount of the sale on Invoice No. 1660 was $153,900.00. | *Id.* |
| 194. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts | De Wain Valentine Contract at Leslie Decl. II |

| | | by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
|---|---|---|---|
| 195. | | On February 18, 2014, $153,900.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 34 of Compendium of Evidence, pp. 205-206. |
| 196. | | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 1660. | Chrismas Deposition, 274:3-276:19; Chrismas Depo. Exs. 150-152. |
| | | **ACE GALLERY INVOICE NO. 1661** | |
| 197. | | On November 27, 2013, Debtor sold three pieces of artwork by De Wain Valentine – Column Gray #5, 1970; Column Gray #1, 1970; and Column Gray #2, 1970 – as reflected on Invoice No. 1661. | Invoice No. 1661, Ex. 35 of Compendium of Evidence, p. 211. |
| 198. | | The total amount of the sale on Invoice No. 1661 was $225,000.00. | *Id.* |
| 199. | | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |

| | | |
|---|---|---|
| 200. | On December 24, 2013, $50,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Ex. 35 of Compendium of Evidence, pp. 212-213. |
| 201. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 1661. | Chrismas Deposition, 276:20-277:25; and Exhibit 153 attached thereto. |

### DECEMBER 2013 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2031A

| | | |
|---|---|---|
| 202. | On December 8, 2013, Debtor sold one piece of artwork by De Wain Valentine – Column Gray With Cloud, 1969-70 – as reflected on Invoice No. 2031A. | Invoice No. 2031A, Exhibit 36 of Compendium of Evidence, p. 217. |
| 203. | The total amount of the sale on Invoice No. 2031A was $480,000.00. | *Id.* |
| 204. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 205. | On December 13, 2013, $240,000.00 (two payments of $120,000.00) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 36 of Compendium of Evidence, pp. 218-291. |
| 206. | On January 3, 2014, $240,000.00 (two payments of $120,000.00) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 36 of Compendium of Evidence, pp. 218, 222. |

| 207. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2031A. | Chrismas Deposition, 278:1-282:1; and Exhibits 154-157 attached thereto. |
| --- | --- | --- |
| | **ACE GALLERY NEW YORK INVOICE NO. 2031** | |
| 208. | On December 17, 2013, Debtor sold one piece of artwork by De Wain Valentine – Diamond Column Blue, 1968 – as reflected on Invoice No. 2031. | Invoice No. 2031, Exhibit 37 of Compendium of Evidence, p. 226. |
| 209. | The total amount of the sale on Invoice No. 2031 was $37,060.00. | *Id.* |
| 210. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 211. | On December 18, 2013, $37,060.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 37 of Compendium of Evidence, p. 227. |
| | **2014 POST-PETITION SALES AND DEPOSITS** | |
| | **JANUARY 2014 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY NEW YORK INVOICE NO. 2032** | |
| 212. | On January 16, 2014, Debtor sold one piece of | Invoice No. 2032, Exhibit |

| | | artwork by Gisela Colon – Rectangle Torque Glo-Pod (Iridescent Hot Red/Pink), 2013 – and one piece of artwork by Helen Pashgian – Sphere (Red, Pale Blue Eyes), 2013 – as reflected on Invoice No. 2032. | 38 of Compendium of Evidence, p. 231. |
|---|---|---|---|
| 213. | | The total amount of the sale on Invoice No. 2032 was $64,310.00. | *Id.* |
| 214. | | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "<u>Pashgian Contract</u>"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 215. | | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation of Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 216. | | On January 16, 2014, $64,310.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 38 of Compendium of Evidence, p. 232. |
| 217. | | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2032. | Chrismas Deposition, 351:25-354:10; 354:9-357:17; and. Exhibits 166-167 attached thereto. |
| | | **<u>ACE GALLERY NEW YORK INVOICE NO. 2033</u>** | |
| 218. | | On January 16, 2014, Debtor sold one piece of artwork by Gisela Colon – Skewed Square Glo-Pod (iridescent Indigo Glue), 2014 – as reflected on Invoice No. 2033. | Invoice No. 2033, Exhibit 39 of Compendium of Evidence, p. 236. |

| 219. | The total amount of the sale on Invoice No. 2033 was $12,000.00. | *Id.* |
| 220. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 221. | On January 17, 2014, $12,000.00 (within the $80,000.00 deposit) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 39 of Compendium of Evidence, pp. 237-283. |

### ACE GALLERY NEW YORK INVOICE NO. 2034

| 222. | On January 19, 2014, Debtor sold one piece of artwork by Justin Bower – Untitled, 2009 – as reflected on Invoice No. 2034. | Invoice No. 2034, Exhibit 40 of Compendium of Evidence, p. 242. |
| 223. | The total amount of the sale on Invoice No. 2034 was $29,750.00. | *Id.* |
| 224. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 225. | On January 21, 2014, $5,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 40 of Compendium of Evidence, pp. 243-244. |
| 226. | On January 23, 2014, $9,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 40 of Compendium of Evidence, pp. 243-244. |
| 227. | On January 24, 2014, $7,500.00 ($15,750.00 total deposit) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 40 of Compendium of Evidence, pp. 243-244. |
| 228. | On January 24, 2014, $8,250.00 ($15,750.00 total deposit) was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 40 of Compendium of Evidence, pp. 243-244. |

| | 229. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2034. | Chrismas Deposition, 357:22-360:5; and Exhibit 168 attached thereto. |
|---|---|---|---|

### ACE GALLERY NEW YORK INVOICE NO. 2035

| | 230. | On January 19, 2014, Debtor sold one piece of artwork by Gisela Colon – Dome Melt Glo-Pod (Iridescent Blue Green), 2014– as reflected on Invoice No. 2035. | Invoice No. 2035, Exhibit 41 of Compendium of Evidence, p. 247. |
|---|---|---|---|
| | | The total amount of the sale on Invoice No. 2035 was $14,715.00. | *Id.* |
| | 231. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Colon sales) and Exhibit Y thereto (attaching Gisela Colon documents). |
| | 232. | On January 21, 2014, $14,715.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 41 of Compendium of Evidence, p. 248. |
| | 233. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2035. | Chrismas Deposition, 366:22-369:4; 369:5-371:9; 371:10-372:10; and Exhibits 170-173 attached thereto. |

### FEBRUARY 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2037

| | 234. | On February 5, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (White Inner Bank with Flat White Outer Bands, Beveled), 2012 – as reflected on Invoice No. 2037. | Invoice No. 2037, Exhibit 42 of Compendium of Evidence, p. 252. |
|---|---|---|---|
| | 235. | The total amount of the sale on Invoice No. 2037 was $72,000.00. | *Id.* |
| | 236. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the | Mary Corse Contract at Leslie Decl. II at ¶ 28 |

| | | |
|---|---|---|
| | Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). |
| | | *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 237. | On January 16, 2014, $72,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 42 of Compendium of Evidence, pp. 253-254. |

**ACE GALLERY NEW YORK INVOICE NO. 2036**

| | | |
|---|---|---|
| 238. | On February 11, 2014, Debtor sold one piece of artwork by Peter Alexander – Seven Part Bar, 2013 – as reflected on Invoice No. 2036. | Invoice No. 2036, Exhibit 43 of Compendium of Evidence, p. 258. |
| 239. | The total amount of the sale on Invoice No. 2032 was $163,500.00. | *Id.* |
| 240. | Peter Alexander and the Debtor are parties to a Consignment Agreement dated August 24, 2015, by which the Debtor had the exclusive right thereafter to sell certain consigned artworks by Peter Alexander (the "Alexander Contract"). | Peter Alexander Contract at Leslie Decl. II at ¶ 36 (discussing factual foundation regarding Peter Alexander contract) and Exhibit Q thereto (attaching copy of Peter Alexander Contract). |
| 241. | On February 4, 2014, $150,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 43 of Compendium of Evidence, pp. 259-260. |
| 242. | On February 12, 2014, $13,500.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 43 of Compendium of Evidence, pp. 259-260. |
| 243. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2036. | Chrismas Deposition, 373:11-377:15; and Exhibit |

| | | | |
|---|---|---|---|
| 1 | | | 174 attached thereto. |
| 2 | | **MARCH 2014 POST-PETITION SALES AND DEPOSITS** | |
| 3 | | | |
| 4 | | | |
| 5 | | **ACE GALLERY NEW YORK INVOICE NO. 2038** | |
| 6 | | | |
| 7 | 244. | On March 19, 2014, Debtor sold three pieces of artwork by Gisela Colon – Slab Glo-Pod (Iridescent Green Blue), 2013– as reflected on Invoice No. 2038; Ovoid Glo-Pod (Iridescent Aqua Violet), 2013; and Ovoid Glo-Pod (Iridescent Aqua Gold), 2013 – as reflected on Invoice No. 2038. | Invoice No. 2038, Exhibit 44 of Compendium of Evidence, pp. 264-265. |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | 245. | The total amount of the sale on Invoice No. 2038 was $38,368.00. | *Id.* |
| 12 | 246. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Colon sales) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | 247. | On March 20, 2014, $38,368.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 44 of Compendium of Evidence, p. 266. |
| 18 | | | |
| 19 | | **ACE GALLERY NEW YORK INVOICE NO. 2040** | |
| 20 | | | |
| 21 | 248. | On March 31, 2014, Debtor sold one piece of artwork by De Wain Valentine – Ring Agate, 1968 – as reflected on Invoice No. 2040. | Invoice No. 2040, Exhibit 45 of Compendium of Evidence, p. 270. |
| 22 | | | |
| 23 | 249. | The total amount of the sale on Invoice No. 2040 was $150,000.00. | *Id.* |
| 24 | | | |
| 25 | 250. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain |
| 26 | | | |
| 27 | | | |
| 28 | | | |

| | | | |
|---|---|---|---|
| | | | Valentine Contract). |
| | | | *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 251. | On April 4, 2014, $150,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 45 of Compendium of Evidence, pp. 271-272. |

**APRIL 2014 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY NEW YORK INVOICE NO. 2041**

| | | | |
|---|---|---|---|
| 252. | On April 17, 2014, Debtor invoiced a part for the crating of the De Wain Valentine artwork Ring Agate, 1968 as reflected on Invoice No. 2041. | | Invoice No. 2041, Exhibit 46 of Compendium of Evidence, p. 276. |
| 253. | The total amount of the sale on Invoice No. 2041 was $648.39. | | *Id.* |
| 254. | On January 16, 2014, $648.39 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 46 of Compendium of Evidence, pp. 277-278. |

**ACE GALLERY NEW YORK INVOICE NO. 2042**

| | | | |
|---|---|---|---|
| 255. | On April 23, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled (Sphere), 2014 – as reflected on Invoice No. 2042. | | Invoice No. 2042, Exhibit 47 of Compendium of Evidence, p. 282. |
| 256. | The total amount of the sale on Invoice No. 2042 was $39,240.00. | | *Id.* |
| 257. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian |

| | | Contract). |
| | | *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 258. | On April 30, 2014, $39,240.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 47 of Compendium of Evidence, p. 283. |

### MAY 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2043

| 259. | On May 2, 2014, Debtor invoiced the delivery and installation for the Peter Alexander painting Seven Part bar, 2013 – as reflected on Invoice No. 2043. | Invoice No. 2043, Exhibit 48 of Compendium of Evidence, p. 287. |
| 260. | The total amount of the sale on Invoice No. 2043 was $889.20. | *Id.* |
| 261. | On May 22, 2014, $889.20 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 48 of Compendium of Evidence, pp. 288-289. |

### [NO LETTERHEAD] INVOICE NO. 2044

| 262. | On May 9, 2014, Debtor sold two pieces of artwork by Alex Berg – Plane Crash, 2013 and Boy in Costume, 2013 – as reflected on Invoice No. 2044. | Invoice No. 2044, Exhibit 49 of Compendium of Evidence, p. 293. |
| 263. | The total amount of the sale on the Invoice No. 2032 was $2,725.00. | *Id.* |
| 264. | Alex Berg and the Debtor are parties to a contract dated August 21, 2013, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alex Berg (the "Berg Contract"). | Alex Berg Contract at Leslie Decl. II at ¶ 37 (discussing factual foundation regarding Alex Berg contract) and Exhibit R thereto (attaching copy of |

| | | | |
|---|---|---|---|
| 265. | | | Alex Berg Contract). |
| 265. | On May 9, 2014, $2,725.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 49 of Compendium of Evidence, p. 294. |

### ACE GALLERY NEW YORK INVOICE NO. 2045

| | | | |
|---|---|---|---|
| 266. | On May 27, 2014, Debtor sold one piece of artwork by De Wain Valentine – Cantilevered Projections, 1965 – as reflected on Invoice No. 2045. | | Invoice No. 2045, Exhibit 50 of Compendium of Evidence, p. 298. |
| 267. | The total amount of the sale on Invoice No. 2045 was $179,850.00. | | *Id.* |
| 268. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 269. | On May 27, 2014, $179,850.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 50 of Compendium of Evidence, pp. 299-300. |
| 270. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 2045. | | Chrismas Deposition, 419:8-421:18; and Exhibit 196 attached thereto. |

### ACE GALLERY NEW YORK INVOICE NO. 2046

| | | | |
|---|---|---|---|
| 271. | On May 27, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled, Sphere, 2013-14 – as reflected on Invoice No. 2046. | | Invoice No. 2046, Exhibit 51 of Compendium of Evidence, p. 304. |

| 272. | The total amount of the sale on Invoice No. 2046 was $36,000.00. | *Id.* |
|---|---|---|
| 273. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 274. | On January 16, 2014, $36,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 51 of Compendium of Evidence, pp. 305-306. |

### ACE GALLERY NEW YORK INVOICE NO. 2047

| 275. | On May 27, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled, White Inner Ban Beveled – as reflected on Invoice No. 2047 (Invoice No. 2044 marked out to reflect Invoice No. 2047). | Invoice No. 2047, Exhibit 52 of Compendium of Evidence, p. 309. |
|---|---|---|
| 276. | The total amount of the sale on Invoice No. 2047 was $57,000.00. | *Id.* |
| 277. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests |

| | | |
|---|---|---|
| | | in her artwork). |
| 278. | On January 16, 2014, $57,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 52 of Compendium of Evidence, pp. 310-311. |
| 279. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2047 (referred to as Invoice 2044 but sale reflecting same May 27, 2014 Mary Corse artwork as Invoice 2047). | Chrismas Deposition, 444:25-447:23; and Exhibit 206 attached thereto. |

### JUNE 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2048

| | | |
|---|---|---|
| 280. | On June 5, 2014, Debtor sold two pieces of artwork by Justin Bower – Embedded, Beveled 2010 and Feed Back loop II, 2010– as reflected on Invoice No. 2048. | Invoice No. 2048, Exhibit 53 of Compendium of Evidence, p. 315. |
| 281. | The total amount of the sale on Invoice No. 2048 was $50,000.00. | *Id.* |
| 282. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 283. | On June 5, 2014, $50,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 53 of Compendium of Evidence, pp. 316-317. |

### ACE GALLERY INVOICE NO. 4449

| | | |
|---|---|---|
| 284. | On June 13, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (White Multi Inner Band Beveled), 2013 – as reflected on Invoice No. 4449. | Invoice No. 4449, Exhibit 54 of Compendium of Evidence, p. 321. |
| 285. | The total amount of the sale on Invoice No. 4449 was $70,850.00 | *Id.* |

| 286. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). |
|---|---|---|
| | | *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 287. | On June 16, 2014, $70,850.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 54 of Compendium of Evidence, p. 322. |
| | **ACE GALLERY INVOICE NO. 2050** | |
| 288. | On June 29, 2014, Debtor sold one piece of artwork by Laurie Lipton – Hung Up and Over, 2003 – as reflected on Invoice No. 2050. | Invoice No. 2050, Exhibit 55 of Compendium of Evidence, pp. 326-327 |
| 289. | The total amount of the sale on Invoice No. 2050 was $18,530.00. | *Id.* |
| 290. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 291. | On June 26, 2014, $18,530.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 55 of Compendium of Evidence, pp. 328-329; 332. |
| | **ACE GALLERY INVOICE NO. 2051** | |

| | | |
|---|---|---|
| 292. | On June 25, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (White Light Series), 1966 – as reflected on Invoice No. 2051. | Invoice No. 2051, Exhibit 56 of Compendium of Evidence, p. 334. |
| 293. | The total amount of the sale on Invoice No. 2051 was $325,000.00. | *Id.* |
| 294. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 295. | On June 30, 2014, $325,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 56 of Compendium of Evidence, pp. 335-336. |
| | **JULY 2014 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1739** | |
| 296. | On July 14, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled (Disc), 2014 – as reflected on Invoice No. 1739. | Invoice No. 1739, Exhibit 57 of Compendium of Evidence, pp. 340-341. |
| 297. | The total amount of the sale on Invoice No. 1739 was $200,000.00. | *Id.* |
| 298. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching |

| | | copy of Helen Pashgian Contract). |
| | | *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| | On August 8, 2014, $200,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 57 of Compendium of Evidence, pp. 342-343. |

### ACE GALLERY INVOICE NO. 2052

| 299. | On July 22, 2014, Debtor sold one piece of artwork by De Wain Valentine – Smoke Grey Column, 1972 – as reflected on Invoice No. 2045. | Invoice No. 2052, Exhibit 58 of Compendium of Evidence, p. 347. |
| 300. | The total amount of the sale on Invoice No. 2052 was $115,812.50. | *Id.* |
| 301. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "Valentine Contracts"). | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). |
| | | *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 302. | On July 22, 2014, $115,812.50 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 58 of Compendium of Evidence, p. 348. |

### ACE GALLERY INVOICE NO. 2053

| 303. | On July 22, 2014, Debtor invoiced a customer for a discussion with Douglas Chrismas and Laurie Lipton as reflected on Invoice No. 2045. | Invoice No. 2053, Exhibit 59 of Compendium of Evidence, p. 352. |
|---|---|---|
| 304. | The total amount of the sale on Invoice No. 2053 was $13,090.00. | *Id.* |
| 305. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 306. | On July 23, 2014, $13,090.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 59 of Compendium of Evidence, pp. 353-354. |

### ACE GALLERY NEW YORK INVOICE NO. 2054

| 307. | On July 29, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled (Column #1), 2010 – as reflected on Invoice No. 2054. | Invoice No. 2054, Exhibit 60 of Compendium of Evidence, p. 358. |
|---|---|---|
| 308. | The total amount of the sale on Invoice No. 2054 was $174,400.00. | *Id.* |
| | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 309. | On July 30, 2014, $174,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 60 of Compendium |

|  |  |  | of Evidence, p. 359. |
|---|---|---|---|
|  | **SEPTEMBER 2014 POST-PETITION SALES AND DEPOSITS** | | |
|  | **ACE GALLERY NEW YORK INVOICE NO. 2058** | | |
| 310. | On September 11, 2014, Debtor sold one piece of artwork by Laurie Lipton – Bone China, 2009 – as reflected on Invoice No. 2058. | | Invoice No. 2058, Exhibit 61 of Compendium of Evidence, p. 363. |
| 311. | The total amount of the sale on Invoice No. 2058 was $12,885.00. | | *Id.* |
| 312. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 313. | On September 12, 2014, $12,885.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 61 of Compendium of Evidence, pp. 364-365. |
|  | **ACE GALLERY NEW YORK INVOICE NO. 2059A** | | |
| 314. | On September 17, 2014, Debtor invoiced a customer for the rental of Ace Gallery Beverly Hills, as reflected on Invoice No. 2059A. | | Invoice No. 2059A, Exhibit 62 of Compendium of Evidence, pp. 369-370. |
| 315. | The total amount of the sale on Invoice No. 2059A was $3,500.00. | | *Id.* |
| 316. | On September 18, 2014, $3,500.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 62 of Compendium of Evidence, p. 371. |
|  | **ACE GALLERY NEW YORK INVOICE NO. 2060** | | |
| 317. | On May 27, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled, 2010 and one | | Invoice No. 2060, Exhibit |

| | | piece of artwork by Gary Lang – Lluvial, 1991 – as reflected on Invoice No. 2060. | 63 of Compendium of Evidence, p. 375. |
|---|---|---|---|
| 318. | | The total amount of the sale on Invoice No. 2060 was $225,000.00. | *Id.* |
| 319. | | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "<u>Corse Contract</u>"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 320. | | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "<u>Lang Contract</u>"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 321. | | On September 22, 2014, $225,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 63 of Compendium of Evidence, pp 376-377. |
| | | **<u>ACE GALLERY NEW YORK INVOICE NO. 2061</u>** | |
| 322. | | On September 24, 2014, Debtor sold one piece of artwork by Helen Pashgian – Untitled (Blue & Green with Acrylic Rod), 2014 – as reflected on Invoice No. 2061. | Invoice No. 2061, Exhibit 64 of Compendium of Evidence, p. 381. |
| 323. | | The total amount of the sale on Invoice No. 2061 was $54,000.00. | *Id.* |
| 324. | | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 |

| | | | |
|---|---|---|---|
| | | Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 325. | | On September 24, 2014, $54,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 64 of Compendium of Evidence, pp. 382-383. |

**OCTOBER 2014 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY NEW YORK INVOICE NO. 2062**

| | | | |
|---|---|---|---|
| 326. | | On October 10, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (Black/White Bands Beveled) 2005 – as reflected on Invoice No. 2062. | Invoice No. 2062, Exhibit 65 of Compendium of Evidence, p. 387. |
| 327. | | The total amount of the sale on Invoice No. 2062 was $27,250.00. | *Id.* |
| 328. | | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests |

| | | in her artwork). |
|---|---|---|
| 329. | On October 10, 2014, $27,250.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 65 of Compendium of Evidence, pp. 388-389. |

### NOVEMBER 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 1769

| | | |
|---|---|---|
| 330. | On November 18, 2014, Debtor invoiced a customer for crating and packaging of a Judy Fox painting entitled Snow White as reflected on Invoice No. 1769. | Invoice No. 1769, Exhibit 66 of Compendium of Evidence, p. 393. |
| 331. | The total amount of the sale on Invoice No. 1769 was $650.00. | *Id.* |
| 332. | On November 20, 2014, $650.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 66 of Compendium of Evidence, p. 394. |

### DECEMBER 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2063

| | | |
|---|---|---|
| 333. | On December 3, 2014, Debtor sold one piece of artwork by Ruth Pastine – Blue Orange 5-V6032 (Orange Ocre), Interplay Series, 2005 – as reflected on Invoice No. 2063. | Invoice No. 2063, Exhibit 67 of Compendium of Evidence, p. 398. |
| 334. | The total amount of the sale on Invoice No. 2063 was $15,696.00. | *Id.* |
| 335. | Ruth Pastine and the Debtor are parties to two Consignment Agreements dated February 25, 2015, and October 1, 2015 (the "Pastine Contract"). | Ruth Pastine Contract at Leslie Decl. II at ¶ 40 (discussing factual foundation regarding Ruth Pastine contract) and Exhibit U thereto (attaching copy of Ruth Pastine Contract). |

| | | | |
|---|---|---|---|
| 336. | On December 4, 2014, $15,696.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 63 of Compendium of Evidence, pp. 399-400. |
| | **ACE GALLERY NEW YORK INVOICE NO. 2064** | | |
| 337. | On December 22, 2014, Debtor sold one piece of artwork by Mary Corse – Untitled (White Multi Inner Band Beveled), 2012; one piece of artwork by Helen Pashgian – Untitled (Red), 1991; and one piece of artwork by De Wain Valentine – Circle, Sepia to Rose, 1970 as reflected on Invoice No. 2064. | | Invoice No. 2064, Exhibit 68 of Compendium of Evidence, pp. 404-405. |
| 338. | The total amount of the sale on Invoice No. 2045 was $203,000.00. | | *Id.* |
| 339. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 340. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party |

| | | | |
|---|---|---|---|
| | | | to a contract with Debtor). |
| 341. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the "<u>Valentine Contracts</u>"). | | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 342. | On January 14, 2015, $19,980.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 68 of Compendium of Evidence, pp. 406-407. |
| 343. | On January 20, 2015, $74,261.20 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 68 of Compendium of Evidence, pp. 406-407. |
| 344. | On February 17, 2015, $108,738.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 68 of Compendium of Evidence, pp. 406, 410. |

## 2015 POST-PETITION SALES AND DEPOSITS

## JANUARY 2015 POST-PETITION SALES AND DEPOSITS

## ACE GALLERY NEW YORK INVOICE NO. 2066

| | | | |
|---|---|---|---|
| 345. | On January 11, 2015, Debtor invoiced a customer for the delivery and sale of Mary Corse artworks, as reflected on Invoice No. 2066. | | Invoice No. 2066, Exhibit 69 of Compendium of Evidence, p. 145. |
| 346. | The total amount of the sale on Invoice No. 2066 was $1,360.00. | | *Id.* |

| 347. | On February 6, 2015, $1,360.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 69 of Compendium of Evidence, p. 416. |
|---|---|---|

### ACE GALLERY NEW YORK INVOICE NO. 2067

| 348. | On January 14, 2015, Debtor sold one piece of artwork by Gary Lang – Three Planets, 2011 – as reflected on Invoice No. 2067. | Invoice No. 2067, Exhibit 70 of Compendium of Evidence, p. 421. |
|---|---|---|
| 349. | The total amount of the sale on Invoice No. 2067 was $188,500.00. | Id. |
| 350. | Gary Lang and the Debtor are parties to a contract dated December 24, 2007, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Gary Lang (the "Lang Contract"). | Gary Lang Contract at Leslie Decl. II at ¶ 29 (discussing factual foundation regarding Gary Lang contract) and Exhibit J thereto (attaching copy of Gary Lang Contract). |
| 351. | On January 15, 2015, $188,500.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 70 of Compendium of Evidence, pp. 422-423. |

### ACE GALLERY NEW YORK INVOICE NO. 2068

| 352. | On January 15, 2015, Debtor sold one piece of artwork by The Date Farmers – Varrio, 2012 – as reflected on Invoice No. 2068. | Invoice No. 2068, Exhibit 71 of Compendium of Evidence, p. 429. |
|---|---|---|
| 353. | The total amount of the sale on Invoice No. 2068 was $8,720.00. | Id. |
| 354. | Armando Lerma and Carlos Ramirez, a/k/a the Date Farmers (the "Date Farmers").and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by the Date Farmers (the "Date Farmers Contract"). | Date Farmers Contract at Leslie Decl. II at ¶ 39 (discussing factual foundation regarding Date Farmers contract) and Exhibit T thereto (attaching copy of Date Farmers Contract). |
| 355. | On January 20, 2015, $8,720.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 71 of Compendium |

| | | | of Evidence, pp. 430-431. |
|---|---|---|---|

### ACE GALLERY NEW YORK INVOICE NO. 2069

| | | | |
|---|---|---|---|
| 356. | On January 15, 2015, Debtor sold one piece of artwork by Justin Bower – Vivisection (1), 2012 – as reflected on Invoice No. 2069. | Invoice No. 2069, Exhibit 72 of Compendium of Evidence, p. 437. |
| 357. | The total amount of the sale on Invoice No. 2069 was $43,600.00. | *Id.* |
| 358. | Justin Bower and the Debtor are parties to a contract dated March 31, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Justin Bower (the "Bower Contract"). | Justin Bower Contract at Leslie Decl. II at ¶ 32 (discussing factual foundation regarding Justin Bower contract) and Exhibit M thereto (attaching copy of Justin Bower Contract). |
| 359. | On January 16, 2015, 43,600.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 72 of Compendium of Evidence, pp. 438-439. |

### FEBRUARY 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY LOS ANGELES INVOICE NO. 1790

| | | | |
|---|---|---|---|
| 360. | On February 2, 2015, Debtor sold one piece of artwork by Peter Alexander – Flow Lime Exile Wedge, 2014 – as reflected on Invoice No. 1790. | Invoice No. 1790, Exhibit 73 of Compendium of Evidence, pp. 445-446. |
| 361. | The total amount of the sale on Invoice No. 1790 was $21,800.00. | *Id.* |
| 362. | Peter Alexander and the Debtor are parties to a Consignment Agreement dated August 24, 2015, by which the Debtor had the exclusive right thereafter to sell certain consigned artworks by Peter Alexander (the "Alexander Contract"). | Peter Alexander Contract at Leslie Decl. II at ¶ 36 (discussing factual foundation regarding Peter Alexander contract) and Exhibit Q thereto (attaching copy of Peter Alexander Contract). |

| 363. | On January 27, 2015, $21,800.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 73 of Compendium of Evidence, p. 447. |
|------|------|------|

### ACE GALLERY LOS ANGELES INVOICE NO. 1792

| 364. | On February 13, 2015, Debtor sold one piece of artwork by Laurie Lipton – Round and Round, 2012 – as reflected on Invoice No. 1792. | Invoice No. 1792, Ex. 74 of Compendium of Evidence, p. 453. |
|------|------|------|
| 365. | The total amount of the sale on Invoice No. 1792 was $35,970.00. | *Id.* |
| 366. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 367. | On February 17, 2015, $35,970.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 74 of Compendium of Evidence, pp. 454, 458. |

### ACE GALLERY LOS ANGELES INVOICE NO. 1797

| 368. | On February 15, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled, 2010 White Flat w 3 Inner Bands; one piece of artwork by Gisela Colon – Ultra Spheroid Glo-Pod (Iridescent Lilac), 2014; and one piece of artwork by Helen Pashgian – Untitled (Column #8), 2011 -- as reflected on Invoice No. 1797. | Invoice No. 1797, Exhibit 75 of Compendium of Evidence, pp. 460-463. |
|------|------|------|
| 369. | The total amount of the sale on Invoice No. 1979 was $258,000.00. | *Id.* |
| 370. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas |

| | | | |
|---|---|---|---|
| | | | Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 371. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | | Gisela Colon documents at Leslie Decl. at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 372. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 373. | On March 19, 2015, $258,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | | Ace NY Bank Records, Exhibit 75 of Compendium of Evidence, pp. 464-465. |
| 374. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice No. 1797. | | Chrismas Deposition, 574:7-577:10; 577:11-579:15; and Exhibits 253-254 attached thereto. |
| | **[NO LETTERHEAD] INVOICE NO. 2074A** | | |
| 375. | On February 17, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Red Eye, 2014 – as reflected on Invoice No. 2074A. | | Invoice No. 2074A, Exhibit 76 of Compendium of Evidence, p. 470. |

| 376. | The total amount of the sale on Invoice No. 2074A was $12,000.00. | *Id.* |
| 377. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 378. | On February 24, 2015, $12,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 76 of Compendium of Evidence, pp. 471-472. |

### MARCH 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY LOS ANGELES INVOICE NO. 1801

| 379. | On March 13, 2015, Debtor sold one piece of artwork by Gisela Colon – Ovoid Glo-Pod (Iridescent Orange), 2013 – as reflected on Invoice No. 1801. | Invoice No. 1801, Exhibit 77 of Compendium of Evidence, pp. 477-478. |
| 380. | The total amount of the sale on Invoice No. 1801 was $13,080.00. | *Id.* |
| 381. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 382. | On March 20, 2015, $13,080.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 77 of Compendium of Evidence, p. 479. |

### APRIL 2015 POST-PETITION SALES AND DEPOSITS

| **ACE GALLERY NEW YORK INVOICE NO. 2075** | | |
|---|---|---|
| 383. | On April 10, 2015, Debtor sold two pieces of artwork by Mary Corse – Untitled (Gold), 1975 and Untitled (White Inner Band Beveled), 2010; and one piece of art by Helen Pashgian (Untitled Sphere, (Bright Green With Crossed Rods), 2014 – as reflected on Invoice No. 2075. | Invoice No. 2075, Exhibit 78 of Compendium of Evidence, p. 484. |
| 384. | The total amount of the sale on Invoice No. 2075 was $85,000.00. | *Id.* |
| 385. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 386. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 387. | On April 13, 2015, $85,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 78 of Compendium of Evidence, p. 485. |

| ACE GALLERY LOS ANGELES INVOICE NO. 1828 | | |
|---|---|---|
| 388. | On April 11, 2015, Debtor sold one piece of artwork by Alexander Yulish – Sitting with Dolores, 2015 – as reflected on Invoice No. 1828. | Invoice No. 1828, Exhibit 79 of Compendium of Evidence, p. 489. |
| 389. | The total amount of the sale on Invoice No. 1828 was $50,000.00. | *Id.* |
| 390. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 391. | On February 11, 2016, $25,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 79 of Compendium of Evidence, pp. 490-491. |
| 392. | On March 16, 2016, $25,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 79 of Compendium of Evidence, pp. 490, 494. |
| ACE GALLERY NEW YORK INVOICE NO. 2076 | | |
| 393. | On April 23, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Quarter Past, 2014 and one piece of artwork from Mary Corse – White Multiple Inner Band Beveled, 2012 as reflected on Invoice No. 2076. | Invoice No. 2076, Exhibit 80 of Compendium of Evidence, p. 497. |
| 394. | The total amount of the sale on Invoice No. 2076 was $399,200.00 and $35,928.00 for sales tax. | *Id.* |
| 395. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, |

| | | 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
|---|---|---|
| 396. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 397. | On April 24, 2015, $399,200.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 80 of Compendium of Evidence, pp. 498-499. |
| 398. | On November 18, 2015, $35,928.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 80 of Compendium of Evidence, pp. 502-502. |
| 399. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2076. | Chrismas Deposition, 579:16-582:12; 591:14-592:9; and Exhibits 255, 259 attached thereto. |

### ACE GALLERY NEW YORK INVOICE NO. 2079

| 400. | On April 25, 2015, Debtor sold two pieces of artwork by Mary Corse – Untitled, (White, Black & Red) 2014 and Untitled (Black, White), 2014 – as reflected on Invoice No. 2079. | Invoice No. 2079, Exhibit 81 of Compendium of Evidence, p. 506. |
|---|---|---|
| 401. | The total amount of the sale on Invoice No. 2079 was $252,000.00. | Id. |
| 402. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). See also Answer of Douglas Chrismas at ¶¶ 45, 46, 47, |

| | | 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
|---|---|---|
| 403. | On May 15, 2015, $252,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 81 of Compendium of Evidence, pp. 507-508. |

### ACE GALLERY NEW YORK INVOICE NO. 2077

| | | |
|---|---|---|
| 404. | On April 27, 2015, Debtor sold one piece of artwork by Gisela Colon – Ultra Spheroid Glo-Pod (Iridescent Orange), 2014 – as reflected on Invoice No. 2077. | Invoice No. 2077, Exhibit 82 of Compendium of Evidence, p. 512. |
| 405. | The total amount of the sale on Invoice No. 2077 was $52,320.00. | *Id.* |
| 406. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 407. | On April 28, 2015, $52,320.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 82 of Compendium of Evidence, pp. 513-514. |

### MAY 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2078

| | | |
|---|---|---|
| 408. | On May 4, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Socket, 2001 – as reflected on Invoice No. 2078. | Invoice No. 2078, Exhibit 83 of Compendium of Evidence, p. 518. |
| 409. | The total amount of the sale on Invoice No. 2078 was $7,000.00. | *Id.* |

| 410. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 411. | On May 4, 2015, $7,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 83 of Compendium of Evidence, pp. 519-520. |

### ACE GALLERY NEW YORK INVOICE NO. 2080

| 412. | On May 19, 2015, Debtor sold one piece of artwork by Alexander Yulish – Indrani (White, Black & Red), 2015 – as reflected on Invoice No. 2080. | Invoice No. 2080, Exhibit 84 of Compendium of Evidence, p. 524. |
| 413. | The total amount of the sale on Invoice No. 2080 was $28,000.00. | *Id.* |
| 414. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 415. | On May 29, 2015, $28,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 84 of Compendium of Evidence, pp. 525-526. |

### JUNE 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2081

| 416. | On June 9, 2015, Debtor sold two pieces of artwork by Mary Corse – Untitled (White, Black & Red), 2015 and Untitled (White Inner Band | Invoice No. 2081, Exhibit 85 of Compendium of |

| | | | |
|---|---|---|---|
| 1 | | With Flat White Outer Band), 2012 – as reflected on Invoice No. 2081. | Evidence, p. 530. |
| 2, 3 | 417. | The total amount of the sale on Invoice No. 2081 was $211,200.00. | *Id.* |
| 4, 5, 6, 7 | 418. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). |
| 8, 9, 10, 11, 12, 13 | | | *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint ECF 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 14, 15 | 419. | On June 9, 2015, $211,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 85 of Compendium of Evidence, pp. 531-532. |
| 16, 17 | | **ACE GALLERY NEW YORK INVOICE NO. 2082** | |
| 18, 19 | 420. | On June 12, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Untitled, 2015 – as reflected on Invoice No. 2082. | Invoice No. 2082, Exhibit 86 of Compendium of Evidence, p. 536. |
| 20, 21 | 421. | The total amount of the sale on No. 2082 was $24,080.00. | *Id.* |
| 22, 23, 24, 25, 26 | 422. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 27, 28 | 423. | On June 15, 2015, $24,080.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 86 of Compendium of Evidence, p. 538. |

| | | |
|---|---|---|
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1827** | |
| 424. | On June 24, 2015, Debtor sold one piece of artwork by Gisela Colon – Hyper Ellipsoid Glo-Pod (Iridescent Blue), 2014 – as reflected on Invoice No. 1827. | Invoice No. 1827, Exhibit 87 of Compendium of Evidence, pp. 542-543. |
| 425. | The total amount of the sale on Invoice No. 1827 was $96,000.00. | *Id.* |
| 426. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013.  In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon documents). |
| 427. | On January 15, 2015, $48,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 87 of Compendium of Evidence, pp. 544-545. |
| | **JULY 2015 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY NEW YORK INVOICE NO. 2082A** | |
| 428. | On January 14, 2015, Debtor by Jennifer Kellen, Director, "Ace Gallery Beverly Hills," invoiced a customer for the installation of photos by Martin Schoeller at a restaurant in Beverly Hills. California as reflected on Invoice No. 2082A. | Invoice No. 2082A, Exhibit 88 of Compendium of Evidence, p. 549. |
| 429. | The total amount of the sale on Invoice No. 2082A was $4,800.00. | *Id.* |
| 430. | On July 6, 2015, $4,800.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 88 of Compendium of Evidence, pp. 550-551. |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1826** | |

| 431. | On July 4, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled (White, Black and Beveled), 2006 – as reflected on Invoice No. 1826. | Invoice No. 1826, Exhibit 89 of Compendium of Evidence, pp. 555-556. |
|---|---|---|
| 432. | The total amount of the sale on Invoice No. 1826 was $175,000.00. | *Id.* |
| 433. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint ECF 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 434. | On July 7, 2015, $165,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 89 of Compendium of Evidence, pp. 557-558. |

### ACE GALLERY NEW YORK INVOICE NO. 2084

| 435. | On July 15, 2015, Debtor sold three pieces of artwork by Mary Corse – Untitled (Blue, Black and White), 2015; Untitled (Yellow, Black, White), 2015; and Untitled (Black, White) 2014 – as reflected on Invoice No. 2084. | Invoice No. 2084, Exhibit 90 of Compendium of Evidence, p. 562. |
|---|---|---|
| 436. | The total amount of the sale on Invoice No. 2084 was $216,000.00. | *Id.* |
| 437. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas |

| | | Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint ECF 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
|---|---|---|
| 438. | On July 15, 2015, $108,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 90 of Compendium of Evidence, pp. 563-564. |
| 439. | On July 16, 2015, $108,000.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 90 of Compendium of Evidence, pp. 563-564. |

### ACE GALLERY LOS ANGELES INVOICE NO. 1837

| | | |
|---|---|---|
| 440. | On July 25, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled, (Black Light), 1989 – as reflected on Invoice No. 1837. | Invoice No. 1837, Exhibit 91 of Compendium of Evidence, pp. 568-569. |
| 441. | The total amount of the sale on Invoice No. 1837 was $160,000.00. | *Id.* |
| 442. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 443. | On August 4, 2015, $159,972.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 91 of Compendium of Evidence, pp. 570-571. |

| | | |
|---|---|---|
| **ACE GALLERY LOS ANGELES INVOICE NO. 1838** | | |
| 444. | On July 25, 2015, Debtor sold one piece of artwork by Alexander Yulish – The Two of Them, 2014 – as reflected on Invoice No. 1838. | Invoice No. 1838, Exhibit 92 of Compendium of Evidence, pp. 575-577; 584. |
| 445. | The total amount of the sale on Invoice No. 1838 was $28,000.00. | *Id.* |
| 446. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 447. | On August 6, 2015, $29,500.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 92 of Compendium of Evidence, pp. 578-579. |
| 448. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 1838. | Chrismas Deposition, 588:2-591:13; and Exhibit 258 attached thereto. |
| **ACE GALLERY LOS ANGELES INVOICE NO. 1836** | | |
| 449. | On July 30, 2015, Debtor sold one piece of artwork by Natalie Arnoldi – Dume, 2012 – as reflected on Invoice No. 1836. | Invoice No. 1836, Exhibit 93 of Compendium of Evidence, p. 592. |
| 450. | The total amount of the sale on Invoice No. 1836 was $20,165.00. | *Id.* |
| 451. | Natalie Arnoldi and the Debtor are parties to a contract dated December 29, 2014, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Natalie Arnoldi (the "Arnoldi Contract"). | Natalie Arnoldi Contract at Leslie Decl. II at ¶ 31 (discussing factual foundation regarding Natalie Arnoldi contract) and Exhibit L thereto (attaching copy of Natalie Arnoldi Contract). |
| 452. | On August 11, 2015, $20,165.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 93 of Compendium of Evidence, pp. 593-594. |

**AUGUST 2015 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY LOS ANGELES INVOICE NO. 1846**

| | | |
|---|---|---|
| 453. | On August 17, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled (Red Double Arch), 1999 – as reflected on Invoice No. 1846. | Invoice No. 1846, Exhibit 94 of Compendium of Evidence, pp. 598-599. |
| 454. | The total amount of the sale on Invoice No. 1846 was $100,000.00. | *Id.* |
| 455. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 456. | On September 17, 2015, $100,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 94 of Compendium of Evidence, pp. 599-560. |

**ACE GALLERY LOS ANGELES INVOICE NO. 1848**

| | | |
|---|---|---|
| 457. | On August 25, 2015, Debtor sold one piece of artwork by Alexander Yulish – The Two of Us, 2003 and With Dog, 2015 – as reflected on Invoice No. 1848. | Invoice No. 1848, Exhibit 95 of Compendium of Evidence, pp. 604-605. |
| 458. | The total amount of the sale on Invoice No. 1848 was $49,000.00. | *Id.* |
| 459. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 |

|  |  | Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
|---|---|---|---|
| 460. | | On October 19, 2015, $48,965.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 95 of Compendium of Evidence, pp. 606-607. |

### SEPTEMBER 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2089

| 461. | | On September 3, 2015, Debtor sold two pieces of artwork by Matt Hope – Meltdown, 2008 and Meltdown, 2009 – as reflected on Invoice No. 2089. | Invoice No. 2089, Exhibit 96 of Compendium of Evidence, p. 611. |
|---|---|---|---|
| 462. | | The total amount of the sale on Invoice No. 2089 was $33,572.00. | *Id.* |
| 463. | | Matt Hope and the Debtor are parties to a contract dated September 22, 2006, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Matt Hope (the "Hope Contract"). | Matt Hope Contract at Leslie Decl. II at ¶ 38 (discussing factual foundation regarding Matt Hope contract) and Exhibit S thereto (attaching copy of Matt Hope Contract). |
| 464. | | On September 3, 2015, $33,572.00 was deposited into Ace New York checking account ending in #0229 at City National Bank. | Ace NY Bank Records, Exhibit 96 of Compendium of Evidence, p. 512. |

### OCTOBER 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2092

| 465. | On October 10, 2015, Debtor sold two pieces of artwork by Mary Corse – Untitled (White Multiple Inner Band, Beveled) 2012 and Untitled, (White Inner Band), 2003– as reflected on Invoice No. 2092. | Invoice No. 2092, Exhibit 97 of Compendium of Evidence, pp. 615-616. |
|---|---|---|
| 466. | The total amount of the sale on Invoice No. 2092 was $240,000.00 and $21,600.00 for sales tax. | *Id.* |
| 467. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint ECF 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 468. | On September 30, 2015, $240,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 97 of Compendium of Evidence, pp. 617-618. |
| 469. | On November 2, 2015, $7,200.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 97 of Compendium of Evidence, p. 621. |
| 470. | On November 4, 2015, $14,400.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 97 of Compendium of Evidence, pp. 617, 621. |

### ACE GALLERY NEW YORK INVOICE NO. 2093

| 471. | On October 2, 2015, Debtor sold one piece of artwork by Ellsworth Kelly – Block Island II, 1960 – as reflected on Invoice No. 2093. | Invoice No. 2093, Exhibit 98 of Compendium of Evidence, pp. 624, 629. |
|---|---|---|
| 472. | The total amount of the sale on Invoice No. 2093 was $4,800,000.00. | *Id.* |
| 473. | The Ellsworth Kelly artwork was owned by a private collector, and was sold as a secondary art sale using the Debtor's facilities for displaying | Ellsworth Kelly sales documents at Leslie Decl. II at ¶ 45 (discussing factual |

| | | | |
|---|---|---|---|
| | | the artwork and the Debtor's staff and costs for shipping the piece.  In addition, internal emails from Debtor discussing the provenance and describing the artwork on Ace Gallery Los Angeles Letterhead were found in Debtors' records | foundation Ellsworth Kelly sale) and Exhibit Z thereto (attaching copy of sales documents). |
| | 474. | On October 5, 2015, $4,800,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 98 of Compendium of Evidence, pp. 625-626. |
| | 475. | On October 5, 2015, $432,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 98 of Compendium of Evidence, pp. 625-626. |
| | 476. | Mr. Chrismas asserted the Fifth Amendment in response to specific questions regarding Invoice 2093. | Chrismas Deposition, 619:5-623:18; and Exhibits 274-275 attached thereto. |
| | | **EMAIL INVOICE** | |
| | 477. | On October 2, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled (White Multiple Inner Band, Beveled) 2012 – as reflected on the Email Invoice. | Email Invoice, Exhibit 99 of Compendium of Evidence, pp. 631-645. |
| | 478. | The total amount of the sale on the Email Invoice was $95,000.00. | *Id.* |
| | 479. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| | 480. | On October 2, 2015, $95,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Email Invoice, Exhibit 99 of Compendium of Evidence, pp. 631-645; *see* |

| | | *also* Ace NY Bank Records, Exhibit 101 of Compendium of Evidence, p. 652 (Lehmann-Maupin LLC Originator, Transaction No. 8167) (transaction not highlighted). |
|---|---|---|

### NOVEMBER 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2094

| 481. | On November 3, 2015, Debtor sold one piece of artwork by Sam Francis – Untitled, 1964 – as reflected on Invoice No. 2094. | Invoice No. 2094, Exhibit 100 of Compendium of Evidence, p. 647. |
|---|---|---|
| 482. | The total amount of the sale on Invoice No. 2094 was $15,000.00. | *Id.* |
| 483. | On January 15, 2015, $15,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 100 of Compendium of Evidence, p. 648. |

### DECEMBER 2015 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY NEW YORK INVOICE NO. 2095

| 484. | On December 10, 2015, Debtor sold one piece of artwork by Mary Corse – Untitled (White/Yellow Innerband, Beveled) 2015 – as reflected on Invoice No. 2095. | Invoice No. 2095, Exhibit 101 of Compendium of Evidence, p. 651. |
|---|---|---|
| 485. | The total amount of the sale on Invoice No. 2095 was $125,000.00. | *Id.* |
| 486. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary |

| | | | |
|---|---|---|---|
| | | by Mary Corse (the "<u>Corse Contract</u>"). | Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract).<br><br>*See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 487. | | On December 11, 2015, $125,000.00 was deposited into Ace New York checking account ending in #4733 at City National Bank. | Ace NY Bank Records, Exhibit 101 of Compendium of Evidence, pp. 652-653. |

<b><u>2016 POST-PETITION SALES AND DEPOSITS</u></b>

<b><u>JANUARY 2016 POST-PETITION SALES AND DEPOSITS</u></b>

<b><u>ACE GALLERY NEW YORK INVOICE NO. 2096</u></b>

| | | | |
|---|---|---|---|
| 488. | | On January 4, 2016, Debtor sold one piece of artwork by David Amico –Silver, 2014 – as reflected on Invoice No. 2096. | Invoice No. 2096, Exhibit 102 of Compendium of Evidence, p. 656. |
| 489. | | The total amount of the sale on Invoice No. 2096 was $36,000.00. | *Id.* |
| 490. | | On January 5, 2016, $36,000.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 102 of Compendium of Evidence, pp. 657-658. |

<b><u>ACE GALLERY NEW YORK INVOICE NO. 2097</u></b>

| | | | |
|---|---|---|---|
| 491. | | On January 25, 2016, Debtor sold one piece of artwork by Alexander Yulish – Movement in | Invoice No. 2097, Exhibit 103 of Compendium of |

| | | |
|---|---|---|
| | Time, 2015 – as reflected on Invoice No. 2097. | Evidence, p. 661. |
| 492. | The total amount of the sale on Invoice No. 2097 was $32,427.50. | *Id.* |
| 493. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 494. | On January 25, 2016, $32,427.50 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 103 of Compendium of Evidence, pp. 662-663. |

### ACE GALLERY NEW YORK INVOICE NO. 2098

| | | |
|---|---|---|
| 495. | On January 25, 2016, Debtor sold one piece of artwork by Alexander Yulish – In Limbo, 2015 – as reflected on Invoice No. 2098. | Invoice No. 2098, Exhibit 104 of Compendium of Evidence, p. 666. |
| 496. | The total amount of the sale on Invoice No. 2098 was $32,427.50. | *Id.* |
| 497. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract). |
| 498. | On January 25, 2016, $32,427.50 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 104 of Compendium of Evidence, pp. 667-668. |

### ACE GALLERY NEW YORK INVOICE NO. 2099

| 499. | On January 25, 2016, Debtor sold one piece of artwork by Alexander Yulish – The Orange Shirt, 2015 – as reflected on Invoice No. 2099. | Invoice No. 2099, Exhibit 105 of Compendium of Evidence, p. 671. |
|------|------|------|
| 500. | The total amount of the sale on Invoice No. 2099 was $32,427.50. | *Id.* |
| 501. | Alexander Yulish and the Debtor are parties to a contract dated August 26, 2014, by which the Debtor had the exclusive right thereafter to represent and sell artworks by Alexander Yulish (the "Yulish Contract"). | Alexander Yulish Contract at Leslie Decl. II at ¶ 35 (discussing factual foundation regarding Alexander Yulish contract) and Exhibit P thereto (attaching copy of Alexander Yulish Contract) |
| 502. | On January 25, 2016, $32,427.50 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 105 of Compendium of Evidence, p. 672. |

### ACE GALLERY NEW YORK INVOICE NO. 2100

| 503. | On January 26, 2016, Debtor sold one piece of artwork by Mary Corse – Untitled (White Diamond, Positive Strip), 1965– as reflected on Invoice No. 2100. | Invoice No. 2100, Exhibit 106 of Compendium of Evidence, p. 675. |
|------|------|------|
| 504. | The total amount of the sale on Invoice No. 2100 was $150,000.00. | *Id.* |
| 505. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 506. | On January 26, 2016, $150,000.00 was deposited | Ace NY Bank Records, |

| | into Ace New York checking account ending in #4773 at City National Bank. | Exhibit 106 of Compendium of Evidence, pp. 676-677. |
|---|---|---|

### FEBRUARY 2016 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY LOS ANGELES INVOICE NO. 1881

| 507. | On February 2, 2016, Debtor sold one piece of artwork by Ben Jones – Ladder Series, 2015 – as reflected on Invoice No. 1881. | Invoice No. 1881, Exhibit 107 of Compendium of Evidence, p. 680. |
|---|---|---|
| 508. | The total amount of the sale on Invoice No. 1881 was $12,000.00. | *Id.* |
| 509. | On March 10, 2016, $12,000.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 107 of Compendium of Evidence, pp. 681-682. |

### ACE GALLERY NEW YORK INVOICE NO. 2101

| 510. | On February 23, 2016, Debtor sold one piece of artwork by Peter Alexander – 5/24/15 (Pink Puff), 2015 – as reflected on Invoice No. 2101. | Invoice No. 2101, Exhibit 108 of Compendium of Evidence, p. 685. |
|---|---|---|
| 511. | The total amount of the sale on Invoice No. 2101 was $73,575.00. | *Id.* |
| 512. | Peter Alexander and the Debtor are parties to a Consignment Agreement dated August 24, 2015, by which the Debtor had the exclusive right thereafter to sell certain consigned artworks by Peter Alexander (the "Alexander Contract"). | Peter Alexander Contract at Leslie Decl. II at ¶ 36 (discussing factual foundation regarding Peter Alexander contract) and Exhibit Q thereto (attaching copy of Peter Alexander Contract). |
| 513. | On February 25, 2012, $73,575.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Ex. 108 of Compendium of Evidence, p. 686-687. |

| ACE GALLERY NEW YORK INVOICE NO. 2102 | | |
|---|---|---|
| 514. | On February 26, 2016, Debtor sold one piece of artwork by Laurie Lipton – Illusion of Control Tower, 2012 – as reflected on Invoice No. 2102. | Invoice No. 2102, Exhibit 109 of Compendium of Evidence, p. 691. |
| 515. | The total amount of the sale on Invoice No. 2101 was $78,480.00. | *Id.* |
| 516. | Laurie Lipton and the Debtor are parties to a contract dated February 27, 2012, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Laurie Lipton (the "Lipton Contract"). | Laurie Lipton Contract at Leslie Decl. II at ¶ 33 (discussing factual foundation regarding Laurie Lipton contract) and Exhibit N thereto (attaching copy of Laurie Lipton Contract). |
| 517. | On February 29, 2016, $78,480.00 was deposited into Ace New York checking account ending in #4773 at City National Bank. | Ace NY Bank Records, Exhibit 109 of Compendium of Evidence, pp. 692-693. |
| **FACTS RELATED TO DOUGLAS CHRISMAS'S POST-PETITION CONVERSION OF DEBTOR'S PROPERTY THROUGH ACE MUSEUM** | | |
| **MR. CHRISMAS ASSERTED THE FIFTH AMENDMENT REGARDING QUESTIONS POSED ABOUT HIS CONVERSION OF FUNDS THROUGH ACE MUSEUM[5]** | | |
| 518. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that between February 19, 2013 and April 16, 2016 you diverted Debtor Funds to ACE MUSEUM." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 55 and Douglas Chrismas Response to the same). |
| **FEBRUARY 2013 POST-PETITION SALES AND DEPOSITS** | | |
| | | |

---

[5] This fact should be incorporated into each of the following transfers related to Ace Museum.

| ACE GALLERY INVOICE NO. 1554 | | |
|---|---|---|
| 519. | On February 18, 2013, Debtor sold one piece of artwork by Mary Corse – Untitled (Shadow Painting, Black Beveled Series) 1983 – as reflected on Invoice No. 1554. | Invoice No. 1554, Exhibit 110 of Compendium of Evidence, p. 697. |
| 520. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |
| 521. | On February 20, 2013, $150,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 110 of Compendium of Evidence, pp. 698-699. |
| **SEPTEMBER 2013 POST-PETITION SALES AND DEPOSITS** | | |
| **ACE GALLERY NEW YORK INVOICE NO. 2025** | | |
| 522. | On September 21, 2013, Debtor sold one piece of artwork by De Wain Valentine – Smoke Grey Column, 1972-75– as reflected on Invoice No. 2025. | Invoice No. 2025, Exhibit 111 of Compendium of Evidence, p. 702. |
| 523. | The total amount of the sale on Invoice No. 2025 was $68,000.00. | *Id.* |
| 524. | De Wain Valentine and the Debtor were parties to a series of pre-petition consignment contracts by which the Debtor had the exclusive right to sell certain sculptures by De Wain Valentine (the | De Wain Valentine Contract at Leslie Decl. II at ¶ 34 (discussing factual foundation regarding De |

| | | |
|---|---|---|
| | "Valentine Contracts"). | Wain Valentine contract) and Exhibit O thereto (attaching copy of De Wain Valentine Contract). *See also* Answer of Douglas Chrismas at ¶ 51 (6th Amended Complaint Docket No. 703) (admitting De Wain Valentine was a party to a contract with Debtor). |
| 525. | On September 9, 2013, $68,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 111 of Compendium of Evidence, pp. 703-704. |

### JULY 2014 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY LOS ANGELES INVOICE NO. 1726

| | | |
|---|---|---|
| 526. | On June 26, 2014, Debtor sold one piece of artwork by Mary Corse – Black Glitter, White Beads, 1975 – as reflected on Invoice No. 1726. | Invoice No. 1726, Exhibit 112 of Compendium of Evidence, p. 708. |
| 527. | The total amount of the sale on Invoice No. 1726 was $175,000.00. | *Id.* |
| 528. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts related to Debtor's interests in her artwork). |

-82-

| 529. | On July 18, 2014, $175,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 112 of Compendium of Evidence, pp. 709-710. |
|---|---|---|
| | **JUNE 2015 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY LOS ANGELES INVOICE NO. 1819** | |
| 530. | On June 22, 2015, Debtor sold one piece of artwork by Robert Rauschenberg – Joust (Jammer), 1976 – as reflected on Invoice No. 1819. | Invoice No. 1819, Exhibit 113 of Compendium of Evidence, p. 714. |
| 531. | The total amount of the sale on Invoice No. 1819 was $225,000.00. | *Id.* |
| 532. | On June 22, 2015, $200,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 113 of Compendium of Evidence, pp. 715-716. |
| | **AUGUST 2015 POST-PETITION SALES AND DEPOSITS** | |
| | **ACE GALLERY NEW YORK INVOICE NO. 2088** | |
| 533. | On August 31, 2015, Debtor sold one piece of artwork by Gisela Colon – Slab Ovopoid Glo-Pod (iridescent Orange Pink), 2014; one piece of artwork by Helen Pashgian – Standing Disk, Yellow in Tine; and one piece of artwork by Robert Rauschenberg – Stallion Jammer, 1976 – as reflected on Invoice No. 2088. | Invoice No. 2088, Exhibit 114 of Compendium of Evidence, p. 719. |
| 534. | The total amount of the sale on Invoice No. 2088 was $225,000.00. | *Id.* |
| 535. | The Debtor sold artworks by Gisela Colon in sales dating from November 13, 2013. In addition, internal emails at Debtor show an exchange of a 2014 artist agreement between Ms. Colon and Debtor. | Gisela Colon documents at Leslie Decl. II at ¶ 44 (discussing factual foundation Gisela Colon sale) and Exhibit Y thereto (attaching Gisela Colon |

| | | documents). |
|---|---|---|
| 536. | Helen Pashgian and the Debtor are parties to a contract dated August 9, 2010, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Helen Pashgian (the "Pashgian Contract"). | Helen Pashgian Contract at Leslie Decl. II at ¶ 30 (discussing factual foundation regarding Helen Pashgian contract) and Exhibit K thereto (attaching copy of Helen Pashgian Contract). *See also* Answer of Douglas Chrismas at ¶ 50 (6th Amended Complaint Docket No. 703) (admitting Helen Pashgian was a party to a contract with Debtor). |
| 537. | On August 31, 2015, $225,000 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 114 of Compendium of Evidence, p. 720-721. |

### MARCH 2016 POST-PETITION SALES AND DEPOSITS

### ACE GALLERY LOS ANGELES INVOICE NO. K-1012

| 538. | On March 30, 2016, Debtor sold one piece of artwork by Tara Donovan – Colony, 2002; and one piece of artwork by Jonathan Monk – The Moment Before You Realize You Are Not Lost, 2005 – as reflected on Invoice No. K-1012. | Invoice No. K-1012, Exhibit 115 of Compendium of Evidence, p. 725. |
|---|---|---|
| 539. | The total amount of the sale on Invoice No. K-1013 was $100,000.00. | *Id.* |
| 540. | On March 30, 2016, $100,000.00 was deposited into Ace Museum account ending in #6347 at City National Bank. | Ace Museum Bank Records, Exhibit 115 of Compendium of Evidence, pp. 726-727. |

### FACTS RELATED TO DOUGLAS CHRISMAS'S POST-PETITION CONVERSION OF DEBTOR'S PROPERTY THROUGH 400 S. LA BREA

**MR. CHRISMAS ASSERTED THE FIFTH AMENDMENT REGARDING QUESTIONS POSED ABOUT HIS CONVERSION OF FUNDS THROUGH 400 S. LA BREA[6]**

| | | |
|---|---|---|
| 541. | Mr. Chrismas asserted the Fifth Amendment in response to Request for Admission "Admit that between February 19, 2013 and April 16, 2016 you diverted Debtor Funds to 400 S. LA BREA." | Sahn Decl., Exhibits 3 and 4 (Request for Admissions to Douglas Chrismas, Set 2, No. 56 and Douglas Chrismas Response to the same). |

**MARCH 2016 POST-PETITION SALES AND DEPOSITS**

**ACE GALLERY LOS ANGELES INVOICE NO. K-1013**

| | | |
|---|---|---|
| 542. | On March 30, 2016, Debtor sold one piece of artwork by Mary Corse – Untitled (Black Light Grid Series), 1987 and one piece of artwork by Sylvie Fleury – Life Can Get Heavy Mascara Shouldn't, 1999 -- as reflected on Invoice No. K-1013. | Invoice No. K1013, Exhibit 116 of Compendium of Evidence, pp. 731-734. |
| 543. | The total amount of the sale on Invoice No. K-1013 was $200,000.00. | *Id.* |
| 544. | Mary Corse and the Debtor are parties to a contract dated July 25, 2011, by which the Debtor had the exclusive right during the Bankruptcy Period to represent and sell artworks by Mary Corse (the "Corse Contract"). | Mary Corse Contract at Leslie Decl. II at ¶ 28 (discussing factual foundation regarding Mary Corse contract) and Exhibit I thereto (attaching copy of Mary Corse Contract). *See also* Answer of Douglas Chrismas at ¶¶ 45, 46, 47, 49 and 67 (6th Amended Complaint Docket No. 703) (admitting Mary Corse was subject to contract with Debtor and other facts |

[6] This fact should be incorporated into each of the following transfers to 400 S. La Brea.

| 545. | On April 1, 2016, $114,595.32 was deposited into 400 S. La Brea's account ending in #1679 at Cathay Bank. | 400 S. La Brea Bank Records, Exhibit 116 of Compendium of Evidence, pp. 735-736. |
|---|---|---|

(continued from previous: related to Debtor's interests in her artwork).

### FACTS RELATED TO AMOUNTS CONVERTED BY MR. CHRISMAS

| 546. | Between the Petition Date and the Effective Date, Defendant Chrismas sold $15,392,536 of Debtor's Art Property, from which proceeds were diverted to non-Debtor entity accounts controlled by Chrismas.  The court infers that Chrismas sold Debtor's property and diverted the sales proceeds based on the uncontroverted facts that he was the principal of the Debtor, having management and supervisory control over the Debtor, that he set up a new entity controlled by him, Ace Gallery New York Corporation, right before Debtor filed for bankruptcy, Debtor's property was sold, the sales proceeds from the sales of Debtor's property were diverted to this new entity or to, or on behalf of, another entity controlled by him, Ace Museum, and he has refused to answer questions about these transactions involving the sales of Debtor's property and diversion of the sales proceeds to non-Debtor entities, invoking his Fifth Amendment testimonial privilege against self-incrimination. | Uncontroverted Facts, Nos. 1-545. [7] <br><br> Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction, ECF 216 ("Kincaid Decl.") at 1-15 and exhibits attached thereto. <br><br> Declaration of Jennifer E. Ziegler in Support of Plaintiff's Motion for Summary Judgment ("Ziegler Decl. II"), ECF 873, filed on February 12, 2021, at 3-4 and Ziegler Report, Exhibit 1 attached thereto. <br><br> Ziegler Referenced Exhibit C (Diverted Art Sales Chart). <br><br> [Corrected] Supplemental Declaration of Jennifer E. Ziegler, CPA, in Support of Motion for Summary |

---

[7] In support of this uncontroverted fact, Plaintiff cited to the finding in in the court's December 6, 2019 Order on Rule 2004 Motion of Chrismas, Main Bankruptcy Case ECF 2568 ("2004 Order") at 17.  The court does not rely upon its prior finding in determining this uncontroverted fact, but the underlying evidence submitted by Plaintiff supporting Uncontroverted Facts, Nos. 1-545, showing the sales of Debtor's artwork for which the sales proceeds were diverted to other non-Debtor entities that Chrismas controlled, based on evidence of specific diversions, including artists' contracts, sales invoices, and bank account statements.  The Plaintiff's declaration and the declarations of Plaintiff's accountants, Kincaid and Ziegler, constitute demonstrative evidence in explaining how the evidence shows that the sales proceeds of Debtor's artwork were diverted to non-Debtor entities that Chrismas controlled.

| | | | |
|---|---|---|---|
| 1 | | | Judgment on Plaintiff's Claims for Conversion and Breach of Fiduciary Duty against Defendant Douglas Chrismas ("Ziegler Decl. III"), ECF 1196, filed on December 20, 2021, at 3-4 and Ziegler Report, Exhibit 1 attached thereto. |
| | | | Declaration of Sam S. Leslie in Support of Plaintiff's Motion for Summary Judgment ("Leslie Decl. II"), ECF 872, filed on February 12, 2021, at ¶¶ 2-53 and Exhibit D thereto (Diverted Art Sales Chart). |
| 547. | | There were six invoices for the sale of Debtor's artwork reflecting sales proceeds totaling $918,000 that were deposited directly into City National Bank account #6347 owned by Ace Museum, Defendant Chrismas's controlled entity. | Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto, at 19 (internal page citation). |
| | | | Ziegler Decl. III at 3, 5 and Ziegler Report, Exhibit 1 attached thereto, at 19 (internal page citation). |
| | | | Leslie Decl. II at ¶¶ 20 and 21 and Exhibit D thereto (Diverted Art Sales Chart). |
| 548. | | Two pieces of art, created by artists with signed contracts with the Debtor, were sold to a client for $200,000 with instructions to make one check payable to 400 S. La Brea LLC, Ace Museum's landlord, a non-Debtor entity, for $114,595.32 and one check payable to Ace Gallery for $85,404.68. | Leslie Decl. II at ¶¶ 20 and 21 and Exhibit D thereto (Diverted Art Sales Chart). |
| | | | Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto, at 19-20 (internal page citations). |
| | | | Ziegler Referenced Exhibit C (Diverted Art Sales Chart). |
| | | | Ziegler Decl. III at 5-6 and Ziegler Report, Exhibit 1 attached thereto, at 19-20 (internal page citation). |
| | | | |

| 549. | The diverted funds were not used to benefit the Debtor, but to pay for Chrismas's personal obligations, including monthly rent of non-Debtor Ace Museum, Defendant Chrismas's controlled entity. | Uncontroverted Facts, Nos. 1-545. |
|------|----|----|
| | | Declaration of Sam Leslie in Support of Plaintiff's Ex Parte Application of Sam Leslie, Plan Agent, ECF 73 ("Leslie Decl. I"), ¶ 6. |
| | | Kincaid Decl. at ¶¶ 69, 70. |
| | | Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto. |
| | | Ziegler Decl. III at 3-4 and Ziegler Report, Exhibit 1 attached thereto. |
| 550. | Proceeds from sales of Debtor's property was diverted to "repay" non-Debtor Ace Museum's debt to the Debtor, that is, funds were diverted to Ace Museum and then paid to Debtor to reduce the amount of the alleged loan indebtedness of Ace Museum to Debtor on Debtor's books and records. | Uncontroverted Facts, Nos. 1-545. |
| | | Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto, at 21-26 (internal page citations). |
| | | Ziegler Decl. III at 3-6 and Ziegler Report, Exhibit 1 attached thereto, at 21-26 (internal page citations). |
| | | Declaration of Jennifer Ziegler in Support of Plaintiff's Motion to Interpret Confirmation Order and Confirmed Plan ("Ziegler Decl. I"), ECF 542, filed on March 21, 2019, at ¶¶ 10-14 |
| 551. | Debtor suffered $14,242,884[8] in damages by | Uncontroverted Facts, Nos. |

---

[8] Chrismas is liable to the Debtor for $14,243,884 of damages he caused the debtor to incur. Regarding his conversion claim, the Plan Agent asserts Chrismas is liable to the Debtor for $15,392,536 of damages he caused the debtor to incur. This was the gross amount of the funds from sales of the Debtor's assets diverted to non-debtor parties as determined by the Plan Agent's expert witness, Jennifer Ziegler, as detailed in her report at 21 ($14,359,941 to Ace Gallery New York Corporation and Inc., $918,000 to Ace Museum and $114,595 to 400 South La Brea, LLC). However, as discussed in her report at 21-23, Ziegler made adjustments in the gross amount of diverted sales proceeds to account for additional diversions of Debtor's DIP (Debtor in Possession) and other loan proceeds ($916,822 to Ace Museum and $2,614,862 to Ace Gallery New York

*(continued)*

| | | |
|---|---|---|
| | having funds representing the sales of its artwork assets by Defendant Chrismas diverted to accounts other than its own, namely, the sales of Debtor's property with the sales proceeds being diverted to, or on their behalf of, non-Debtor entities controlled by Defendant Chrismas, Ace Gallery New York Corporation and Ace Museum (e.g., rent payments on behalf of Ace Museum to its landlord, 400 South La Brea, LLC). | 1-545;<br><br>Ziegler Decl. II at 3-4 and Ziegler Report, Exhibit 1 attached thereto.<br><br>Ziegler Referenced Exhibit C (Diverted Art Sales Chart).<br><br>Ziegler Decl. III at 3-4 and Ziegler Report, Exhibit 1 attached thereto, at 21-26 (internal page citations). |
| | **ADDITIONAL FACTS RE: BREACH OF FIDUCIARY DUTY** | |
| 552. | Chrismas caused the transfer of funds into the Debtor's operating account of over $250,000 immediately before turnover of control of the Debtor's bankruptcy estate to the Plan Agent pursuant to the confirmed Plan of Reorganization, depriving the Plan Agent of any operating funds to manage the Reorganized debtor. | Leslie Decl. II, ¶ 5.<br><br>Status Report and Declaration of Sam S. Leslie in Support Thereof, ECF 2478, Main Bankruptcy Case, at 4, 5, 24 and Exhibit A. |
| 553. | Chrismas knowingly signed the Monthly Operating Reports filed and submitted to this Court in this bankruptcy case on behalf of the Debtor with falsified important account balances. | Ziegler Decl. I at ¶¶ 6 and 9. |
| 554. | Debtor's Monthly Operating Reports signed by | Ziegler Decl. I at ¶¶ 15-16. |

Corporation for a total of $3,531,684) and further diversions of funds from the Debtor in transfers to Ace Museum ($322,180) and Ace Gallery New York Corporation ($20,000) for a total of $342,180, and to account for repayments of the Debtor's DIP loans by transfers back from Ace Gallery New York Corporation ($68,257 and $421,186) for a total of $489,443 and other transfers to Debtor by Ace Museum ($1,434,692) and Ace Gallery New York Corporation ($4,533,072) for a total of $5,967,764. Based on her analysis in her report at 22, reflecting these adjustments, Ziegler computed that the net Debtor's funds not returned totaled $12,809,192. The court adjusts this net amount of diverted funds of $12,809,192 upwards by the amount of $1,434,692 repaid by Ace Museum to the Debtor, which was credited against the outstanding loan by the Debtor to Ace Museum because Ace Museum should not be credited with a repayment of its loan for this amount because these funds were Debtor's sales proceeds, that is, Ace Museum was using Debtor's money to repay its loan to the Debtor as explained by Ziegler in her report at 21-22 based on her prior analysis in her declaration dated March 6, 2019. Thus, the court determines that the amount of damages suffered by the Debtor from the conversion of its funds by Chrismas is $14,243,884.

| | | |
|---|---|---|
| | Chrismas and filed in this bankruptcy case indicated an increase in accounts receivable of $4.3 Million, most of which was invalid because it had already been paid by buyers. | |
| 555. | Debtor's Monthly Operating Reports signed by Chrismas and filed in this bankruptcy case contained a falsified reduction in Debtor's notes receivable in the Monthly Operating Reports by transferring Debtor's own diverted funds back to the Debtor and recording the transfers as payments from Ace Museum to the Debtor. | Ziegler Decl. I at ¶ 10. |

### OTHER FACTS RELATED TO CHRISMAS'S ASSERTION OF THE FIFTH AMENDMENT

| | | |
|---|---|---|
| 556. | During his deposition, Mr. Chrismas asserted the Fifth Amendment to questions related to Ace Gallery and Debtor's bankruptcy. | Uncontroverted Facts, Nos. 1-545; <br><br> Declaration of Victor Sahn Submitted in Support of Motion for Summary Judgment ("Sahn Decl.") ¶¶ 1-11; Exhibits 9, 10 and 11. |
| 557. | Mr. Chrismas asserted the Fifth Amendment in response to discovery served on him. | Uncontroverted Facts, Nos. 1-545; <br><br> Sahn Decl. ¶ 1, Exhibits 3, 4, 5, and 6. |
| 558. | Mr. Chrismas refused to answer questions about the ownership of the proceeds from the sale of artwork rightfully belonging to Debtor and asserted the Fifth Amendment as the basis for his refusal to answer. | Uncontroverted Facts, Nos. 1-545; <br><br> Sahn Decl. (August 7, 2019 Volume I Chrismas Deposition) at Exhibit 7 at 207, 4-10. |
| 559. | Mr. Chrismas refused to answer questions about the ownership of proceeds from the sales of Debtor's artwork assts used to pay Ace Museum's rent and asserted the Fifth Amendment as the basis for his refusal to answer. | Uncontroverted Facts, Nos. 1-545; <br><br> Sahn Decl. (August 7, 2019 Volume I Chrismas Deposition) at Exhibit 7 at 179, 5-12; *id*. at 258:19-259:1; *id.* at 280:19-281:11. |
| 560. | Mr. Chrismas refused to answer questions regarding his diversion of sales proceeds from | Uncontroverted Facts, Nos. 1-545; |

| | | |
|---|---|---|
| sales of artwork assets belonging to the Debtor into the Ace Gallery New York accounts and asserted the Fifth Amendment as the basis for his refusal to answer. | Sahn Decl. (August 7, 2019 Volume I Chrismas Deposition.) at Exhibit 7 at 280:19-281:11. | |

### NO EVIDENCE OFFERED IN OPPOSITION TO THE EVIDENCE OFFERED

### REGARDING THE CLAIMS FOR CONVERSION AND BREACH OF FIDUCIARY DUTY

| 561. | There was no evidence offered to dispute or raise a triable issue of fact regarding the Plan Agent's claims for Conversion and Breach of Fiduciary Duty in the Plan Agent's Summary Judgment Motion. | *See* Opposition to (related document(s): [870] Motion For Summary Judgment (With Proof of Service) filed by Counter-Defendant Sam S. Leslie, Plan Agent for Post-Confirmation Debtor Art & Architecture Books of the 21st Century filed by Douglas Chrismas, Docket No. 913; *See* Declaration of Jonathan S. Shenson in Support of Opposition to MSJ by Plan Agent Filed by Defendant Douglas Chrismas, Docket No. 914; *See* Declaration of Jonathan S. Shenson in Support of Opposition to MSJ by Plan Agent Filed by Defendant Douglas Chrismas, Docket No. 915; *See* Opposition to Motion for Summary Judgment of Plaintiff Sam S. Leslie, filed by 400 South La Brea LLC, Daryoush Dayan, Kamran Gharibian, and Michael D. Smith, Docket No. 910; *See* Statement of 400 South La Brea Defendants of the Genuine Issues in Support of Opposition of 400 South La Brea Defendants to Plan Agent's Motion for Summary Judgment on Conversion and Breach of |

| | | Fiduciary Duty, Docket no. 911; *See* Statement of Genuine Issues for Opposition to Motion by Plan Agent for MSJ Filed by Defendant Douglas Chrismas, Docket No. 916; *See* Notice of lodgment of Transcript of Deposition of Sam S. Leslie relating to Opposition to Plan Agent's MSJ Filed by Defendant Douglas Chrismas, Docket No. 917. |

## CONCLUSIONS OF LAW

| NO. | CONCLUSIONS OF LAW | SUPPORTING AUTHORITY |
|---|---|---|
| 562. | This United States Bankruptcy Court has "related-to" jurisdiction and may properly issue findings of fact and conclusions of law to be submitted to the District Court for de novo review and entry of final judgment. | 28 U.S.C. §1334(b); 11 U.S.C. § 157(c)(1); *Executive Benefits Insurance Agency v. Arkison,* 573 U.S. 25, 37-40 (2014); *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1436 (9th Cir. 1995). |
| 563. | This United States Bankruptcy Court specifically retained post-confirmation jurisdiction over the three adversary proceedings that were consolidated within the present Complaint. | Section 16.1 of the Modified Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors, confirmed on March 18, 2016, Main Bankruptcy Case, ECF 1858. |

## ASSERTION OF THE FIFTH AMENDMENT

| NO. | | |
|---|---|---|
| 564. | In each instance where Chrismas has asserted a Fifth Amendment right against self-incrimination, this Court may draw a negative inference that Chrismas is unable to deny the fact or allegation where, as here, there was a substantial need for the information withheld by Chrismas in asserting the privilege, there is not a less burdensome way to obtain such information, and there is independent evidence corroborating the facts asserted by Plaintiff as | *U.S. Securities & Exchange Commission v. Fujinaga*, 698 Fed.Appx. 865, 867 (9th Cir. 2017); *Nationwide Life Insurance Co. v. Richards,* 541 F.3d 903, 912 (9th Cir. 2008); |

| | | |
|---|---|---|
| | constituting acts of conversion and breach of fiduciary duty. . | *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997). |
| 565. | The Court may strike any testimony Chrismas offers on topics to which he has asserted the Fifth Amendment privilege, because allowing him to testify now would be allowing him to mutilate the truth. Accordingly, Chrismas may not testify as to the ownership of the Debtor Artwork. | *U.S. v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 642 (9th Cir. 2012); *U.S. v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1277 (10th Cir. 2008). |
| | **FAILURE TO NAME AN EXPERT** | |
| 566. | Due to Chrismas's failure to comply with Fed.R.Civ.P. 26(a), he may not now name an expert to refute Ms. Ziegler's findings. | *ClearOne Communications, Inc. v. Biamp Systems*, 653 F.3d 1163, 1176 (10th Cir. 2011). |
| | **CONCLUSIONS OF LAW RE: CONVERSION** | |
| 567. | The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. | *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015). |
| 568. | It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. | *Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489, 1507 (2008). |
| 569. | Any act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion. | *Plummer v. Day/Eisenberg, LLP*, 184 Cal.App.4th 38, 50 (2010). |
| 570. | Artwork owned by the Debtor and rights of consignment of artworks are tangible and intangible personal property owned by the Plaintiff, susceptible to conversion. | *Don King Productions/Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *Welco Electronics, Inc. v. Mora*, 223 Cal.App.4th 202, 209 (2014). |
| 571. | Neither an intention to return property to the rightful owner nor actual return of property to the rightful owner is relevant to a determination of liability for conversion of property. | *Los Angeles Federal Credit Union v. Madatyan*, 209 Cal.App.4th 1383, 1387 (2012); *Bradley v. Becerra*, Case No. CV 20-6479-ODW (KK), 2020 WL 7407918, at * 9 (C.D. Cal. 2020). |
| 572. | The basis of a conversion action "rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results." | *Los Angeles Federal Credit Union v. Madatyan*, 209 Cal.App.4th 1383, 1387 (2012). |

| 573. | The disposal of the Debtor's property through unauthorized sale and diversion of proceeds for non-Debtor purposes is cognizable injury and damage. | *MTC Electronic Technologies Co., Ltd. v. Leung*, 889 F.Supp. 396, 403 (C.D. Cal. 1995); *Cerra v. Blackstone*, 172 Cal.App.3d 604, 609 (1985). |
| 574. | Chrismas wrongfully converted valuable property and rights owned by the Debtor, causing damage to the Debtor. | *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015). Uncontroverted Facts, Nos. 1-545. |
| 575. | Chrismas is liable to the Debtor for $14,243,884 of damages he caused the debtor to incur. | *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015); Uncontroverted Facts, Nos. 1-561. |

### CONCLUSIONS OF LAW RE: BREACH OF FIDUCIARY DUTY

| 576. | The existence and scope of a fiduciary duty are questions of law. | *Kirschner Brothers Oil, Inc. v. Natomas Co.,* 185 Cal.App.3d 784, 790 (1986) |
| 577. | A Debtor-in-Possession is a fiduciary to the estate and its creditors. | *Thompson v. Margen (In re McConville)*, 110 F.3d 47, 50 (9th Cir. 1997); *In re Pacific Forest Industries, Inc.*, 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989). |
| 578. | Officers and directors of Debtors-in-Possession owe fiduciary duties to the Debtor-in-Possession and its creditors. | *In re Intermagnetics America, Inc.*, 926 F.2d 912, 917 (9th Cir. 1991); *In re Anchorage Nautical Tours, Inc.*, 145 B.R. 637, 643 (9th Cir. BAP 1992). |
| 579. | As the admitted primary officer of the Debtor, Chrismas owed fiduciary duties to the Debtor and to the creditors of the Debtor's bankruptcy estate. | *Id.;* Uncontroverted Fact, No. 1. |
| 580. | An agent has a duty not to use the property of the principal for the agent's own purposes or those of a third party. | Restatement (Third) of Agency, § 8.05. |
| 581. | Chrismas violated his fiduciary duty by entering into transactions that benefitted himself and non-Debtor third parties to the detriment of the Debtor. | Restatement (Third) of Agency, § 8.02; *Xum Speegle, Inc. v. Fields,* 216 Cal.App.2d 546, 554 (1963); Uncontroverted Facts, Nos. 1-561. |

| 582. | Chrismas's transfer of funds of about $250,000 into the Debtor's bank account before turning over the bankruptcy estate to Plaintiff was a breach of fiduciary duty to the Debtor. | *Id.* |
| 583. | Chrismas's signing and filing false Monthly Operating Reports submitted to the Court from February 28, 2013 to November 30, 2013 was a breach of fiduciary duty to the Debtor. | *Id.* |
| 584. | Chrismas's diverting the sales proceeds of Debtor's artwork assets for the benefit of Chrismas and non-Debtor third parties was a breach of fiduciary duty to the Debtor. | *Id.* |

## CONCLUSIONS OF LAW REGARDING CHRISMAS'S STATEMENT OF GENUINE ISSUES

| 585. | The issue raised by defendant Chrismas whether the court can accept the Ziegler Report as subject to a rebuttal process (ECF 916) is not a genuine issue of material fact as Chrismas does not identify in his statement of genuine issues or otherwise submit admissible evidence in opposition to the Ziegler Report as required by Federal Rule of Civil Procedure 56(c) and Local Bankruptcy Rules 7056-1(c) and 9013-1(i). The opposing party must direct the court's attention to specific, triable facts by "citing to particular parts of materials in the record." [FRCP 56(c)(1)(A). | Fed. R. Civ. P. 56(c) (The opposing party must direct the court's attention to specific, triable facts by "citing to particular parts of materials in the record" pursuant to Fed. R. Civ. P. 56(c)(1)(A)); Fed. R. Bankr. P. 7056; Local Bankruptcy Rules 7056-1 and 9013-1(i). |
| 586. | The issue raised by defendant Chrismas whether the court should reject the Plan Agent's attempts to inject into this action its order in the bankruptcy case denying defendant Chrismas's Rule 2004 motion (ECF 916) is not a genuine issue of material fact as the court does not consider its order as relevant to this matter. | Memorandum Decision and Order thereon on Motion of Douglas Chrismas for Order Pursuant to Bankruptcy Rule 2004 and Bankruptcy Code Sections 105 and 1142, Main Bankruptcy Case ECF 2568 and 2569, filed and entered on December 6, 2019. The court's decision is also cited as *In re Art & Architecture Books of the 21st Century, Inc.,* 2019 WL 9243053 (Bankr. C.D. Cal. Dec. 6, 2019). |
| 587. | The issue raised by defendant Chrismas whether the conversion claim fails as a matter of law because the Plan Agent alleges that he, as opposed to the Debtor, did not consent to use of the debtor's property to fund rent payment for Ace Museum (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. | 11 U.S.C. §§ 363 (authorization to use bankruptcy estate property out of the ordinary course of business requires court approval), 704, 1106 and 1107 (debtor in possession has fiduciary duty to creditors with respect to use of bankruptcy estate property, and unauthorized use of such |

| | | | property is a breach of this fiduciary duty). |
|---|---|---|---|
| | 588. | The issue raised by defendant Chrismas whether his actions are imputed to the debtor as a matter of law (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. | The court rejects the defense raised by Chrismas that any alleged misconduct by him as the sole person in control of debtor is imputed to the postconfirmation Reorganized Debtor. Memorandum Decision and Order thereon on Motion of Douglas Chrismas for Order Pursuant to Bankruptcy Rule 2004 and Bankruptcy Code Sections 105 and 1142, Main Bankruptcy Case ECF 2568 and 2569, filed and entered on December 6, 2019. Although there is apparently no definitive case law in the Ninth Circuit regarding whether the so-called in pari delicto defense may be asserted against a bankruptcy trustee, or here, the plan agent, as to the bad acts of prior management post-petition, as recognized by the court in *C&S Wholesale Grocers, Inc. v. Delano Retail Partners, LLC* (*In re Delano Retail Partners, LLC*), 2014 WL 4966476, slip op. at *3-6 (Bankr. E.D. Cal. 2014), this court finds persuasive the Third Circuit's decision and opinion in *In re Personal and Business Insurance Agency*, 334 F.3d 239 (3d Cir. 2003), which held that under the doctrine of imputation, or in pari delicto, the bad acts of a debtor's principal could only be imputed to a bankruptcy trustee in the case of prepetition acts relating to a prepetition claim brought into the bankruptcy estate under 11 U.S.C. § 541, but rights arising under the Bankruptcy Code, such as avoidance claims for fraudulent transfer under 11 U.S.C. § 548, which are not brought into the bankruptcy estate by virtue of |

11 U.S.C. § 541, may not be affected by imputation. *Id.*, citing *In re Personal and Business Insurance Agency*, 334 F.3d at 242-247 (citing and distinguishing *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001), involving prepetition claims brought into the estate under 11 U.S.C. § 541 to hold that the so-called "sole actor exception" does not apply to rights arising under other provisions of the Bankruptcy Code, i.e., 11 U.S.C. § 548). The acts of Chrismas as the person in control of the Debtor-in-Possession during the post-petition administration of the Chapter 11 bankruptcy case are not prepetition acts relating to a prepetition claim brought into the bankruptcy estate under 11 U.S.C. § 541, and therefore, do not implicate the doctrine of imputation, so that any bad acts by him are imputed to the Reorganized Debtor and the Plan Agent. *Id.*; *see also, Notinger v. Migliaccio* (*In re Financial Resources Mortgage, Inc.*). 454 B.R. 6, 24 (Bankr. D. N.H. 2011) ("Courts have reasoned that it is inequitable to impute a debtor's bad conduct to a trustee who comes to the court with clean hands to pursue claims on behalf of innocent creditors."), citing inter alia, *In re Personal & Business Insurance Agency*, 334 F.3d at 246-247 and *Cooper v. United States*, 362 F.Supp.2d 649, 656 (W.D.N.C. 2005)("Imputing the bad acts of the debtor onto the bankruptcy trustee in the present case renders a categorically inequitable result, that is, the innocent victimized creditors get

| | | | |
|---|---|---|---|
| | | | nothing."). |
| | 589. | The issue raised by defendant Chrismas whether there was a lack of assent by the Debtor (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. | Whether the Debtor consented to the conversion of its assets by Chrismas presents the same issue and concern raised by Chrismas's imputation argument addressed in the preceding entry. |
| | 590. | The issue raised by defendant Chrismas whether the conversion claim is barred by the doctrine of in pari delicto (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code. | Whether the Plan Agent's conversion claim against defendant Chrismas is barred by the doctrine of in pari delicto presents the same issues and concerns raised by Chrismas's imputation and consent arguments addressed in the preceding entries. |
| | 591. | The issue raised by defendant Chrismas whether he knowingly acted against the Debtor's interest or acted on behalf of a party whose interests were adverse to the Debtor. | Whether Chrismas's defense against the Plan Agent's conversion claim that he did not knowingly act against the Debtor's interest presents the same issues and concerns raised by Chrismas's imputation, consent and in pari delicto arguments addressed in the preceding entries. Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. |
| | 592. | The issue raised by defendant Chrismas whether his actions are imputed to the debtor as a matter of law (ECF 916) is not a genuine issue of material fact because the conversion claim is based on whether Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. | Whether Chrismas's defense against the Plan Agent's conversion claim that he did not knowingly act against the Debtor's interest presents the same issues and concerns raised by Chrismas's imputation, consent and in pari delicto arguments addressed in the preceding entries. Chrismas diverted property of the debtor's bankruptcy estate to non-debtor parties in violation of the Bankruptcy Code as shown by the uncontroverted facts. |

| | | |
|---|---|---|
| 593. | The issue raised by defendant Chrismas whether the subject claims for conversion and breach of fiduciary duty were released on grounds that he achieved certain milestones under the so-called Committee-Museum Stipulation Order (Adversary Proceeding No. 2:14-ap-01771, ECF 28) (ECF 950 and 1021) is not a genuine issue of material fact as Chrismas does not offer admissible evidence in opposition to the Ziegler Report as required by Federal Rule of Civil Procedure 56(c). | Fed. R. Civ. P. 56(c). |
| | **CONCLUSIONS OF LAW RE: APPLICABILITY OF RULING TO OTHER PARTIES** | |
| 594. | Because Plaintiff's Motion for Summary Judgment on Conversion and Breach of Fiduciary Duty Against Douglas Chrismas seeks entry of summary judgment against Douglas Chrismas and no other party, the motion does not seek relief against other parties, the other parties retain their rights to defend against any factual or legal allegations that may be the subject of the motion. | *See In re Flashcom, Inc.,* 361 B.R. 519, 522-527 (Bankr. C.D. Cal. 2007) (parties have a constitutional right to defend claims asserted against them before they can be deprived of their property), *affirmed,* 503 B.R. 99 (C.D. Cal. 2013), *affirmed,* 647 Fed.Appx. 689 (2016). |
| 595. | The court makes no determination of the applicability of the preclusive effect of the ruling on the motion since such applicability is not before the court at this time. | *Id.* *See also, e.g., Khaligh v. Hadaegh (In re Khaligh),* 338 B.R. 817, 824-825 (9th Cir. BAP 2006). |

Plaintiff's claims in his complaint against Defendant Chrismas for conversion and breach of fiduciary duty are discrete claims separate and apart from the other claims in this adversary proceeding, and therefore, the Bankruptcy Court recommends that the United States District Court expressly determine that there is no just reason for delay and that the District Court may and should direct entry of final judgment on these claims pursuant to Federal Rule of Civil Procedure 54(b) made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7054.

IT IS THEREFORE RECOMMENDED by the United States Bankruptcy Court that for the foregoing reasons, the United States District Court accept this Report and Recommendation, adopt the above-stated statement of uncontroverted facts and conclusions of law, and grant the motion for summary judgment. This Report and Recommendation containing the findings of uncontroverted

1  facts and recommended conclusions of law are submitted to the United States District Judge

2  assigned to the case, pursuant to the provisions of 28 U.S.C. § 157(c)(1) and Federal Rule of

3  Bankruptcy Procedure 9033. Accordingly, within fourteen days after being served with these

4  findings and recommendations, any party may file written objections with the court and serve a copy

5  on all parties. Such a document should be captioned "Objections to Bankruptcy Court's Report and

6  Recommendation." Failure to file objections within the specified time may waive the right to object

7  to this Report and Recommendation.  Federal Rule of Bankruptcy Procedure 9033; *In re Delano*

8  *Retail Partners, LLC,* No. 11-37711-B-7, Adv. No. 13-2250-B, 2014 WL 4966476, slip op. at *13

9  (Bankr. E.D. Cal. Sept. 29, 2014), *citing, Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.1998) and

10  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

11       IT IS SO ORDERED.

12                                              ###

Date: February 16, 2022

_____

Robert Kwan
United States Bankruptcy Judge