In re: Art & Architecture Books of the 21st Century,
Debtor.

Sam Leslie,
Plan Agent for Art & Architecture Books of the 21st Century,

Plaintiff,

v.

Ace Gallery New York Corporation, a California corporation
Ace Gallery New York, Inc., a dissolved New York corporation
Ace Museum, a California corporation
Douglas Chrismas, an individual
400 S. La Brea, LLC, a California limited liability company
Jennifer Kellen, an individual
Cathay Bank, a California corporation
Daryoush Dayan, an individual
Kamran Gharibian, an individual
Michael D. Smith, an individual

Defendants.

United States Bankruptcy Court
Central District of California - Los Angeles Division

Case No. 2:13-bk-14135-RK
Chapter 11

Adv No. 2:15-ap-01679-RK

EXPERT REPORT OF
JENNIFER E. ZIEGLER, CPA
October 30, 2020

Respectfully Submitted by

*Jennifer Ziegler*

Jennifer E. Ziegler, CPA, CFF, CFE

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## TABLE OF CONTENTS

**I. INTRODUCTION** .......... 1

1) Nature of My Assignment .......... 1

2) Qualifications .......... 3

3) Evidence Relied Upon .......... 4

4) Summary of Opinions .......... 6

A) From Petition Date to Plan Agent Start Date, $15,392,536 of Debtor's money from Debtor's art sales was deposited into the following companies' bank accounts: Ace Gallery NY Corporation and Ace Gallery NY, Inc. received $14,359,941; Ace Museum received $918,000; and 400 S. La Brea, LLC, received $114,595. .......... 6

B) From Petition Date to Plan Agent Start Date, $3,042,240 of Debtor's money from Debtor-In-Possession loan borrowings ("DIP Loan") and other Debtor borrowings were deposited into the following companies' bank accounts: Ace Gallery NY Corporation received $2,125,418 (net) and Ace Museum received $916,822.......... 6

C) From the inception of the lease on August 1, 2006 ("Lease Inception") for 400 S. La Brea and 407 S. Sycamore Ave., $19,259,703 was paid to 400 S. La Brea, LLC, for the lease of which $12,671,447 from Debtor's funds; $11,333,332 were Pre-Petition payments, and $7,926,372 were Post-Petition payments. .......... 6

D) From Lease Inception to Plan Agent Start Date, $8,536,676 in Debtor's funds were used to pay the Cathay Bank mortgage for 400 S. La Brea, LLC. $6,050,673 were Pre-Petition payments, and $2,486,003 were Post-Petition payments. .......... 6

E) From Lease inception to Plan Agent Start Date 400 S. La Brea, LLC, distributed $10,453,292 to its members; $6,300,017, $3,370,140 and $783,135 to Daryoush Dayan, Kamran Gharibian and Michael D. Smith, respectfully. $5,633,548 were Pre-Petition payments, and $4,819,744 were Post-Petition payments.......... 7

F) Debtor was insolvent and not liquid in the tax years 2006 through 2012 (fiscal years ending 2007 through 2013). .......... 7

G) But for the transfer of Debtor's funds and the acceptance of these funds by 400 S. La Brea, LLC, and Cathay Bank, Debtor was damaged by at least

$12,671,447 plus at least attorney's fees of $10,000,000 and interest $7,764,489, which totals $30,435,936 . ..... 7

**II. BASES OF OPINIONS** ..... 7

5) Background ..... 7

6) Bases of Opinions ..... 14

A) $15,392,536 of Debtor's money from Debtor's art sales was deposited and transferred to other entities from Petition Date to Plan Agent Start Date. .... 14

B) $3,042,240 of DIP Loan Borrowing and additional Debtor borrowings were deposited into other than Debtor's bank accounts from Petition Date to Plan Agent Start Date. ..... 20

C) Pre- and Post-Petition payments of $19,259,703 went to 400 S. La Brea, LLC, for the lease of 400 S. La Brea and 407 S. Sycamore Ave. in Los Angeles, of which $12,671,447 is Debtor's Funds ..... 23

D) Pre- and Post-Petition $8,536,676 paid to 400 S. La Brea, LLC, was Debtor's funds used to pay the mortgage held with Cathay Bank for 400 S. La Brea, LLC. ..... 26

E) From lease inception to Plan Agent Start Date, 400 S. La Brea, LLC, distributed $10,453,292 to its members which would not have been possible without Debtor's payments. ..... 26

F) Debtor was insolvent and not liquid from June 2006 the through petition date of February 19, 2013. ..... 27

G) But for the transfer of Debtor's funds and the acceptance of these funds by 400 S. La Brea, LLC, Cathay Bank, and the members of 400 S. La Brea, LLC, Debtor was damaged by at least $12,671,447 plus attorney's fees of approximately $10,000,000 and interest of $7,764,489, which totals $30,435,936. ..... 31

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# I. INTRODUCTION

The opinions expressed in this report along with the findings presented are my present opinions. My analysis and findings reported herein may be affected by the future discovery and production of relevant documentary and testimonial evidence and the performance of additional procedures. Therefore, I may supplement this report after new relevant information is received. Currently, I expect to testify about my work, findings, and opinions. In addition, I understand that I may be asked to perform additional work, update this report, and express opinions in rebuttal to matters that may be raised by the opposing parties' expert(s) in connection with this matter. I anticipate using documents reviewed in connection with the preparation of this report, and I may have additional graphics illustrating concepts described in this report.

## 1) Nature of My Assignment

I have been retained by SulmeyerKupetz on behalf of Plaintiff Sam Leslie ("Plan Agent"), Plan Agent for Art & Architecture Books of the 21st Century ("Debtor" or "Art & Architecture"). I was asked to:

A) Evaluate and verify the conclusions presented in the October 19, 2017, Declaration of Timothy Kincaid in Support of the Plaintiff's Motion for Preliminary Injunction, for the purpose of providing opinions and testimony relating to the issues of this litigation.

B) Form and express opinions regarding net amounts, if any, belonging to Debtor that went to the following defendants between February 19, 2013, the date Debtor's Chapter

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

11 case was filed[1] ("Petition Date"), and April 6, 2016, the date Plan Agent took over Debtor's operations and records[2] ("Plan Agent Start Date"):

- Ace Gallery New York Corporation ("Ace Gallery NY Corporation")
- Ace Gallery New York, Inc. ("Ace Gallery NY, Inc.")
- Ace Museum
- 400 S. La Brea, LLC
- 400 S. La Brea, LLC, owners/members – Daryoush Dayan, Kamran Gharibian, and Michael D. Smith
- Cathay Bank to pay the 400 S. La Brea, LLC, mortgage

C) Quantify the amount paid by Debtor to 400 S. La Brea, LLC, for the Ace Museum lease before Petition Date and quantify how much of those monies went to 400 S. La Brea, LLC; to Cathay Bank to pay the mortgage; and to the members of 400 S. La Brea, LLC, Daryoush Dayan, Kamran Gharibian, and Michael D. Smith.

D) Analyze Debtor's liquidity (ability to pay short-term obligations) / solvency (ability to pay long-term obligations and long-term sustainability of operations) before and as of Petition Date.

E) Quantify damages, if any, Debtor incurred prior to Petition Date ("Pre-Petition") and after Petition Date through Plan Agent Start Date ("Post-Petition") based on the transfer of funds to others.

---

[1] Voluntary Petition of Art and Architecture Books of the 21st Century dba Ace Gallery filed February 19, 2013, Case No. 2:13-bk-14135-RK, United States Bankruptcy Court, Central District of California, Los Angeles Division, p. 1 of 26.

[2] Status Report of Sam S. Leslie RE First 30 Days of Operation and Supporting Declaration of Timothy Kincaid dated May 12, 2016, ¶ 1 (Bates 00001); Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction dated October 19, 2017, ¶ 5.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

The opinions expressed in this report along with the findings presented are my present opinions. My analysis and findings reported herein may be affected by the future discovery and production of relevant documentary and testimonial evidence and the performance of additional procedures.

**2) Qualifications**

My curriculum vitae is attached to this report as Exhibit A. It highlights my education, credentials, background, and relevant accounting experience which enable me to opine on the issues I have been asked to consider. Exhibit A also includes a list of other cases in which I have testified as an expert during the last four years. I have not authored any publications within the last ten years.

I am a Certified Public Accountant (CPA) in California and Oregon and hold the CFF (Certified in Financial Forensics) and CFE (Certified Fraud Examiner) designations. I have worked in accounting for over 30 years, specializing in forensic accounting for the last 22 of those years. I began my career as an internal auditor at UCLA, performing audits, investigating allegations of fraud and supporting external audits by KPMG. Subsequently, KPMG offered me a job which I accepted. I then spent 5 years auditing SEC registrants including insurance companies, not-for-profits, and governmental entities. I utilized those skills in accounting for my next role at GurseySchneider, where I was a partner and applied my expertise in accounting-related litigation support. My next role was partner at Hemming Morse, and for nearly 8 years, I have been a Managing Director at Berkeley Research Group ("BRG").

I have worked on hundreds of matters over the last 20-plus years involving many types of businesses including, but not limited to, insurance providers, public companies, government agencies, homeowners' associations, retailers, and start-up companies. I have also worked on

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

criminal matters that were referred to the IRS, FTB (California Franchise Tax Board), and the FBI. I have testified in more than 70 depositions in Superior and Federal Court cases, and I have qualified as an expert in 21 trials related to issues involving accounting, investigations, accountants' standards of care, and disputes that resulted in damages or lost profits. I have been court-appointed as the neutral expert in two separate matters and designated as a trustee of a decedent estate. I have on two separate occasions, as a result of my work in investigations, overseen the financial operations for businesses while serving as interim CFO.

I am the former Chair of the California Society of CPAs, the largest state CPA society in the United States, and am currently a member of its Government Relations Committee. Concurrently, I serve as a California state delegate on the American Institute of CPAs Council, which represents the CPA profession nationally regarding rule-making and standard-setting in the United States.[3] I also serve as Treasurer and a board member of the LA Center for Law and Justice, which provides free litigation services to survivors of domestic violence and sexual assault. The hourly rate for my professional services is $510 including deposition and trial testimony.

**3) Evidence Relied Upon**

In undertaking my assignment, I have considered information from a variety of sources, many of which are identified in the citations within this report. I reviewed thousands of documents going back as far as 1999, including documents supporting the activity of Debtor for the time period between Petition Date and Plan Agent Start Date (February 19, 2013, and April 6, 2016). These documents include Monthly Operating Reports ("MOR"), bank statements, accounting records, electronic general ledgers, sales invoices, tax returns, depositions, legal filings and

[3] Source - https://www.aicpa.org/about/missionandhistory.html

correspondence. In addition to bank records of Debtor, I also reviewed bank records of Ace Gallery NY Corporation, Ace Gallery NY, Inc., Ace Museum, and 400 S. La Brea, LLC, for this time period. It is my understanding that many of these documents were found at Debtor's premises[4] and that many were independently obtained from Debtor's computers.[5] It is also my understanding that, in addition to the bank statements found at Debtor's premises, some bank account records were produced by Defendants and certain banks in response to subpoenas.

I interviewed staff and accounting personnel who worked for Debtor whose responsibilities included amongst other things, sales invoice processing, inventory maintenance, and bill payment processing. I interviewed these individuals in order to gain an in-depth understanding of the accounting practices in place. Also, to analyze Debtor's liquidity/solvency, I examined Pre-Petition Debtor's tax returns and accounting records that appear to have been printed contemporaneously based on the print date of those documents. I reviewed rent records related to the lease of 400 S. La Brea and 407 S. Sycamore Ave. and the rent paid to 400 S. La Brea, LLC. I also reviewed 400 S. La Brea, LLC's Cathay Bank banking records and Cathay Bank mortgage documents. Attached as Exhibit B is a list of the documents that I reviewed regarding this matter which I considered in forming my opinions.

In addition, I relied upon my professional judgment, applicable professional standards, and expertise gathered during the more than 30 years I have been practicing accounting and analyzing data.

////

[4] Status Report of Sam S. Leslie RE First 30 Days of Operation and Supporting Declaration of Timothy Kincaid dated May 12, 2016, ¶ 10 (Bates 00004).

[5] BRG imaged and obtained the data from Debtor's computer systems.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**4) Summary of Opinions**

A) From Petition Date to Plan Agent Start Date, $15,392,536[6] of Debtor's money from Debtor's art sales was deposited into the following companies' bank accounts: Ace Gallery NY Corporation and Ace Gallery NY, Inc. received $14,359,941; Ace Museum received $918,000; and 400 S. La Brea, LLC, received $114,595.

B) From Petition Date to Plan Agent Start Date, $3,042,240 [7]of Debtor's money from Debtor-In-Possession loan borrowings ("DIP Loan") and other Debtor borrowings were deposited into the following companies' bank accounts: Ace Gallery NY Corporation received $2,125,418 (net) and Ace Museum received $916,822.

C) From the inception of the lease on August 1, 2006[8] ("Lease Inception") for 400 S. La Brea and 407 S. Sycamore Ave., $19,259,703[9] was paid to 400 S. La Brea, LLC, for the lease of which $12,671,447[10] from Debtor's funds; $11,333,332 were Pre-Petition payments, and $7,926,372 were Post-Petition payments.

D) From Lease Inception to Plan Agent Start Date, $8,536,676[11] in Debtor's funds were used to pay the Cathay Bank mortgage for 400 S. La Brea, LLC. $6,050,673 were Pre-Petition payments, and $2,486,003 were Post-Petition payments.

---

[6] Exhibit C – BRG's analysis of Debtor's art sales deposited into non-Debtor accounts of Ace Gallery NY Corporation, Ace Gallery NY, Inc., and 400 S. La Brea, LLC.

[7] Exhibit D – BRG's analysis of Debtor's DIP and other loans deposited into non-Debtor accounts.

[8] Production Lease dated July 20, 2006 between 400 S. La Brea, LLC, and Douglas Chrismas.

[9] Exhibit E – BRG's analysis of payments to 400 S. La Brea, LLC.

[10] Exhibit F – BRG's analysis of lease payments from Debtor's funds.

[11] Exhibit G – BRG's analysis of 400 S. La Brea, LLC, mortgage payments.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

E) From Lease inception to Plan Agent Start Date 400 S. La Brea, LLC, distributed $10,453,292[12] to its members; $6,300,017, $3,370,140 and $783,135 to Daryoush Dayan, Kamran Gharibian and Michael D. Smith, respectfully. $5,633,548 were Pre-Petition payments, and $4,819,744 were Post-Petition payments**.**

F) Debtor was insolvent and not liquid in the tax years 2006 through 2012 (fiscal years ending 2007 through 2013).[13]

G) But for the transfer of Debtor's funds and the acceptance of these funds by 400 S. La Brea, LLC, and Cathay Bank, Debtor was damaged by at least $12,671,447[14] plus at least attorney's fees of $10,000,000[15] and interest $7,764,489,[16] which totals $30,435,936 .

## II. BASES OF OPINIONS

### 5) Background

Debtor

Is it my understanding that Debtor Art & Architecture Books of the 21st Century ("Debtor") is the owner and operator of a retail art gallery in Los Angeles often known as "Ace Gallery"[17]

---

[12] Exhibit H – BRG's analysis of distributions paid to the members of 400 S. La Brea, LLC.

**[13]** Exhibit I-3 – BRG's Solvency Ratio Analysis (without Sale of option to purchase 5514 Wilshire).

**[14]** Exhibit F – BRG's analysis of lease payments from Debtor's funds.

**[15]** I have been asked to assume $10,000,000 in attorney's fees have been incurred related to the Bankruptcy filing. The fees have not completely been paid and therefore, I am not calculating interest on fees that have not been paid would be inappropriate.

[16] Exhibit AN – BRG's Interest Calculation

**[17]** Notice of Motion and Motion of Debtor and Debtor in Possession for Ordering Authorizing Debtors to Obtain Financing Pursuant To 11 U.S.C. § 364(c)(2) AND (3); Memorandum of Points and Authorities; Declaration of Douglas Chrismas in Support Thereof dated August 7, 2013, p. 13 of 45 line 4.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

located at 5514 Wilshire Boulevard, Los Angeles, CA, 90036.[18] In addition to "Ace Gallery",[19] Debtor has had many other fictitious business names since at least June 14, 1999, including: Ace Gallery Los Angeles;[19] Ace Gallery Beverly Hills;[19] Ace Gallery NY;[19]Ace Gallery Los Angeles Institute of Contemporary Art;[20]and Ace Institute of Contemporary Art.[20]

Debtor's Chapter 11 Voluntary Petition ("Voluntary Petition") was filed with the United States Bankruptcy Court, Central District of California, Los Angeles Division, on February 19, 2013 (Petition Date).[21] Debtor filed schedules with the court detailing the artworks held by Debtor for sale including Debtor-owned[22] and consigned[23] artworks by various artists. It is my understanding that, after commencing its bankruptcy case by filing the Voluntary Petition, Debtor continued managing its financial affairs and operating its business and bankruptcy estate as a debtor in possession ("DIP").[24]

////

---

**18** Voluntary Petition of Art and Architecture Books of the 21st Century dba Ace Gallery filed February 19, 2013, Case No. 2:13-bk-14135-RK, United States Bankruptcy Court, Central District of California, Los Angeles Division, p. 1 of 26.

19 Art & Architecture Books of 21st Century Fictitious Business Name Statement Proof of Publication executed May 26, 2006.

**20** Art & Architecture Books of 21st Century Fictitious Business Name Statement dated June 14, 1999 and filed October 8, 2010.

**21** Voluntary Petition of Art and Architecture Books of the 21st Century dba Ace Gallery filed February 19, 2013, Case No. 2:13-bk-14135-RK, United States Bankruptcy Court, Central District of California, Los Angeles Division, p. 1 of 26.

**22** Exhibit 52 of Motion of Debtor to Assume Master Lease (NNN) RE 5500 Wilshire Boulevard, Los Angeles, California, Debtor's Exhibit Binder, Volume 3 (ECF No. 71) [ACE002196-ACE002261].

**23** Exhibit 51 of Motion of Debtor to Assume Master Lease (NNN) RE 5500 Wilshire Boulevard, Los Angeles, California, Debtor's Exhibit Binder, Volume 3 [ACE000001-ACE000087].

**24** Notice of Motion and Motion of Debtor and Debtor in Possession for Ordering Authorizing Debtors to Obtain Financing Pursuant To 11 U.S.C. § 364(c)(2) AND (3); Memorandum of Points and Authorities; Declaration of Douglas Chrismas in Support Thereof dated August 7, 2013, p. 6 of 45 lines 8-11.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Douglas Chrismas

Defendant Douglas Chrismas ("Chrismas") was Debtor's President and signed the Voluntary Petition on behalf of Debtor.[25] According to Chrismas' declaration, as Debtor's President, he was "involved in virtually all aspects of Debtor's operations and financial condition".[26] It is my understanding that Chrismas' role with Debtor was terminated by Plan Agent on May 10, 2016.[27]

Chrismas was also an executive and it is my understanding he was in control of three of the defendant entities described below—Ace Gallery NY Corporation, Ace Gallery NY, Inc., and Ace Museum.

Ace Gallery NY Corporation

Defendant Ace Gallery NY Corporation was a California corporation that was incorporated on February 14, 2013.[28] According to documents filed with California's Secretary of State, Ace Gallery NY Corporation's business was described as "fine art dealer"[29] and Chrismas was Ace Gallery NY Corporation's President.[30] According to Ace Gallery NY Corporation's initial tax

[25] Voluntary Petition of Art and Architecture Books of the 21st Century dba Ace Gallery filed February 19, 2013, Case No. 2:13-bk-14135-RK, United States Bankruptcy Court, Central District of California, Los Angeles Division, p. 4 of 26.

[26] Notice of Motion and Motion of Debtor and Debtor in Possession for Ordering Authorizing Debtors to Obtain Financing Pursuant To 11 U.S.C. § 364(c)(2) AND (3); Memorandum of Points and Authorities; Declaration of Douglas Chrismas in Support Thereof dated August 7, 2013, p. 23 of 45 lines 3-7.

[27] Status Report of Sam S. Leslie RE First 30 Days of Operation and Supporting Declaration of Timothy Kincaid dated May 12, 2016, ¶ 10 (Bates 00004).

[28] Ace Gallery New York Corporation Articles of Incorporation of a General Stock Corporation filed February 14, 2013.

[29] Ace Gallery New York Corporation State of California Secretary of State Statement of Information filed April 18, 2013.

[30] Ace Gallery New York Corporation State of California Secretary of State Statement of Information filed April 18, 2013.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

return, the entity had no assets or capital at its formation.[31] It is my understanding that Chrismas also confirmed that Ace Gallery NY Corporation did not have assets during a meeting with Plan Agent.[32] According to Plan Agent, Chrismas stated that Ace Gallery NY Corporation never had its own inventory and was essentially formed to broker art for Debtor and process sales during Debtor's bankruptcy because some buyers were reluctant to buy art from a company in bankruptcy.[33] This was further confirmed in Chrismas' declaration in which he stated Ace New York brokered the art on behalf of Debtor.[34]

Ace Gallery NY, Inc.

Defendant Ace Gallery NY, Inc., was a New York corporation.[35] Its initial filing date with New York's Department of State was November 27, 1990.[26] Ace Gallery NY, Inc., was dissolved on November 16, 2012. [26] However, a Wells Fargo bank account under its name existed until at least April 2014.[36] Chrismas was Ace Gallery NY, Inc.'s "Principal Executive Office [*sic*]"[37] according to New York's entity information database.

////

---

**31** Balance Sheet from Ace Gallery New York Corporation Tax Return for the period February 1, 2013, through October 31, 2013.

**32** Status Report of Sam S. Leslie RE First 30 Days of Operation and Supporting Declaration of Timothy Kincaid dated May 12, 2016, ¶ 11 (Bates 00005).

**33** Status Report of Sam S. Leslie RE First 30 Days of Operation and Supporting Declaration of Timothy Kincaid dated May 12, 2016, ¶ 11 (Bates 00005).

**34** Douglas Chrismas Deposition dated January 28, 2016, page 11.

**35** Ace Gallery New York, Inc., NYS Department of State Division of Corporation Entity Information as of August 2020.

**36** Ace Gallery New York bank statements for Wells Fargo account 609059951 dated November 1, 2012, to April 30, 2014.

**37** Ace Gallery New York, Inc., NYS Department of State Division of Corporation Entity Information as of August 2020.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Ace Museum

Defendant Ace Museum was incorporated as a California nonprofit public benefit corporation on June 8, 2009.[38]  Ace Museum assumed a lease from Douglas Chrismas for a property located at 400 S. La Brea Ave. and 407 S. Sycamore Ave. in Los Angeles owned by defendant 400 S. La Brea, LLC.[39] Payments were made on the lease from different sources to 400 S. La Brea, LLC, since at least December 2007.[40] Based upon signed documents, Chrismas was Ace Museum's President.[41]

400 S. La Brea, LLC

Defendant 400 S. La Brea, LLC, is the owner of the property leased by Douglas Chrismas, and the lease was assigned to Ace Museum in August 2009.[42] The lease was entered into on July 20, 2006,[43] for 400 S. La Brea and 407 S. Sycamore Ave. in Los Angeles.  400 S. La Brea, LLC, has received payments for this lease from many sources as a result of Debtor's art sales and borrowings.

///

///

///

---

[38] Ace Museum Articles of Incorporation filed June 8, 2009.

[39] Assignment of and First Amendment to Standard Industrial/commercial Single-Tenant Lease-Net dated August 28, 2009.

[40] 400 SLB 003348-400 SLB 003357 / Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction dated October 19, 2017, Exhibit X and BRG's analysis.

[41] Per lease agreements signed by Douglas Chrismas; Ace Museum State of California Secretary of State Statement of Information filed March 2, 2016, and January 8, 2019.

[42] Assignment of and First Amendment to Standard Industrial/commercial Single-Tenant Lease-Net dated August 28, 2009.

[43] Production Lease dated July 20, 2006 between 400 S. La Brea, LLC, and Douglas Chrismas.

USAO_00014076

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Cathay Bank

Defendant Cathay Bank, a California Banking Corp., was the lender[44] to 400 S. La Brea, LLC, for the property leased by Debtor which was later assumed by Ace Museum.[45] Additionally, defendants, 400 S. La Brea, LLC, and its members, appeared to use Cathay bank account #1679 for the activities of the 440 S. La Brea, LLC.[46]

Daryoush Dayan, Kamran Gharibian, Michael D. Smith

Defendants Daryoush Dayan, Kamran Gharibian, and Michael D. Smith are the members of 400 S. La Brea, LLC, which owns the property leased by Chrismas and whose lease was later transferred to Ace Museum.[47] Additionally, these defendants were personal guarantors[48] on the Cathay Bank mortgage secured by the leased property. These defendants received proceeds from Debtor's payments paid to 400 S. La Brea, LLC.

///

///

///

///

///

///

---

[44] Business Loan Agreement dated December 7, 2005 (Bates range CATHAY 00001- CATHAY 00201).

[45] AIR commercial Real Estate Association Standard Industrial/commercial Single-Tenant Lease – Net Dated July 20, 2006 signed by Douglas Chrismas; Assignment of and First Amendment to Standard Industrial/commercial Single-Tenant Lease-Net dated August 28, 2009.

[46] Cathay bank statements account #004031679 from January 31, 2006 through December 31, 2016 (Bates range CATHAY 00231- CATHAY 00598).

[47] Business Loan Agreement dated December 7, 2005 along with all amendments and guarantees (Bates range CATHAY 00001- CATHAY 00201).

[48] Business Loan Agreement dated December 7, 2005 (Bates CATHAY 00002).

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Plan Agent

Plan Agent and plaintiff Sam Leslie is a Certified Public Accountant[49] and was appointed Debtor's Plan Agent pursuant to Debtor's approved plan of reorganization.[50] Plan Agent took over Debtor's operations and records on or about April 6, 2016 (Plan Agent Start Date).[51]

Timothy Kincaid

It is my understanding that Timothy Kincaid ("Kincaid") was[52] an accountant and member of LEA Accountancy, an accounting firm and Plan Agent's accountant of record.[53] My understanding is that Kincaid's responsibilities pertaining to this case included reviewing and analyzing bank records, sales invoices, financial statements, and other business records.[54] Kincaid prepared an analysis of art sales made during the dates covering Petition Date and Plan Agent Start Date and of bank accounts that the sales proceeds were deposited into.[55] An analysis of art sales proceeds that went to Ace Gallery NY Corporation's bank accounts between Petition Date and

[49] California Board of Accountancy licensing details for license 46676 – Leslie, Sam Stuart.

[50] Status Report of Sam S. Leslie RE First 30 Days of Operation and Supporting Declaration of Timothy Kincaid dated May 12, 2016, ¶ 1 (Bates 00001).

[51] Status Report of Sam S. Leslie RE First 30 Days of Operation and Supporting Declaration of Timothy Kincaid dated May 12, 2016, ¶ 1 and based on discussions with Plan Agent (Bates 00001).

[52] Mr. Kincaid passed away on September 18, 2020.

[53] Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction dated October 19, 2017, ¶ 1.

[54] Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction dated October 19, 2017, ¶ 6, 9.

[55] Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction dated October 19, 2017, ¶ 9.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Plan Agent Start Date is an exhibit to his declaration dated October 19, 2017.[56] One objective of my engagement in this matter was to evaluate and verify this analysis.

## 6) Bases of Opinions

### A) $15,392,536[57] of Debtor's money from Debtor's art sales was deposited and transferred to other entities from Petition Date to Plan Agent Start Date.

Kincaid's Analysis

Kincaid analyzed Debtor's activities from the date of the filing for protection under Chapter 11 on February 19, 2013, though the date Plan Agent took over Debtor's activities on April 6, 2016. Kincaid found in is his analysis, contrary to what was reported to the bankruptcy court in Debtor's Monthly Operating Reports (MOR), that funds from Debtor's artwork sales were not deposited into Debtor's bank accounts, that a payment from artwork sales was paid directly from a purchaser directly to 400 S. La Brea, LLC, and DIP Loan proceeds and other loan proceeds were not always deposited into Debtor's bank accounts. Kincaid filed a declaration signed October 19, 2017, with the results of his analysis attached as exhibits. I was asked to review, evaluate, and come up with my own results based on the original documents coupled with the analysis Kincaid prepared.

After Kincaid filed his analysis with the court, more information became available which resulted in a better understanding of certain transactions. My analysis includes this new information and resulted in modifications to Kincaid's analysis. I reviewed documents that

[56] Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction dated October 19, 2017, ¶ 9 and Exhibit C.

[57] Exhibit C – BRG's analysis of Debtor's art sales deposited into non-Debtor accounts of Ace Gallery NY Corporation, Ace Gallery NY, Inc., and 400 S. La Brea, LLC.

included Debtor's internal inventory records, artist contracts, and consignment sheets. All the contracts I reviewed were signed by Douglas Chrismas on behalf of Debtor, the majority of which were signed before the bankruptcy filing and some of which were signed after the bankruptcy filing. I have not reviewed or located any contracts between Ace Gallery NY Corporation and any artist. Ace Gallery NY Corporation's lack of artwork owned or on consignment was confirmed by Chrismas in his deposition. When asked "Does Ace New York have an artwork that it owns or has on consignment?" Christmas responded, "Maybe one or two pieces. It's a - - it's consulting".[58]

As a result of my review of Kincaid's analysis including all of the back-up documentation, it is my opinion that $15,392,536[59] of Debtor's money from Debtor's art sales was deposited into the following companies' bank accounts: Ace Gallery NY Corporation and Ace Gallery NY, Inc., received $14,359,941; Ace Museum received $918,000; and 400 S. La Brea, LLC, received $114,595.

<u>Deposits into Ace Gallery NY Corporation and Ace Gallery NY, Inc., Bank Accounts</u>

There were over 120 separate deposits totaling $14,359,941[60] for the sale of approximately 147[61] pieces of Debtor's artwork in which the money for those sales was deposited directly into three non-Debtor bank accounts owned by Ace Gallery NY, Inc., and Ace Gallery NY Corporation

[58] Douglas Chrismas deposition dated January 28, 2016 page 11.

[59] Exhibit C – BRG's analysis of Debtor's art sales deposited into non-Debtor accounts of Ace Gallery NY Corporation, Ace Gallery NY, Inc., and 400 S. La Brea, LLC.

[60] Exhibit J - BRG's listing of art sales proceeds deposited into non-Debtor accounts owned by Ace Gallery NY, Inc. and Ace Gallery NY Corporation.

[61] Exhibit C - BRG's detailed listing of Debtor's art pieces sold and accounts sales proceeds were deposited into.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

with bank account numbers City National Bank ("CNB") #0229, CNB #4733, and Wells Fargo #9951, respectively, as shown below.

**Company Name on Sale's Invoice Letterhead**

| Bank Account Debtor's Funds Deposit into | ACE GALLERY | ACE GALLERY LOS ANGELES | ACE GALLERY NEW YORK | Blank | Total Deposited into this account |
|---|---|---|---|---|---|
| CNB #0229 | $ 2,164,588 | $ 1,086,487 | $ 4,132,066 | $ 14,725 | $ 7,397,866 |
| CNB #4733 | | $ 335,465 | $ 6,504,066 | | $ 6,839,531 |
| WF #9951 | $ 38,368 | | $ 84,177 | | $ 122,545 |
| Grand Total | **$ 2,202,956** | **$ 1,421,952** | **$ 10,720,308** | **$ 14,725** | **$ 14,359,941** |

As explained in my Declaration signed March 6, 2019,[62] I reviewed many documents and information pertaining to Ace Gallery NY Corporation including its initial tax return for the period of February 1, 2013, through October 31, 2013, which was filed on Form 1120. The Form 1120 includes an opening balance sheet on page 5[63] showing there were no assets or capital at the formation of the corporation. This tax return establishes that Ace Gallery NY Corporation did not have any artwork or assets around the time Debtor's bankruptcy was declared as the February 2013 formation date is within the same month as Debtor's Chapter 11 bankruptcy filing. But based on Ace Gallery NY Corporation's tax returns, Ace Gallery NY Corporation received $2,103,866[64] in artwork sales revenue during the nine-month period after its formation. I concluded the money was Debtor's money. Based on my review of the documents, including sales invoices, wire instructions, bank statements, deposit information, artist contracts, and consignment agreements,

---

[62] Exhibit K - the Declaration of Jennifer Ziegler dated March 6, 2019, with Exhibits.

[63] Exhibit L - excerpts from Ace Gallery NY Corporation's 2012 Form 1120 tax return, including the balance sheet on page 5.

[64] *Ibid.*

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

the $2 million was Debtor's money for this 8-month time frame of February 2013 through October 2013. Although Ace Gallery NY Corporation had no assets when formed, it was able to produce $2 million of revenue—and I was able to confirm that the $2 million was from the sale of Debtor's artwork.

Continuing from my declaration's analysis, post-October 2013 records of Ace Gallery NY Corporation and Ace Gallery NY, Inc. (collectively "Ace NY") were also reviewed through the Plan Agent Start Date of April 2016. We reviewed sales invoices and traced money into the three bank accounts owned by Ace Gallery Ace NY. We were unable to locate any contracts between Ace NY and any of the artist for this time period. The following are a few examples showing that the money deposited into an Ace NY bank account belonged to Debtor:

a) <u>Ace Gallery New York Invoice 2022</u> Charles Fine's *Flor De Incino* is included in Debtor's inventory list Exhibit Binder Volume 311[65] and was sold on an Ace Gallery New York invoice.[66] A payment via check of $172,000 for that invoice was deposited into Ace NY's bank account on August 2, 2013.[67] In following the trail of funds for that $172,000 invoice after it was deposited, the records indicate that, days later, $165,000 was transferred to Ace Museum's bank account on August 6, 2013.[68] Then, on the same day, $165,000 was wired out of the Ace Museum account in two wire transfers[69]—one for an Ace Museum rent expense for $150,000 and the other to Debtor's general account for $15,000.

---

[65] Exhibit N - the page from Debtor's inventory listing Charles Fine's *Flor De Incino* (ACE000003).

[66] Exhibit M - Ace Gallery Los Angeles invoice 2022.

[67] Exhibit O – *Flor De Incino* Payment.

[68] Exhibit P – Ace Museum's bank statements.

[69] Exhibit Q – CNB wire list, 400 S. La Brea rent statement and CNB bank statement

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

b) Ace Gallery Invoice 2050 *Hung Up and Over*, *2003*, by Laurie Lipton was sold in June 2014. This piece is in an inventory list in Debtor's Exhibit Binder Volume 3.[70] The invoice was for $18,530[71] and was paid by a check that was deposited into Ace Gallery NY Corporation's CNB -0229 account on June 26, 2014.[72]

c) Ace Gallery Los Angeles Invoice 1792 Another piece by Laurie Lipton—*Round and Round, 2012*—is also part of the same above-mentioned inventory list in Debtor's Exhibit Binder Volume 3.[73] This piece was listed on Ace Gallery Los Angeles invoice 1792. The date on the invoice is February 13, 2015, and the invoice totaled $35,970.[74] There was a deposit for the same amount into Ace Gallery NY Corporation's CNB #0229 on February 17, 2015.[75] On February 18, 2015, $100,000 was transferred from Ace Gallery NY Corporation's CNB #0229 to Ace Museum's account,[76] and then Ace Museum's lease payment of $100,000 was paid to 400 S. La Brea, LLC,[77] when in fact it was Debtor's funds.

Based on all the documents reviewed, it is my opinion the entire $14,359,941 was Debtor's money and should have been deposited into Debtor's bank accounts.

---

[70] Exhibit R – Bates ACE000061 BRG deposit reference "Dep 3 – 104"; CNB 000107; Exhibit A - 95 from Declaration of Timothy Kincaid dated October 19, 2017.

[71] Exhibit S – Ace Gallery invoice 2050.

[72] Exhibit T – check copy and CNB bank statement.

[73] See Exhibit R – Consignment agreement Bates ACE000062.

[74] Exhibit U – Ace Gallery Los Angeles invoice 1792.

[75] Exhibit V – bank statement Exhibit A -128 from Declaration of Timothy Kincaid dated October 19, 2017.

[76] Exhibit W – Ace Museum's bank statements.

[77] *Ibid.* and Exhibit X – CNB wire list.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Deposits into Ace Museum Bank Accounts

There were six invoices for the sale of Debtor's artwork totaling $918,000 that were deposited directly into CNB account #6347 owned by Ace Museum as detailed below[78]:

| Date | | Amount |
|---|---|---|
| 02/20/2013 | $ | 150,000.00 |
| 09/09/2013 | $ | 68,000.00 |
| 07/18/2014 | $ | 175,000.00 |
| 06/22/2015 | $ | 200,000.00 |
| 08/31/2015 | $ | 225,000.00 |
| 03/30/2016 | $ | 100,000.00 |
| | $ | 918,000.00 |

One client, Michael Straus, purchased seven pieces of art totaling $743,000, representing five of the above deposits. The letterhead on the invoices for the Michael Straus purchases indicated that the artwork was being sold by Ace Gallery, Ace Gallery New York and Ace Gallery Los Angeles. None of the invoices' letterhead made any reference to Ace Museum, yet the funds were deposited directly into Ace Museum's bank account. Another client, Andrea Nasher, bought a piece of art for $175,000 on an invoice with the letterhead indicating it was being sold by Ace Gallery New York with no mention of Ace Museum. Debtor had contracts with artists who created the artwork on these invoices, therefore, in my opinion the entire $918,000 was Debtor's money and should have been deposited into Debtor's bank accounts.

Check paid to and deposited into 400 S. La Brea, LLC's Bank Account

On March 30, 2016, two pieces of art, created by artists with signed contracts with Debtor, were sold to a client for $200,000 on a Debtor's invoice with the Ace Gallery Los Angeles

[78] Exhibit C – Debtor's Art Sales Deposited into Ace NY, Ace Museum, and 400 S. La Brea, LLC. BRG's detailed listing of Debtor's art pieces sold and accounts sales proceeds were deposited into.

letterhead. There is correspondence with instructions to the client to make one check payable to 400 S. La Brea, LLC, for $114,595.32 and one check payable to Ace Gallery for $85,404.68.[79] The 400 S. La Brea, LLC, mortgage statement indicates that the $114,595.32 was received by 400 S. La Brea, LLC, on 04/01/2016.[80] Therefore, I am of the opinion that the entire $114,595.32 was Debtor's money and should have been deposited into Debtor's bank accounts.

**B) $3,042,240 of DIP Loan Borrowing and additional Debtor borrowings were deposited into other than Debtor's bank accounts from Petition Date to Plan Agent Start Date.**

Debtor received court approval for loans in the amount of $1,575,000 from Eric Wilson, which were supposed to be deposited into a trust account and used to "cure" a Debtor lease obligation.[81] As described above, deposits into the bank accounts of Debtor, Ace Museum, Ace Gallery NY, Inc., and Ace Gallery NY Corporation were analyzed. It was found in the detailed review of the bank accounts that the DIP Loan borrowings meant to be used by Debtor were not deposited into Debtor's bank accounts. There were also other loans procured from Eric Wilson in excess of the court approved borrowings of $1,575,000. Eric Wilson loaned money to Debtor in seventeen different payments, 9 of which totaling $916,822 went directly into Ace Museum's CNB bank account #6347 and 8 of which totaling $2,614,862 were deposited into Ace NY's CNB bank account #0229 totaling $3,531,684 (net $3,042,240 as explained below).[82]

---

[79] Exhibit Y - See 00031.

[80] Exhibit Z – 400 SLB 003356 / Exhibit X – 492 from the Declaration of Timothy Kincaid dated October 19, 2017.

[81] Exhibit AA – Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant To 11 U.S.C. § 364(c)(2) AND (3).

[82] Exhibit D – BRG's DIP and Other Loans analysis.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Eric Wilson issued a declaration in which he believed that all the funds he was loaning to Debtor were being used for the benefit of Debtor even if he was instructed to wire the money to an Ace NY or Ace Museum account.[83] Therefore, it is my opinion that the entire $3,531,684 belonged to Debtor and should have been deposited into a Debtor bank account.

Transfers back to Debtor's accounts

The above analysis shows all the money that should have been deposited into Debtor's bank accounts but does not reflect monies that were transferred back to Debtor or between Ace NY and Ace Museum. The "round tripping" of Debtor's monies was described in my declaration dated March 6, 2019, that was filed with the court in support of Plan Agent's motion and confirmed by the Court's Memorandum Decision dated December 6, 2019.[84] Debtor's money was deposited into other accounts for art sales, DIP loan proceeds and other borrowings from Eric Wilson were deposited into Ace NY and Ace Museum's bank accounts, and a payment by an art purchaser was paid directly to 400 S. La Brea, LLC. Money was transferred back to Debtor, which I assumed were Debtor's funds. Many times, money coming from Ace Museum was recorded as a reduction of the amount Ace Museum owed Debtor. I am including all transfers back to Debtor regardless of the characterization in Debtor's financial statements. Therefore, I have prepared an analysis of the net amount of Debtor's money that did not make it back into Debtor's bank accounts:

| Deposits of Debtor's art sales proceeds into: | |
|---|---|
| Ace Gallery New York Corporation and Inc. | $ 14,359,941.09 |
| Ace Museum | 918,000.00 |
| 400 S. La Brea, LLC | 114,595.32 |
| | $ 15,392,536.41 |

[83] Eric Wilson Deposition dated August 9, 2018, page 2 paragraph 7.

[84] Exhibit AB – Judge Kwan's Memorandum Decision dated December 6, 2019

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| Deposits of Debtor's DIP and other loans deposited into: | | |
| Ace Museum | | 916,822.00 |
| Ace Gallery New York Corporation | | 2,614,862.00 |
| | $ | 3,531,684.00 |
| Repayments of Debtor's DIP Loans repaid from/transferred back to Debtor's accounts from: | | |
| Ace Gallery New York Corporation | | (68,257.41) |
| Ace Gallery New York Corporation | | (421,186.12) |
| | $ | (489,443.53) |
| Transfers from Debtor to: | | |
| Ace Museum | | 322,180.00 |
| Ace Gallery New York Corporation | | 20,000.00 |
| | $ | 342,180.00 |
| Transfers to Debtor from: | | |
| Ace Museum[85] | | (1,434,692.02) |
| Ace Gallery New York Corporation | | (4,533,072.77) |
| | $ | (5,967,764.79) |
| Net Debtor's Funds Not Returned | $ | 12,809,192.09 |

We included in the analysis a reduction in the amount of DIP loans and borrowings by $489,443. There were two payments to Eric Wilson from the Ace Gallery NY Corporation totaling $68,257.[86] Additionally, the approved $1,575,000 of DIP loans from Eric Wilson were supposed to be deposited into a segregated account in the name of the Borrower held in Trust by Levene,

[85] The transfers between Ace NY and Ace Museum totaled net $4,744,332 which was used by Ace Museum to pay its rent and repay the note to Debtor, which was attached to my declaration and attached hereto as Exhibit AC.

[86] Exhibit D - BRG's analysis of Debtor's DIP and other loans deposited into non-Debtor accounts.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Neale, Bender, Yoo & Brill LLP.[87] This did not occur and the funds were deposited into the Ace NY bank accounts. However, a few days later, $421,186 was transferred to the Trust identified by the court. Therefore, the amount of DIP loans and borrowings that did not make it back into Debtor's accounts or were not repaid totaled a net of $3,042,240 from Petition Date to Plan Agent Start Date.

Additionally, from Petition Date to Plan Agent Start Date, there were transfers between Debtor's accounts and the Ace NY and Ace Museum accounts. We traced[88] $342,180 in transfers from Debtor to Ace NY and Ace Museum's accounts and $5,967,764 transferred to a Debtor account from Ace NY and Ace Museum, resulting in a net of $9,766,952 in art sales that were not returned to the Debtor. Based on this analysis I am of the opinion $12,809,192 of Debtor's money was not returned to the Debtor from Petition Date to Plan Agent Start Date.

**C) Pre- and Post-Petition payments of $19,259,703 went to 400 S. La Brea, LLC, for the lease of 400 S. La Brea and 407 S. Sycamore Ave. in Los Angeles, of which $12,671,447 is Debtor's Funds**

///

///

///

///

///

///

///

[87] Notice of Motion & Motion of Debtor and DIP for Order to Obtain Financing, page 4.

[88] Exhibit AD – BRG's Transfer Analysis for Ace Museum Exhibit AE – BRG's Transfer Analysis for Ace Gallery NY Corporation.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Rent Payments to 400 S. La Brea, LLC

Based on a review of the rental statements to Ace Museum from 400 S. La Brea, LLC, from 2006 to Plan Agent Start Date coupled with an analysis of the bank records of Debtor,[89] Ace Museum, Ace NY bank accounts, 400 S. La Brea, LLC, and the 400 S. La Brea, LLC's Cathay mortgage statements, we found that $19,259,703[90] in payments on the lease were made Pre- and Post-Petition from Debtor, Ace Museum, Ace NY, directly from a customer and from Jennifer Kellen, as shown below:

| | |
|---|---|
| Debtor's Accounts | $7,911,998 |
| Ace Museum | $11,034,187 |
| AGNY | $185,525 |
| Direct Wire for Art Purchase | $114,595 |
| Cashier's Check – Jennifer Kellen | $13,398 |
| Total Paid to 400 S. La Brea, LLC | $19,259,703 |

These payments were traced directly into 400 S. La Brea, LLC's Cathay bank account #1679. Payments in the amount of $5,715,743 were made from Debtor's bank accounts from July 2006 through July 2009, before the lease was transferred to Ace Museum. Once the lease was transferred, from August 2009 to Petition Date, we found that another $5,617,588 was paid on the lease from Debtor's funds and Ace Museum's funds received from donations. The following is an example of one of many uses of Debtor's funds to pay the Ace Museum lease payment; Ace Museum's April 2010 bank statement indicates there was a wire of $350,000 on April 9, 2010, from Debtor. Days later, a $400,000 lease payment to 400 S. La Brea, LLC, (check 4059) cleared the Ace Museum bank account on April 12, 2010.[91]

---

[89] Includes several bank accounts of Debtor: La Jolla Bank, Citibank, Union Bank of California, CNB.

**90** Exhibit E – BRG's Payments to 400 S. La Brea, LLC.

[91] Exhibit AD – BRG's Transfers Between Debtor and Ace Museum.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

During the time period of from July 17, 2009, to February 18, 2013, Ace Museum repaid Debtor $1,007,313[92] from donations it received from third parties, and Ace Museum paid $3,421,334 in lease payments from donations and loans. Therefore, Pre-Petition, Debtor paid $6,904,684[93] of the lease payments of behalf of Douglas Chrismas and Ace Museum.

From Petition Date to Plan Agent Start Date, we were able to identify $7,926,371 in lease payments to 400 S. La Brea, LLC from Debtor's funds and Ace Museum donations. Post-Petition, there were many transfers from Ace NY to Ace Museum that were used by Ace Museum to pay the lease. For example, On March 19, 2015, there was a sale of a Mary Corse artwork titled *Untitled, 2010, White Flat Side with 3 Inner Bands*[94] on Ace Gallery Los Angeles letterhead invoice 1797[95] totaling $258,000. Payment for the invoice was wired into Ace Gallery NY Corporation's CNB #0229 account.[96] On the same day, there were transfers from Ace NY to Ace Museum's CNB account #6347 of $228,000 and $5,000[97], and on the same day, $226,600 was wired to 400 S. La Brea, LLC.[98]

We also found transfers between Debtor and Ace Museum that totaled a repayment to the Debtor of $1,112,512.[99] During this same time period Ace Museum received donations and loans

---

[92] Exhibit AG -BRG's Pre-Petition Transfer's Analysis

[93] $5,715,743+$5,617,588-$1,007,313-$3,421,334=$6,904,684.

[94] Exhibit AH - page form Debtor's Inventory Exhibit Binder Volume 3 (Bates ACE002214).

[95] Exhibit AI - Invoice #1797

[96] Exhibit AJ - CNB 000157, Exhibit A - 135 from the Declaration of Timothy Kincaid dated October 19, 2017.

[97] Exhibit AK - Ace Museum CNB Bank Statement

[98] Exhibit AL - CNB Wire Transfer Listing

[99] Exhibit AD -BRG's Ace Museum Transfers

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

$1,047,097.[100] Based on my review of the Ace Museum tax returns, Ace Museum did not have the income to pay for the rent for this lease. Ace Museum filed tax returns on Form 990, which are filed for public review. I am of the opinion that, of the $19,259,703 in rental payments paid to 400 S. La Brea, LLC, $12,671,447 was Debtor's funds from the sale of artwork and Debtor loans and borrowings, $6,904,684 Pre-Petition and $5,766,762 Post-Petition to Plan Agent Start Date.[101]

**D) Pre- and Post-Petition $8,536,676 paid to 400 S. La Brea, LLC, was Debtor's funds used to pay the mortgage held with Cathay Bank for 400 S. La Brea, LLC.**

Statements of the Cathay Bank mortgage secured by the property at 400 S. La Brea Ave. and 407 S. Sycamore Ave. along with the 400 S. La Brea, LLC's bank accounts[102] were reviewed for the entire time period of the Lease from 2006 through 2016. Based on our review, we were able to quantity the amount paid for the Cathay Bank mortgage secured by the leased property. The payments totaled $8,536,676, of which $6,050,673 was Pre-Petition and $2,486,003 was Post-Petition. It is my opinion that all the payments were made with Debtor's funds Pre-Petition and Post-Petition through to the date Plan Agent took over Debtor's operations.

**E) From lease inception to Plan Agent Start Date, 400 S. La Brea, LLC, distributed $10,453,292[103] to its members which would not have been possible without Debtor's payments.**

We reviewed the 400 S. La Brea, LLC, bank accounts at Cathay Bank. This appears to be the bank account used for the activities of the LLC. Based on our review, we were able to see the

[100] $7,926,371-$1,112,512-$5,766,762=$1,047,097

[101] Exhibit F - BRG's analysis of lease payments from Debtor's funds.

[102] Bates CATHAY 00001 to CATHAY 00679.

[103] Exhibit H – BRG's Distributions to Daryoush Dayan, Kamran Gharibian and Michael D. Smith.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

amount of Debtor's money paid to the LLC along with what was disbursed to its members. Based on our review the three members, Daryoush Dayan, Kamran Gharibian and Michael D. Smith received:

| | Daryoush Dayan[104] | Kamran Gharibian | Michael Smith | Total |
|---|---|---|---|---|
| Pre-Petition | $ 4,022,207.21 | $ 1,290,375.00 | $ 320,965.98 | $ 5,633,548.19 |
| Post -Petition | $ 2,277,809.80 | $ 2,079,765.00 | $ 462,170.00 | $ 4,819,744.80 |
| **Total** | $ 6,300,017.01 | $ 3,370,140.00 | $ 783,135.98 | $ 10,453,292.99 |

But for the payment of the lease payments from Debtor, the members would not have received these distributions.

**F) Debtor was insolvent and not liquid from June 2006 the through petition date of February 19, 2013.**

Debtor's tax returns and financial information were obtained for Pre-Petition period in order to evaluate the financial health of the company before the voluntary bankruptcy filing. Based on the review, there is one transaction that is an aberration wherein an option to purchase property was exercised on May 27, 2012, which resulted in a gain of $3,130,807 on the 2011 tax return. This money was not used for the operations of Debtor and was in fact transferred to Ace Museum and characterized as a loan due to Debtor. Therefore, I have removed this non-recurring amount from the analysis because it was not in the normal course of Debtor's business, which was selling

[104] This is a net number for Daryoush Dayan. He contributed $2,519,425 Pre-Petition and $672,500 Post-Petition, which has been deducted from the amount distributed to Mr. Dayan. For gross distributions, see Exhibit AM- BRG's Gross Distributions Paid to Members.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

artworks, and the monies were not used for the operations and not included in the ratio analysis described below.

Debt to-Assets Ratio

The debt-to-assets ratio shows the degree to which a company has used debt to finance its assets. Higher ratios usually indicate that a business may be at risk of defaulting on loans.[105] A debt to assets ratio greater than 1.0 (100%) means a Company has more debt than assets. Although the absolute ratio number is industry-specific, assets should not be always and entirely financed through debt.[106]

For the tax return years 2006 through 2012 (fiscal years June 2006 through May 2013) Debtor had an average debt-to-assets ratio of 1.94 (194.9%).[107] It ranged from a low of 1.54 (153.5%) in 2008 to 2.4 (240.2%) in 2010 at its highest.[108] This means Debtor had more debt than assets and was fully funded by the debt in order to stay in business. Thus, principal and interest payments used a significant amount of the company's cash flows.[109]

Debt-to-Equity Ratio

The debt-to-equity ratio measures the amount of debt capital relative to equity capital. This ratio reveals the extent to which an entity is using the debt rather than equity to fund its

---

[105] Goel, Sandeep. *Financial ratios*. Business Expert Press, 2015. Chapter 8, Concept of Solvency Ratio.

[106] Coulon, Yannick. "Key Liquidity and Solvency Ratios." *Rational Investing with Ratios*. Palgrave Pivot, Cham, 2020. 47-62.

[107] See Exhibit I-3 – BRG's Solvency Ratio Analysis (without Sale of option to purchase 5514 Wilshire).

[108] See Exhibit I-3 – BRG's Solvency Ratio Analysis (without Sale of option to purchase 5514 Wilshire).

[109] Goel, Sandeep. *Financial ratios*. Business Expert Press, 2015. Chapter 8, Concept of Solvency Ratio.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

operation.[110] Lenders and investors usually prefer low debt-equity as their interests are better protected in the event of a business decline.[111] Firms with high debt-equity ratios may not be able to attract additional capital because of weaker solvency and the likelihood of not being able to pay debt back.[112]

For the years 2006 through 2012 Debtor had an average debt-to-equity ratio of -2.22 (-222.2%).[113] Debtor's equity balance was consistently negative for the years 2006 through 2012.[114] Debtor has not historically generated sufficient net income to reverse the negative balance of retained earnings each year covered by this analysis.[115] A company with negative equity across many years means that the company is not solvent and not creditworthy.[116]

Interest Coverage Ratio

The interest coverage ratio measures the number of times a company's EBIT (earnings before interest and taxes) can cover its interest payment obligations in a period.[117] It reveals the amount of excess funding that a company still has available after it has paid off its interest

---

[110] Bragg, Steven M. *Business ratios and formulas: a comprehensive guide*. Vol. 577. John Wiley & Sons, 2012, pp. 110 – 111.

[111] Goel, Sandeep. *Financial ratios*. Business Expert Press, 2015. Chapter 8, Concept of Solvency Ratio.

[112] *Ibid.*

[113] See Exhibit I-3 – BRG's Solvency Ratio Analysis (without Sale of option to purchase 5514 Wilshire).

[114] See Exhibit I-3 – BRG's Solvency Ratio Analysis (without Sale of option to purchase 5514 Wilshire).

[115] See Exhibit I-1 – BRG's Art & Architecture's Balance Sheet.

[116] Coulon, Yannick. "Key Liquidity and Solvency Ratios." *Rational Investing with Ratios*. Palgrave Pivot, Cham, 2020. 47-62.

[117] Goel, Sandeep. *Financial ratios*. Business Expert Press, 2015. Chapter 8, Concept of Solvency Ratio.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

expense.[118] If this ratio is close to 1.0, then the company runs a high risk of defaulting on its debt, whereas any higher ratio shows that it is operating with a comfortable amount of extra cash flow that can cushion it if its business falters.[119]

For the years 2006 to 2012—without the capital gain from "Sale of Option to Purchase 5514 Wilshire" in 2011—the average interest coverage was -1.5, ranging from a low of -6.87 in 2009 to a high of 1.00 in 2007.[120] This metric indicates that Debtor is not able to cover its interest payments by its own generated income except in 2007, during which the interest payment is barely covered.

<u>Fixed Charges Coverage Ratio</u>

The fixed charges coverage ratio measures a company's ability to cover its fixed costs.[121] Fixed costs can most commonly include lease payments.[122] Lease payments, or rent expense, are the majority of Debtor's expense through the years of this analysis.[123] A ratio close to 1.0 reveals that a company must use nearly all of its cash flows to cover fixed costs and is a strong indicator

[118] Bragg, Steven M. *Business ratios and formulas: a comprehensive guide*. Vol. 577. John Wiley & Sons, 2012, pg. 103.

[119] *Ibid.* See also Goel, Sandeep. *Financial ratios*. Business Expert Press, 2015. Chapter 8, Concept of Solvency Ratio.

**120** See Exhibit I-3 - BRG's Solvency Ratio Analysis (without Sale of option to purchase 5514 Wilshire).

[121] Pignataro, Paul. *Leveraged Buyouts, + Website: A Practical Guide to Investment Banking and Private Equity*. John Wiley & Sons, 2013.

**122** *Ibid.*

**123** Exhibit I-2 – Engel Exhibit 2, "Art and Architecture Comparable P&L".

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

of future problems if sales drop to any extent.[124] A company in this position cannot afford to lose sales.[125]

For the years 2006 through 2012, and with the Capital Gain from "Sale of Option to Purchase 5514 Wilshire" in 2011, the Debtor had an average fixed charges coverage ratio of 0.54, ranged from a low of -0.68 in 2009 to a high of 1.27 in 2011.[126] Without the Capital Gain in 2011, the fixed charges coverage ratio drops to an average of 0.44, ranged from a low of -0.68 in 2009 to a high of 1.00 in 2011.[127] This metric indicates Debtor is not able to cover its rent expense by its own generated income except in 2007, during which the interest payment is barely covered.

These commonly used ratios measure a company's ability to meet its obligations with current earnings. Based on the above findings, which in all cases demonstrate Debtor's inability to meet its obligations, it is my opinion and I conclude that Debtor was insolvent for the years prior to filing its for reorganization and relief under Chapter 11 of the bankruptcy code.

**G) But for the transfer of Debtor's funds and the acceptance of these funds by 400 S. La Brea, LLC, Cathay Bank, and the members of 400 S. La Brea, LLC, Debtor was damaged by at least $12,671,447[128] plus attorney's fees of approximately $10,000,000[129] and interest of $7,764,489,[130] which totals $30,435,936.**

---

**124** Bragg, Steven M. *Business ratios and formulas: a comprehensive guide*. Vol. 577. John Wiley & Sons, 2012, pg. 52.

**125** *Ibid.*

126 See Exhibit I-4, BRG's Solvency Ratio Analysis (with Sale of option to purchase 5514 Wilshire).

**127** See Exhibit I-3 – BRG's Solvency Ratio Analysis (without Sale of option to purchase 5514 Wilshire).

**128** Exhibit F - BRG's analysis of lease payments from Debtor's funds

**129** I have been asked to assume $10,000,000 in attorney's fees have been incurred related to the Bankruptcy filing. The fees have not completely been paid and therefore, I am not calculating interest on fees.

130 Exhibit AN- BRG's Interest Calculation.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

From the inception of the lease of 400 S. La Brea Ave. and 407 S. Sycamore Ave. in Los Angeles (July 24, 2006 through April 1, 2016), 400 S. La Brea, LLC, received $19,259,703, $11,333,331 Pre-Petition and $7,926,371. In my opinion $12,671,447 was Debtor's funds.

Cathay bank received $8,536,676,[131] $6,050,673 pre-petition and $2,486,003 Post-Petition to Plan Agent Start Date, in mortgage payments secured by the properties leased by Douglas Chrisman and whose lease was transferred to Ace Museum in August 2009. The members received $10,453,292[132] in net distributions from 400 S. La Brea, LLC, $5,633,548 pre-petition and $4,819,744 Post-Petition to Plan Agent Start Date, as shown below:

| | Daryoush Dayan | Kamran Gharibian | Michael Smith | Total |
|---|---|---|---|---|
| Pre-Petition | $ 4,022,207.21 | $ 1,290,375.00 | $ 320,965.98 | $ 5,633,548.19 |
| Post -Petition | $ 2,277,809.80 | $ 2,079,765.00 | $ 462,170.00 | $ 4,819,744.80 |
| **Total** | $ 6,300,017.01 | $ 3,370,140.00 | $ 783,135.98 | $ 10,453,292.99 |

Additionally, when the Voluntary Bankruptcy was filed, Debtor paid close to $7 million dollars for expenses that were not that of the Company's, which raises the question of whether Chrismas would have had to file for Voluntary Bankruptcy. I have been asked to assume that Chrismas would not have filed for Voluntary Bankruptcy and would not have incurred at least $10,000,000[133] in attorney's fees and costs.

I have also been asked to assume calculating interest is appropriate, and to calculate interest at 7% simple interest on the amount of Debtor's money used to pay the Doug Chrismas' and Ace

[131] Exhibit G – BRG's analysis of 400 S. La Brea, LLC, mortgage payments.

[132] Exhibit H – BRG's analysis of distributions paid to the members of 400 S. La Brea, LLC.

[133] I have been asked to assume $10,000,000 in attorney's fees have been incurred related to the Bankruptcy filing. The fees have not completely been paid and therefore, I am not calculating interest on any the fees.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Museum's lease obligations which results in Pre-Petition and Post-Petition additional damages in the form of interest totaling $7,764,489[134] in damages, of which $5,433,551 is Pre-Petition and $2,330,937 is Post-Petition.

[134] Exhibit AN- BRG's Interest Calculation.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Curriculum Vitae

**Jennifer E. Ziegler, CPA, CFF, CGMA, CFE**

BERKELEY RESEARCH GROUP, LLC
2029 Century Park East, Suite 1250 | Los Angeles, CA 90067
Direct: 310.499.4853
Cell: 213.718.1379
jziegler@thinkbrg.com

## SUMMARY

Jennifer E. Ziegler, CPA, is a Managing Director and Office Director at Berkeley Research Group, Los Angeles Century City. She has provided expert testimony in numerous types of depositions, trials and litigation cases, including professional malpractice, fraudulent conveyance, breach of fiduciary duties, bankruptcy, and breach of contract matters. Jennifer consults with clients and counsel on financial, accounting, auditing, valuation, bankruptcy, and regulatory aspects of business disputes and litigation, as well as complex business disputes that involve the investigation, evaluation, and quantification of economic damages in a wide range of industries. These industries include: insurance, healthcare providers, pharmaceuticals, startups, not-for-profits, government agencies, oil and gas, and homeowners' associations.

Her expertise encompasses damages, forensic accounting, and special purpose investigations regarding accounting, auditing, fraud, internal controls, fiduciary duties, and financial disclosure issues. Her experience spans three decades, encompassing a diverse range of litigation matters, including: probate and estate disputes, shareholder and partnership disputes, post-acquisition claims, business interruption, accounting professional standards, royalty disputes, and fraud investigations.

Jennifer is a court-appointed accounting neutral, trustee, and executor. She holds certifications in Financial Forensics (CFF) and Fraud Examination (CFE). She is former chair of the California Society of CPAs, and continues to serve as chair on its Government Relations and Nominations Committee. She is a delegate for the American Institute of CPAs Council, and treasurer and board member of the LA Center for Law and Justice.

## EDUCATION

B.S., Business Administration, California State University, Northridge, 1991, Emphasis in accounting

## PROFESSIONAL AFFILIATIONS

California Society of Certified Public Accountants

Chair, 2015/2016
First Vice Chair, 2014/2015
Treasurer, 2013/2014

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Board of Directors, 2007, 2009–2017
Chair, Government Relations 2016–present
Chair, Litigation Fraud Section, 2008–2010
Vice Chair, Litigation Fraud Section, 2006–2008
Chair, Los Angeles Chapter Litigation Section, 2006–2009
Forensic Services Section, Steering Committee 2006–2012, 2016–2/2018
Council Member, 2007–present
CEO Search Committee–2018

American Institute of Certified Public Accountants -Council, 2010–2016, 2017–present, and Nominations Committee, 2018–present

Los Angeles Center for Law and Justice, Board Member March 2016–present, Treasurer 2017–present, CEO Search Committee - 2019

Mental Health Systems, Inc. – acting CFO 2016 - Board member January 2017 to February 2018

Reading is Fundamental of Southern California – Past President and Chair of the Board, Past Treasurer and Investment Committee member.

Certified Public Accountant (CPA), licensed in California, 1996, and Oregon, 2016

Certified in Financial Forensics (CFF)

Chartered Global Management Accountant (CGMA)

Certified Fraud Examiner (CFE)

Certified Information Technology Professional (CITP)

**LITIGATION EXPERT TESTIMONY (last four years)**

Harry D. McGovern vs. Jim Carter, M.C.M. CONSTRUCTION, INC., Sacramento County Superior Court, Case No. 34-2015-00187051, Deposition May 2019 and Trial July 2019

Louis Barbaccia, Sr. et al vs GBR Magic Sands MHP, LLC, Santa Clara County Superior Court, Case No. 17-CV-313947, Deposition March 2019 and Trial April 2019

Cesar Baez vs. Pension Consulting Alliance, Inc., and Michael Moy, United States District Court, Central District of California, Case No. 2:17-cv-1938, Written Reports issued January and February 2018

JSC VTB Bank vs. Igor Mavlyanov, Stella Mavlyanova, Ilio Mavlyanov, 18016 Boris Properties, LLC, 2710 Bowman, LLC, Jasper Partner Inc., Jasper Venture Group, LLC, Jasper California LLC, Superior Court of the State of California, Los Angeles County, Case No. BC 624195, Deposition January 2018

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Kivel vs. McInerney, Superior Count of California, Deposition August and September 2017

EMSI Acquisition, Inc. et al, Superior Court of Chicago, Arbitration Decision issued July 15, 2016

S.E. Funeral Homes of California Inc. v. The Roman Catholic Archbishop of Los Angeles, Los Angeles County Superior Court, Case No. BC 559142, Deposition June 2016

County of San Diego Cure Notice to Mental Health Systems, Inc., Written Reports issued May and June 2016

Correa vs. City of San Jose, et al. United States District Court, Northern District of California, Case No. CV12-05436, Written Report September 2013, Trial April 2016

Anton et al. v. Barbich Hooper et al., Superior Court of Kern County, Case No. S-1500-CV-281077-SPC, Deposition February 2016

Ronald Kirsh vs. Andrew Kirsh, ATK et al., Los Angeles County Superior Court, Case No. BC 530501, Deposition January 2015 and Trial October 2015

CSMC 2006-C5 Office 4545, LLC vs Vinod K. Gupta, United States Central District Court, Case No.: CV2:14-cv-04796 DSF-CW, Written Report July 2015 and Deposition September 2015

Marik et al. vs University Village Building, B LLC, Los Angeles County Superior Court, Case No. BC 540131, Deposition May 2015 and Trial November 2015

## PREVIOUS POSITIONS

Hemming Morse, Inc., and Hemming Morse, LLP

Litigation Director and Partner, May 2007–January 1, 2013

Gursey, Schneider & Co. LLP

Partner, January 2006–May 2007
Senior Manager, November 1, 1998–December 2005

KPMG Peat Marwick, LLP

Manager 1997–October 31, 1998
Senior, 1996
Staff, 1993–1995

UCLA Internal Audit Department - Assistant Auditor 1992–1993

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

RON BENDER (SBN 143364)
BETH ANN R. YOUNG (SBN143945)
KURT RAMLO (SBN 166856)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: rb@lnbyb.com; bry@lnbyb.com; kr@lnbyb.com; kjm@lnbyb.com

FILED & ENTERED

AUG 30 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell DEPUTY CLERK

Attorneys for Chapter 11 Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
(LOS ANGELES DIVISION)

| | |
|---|---|
| In re:<br><br>ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY, dba ACE GALLERY,<br><br>Debtor and Debtor in Possession. | Case No. 2:13-bk-14135-RK<br><br>Chapter 11<br><br>**ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)(2) AND (3)**<br><br>Date: August 28, 2013<br>Time: 1:30 p.m.<br>Place: Courtroom 1675<br>255 East Temple Street<br>Los Angeles, California 90012 |

//

//

//

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

On August 28, 2013, at 1:30 p.m., this Court held a hearing on the motion (the "Motion") filed by Art and Architecture Books of the 21st Century, dba Ace Gallery, Chapter 11 debtor and debtor in possession in the above-entitled bankruptcy case (the "Debtor"), for entry of an order authorizing the Debtor to borrow up to $1,575,000 from Wilson Administrative Services, LTD ("WASL"), on a secured basis pursuant to 11 U.S.C. § 364(c) (2) and (3), upon the terms and conditions set forth in the Motion for the purpose of funding "cure" payments and providing adequate assurance of future performance required by this Court in connection with the Debtor's assumption, pursuant to 11 U.S.C. § 365, of the Debtor's non-residential real property leases in which the Debtor is the lessee for the premises located at 5500 Wilshire Blvd., Los Angeles, California (the "AERC Property") and the premises located at 9430 Wilshire Blvd., Beverly Hills, California (the "Beverly Hills Property"). Appearances were made at the hearing on the Motion as set forth on the record of this Court.

In considering the approval of the Motion, the Court reviewed and considered (1) the Motion and all of the pleadings filed by the Debtor in support of the Motion, (2) the opposition to the Motion filed by creditor Ben Jewelry, Inc. ("BJI"), (3) the opposition to the Motion filed by the Official Committee of Unsecured Creditors (the "Committee"), (4) the opposition to the Motion filed by AERC Desmond's Tower, LLC ("AERC") which is the lessor of the AERC Property, (5) the Debtor's reply filed to the three oppositions, (6) the stipulation entered into between the Debtor, WASL and the Committee which resolved the Committee's opposition, (7) the terms of the agreement reached between BJI and the Debtor which were read on to the record of the Court which resolved BJI's opposition, (8) the Declaration of Eric Wilson filed in support of the Motion, (9) the record in this case, and (10) the statements, arguments and representations of the parties made at the hearing on the Motion. After reviewing and considering the foregoing, and good and sufficient cause appearing therefore,

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

THIS COURT HEREBY FINDS AND ORDERS as follows:

1. The Motion is granted subject to the terms and modifications set forth herein.

2. The Debtor is authorized to borrow up to $1,575,000 from WASL (the "DIP Loan") on a secured basis in accordance with the terms of this Order and the DIP Loan Term Sheet attached as Exhibit "1" to this Order (the "DIP Loan Term Sheet"). Obtaining the DIP Loan in accordance with the terms of this Order and the DIP Loan Terms Sheet is supported by the Committee and is in the best interests of the Debtor's estate.

3. The collateral that WASL shall receive to secure the Debtor's obligations to WASL on account of the DIP Loan shall be limited to all artwork owned by the Debtor by the artists John Millei and Mary Corse as scheduled by the Debtor in its June, 2013 Inventory and all proceeds thereof ("Artwork Collateral"), provided, however, that the Artwork Collateral shall not include any art by these artists which has previously been consigned to the Debtor.

4. In connection with obtaining the DIP Loan, the Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution, recordation or filing of security agreements, mortgages and financing statements), necessary for the Debtor's performance under the DIP Loan.

5. As security for the DIP Loan, effective and perfected upon the entry of this Order and without the necessity of the execution, recordation of filings by the Debtor or WASL of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, WASL shall be deemed to have a first priority valid and perfected lien upon and against all of the Artwork Collateral, subject only to any currently existing valid and perfected lien against the Artwork Collateral and to the Adequate Protection Liens described in paragraph 12 of this Order.

//

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

6. Upon WASL's funding of the DIP Loan, WASL shall be deemed to have an allowed, prepetition, general unsecured claim against the Debtor in the minimum amount of $3,030,000, without prejudice to WASL asserting that it has a claim that is greater in amount (which WASL claims to have and which is evidenced by the Amended Proof of Claim filed by WASL in the amount of $8,322,408.21 on July 15, 2013, appearing on the Claims Register in this case as Claim #17-2) or the Committee asserting that the allowed, general unsecured claim of WASL should not be more than $3,030,000.

7. Except as provided in this Order, upon WASL's funding of the DIP Loan, WASL and its officers, directors, shareholders, employees, and agents shall be deemed released from any and all claims, known or unknown, held by the Debtor and any successor to the Debtor, including but not limited to, any Trustee that may be appointed in this case, as against each or any of them.

8. By October 14, 2013 (the "Committee Objection Deadline"), the Committee may file written objections to any portion of WASL's claim that exceeds $3,030,000. If such objections are not filed by the Committee Objection Deadline, all such objections shall be deemed waived and WASL shall be deemed to have an allowed, general unsecured claim against the Debtor in the amount of $8,322,408.21. The Committee is hereby provided standing to file an objection to the unsecured claim of WASL by the Committee Objection Deadline.

9. WASL and the Debtor shall work in cooperation with the Committee to provide the Committee with whatever information the Committee reasonably requests, provided that WASL and/or the Debtor have in their possession or have access to the information being requested, in order that the Committee may investigate WASL's unsecured claim.

10. The Debtor and the DIP Lender shall have the right to enter into such additional loan documentation containing terms customary for commercial transactions of this type ("DIP Loan Documentation") provided that the terms of such DIP Loan Documentation must be

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

consistent with the terms of this Order and the DIP Loan Term Sheet attached hereto as Exhibit "1". The Debtor shall file copies of the Loan Documentation with this Court within twenty-four hours after the Loan Documentation has been executed by the Debtor and the DIP Lender. Any party in interest shall have the right to file an objection with this Court on regular twenty-one days notice to any provision of the DIP Loan Documentation which is inconsistent with or unauthorized by the terms of this Order and the DIP Loan Term Sheet attached hereto as Exhibit "1". Notwithstanding the filing or outcome of any such objection, and except as to any terms determined by this Court to be inconsistent with or unauthorized by the terms of this Order and the DIP Loan Term Sheet, WASL shall be entitled to all of the protections set forth in 11 U.S.C. § 364(e) with respect to, and WASL shall be secured by a perfected lien against all of the Artwork Collateral on account of, all advances made by WASL to the Debtor on account of the DIP Loan.

11. This Order shall have no effect upon (i) the validity or priority of any lien held by BJI or any collateral of BJI, (ii) the proof of claim filed by BJI, or (iii) the proceeds of any sale of any collateral of BJI. This Order shall not cause or result in any subordination of any of BJI's lien or claim or to the proceeds of the sale of any collateral of BJI.

12. This Order shall have no effect upon the "Stipulation Between The Debtor And AERC Desmond's Tower, LLC Regarding Adequate Protection And Related Matters" previously entered into between the Debtor and AERC and approved by this Court (the "AERC Adequate Protection Stipulation") or the adequate protection liens granted to AERC in the AERC Adequate Protection Stipulation (the "Adequate Protection Liens"). The lien granted to WASL to secure the Debtor's obligations under the DIP Loan shall be junior to the Adequate Protection Liens.

13. The proceeds of the DIP Loan may only be used by the Debtor for the following purposes: (i) to pay the agreed upon cure amount of $452,171.15 to the landlord of the Beverly Hills Property in connection with the Debtor's assumption of the Debtor's non-residential real

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

property lease for the Beverly Hills Property, (ii) to pay the reasonable attorneys' fees and expenses of counsel to WASL, with such reasonable attorneys' fees and expenses not to exceed $75,000, (iii) to pay any sums owing by the Debtor to AERC pursuant to 11 U.S.C. § 365(b)(1)(A) and 11 U.S.C. § 365(b)(1)(B) as ordered by the Court in connection with the Debtor's assumption of the Debtor's non-residential real property lease for the AERC Property (the "AERC Property Lease"), and (iv) to deposit the balance of any proceeds of the DIP Loan into a segregated account to be used solely to secure the Debtor's post-assumption obligations to AERC under the AERC Property Lease.

14. Nothing herein shall be deemed a waiver of any right that may exist on behalf of WASL to compel AERC to marshal its collateral.

15. In the event of any inconsistency between the DIP Loan Term Sheet and this Order, the terms and provisions of this Order shall govern.

IT IS SO ORDERED.

###

Date: August 30, 2013

Robert Kwan
United States Bankruptcy Judge

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**DEBTOR-IN-POSSESSION FINANCING TERM SHEET**

| | |
|---|---|
| **DIP Lender:** | Wilson Administrative Services, LTD |
| **Borrower/Debtor:** | Art and Architecture Books of the 21st Century dba Ace Gallery |
| **Loan:** | A loan made available to the Debtor in the principal amount of up to $1,575,000 (the "**DIP Loan**").<br><br>On the Closing Date, the full amount of the DIP Loan shall be deposited into a segregated account in the name of the Debtor held in trust by Levene, Neale, Bender, Yoo & Brill L.L.P. (the "**DIP Loan Account**"). |
| **Closing Date:** | On or before September 4, 2013. |
| **Maturity Date:** | The maturity date (the "**Maturity Date**") of the DIP Loan shall be the earlier of December 31, 2015 or the date the Debtor consummates a sale of the real property located at 9430 Wilshire Blvd., Beverly Hills, CA. The DIP Loan shall be due and payable in its entirety on the Maturity Date. No payments shall be required prior to the Maturity Date. |
| **Use of DIP Loan:** | The funds in the DIP Loan Account shall be used by Borrower only for the purpose of providing "cure" payments and adequate assurance of future performance pursuant to 11 U.S.C.§ 365 in connection with the Debtor's assumption of real property leases in which the Debtor is the lessee and to pay counsel for the DIP Lender as set forth below, all as provided in the DIP Loan Order. |
| **Interest Rate:** | The DIP Loan will bear interest at the rate of 8% per annum. |
| **Expenses of DIP Lender:** | The Borrower shall pay, out of the DIP Loan, the DIP Lender's reasonable attorneys' fees and expenses in connection with the DIP Loan, not to exceed $75,000. |
| **Voluntary Prepayments:** | There will be no prepayment penalty for any voluntary prepayment of the DIP Loan. |
| **Collateral:** | All amounts owing by the Borrower under the DIP Loan will be secured by a perfected first-priority security interest in and lien on all artwork owned by the Debtor by the artists John Millei and Mary Corse ("Artwork |

**EXHIBIT "1"**

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| | Collateral"), as scheduled by the Debtor in its June, 2013 Inventory ("Inventory"), subject only to any currently-existing valid and perfected lien and provided however that the Artwork Collateral shall not include any art by these artists which has previously been consigned to the Debtor, and subject to the Adequate Protection Liens in favor of AERC as provided in the DIP Loan Order. The security interest and lien shall extend to any proceeds of any sale of the Artwork Collateral. The Debtor shall be authorized to use such "cash collateral" in the ordinary course of its business pursuant to 11 U.S.C. § 363(c)(2)(A). |
| **Other Terms:** | The DIP Lender shall have an allowed general unsecured claim against the Debtor in the amount of at least $3,030,000, and the Debtor shall affirm that the Debtor has no claims against the DIP Lender or its officers, directors, shareholders, employees or agents, and that any such unknown claims or otherwise are hereby released upon receipt of the DIP Loan. |
| **Documentation:** | The Parties shall prepare and execute additional documentation containing terms customary for commercial transactions of this type and as are reasonably acceptable to the Debtor and the DIP Lender. |
| **Governing Laws:** | The laws of the State of California with any dispute to be resolved by the Bankruptcy Court. |

**EXHIBIT "1"**

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled: **ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)(2) AND (3)** was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of **August 30, 2013**, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

☒ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Debtor:
Art and Architecture Books of the 21st Century
5514 Wilshire Blvd
Los Angeles, CA 90036

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9021-1.1.NOTICE.ENTERED.ORDER**

2

USAO_00014110

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Jason Balitzer on behalf of Interested Party Courtesy NEF
jbalitzer@sulmeyerlaw.com

Ron Bender on behalf of Debtor Art and Architecture Books of the 21st Century
rb@lnbyb.com

Ron Bender on behalf of Plaintiff Art and Architecture Books of the 21st Century
rb@lnbyb.com

Bruce Bennett on behalf of Interested Party Courtesy NEF
bbennett@jonesday.com

Carol Chow on behalf of Creditor AERC Desmond's Tower, LLC
CChow@Stutman.com

Marina Fineman on behalf of Creditor AERC Desmond's Tower, LLC
mfineman@stutman.com

Michael F Frank on behalf of Creditor Ben Jewelry, Inc.
mfrankatty@aol.com

Thomas M Geher on behalf of Debtor Art and Architecture Books of the 21st Century
tmg@jmbm.com, we1@jmbm.com;fc3@jmbm.com

Eric D Goldberg on behalf of Creditor AERC Desmond's Tower, LLC
egoldberg@stutman.com

Asa S Hami on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
ahami@sulmeyerlaw.com

Asa S Hami on behalf of Interested Party Courtesy NEF
ahami@sulmeyerlaw.com

Asa S Hami on behalf of Interested Party Courtesy NEF
ahami@sulmeyerlaw.com

Mary D Lane on behalf of Interested Party Courtesy NEF
mal@msk.com, mec@msk.com

Daniel A Lev on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com

Sidney P Levinson on behalf of Creditor AERC Desmond's Tower, LLC
slevinson@jonesday.com, kfloyd@ecf.inforuptcy.com;kfloyd@jonesday.com

Alvin Mar on behalf of U.S. Trustee United States Trustee (LA)
alvin.mar@usdoj.gov

Krikor J Meshefejian on behalf of Debtor Art and Architecture Books of the 21st Century
kjm@lnbrb.com

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Krikor J Meshefejian on behalf of Plaintiff Art and Architecture Books of the 21st Century
kjm@lnbrb.com

Alan I Nahmias on behalf of Creditor Wilson Administrative Services, Ltd.
anahmias@mbnlawyers.com, jdale@mirmanbubman.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbnlawyers.com, jdale@mirmanbubman.com

Christine M Pajak on behalf of Creditor AERC Desmond's Tower, LLC
cpajak@stutman.com

Christine M Pajak on behalf of Defendant AERC DESMONDS TOWER, LLC, a Delaware limited liability company
cpajak@stutman.com

Christine M Pajak on behalf of Interested Party Courtesy NEF
cpajak@stutman.com

Danielle A Pham on behalf of Creditor AERC Desmond's Tower, LLC
dpham@stutman.com, daniellepham@gmail.com

Danielle A Pham on behalf of Defendant AERC DESMONDS TOWER, LLC, a Delaware limited liability company
dpham@stutman.com, daniellepham@gmail.com

Kurt Ramlo on behalf of Debtor Art and Architecture Books of the 21st Century
kr@lnbyb.com, marla@lnbyb.com

Kurt Ramlo on behalf of Plaintiff Art and Architecture Books of the 21st Century
kr@lnbyb.com, marla@lnbyb.com

Christopher O Rivas on behalf of Creditor Estate of Pentti J.K. Kouri
crivas@reedsmith.com

Christopher O Rivas on behalf of Interested Party Courtesy NEF
crivas@reedsmith.com

Victor A Sahn on behalf of Attorney OFFICIAL COMMITTEE OF UNSECURED CREDITORS
vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com,asokolowski@sulmeyerlaw.com

Victor A Sahn on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com,asokolowski@sulmeyerlaw.com

Victor A Sahn on behalf of Interested Party Courtesy NEF
vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com,asokolowski@sulmeyerlaw.com

Victor A Sahn on behalf of Interested Party Courtesy NEF
vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com,asokolowski@sulmeyerlaw.com

Michael C Schneidereit on behalf of Interested Party Courtesy NEF
mschneidereit@jonesday.com, jhchase@jonesday.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Steven Werth on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com;slee@sulmeyerlaw.com

Beth Ann R Young on behalf of Debtor Art and Architecture Books of the 21st Century
bry@lnbyb.com

Beth Ann R Young on behalf of Plaintiff Art and Architecture Books of the 21st Century
bry@lnbyb.com

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



FILED & ENTERED

DEC 06 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

ART & ARCHITECTURE BOOKS OF THE 21st CENTURY, a California corporation,

Reorganized Debtor.

Case No. 2:13-bk-14135-RK

Chapter 11

**MEMORANDUM DECISION ON: (I) MOTION OF DOUGLAS CHRISMAS FOR ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND BANKRUPTCY CODE SECTIONS 105 AND 1142; AND (II) MOTION OF PLAN AGENT SAM S. LESLIE FOR PROTECTIVE ORDER RE: 2004 EXAMINATION REQUESTED BY DOUGLAS CHRISMAS**

Pending before the court are: (1) the Motion of Douglas Chrismas ("Chrismas") for Order pursuant to Bankruptcy Rule 2004[1] and Bankruptcy Code[2] Sections 105 and 1142 ("Rule 2004 Motion"), filed on January 29, 2019, Electronic Case Filing ("ECF") Number 2423; and (2) the Motion of Plan Agent Sam S. Leslie ("Plan Agent") for Protective Order Re: 2004 Examination requested by Douglas James Chrismas ("Protective Order Motion"), filed on April 17, 2019, ECF 2445. The court has held multiple hearings on these motions, which were ongoing. The last scheduled hearing was for November 21,

[1] "Bankruptcy Rule 2004" refers to Federal Rule of Bankruptcy Procedure ("FRBP") 2004.

[2] "Bankruptcy Code" refers to Title 11 of the United States Code, 11 U.S.C.

USAO_00014114

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

2019, which the court vacated upon application of the Plan Agent, which is further discussed below.

In the Rule 2004 Motion, Chrismas requested the entry of an order compelling the Reorganized Debtor Art and Architecture Books of the 21st Century to produce documents in response to his 22 requests for production and the Plan Agent to appear for oral examination. Chrismas requested the order on grounds that as a party in interest[3], he is entitled to relevant information about the performance of the Reorganized Debtor under the confirmed reorganization plan. According to the Rule 2004 Motion, Chrismas seeks information about the post-confirmation Debtor to make an informed decision whether to "give up on the plan" and/or pursue other options, such as moving to remove the Plan Agent, converting the case, or exercising his right under the plan to move for approval of a "Transaction"[4] in lieu of continuing post-confirmation operations of the Reorganized Debtor by the Plan Agent[5].

---

[3] Under 11 U.S.C. § 1109(b), "[a] party in interest, including . . . an equity security holder . . . may raise and may appear and be heard on any issue in a case under this chapter." Chrismas is a party in interest based on his status as: (i) the post-confirmation equity interest holder of the Reorganized Debtor under the confirmed plan of reorganization, and (ii) a creditor, because he holds a scheduled priority wage claim of $5,000 and a scheduled general unsecured claim of $286,311.06 for an alleged loan. *See* Second Amended Plan of Reorganization of the Official Committee of Unsecured Creditors as Modified (the "Plan"), ECF 1859 at 16 (the Plan providing for the "Replacement Share" as: "The single share of stock in the Post-Confirmation Debtor issued to the Plan Trust that will be held by the Plan Trust for the benefit of Chrismas."); Complaint, *Official Committee of Unsecured Creditors v. Chrismas, et al.,* Adv. No. 2:15-ap-01680-RK (alleging Chrismas as having scheduled claims and seeking their disallowance or equitable subordination). The Plan also defined "Chrismas" as: "Douglas Chrismas, the President and sole shareholder of the Debtor." ECF 1859 at 8.

[4] Pursuant to Sections 5.21 and 5.22 of the Plan: "If Chrismas presents a proposed transaction to the Plan Agent after the Effective Date, and the Plan Agent after seven calendar days does not agree to the transaction, Chrismas may file a motion with the Bankruptcy Court for authority to consummate the transaction on behalf of the Post-Confirmation Debtor, which motion shall be served on all interested parties including AERC and its bankruptcy counsel. At the hearing on approval of the transaction, the standard to be applied by the Court is (a) whether the transaction will result in the occurrence of a Solvency Event, or (b) if a Solvency Event will not result, whether the transaction is in the best interests of unsecured creditors and the Post-Confirmation Debtor." The Plan, ECF 1859 at 46-47 (§§ 5.21, 5.23).

[5] In the Rule 2004 Motion, Chrismas framed the issue of the Reorganized Debtor's post-confirmation performance under the Plan Agent's supervision as follows: "On April 6, 2016, the Post-Confirmation Debtor was to pay Administrative Claims in full. Almost three years later, this still has not happened. Meanwhile, under the sole control of Sam Leslie, the Post-Confirmation Debtor's administrative insolvency has deepened markedly as it operates the gallery at a loss and incurs substantial fees in pursuit of uncertain litigation recoveries. As of November 2018, the Post-Confirmation Debtor has incurred more than $5.6

(Continued...)

On February 5, 2019, the Plan Agent filed a written opposition to the Rule 2004 Motion, requesting that the motion be denied in its entirety and arguing that the motion was filed to harass or burden the Reorganized Debtor and not to propose any legitimate transaction in the best interests of creditors. ECF 2426. Specifically, the Plan Agent argued that the Rule 2004 Motion was an attempt by Chrismas to stop the Plan Agent's fraud litigation against him in pending adversary proceedings[6] and to obtain confidential sales information in furtherance of his efforts to compete with the post-confirmation Debtor. *Id.* at 1. The Plan Agent also argued that Chrismas's counterclaims in the fraud litigation, ECF 2425, mooted the motion because those claims addressed post-confirmation administration of the Reorganized Debtor by the Plan Agent, and his discovery could proceed in the adversary proceeding. *Id.* at 3-4. On February 5, 2019, Eric Wilson and his companies[7] filed a joinder in the Plan Agent's opposition to the Rule 2004 Motion. ECF 2428.

On February 12, 2019, Chrismas filed a reply to the Plan Agent's opposition, stating that he would limit his request for documents in a "reduced request" of 8 requests for production. ECF 2433 at Schedule A. The "reduced request" asked that the Reorganized Debtor produce: (i) inventories and schedules of assets; (ii) with respect to any assets sold or gifted by the Reorganized Debtor on or after the effective date of the confirmed reorganization plan, invoices and other documentation sufficient to evidence any such sale or gift; (iii) documents sufficient to evidence the validity, priority and extent

---

million in legal and accounting fees; less than half of which has been paid. Whether Mr. Leslie should continue down this perilous path is a serious question." Rule 2004 Motion, ECF 2423 at 4.

[6] *See e.g.*, Fifth Amended Complaint, *Sam Leslie, Plan Agent for Art & Architecture Books of the 21st Century v. Ace Gallery New York Corporation, a California corporation, et al.*, Adv. No. 2:15-ap-01679-RK; Complaint, *Official Committee of Unsecured Creditors v. Chrismas, et al.,* Adv. No. 2:15-ap-01680-RK.

[7] Eric Wilson is the President and sole shareholder of Wilson Administrative Services, Ltd., a Canadian corporation, and one of the largest remaining creditors of the Debtor, directly or indirectly, through his owned and controlled entities, including Wilson Administrative Services, and Telford Building, Ltd. Claims Nos. 10, 17, 33, 34. Wilson and his owned and controlled entities are referred to herein as the "Wilson Parties." The Wilson Parties are all creditors of the Debtor.

(Continued...)

USAO_00014116
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

of secured claims; (iv) accountings and reconciliations relating to artist and consignor claims; (v) documents relating to the post-confirmation Debtor's relationship with Eric Wilson and his companies; and (vi) documents relating to the Plan Agent's and LEA Accountancy LLP's[8] relationships with the Reorganized Debtor.[9]

After conducting two discovery dispute conferences, the parties filed a joint statement on March 13, 2019, regarding their outstanding disputes concerning the Rule 2004 Motion and the "reduced" list of 8 requests for production of documents. ECF 2443.[10]

At the hearing on the Rule 2004 Motion held on April 3, 2019, the court and the parties discussed scheduling of further proceedings, and the Plan Agent indicated that he intended to move for a protective order. In a stipulated order, filed and entered on April 16, 2019, the court ordered that the Plan Agent was to file and serve his motion for a protective order by April 17, 2019. ECF 2444 at ¶ 1. To address Chrismas's request in the Rule 2004 Motion for information about the status of post-confirmation performance of the Reorganized Debtor under the Plan, the court also ordered the Plan Agent to file a detailed status report by May 31, 2019, providing the court and all parties in interest with detailed information concerning the financial state of the Reorganized Debtor and its post-confirmation operations and affairs. *Id.* at ¶ 6. The court further ordered an evidentiary hearing on the status of the post-confirmation performance of the Reorganized Debtor under the administration of the Plan Agent, set for July 19, 2019, at which time the Plan Agent and other witnesses would be available to testify and be cross-examined by parties in interest, including Chrismas. *Id.* at ¶ 7.

---

[8] The Plan Agent is the managing partner of LEA Accountancy LLP, and he has engaged LEA to provide accounting services for the reorganized debtor, and in his capacity as Plan Agent, he is the client of LEA. ECF 2445 at 23; *Transcript of Testimony of Sam S. Leslie*, July 19, 2019, ECF 2513 at 50:25–51:02, 67:10–68:18.

[9] The requests in Schedule A, ECF 2433, covered these six areas of inquiry, but were separated into eight requests for production.

[10] Each of the eight requests for production is discussed and ruled upon, in sequence, below.

In the Protective Order Motion, the Plan Agent requested the issuance of a protective order to quash the discovery requested by Chrismas in the Rule 2004 Motion. ECF 2445. The Plan Agent argued that the Rule 2004 motion was brought for improper purposes and that the discovery sought is burdensome, harassing and detrimental to the Reorganized Debtor, alleging that Chrismas seeks the commercially confidential business records of the Reorganized Debtor in an effort to undermine the Debtor and Plan Agent. *Id.* 1-3, 34. However, in the Protective Order Motion, the Plan Agent offered to share with Chrismas the following information subject to appropriate measures in a protective order: (i) the Plan Agent would produce a copy of the inventory of artworks that are owned outright by the Reorganized Debtor to be maintained in the possession of Jonathan Shenson, Chrismas's counsel, but could be viewed by Chrismas in Shenson's office; (ii) to the extent that the court would not be satisfied with the disclosures in the Plan Agent's status report to be filed on May 31, 2019, the Plan Agent would provide further information to the court for in camera review, which information would be produced to Chrismas or creditors if the court determined that there would be a proper interest justifying such production; and (iii) if there would be a legitimate investor who is willing to fund a transaction to pay all creditors in full or any other material transaction that would fall within the Plan Agent's right to propose under 11 U.S.C. § 1127, the Plan Agent would agree to provide appropriate information to such investor following execution of a nondisclosure agreement. *Id.* at 33-34.

At the hearing on the Rule 2004 Motion and the Protective Order Motion on May 29, 2019, the court *sua sponte* raised the issue of applicability of the equitable doctrine of unclean hands to Chrismas's Rule 2004 Motion, and it requested the parties to address whether the doctrine applied to Chrismas and warranted denial of his Rule 2004 Motion. *Transcript of Hearing on Rule 2004 and Protective Order Motions*, May 29, 2019, ECF 2483 at [page:line] 40:08 – 42:08. As a result, the court directed the parties to file briefing

on the applicability of the doctrine. *Id.* at 53:01 – 57:06. In June and July 2019, Chrismas and the Plan Agent filed briefing[11] on the applicability of the doctrine of unclean hands.[12]

On May 31, 2019, the Plan Agent filed his status report on the post-confirmation performance of the Reorganized Debtor under the plan and his declaration in support thereof, as previously ordered by the court. ECF 2478. On July 19, 2019, the court conducted the evidentiary hearing on the status of administration of the post-confirmation Debtor, at which hearing the Plan Agent testified. *Transcript of Evidentiary Hearing*, July 19, 2019, ECF 2513. The hearing lasted a full day, but was not completed, and the court continued the hearing to September 12, 2019. *Id.* at 293:24 – 294:08. During the hearing on July 19, 2019, the Plan Agent indicated during his testimony that he was going to amend and supplement the financial data and spreadsheets that accompanied his status report filed on May 31, 2019.

On August 19, 2019, the Plan Agent filed an update to his status report filed on May 31, 2019, which included supplemental financial data and spreadsheets addressing inventory value reconciliation, secondary sales of artwork owned by Eric Wilson and presentation of the estimated recovery on the pending adversary litigation. ECF 2517. In a memorandum filed on the same date, August 19, 2019, the Plan Agent stated his position that the initial evidentiary hearing on the status of post-confirmation performance of the Reorganized Debtor and the scheduled further hearing were “beyond anything” to which Chrismas, given his own conduct, was entitled, urging that the Rule 2004 motion should be summarily denied.[13] ECF 2518.

---

[11] *See* ECF 2484 (Chrismas’s Brief on unclean hands); ECF 2485 (Plan Agent’s Brief on unclean hands); ECF 2492 (Plan Agent’s Reply Brief); ECF 2494 (Chrismas’s Reply Brief); ECF 2496 (Chrismas’s Brief regarding unclean hands and nexus requirement); ECF 2497 (Plan Agent’s Brief regarding unclean hands and nexus requirement); ECF 2498 (Plan Agent’s Reply regarding unclean hands and nexus requirement); ECF 2499 (Chrismas’s Reply regarding unclean hands and nexus requirement); ECF 2504 (Plan Agent’s Sur-Reply regarding unclean hands and nexus requirement).

[12] The Wilson Parties filed joinders in the Plan Agent’s briefing. ECF 2489; ECF 2495.

[13] The Plan Agent’s position stated in his August 19, 2019 memorandum implicitly retracts his previous offer to conditionally produce the Reorganized Debtor’s inventory of artworks to Chrismas and to provide information to a “legitimate” investor to fund a Solvency Transaction as stated in the Plan Agent’s Protective

(Continued...)

USAO_00014119
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

On September 6, 2019, the Plan Agent filed a motion for continuance of the hearing set for September 12, 2019, which the court granted, continuing the hearing from September 12, 2019 to October 24, 2019. ECF 2532. The hearing was further continued from October 24, 2019 to November 21, 2019, by stipulation and order filed and entered on September 27, 2019. ECF 2536.[14]

---

Order Motion, ECF 2445. The court construes the Plan Agent's conditional disclosure offer in the Protective Order Motion as withdrawn.

[14] There is an apparent difference in opinion between the court and the parties regarding scheduling for the Rule 2004 Motion and the Protective Order Motion, particularly with respect to the court's rulings on the motions in relation to the continued evidentiary hearing. The Rule 2004 motion was filed at the end of January 2019 and opposed in February. At the initial hearing, the Plan Agent indicated that he would seek a protective order, and the parties agreed that he would file a motion for protective order, which he did in April. ECF 2445. At the further hearing on the Rule 2004 Motion and the initial hearing on the Protective Order Motion in May 2019, the court *sua sponte* indicated that it would order the Plan Agent to file a written status report on the post-confirmation performance of the Reorganized Debtor under the plan, set an evidentiary hearing and allow examination of the Plan Agent by parties in interest to address the concerns raised by the Rule 2004 Motion. At this hearing in May 2019, the court raised *sua sponte* whether the equitable doctrine of unclean hands applied to the Rule 2004 Motion. In June and July, the parties filed extensive briefing on the applicability of unclean hands. At the June 26, 2019 hearing on the motions, the court discussed the case of *In re Everett*, 364 B.R. 711, 723 (Bankr. D. Ariz. 2007), which construed the case law as requiring a close nexus between the discovery sought and the alleged misconduct showing unclean hands, and the parties requested an opportunity to brief the close nexus issue, which they completed on July 16, 2019, three days before the July 19, 2019 evidentiary hearing. In his brief on unclean hands filed on June 19, 2019, Chrismas requested that if the court determines that it has the power to invoke the doctrine of unclean hands to the Rule 2004 motion, he urged that the court "defer making any decision here until after it has conducted its evidentiary hearing on the Post-Confirmation Debtor's finances, operations and affairs, scheduled for the July 19, 2019, because Mr. Chrismas' allegations concerning Mr. Leslie's conduct must be weighed in determining whether the doctrine applies." ECF 2494 at 2, citing, *Northbay Wellness Group, Inc. v. Beyries,* 789 F.3d 956, 960 (9th Cir. 2015) (unclean hands defense in adversary proceeding). At the time, this seemed to the court a reasonable request because the July 19, 2019 evidentiary hearing was coming up shortly thereafter and the Ninth Circuit in *Northbay Wellness Group* counseled that courts should engage in balancing when one party asserts the unclean hands defense against another party. According to the Plan Agent, the motions were taken under submission after the completion of the briefing on unclean hands and argument at the evidentiary hearing on July 19, 2019. ECF 2561. However, the July 19, 2019 evidentiary hearing was continued to September 12, 2019 because several attorneys had additional examination questions for the Plan Agent. By application of the Plan Agent and order thereon, the court continued the evidentiary hearing to October 24, 2019. By stipulation and order, the court further continued the evidentiary hearing to November 21, 2019 due to scheduling conflicts of several attorneys. The court's understanding was that the ruling on the Rule 2004 and Protective Order Motions would be made when the evidentiary hearing was concluded because the examination of the Plan Agent at the evidentiary hearing and the disclosure of financial data in his May 31, 2019 and August 16, 2019 status reports might obviate the need for further discovery by Chrismas on his document production requests. The court also understood that the evidentiary hearing testimony and Plan Agent's status reports would be sufficient information for the court to balance the parties' interests under *Northbay Wellness Group*. However, given that the evidentiary hearing was not completed on July 19, 2019 as contemplated, the continuances of the hearing have made the delay of the court's ruling on the Rule 2004 and Protective Order Motions somewhat improvident. Having said this, it has been beneficial for the court to have had time to review the information

(Continued...)

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

On November 6, 2019, the court entered an order granting an application of the Plan Agent to vacate the continued evidentiary hearing set for November 21, 2019 based on cost and equitable considerations, and given the practicalities of the situation, the court put the status of any further hearing in abeyance until other parties in interest could be heard on the Plan Agent's concerns. ECF 2563. On November 13, 2019, the Wilson Parties filed a joinder in the Plan Agent's application to vacate the continued evidentiary hearing, ECF 2565, and Chrismas filed an objection, ECF 2566.

## I. DISCUSSION

In the Rule 2004 Motion, Chrismas asserts that the motion should be granted because as a party in interest, he is entitled to relevant information about the post-confirmation performance of the Reorganized Debtor under the plan. As stated in his moving papers, Chrismas seeks information about the post-confirmation performance of the Reorganized Debtor to make an informed decision whether to "give up on the plan" and/or pursue other options, such as moving to remove the Plan Agent, converting the case, or exercising his right under the plan to move for approval of a transaction in lieu of continuing operations of the post-confirmation Debtor by the Plan Agent. At this time, the outstanding requests for information from Chrismas's Rule 2004 Motion are: (1) the 8 requests for production of documents in the "reduced request" set forth in his reply to the Plan Agent's opposition to the Rule 2004 Motion and (2) the request for an oral examination of the Plan Agent under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004").

As set forth below, the court first addresses certain principles regarding examinations under Federal Rule of Bankruptcy Procedure ("FRBP") 2004, and then discusses the parties' arguments regarding the applicability of the doctrine of unclean hands here. Finally, the court determines that based on the substantial probative evidence in support of the Plan Agent's allegations of fraud by Chrismas, the party who

---

in the Plan Agent's status reports and the testimony of the Plan Agent at the evidentiary hearing on July 19, 2019, all of which have some bearing on the court's ruling.

USAO_00014121
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

controlled the management of the prepetition and post-petition, preconfirmation Debtor, which evidence is not disputed by Chrismas in his papers, the doctrine of unclean hands applies to Chrismas's Rule 2004 Motion, which the court will deny on grounds that the undisputed evidence shows for the purposes of the Rule 2004 Motion and the Plan Agent's Protective Order Motion that Chrismas is an unclean litigant and the court should not exercise its judicial powers to grant him relief.[15]

**a. Federal Rule of Bankruptcy Procedure 2004**

On motion of any party in interest, the court may order the examination of any entity pursuant to Rule 2004(a). "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'" *In re Coffee Cupboard, Inc.,* 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing and quoting, *Cameron v. United States,* 231 U.S. 710, 717, 34 S.Ct. 244, 246, 58 L.Ed. 448 (1914) (discussing former § 21(a) of the Bankruptcy Act, from which former Bankruptcy Rule 205 and current Rule 2004 are in part derived)). "Examinations under Rule 2004 are allowed for the 'purpose of discovering assets and unearthing frauds' and have been compared to a 'fishing expedition.'" *In re Duratech Industries, Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999) (quoting *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983)); *see also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (comparing a Rule 2004 examination to a "fishing expedition").

"The scope of a Rule 2004 examination is exceptionally broad and the rule itself is 'peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure

---

[15] The court is mindful that its evidentiary determinations regarding the allegations of misconduct by Chrismas are solely for the purposes of resolving the issue of the applicability of the equitable doctrine of unclean hands to the pending Rule 2004 and Protective Order Motions. The issue of whether or not Chrismas defrauded the bankruptcy estate and creditors of the preconfirmation Debtor is raised in the Plan Agent's fraud claims in the pending adversary proceedings, and there are other parties who are litigating such claims who have not necessarily participated in the determination of the pending motions.

does.'" *In re Duratech Industries, Inc.*, 241 B.R. at 289 (quoting *In re GHR Energy Corp.*, 33 B.R. at 454). "There are, however, limits to the scope of Rule 2004 examinations. Significantly, Rule 2004 examinations may not be used for the purposes of abuse or harassment." *In re Duratech Industries, Inc.*, 241 B.R. at 283 (citing *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)). A Rule 2004 examination must be both "relevant and reasonable" and "may not be used to annoy, embarrass or oppress the party being examined." *In re Symington*, 209 B.R. 678, 685 (Bankr. D.Md.1997) (citations omitted).

"In evaluating a request to conduct a Rule 2004 examination, the court must 'balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.'" *In re SunEdison, Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 712). Moreover, "[Rule] 2004 is not a substitute for discovery authorized in either adversary proceedings or contested matters which is governed by [Rule] 9014 [relating to contested matters]." *In re Dinubilo*, 177 B.R. 932, 942 (E.D.Cal.1993) (citation omitted). This limitation of Rule 2004 by distinction with Rule 9014 is often referred to as the "pending proceeding" rule.

If an adversary proceeding or a contested matter is pending and related to the dispute at issue, then the parties to that proceeding or matter may no longer utilize the liberal provisions of Federal Rule of Bankruptcy Procedure 2004 and should utilize the discovery devices provided for in Federal Rules of Bankruptcy Procedure 7026 through 7037. *In re National Assessment, Inc.*, 547 B.R. 63, 65 (Bankr. W.D.N.Y. 2016). Courts, however, will allow a party to utilize a Rule 2004 examination when the matter is not related to the pending adversary litigation. *In re International Fibercom, Inc.*, 283 B.R. 290, 292-293 (Bankr. D. Ariz. 2002) (citations omitted).

Those courts allowing Rule 2004 examinations in pending litigation attempt to balance the expansive nature of a Rule 2004 examination, which offers limited protection to the examinee, with the more protected discovery process of the federal discovery rules.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

*See e.g.*, *In re M4 Enterprises, Inc.*, 190 B.R. 471, 475 (Bankr. N.D. Ga. 1995). The court "holds the ultimate discretion whether to permit" or deny the use of Rule 2004, and the determination is best left on a case by case basis. *In re International Fibercom, Inc.*, 283 at 292-293.

**b. <u>The Doctrine of Unclean Hands</u>**

The doctrine of unclean hands derives from the equitable maxim that "he who comes into equity must come with clean hands." *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir. 1985). This maxim "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Id.* (quoting *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945)). In applying the doctrine, "[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants." *Id.* (quoting *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir. 1963). Thus, equity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue. *Id.* (citing *Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 387, 64 S.Ct. 622, 624, 88 L.Ed. 814 (1944) and *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933)).

**i. Plan Agent's Contentions**

In his brief filed on June 12, 2019, the Plan Agent argues that Chrismas has unclean hands and should be prevented from using the Rule 2004 examination procedure to obtain any relief in this court of equity, and therefore, the court should deny Chrismas's Rule 2004 motion, or, alternatively, enter a protective order barring or quashing the discovery sought by the Rule 2004 motion. Citing *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 387 (1944), the Plan Agent asserts that it is a fundamental principle that a party seeking equitable relief must come with clean hands. 321 U.S. at 387. The Plan Agent

USAO_00014124
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

also cites and quotes *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806 (1945):

> This maxim [that a party seeking equitable relief must come with clean hands] necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion. Accordingly, one's misconduct needs not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor.

324 U.S. at 815 (citations omitted). As further asserted by the Plan Agent, "[a]lthough 'precise similarity' between plaintiff's inequitable conduct and the plaintiff's claims is not required, the misconduct 'must be relative to the matter in which [the plaintiff] seeks relief[.]'" *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F.Supp.2d 1105, 1110 (C.D. Cal. 2010) (quoting *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. at 814).

Specifically, the Plan Agent argues that the unclean hands doctrine applies here because the undisputed evidence in the record as primarily set forth in his declarations in support of his status report filed on May 31, 2019, ECF 2478, and in support of his supplemental brief on the doctrine of unclean hands, ECF 2486, and the declaration of an expert consultant retained by him, a forensic accountant, Jennifer Ziegler, Certified Public Accountant ("CPA"), ECF 2486-1, demonstrate that Chrismas engaged in fraudulent business practices as Debtor's principal immediately before this bankruptcy case was filed and during the pendency of the bankruptcy case, from the petition date to the effective date of the confirmed reorganization plan. The Plan Agent alleges that Chrismas diverted substantial sums of money belonging to the bankruptcy estate, totaling over $17 million, from the proceeds of sales of artwork owned or consigned to Debtor and the proceeds of Debtor in Possession ("DIP") financing loans, to non-debtor entities controlled by Chrismas, namely, Ace New York Corporation ("Ace NY") and Ace Museum. *Status Report and Declaration of Sam S. Leslie in Support Thereof,* ECF 2478; *Declaration of Sam S. Leslie in Support of Plan Agent's Supplemental Brief re: Unclean Hands,* ECF

USAO_00014125
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

2486 at 5-14; Declaration of Jennifer Ziegler, Exhibit 2 to the *Declaration of Sam S. Leslie in Support of Plan Agent's Supplemental Brief Re: Unclean Hands,* ECF 2486-1 at 14-123 (hereinafter, including the exhibits attached thereto, the "Ziegler Declaration").

The Plan Agent contends that the undisputed evidence described in his declarations and the Ziegler Declaration shows that diversions of estate assets during Chrismas's management and control of the preconfirmation Debtor, to his controlled nondebtor entities, were concealed from the oversight of the court and the parties in interest in this case, including the official committee of unsecured creditors, through the filing of false Monthly Operating Reports signed by Chrismas and filed on behalf of the Debtor-in-Possession and the making of other false statements by Chrismas in connection with the case.

**ii. The Plan Agent's Declarations and Ziegler Declaration**

In support of his opposition to the Rule 2004 Motion and his Protective Order Motion, the Plan Agent has filed a copy of the declaration of Jennifer Ziegler ("Ziegler"), which was first prepared and filed in support of the Plan Agent's motion to clarify the interpretation of the Plan in the adversary proceeding involving the Plan Agent's fraud claims, Adv. No. 2:15-ap-01679-RK, ECF 542, filed on March 21, 2019.[16] The Plan Agent retained Ziegler, an accountant[17], to provide forensic accounting services. Specifically,

---

[16] Citations to the Ziegler Declaration hereafter make reference to the paragraph numbers included in the original declaration, which are included on the record, ECF 2486-1 at 14-123.

[17] Ziegler is a certified public accountant (CPA) licensed to practice in California and Oregon and holds designations of CFF (Certified in Financial Forensics) and CFE (Certified Fraud Examiner). She has worked in accounting for more than 30 years, specializing in forensic accounting for over 20 years. Over the last 20 years, Ziegler has worked on hundreds of accounting matters involving many types of businesses, including insurance providers, public companies, government agencies, homeowners' associations, retailers, wholesalers and startup companies. Many of her accountancy engagements were litigation and/or forensic engagements which included matters pending in bankruptcy and probate courts, and many of the forensic engagements were like the engagement for the Plan Agent in this bankruptcy case for the purpose of tracing funds and identifying and tracking the use of funds. Ziegler is currently a managing director at the Berkeley Research Group at its Century City (Los Angeles) office. Berkeley Research Group is a global strategic advisory and expert consulting firm that provides independent advice, data analytics, authoritative studies, expert testimony, investigations, and regulatory and dispute consulting to Fortune 500 corporations, financial institutions, government agencies, major law firms and regulatory bodies around the world, and has 1,200 employees, and the firm has been recognized by Forbes Magazine on its Forbes List of Best Management

(Continued...)

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Ziegler evaluated and verified the conclusions of Timothy Kincaid ("Kincaid"), an accountant[18] and a partner at LEA Accountancy, LLP, the Plan Agent's accountancy firm, in his declaration filed in the adversary proceeding, Adv. No. 2:15-ap-01679-RK, ECF 216, filed on October 19, 2017. ECF 2486-1, Ziegler Declaration at ¶ 4.

As discussed below, the court has reviewed the testimony of the Plan Agent, Kincaid and Ziegler in their respective declarations and determines for purposes of the pending Rule 2004 Motion and the Protective Order Motion that their testimony is credible and supported by evidence that is undisputed and makes out a prima facie showing that Chrismas is an unclean litigant.

The court notes that Chrismas has had a full and fair opportunity to offer evidence to rebut the evidentiary showing by the Plan Agent that Chrismas is an unclean litigant, but Chrismas has remained silent in the face of this adverse evidence, apparently exercising his Fifth Amendment right not to give testimony which would be self-incriminating. *See Memorandum Regarding August 7, 2019 Deposition Session of Douglas Chrismas and Continued Hearing on Examination of Plan Agent,* ECF 2518, filed on August 19, 2019, at 2-4; *Transcript of Evidentiary Hearing,* July 19, 2019, ECF 2513 at 7-11, 60-64, 111-112 (internal page citations: 3-7, 57-60, 107-108) (discussions between the court and counsel regarding Chrismas's oral motion or request to quash the witness subpoena served on him by the Plan Agent to testify at the July 19, 2019 hearing based on Fifth Amendment self-incrimination concerns). Chrismas's only evidence on the issue

---

Consulting Firms for 2019. Listing for Berkeley Research Group, https://www.forbes.com/companies/berkeley-research-group (accessed on November 19, 2019). Ziegler has previously been a partner at the Gursey Schneider and Hemming Morse accounting firms and an auditor with KPMG and UCLA. She is a former chair of the California Society of CPAs, the largest state CPA society in the United States, and currently serves as a California State delegate on the American Institute of CPAs Council, the governing and standard-setting body for CPAs in the United States.

[18] As an accountant, Kincaid had provided 23 years of accounting services in private practice and for Chapter 7 and Chapter 11 bankruptcy trustees and debtors. Based on this experience, Kincaid is familiar with the interplay between accounting in and out of bankruptcy cases for individuals, corporations, limited liability companies and closely held corporations on one hand and bankruptcy estates on the other hand. Kincaid has performed numerous fraud analyses and other forensic accounting works in numerous bankruptcy and nonbankruptcy cases.

(Continued...)

of unclean hands is his three-paragraph declaration filed in support of his Brief on the Doctrine of Unclean Hands Regarding Nexus, ECF 2496, filed on July 3, 2019.[19] Chrismas's sole declaration on the issue on unclean hands was completely unresponsive to the Plan Agent's evidence of fraudulent diversions presented in the Plan Agent's declarations and the Ziegler Declaration filed on June 12, 2019 in support of the allegations of fraud.

The testimony of the Plan Agent and Ziegler in their respective declarations provides extensive detail about the alleged fraudulent diversion of assets belonging to the bankruptcy estate by Chrismas to non-debtor entities controlled by him, namely, Ace NY and Ace Museum, and the court briefly describes this testimony as it relates to the court's ruling upon the issue of the applicability of the doctrine of unclean hands to the pending Rule 2004 Motion and Protective Order Motion:

(1) On the effective date of the Plan, April 6, 2016, Chrismas told the Plan Agent that the Debtor's general operating account had no significant funds that could be used to pay payroll for Debtor's employees, which expenses were imminently due, in part because Chrismas had caused $50,000 of the Debtor's

---

[19] The Chrismas Declaration stated as follows:

> I, Douglas Chrismas, do hereby declare:
>
> 1. I am over eighteen years of age and make this declaration in support of my Motion for Order Pursuant to Bankruptcy Rule 2004 and Bankruptcy Code Sections 105 and 1142 (DKT #2423, the "Motion"). Capitalized terms not otherwise defined in this Declaration shall have the meaning ascribed to them in the Motion. Except as expressly noted, each of the facts contained in this declaration is based on my personal knowledge, and, if called as a witness to do so, I could competently testify thereto.
>
> 2. Since November 2018, I have been interested in proposing a transaction in the best interests of creditors, in accordance with Plan sections 5.21 & 5.22, in which a newly-formed, properly capitalized entity would acquire the Post-Confirmation Debtor's art assets for consideration in the form of a cash payment at closing and the elimination or satisfaction of other claims against the Debtor.
>
> 3. In order to obtain capital necessary to consummate any transaction, I need information about the Post-Confirmation Debtor's art inventories and sales.
>
> I declare under penalty of perjury that the foregoing is true and correct.
>
> Executed this 3rd day of July 2019, at Los Angeles, California.
>
> /s/ Douglas Chrismas

funds to be transferred from Debtor's account to that of Ace Museum on March 30, 2016, in order to pay rent that Ace Museum owed to its landlord, 400 S. La Brea, LLC. *Declaration of Sam S. Leslie in Support of Plan Agent's Supplemental Brief re: Unclean Hands,* ECF 2486 at ¶ 16. The Plan Agent soon learned that the amount of this March 31, 2016 diversion of estate funds to pay the rent of Ace Museum was much greater than the amount Chrismas represented to the Plan Agent on the plan effective date, as confirmed by a letter from Chrismas's then lawyer, David Shemano, to the Plan Agent's lawyer, dated April 25, 2016, stating that the amount of the diversion was $264,000. *Status Report and Declaration of Sam S. Leslie in Support Thereof,* ECF 2478 at 4, 5, 24 and Exhibit A attached thereto (April 25, 2016 letter from Shemano stating, "Sam [i.e., the Plan Agent] is correct that, on or about March 30, 2016, Douglas [Chrismas] caused Ace Gallery [i.e., Debtor's trade name] to transfer approximately $264,000 to Ace Museum. The purpose of the transfers were to enable Ace Museum to pay April rent, which was crucial at the time because Douglas was attempting to finalize the terms of a monetization event sufficient to pay Ace Gallery creditors in full."). This diversion meant that the Reorganized Debtor had no operating funds on the effective date of the plan— April 6, 2019—that would allow the Plan Agent to operate the postconfirmation business of the Reorganized Debtor, causing the Plan Agent to seek a line of credit from the primary unsecured creditor, Eric Wilson, to address necessary operational expenses and the many outstanding legal matters of the case. *Status Report and Declaration of Sam S. Leslie in Support Thereof,* ECF 2478 at 4, 5, 24 and Exhibits A and C attached thereto*; see also, Transcript of Testimony of Sam S. Leslie*, July 19, 2019, ECF 2513 at 48:10–54:17. This evidence supporting the Plan Agent's fraud allegations is not disputed by Chrismas, and this undisputed evidence supports the Plan Agent's allegations that Chrismas emptied the coffers of the bankruptcy estate of over a quarter of a million dollars immediately before the turnover of control of the estate, which

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

deprived the Plan Agent of any operating funds to manage the Reorganized Debtor. This undisputed evidence, by itself, supports application of the doctrine of unclean hands here.

(2) In assisting the Plan Agent in this bankruptcy case, Kincaid's responsibilities included review of all Debtor, Ace NY, and Ace Museum bank records, sales invoices and other financial and business records, the vast majority of which were housed with Debtor's records. In conducting a forensic review of Debtor's records, Kincaid prepared, among other work product, a spreadsheet based on information contained in those records that documented all of the artwork sales of Debtor's owned and consigned artwork between the petition date of February 19, 2013 and the plan effective date of April 6, 2016, for which Ace NY received the sales proceeds. ECF 216, Adv. No. 2-15-ap-01679-RK. The spreadsheet documented which sales were made according to invoices in the name of the Debtor or Ace NY, the date of the invoice, the name of the purchaser, the name of the artist who created the artworks, and the sales price received by Ace NY or Debtor, among other things, which enabled Kincaid to calculate various amounts, including the total amount of sales proceeds that Ace NY received for Debtor's artworks prior to the effective date and the total amount of sales proceeds received by Ace NY for particular artists. *Id.* Based on his analysis of the Debtor-in-Possession's financial books and records during the preconfirmation phase of the bankruptcy case (i.e., from the petition date to the plan effective date), Kincaid concluded that $14,275,813.50 in proceeds of sales of artwork[20] that should have been deposited in the Debtor-in-Possession's bank accounts were instead deposited into the bank accounts of Ace NY, a shell corporation newly formed by Chrismas before Debtor's bankruptcy case. Kincaid also concluded that some of

[20] The sales Kincaid documented included sales of artworks by artists with whom the Debtor had an exclusive contractual relationship, sales that represented business opportunities that were property of the Debtor, and sales from secondary art sales organized by one of the Debtor's customers in which the Debtor's location and staff were used. ECF 216, Adv. No. 2-15-ap-01679-RK.

USAO_00014130
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

these proceeds were improperly transferred to Ace Museum, another entity controlled by Chrismas, rather than properly returned to Debtor. *Id*. Kincaid stated that his review of Debtor's and Ace NY's business records, including sales invoices and records of commissions due, showed that the sales of Debtor's artworks resulting in the diversion of its funds to Ace NY were carried out by employees and principals of Debtor, including Chrismas and his wife, Jennifer Kellen, and that the sales of artwork were facilitated, shipped and crated by Debtor's employees and stored and shown in Debtor's premises. *Id.*

(3) As described in the Plan Agent's Supplemental Brief re: the Doctrine of Unclean Hands, ECF 2485, supported by the Plan Agent's declaration, there is substantial, probative and undisputed evidence that Chrismas was knowingly complicit in the apparent scheme to divert proceeds either from Debtor's artwork or subject to Debtor's consignment rights to Ace NY. ECF 2485 at 10-11 (internal page citation: 6-7). An email in March 2015 from Chrismas to Debtor's customer, Paul Balson ("Balson"), offered a 30% discount on certain artwork, explaining that the price reduction was abnormal for the Debtor and was prompted by Debtor's need to make a major expense payment that same week. March 17, 2015 e-mail from Chrismas to Balson, Exhibit 3 to the *Declaration of Sam S. Leslie in Support of Plan Agent's Supplemental Brief Re: Unclean Hands,* ECF 2486-1 at 124-125. After reaching an agreement on the discounted sale with Balson, Chrismas stated in an email to the customer, Balson, two days later, "The wire instructions are to Ace Gallery New York which is a different account to the last wire that you sent but my accounting office wants to process these sales through that account. Since time is of the essence please . . . find wire instructions attached." March 19, 2015 e-mail from Chrismas to Balson, Exhibit 4 to the *Declaration of Sam S. Leslie in Support of Plan Agent's Supplemental Brief Re: Unclean Hands,* ECF 2486-1 at 126-130. Related emails from Debtor's controller, Lauren Gullotta, to Balson included as attachments a bill of sale for the art on Ace NY letterhead and

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

wire instructions to the Ace NY account—Debtor's "new account number." March 19, 2015 e-mail from Lauren Gullotta to Balson, Exhibit 5 to the *Declaration of Sam S. Leslie in Support of Plan Agent's Supplemental Brief Re: Unclean Hands,* ECF 2486-1 at 131-136. Chrismas signed the Ace NY bill of sale, invoice #2073, as "Director & Chief Curator." *Id.* Records produced by City National Bank indicate that Balson wired the sale price of $258,000 to Ace NY on March 19, 2015, and that same day, Chrismas caused at least $228,000 to be wired from Ace NY to Ace Museum, and $226,000 was then wired from Ace Museum to 400 S. La Brea, LLC. City National Bank Wire and Account Records, Exhibits 6, 7 and 8 to the *Declaration of Sam S. Leslie in Support of Plan Agent's Supplemental Brief Re: Unclean Hands,* ECF 2486-1 at 137-147. This uncontroverted evidence directly implicates Chrismas in the scheme to divert Debtor's assets to his controlled nondebtor entity, Ace NY, while he was acting as a fiduciary for Debtor's bankruptcy estate as the person controlling Debtor during this Chapter 11 bankruptcy case. This evidence by itself is sufficient to show that Chrismas is an unclean litigant for purposes of the pending Rule 2004 Motion and the Protective Order Motion.

(4) The forensic analysis of the Plan Agent's expert consultant, Ziegler, shows that during Chrismas's management of the Debtor-in Possession, more than $790,000 of DIP financing proceeds approved by the court during the post-petition, preconfirmation phase of the bankruptcy case, which proceeds were estate property, were deposited into the bank accounts of non-debtor entities controlled by Chrismas, Ace NY and Ace Museum, instead of Debtor-in-Possession accounts. The uncontroverted Ziegler analysis also demonstrates that the diverted DIP proceeds were used not for the benefit of the estate, but for the benefit of Chrismas personally (through his controlled entities). ECF 2486-1, Ziegler Declaration at ¶ 11. As the analysis shows, the funds were first deposited into the Ace NY and Ace Museum accounts, and then transferred to Debtor's

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

accounts. The Ace Museum accounts were then credited with payments on a loan it had received from Debtor, which in effect meant that Ace Museum was using Debtor's money, not its money, to receive a reduction on its loan debt to Debtor, which would be a fraud on the estate. This evidence is not disputed by Chrismas, and this evidence supports the Plan Agent's allegations that Chrismas funneled the estate's DIP financing money through his controlled entities to give his controlled entity, Ace Museum, unjustified loan payment credits during his supervision of the bankruptcy estate, depriving the estate and its creditors of value in that amount, which evidence by itself supports application of the doctrine of unclean hands here.

(5) To complete her forensic analysis of Debtor's financial transactions during the preconfirmation phase of the case, Ziegler reviewed thousands of documents supporting the business activity of the Debtor for the time period of February 2013 through April 2016, which included the Monthly Operating Reports prepared by the Debtor and signed by Chrismas, bank statements of the Debtor referenced in the Monthly Operating Reports, the electronic general ledgers of the Debtor, and sales invoices of the Debtor, among other documents. Ziegler also interviewed staff and accounting personnel who worked for the Debtor during this time period in order to understand their accounting processes, such as sales invoice processing, inventory maintenance, cash processing and bill payments. Ziegler also reviewed accounting documents and correspondence independently obtained from Debtor's computers, as well as bank records of Ace NY and Ace Museum.

(6) According to Ziegler, the documents that she reviewed pertaining to Ace NY included its initial tax return for the period of February 1, 2013 through October 31, 2013, which was filed on an IRS Form 1120 corporate income tax return (the "Form 1120"). Ace NY's Form 1120 included an opening balance sheet showing no assets or capital at its corporate formation, and thus, reflected that Ace NY did

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

not have any artwork or assets at the time that Debtor filed its Chapter 11 bankruptcy case in February 2013, the month Debtor filed its petition. Yet as Ziegler noted, and as reported on Ace NY's Form 1120, Ace NY received $2,103,866 in artwork sales revenue during the same period of February 1, 2013 through October 31, 2013, the nine-month period after its corporate formation. Based on her review of sales invoices, wire transfer instructions, bank statements, deposit information, artist contracts, consignment agreements of Debtor and Ace NY, and other documents, Ziegler determined that the $2 million in artwork sales revenue reported by Ace NY on its Form 1120 for the period of February 1, 2013 through October 31, 2013 was diverted from the Debtor. Accordingly, Ziegler opined that although Ace NY had no assets when it was formed in February 2013, it was able to produce $2 million of revenue, and she confirmed that this $2 million was from the sale of the Debtor's artwork. Chrismas does not offer any evidence to dispute Ziegler's analysis and conclusions that Ace NY's $2 million in revenue in 2013 was from the sale of Debtor's artwork.

(7) In her analysis, Ziegler described how these funds were diverted from the Debtor to Ace NY when discussing the Debtor's artist consignment agreements[21]. Ziegler reviewed Debtor's internal inventory records, artist contracts, and consignment sheets, and found that all of the contracts[22] she reviewed were signed by Chrismas on behalf of the Debtor. Ziegler stated that she was unable

---

[21] The Plan Agent in his status report and declaration filed on May 31, 2019 stated that both before and during the Chapter 11 bankruptcy case of Debtor, Chrismas many times failed to inform the artists of sales of their work, falsely reported the amount of the sale or simply delayed payment of the artist's share. ECF 2478. The Plan Agent further stated that although some of this was related to sales for which the funds were diverted to the Ace NY bank account, Debtor as consignee is obligated to pay the artists for their share of such sales, and thus, Debtor was not only deprived of its revenue due on the sales, but is liable to pay the artists for their artist shares which Chrismas diverted. The Plan Agent has confirmed that Debtor owes artists approximately $ 5 million for prepetition art sales and $3 million for art sales during the pendency of this Chapter 11 bankruptcy case. Chrismas does not offer any evidence in his Rule 2004 Motion to dispute this testimony of the Plan Agent.

[22] The majority of the contracts Ziegler reviewed were signed before Debtor's bankruptcy petition filing, and some contracts were signed after the bankruptcy filing.

USAO_00014134
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

to review or locate any contracts between Ace NY and any artist, indicating that there were no such contracts (which is not disputed by Chrismas). Additionally, Ziegler found that many pieces of art were listed on both Debtor and Ace NY invoices, including artwork that appeared to be owned and/or contracted by the Debtor but was sold under the name of Ace NY.

(8) Ziegler cited the example of Charles Fine's Flor De Incino artwork, which was on an inventory list in the Debtor's Exhibit Binder Volume 3, and was sold on an Ace NY invoice, and the $172,000 check payment (the "Fine Artwork Proceeds") for that invoice was deposited into Ace NY's bank account on August 2, 2013.[23] Ziegler found that of the Fine Artwork Proceeds, $165,000 was transferred from Ace NY to Ace Museum's bank account on August 6, 2013, and on the same day, $165,000 was wire transferred out of the Ace Museum account in two wire transfers: one transfer of $150,000 to pay Ace Museum's rent expense and one transfer of $15,000 to Debtor's general bank account.[24] This specific example shows a diversion of Debtor's funds totaling $172,000, though a small amount, $15,000, was returned to the Debtor, with a resulting net loss to the Debtor of $157,000.[25] Ziegler found that in similar transactions, funds that belonged to the Debtor through sales of its artwork were deposited first into Ace NY's bank account and then transferred into Ace Museum's bank account, and afterwards, portions of these transfers were deposited into the Debtor's bank account or used to pay non-Debtor expenses. Chrismas does not offer any evidence to dispute Ziegler's analysis and conclusions that artwork sold under the

---

[23] Copies of the cancelled check and bank statement showing the deposit were attached to the Ziegler Declaration. See ECF 2486-1, Ziegler Declaration at Exhibits K, L, M, N, O, P.

[24] Copies of the Ace NY and Ace Museum bank statements showing the deposits and transfers were attached to the Ziegler Declaration. *Id.*

[25] The Ziegler Declaration does not determine whether the $15,000 might be an additional loss if credited to Ace Museum as a reduction of Debtor's note receivable from Ace Museum.

(Continued...)

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

name of Ace NY was owned and/or contracted by the Debtor, and that proceeds from such sales were diverted from the Debtor to Ace NY and Ace Museum.

(9) Consistent with the analysis described above, Ziegler found that customers purchasing Debtor's artwork were sometimes instructed to wire transfer funds to bank accounts other than the Debtor's. In one instance, an Ace Gallery (Debtor) invoice for $200,000 included wire instructions for an Ace NY bank account.[26] Similarly, three checks for sales of Debtor's artwork by Mary Corse and De Wain Valentine, totaling $393,000 were deposited into Ace Museum's bank account instead of Debtor's. These examples alone demonstrate that Debtor's funds were diverted to non-Debtor accounts totaling $593,000, not an insignificant sum. Chrismas does not offer any evidence to dispute Ziegler's analysis and conclusions that customers purchasing Debtor's artwork were instructed to wire transfer funds to bank accounts other than Debtor's bank accounts.

(10) Ziegler also analyzed the Debtor's accounts receivable[27] as shown on its Monthly Operating Reports. As Ziegler notes, Debtor's business was the sale of artwork that results in either a payment of cash or a promise to pay in the future, which is recorded as an account receivable. The first Monthly Operating Reports filed by the Debtor indicated that there were no accounts receivable as of February 28, 2013, which demonstrated to Ziegler that the Debtor typically received payment in full at the point of sale. The Debtor reported an accounts receivable balance of $318,990.61, however, on its Monthly Operating Report for the period ending April 30, 2013. The amount of accounts receivable reported on Debtor's Monthly Operating Reports increased to $4,359,643.13 as reported on the Monthly Operating Report for the period ending November 30, 2014.

---

[26] Copies of Debtor's invoice and Ace NY wire instructions were attached to the Ziegler Declaration. See ECF 2486-1, Ziegler Declaration, Exhibit Q.

[27] Accounts receivable is an account to record amounts owed for services or sales that have not been paid as of the reporting period, and accounts receivable usually have shorter terms than notes receivable. See ECF 2486-1, Ziegler Declaration, ¶ 15.

According to Ziegler, if this were accurate, the increase in unpaid sales indicates that some person or entity, or a combination of entities, owes the Debtor $4.3 million for artwork sold for which payment has not been made.

(11) Based upon her review of accounts receivable records, Ziegler found that the majority of the Debtor's accounts receivable were not supported by actual or prospective sales. Ziegler determined that there were approximately 50 outstanding invoices that comprised the accounts receivable balance on the Monthly Operating Reports, but, based on her analysis of the detailed invoices, most of the invoices did not reflect valid accounts receivable, or the invoices had already been paid. Ziegler provided some illustrative examples to explain why this was the case: (1) Invoice #1660 for $153,000, which was Debtor's invoice, was included in the accounts receivable detail; the invoice was paid in February 2014; the funds were deposited into Ace NY's bank account; but the invoice remained on Debtor's accounts receivable detail; (2) Invoice #1739 for $200,000, which was Debtor's invoice, was included in the accounts receivable detail; was paid in August 2014; the funds were deposited into Ace NY's bank account; but the invoice remained on Debtor's accounts receivable detail; and (3) Invoice #1632 for $95,000, which was Debtor's invoice, was included in the accounts receivable detail; had a mark crossed through it, saying it was cancelled in November 2015; but, the invoice remained on Debtor's accounts receivable detail.[28] These three examples show that the accounts receivable listed on the Monthly Operating Reports were incorrect and overstated by at least $448,000. Chrismas does not offer any evidence to dispute Ziegler's analysis and conclusions that the Debtor's accounts receivable stated on its Monthly Operating

---

[28] See ECF 2486-1, Ziegler Declaration, ¶ 16.

(Continued...)

USAO_00014137
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Reports were overstated and inaccurate because the accounts receivable were either already paid or otherwise invalid.[29]

(12) Ziegler's analysis of the Debtor's notes receivable[30], as reflected on Debtor's Monthly Operating Reports, is similarly indicative of fraud. The first Monthly Operating Report filed by the Debtor for the period ending February 28, 2013 indicated a notes receivable balance of $4,501,971.82, which purportedly reflected the amount due from Ace Museum to Debtor, as shown on the Debtor's amended and corrected schedules of assets and liabilities and statement of financial affairs, filed in April 2013. The Debtor reported a notes receivable balance of $3,306,959.80 on its Monthly Operating Report for the period ending November 30, 2014, including repayments of the notes receivable totaling $1,195,012.02 over a 22-month period from February 2013 to November 30, 2014. According to Ziegler's analysis, Ace Museum's payments on the notes receivable balance were illegitimate. Ziegler's uncontroverted testimony describes a scheme whereby millions of dollars of the Debtor's money were diverted into the bank accounts of Ace Museum and Ace NY during the 22-month period, and that same money was then transferred back to the Debtor and

---

[29] The accounts receivable scheme described by Ziegler is corroborated by the Plan Agent's undisputed testimony. According to the Plan Agent in his status report and declaration filed on May 31, 2019, the alleged $6,039,444 in accounts receivable on the latest Monthly Operating Report for Debtor, which was filed by Chrismas and signed under penalty of perjury, did not reflect Debtor's actual accounts receivable from clients as a result of sales, but rather reflected an amount based primarily on falsified invoices for sales that had already been completed through Ace NY and for which purchasers had already made payment to the Ace NY bank account. According to the Plan Agent, the false invoices relied upon by Ziegler and the Plan Agent in their analyses were part of a scheme designed, in part, to hide transfers of the Debtor's proceeds from Ace NY and Ace Museum back to Debtor when expenses or obligations of the Debtor became due. The Plan Agent's investigation determined that the collectible accounts receivable that were owed to Debtor on the effective date were only $58,256, rather than the $6,039,444 in accounts receivable on the latest Monthly Operating Report for Debtor filed by Chrismas. See ECF 2478, Exhibit C. Chrismas does not offer any evidence in his Rule 2004 Motion to dispute this testimony of the Plan Agent.

[30] According to Ziegler, notes receivable is an account to record amounts owed for services or sales that have not been paid as of the reporting period, though in contrast to accounts receivable which usually have shorter terms than notes receivable.

USAO_00014138
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

represented as Ace Museum's repayments of its debt to Debtor as reflected in the notes receivable balance. ECF 2486-1, Ziegler Declaration at ¶ 10.

(13) Ziegler also reviewed and analyzed Debtor's monthly cash receipts and disbursements on a cash basis (also referred to as a profit and loss statement) stated on its Monthly Operating Reports and found that these statements were inaccurate. Ziegler found that the last Monthly Operating Report reported total sales of $11,061,741 since the petition date, which approximated the Debtor's sales but failed to take into account the $14.5 million in the Debtor's sales proceeds that were deposited into the Ace NY bank account. For example, Debtor's May 2013 Monthly Operating Report reflected artwork sales proceeds of $362,977.06 listed as "Accounts Receivable – Post filing - $318,990.61" and "General Sales - $92,807.50." ECF 2486-1, Ziegler Declaration at ¶ 18. Debtor's bank account deposits and artwork sales invoices only showed that Debtor received $92,807.50 that month from artwork sales, however, indicating that Debtor did not receive invoices totaling $270,169.56 from sales. That same month, Ziegler found that Ace NY received $671,615 in bank deposits from sales of Debtor's artwork and transferred $255,000 to the Debtor's general bank account to pay rent, payroll, taxes and other expenses. As another example, Ziegler found more than $1 million in sales of Debtor's artwork on Debtor's invoices and Ace NY's invoices for June 2014, but Debtor's bank account only received sales proceeds of $548,650.77.[31] Ziegler found only $517,456.65 in deposits into Debtor's bank accounts attributable to invoiced artwork sales in Debtor's name for June 2014, and found that bank deposits for the remaining amount of the $1 million in sales of Debtor's artwork totaling $521,380 went into Ace NY's bank account. ECF 2486-1, Ziegler Declaration at ¶ 19. Chrismas

---

[31] The sales proceeds were reported on the June 2014 Monthly Operating Report as "Accounts Receivable – Post filing - $541,760.00," "Accounts Receivable – Pre filing - $6,360.00," and "General Sales - $530.77" for a total of $548,650.77. ECF 2486-1, Ziegler Declaration, ¶ 19 and Exhibit Y.

USAO_00014139
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

does not offer any evidence to dispute Ziegler's analysis and conclusions that the Debtor's proceeds from its sold artwork were deposited into the bank account of Ace NY, and not the Debtor's bank account, indicating that funds were diverted outside the bankruptcy estate.

(14) In sum, according to Ziegler, over the time period when Chrismas ran Debtor's operations from February 2013 to April 2016, more than $14 million from sales of Debtor's artwork was deposited into Ace NY's bank accounts, and during the 22 months of Debtor's Chapter 11 bankruptcy case through November 30, 2014, approximately $5.4 from sales of Debtor's artwork was deposited into Ace NY's bank account, of which Ace NY transferred a net total of $2.5 million to Ace Museum. Ziegler concluded that the funds deposited into Ace NY's bank account and then transferred from Ace NY to Ace Museum were Debtor's funds and that many of the deposits into Ace Museum's bank account were also Debtor's funds. Ziegler attached to her declaration a schedule showing sales proceeds of Debtor's artwork into Ace NY's bank account, and her schedule is consistent with Kincaid's analysis and schedule of sales proceeds. Chrismas does not offer any evidence to dispute Ziegler's analysis and conclusions that under his management and control of Debtor during the pendency of this bankruptcy case from February 2013 through April 2016, $14 million of Debtor's money from sales of its artwork was diverted from the estate to his controlled entities, Ace NY and Ace Museum, resulting in losses of millions of dollars for the bankruptcy estate and its creditors. Nor does Chrismas offer any evidence disputing that the losses to the estate and its creditors during Chrismas's management were compounded by the use of approximately $1.1 million of Debtor's money to improperly reduce Ace Museum's loan debt owed to Debtor.

Based on the undisputed evidence in the Plan Agent's declarations and the Ziegler Declaration, the court finds that the Plan Agent has made a prima facie showing that

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Chrismas is an unclean litigant to warrant the application of the doctrine of unclean hands here.

**iii. Chrismas's Contentions**

In his brief addressing the applicability of the doctrine of unclean hands, filed on June 12, 2019, Chrismas specifically argues that: (1) the doctrine of unclean hands cannot apply to his Rule 2004 motion because the Rule 2004 motion is not an "action," citing *Securities and Exchange Commission v. McCarthy*, 322 F.3d 650, 657 (9th Cir. 2003), (2) the doctrine of unclean hands cannot be applied here because Chrismas was the sole shareholder and solely in control of the Debtor when the alleged misconduct occurred, so the alleged misconduct is imputed to the post-confirmation Debtor; and (3) the alleged misconduct is not directly related to "plaintiff's use of acquisition of the right in suit[]," citing *inter alia*, *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F.Supp.2d at 1110. According to Chrismas, he "seeks information as [a] 'creditor' under Bankruptcy Rule 2004 concerning the post-confirmation Debtor's assets, operations and affairs which, in turn, will enable him to make an informed decision about how value can be best realized for the Debtor's creditor constituency *going forward* (e.g., whether to support the status quo in which [the Plan Agent] is liquidating the Debtor's remaining inventory at fire-sale prices). This request for information has nothing to do with the Plan Agent's allegations of misconduct against Chrismas more than three years ago when Chrismas was in control of the Debtor." ECF 2484 at 5 (internal page citation: 4)(emphasis in original).

The arguments made by Chrismas in opposition to the application of the doctrine of unclean hands are technical, as he does not address the evidence of his alleged misconduct described in the declarations of the Plan Agent and Ziegler and the documentary evidence in support thereof. Chrismas is silent about this adverse evidence other than his assertion that any misconduct that he may have engaged in was over three years ago, or in other words, "that was then," and thus unrelated to the current situation and his reported invocation in the related adversary proceedings of his Fifth Amendment privilege against testimonial self-incrimination about the transactions for which the Plan

USAO_00014141
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Agent offers evidence in the contested matters of the Rule 2004 Motion and the Protective Order Motion (i.e., when asked about the alleged diversions of estate assets in the related adversary proceedings). *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (an adverse inference in a civil proceeding may be drawn "when independent evidence exists of the fact to which the party refuses to answer") (citations omitted).

**c. <u>Application</u>**

The court rejects the first defense raised by Chrismas, that the doctrine of unclean hands is limited to actions and does not apply to motions or applications, because the case cited by Chrismas, *Securities and Exchange Commission (SEC) v. McCarthy,* 322 F.3d 650 (9th Cir. 2003), distinguishes between actions and motions or applications, but does not involve the applicability of the unclean hands doctrine. In *McCarthy,* the Ninth Circuit distinguished "applications" from "actions" for the purpose of determining whether United States Securities and Exchange Commission applications brought under Section 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. [s] 78u(e), require a formal complaint and full formal proceedings pursuant to the Federal Rules of Civil Procedure. *SEC v. McCarthy,* 322 F.3d at 656-657 (holding that the SEC in its enforcement proceedings under the Securities Exchange Act could proceed by motion or application). *McCarthy* did not involve the subject matter of these contested matters of the motion under Federal Rule of Bankruptcy Procedure 2004 and related protective order motion, and the applicability of the doctrine of unclean hands. Supreme Court case precedent on the doctrine of unclean hands does not distinguish between actions and motions in determining whether the doctrine applies, and even if there is some distinction to be made, unlike in *SEC v. McCarthy*, the Rule 2004 motion here is made within the bankruptcy case, which is an action itself, and does not involve the initiation of a new litigation proceeding. The court does not find the distinction in *SEC v. McCarthy* involving the initiation of SEC enforcement proceedings in district court applicable to the issue of whether the doctrine of unclean hands may bar a litigant from taking an examination

pursuant to Federal Rule of Bankruptcy Procedure 2004. *SEC v. McCarthy* also does not concern the court's broad authority to apply the doctrine of unclean hands. *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. at 815 ("[The doctrine of unclean hands] necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.'"). Accordingly, the court rejects Chrismas's argument based on *McCarthy* that the doctrine of unclean hands is not applicable here because his Rule 2004 motion is not an action.

In the case cited by the Plan Agent, *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, which addresses the unclean hands doctrine directly, the Supreme Court broadly defined the doctrine of unclean hands as closing "the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief[.]" *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. at 814. In making this statement, the Supreme Court did not draw any distinction between actions on one hand and motions or applications on the other hand, but broadly stated that courts should not exercise their judicial powers in aid of an unclean litigant. Based on this expansive language, the court therefore finds no cause to restrict the application of the doctrine of unclean hands to Rule 2004 motions.

The primary legal authority relied upon by Chrismas to argue that the equitable doctrine of unclean hands does not apply to motions under Rule 2004 is *In re Harris Group, Inc.,* 64 B.R. 417 (Bankr. E.D. Pa. 1986). ECF 2484 at 2. Chrismas cites and quotes the court's opinion in *Harris Group* for the following proposition: "Equity must comport with the rule making power vested by Congress in the Supreme Court. Such rules, as represented here by Bankruptcy Rule 2004, are not easily amenable to the engraftment of equitable exception." ECF 2484 at 2, *citing and quoting, In re Harris Group, Inc.,* 64 B.R. at 420. The legal authority for this proposition is not apparent from the court's opinion in *In re Harris Group, Inc.,* because the court did not cite any in support

USAO_00014143
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

of its proposition. *Id.* The other cases cited by the court in *In re Harris Group, Inc.,* in its discussion of whether the doctrine of unclean hands applies to motions under Rule 2004 are not cited for the specific proposition described above, but in any event, do not relate either to Rule 2004 or the doctrine of unclean hands. *In re Harris Group, Inc.,* 64 B.R. at 420 (citing *United States v. Wilson,* 707 F.2d 304, 311-312 (8th Cir. 1982) (considering whether the United States is subject to application of equitable defenses if it raises an equitable claim) and *Waldschmidt v. Ranier (In re Fulgham Construction Corp.),* 706 F.2d 171, 173 (6th Cir. 1983) (considering the long-standing judicially evolved application of the "net result rule" as the criteria for determining a preferential transfer as defined in 11 U.S.C. § 547 under the then newly enacted Bankruptcy Reform Act of 1978)). *In re Harris Group, Inc.* is problematic because it neither discusses the case law construing Rule 2004, such as *In re GHR Energy Corp.*, 33 B.R. at 454 (inequitable to conduct Rule 2004 examination in bad faith) and *In re Mittco, Inc.*, 44 B.R. at 36 (inequitable to conduct Rule 2004 examination for abuse or harassment), nor the case law relating to the doctrine of unclean hands, such as *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. at 819 (applying the doctrine to plaintiff who comes to the court with unclean hands relative to the dispute at issue, stating "the facts all add up to the inescapable conclusion that [plaintiff] has not displayed that standard of conduct requisite to the maintenance of [a] suit in equity."). The opinion in *In re Harris Group, Inc.,* is incompatible with the case law construing equitable exceptions to Rule 2004 for the purposes of abuse or harassment. *See e.g., In re Duratech Industries, Inc.*, 241 B.R. at 283; *In re Mittco, Inc.*, 44 B.R. at 36; *In re Symington*, 209 B.R. at 685. In conducting a Westlaw database search of *In re Harris Group, Inc.,* the court observed that there was no reported case decision following it on this point. Accordingly, the court determines that the opinion in *In re Harris Group, Inc.,* holding that the doctrine of unclean hands does not apply to a Rule 2004 motion, is unpersuasive and does not follow it.

The court rejects the second defense raised by Chrismas that any alleged misconduct by him as the sole person in control of debtor is imputed to the post-

confirmation Reorganized Debtor. Although there is apparently no definitive case law in the Ninth Circuit regarding whether the so-called *in pari delicto* defense may be asserted against a bankruptcy trustee, or here, the plan agent, as to the bad acts of prior management post-petition, as recognized by the court in *C&S Wholesale Grocers, Inc. v. Delano Retail Partners, LLC (In re Delano Retail Partners, LLC)*, , 2014 WL 4966476, slip op. at *3-6 (Bankr. E.D. Cal. 2014), this court finds persuasive the Third Circuit's decision and opinion in *In re Personal and Business Insurance Agency*, 334 F.3d 239 (3d Cir. 2003), which held that under the doctrine of imputation, or *in pari delicto,* the bad acts of a debtor's principal could only be imputed to a bankruptcy trustee in the case of prepetition acts relating to a prepetition claim brought into the bankruptcy estate under 11 U.S.C. § 541, but rights arising under the Bankruptcy Code, such as avoidance claims for fraudulent transfer under 11 U.S.C. § 548, which are not brought into the bankruptcy estate by virtue of 11 U.S.C. § 541, may not be affected by imputation. 334 F.3d at 242-247 (citing and distinguishing *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340 (3d Cir. 2001), the case relied upon by Chrismas, involving prepetition claims brought into the estate under 11 U.S.C. § 541 to hold that the so-called "sole actor exception" does not apply to rights arising under other provisions of the Bankruptcy Code, i.e., 11 U.S.C. § 548). The acts of Chrismas as the person in control of the Debtor-in-Possession during the post-petition administration of the Chapter 11 bankruptcy case are not prepetition acts relating to a prepetition claim brought into the bankruptcy estate under 11 U.S.C. § 541, and therefore, do not implicate the doctrine of imputation, so that any bad acts by him are imputed to the Reorganized Debtor and the Plan Agent. *Id.; see also, Notinger v. Migliaccio (In re Financial Resources Mortgage, Inc.).* 454 B.R. 6, 24 (Bankr. D. N.H. 2011) ("Courts have reasoned that it is inequitable to impute a debtor's bad conduct to a trustee who comes to the court with clean hands to pursue claims on behalf of innocent creditors."), *citing inter alia, In re Personal & Business Insurance Agency,* 334 F.3d at 246-247 and *Cooper v. United States,* 362 F.Supp.2d 649, 656 (W.D.N.C. 2005)("Imputing the bad acts of the debtor onto the bankruptcy trustee in the present case

renders a categorically inequitable result, that is, the innocent victimized creditors get nothing."). The Plan Agent argues that "Chrismas' imputation argument is particularly galling, as it argues that Chrismas' personal malfeasance throughout this bankruptcy case must be imputed to the post-confirmation Plan Agent who was appointed *because* of Chrismas' fraudulent activities, and as Chrismas seeks to personally benefit from such imputation of his own bad acts." ECF 2492 at 4-5. The court agrees with the Plan Agent that it is not equitable, if not in bad taste, for Chrismas to argue that if he committed bad acts as debtor's principal, they are imputed to the Plan Agent who, under the Plan, is attempting to recover the value of the estate for payment of the claims of innocent creditors who were apparently victimized by such bad acts. For the foregoing reasons, the court rejects Chrismas's imputation defense to the application of the doctrine of unclean hands.

The court rejects the third defense raised by Chrismas, that the alleged misconduct is not directly related to "plaintiff's use of acquisition of the right in suit[]," citing *inter alia*, *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F.Supp.2d at 1110. Chrismas argues that his "request for information has nothing to do with the Plan Agent's allegations of misconduct against Chrismas more than three years ago when Chrismas was in control of the Debtor." ECF 2484 at 4. The gist of Chrismas's argument that he is entitled to the requested information under Rule 2004 is concisely stated in his responsive Brief on the Doctrine of Unclean Hands Regarding Nexus, ECF 2499 at 1:

> The Plan provides Mr. Chrismas the right to propose and more for Court-approval of a transaction not resulting in a Solvency Event if in the best interests of unsecured creditors (a "Transaction") [citing Plan sections 5.21 and 5.22]. It also provides him the right to request information about the Debtor's assets for the purpose of proposing a Transaction. As the Plan Agent, Mr. Leslie is obligated to "furnish such information concerning the estate and the estate's administration *as is requested by a party in interest* [citing Plan section 5.4.2 and 11 U.S.C. §§ 704(a) and 1106(a)(1)]. And through the 2004 Motion, Mr. Chrismas requests information on the Post-Confirmation Debtor's art inventory and sales for the purposes of proposing an asset sale transaction in the best interests of creditors [citing the moving papers].

USAO_00014146
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

*Id.* (footnotes omitted and italics in original).

Regarding the relationship of his request with the alleged misconduct, Chrismas argues:

> "Mr. Leslie's allegations of misconduct (more than 3 years ago when Mr. Chrismas controlled the Debtor) do not *immediately and necessarily relate* to Mr. Chrismas' request for information (as a party in interest) to propose an asset sale transaction that will enhance recoveries for the Debtor's stakeholders. The only "connection" alleged by Mr. Leslie does not even exist because the Transaction would NOT restore Mr. Chrismas to his prior role as a fiduciary of the Debtor's creditors. And Mr. Leslie cannot credibly contend that Mr. Chrismas is acting with fraud or deceit with respect to the requested relief. Mr. Chrismas has a right to obtain court approval of a Transaction; and the Plan provides him, as a party in interest, with the right to the information requested [citing Plan section 5.4.2 and 11 U.S.C. §§ 704(a) and 1106(a)(1)]."

*Id.* at 3 (footnotes omitted and italics in original).

The Supreme Court's decision in *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, holding that application of the unclean hands doctrine requires that the misconduct alleged be "relative to the matter in which [the plaintiff] seeks relief," is controlling here. 324 U.S. at 815. The Ninth Circuit follows this interpretation, *see e.g.*, *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985).

"Relative to" is a broad phrase meaning "with regard to" or "in connection with." Merriam-Webster's Online Dictionary 2019, available at https://www.merriam-webster.com/dictionary/relative%20to (last visited November 5, 2019); *see also Wisconsin Winnebago Business Committee v. Koberstein*, 762 F.2d 613, 618 (7th Cir. 1985) (characterizing 'relative to' in a statute as "broad language"). Additionally, "relative to" is synonymous with 'related to,' a term the Supreme Court and Ninth Circuit have likewise interpreted generously. Although the "the breadth of the words 'related to' does not mean the sky is the limit," the Supreme Court has repeated that the "ordinary meaning of . . . [the] words ['related to'] is a broad one," meaning "having a connection with or reference to." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (citations and internal quotation marks omitted). The Ninth Circuit has consistently acknowledged the Supreme

Court's broad definition of "related to" or "relative to." *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 585 (9th Cir. 2018) (citing and quoting *Dan's City Used Cars, Inc.*); *California Tow Truck Association v. City & County of San Francisco*, 807 F.3d 1008, 1021 (9th Cir. 2015) (same).

Some courts have stated that in order to apply the doctrine of unclean hands, there must be a "close nexus between a party's unethical conduct and the transactions on which that party seeks relief," *In re Everett*, 364 B.R. 711, 723 (Bankr. D. Ariz. 2007) (citing and quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933) (predicate act underlying an unclean hands defense must have an "immediate and necessary relation to the equity that [one] seeks in respect of the matter in litigation.").

In *Keystone Driller Co. v. General Excavator Co.*, the Supreme Court examined the limits of the application of the doctrine of unclean hands, stating as follows:

> But courts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice. They are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.

290 U.S. at 245 (citations omitted). This passage from the opinion in *Keystone Driller Co. v. General Excavator Co.*, contains the "immediate and necessary relation" language quoted by the court in *In re Everett* for its conclusion that a close nexus must be shown between the inequitable conduct and the request for relief. The language in the *Keystone Driller Co.* opinion, however, does not use the term "close nexus," but rather, "immediate and necessary relation," which is qualified by the following language in the next sentence, "They [i.e., the courts of equity] do not close their doors because of plaintiff's misconduct, whatever its character, that has *no relation* to anything involved in the suit, but only such violations of conscience as *in some measure* affect the equitable relations between the parties in respect of something brought before the court for adjudication." 290 U.S. at 245

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

(citations omitted and emphasis added). That is, the stricter sounding language in this passage from the *Keystone Driller Co.* opinion—that the request for relief must have an "immediate and necessary relation" with the prior inequitable conduct—is qualified by less restrictive language that the unclean hands doctrine is inapplicable where there is "no relation," and that there must be a relation "in some measure." *Id.* Moreover, this passage from the opinion in *Keystone Driller Co.* also indicates that the courts of equity have broad discretion in applying the unclean hands doctrine as "[t]hey are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Id.*

The Supreme Court further examined the unclean hands doctrine in *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, citing *Keystone Driller Co.,* and clarified what "relation" and "measure" a court of equity may evaluate to preclude relief by application of the doctrine of unclean hands. The Supreme Court stated in *Precision Instrument* that the doctrine of unclean hands "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." 324 U.S. at 815. As discussed above, the Supreme Court applied a broad "relative to" standard in *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, which this court must follow.

Here, the Plan Agent has sufficiently demonstrated that Chrismas's alleged misconduct, which evidence put on by the Plan Agent's forensic accountant is undisputed, is "relative to" the Rule 2004 Motion. The Plan Agent has presented substantial, probative and undisputed evidence in support of his allegations that transfers of more than $14 million from sales of the Debtor's owned and consigned artwork were made under Chrismas's management and control of Debtor during the pendency of this bankruptcy case to Chrismas's newly formed non-debtor entity, Ace NY. ECF 2486-1, Ziegler Declaration at ¶ 10. The undisputed evidence also supports the Plan Agent's allegations that Chrismas caused the transfer of more than $790,000.00 in the estate's DIP financing proceeds, which financing this court authorized on August 30, 2013, ECF 336, to the

USAO_00014149
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

same non-debtor entity. *Id.,* ¶ 11. The substantial, probative and undisputed evidence offered by the Plan Agent further shows inequitable conduct warranting application of the unclean hands doctrine; the Monthly Operating Reports that Chrismas signed and submitted to the court on behalf of the Debtor under penalty of perjury and while serving as a fiduciary to creditors of the estate, were false and misleading. ECF 2486-1, Ziegler Declaration at ¶ 10-19. There is also substantial, probative and undisputed evidence offered by the Plan Agent that Chrismas ignored Debtor's counsel's warnings in connection with the apparent diversion of DIP financing proceeds to non-debtor entities, which demonstrates Chrismas's blatant disregard for this court's authority. Exhibits 17 and 18 to the *Declaration of Sam S. Leslie in Support of Plan Agent's Supplemental Brief Re: Unclean Hands,* ECF 2486-1 at 181-199. All of the uncontroverted evidence described above is indicative of inequitable conduct that merits the application of the doctrine of unclean hands here.

The direct answer to Chrismas's argument that there is no immediate and necessary relationship to the controversy in issue is that if the court and the parties in interest, including the official committee of unsecured creditors, had known before plan confirmation of the Plan Agent's substantial, probative and uncontroverted evidence of the fraudulent acts of Chrismas—who was in control of the Debtor-in-Possession—resulting in the diversion of millions of dollars of Debtor's assets to his controlled nondebtor entities, no doubt, the committee would have immediately moved for appointment of a Chapter 11 trustee based on fraud or mismanagement under 11 U.S.C. § 1104, which the court would have almost certainly granted. But for this diversion of the Debtor's assets that Chrismas caused while he served in his post-petition fiduciary capacity as the person controlling Debtor as the Plan Agent's substantial, probative and uncontroverted evidence shows, a plan of reorganization may have paid creditors in some significant amount and perhaps left Chrismas in control of the post-confirmation Debtor.

If the Plan Agent's undisputed evidence of fraud had been known preconfirmation, it is unlikely that Chrismas would have ever received any rights to propose a transaction in

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

the Plan. Thus, here the alleged misconduct immediately and necessarily relates to the requested relief, and the litigant has not acted fairly and without fraud or deceit as to the controversy in issue. *See* Chrismas's Responsive Brief on the Doctrine of Unclean Hands Regarding Nexus, ECF 2499 at 3, *citing inter alia*, *Keystone Driller Co. v. General Excavator Co.* 290 U.S. at 245 and *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. at 814-815.

The court cannot ignore the Plan Agent's substantial probative and undisputed evidence in support of his allegations of fraud by Chrismas while in control of the Debtor-in-Possession, which indicates that Chrismas obtained his plan rights to propose a "Transaction" by fraud as well. Chrismas now seeks to enforce his plan rights by obtaining information ostensibly for that purpose. To allow this would be inequitable. Chrismas does not have an absolute right to request information concerning the estate or its administration under Plan § 5.4.2 and 11 U.S.C. §§ 704(a). In his recitation of his right to request information as a party in interest pursuant to 11 U.S.C. §§ 704(a) and 1106(a)(1), Chrismas left out a relevant and important qualifier to such right in 11 U.S.C. § 704(a)(7)—that such right is subject to the condition, "unless the court orders otherwise." Fully stated, 11 U.S.C. § 704(a) provides: (a) The trustee shall— . . . (7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest; . . . ." Based on the opposition of the Plan Agent and the Wilson Parties and the evidence in support of their opposition, the court orders otherwise based on the doctrine of unclean hands.

Chrismas's post-confirmation conduct is consistent with his preconfirmation conduct of not acting in the best interests of creditors of the bankruptcy estate and now of the Reorganized Debtor. Chrismas has refused to answer interrogatories or respond to requests for admission in the related adversary proceedings before this court, invoking his Fifth Amendment privilege. *Declaration of David J. Richardson in Support of Motion of Plan Agent for Protective Order re 2004 Examination Requested by Douglas James Chrismas,* ECF 2447 at 2-4, ¶¶ 10 and 11 and Exhibits G through N (Plan Agent's

discovery requests and Chrismas's responses thereto). Chrismas has also reportedly invoked his Fifth Amendment privilege extensively during depositions related to the adversary proceedings as asserted by the Plan Agent. *Memorandum Regarding August 7, 2019 Deposition Session of Douglas Chrismas and Continued Hearing on Examination of Plan Agent,* ECF 2518 at 1-4. In considering the equities, Chrismas cannot obstruct discovery in one matter before this court and seek it zealously in another. *Lyons v. Johnson,* 415 F.2d 540, 542 (9th Cir. 1969). An adverse inference may be drawn "when independent evidence exists of the fact to which the party refuses to answer." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d at 1264 (9th Cir. 2000) (citations omitted). The evidence in support of the Plan Agent's allegations of Chrismas's fraud in his declarations and in the Ziegler Declaration, ECF Nos. 2486 and 2486-1, which is undisputed, establishes the existence of independent indicia of fraud, and based on this independent evidence, the court may draw an adverse inference from Chrismas's invocation of the Fifth Amendment privilege in connection with the Plan Agent's allegations of fraud in the related adversary proceeding, all of which supports a finding that Chrismas is an unclean litigant to apply the unclean hands doctrine to the pending Rule 2004 Motion and Protective Order Motion.

In *Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956 (9th Cir. 2015), the Ninth Circuit held that "determining whether the doctrine of unclean hands precludes relief requires balancing the alleged wrongdoing of the plaintiff against that of the defendant, and 'weighing the substance of the right asserted by the plaintiff against the transgression which, it is contended, serves to foreclose that right.'" 789 F.3d at 960 (citation omitted). The outcome of a balancing analysis here is plain. The record for this contested matter reflects substantial, probative and undisputed evidence that Chrismas engaged in fraudulent acts that harmed the bankruptcy estate and creditors while he was in charge of the Debtor-in-Possession, resulting in losses to the estate and creditors of over $17 million. These losses had and continue to have a direct impact on the current predicament that the Reorganized Debtor is in, being deprived of over $17 million in

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

estate assets, including the depletion of any operating funds in the estate at the time of the turnover of the estate to the Plan Agent to the tune of over a quarter of a million dollars. The evidence further indicates that these bad acts were concealed from the court and the creditors of the estate by Chrismas's signing and filing of false Monthly Operating Reports during his administration of the Debtor-in-Possession. Chrismas' statement that the Reorganized Debtor has not been able to repay the estate's administrative claims rings hollow when the substantial, probative and undisputed evidence offered by the Plan Agent indicates that Chrismas's bad acts resulted in a diversion of estate assets of $17 million putting the Reorganized Debtor into a deep financial hole that the Plan Agent is attempting to help the Reorganized Debtor recover from. In contrast, the Plan Agent, has been transparent and cooperative, filing status reports[32] regarding the post-confirmation Debtor's operations and providing testimony during the evidentiary hearing.[33] The court therefore concludes that the balance of the equities lies overwhelmingly in favor of the Plan Agent, and finds that the doctrine of unclean hands precludes Chrismas from conducting a Rule 2004 examination of the Reorganized Debtor and the Plan Agent. Chrismas's Rule 2004 Motion should be denied as a classic example of abuse and harassment that the court should prevent. *In re Mastro*, 585 B.R. 587, 597 (9th Cir. BAP 2018) (citing *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)).

Even if a "close nexus between a party's unethical conduct and the transactions on which that party seeks relief," *In re Everett*, 364 B.R. at 723, was the standard to be applied here—it is not—the court finds that for purposes of the Rule 2004 Motion and related Protective Order Motion, the substantial, probative and uncontroverted evidence of Chrismas's misconduct shows an "immediate and necessary relation to" the relief Chrismas seeks. *Id.* (citation omitted). The substantial, probative and undisputed evidence offered by the Plan Agent shows the postpetition diversion of the estate's assets

---

32 ECF Nos. 2478, 2517.

33 *Transcript of Evidentiary Hearing*, July 19, 2019, ECF 2513.

USAO_00014153
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

under Chrismas's watch as the person in control of the post-petition, preconfirmation Debtor left the Plan Agent and post-confirmation Debtor in a financial quagmire with "no money for payroll day one." *Transcript of Testimony of Sam S. Leslie*, July 19, 2019, ECF 2513 at 68:02–68:18. The discovery Chrismas seeks by the Rule 2004 Motion concerns the Plan Agent's post-confirmation operation of the Debtor, which is necessarily related to, and significantly affected by, the Plan Agent's substantial, probative and undisputed evidence of defrauding the bankruptcy estate and its creditors at Chrismas's behest.

Chrismas's assertion that his request for information has nothing to do with the Plan Agent's allegations of misconduct against Chrismas and the related adversary proceedings before this court, *see* ECF 2484 at 4, is nothing short of fanciful. Chrismas has stated that "he wants ACE Gallery back," ECF 2443 at 4, but Chrismas has not presented any evidence to the court that any transaction providing payment to all creditors in full is forthcoming. Moreover, the Plan Agent has offered probative, substantial and undisputed evidence that Chrismas has established himself as a competitor to the Reorganized Debtor. *Declaration of David J. Richardson in Support of Motion of Plan Agent for Protective Order re 2004 Examination Requested by Douglas James Chrismas,* ECF 2447 at 4-5, ¶¶ 14-17 and Exhibits P, Q,R-1 through R-22 and S (incorporation documents for Chrismas's new business, Art Collection Development, LLC, and email correspondence between Chrismas on behalf of his business, "Ace Gallery New York," and prospective customers and agents regarding artwork sales). Without any evidence put on the record by Chrismas of a transaction that would pay all claims or benefit all creditors, nor any specific allegations of misconduct by the Plan Agent put forth by a single party in interest other than Chrismas, the court is unable to conclude that the request for the Rule 2004 examination is for any legitimate purpose beyond burdening and harassing the Plan Agent.

Finally, the court rejects the Plan Agent's argument that Chrismas's counterclaims in the pending adversary proceeding mooted the Rule 2004 motion because those counterclaims addressed post-confirmation administration of the Reorganized Debtor by

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

the Plan Agent, and thus, Chrismas could have discovery in the adversary proceeding, but the Rule 2004 Motion should be denied. The court rejects the Plan Agent's pending proceeding argument because the scope of Chrismas's counterclaims in the adversary proceeding has a different focus than his Rule 2004 Motion. Chrismas's counterclaims seek to recover artwork in possession of the Reorganized Debtor that allegedly belongs to Chrismas and his controlled entity, Ace Museum, while the Rule 2004 Motion seeks information about post-confirmation administration of the Reorganized Debtor by the Plan Agent so that Chrismas may propose a "Transaction" pursuant to the terms of the Plan, which information does not strictly relate to assets that Chrismas and Ace Museum may own in the possession of the Reorganized Debtor. Because the focus of Chrismas's separate requests is different, the discovery sought by the Rule 2004 Motion is not mooted by the counterclaims under the pending proceeding exception to Rule 2004.

As to the outstanding specific requests in the Rule 2004 Motion and in the Protective Order Motion, the court further makes the following rulings:

REQUEST FOR PRODUCTION NO. 1: ALL DOCUMENTS EVIDENCING inventories and schedules of ASSETS which YOU hold or have held a legal or beneficial interest.

Ruling: Deny because the doctrine of unclean hands precludes the requested discovery. Even though the Plan Agent voluntarily agreed to produce an inventory of artworks that are owned outright by the post-confirmation Debtor to be maintained in the possession of Jonathan Shenson, Chrismas's counsel, but could be viewed by Chrismas in Shenson's office, the Plan Agent later withdrew that concession. The court agrees with the Plan Agent that the inventory of the post-confirmation Debtor is sensitive commercial information that should be protected against the competitors of the post-confirmation Debtor, which include Chrismas since he is trying to work as an arts dealer on his own. The court therefore will construe the Plan Agent's offer to produce an inventory as withdrawn and will not enforce such offer.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

REQUEST FOR PRODUCTION NO. 2: With respect to ANY AND ALL ASSETS sold by the POST-CONFIRMATION DEBTOR as of or at any time after the EFFECTIVE DATE, DOCUMENTS sufficient to evidence the sale of such ASSETS including copies of ANY invoices.

Ruling: Deny because the doctrine of unclean hands precludes the requested discovery. The court specifically denies this request because Chrismas is demanding sales information from the Plan Agent, while at the same time asserting his Fifth Amendment privilege in related litigation—refusing to answer a single question about *his* sales practices during his tenure operating the business.

REQUEST FOR PRODUCTION NO. 3: With respect to ANY AND ALL ASSETS gifted by the POST-CONFIRMATION DEBTOR as of or at any time after the EFFECTIVE DATE, DOCUMENTS sufficient to evidence the gifting of such ASSETS including copies of ANY invoices.

Ruling: Deny because the doctrine of unclean hands precludes the requested discovery. Alternatively, as the Plan Agent stated in the parties' joint statement with respect to outstanding disputes concerning the Rule 2004 motion, "The Plan Agent also confirms that there are no documents responsive to Request No. 3, as there have been no gifts made by the Plan Agent." ECF 2443 at 7. Chrismas did not dispute the Plan Agent's assertion that there are no documents to produce.

REQUEST FOR PRODUCTION NO. 4: ALL DOCUMENTS AND COMMUNICATIONS CONCERNING WILSON and ANY OF WILSON'S BUSINESS ENTITIES (including WASL) on or at any time after the EFFECTIVE DATE, including but not limited to ANY DOCUMENTS AND COMMUNICATIONS RELATING TO (a) agreements or arrangements for loans and/or other financial accommodations to the POST-CONFIRMATION DEBTOR, (b) the BEVERLY HILLS PROPERTY and/or the BEVERLY HILLS PROPERTY PURCHASE OPTION and (c) consignment of ANY ASSETS.

Ruling: Deny because the doctrine of unclean hands precludes the requested discovery. In the alternative, denial is appropriate because the matter has been adjudicated to finality. Chrismas requests all documents and communications regarding Eric Wilson and his business entities, including but not limited to all agreements or arrangements for loans and/or other financial accommodations to the post-confirmation Debtor, and the Beverly Hills property, the purchase option for the Beverly Hills property and all asset consignments because Chrismas says there are "legitimate questions" about the settlement agreement between Wilson and the post-confirmation Debtor and whether the Plan Agent was a "disinterested fiduciary acting in the best interests of creditors (as opposed to himself)." Chrismas acknowledged that the settlement agreement was approved by the court and subsequently consummated, which may limit the prospects for undoing the transaction.

Chrismas does not identify what "legitmate questions" exist about the settlement agreement between Wilson and the post-confirmation Debtor, and if there were such legitimate questions, they should have been raised in an objection to the motion for approval of the settlement agreement under Federal Rule of Bankruptcy Procedure 9019. Chrismas's suspicions do not constitute good cause to impose the cost of response to his burdensome document production request on the post-confirmation Debtor relative to a matter that has been adjudicated to finality.

REQUEST FOR PRODUCTION NO. 5: ALL DOCUMENTS AND COMMUNICATIONS CONCERNING SECURED CLAIMS including but not limited to BOOKS AND RECORDS EVIDENCING ANY accountings or reconciliations prepared by the POST-CONFIRMATION DEBTOR and whether and to what extent ANY such CLAIM is DISPUTED and/or has been ALLOWED or DISALLOWED and the extent to which such CLAI< has been paid.

Ruling: Deny because the doctrine of unclean hands precludes the requested discovery. Alternatively, denial is appropriate because there are no documents to produce. As the parties stated in their joint statement with respect to outstanding disputes

concerning the Rule 2004 motion, "Based on representations made by the Plan Agent's counsel that – other than Mr. Wilson's claims and claims by artists/consignors – there are no Secured Claims against the post-confirmation Debtor; Mr. Leslie indicated there is nothing to produce." As to secured claims of Mr. Wilson and the artists/consignors, Chrismas's requests for production nos. 4 and 6 address secured claims of those parties, but otherwise, there are no documents to produce since it is not disputed that there are no other secured claims.

REQUEST FOR PRODUCTION NO. 6: ALL DOCUMENTS AND COMMUNICATIONS with respect to ANY AND ALL artists and consignors CONCERNING (a) ANY requests or demands for payment and/or an accounting or reconciliation, (b) ANY missing or damaged artwork or other ASSETS, and (c) ANY accountings or reconciliations prepared by the POST-CONFIRMATION DEBTOR.

Ruling: Deny because the doctrine of unclean hands precludes the requested discovery. Specifically, the court finds that Chrismas's failure to pay artists more than $2 million of consignment payments that were due to artists for sales of their artworks precludes the court from allowing this request for production pursuant to the doctrine of unclean hands.

REQUEST FOR PRODUCTION NO. 7: ALL DOCUMENTS AND COMMUNICATIONS CONCERNING ANY AND ALL agreements and other arrangements between YOU and LESLIE and ANY AND ALL TRANSFERS between YOU and LESLIE.

Ruling: Deny because the doctrine of unclean hands precludes the requested discovery. Additionally, Chrismas's document request is vague, overbroad and burdensome. Chrismas requests each and every document and communication regarding all agreements and other arrangements between the post-confirmation Debtor and the Plan Agent because Chrismas has questions regarding the Plan Agent's compensation. The court notes that the document request, however, is not limited to the Plan Agent's compensation. While the document request could be narrowly tailored to request the calculation of the Plan Agent's compensation and the documentary support for

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

the calculation, the application of the unclean hands doctrine precludes enforcement of this request. To request every document and communication regarding every agreement and communication, formal and informal, without any limit on the subject matter is unduly burdensome and excessive.

REQUEST FOR PRODUCTION NO. 8: ALL DOCUMENTS AND COMMUNICATIONS CONCERNING ANY AND ALL agreements and other arrangements between YOU and LEA Accountancy LLP and ANY AND ALL TRANSFERS between YOU and LESLIE.

Ruling: Deny because the doctrine of unclean hands precludes the requested discovery. Alternatively, Chrismas's document request is vague, overbroad and burdensome. Chrismas requests each and every document and communication regarding all agreements and other arrangements between the post-confirmation Debtor and LEA Accountancy, LLP, the Plan Agent's accounting firm, because Chrismas believes that the employment of LEA Accountancy, LLP, "is precluded under [the] Plan Trust," and Chrismas has questions about whether the Plan Agent is "pushing off" his duties to his firm employed by the post-confirmation Debtor, forcing the post-confirmation Debtor to incur undue expense. If Chrismas believes that the employment of LEA Accountancy, LLP, is precluded by the Plan Trust, there is no apparent need for the document request because such preclusion would be evident in the Plan Trust, which issue could be raised by motion. While the document request could be narrowly tailored to request the calculation of the amounts paid to LEA Accountancy, LLP, as an operating expense of the post-confirmation Debtor and the documentary support for the calculation, the application of the unclean hands doctrine precludes enforcement of this request. To request every document and communication regarding every agreement, communication, and transfer, without any limit on the subject matter, is unduly burdensome and excessive.

REQUEST FOR ORAL EXAMINATION OF PLAN AGENT

Ruling: Deny because the doctrine of unclean hands precludes the requested discovery. As ordered by the court, the Plan Agent filed detailed status reports on May

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

31, 2019 and August 19, 2019 regarding the financial performance of the Reorganized Debtor postconfirmation and appeared for examination at the evidentiary hearing on July 19, 2019. The July 19, 2019 evidentiary hearing allowed parties in interest, including Chrismas, to examine the Plan Agent. The information which has been provided by the Plan Agent regarding the financial performance of the Reorganized Debtor is substantial, probative and undisputed, and addressed the court's need for information regarding the Reorganized Debtor's financial performance in implementing the confirmed plan. The court finds that the Plan Agent provided sufficient information regarding the Reorganized Debtor's financial performance under the confirmed plan to address the need for such information for purposes of Rule 2004 and declines to permit further examination of the Plan Agent at this time.

## II. CONCLUSION

For the foregoing reasons, the court will deny the Rule 2004 Motion on the merits. The court will also deny the Plan Agent's Protective Order Motion as moot since no protective order is needed because the court is denying the relief requested by Chrismas. A separate final order consistent with this memorandum decision is being filed and entered concurrently herewith.

IT IS SO ORDERED.

###

Date: December 6, 2019

Robert Kwan
United States Bankruptcy Judge

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Transfers Between Ace Museum and Ace Gallery New York

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---|---|
| 02/22/2013 | $ (10,000.00) | $ (10,000.00) |
| 03/07/2013 | 7,500.00 | (2,500.00) |
| 03/07/2013 | (5,500.00) | (8,000.00) |
| 03/11/2013 | 135,000.00 | 127,000.00 |
| 03/20/2013 | 3,000.00 | 130,000.00 |
| 03/25/2013 | 84,000.00 | 214,000.00 |
| 04/01/2013 | (1,000.00) | 213,000.00 |
| 04/02/2013 | 1,000.00 | 214,000.00 |
| 04/02/2013 | (9,000.00) | 205,000.00 |
| 04/05/2013 | (11,000.00) | 194,000.00 |
| 04/09/2013 | (3,000.00) | 191,000.00 |
| 04/10/2013 | (2,500.00) | 188,500.00 |
| 04/17/2013 | 33,000.00 | 221,500.00 |
| 04/18/2013 | 3,500.00 | 225,000.00 |
| 05/03/2013 | (6,000.00) | 219,000.00 |
| 05/10/2013 | (500.00) | 218,500.00 |
| 05/09/2013 | (1,000.00) | 217,500.00 |
| 05/13/2013 | (1,700.00) | 215,800.00 |
| 05/20/2013 | (1,800.00) | 214,000.00 |
| 05/21/2013 | 140,000.00 | 354,000.00 |
| 05/31/2013 | (8,000.00) | 346,000.00 |
| 06/06/2013 | 150,000.00 | 496,000.00 |
| 06/20/2013 | (2,400.00) | 493,600.00 |
| 07/05/2013 | 145,000.00 | 638,600.00 |
| 07/08/2013 | 40,000.00 | 678,600.00 |
| 07/22/2013 | 15,500.00 | 694,100.00 |
| 07/25/2013 | 25,000.00 | 719,100.00 |
| 08/06/2013 | 165,000.00 | 884,100.00 |
| 08/21/2013 | (2,000.00) | 882,100.00 |
| 09/12/2013 | (4,000.00) | 878,100.00 |
| 09/17/2013 | 165,000.00 | 1,043,100.00 |
| 09/17/2013 | 65,000.00 | 1,108,100.00 |
| 09/18/2013 | 1,000.00 | 1,109,100.00 |
| 10/01/2013 | (4,000.00) | 1,105,100.00 |
| 10/17/2013 | 535.00 | 1,105,635.00 |
| 10/22/2013 | 66,000.00 | 1,171,635.00 |
| 11/01/2013 | (30,000.00) | 1,141,635.00 |
| 11/14/2013 | (15,000.00) | 1,126,635.00 |
| 11/21/2013 | 5,000.00 | 1,131,635.00 |
| 11/25/2013 | 165,000.00 | 1,296,635.00 |
| 11/26/2013 | 7,500.00 | 1,304,135.00 |
| 12/02/2013 | 1,700.00 | 1,305,835.00 |
| 12/03/2013 | 85,000.00 | 1,390,835.00 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Transfers Between Ace Museum and Ace Gallery New York

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---|---|
| 12/04/2013 | 3,687.02 | 1,394,522.02 |
| 12/13/2013 | 224,000.00 | 1,618,522.02 |
| 12/13/2013 | 7,000.00 | 1,625,522.02 |
| 12/19/2013 | 25,500.00 | 1,651,022.02 |
| 12/20/2013 | 4,000.00 | 1,655,022.02 |
| 01/17/2014 | 165,000.00 | 1,820,022.02 |
| 01/17/2014 | 500.00 | 1,820,522.02 |
| 02/12/2014 | (4,500.00) | 1,816,022.02 |
| 02/18/2014 | 10,000.00 | 1,826,022.02 |
| 02/19/2014 | 170,000.00 | 1,996,022.02 |
| 02/19/2014 | 3,125.00 | 1,999,147.02 |
| 02/27/2014 | (3,500.00) | 1,995,647.02 |
| 03/06/2014 | (5,000.00) | 1,990,647.02 |
| 03/12/2014 | 3,000.00 | 1,993,647.02 |
| 03/14/2014 | (2,200.00) | 1,991,447.02 |
| 03/24/2014 | 15,800.00 | 2,007,247.02 |
| 04/01/2014 | (2,000.00) | 2,005,247.02 |
| 04/03/2014 | (12,000.00) | 1,993,247.02 |
| 04/10/2014 | (1,000.00) | 1,992,247.02 |
| 04/24/2014 | (100.00) | 1,992,147.02 |
| 04/24/2014 | (150.00) | 1,991,997.02 |
| 04/29/2014 | (5,000.00) | 1,986,997.02 |
| 05/06/2014 | (5,000.00) | 1,981,997.02 |
| 05/08/2014 | (39,000.00) | 1,942,997.02 |
| 05/09/2014 | (500.00) | 1,942,497.02 |
| 05/12/2014 | (85,150.00) | 1,857,347.02 |
| 05/14/2014 | (75,000.00) | 1,782,347.02 |
| 05/16/2014 | (1,700.00) | 1,780,647.02 |
| 05/28/2014 | 216,900.00 | 1,997,547.02 |
| 06/02/2014 | (1,000.00) | 1,996,547.02 |
| 06/02/2014 | (9,400.00) | 1,987,147.02 |
| 06/02/2014 | (38,000.00) | 1,949,147.02 |
| 06/17/2014 | 153,000.00 | 2,102,147.02 |
| 06/18/2014 | 1,550.00 | 2,103,697.02 |
| 06/18/2014 | (1,050.00) | 2,102,647.02 |
| 06/24/2014 | (70.00) | 2,102,577.02 |
| 07/14/2014 | (3,000.00) | 2,099,577.02 |
| 07/25/2014 | 100,000.00 | 2,199,577.02 |
| 07/25/2014 | 5,000.00 | 2,204,577.02 |
| 08/18/2014 | 24,000.00 | 2,228,577.02 |
| 08/28/2014 | (18,000.00) | 2,210,577.02 |
| 09/02/2014 | (2,500.00) | 2,208,077.02 |
| 09/04/2014 | (650.00) | 2,207,427.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Transfers Between Ace Museum and Ace Gallery New York

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---|---|
| 09/05/2014 | (200.00) | 2,207,227.02 |
| 09/08/2014 | (800.00) | 2,206,427.02 |
| 09/09/2014 | (500.00) | 2,205,927.02 |
| 09/10/2014 | (100.00) | 2,205,827.02 |
| 09/12/2014 | (3,300.00) | 2,202,527.02 |
| 09/22/2014 | 226,300.00 | 2,428,827.02 |
| 09/25/2014 | 7,300.00 | 2,436,127.02 |
| 09/26/2014 | 40,000.00 | 2,476,127.02 |
| 09/29/2014 | 20,000.00 | 2,496,127.02 |
| 10/01/2014 | (4,200.00) | 2,491,927.02 |
| 10/06/2014 | (16,000.00) | 2,475,927.02 |
| 10/16/2014 | (200.00) | 2,475,727.02 |
| 10/20/2014 | 500.00 | 2,476,227.02 |
| 10/21/2014 | 17,000.00 | 2,493,227.02 |
| 10/22/2014 | 1,200.00 | 2,494,427.02 |
| 10/27/2014 | 350.00 | 2,494,777.02 |
| 10/27/2014 | 10.00 | 2,494,787.02 |
| 10/28/2014 | 10.00 | 2,494,797.02 |
| 11/04/2014 | (30.00) | 2,494,767.02 |
| 11/04/2014 | (300.00) | 2,494,467.02 |
| 11/10/2014 | (160.00) | 2,494,307.02 |
| 11/12/2014 | 300.00 | 2,494,607.02 |
| 11/19/2014 | (60.00) | 2,494,547.02 |
| 11/21/2014 | (1,000.00) | 2,493,547.02 |
| 11/21/2014 | (2,260.00) | 2,491,287.02 |
| 12/04/2014 | 4,500.00 | 2,495,787.02 |
| 12/08/2014 | (30.00) | 2,495,757.02 |
| 12/08/2014 | (50.00) | 2,495,707.02 |
| 12/10/2014 | (100.00) | 2,495,607.02 |
| 12/12/2014 | (550.00) | 2,495,057.02 |
| 12/12/2014 | (3,500.00) | 2,491,557.02 |
| 12/15/2014 | (200.00) | 2,491,357.02 |
| 12/23/2014 | 1,400.00 | 2,492,757.02 |
| 12/23/2014 | (7,200.00) | 2,485,557.02 |
| 01/02/2015 | 500.00 | 2,486,057.02 |
| 01/02/2015 | 500.00 | 2,486,557.02 |
| 01/02/2015 | (900.00) | 2,485,657.02 |
| 01/06/2015 | 2,600.00 | 2,488,257.02 |
| 01/06/2015 | 2,000.00 | 2,490,257.02 |
| 01/08/2015 | (800.00) | 2,489,457.02 |
| 01/09/2015 | (230.00) | 2,489,227.02 |
| 01/12/2015 | (200.00) | 2,489,027.02 |
| 01/15/2015 | (15.00) | 2,489,012.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Transfers Between Ace Museum and Ace Gallery New York

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---|---|
| 01/16/2015 | 173,000.00 | 2,662,012.02 |
| 01/16/2015 | 15,000.00 | 2,677,012.02 |
| 01/21/2015 | 70,000.00 | 2,747,012.02 |
| 02/03/2015 | (10,000.00) | 2,737,012.02 |
| 02/12/2015 | (30,000.00) | 2,707,012.02 |
| 02/18/2015 | 100,000.00 | 2,807,012.02 |
| 02/18/2015 | 10,000.00 | 2,817,012.02 |
| 02/18/2015 | 3,000.00 | 2,820,012.02 |
| 03/09/2015 | (50.00) | 2,819,962.02 |
| 03/09/2015 | (29,700.00) | 2,790,262.02 |
| 03/10/2015 | (200.00) | 2,790,062.02 |
| 03/11/2015 | (250.00) | 2,789,812.02 |
| 03/11/2015 | (260.00) | 2,789,552.02 |
| 03/19/2015 | 228,000.00 | 3,017,552.02 |
| 03/19/2015 | 5,000.00 | 3,022,552.02 |
| 03/30/2015 | (5,000.00) | 3,017,552.02 |
| 03/31/2015 | (100.00) | 3,017,452.02 |
| 04/08/2015 | (2,600.00) | 3,014,852.02 |
| 04/24/2015 | 229,000.00 | 3,243,852.02 |
| 05/05/2015 | (5,000.00) | 3,238,852.02 |
| 05/05/2015 | (10,000.00) | 3,228,852.02 |
| 05/06/2015 | (1,000.00) | 3,227,852.02 |
| 05/14/2015 | (3,000.00) | 3,224,852.02 |
| 05/18/2015 | 160,000.00 | 3,384,852.02 |
| 05/21/2015 | 66,600.00 | 3,451,452.02 |
| 05/22/2015 | (800.00) | 3,450,652.02 |
| 06/08/2015 | (6,000.00) | 3,444,652.02 |
| 06/29/2015 | (5,000.00) | 3,439,652.02 |
| 07/01/2015 | (5,000.00) | 3,434,652.02 |
| 07/03/2015 | (16,000.00) | 3,418,652.02 |
| 07/21/2015 | 150,000.00 | 3,568,652.02 |
| 07/23/2015 | 2,000.00 | 3,570,652.02 |
| 07/29/2015 | 40,000.00 | 3,610,652.02 |
| 08/03/2015 | 14,180.00 | 3,624,832.02 |
| 08/06/2015 | (33,000.00) | 3,591,832.02 |
| 08/20/2015 | (600.00) | 3,591,232.02 |
| 08/20/2015 | (1,000.00) | 3,590,232.02 |
| 09/02/2015 | (2,000.00) | 3,588,232.02 |
| 09/02/2015 | (30,000.00) | 3,558,232.02 |
| 09/23/2015 | (300.00) | 3,557,932.02 |
| 09/29/2015 | (200.00) | 3,557,732.02 |
| 09/30/2015 | 234,000.00 | 3,791,732.02 |
| 10/01/2015 | (600.00) | 3,791,132.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**Transfers Between Ace Museum and Ace Gallery New York**

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---|---|
| 10/02/2015 | (2,500.00) | 3,788,632.02 |
| 10/05/2015 | 200,000.00 | 3,988,632.02 |
| 10/19/2015 | 26,000.00 | 4,014,632.02 |
| 10/26/2015 | 3,000.00 | 4,017,632.02 |
| 11/04/2015 | 190,000.00 | 4,207,632.02 |
| 12/14/2015 | 112,000.00 | 4,319,632.02 |
| 01/14/2016 | 26,000.00 | 4,345,632.02 |
| 01/25/2016 | 60,000.00 | 4,405,632.02 |
| 01/29/2016 | 170,000.00 | 4,575,632.02 |
| 02/03/2016 | 10,000.00 | 4,585,632.02 |
| 02/22/2016 | 2,400.00 | 4,588,032.02 |
| 02/26/2016 | 73,000.00 | 4,661,032.02 |
| 02/29/2016 | 75,000.00 | 4,736,032.02 |
| 03/07/2016 | 1,300.00 | 4,737,332.02 |
| 03/16/2016 | 1,000.00 | 4,738,332.02 |
| 03/17/2016 | 1,000.00 | 4,739,332.02 |
| 03/21/2016 | 5,000.00 | 4,744,332.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AD**

**TRANSFERS BETWEEN DEBTOR AND ACE MUSEUM**

**CITY NATIONAL BANK (CNB)**

| | Date per Bank Statement | | Ace Museum Transfers In From (Out To) Debtor | From Account | Deposited into Account |
|---|---|---|---|---|---|
| | **Transfers In From Debtor To Ace Museum:** | | | | |
| | 03/18/2014 | $ | 150,000.00 | CNB #8402 | CNB #6347 |
| | 12/23/2015 | $ | 62,180.00 | CNB #8402 | CNB #6347 |
| | 02/26/2016 | $ | 60,000.00 | CNB #8402 | CNB #6347 |
| | 03/30/2016 | $ | 50,000.00 | CNB #8402 | CNB #6347 |
| [A] | **Total Transfers In From Debtor To Ace Museum** | $ | 322,180.00 | | |
| | **Transfers (Out To) Debtor From Ace Museum:** | | | | |
| | 04/08/2013 | $ | (20,000.00) | CNB #6347 | CNB #8402 |
| | 04/08/2013 | $ | (40,000.00) | CNB #6347 | CNB #8402 |
| | 04/11/2013 | $ | (78,000.00) | CNB #6347 | CNB #8402 |
| | 04/12/2013 | $ | (75,000.00) | CNB #6347 | CNB #8402 |
| | 04/19/2013 | $ | (10,000.00) | CNB #6347 | CNB #8402 |
| | 04/23/2013 | $ | (22,000.00) | CNB #6347 | CNB #8402 |
| | 07/22/2013 | $ | (15,000.00) | CNB #6347 | CNB #8402 |
| | 07/26/2013 | $ | (25,000.00) | CNB #6347 | CNB #8402 |
| | 08/06/2013 | $ | (15,000.00) | CNB #6347 | CNB #8402 |
| | 09/09/2013 | $ | (72,000.00) | CNB #6347 | CNB #8402 |
| | 09/13/2013 | $ | (10,000.00) | CNB #6347 | CNB #8402 |
| | 09/17/2013 | $ | (65,000.00) | CNB #6347 | CNB #8402 |
| | 10/04/2013 | $ | (11,000.00) | CNB #6347 | CNB #8402 |
| | 11/07/2013 | $ | (9,000.00) | CNB #6347 | CNB #8402 |
| | 11/14/2013 | $ | (45,000.00) | CNB #6347 | CNB #8402 |
| | 11/21/2013 | $ | (5,000.00) | CNB #6347 | CNB #8402 |
| | 11/22/2013 | $ | (7,500.00) | CNB #6347 | CNB #8402 |
| | 12/03/2013 | $ | (85,000.00) | CNB #6347 | CNB #8402 |
| | 12/04/2013 | $ | (5,187.02) | CNB #6347 | CNB #8402 |
| | 12/12/2013 | $ | (50,000.00) | CNB #6347 | CNB #8402 |
| | 12/13/2013 | $ | (16,000.00) | CNB #6347 | CNB #8402 |
| | 12/17/2013 | $ | (550.00) | CNB #6347 | CNB #8402 |
| | 12/19/2013 | $ | (22,800.00) | CNB #6347 | CNB #8402 |
| | 12/20/2013 | $ | (4,000.00) | CNB #6347 | CNB #8402 |
| | 01/28/2014 | $ | (10,000.00) | CNB #6347 | CNB #8402 |
| | 02/18/2014 | $ | (5,000.00) | CNB #6347 | CNB #8402 |
| | 02/20/2014 | $ | (13,000.00) | CNB #6347 | CNB #8402 |
| | 03/04/2014 | $ | (10,000.00) | CNB #6347 | CNB #8402 |
| | 03/12/2014 | $ | (6,000.00) | CNB #6347 | CNB #8402 |
| | 03/18/2014 | $ | (1,000.00) | CNB #6347 | CNB #8402 |
| | 03/18/2014 | $ | (5,000.00) | CNB #6347 | CNB #8402 |
| | 03/24/2014 | $ | (15,800.00) | CNB #6347 | CNB #8402 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AD**

**TRANSFERS BETWEEN DEBTOR AND ACE MUSEUM**

**CITY NATIONAL BANK (CNB)**

| | Date per Bank Statement | Ace Museum Transfers In From (Out To) Debtor | From Account | Deposited into Account |
|---|---|---|---|---|
| | 04/08/2014 | $ (3,600.00) | CNB #6347 | CNB #8402 |
| | 04/10/2014 | $ (2,500.00) | CNB #6347 | CNB #8402 |
| | 06/09/2014 | $ (44,000.00) | CNB #6347 | CNB #8402 |
| | 07/08/2014 | $ (22,000.00) | CNB #6347 | CNB #8402 |
| | 07/21/2014 | $ (46,000.00) | CNB #6347 | CNB #8402 |
| | 08/06/2014 | $ (13,000.00) | CNB #6347 | CNB #8402 |
| | 08/25/2014 | $ (15,000.00) | CNB #6347 | CNB #8402 |
| | 08/26/2014 | $ (6,000.00) | CNB #6347 | CNB #2337 |
| | 09/05/2014 | $ (8,000.00) | CNB #6347 | CNB #8402 |
| | 09/19/2014 | $ (60,000.00) | CNB #6347 | CNB #8402 |
| | 09/23/2014 | $ (500.00) | CNB #6347 | CNB #8402 |
| | 09/25/2014 | $ (7,000.00) | CNB #6347 | CNB #8402 |
| | 10/06/2014 | $ (6,000.00) | CNB #6347 | CNB #8402 |
| | 10/23/2014 | $ (400.00) | CNB #6347 | CNB #8402 |
| | 10/23/2014 | $ (3,300.00) | CNB #6347 | CNB #8402 |
| | 11/03/2014 | $ (19,500.00) | CNB #6347 | CNB #8402 |
| | 11/04/2014 | $ (2,000.00) | CNB #6347 | CNB #8402 |
| | 11/05/2014 | $ (2,300.00) | CNB #6347 | CNB #8402 |
| | 11/20/2014 | $ (176,000.00) | CNB #6347 | CNB #8402 |
| | 12/02/2014 | $ (10,000.00) | CNB #6347 | CNB #8402 |
| | 12/18/2014 | $ (34,000.00) | CNB #6347 | CNB #8402 |
| | 01/06/2015 | $ (2,600.00) | CNB #6347 | CNB #8402 |
| | 02/04/2015 | $ (8,000.00) | CNB #6347 | CNB #8402 |
| | 04/03/2015 | $ (20,000.00) | CNB #6347 | CNB #8402 |
| | 04/09/2015 | $ (2,000.00) | CNB #6347 | CNB #8402 |
| | 05/14/2015 | $ (4,500.00) | CNB #6347 | CNB #8402 |
| | 06/02/2015 | $ (57,000.00) | CNB #6347 | CNB #8402 |
| | 10/02/2015 | $ (3,500.00) | CNB #6347 | CNB #8402 |
| | 01/14/2016 | $ (40,000.00) | CNB #6347 | CNB #8402 |
| | 02/04/2016 | $ (27,155.00) | CNB #6347 | CNB #8402 |
| | 04/04/2016 | $ (15,000.00) | CNB #6347 | CNB #8402 |
| [B] | **Total Transfers (Out To) Debtor From Ace Museum** | $ (1,434,692.02) | | |
| [A] + [B] | **Ace Museum - Net Transfers In From (Out To) Debtor** | $ (1,112,512.02) | | |

BRG

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AE**
**TRANSFERS BETWEEN DEBTOR AND ACE GALLERY NEW YORK CORPORATION**
**CITY NATIONAL BANK (CNB)**

| | Date per Bank Statement | | Ace Gallery New York Corporation Transfers In From (Out To) Debtor | From Account | Deposited into Account |
|---|---|---|---|---|---|
| | **Transfers In From Debtor To Ace Gallery New York Corporation:** | | | | |
| | 09/29/2014 | | 20,000.00 | CNB #8402 | CNB #0229 |
| [A] | **Total Transfers In From Debtor To Ace Gallery New York Corporation** | $ | 20,000.00 | | |
| | **Transfers (Out To) Debtor From Ace Gallery New York Corporation:** | | | | |
| | 03/06/2013 | $ | (55,000.00) | CNB #0229 | CNB #8402 |
| | 03/07/2013 | $ | (10,464.00) | CNB #0229 | CNB #8402 |
| | 03/07/2013 | $ | (145,000.00) | CNB #0229 | CNB #8402 |
| | 03/22/2013 | $ | (400.00) | CNB #0229 | CNB #8402 |
| | 03/28/2013 | $ | (47,808.09) | CNB #0229 | CNB #2337 |
| | 05/21/2013 | $ | (255,000.00) | CNB #0229 | CNB #8402 |
| | 05/23/2013 | $ | (47,808.09) | CNB #0229 | CNB #2337 |
| | 06/01/2013 | $ | (4,000.00) | CNB #0229 | CNB #2337 |
| | 07/10/2013 | $ | (4,000.00) | CNB #0229 | CNB #2337 |
| | 08/30/2013 | $ | (4,000.00) | CNB #0229 | CNB #2337 |
| | 10/17/2013 | $ | (57,742.59) | CNB #0229 | CNB #8402 |
| | 01/07/2014 | $ | (130,000.00) | CNB #0229 | CNB #8402 |
| | 01/17/2014 | $ | (10,000.00) | CNB #0229 | CNB #8402 |
| | 01/17/2014 | $ | (52,000.00) | CNB #0229 | CNB #8402 |
| | 01/24/2014 | $ | (24,000.00) | CNB #0229 | CNB #8402 |
| | 02/06/2014 | $ | (21,000.00) | CNB #0229 | CNB #8402 |
| | 02/07/2014 | $ | (145,000.00) | CNB #0229 | CNB #8402 |
| | 04/09/2014 | $ | (125,000.00) | CNB #0229 | CNB #8402 |
| | 05/01/2014 | $ | (40,000.00) | CNB #0229 | CNB #8402 |
| | 05/13/2014 | $ | (60,000.00) | CNB #0229 | CNB #2337 |
| | 05/14/2014 | $ | (75,000.00) | CNB #0229 | CNB #8402 |
| | 06/02/2014 | $ | (30,400.00) | CNB #0229 | CNB #8402 |
| | 07/01/2014 | $ | (250,000.00) | CNB #0229 | CNB #8402 |
| | 07/10/2014 | $ | (83,500.00) | CNB #0229 | CNB #8402 |
| | 07/30/2014 | $ | (25,000.00) | CNB #0229 | CNB #8402 |
| | 08/07/2014 | $ | (200,000.00) | CNB #0229 | CNB #8402 |
| | 08/13/2014 | $ | (40,000.00) | CNB #0229 | CNB #8402 |
| | 12/18/2014 | $ | (318,000.00) | CNB #0229 | CNB #8402 |
| | 01/02/2015 | $ | (215,000.00) | CNB #0229 | CNB #8402 |
| | 01/20/2015 | $ | (20,000.00) | CNB #0229 | CNB #8402 |
| | 02/18/2015 | $ | (25,000.00) | CNB #0229 | CNB #8402 |
| | 03/09/2015 | $ | (34,900.00) | CNB #0229 | CNB #8402 |
| | 03/20/2015 | $ | (13,080.00) | CNB #0229 | CNB #8402 |
| | 03/20/2015 | $ | (15,000.00) | CNB #0229 | CNB #8402 |
| | 04/02/2015 | $ | (30,000.00) | CNB #0229 | CNB #8402 |
| | 04/13/2015 | $ | (15,000.00) | CNB #0229 | CNB #8402 |
| | 04/14/2015 | $ | (5,000.00) | CNB #0229 | CNB #8402 |
| | 04/22/2015 | $ | (20,000.00) | CNB #0229 | CNB #8402 |
| | 04/24/2015 | $ | (172,000.00) | CNB #0229 | CNB #8402 |
| | 05/15/2015 | $ | (100,000.00) | CNB #0229 | CNB #8402 |
| | 05/18/2015 | $ | (10,000.00) | CNB #0229 | CNB #8402 |
| | 06/02/2015 | $ | (24,000.00) | CNB #0229 | CNB #8402 |
| | 06/09/2015 | $ | (150,000.00) | CNB #0229 | CNB #8402 |
| | 06/10/2015 | $ | (32,000.00) | CNB #0229 | CNB #8402 |
| | 06/15/2015 | $ | (5,000.00) | CNB #0229 | CNB #8402 |
| | 07/03/2015 | $ | (16,000.00) | CNB #4733 | CNB #8402 |
| | 07/07/2015 | $ | (16,000.00) | CNB #0229 | CNB #8437 |
| | 07/08/2015 | $ | (75,000.00) | CNB #0229 | CNB #8402 |
| | 07/14/2015 | $ | (26,000.00) | CNB #0229 | CNB #8402 |
| | 07/16/2015 | $ | (40,000.00) | CNB #0229 | CNB #8402 |
| | 08/04/2015 | $ | (159,970.00) | CNB #0229 | CNB #8402 |
| | 08/06/2015 | $ | (40,000.00) | CNB #0229 | CNB #8402 |
| | 08/11/2015 | $ | (20,000.00) | CNB #0229 | CNB #8402 |
| | 08/14/2015 | $ | (1,000.00) | CNB #0229 | CNB #8402 |
| | 09/02/2015 | $ | (32,000.00) | CNB #0229 | CNB #8402 |
| | 09/16/2015 | $ | (20,000.00) | CNB #4733 | CNB #8402 |
| | 09/17/2015 | $ | (100,000.00) | CNB #4733 | CNB #8402 |
| | 09/21/2015 | $ | (3,000.00) | CNB #4733 | CNB #8402 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AE**

**TRANSFERS BETWEEN DEBTOR AND ACE GALLERY NEW YORK CORPORATION**

**CITY NATIONAL BANK (CNB)**

| | Date per Bank Statement | | Ace Gallery New York Corporation Transfers In From (Out To) Debtor | From Account | Deposited into Account |
|---|---|---|---|---|---|
| | 10/05/2015 | $ | (250,000.00) | CNB #4733 | CNB #8402 |
| | 10/06/2015 | $ | (160,000.00) | CNB #4733 | CNB #8402 |
| | 10/08/2015 | $ | (30,000.00) | CNB #4733 | CNB #8402 |
| | 10/09/2015 | $ | (190,000.00) | CNB #4733 | CNB #8402 |
| | 11/03/2015 | $ | (40,000.00) | CNB #4733 | CNB #8402 |
| | 11/20/2015 | $ | (160,000.00) | CNB #4733 | CNB #8402 |
| | 03/15/2016 | $ | (6,000.00) | CNB #4733 | CNB #8402 |
| | 04/04/2016 | $ | (2,000.00) | CNB #4733 | CNB #8402 |
| [B] | **Total Transfers (Out To) Debtor From Ace Gallery New York Corporation** | $ | (4,533,072.77) | | |
| [A] + [B] | **Ace Gallery New York Corporation - Net Transfers In From (Out To) Debtor** | $ | (4,513,072.77) | | |

BRG

USAO_00014169

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Citibank, N.A. 833
P. O. Box 26892
San Francisco, CA 94126-6892

86395/R1/20F013/0
008
CITIBANK, N.A.
**Account**
**203269097**
**Statement Period**
**Apr. 1 - Apr. 30, 2010**
**Relationship Manager**
US SERVICE CENTER
1-877-528-0990

Page 1 of 2

ACE MUSEUM
5514 WILSHIRE BL Floor 2ND
LOS ANGELES CA 90036

## CitiBusiness® ACCOUNT AS OF APRIL 30, 2010

| Relationship Summary: | |
|---|---|
| Checking | $6,764.65 |
| Savings | ----- |
| Investments (not FDIC insured) | ----- |
| Checking Plus | ----- |

## SERVICE CHARGE SUMMARY FROM MARCH 1, 2010 THRU MARCH 31, 2010

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **STREAMLINED CHECKING # 203269097** | | | |
| Average Daily Collected Balance | | | $47,968.69 |
| DEPOSIT SERVICES | | | |
| OFFICIAL CHECK | 1 | 10.0000 | 10.00 |
| CHECKS, DEP ITEMS/TICKETS, ACH | 14 | .3000 | 4.20 |
| **FEE WAIVE | | | |
| **Total Charges for Services** | | | **$10.00** |
| **Net Service Charge** | | | **$10.00** |

Charges debited from account # 203269097

## CHECKING ACTIVITY

**CitiBusiness Streamlined Checking**
**0203269097**

**Beginning Balance:** $54,106.35
**Ending Balance:** $6,764.65

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 4/01 | DEPOSIT | | 5,500.00 | 59,606.35 |
| 4/01 | CHECK NO: 4056 | 2,325.00 | | 57,281.35 |
| 4/08 | SERVICE CHARGE<br>ACCT ANALYSIS DIRECT DB | 10.00 | | 57,271.35 |
| 4/09 | WIRE TRANSFER<br>WIRE FROM ART AN ARCHITECT RE BOOKS OF Apr 09 | | 350,000.00 | 407,271.35 |
| 4/12 | CHECK NO: 4059 | 400,000.00 | | 7,271.35 |
| 4/12 | SERVICE CHARGE<br>INCOMING WIRE FEE F000099049EA01 Apr 12 | 10.00 | | 7,261.35 |
| 4/13 | CHECK NO: 4062 | 359.36 | | 6,901.99 |
| 4/14 | CHECK NO: 4063 | 5,000.00 | | 1,901.99 |
| 4/16 | CHECK NO: 4060 | 23.16 | | 1,878.83 |
| 4/16 | CHECK NO: 4061 | 22.68 | | 1,856.15 |
| 4/20 | CHECK NO: 4064 | 481.50 | | 1,374.65 |
| 4/26 | CHECK NO: 4058 | 110.00 | | 1,264.65 |
| 4/30 | DEPOSIT | | 5,500.00 | 6,764.65 |
| | **Total Debits/Credits** | **408,341.70** | **361,000.00** | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

支票帳戶存款單
**CHECKING ACCOUNT DEPOSIT TICKET**
**CATHAY BANK**

OPS-2003-R (03/07)

姓名 NAME 400 S La Brea LLC
日期 DATE 4/8/10

SIGN HERE FOR CASH RECEIVED
領現金需在此簽字

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL.
存款可能無法立即取用

支票帳號 CHECKING ACCOUNT NO.
0004031679

| | |
|---|---|
| 現鈔 CURRENCY | |
| 硬幣 COIN | |
| 支票 CHECKS | |
| 90-7172/3222 | 400000.— |
| | |
| (OR TOTAL FROM OTHER SIDE) | |
| SUB TOTAL | |
| LESS CASH RECEIVED | |
| 存款總額 TOTAL DEPOSIT $ | 400000.— |

⑆5021⑈0395⑆

ENTERED

4059

**ACE MUSEUM**
400 S. LA BREA
LOS ANGELES, CA 90036

**CITIBANK, N.A. BR. #833**
LOS ANGELES, CA 90036
90-7172-3222

PAY $400,000 and No/100 Dollars

DATE 4/8/10 AMOUNT $400,000.00

TO THE ORDER OF

400 S. LA BREA LLC

AUTHORIZED SIGNATURE

Memo: RENT FOR JAN, FEB, MAR, APR OF 2010

⑈004059⑈ ⑆322271724⑆ 203269097⑈

USAO_00014171

**400 S LA BREA LLC**
910 Broadway, Suite 110
Santa Monica, CA 90401

**Statement**

**Account** 400 acemuse ACE MUSEUM
**Prop Name** 400 S LA BREA, LLC
**Assigned Spaces**

Douglas Chrismas
ACE MUSEUM
5514 Wilshire Blvd.
Los Angeles, CA 90036

**Date** 09/20/2017
**Payment** $ ____________

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 12/01/2007 | Property Tax - 1st Installment | 114,623.28 | 0.00 | 114,623.28 |
| 12/04/2007 | Chk# 1426 | 0.00 | 114,623.28 | 0.00 |
| 01/01/2008 | Chk# 170000287 | 0.00 | 1,500,000.00 | -1,500,000.00 |
| 01/01/2008 | Base Rent Commercial (01-Aug-2008..30-Jun-2009) | 1,500,000.00 | 0.00 | 0.00 |
| 03/01/2008 | Property Tax - 2nd Installment | 114,623.27 | 0.00 | 114,623.27 |
| 03/21/2008 | Chk# 2039 | 0.00 | 114,623.27 | 0.00 |
| 04/09/2008 | Insurance permium (04/05/08 - 04/05/09) | 5,573.00 | 0.00 | 5,573.00 |
| 04/17/2008 | Chk# 2184 | 0.00 | 5,573.00 | 0.00 |
| 07/01/2008 | Wire Transfer | 0.00 | 1,000,000.00 | -1,000,000.00 |
| 07/01/2008 | Deposit on purchase of property | 1,000,000.00 | 0.00 | 0.00 |
| 10/17/2008 | Property Tax - 1st Installment (Jul 2008...June 2009) - 420 | 61,840.31 | 0.00 | 61,840.31 |
| 10/17/2008 | Property Tax - 1st Installment (Jul 2008...June 2009) - 407 | 56,683.68 | 0.00 | 118,523.99 |
| 12/01/2008 | Chk# 3400 | 0.00 | 50,000.00 | 68,523.99 |
| 12/08/2008 | Chk# 3428 - Reversed by ctrl#6599 | 0.00 | 68,523.99 | 0.00 |
| 12/15/2008 | Chk# 3428 - NSF receipt Ctrl# 6524 Stop Payment | 0.00 | -68,523.99 | 68,523.99 |
| 12/15/2008 | Returned check charge | 25.00 | 0.00 | 68,548.99 |
| 12/31/2008 | Additional bank charges (NSF check) | 66.01 | 0.00 | 68,615.00 |
| 01/23/2009 | Chk# 170001109 | 0.00 | 69,270.50 | -655.50 |
| 01/23/2009 | Interest - unpaid property tax (07/2008...06/2009) | 655.50 | 0.00 | 0.00 |
| 02/10/2009 | Property Tax - 2nd Installment (Jul 2008...June 2009) - | 61,840.30 | 0.00 | 61,840.30 |
| 02/10/2009 | Property Tax - 2nd Installment (Jul 2008...June 2009) - | 56,683.68 | 0.00 | 118,523.98 |
| 07/06/2009 | Wire Transfer | 0.00 | 132,677.96 | -14,153.98 |
| 07/06/2009 | Penalty & Interest - unpaid property tax (2nd installment | 14,153.98 | 0.00 | 0.00 |
| 08/28/2009 | Base Rent Commercial - Aug & Sept 2009 | 200,000.00 | 0.00 | 200,000.00 |
| 08/31/2009 | Chk# 4012 | 0.00 | 200,000.00 | 0.00 |
| 10/01/2009 | Chk# 4020 | 0.00 | 100,000.00 | -100,000.00 |
| 10/01/2009 | Base Rent Commercial (10/2009) | 100,000.00 | 0.00 | 0.00 |
| 10/28/2009 | Property Tax - 1st Installment (Jul 2009...Jun 2010) - 420 | 59,169.67 | 0.00 | 59,169.67 |
| 10/28/2009 | Property Tax - 1st Installment (Jul 2009...Jun 2010) - 407 | 64,664.07 | 0.00 | 123,833.74 |
| 11/01/2009 | Base Rent Commercial (11/2009) | 100,000.00 | 0.00 | 223,833.74 |
| 11/30/2009 | Chk# 4032 | 0.00 | 100,000.00 | 123,833.74 |
| 12/01/2009 | Base Rent Commercial (12/2009) | 100,000.00 | 0.00 | 223,833.74 |
| 12/10/2009 | Wire Transfer | 0.00 | 123,833.74 | 100,000.00 |
| 01/01/2010 | Base Rent Commercial (01/2010) | 100,000.00 | 0.00 | 200,000.00 |
| 02/01/2010 | Base Rent Commercial (02/2010) | 100,000.00 | 0.00 | 300,000.00 |
| 03/01/2010 | Base Rent Commercial (03/2010) | 100,000.00 | 0.00 | 400,000.00 |
| 03/08/2010 | Chk# 311005464 | 0.00 | 100,000.00 | 300,000.00 |
| 04/01/2010 | Base Rent Commercial (04/2010) | 100,000.00 | 0.00 | 400,000.00 |
| 04/08/2010 | Chk# 4059 | 0.00 | 400,000.00 | 0.00 |
| 05/01/2010 | Base Rent Commercial (05/2010) | 125,000.00 | 0.00 | 125,000.00 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 2,427,148.02 | 2,427,148.02 |

400 SLB 003348

EXHIBIT X - 484

USAO_00014172

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AG**

**PRE-PETITION TRANSFERS BETWEEN DEBTOR AND ACE MUSEUM**

| Date | Debtor Account | Debtor Transfers In From (Out To) Ace Museum | Cumulative Balance |
|---|---|---|---|
| 07/17/2009 | Union Bank of California | $ 250,000.00 | $ 250,000.00 |
| 07/17/2009 | Union Bank of California | $ 250,000.00 | $ 500,000.00 |
| 08/27/2009 | Union Bank of California | $ 120,000.00 | $ 620,000.00 |
| 09/11/2009 | Union Bank of California | $ 150,000.00 | $ 770,000.00 |
| 10/06/2009 | Union Bank of California | $ 40,000.00 | $ 810,000.00 |
| 11/25/2009 | Union Bank of California | $ 800,000.00 | $ 1,610,000.00 |
| 12/21/2009 | Union Bank of California | $ 98,000.00 | $ 1,708,000.00 |
| 02/08/2010 | Union Bank of California | $ 280,000.00 | $ 1,988,000.00 |
| 03/03/2010 | City National Bank | $ 300,000.00 | $ 2,288,000.00 |
| 04/09/2010 | City National Bank | $ (350,000.00) | $ 1,938,000.00 |
| 05/17/2010 | City National Bank | $ - | $ 1,938,000.00 |
| 05/18/2010 | City National Bank | $ 825,000.00 | $ 2,763,000.00 |
| 06/15/2010 | City National Bank | $ (77,000.00) | $ 2,686,000.00 |
| 06/18/2010 | City National Bank | $ (1,000.00) | $ 2,685,000.00 |
| 07/23/2010 | City National Bank | $ - | $ 2,685,000.00 |
| 07/23/2010 | City National Bank | $ (126,000.00) | $ 2,559,000.00 |
| 08/17/2010 | City National Bank | $ - | $ 2,559,000.00 |
| 08/17/2010 | City National Bank | $ (125,000.00) | $ 2,434,000.00 |
| 08/25/2010 | City National Bank | $ (50,000.00) | $ 2,384,000.00 |
| 09/04/2010 | City National Bank | $ (125,000.00) | $ 2,259,000.00 |
| 10/14/2010 | City National Bank | $ 4,000.00 | $ 2,263,000.00 |
| 10/20/2010 | City National Bank | $ (127,000.00) | $ 2,136,000.00 |
| 11/04/2010 | City National Bank | $ (125,000.00) | $ 2,011,000.00 |
| 12/13/2010 | City National Bank | $ (125,000.00) | $ 1,886,000.00 |
| 12/15/2010 | City National Bank | $ 1,800.00 | $ 1,887,800.00 |
| 01/11/2011 | City National Bank | $ (128,000.00) | $ 1,759,800.00 |
| 02/22/2011 | City National Bank | $ (125,000.00) | $ 1,634,800.00 |
| 03/01/2011 | City National Bank | $ 4,500.00 | $ 1,639,300.00 |
| 03/22/2011 | City National Bank | $ - | $ 1,639,300.00 |
| 03/22/2011 | City National Bank | $ - | $ 1,639,300.00 |
| 03/23/2011 | City National Bank | $ (141,000.00) | $ 1,498,300.00 |
| 04/28/2011 | City National Bank | $ 2,200.00 | $ 1,500,500.00 |
| 05/05/2011 | City National Bank | $ (3,500.00) | $ 1,497,000.00 |
| 05/17/2011 | City National Bank | $ (127,500.00) | $ 1,369,500.00 |
| 06/06/2011 | City National Bank | $ (126,000.00) | $ 1,243,500.00 |
| 07/06/2011 | City National Bank | $ (1,100.00) | $ 1,242,400.00 |
| 07/18/2011 | City National Bank | $ (110,000.00) | $ 1,132,400.00 |
| 08/01/2011 | City National Bank | $ (31,000.00) | $ 1,101,400.00 |
| 08/02/2011 | City National Bank | $ (1,000.00) | $ 1,100,400.00 |
| 08/03/2011 | City National Bank | $ (116,000.00) | $ 984,400.00 |
| 09/26/2011 | City National Bank | $ (1,600.00) | $ 982,800.00 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AG**

**PRE-PETITION TRANSFERS BETWEEN DEBTOR AND ACE MUSEUM**

| Date | Debtor Account | Debtor Transfers In From (Out To) Ace Museum | Cumulative Balance |
|---|---|---|---|
| 10/04/2011 | City National Bank | $ (1,700.00) | $ 981,100.00 |
| 10/06/2011 | City National Bank | $ 3,000.00 | $ 984,100.00 |
| 10/17/2011 | City National Bank | $ (1,100.00) | $ 983,000.00 |
| 10/21/2011 | City National Bank | $ (4,200.00) | $ 978,800.00 |
| 10/25/2011 | City National Bank | $ (2,700.00) | $ 976,100.00 |
| 10/25/2011 | City National Bank | $ (1,900.00) | $ 974,200.00 |
| 10/28/2011 | City National Bank | $ (20.00) | $ 974,180.00 |
| 11/03/2011 | City National Bank | $ (400.00) | $ 973,780.00 |
| 11/17/2011 | City National Bank | $ (3,500.00) | $ 970,280.00 |
| 11/18/2011 | City National Bank | $ 50,000.00 | $ 1,020,280.00 |
| 11/23/2011 | City National Bank | $ (3,500.00) | $ 1,016,780.00 |
| 12/01/2011 | City National Bank | $ (10,000.00) | $ 1,006,780.00 |
| 12/02/2011 | City National Bank | $ (5,200.00) | $ 1,001,580.00 |
| 12/09/2011 | City National Bank | $ (700.00) | $ 1,000,880.00 |
| 12/19/2011 | City National Bank | $ - | $ 1,000,880.00 |
| 12/20/2011 | City National Bank | $ (800.00) | $ 1,000,080.00 |
| 01/03/2012 | City National Bank | $ (1,000.00) | $ 999,080.00 |
| 01/12/2012 | City National Bank | $ (13,700.00) | $ 985,380.00 |
| 01/27/2012 | City National Bank | $ (20.00) | $ 985,360.00 |
| 02/03/2012 | City National Bank | $ 50,000.00 | $ 1,035,360.00 |
| 02/06/2012 | City National Bank | $ 600.00 | $ 1,035,960.00 |
| 02/13/2012 | City National Bank | $ (5,000.00) | $ 1,030,960.00 |
| 02/23/2012 | City National Bank | $ 17,500.00 | $ 1,048,460.00 |
| 03/16/2012 | City National Bank | $ (10,000.00) | $ 1,038,460.00 |
| 03/19/2012 | City National Bank | $ (500.00) | $ 1,037,960.00 |
| 04/05/2012 | City National Bank | $ (750.00) | $ 1,037,210.00 |
| 04/16/2012 | City National Bank | $ 1,000.00 | $ 1,038,210.00 |
| 04/24/2012 | City National Bank | $ (6,300.00) | $ 1,031,910.00 |
| 04/27/2012 | City National Bank | $ 9,800.00 | $ 1,041,710.00 |
| 05/01/2012 | City National Bank | $ 49,900.00 | $ 1,091,610.00 |
| 05/09/2012 | City National Bank | $ (19,000.00) | $ 1,072,610.00 |
| 05/21/2012 | City National Bank | $ (9,000.00) | $ 1,063,610.00 |
| 05/25/2012 | City National Bank | $ (700.00) | $ 1,062,910.00 |
| 06/06/2012 | City National Bank | $ (9,200.00) | $ 1,053,710.00 |
| 06/15/2012 | City National Bank | $ (147,781.27) | $ 905,928.73 |
| 06/15/2012 | City National Bank | $ 2,500.00 | $ 908,428.73 |
| 06/18/2012 | City National Bank | $ 11,000.00 | $ 919,428.73 |
| 06/19/2012 | City National Bank | $ 20,500.00 | $ 939,928.73 |
| 06/19/2012 | City National Bank | $ 5,000.00 | $ 944,928.73 |
| 06/20/2012 | City National Bank | $ 10,000.00 | $ 954,928.73 |
| 06/26/2012 | City National Bank | $ 80,000.00 | $ 1,034,928.73 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AG**

**PRE-PETITION TRANSFERS BETWEEN DEBTOR AND ACE MUSEUM**

| Date | Debtor Account | | Debtor Transfers In From (Out To) Ace Museum | | Cumulative Balance |
|---|---|---|---|---|---|
| 06/29/2012 | City National Bank | $ | 26,000.00 | $ | 1,060,928.73 |
| 07/05/2012 | City National Bank | $ | (76,000.00) | $ | 984,928.73 |
| 07/09/2012 | City National Bank | $ | 5,000.00 | $ | 989,928.73 |
| 08/21/2012 | City National Bank | $ | 12,000.00 | $ | 1,001,928.73 |
| 08/28/2012 | City National Bank | $ | 9,700.00 | $ | 1,011,628.73 |
| 09/05/2012 | City National Bank | $ | (75,000.00) | $ | 936,628.73 |
| 09/20/2012 | City National Bank | $ | (88,000.00) | $ | 848,628.73 |
| 09/21/2012 | City National Bank | $ | 88,000.00 | $ | 936,628.73 |
| 09/27/2012 | City National Bank | $ | 2,500.00 | $ | 939,128.73 |
| 10/03/2012 | City National Bank | $ | 6,000.00 | $ | 945,128.73 |
| 10/11/2012 | City National Bank | $ | 4,500.00 | $ | 949,628.73 |
| 10/17/2012 | City National Bank | $ | (500.00) | $ | 949,128.73 |
| 10/19/2012 | City National Bank | $ | (400.00) | $ | 948,728.73 |
| 11/01/2012 | City National Bank | $ | 7,000.00 | $ | 955,728.73 |
| 11/02/2012 | City National Bank | $ | 3,300.00 | $ | 959,028.73 |
| 11/06/2012 | City National Bank | $ | 3,000.00 | $ | 962,028.73 |
| 11/13/2012 | City National Bank | $ | 5,000.00 | $ | 967,028.73 |
| 11/20/2012 | City National Bank | $ | 8,500.00 | $ | 975,528.73 |
| 11/29/2012 | City National Bank | $ | 25,000.00 | $ | 1,000,528.73 |
| 11/29/2012 | City National Bank | $ | 41,500.00 | $ | 1,042,028.73 |
| 12/05/2012 | City National Bank | $ | 5,000.00 | $ | 1,047,028.73 |
| 12/06/2012 | City National Bank | $ | (500.00) | $ | 1,046,528.73 |
| 12/11/2012 | City National Bank | $ | 1,400.00 | $ | 1,047,928.73 |
| 12/17/2012 | City National Bank | $ | (1,000.00) | $ | 1,046,928.73 |
| 12/17/2012 | City National Bank | $ | 1,000.00 | $ | 1,047,928.73 |
| 01/08/2013 | City National Bank | $ | 4,500.00 | $ | 1,052,428.73 |
| 01/10/2013 | City National Bank | $ | 3,000.00 | $ | 1,055,428.73 |
| 01/11/2013 | City National Bank | $ | 37,000.00 | $ | 1,092,428.73 |
| 01/14/2013 | City National Bank | $ | (42,000.00) | $ | 1,050,428.73 |
| 01/14/2013 | City National Bank | $ | (14,615.41) | $ | 1,035,813.32 |
| 01/14/2013 | City National Bank | $ | 1,000.00 | $ | 1,036,813.32 |
| 01/15/2013 | City National Bank | $ | 28,000.00 | $ | 1,064,813.32 |
| 01/16/2013 | City National Bank | $ | 23,000.00 | $ | 1,087,813.32 |
| 01/17/2013 | City National Bank | $ | 4,500.00 | $ | 1,092,313.32 |
| 01/22/2013 | City National Bank | $ | (95,000.00) | $ | 997,313.32 |
| 01/24/2013 | City National Bank | $ | 35,000.00 | $ | 1,032,313.32 |
| 01/25/2013 | City National Bank | $ | 29,000.00 | $ | 1,061,313.32 |
| 01/28/2013 | City National Bank | $ | (95,000.00) | $ | 966,313.32 |
| 01/28/2013 | City National Bank | $ | (51,000.00) | $ | 915,313.32 |
| 01/29/2013 | City National Bank | $ | 24,000.00 | $ | 939,313.32 |
| 01/30/2013 | City National Bank | $ | (8,000.00) | $ | 931,313.32 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AG**

**PRE-PETITION TRANSFERS BETWEEN DEBTOR AND ACE MUSEUM**

| Date | Debtor Account | Debtor Transfers In From (Out To) Ace Museum | Cumulative Balance |
|---|---|---|---|
| 01/30/2013 | City National Bank | $ 7,000.00 | $ 938,313.32 |
| 01/31/2013 | City National Bank | $ 7,000.00 | $ 945,313.32 |
| 01/31/2013 | City National Bank | $ 13,000.00 | $ 958,313.32 |
| 02/01/2013 | City National Bank | $ 37,000.00 | $ 995,313.32 |
| 02/07/2013 | City National Bank | $ 14,500.00 | $ 1,009,813.32 |
| 02/13/2013 | City National Bank | $ (50,000.00) | $ 959,813.32 |
| 02/14/2013 | City National Bank | $ 31,000.00 | $ 990,813.32 |
| 02/15/2013 | City National Bank | $ 16,500.00 | $ 1,007,313.32 |

MARY CORSE
ACE LOS ANGELES INVENTORY

| Description | | Image | Fair Mkt. Value |
|---|---|---|---|
| UNTITLED (WHITE LIGHT), 1989<br>ACRYLIC AND SAND SILICA<br>ON CANVAS<br>82" (H) X 55" (W) | 1 | | $108,000.00 |
| UNTITLED (BLACK LIGHT), 1989<br>ACRYLIC AND SAND SILICA<br>ON CANVAS<br>82" (H) X 55" (W) | 2 | | $108,000.00 |
| *UNTITLED (GREY LIGHT GRID SERIES)*, 1987<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>7' X 7' | 3 | | $160,000.00 |
| *BLACK WIDE BAND*, 1992<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>5'9" (H) 10' (W) | 4 | | $172,000.00 |
| WHITE BAND PAINTING, 1993<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>10' (H) X 10' (W)<br>ROLLED | 5 | | $200,000.00 |
| *BLACK LIGHT PAINTING*, 1987<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>8' (H) X 8' (W) (16 SQUARES) | 6 | damaged | $172,000.00 |
| *BLACK GLITTER, WHITE BEADS*, 1975<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>9' (H) X 12' (W) | 7 | | $200,000.00 |
| *WHITE LIGHT PAINTING*, 1994<br>(FROM THE GRID SERIES- 16 PANELS, HORIZONTAL)<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>4' (H) X 4' (W) | 8 | | $76,000.00 |
| *BLACK VERTICAL BAND/BLACK OUTER BANDS*<br>2001<br>GLASS MICROSPHERES IN ACRYLIC<br>ON PAPER<br>22-3/4" (H) X 38"(W) FRAMED | 9 | | $10,000.00 |
| *YELLOW VERTICAL BAND/BLACK BANDS*<br>2001<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>7' (H) X 6' (W) | 10 | | $128,000.00 |

Highly Confidential – Professional Eyes Only

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| Description | | Image | Fair Mkt. Value |
|---|---|---|---|
| *YELLOW DOUBLE ARCH*, 1998<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>5' (H) X 6' (W) | 11 | | $128,000.00 |
| *WHITE/BLACK/BLUE BAND*, 2000<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>2' (H) X 5' (W) | 12 | | $68,000.00 |
| *WHITE/BLACK BANDS*, 2001<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>93" (H) X 36" (W) | 13 | | $80,000.00 |
| *RED/BLACK BANDS*, 2000<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>7' (H) X 7' (W) | 14 | | $160,000.00 |
| *BLACK/WHITE ARCH*, 1999<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>36" (H) X 44" (W) | 15 | | $68,000.00 |
| WHITE INNER BAND, 2003<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>10' (H) X 7' (W) | 16 | | $180,000.00 |
| *RED DOUBLE ARCH*, 1999<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>36" (H) X 44" (W) | 17 | | $64,000.00 |
| *YELLOW DOUBLE ARCH*, 1999<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>36" (H) X 44" (W) | 18 | | $64,000.00 |
| *BLACK/WHITE W/WHITE LIGHT, BEVELED*, 2005<br>GLASS MICROSPHERES IN ACRYLIC<br>ON CANVAS<br>3' (H) X 3' (W) | 19 | | $60,000.00 |
| *UNTITLED*, 2006<br>WHITE/BLACK/WHITE BAND<br>GLASS MICROSPHERES IN<br>ACRYLIC ON CANVAS<br>7' (H) X 7' (W) | 20 | | $160,000.00 |

Highly Confidential – Professional Eyes Only

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| Description | | Image | Fair Mkt. Value |
|---|---|---|---|
| *UNTITLED,* 2007<br>(WHT FLAT SIDES, 3 INNER BANDS)<br>GLASS MICROSPHERES IN<br>ACRYLIC ON CANVAS<br>3' (H) X 4'6" (H) | 21 | | $68,000.00 |
| *UNTITLED,* 2007<br>WHITE 3 INNER BAND<br>GLASS MICROSPHERES IN<br>ACRYLIC ON CANVAS<br>3' (H) X 4'6" (H) | 22 | | $68,000.00 |
| *UNTITLED,* 2007<br>(BLACK/WHITE BANDS)<br>GLASS MICROSPHERES IN<br>ACRYLIC ON CANVAS<br>36" (H) X 90" (W) | 23 | | $80,000.00 |
| *UNTITLED,* 2004<br>MULTI COLORED BANDS<br>GLASS MICROSPHERES IN<br>ACRYLIC ON CANVAS<br>36" (H) X 198" (W) | 24 | | $128,000.00 |
| *UNTITLED, 2009*<br>(WHITE MULTI INNER BAND, BEVELED)<br>GLASS MICROSPHERES IN<br>ACRYLIC ON CANVAS<br>8' (H) X 5-1/2' (H) | 25 | | $148,000.00 |
| *UNTITLED, 2006*<br>(WHITE/BLACK INNER BAND)<br>GLASS MICROSPHERES IN<br>ACRYLIC ON CANVAS<br>3' (H) X 3' (H) | 26 | | $60,000.00 |
| *UNTITLED, 2008*<br>(WHITE INNER BAND, BEVELED)<br>GLASS MICROSPHERES IN<br>ACRYLIC ON CANVAS<br>8' (H) X 12' (W) | 27 | | $188,000.00 |
| *UNTITLED,* 1993 (BLACK FLAT SIDES, INNER BAND)<br>BLACK INNER BAND)<br>GLASS MICROSPHERES IN<br>ACRYLIC ON CANVAS<br>35" (H) X 68" (H) | 28 | | $76,000.00 |
| UNTITLED (YELLOW LIGHT ARCH), 1998<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>8-1/2' (H) X 10-1/2' (W) | 29 | | $184,000.00 |
| UNTITLED (RED DOUBLE ARCH), 1998<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>10'6" (H) X 11'6" (W) | 30 | | $192,000.00 |

| Description | | Image | Fair Mkt. Value |
|---|---|---|---|
| UNTITLED (WHITE DOUBLE ARCH), 1998<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>-1/2' (H) X 10-1/2' (W) | 31 | | $184,000.00 |
| *UNTITLED (WHT/BLK 9 BANDS, BEVELED)* 2010<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>1' (H) X 9' (W) | 32 | | $60,000.00 |
| *UNTITLED,( 5 BANDS BEVELED-WHT FLAT, BLK/WHT MICRO/BLK,WHT FLAT)* , 2009<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>3' (H) X 7-1/2' (W) | 33 | | $80,000.00 |
| *UNTITLED (9 WHT/BLK BANDS, BEVELED)* 2010<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>2' (H) X 9' (W) | 34 | | $80,000.00 |
| *UNTITLED (WHITE INNER BAND, BEVELED)* 2010<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>3' (H) X 3' (W) | 35 | | $60,000.00 |
| *UNTITLED,* 2010<br>WHITE 3 BANDS, BEVELED)<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>7' (H) X 7' (W) | 36 | | $160,000.00 |
| *UNTITLED,* 2008<br>(WHITE INNER BAND, BEVELED)<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>8' (H) X 8' (W) | 37 | | $172,000.00 |
| *UNTITLED,* 2010<br>(FLAT WHITE SIDES W/7 WHITE INNER BANDS BEVELED)<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>2' (H) X 9' (W) | 38 | | $80,000.00 |
| *UNTITLED (BLK/WHITE/YELLOW BANDS BEVELED)* 2010<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>1' (H) X 9' (W) | 9 | | $60,000.00 |
| *UNTITLED,* 2010<br>(FLAT WHITE SIDES W/7 INNER BANDS, BEVELED)<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>2' (H) X 6' (W) | 40 | | $68,000.00 |

Highly Confidential – Professional Eyes Only

ACE002213

USAO_00014180

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| Description | | Image | Fair Mkt. Value |
|---|---|---|---|
| *UNTITLED,* 2010<br>(FLAT WHITE SIDES W/9 INNER BANDS, BEVELED)<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>2' (H) X 6' (W) | 41 | | $68,000.00 |
| *UNTITLED (RED/WHITE/BLACK BANDS, BEVELED),* 2010<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>2' (H) X 9' (W) | 42 | | $80,000.00 |
| UNTITLED, 2010<br>(WHITE FLAT SIDES WITH 3 INNER BANDS)<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>8' (H) X 4-3/4' (W) | 43 | | $108,000.00 |
| UNTITLED, 2010<br>(WHITE BAND, BEVELED)<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>10' (H) X 10' (W) | 44 | | $200,000.00 |
| *UNTITLED, 2003*<br>(WHITE INNER BAND W/ FLAT SIDES)<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>4' (H) X 4' (W) | 45 | | $76,000.00 |
| *WHITE BAND PAINTING, 1990*<br>(WHITE INNER BAND)<br>GLASS MICROSPHERES IN ACRYLIC ON CANVAS<br>10' (H) X 16' (W) | 46 | | $250,000.00 |
| **TOTAL:** | | | **$5,344,000.00** |

Highly Confidential – Professional Eyes Only

ACE002214

USAO_00014181

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY LOS ANGELES

5514 WILSHIRE BOULEVARD
LOS ANGELES · CALIFORNIA · 90036 · TEL 323.935.0088

## BILL OF SALE

ANISSA & PAUL J. BALSON
18610 CABRILLO HIGHWAY 1
SAN SIMEON, CA 93452
(310) 821 6147 PJBALSON@BALSONCAPITAL.COM

FEBRUARY 15, 2015

PAGE 1 OF 2

PURCHASING THE FOLLOWING WORKS OF ART ACE GALLERY LOS ANGELES

ARTIST: MARY CORSE
TITLE: *UNTITLED, 2010 WHITE FLAT SIDE WITH 3 INNER BANDS*
MEDIUM: GLASS MICROSHPERES IN ACRYLIC ON CANVAS
SIZE: 8′ (H) X 4 ¾ ′ (W)
PRICE: $100,000.00

ARTIST: GISELA COLON
TITLE: *ULTRA SPHEROID GLO-POD (IRIDESCENT LILAC,* 2014
MEDIUM: BLOW-MOLDED ACRYLIC
SIZE: 42″ (H) X 90″ (W) X 13″ (D)
PRICE: $40,000.00

ARTIST: HELEN PASHGIAN
TITLE: *UNTITLED (COLUMN #8),* 2011
MEDIUM: FORMED ACRYLIC
SIZE: 91 ¼″ (H) X 21 ½″ (H) X 19 ½″ (D)
PRICE: $100,000.00

BILL OF SALE

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY LOS ANGELES

5514 WILSHIRE BOULEVARD
LOS ANGELES · CALIFORNIA · 90036 · TEL 323.935.0088

---

ANISSA & PAUL J. BALSON
18610 CABRILLO HIGHWAY 1
SAN SIMEON, CA 93452
(310) 821 6147 PJBALSON@BALSONCAPITAL.COM

FEBRUARY 15. 2015

PAGE 2 OF 2

---

*PRICE BELOW INCLUDES COST OF DELIVERY AND INSTALLATION AT CLIENT'S RESIDENCE

---

| | |
|---|---|
| SUBTOTAL: | $240,000.00 |
| SALES TAX OF 7.5%: | $18,000.00 |
| TOTAL DUE BY WIRE TO BE ON ACE'S ACCOUNT 19 MARCH 2015: | $258,000.00 |

---

DOUGLAS CHRISMAS DATE
DIRECTOR & CHIEF CURATOR
INVOICE # 1797

DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICITY OF THE ABOVE DESCRIBED ARTWORK. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORKS PASSES TO THE BUYER UPON RECEIPT OF PAYMENT IN FULL.

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY LOS ANGELES UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. PURCHASER AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID, ANY DEPOSIT BE RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHES TO RESELL THE ARTWORK, ACE GALLERY MUST BE NOTIFIED IN WRITING BEFORE SUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

WIRE TRANSFERS

| Bank ID | Debit Account | Debit Party Name | Credit Account | Credit Party Name | Originator | Beneficiary | Tran Date | Tran Num | Amount |
|---|---|---|---|---|---|---|---|---|---|
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/09811201000 | WELLS FARGO BANK | | ACE GALLERY NEW YORK | 20130225 | 7939 | 23000 |
| CNB | G/09811201000 | WELLS FARGO BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MARK G PARKER | ART AND ARCHITECTURE BOOKS OF THE | 20130226 | 2533 | 600 |
| CNB | G/09811201000 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | 1/CEM YILMAZ | | 20130228 | 943 | 32000 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | LEHMANN-MAUPIN LLC | | 20130301 | 8851 | 150000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20130301 | 9869 | 137525 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/09811201000 | CITIBANK, NEW YORK | | Judith Walsh - Art Smart Adventures | 20130304 | 1671 | 25500 |
| CNB | G/09811201000 | WELLS FARGO BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ACE GALLERY NEW YORK | | 20130305 | 5665 | 33000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130306 | 3149 | 55000 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20130307 | 6833 | 159982 |
| CNB | G/09811201000 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | GOLDEN HILL PROPERTIES, LLC. | | 20130307 | 3689 | 25288 |
| CNB | G/05728981062 | WIRE SUSPENSE LIABILITY ACCOUNT | D/123720229 | ACE GALLERY NEW YORK CORPORATION | FREYBE GOURMET FOODS LTD | | 20130308 | 3414 | 199980 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/09811201000 | JPMORGAN CHASE BANK, NA | | Professional Fine Art Services | 20130311 | 3690 | 10000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/09811201000 | HSBC BANK USA, NA | | Matthew Hope | 20130312 | 4550 | 4000 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | PIA L B ANDERSEN | | 20130315 | 507 | 11900 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JAGHI TRADE A/S | ACE GALLERY LOS ANGELES | 20130320 | 997 | 27835 |
| CNB | G/09811201000 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20130321 | 2212 | 18000 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | LEHMANN-MAUPIN LLC | | 20130327 | 2775 | 65000 |
| CNB | G/09811201000 | THE BANKERS BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JON COOPER | | 20130328 | 8266 | 26160 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JAN GHISALBERTI | | 20130506 | 1089 | 9355 |
| CNB | G/09811201000 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JANE B HOLZER SOLE PROP | | 20130520 | 6406 | 533500 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130521 | 5539 | 255000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/09811201000 | HSBC BANK USA, NA | | Telford Building Ltd Louisa Court | 20130521 | 5537 | 51000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/09811201000 | HSBC BANK USA, NA | | Zhongcheng Huatai (Beijing) | 20130521 | 5536 | 5593.18 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/09811201000 | HSBC BANK USA, NA | | Matthew Hope | 20130521 | 5535 | 4000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | F/09411308328 | EURO FX CLEARING - EUR | | Oranienburger Str. 45 GmbH | 20130521 | 5538 | 2077.8 |
| CNB | G/09811201000 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JANE B HOLZER SOLE PROP | | 20130522 | 1977 | 3535 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123722337 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130523 | 7441 | 47808.09 |
| CNB | G/09811201000 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | EDWARD GREENSPAN | | 20130606 | 1238 | 20000 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JAN GHISALBERTI | | 20130618 | 1114 | 8980 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | F/09411308328 | EURO FX CLEARING - EUR | | Oranienburger Str. 45 GmbH | 20130619 | 3784 | 3315.24 |
| CNB | G/09811201000 | TEXAS CAPITAL BANK, N.A. | D/123720229 | ACE GALLERY NEW YORK CORPORATION | L DIANE ANSBERRY RAHARDJA | | 20130702 | 6379 | 132000 |
| CNB | G/09811201000 | HSBC BANK USA, NA | D/123720229 | ACE GALLERY NEW YORK CORPORATION | BELARUS ASSOCIATED INC | | 20130703 | 5621 | 20000 |
| CNB | G/09811201000 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JENNIFER KELLEN | | 20130708 | 6564 | 51200 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ANDREA NASHER TTEE | | 20130826 | 4735 | 10000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JAN GHISALBERTI | | 20130904 | 1183 | 8980 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20130916 | 5166 | 1124980 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20130916 | 481 | 649980 |
| CNB | D/112151028 | MICHAEL ALLEN MADDEN | D/123720229 | ACE GALLERY NEW YORK CORPORATION | | | 20131016 | 7528 | 1962 |
| CNB | G/098102408287 | PACIFIC TRUST BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | STEVEN EGLASH | | 20131018 | 3415 | 37060 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | F/094100908122 | EURO FX CLEARING - EUR | | Oranienburger Str. 45 GmbH | 20131024 | 4150 | 4495.62 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20131125 | 7699 | 200000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20131127 | 1232 | 100000 |
| CNB | G/098102408287 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ALMINE RUIZ PICASSO | | 20131213 | 47 | 120000 |
| CNB | G/098102408287 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | BERNARD RUIZ PICASSO | | 20131213 | 283 | 120000 |
| CNB | G/098102408287 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ARG/ALMINE RECH GALLERY | | 20131224 | 121 | 50000 |
| CNB | G/098102408287 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ALMINE RUIZ PICASSO | | 20140103 | 31 | 120000 |
| CNB | G/098102408287 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | BERNARD RUIZ PICASSO | | 20140103 | 188 | 120000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/098102408287 | REDWOOD CREDIT UNION | | DEIRDRE OBRIEN | 20140110 | 6428 | 4000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20140117 | 158 | 80000 |
| CNB | G/098102408287 | UBS AG | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JEFF BROTMAN SUSAN BROTMAN- | | 20140204 | 2380 | 150000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ROBERT B STRONG | | 20140207 | 1773 | 72000 |
| CNB | G/098102408287 | UBS AG | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JEFF BROTMAN SUSAN BROTMAN- | | 20140212 | 3942 | 13500 |
| CNB | G/098102408287 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ARG SA:ALMINE RECH GALLERY | ACE GALLERY | 20140218 | 338 | 153900 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20140219 | 5407 | 39980 |
| CNB | G/098102408287 | THE BANK OF NEW YORK MELLON | D/123720229 | ACE GALLERY NEW YORK CORPORATION | FREYBE H | | 20140408 | 653 | 150000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140409 | 64 | 125000 |
| CNB | G/098102408287 | THE BANK OF NEW YORK MELLON | D/123720229 | ACE GALLERY NEW YORK CORPORATION | FREYBE H | | 20140417 | 4096 | 648.39 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140501 | 5726 | 40000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123722337 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140512 | 7059 | 60000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140514 | 5000 | 75000 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CNB | G/098102408287 | UBS AG | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JEFF BROTMAN SUSAN BROTMAN- | | 20140522 | 2014 | 889.2 |
| CNB | G/098102408287 | FIRST REPUBLIC BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL B ROSENFELD | | 20140527 | 5397 | 179850 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140602 | 3813 | 30400 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | UNIX GALLERY LLC | | 20140605 | 228 | 50000 |
| CNB | G/098102408287 | HSBC BANK USA, NA | D/123720229 | ACE GALLERY NEW YORK CORPORATION | LEHMANN MAUPIN HONG KONG LIMITED | | 20140611 | 3083 | 57000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | NYEHAUS INC. | | 20140630 | 2625 | 325000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140701 | 6693 | 250000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140710 | 2058 | 83500 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | SHELDON J BURNETT | | 20140723 | 3651 | 13090 |
| CNB | G/098102408287 | UBS AG | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MILES ROSEDALE TTEE | | 20140807 | 3103 | 200000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | F/094100908126 | FX WIRE CLEARING - CNY | | Beijing Desheng Mishan Carving Co. | 20140807 | 3892 | 45559.53 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/098102408287 | UNION BANK OF CALIFORNIA | | Douglas Chrismas | 20140812 | 6811 | 4000 |
| CNB | F/094100908126 | FX WIRE CLEARING - CNY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | | | 20140820 | 7257 | 44036.62 |
| CNB | G/098102408287 | TD BANK, NA | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JEREMY GOLDBERG | | 20140912 | 4979 | 12885 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MORGAN STANLEY DEAN WITTER BAN 1585 | | 20140922 | 6052 | 225000 |
| CNB | G/098102408287 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | CATHERINE MOULY 1260 N ASTOR ST CHI | | 20140924 | 5986 | 54000 |
| CNB | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | D/123720229 | ACE GALLERY NEW YORK CORPORATION | | | 20140929 | 4284 | 20000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20141006 | 2388 | 45000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ELIZABETH CHADDOCK KELLEN TTEE | | 20141020 | 4741 | 27250 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/098102408287 | HSBC BANK USA, NA | | MATTHEW DYLAN HOPE | 20141021 | 4711 | 700 |
| CNB | G/098102408287 | WELLS FARGO BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL J FITZPATRICK | | 20141204 | 361 | 15696 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20141218 | 652 | 319980 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20150102 | 6172 | 219980 |
| CNB | G/098102408287 | BARCLAYS BANK, PLC | D/123720229 | ACE GALLERY NEW YORK CORPORATION | GAZELLI ART HOUSE LIMITED | ACE GALLERY NEW YORK | 20150114 | 1729 | 19980 |
| CNB | G/098102408287 | BANKERS' BANK NORTHEAST | D/123720229 | ACE GALLERY NEW YORK CORPORATION | CROXTON 6 LLC | | 20150115 | 5240 | 188500 |
| CNB | G/098102408287 | WELLS FARGO BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ERICK S MILLER | | 20150116 | 5041 | 43600 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/098102408287 | CHASE MANHATTAN BANK | | TAG-ARTS LLC | 20150116 | 5857 | 20000 |
| CNB | G/098102408287 | BARCLAYS BANK, PLC | D/123720229 | ACE GALLERY NEW YORK CORPORATION | GAZELLI ART HOUSE LIMITED | ACE GALLERY NEW YORK | 20150120 | 2577 | 74261.2 |
| CNB | G/098102408287 | THE NORTHERN TRUST COMPANY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MERELEX CORPORATION | | 20150120 | 1012 | 8720 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20150211 | 2007 | 30000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/098102408287 | WELLS FARGO BANK | | Mary Corse Inc. | 20150211 | 3284 | 30000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/098102408287 | WELLS FARGO BANK | | MARY CORSE | 20150212 | 5913 | 30000 |
| CNB | G/098102408287 | BARCLAYS BANK, PLC | D/123720229 | ACE GALLERY NEW YORK CORPORATION | GAZELLI ART HOUSE LIMITED | ACE GALLERY NEW YORK | 20150217 | 2969 | 108738.8 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ALISBERG PARKER ARCHITECTS LLC | | 20150224 | 6244 | 12000 |
| CNB | G/098102408287 | WELLS FARGO BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | A BALSON + P BALSON TTEE BALSON LIV | | 20150319 | 5917 | 258000 |
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MARGARET HELEN PASHGIAN | | 20150402 | 5281 | 40000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | DAVID KABILLER | | 20150424 | 9281 | 399200 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | THE DEBRA E. SPECTOR TRUST DEBRA | | 20150428 | 9811 | 52320 |
| CNB | G/098102408287 | WELLS FARGO BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MARY GARD JAMESON LIVING TRUST | | 20150504 | 4694 | 7000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | LEHMANN-MAUPIN LLC | | 20150515 | 6894 | 252000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20150515 | 678 | 99980 |
| CNB | G/098102408287 | FIVE POINTS BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | STERLING RIDGE LOT 3 LLC | | 20150529 | 2337 | 28000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | LEHMANN-MAUPIN LLC | | 20150609 | 6080 | 211200 |
| CNB | G/098102408287 | WELLS FARGO BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | A BALSON + P BALSON TTEE BALSON LIV | | 20150615 | 588 | 24080 |
| CNB | D/370113327 | WP6 RESTAURANT MANAGEMENT GROUP LLC | D/123720229 | ACE GALLERY NEW YORK CORPORATION | | | 20150706 | 6195 | 4800 |
| CNB | G/098102408287 | THE BANK OF NEW YORK MELLON | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ALDO RUBINO 520 MADISON AVE 16TH FL | | 20150707 | 1999 | 165000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | LEHMANN-MAUPIN LLC | | 20150715 | 9046 | 108000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | LEHMANN-MAUPIN LLC | | 20150716 | 7558 | 108000 |
| CNB | G/098102408287 | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | THE KAREN S. LLOYD 2010 REVOCABLE | | 20150728 | 3129 | 48000 |
| CNB | G/057264250000 | WIRE SUSPENSE LIABILITY ACCOUNT | D/123720229 | ACE GALLERY NEW YORK CORPORATION | P O BOX 5192 | | 20150804 | 7239 | 159972 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | SCOTT B LAURIE | | 20150811 | 512 | 20165 |

CNB 000157

USAO_00014185

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

CITY NATIONAL BANK
The way up.

Page 1 (9)

Account #: 123206347

This statement: March 31, 2015
Last statement: February 27, 2015

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001 0830L
ACE MUSEUM
5514 WILSHIRE BLVD
LOS ANGELES CA 90036

WHETHER YOU NEED A BUSINESS OR PURCHASING CREDIT CARD FOR EVERYDAY EXPENSES OR TRAVEL AND ENTERTAINMENT, A CITY NATIONAL VISA COMMERCIAL CARD WITH CITY NATIONAL REWARDS MAKES IT EASIER FOR YOU TO HANDLE YOUR BUSINESS NEEDS. PLEASE CONTACT YOUR RELATIONSHIP MANAGER FOR DETAILS.

## Non-Profit Checking Account

**Account Summary**

| | |
|---|---|
| Account number | 123206347 |
| Minimum balance | $235.46 |
| Average balance | $8,745.81 |
| Avg. collected balance | $6,635.00 |

**Account Activity**

| | | | |
|---|---|---|---|
| Beginning balance (2/27/2015) | | | $604.05 |
| Credits | Deposits (5) | + 40,591.94 | |
| | Electronic cr (0) | + 0.00 | |
| | Other credits (2) | + 233,000.00 | |
| | Total credits | | + $273,591.94 |
| Debits | Checks paid (9) | - 8,216.43 | |
| | Electronic db (4) | - 227,881.21 | |
| | Other debits (8) | - 35,570.00 | |
| | Total debits | | - $271,667.64 |
| Ending balance (3/31/2015) | | | $2,528.35 |

### DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 3-2 | Deposit | | 15,000.00 |
| 3-3 | Deposit | | 14,750.00 |
| 3-5 | Deposit | | 2,116.94 |
| 3-6 | Deposit | | 725.00 |
| 3-24 | Deposit | | 8,000.00 |

### OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 3-19 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0123720229 | | 5,000.00 |
| 3-19 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0123720229 | | 228,000.00 |

### CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 2758 | 3-16 | 32.93 | 2769 | 3-20 | 1,019.43 | 2772 | 3-20 | 1,019.43 |
| 2766 * | 3-5 | 439.47 | 2770 | 3-12 | 419.85 | 2773 | 3-31 | 336.75 |
| 2768 * | 3-3 | 327.07 | 2771 | 3-19 | 3,121.50 | 2774 | 3-27 | 1,500.00 |

* Skip in check sequence

EXHIBIT U - 397

USAO_00014186

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

ACE MUSEUM
March 31, 2015

Page 2
**Account #:** 123206347

**ELECTRONIC DEBITS**

| Date | Description | Debits |
|---|---|---|
| 3-9 | Preauthorized Debit WASTE MANAGEMENT 8668342080 100221293930 ACE MUSEUM CCD | 528.19 |
| 3-9 | Preauthorized Debit LIBERTY MUTUAL 901189570 8123000 ACE *MUSEUM CCD | 639.25 |
| 3-18 | Preauthorized Debit ATT PAYMENT TEL ACE MUSEUM | 113.77 |
| 3-19 | Tnet Wire Out-Dom | 226,600.00 |

**OTHER DEBITS**

| Date | Description | Reference | Debits |
|---|---|---|---|
| 3-9 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123720229 | | 50.00 |
| 3-9 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123720229 | | 29,700.00 |
| 3-10 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123720229 | | 200.00 |
| 3-12 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123720229 | | 250.00 |
| 3-13 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123720229 | | 260.00 |
| 3-19 | Service Charge TNET WIRE OUT-DOM | | 10.00 |
| 3-30 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123720229 | | 5,000.00 |
| 3-31 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123720229 | | 100.00 |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|---|---|
| 2-27 | 604.05 | 3-9 | 1,512.01 | 3-18 | 235.46 | 3-30 | 2,965.10 |
| 3-2 | 15,604.05 | 3-10 | 1,312.01 | 3-19 | 3,503.96 | 3-31 | 2,528.35 |
| 3-3 | 30,026.98 | 3-12 | 642.16 | 3-20 | 1,465.10 | | |
| 3-5 | 31,704.45 | 3-13 | 382.16 | 3-24 | 9,465.10 | | |
| 3-6 | 32,429.45 | 3-16 | 349.23 | 3-27 | 7,965.10 | | |

Thank you for banking with City National Bank

EXHIBIT U - 398

USAO_00014187

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



CITY NATIONAL BANK
The Way Up.

Page : 3
Account # : 123206347

| Check | Paid | Amount |
|---|---|---|
| 2758 | Paid :03/16/2015 | $32.93 |
| 2766 | Paid :03/05/2015 | $439.47 |
| 2768 | Paid :03/03/2015 | $327.07 |
| 2769 | Paid :03/20/2015 | $1019.43 |
| 2770 | Paid :03/12/2015 | $419.85 |
| 2771 | Paid :03/19/2015 | $3121.50 |

EXHIBIT U 399

USAO_00014188

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Account #: 123206347

| Check | Paid | Amount |
|---|---|---|
| 2772 | Paid :03/20/2015 | $1019.43 |
| 2773 | Paid :03/31/2015 | $336.75 |
| 2774 | Paid :03/27/2015 | $1500.00 |

EXHIBIT U - 400

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

WIRE TRANSFERS

| Bank ID | Debit Account | Debit Party Name | Credit Account | Credit Party Name | Originator | Beneficiary | Tran Date | Tran Num | Amount |
|---|---|---|---|---|---|---|---|---|---|
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | BANK OF CHINA | | YU PENG | 20100528 | 6133 | 5455.4 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110606 | 2260 | 126000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110715 | 7447 | 110000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110729 | 9008 | 31000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110802 | 4124 | 1000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110803 | 5298 | 116000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20111117 | 2533 | 3500 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20111201 | 8082 | 10000 |
| CNB | G/09811201000 | WELLS FARGO BANK | D/123206347 | ACE MUSEUM | MOVE ON CIVC ACTION GENERAL ACCOUNT | | 20120222 | 4323 | 17500 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20120302 | 5717 | 125000 |
| CNB | G/09811201000 | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | THE HAPSMITH CO. | | 20120302 | 3247 | 97000 |
| CNB | G/09811201000 | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | HAPSMITH COMPANY, THE | | 20120302 | 3227 | 28000 |
| CNB | G/09811201000 | SILICON VALLEY BANK | D/123206347 | ACE MUSEUM | SAY MEDIA INC | | 20120615 | 8074 | 8750 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. LA BREA LLC | 20120705 | 6752 | 125000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20120905 | 6033 | 125000 |
| CNB | D/112973729 | THE VISIONARY GROUP, LLC | D/123206347 | ACE MUSEUM | | | 20130111 | 5254 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20130131 | 6228 | 100000 |
| CNB | G/09811201000 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130220 | 5650 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | WELLS FARGO BANK | | Ace Gallery New York | 20130222 | 7446 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20130311 | 3869 | 137500 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130311 | 839 | 8982 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130320 | 952 | 8982 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130320 | 2410 | 8982 |
| CNB | G/09811201000 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20130402 | 4712 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130408 | 2065 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130408 | 4262 | 20000 |
| CNB | G/09811201000 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20130411 | 498 | 79982 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130411 | 1849 | 78000 |
| CNB | G/09811201000 | AMERICAN SECURITY BANK | D/123206347 | ACE MUSEUM | HOMESTEAD ESCROW A CALIFORNIA CORP. | | 20130412 | 7354 | 125000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130412 | 7675 | 75000 |
| CNB | G/09811201000 | AMERICAN SECURITY BANK | D/123206347 | ACE MUSEUM | HOMESTEAD ESCROW A CALIFORNIA CORP. | | 20130412 | 7316 | 6880.45 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20130417 | 6595 | 136975.2 |
| CNB | G/09811201000 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130417 | 5010 | 30000 |
| CNB | G/09811201000 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130417 | 7041 | 5000 |
| CNB | G/09811201000 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130419 | 5359 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130419 | 1846 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130423 | 6858 | 22000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20130521 | 5540 | 138174.5 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20130606 | 4271 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20130705 | 6321 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130722 | 4282 | 15000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130726 | 3681 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | CATHAY BANK | | 400 S. La Brea LLC | 20130806 | 4747 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130806 | 4748 | 15000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130909 | 5793 | 68000 |
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20130913 | 6084 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20131024 | 2188 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131107 | 1678 | 9000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20131114 | 2285 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131114 | 2426 | 45000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131121 | 2291 | 5000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131122 | 1826 | 7500 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20131126 | 2338 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131203 | 1738 | 85000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131204 | 1769 | 5187.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CNB | G/098102408287 | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | GENNADIY IOSIFOVICH MENDELSON | | 20131212 | 6729 | 50000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20131213 | 3473 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | UNION BANK OF CALIFORNIA | | Gennadiy Mendelson | 20131213 | 3178 | 50000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131213 | 3541 | 16000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131217 | 1724 | 550 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131219 | 4792 | 22800 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131220 | 4341 | 4000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20140117 | 4709 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140128 | 2025 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140218 | 3349 | 5000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140219 | 6509 | 13000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140304 | 5102 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140312 | 2489 | 6000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140317 | 7065 | 5000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140318 | 3389 | 1000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140324 | 141 | 15800 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140408 | 5652 | 3600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140410 | 84 | 2500 |
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20140421 | 2472 | 80000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20140423 | 1742 | 165000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140423 | 433 | 84980 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140512 | 6950 | 84980 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140514 | 4673 | 74980 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20140528 | 4207 | 234001.2 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140530 | 11860 | 99980 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140606 | 8193 | 44000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20140617 | 4848 | 226600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140708 | 89 | 22000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20140718 | 6046 | 226600 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MORGAN STANLEY DEAN WITTER BAN 1585 | | 20140718 | 5468 | 175000 |
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20140718 | 3707 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140721 | 2273 | 46000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CITIZENS BUSINESS BANK | | HELEN PASHGIAN | 20140725 | 3107 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140805 | 6947 | 13000 |
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20140818 | 5718 | 60000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140820 | 5941 | 134980 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20140821 | 3359 | 226600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140825 | 3804 | 15000 |
| CNB | D/123206347 | ACE MUSEUM | D/123722337 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140826 | 3103 | 6000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140905 | 3640 | 8000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20140919 | 2628 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140919 | 4130 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140923 | 68 | 500 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141006 | 111 | 6000 |
| CNB | G/098102408287 | FIRST REPUBLIC BANK | D/123206347 | ACE MUSEUM | PETER D BOASBERG | | 20141021 | 2906 | 160000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20141022 | 3413 | 175000 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20141023 | 4013 | 51980 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20141023 | 4075 | 51600 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | ELIZABETH CHADDOCK KELLEN TTEE | | 20141023 | 4421 | 3800 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141023 | 4895 | 3300 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141023 | 147 | 400 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141104 | 2210 | 2000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141105 | 80 | 2300 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20141120 | 4786 | 179980 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141120 | 6117 | 176000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20141124 | 6302 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20141124 | 6667 | 100000 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20141125 | 4704 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20141125 | 5247 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141202 | 2447 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20141204 | 2158 | 26600 |
| CNB | G/098102408287 | THE BANK OF NEW YORK MELLON | D/123206347 | ACE MUSEUM | FREYBE H | | 20141210 | 1006 | 50000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MSB FBO ANDREA NASHER TTEE | | 20141223 | 6401 | 50000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea | 20141229 | 3991 | 100000 |
| CNB | G/098102408287 | COMERICA BANK | D/123206347 | ACE MUSEUM | THE EA TRUST | | 20141229 | 3566 | 65000 |
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20141229 | 3986 | 30000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20141230 | 3778 | 120000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20141230 | 3530 | 68000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150102 | 2872 | 6600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150106 | 3863 | 2600 |
| CNB | G/098102408287 | THE BANK OF NEW YORK MELLON | D/123206347 | ACE MUSEUM | FREYBE H | | 20150115 | 818 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150116 | 2983 | 226600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150204 | 4184 | 8000 |
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20150212 | 3734 | 30000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC. | 20150219 | 2770 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150224 | 5428 | 126600 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20150224 | 4899 | 124980 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CITIZENS BUSINESS BANK | | Helen Pashgian | 20150226 | 5169 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150319 | 6659 | 226600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150403 | 2230 | 20000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150408 | 8450 | 2000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150514 | 4259 | 4500 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150518 | 5297 | 160000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150521 | 6648 | 66600 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150622 | 7783 | 200000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20150622 | 6017 | 200000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S La Brea LLC | 20150721 | 4647 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S La Brea LLC | 20150729 | 3258 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150803 | 4456 | 43398 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20150831 | 6037 | 225000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150831 | 6163 | 220000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20150930 | 4249 | 233398 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20151005 | 3957 | 212180 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20151104 | 5527 | 212180 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S La Brea LLC | 20151214 | 7478 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20151223 | 8106 | 62180 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160125 | 5969 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160129 | 8263 | 173398 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160226 | 8319 | 133398 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S La Brea LLC | 20160229 | 12022 | 75000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160303 | 5093 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. LA BREA LLC | 20160330 | 5434 | 150000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20160330 | 4021 | 80000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20160330 | 3997 | 20000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160502 | 11948 | 50000 |
| CNB | G/098102408287 | 1ST CENTURY BANK, NA | D/123206347 | ACE MUSEUM | MOTION THEORY, INC. | | 20160613 | 5841 | 1750 |

CNB 000352

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AM**
**GROSS DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Gross Distributions Paid | | Member | | |
|---|---|---|---|---|
| **Gross Distribution Amount** | **Name** | **Daryoush Dayan** | **Kamran Gharibian** | **Michael Smith** |
| $ 660,641.19 | Daryoush Dayan Trust | $ 660,641.19 | | |
| $ 7,245.00 | Smith-Emery Geoservices | | | $ 7,245.00 |
| $ 1,370,992.60 | Daryoush Dayan Trust | $ 1,370,992.60 | | |
| $ 2,250.00 | Smith-Emery Geoservices | | | $ 2,250.00 |
| $ 675,000.00 | Daryoush Dayan Trust | $ 675,000.00 | | |
| $ 675,000.00 | Kamran Gharibian | | $ 675,000.00 | |
| $ 150,000.00 | Michael Smith | | | $ 150,000.00 |
| $ 235,125.00 | Daryoush Dayan Trust | $ 235,125.00 | | |
| $ 377,500.00 | Daryoush Dayan Trust | $ 377,500.00 | | |
| $ 52,250.00 | Michael Smith | | | $ 52,250.00 |
| $ 235,125.00 | Kamran Gharibian | | $ 235,125.00 | |
| $ 6,144.20 | Smith-Emery Geoservices | | | $ 6,144.20 |
| $ 3,746.80 | Smith-Emery Geoservices | | | $ 3,746.80 |
| $ 14.61 | Dayan Property Services LLC | $ 14.61 | | |
| $ 13,350.98 | Smith-Emery Geoservices | | | $ 13,350.98 |
| $ 25.08 | Dayan Property Services LLC | $ 25.08 | | |
| $ 1,479.00 | Smith-Emery Geoservices | | | $ 1,479.00 |
| $ 27.63 | Dayan Property Services LLC | $ 27.63 | | |
| $ 13.80 | Dayan Property Services LLC | $ 13.80 | | |
| $ 2.09 | Dayan Property Services LLC | $ 2.09 | | |
| $ 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| $ 12.66 | Dayan Property Services LLC | $ 12.66 | | |
| $ 2.43 | Dayan Property Services LLC | $ 2.43 | | |
| $ 120,000.00 | Daryoush Dayan Trust | $ 120,000.00 | | |
| $ 10,000.00 | Daryoush Dayan Trust | $ 10,000.00 | | |
| $ 28.65 | Dayan Property Services LLC | $ 28.65 | | |
| $ 24,000.00 | Daryoush Dayan Trust | $ 24,000.00 | | |
| $ 25,000.00 | Daryoush Dayan Trust | $ 25,000.00 | | |
| $ 324,000.00 | Daryoush Dayan Trust | $ 324,000.00 | | |
| $ 45,000.00 | Daryoush Dayan Trust | $ 45,000.00 | | |
| $ 120,000.00 | Daryoush Dayan Trust | $ 120,000.00 | | |
| $ 50,000.00 | Daryoush Dayan Trust | $ 50,000.00 | | |
| $ 75,000.00 | Daryoush Dayan | $ 75,000.00 | | |
| $ 48,000.00 | Daryoush Dayan Trust | $ 48,000.00 | | |
| $ 36,000.00 | Daryoush Dayan Trust | $ 36,000.00 | | |
| $ 125,000.00 | Daryoush Dayan Trust | $ 125,000.00 | | |
| $ 124,000.00 | Daryoush Dayan Trust | $ 124,000.00 | | |
| $ 125,000.00 | Daryoush Dayan Trust | $ 125,000.00 | | |
| $ 125,000.00 | Daryoush Dayan Trust | $ 125,000.00 | | |
| $ 125,000.00 | Daryoush Dayan Trust | $ 125,000.00 | | |
| $ 120,000.00 | Daryoush Dayan Trust | $ 120,000.00 | | |
| $ 137,000.00 | Daryoush Dayan Trust | $ 137,000.00 | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AM**
**GROSS DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Gross Distributions Paid | | Member | | |
|---|---|---|---|---|
| Gross Distribution Amount | Name | Daryoush Dayan | Kamran Gharibian | Michael Smith |
| $ 125,000.00 | Daryoush Dayan Trust | $ 125,000.00 | | |
| $ 12,746.47 | Daryoush Dayan Trust | $ 12,746.47 | | |
| $ 125,000.00 | Daryoush Dayan Trust | $ 125,000.00 | | |
| $ 47,000.00 | Daryoush Dayan Trust | $ 47,000.00 | | |
| $ 102,000.00 | Daryoush Dayan Trust | $ 102,000.00 | | |
| $ 3,750.00 | DDI LLC | $ 3,750.00 | | |
| $ 25,000.00 | Daryoush Dayan Trust | $ 25,000.00 | | |
| $ 13,500.00 | Daryoush Dayan Trust | $ 13,500.00 | | |
| $ 22,500.00 | Daryoush Dayan Trust | $ 22,500.00 | | |
| $ 13,500.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 13,500.00 | |
| $ 22,500.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 22,500.00 | |
| $ 13,500.00 | Daryoush Dayan Trust | $ 13,500.00 | | |
| $ 3,000.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 3,000.00 |
| $ 5,000.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 5,000.00 |
| $ 13,500.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 13,500.00 | |
| $ 3,000.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 3,000.00 |
| $ 24,750.00 | Daryoush Dayan Trust | $ 24,750.00 | | |
| $ 24,750.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 24,750.00 | |
| $ 5,500.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 5,500.00 |
| $ 18,000.00 | Daryoush Dayan Trust | $ 18,000.00 | | |
| $ 18,000.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 18,000.00 | |
| $ 4,000.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 4,000.00 |
| $ 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| $ 50,000.00 | Daryoush Dayan Trust | $ 50,000.00 | | |
| $ 60,000.00 | Daryoush Dayan Trust | $ 60,000.00 | | |
| $ 70,000.00 | Daryoush Dayan Trust | $ 70,000.00 | | |
| $ 36,000.00 | Daryoush Dayan Trust | $ 36,000.00 | | |
| $ 197,000.00 | Daryoush Dayan Trust | $ 197,000.00 | | |
| $ 2,500.00 | Daryoush Dayan Trust | $ 2,500.00 | | |
| $ 175,500.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 175,500.00 | |
| $ 39,000.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 39,000.00 |
| $ 175,500.00 | Daryoush Dayan Trust | $ 175,500.00 | | |
| $ 27,000.00 | Daryoush Dayan Trust | $ 27,000.00 | | |
| $ 27,000.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 27,000.00 | |
| $ 6,000.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 6,000.00 |
| $ 20,250.00 | Daryoush Dayan Trust | $ 20,250.00 | | |
| $ 20,250.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 20,250.00 | |
| $ 22,500.00 | Daryoush Dayan Trust | $ 22,500.00 | | |
| $ 4,500.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 4,500.00 |
| $ 22,500.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 22,500.00 | |
| $ 5,000.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 5,000.00 |
| $ 20,250.00 | Daryoush Dayan Trust | $ 20,250.00 | | |
| $ 4,500.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 4,500.00 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AM**
**GROSS DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Gross Distributions Paid | | Member | | |
|---|---|---|---|---|
| Gross Distribution Amount | Name | Daryoush Dayan | Kamran Gharibian | Michael Smith |
| $ 20,250.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 20,250.00 | |
| $ 78,000.00 | Daryoush Dayan Trust | $ 78,000.00 | | |
| $ 22,500.00 | Daryoush Dayan Trust | $ 22,500.00 | | |
| $ 5,000.00 | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ 5,000.00 |
| $ 22,500.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 22,500.00 | |
| $ 8,152,973.19 | | $ 6,541,632.21 | $ 1,290,375.00 | $ 320,965.98 |
| | | | | |
| $ 167,500.00 | Daryoush Dayan Trust | $ 167,500.00 | | |
| $ 15,000.00 | Daryoush Dayan Trust | $ 15,000.00 | | |
| $ 82,500.00 | Daryoush Dayan Trust | $ 82,500.00 | | |
| $ 67,500.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 33,750.00 | Daryoush Dayan Trust | $ 33,750.00 | | |
| $ 33,750.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 33,750.00 | |
| $ 7,500.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 7,500.00 |
| $ 13,500.00 | Daryoush Dayan Trust | $ 13,500.00 | | |
| $ 45,000.00 | Daryoush Dayan Trust | $ 45,000.00 | | |
| $ 13,500.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 13,500.00 | |
| $ 45,000.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 45,000.00 | |
| $ 3,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 3,000.00 |
| $ 10,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 10,000.00 |
| $ 38,500.00 | Daryoush Dayan Trust | $ 38,500.00 | | |
| $ 13,500.00 | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ 13,500.00 | |
| $ 3,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 3,000.00 |
| $ 33,750.00 | Daryoush Dayan Trust | $ 33,750.00 | | |
| $ 7,500.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 7,500.00 |
| $ 33,750.00 | Kamran Gharibian | | $ 33,750.00 | |
| $ 15.06 | Dayan Property Services LLC | $ 15.06 | | |
| $ 40,500.00 | Kamran Gharibian | | $ 40,500.00 | |
| $ 9,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 9,000.00 |
| $ 40,500.00 | Daryoush Dayan Trust | $ 40,500.00 | | |
| $ 20,000.00 | Daryoush Dayan | $ 20,000.00 | | |
| $ 40,500.00 | Daryoush Dayan Trust | $ 40,500.00 | | |
| $ 40,500.00 | Kamran Gharibian | | $ 40,500.00 | |
| $ 9,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 9,000.00 |
| $ 6.33 | Dayan Property Services LLC | $ 6.33 | | |
| $ 95,000.00 | Daryoush Dayan | $ 95,000.00 | | |
| $ 22,500.00 | Daryoush Dayan Trust | $ 22,500.00 | | |
| $ 22,500.00 | Kamran Gharibian | | $ 22,500.00 | |
| $ 5,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 5,000.00 |
| $ 11.32 | Dayan Property Services LLC | $ 11.32 | | |
| $ 42,750.00 | Kamran Gharibian | | $ 42,750.00 | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AM**
**GROSS DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Gross Distributions Paid | | Member | | |
|---|---|---|---|---|
| Gross Distribution Amount | Name | Daryoush Dayan | Kamran Gharibian | Michael Smith |
| $ 9,500.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 9,500.00 |
| $ 42,750.00 | Daryoush Dayan Trust | $ 42,750.00 | | |
| $ 70,000.00 | Daryoush Dayan | $ 70,000.00 | | |
| $ 38,250.00 | Daryoush Dayan Trust | $ 38,250.00 | | |
| $ 38,250.00 | Kamran Gharibian | | $ 38,250.00 | |
| $ 5.51 | Dayan Property Services LLC | $ 5.51 | | |
| $ 8,500.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 8,500.00 |
| $ 70,000.00 | Daryoush Dayan | $ 70,000.00 | | |
| $ 40,500.00 | Daryoush Dayan Trust | $ 40,500.00 | | |
| $ 40,500.00 | Kamran Gharibian | | $ 40,500.00 | |
| $ 9,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 9,000.00 |
| $ 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| $ 33,750.00 | Daryoush Dayan Trust | $ 33,750.00 | | |
| $ 33,750.00 | Kamran Gharibian | | $ 33,750.00 | |
| $ 7,500.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 7,500.00 |
| $ 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| $ 40,500.00 | Daryoush Dayan | $ 40,500.00 | | |
| $ 40,500.00 | Kamran Gharibian | | $ 40,500.00 | |
| $ 9,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 9,000.00 |
| $ 69,000.00 | Daryoush Dayan | $ 69,000.00 | | |
| $ 69,750.00 | Daryoush Dayan Trust | $ 69,750.00 | | |
| $ 15,500.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,500.00 |
| $ 69,750.00 | Kamran Gharibian | | $ 69,750.00 | |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 6.58 | Dayan Property Services LLC | $ 6.58 | | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 67,500.00 | Daryoush Dayan Trust | $ 67,500.00 | | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 72,000.00 | Daryoush Dayan | $ 72,000.00 | | |
| $ 72,000.00 | Kamran Gharibian | | $ 72,000.00 | |
| $ 16,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 16,000.00 |
| $ 20,000.00 | Daryoush Dayan | $ 20,000.00 | | |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AM**
**GROSS DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Gross Distributions Paid | | Member | | |
|---|---|---|---|---|
| Gross Distribution Amount | Name | Daryoush Dayan | Kamran Gharibian | Michael Smith |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 75,000.00 | Daryoush Dayan | $ 75,000.00 | | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 75,000.00 | Daryoush Dayan | $ 75,000.00 | | |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 78,750.00 | Daryoush Dayan Trust | $ 78,750.00 | | |
| $ 17,500.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 17,500.00 |
| $ 78,750.00 | Kamran Gharibian | | $ 78,750.00 | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 67,500.00 | Daryoush Dayan | $ 67,500.00 | | |
| $ 67,500.00 | Kamran Gharibian | | $ 67,500.00 | |
| $ 15,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,000.00 |
| $ 157,500.00 | Kamran Gharibian | | $ 157,500.00 | |
| $ 157,500.00 | Daryoush Dayan Trust | $ 157,500.00 | | |
| $ 35,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 35,000.00 |
| $ 108,000.00 | Daryoush Dayan Trust | $ 108,000.00 | | |
| $ 108,000.00 | Kamran Gharibian | | $ 108,000.00 | |
| $ 24,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 24,000.00 |
| $ 76,500.00 | Daryoush Dayan Trust | $ 76,500.00 | | |
| $ 76,500.00 | Kamran Gharibian | | $ 76,500.00 | |
| $ 17,000.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 17,000.00 |
| $ 59,850.00 | Daryoush Dayan Trust | $ 59,850.00 | | |
| $ 13,300.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 13,300.00 |
| $ 59,850.00 | Kamran Gharibian | | $ 59,850.00 | |
| $ 70,515.00 | Daryoush Dayan Trust | $ 70,515.00 | | |
| $ 70,515.00 | Kamran Gharibian | | $ 70,515.00 | |
| $ 15,670.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,670.00 |
| $ 70,650.00 | Kamran Gharibian | | $ 70,650.00 | |
| $ 4,000.00 | Daryoush Dayan | $ 4,000.00 | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AM**
**GROSS DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Gross Distributions Paid | | Member | | |
|---|---|---|---|---|
| Gross Distribution Amount | Name | Daryoush Dayan | Kamran Gharibian | Michael Smith |
| $ 70,650.00 | Daryoush Dayan Trust | $ 70,650.00 | | |
| $ 15,700.00 | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ 15,700.00 |
| $ 5,492,244.80 | | $ 2,950,309.80 | $ 2,079,765.00 | $ 462,170.00 |
| $ 13,645,217.99 | | $ 9,491,942.01 | $ 3,370,140.00 | $ 783,135.98 |

l on 400 S. La Brea, LLC, Cathay Bank checking account #1679 bank statements and documents Bates-stamped CATHAY 00231 to CATHAY 00679.
were not included in the Bates range:

BRG

USAO_00014198

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AN**

**Interest on Payments to 400 S. La Brea, LLC, from Debtor through 10/30/2020**

| Date per Bank Statement | Deposit Amount | 10% Annualized | Interest Amount as of 10/30/2020 Using Federal Rate | 7% Annualized | Interest Amount as of 10/30/2020 Using State Rate |
|---|---|---|---|---|---|
| **Pre-Petition:** | | | | | |
| 07/24/2006 | $ 1,000,000.00 | 10.00% | $ 1,426,967.83 | 7.00% | $ 998,877.48 |
| 12/01/2006 | $ 109,208.78 | 10.00% | $ 151,950.45 | 7.00% | $ 106,365.32 |
| 03/27/2007 | $ 112,815.45 | 10.00% | $ 153,385.77 | 7.00% | $ 107,370.04 |
| 05/03/2007 | $ 6,951.00 | 10.00% | $ 9,380.28 | 7.00% | $ 6,566.20 |
| 06/06/2007 | $ 1,500,000.00 | 10.00% | $ 2,010,266.94 | 7.00% | $ 1,407,186.86 |
| 12/04/2007 | $ 114,623.28 | 10.00% | $ 147,935.43 | 7.00% | $ 103,554.80 |
| 01/02/2008 | $ 1,500,000.00 | 10.00% | $ 1,924,024.64 | 7.00% | $ 1,346,817.25 |
| 03/25/2008 | $ 114,623.27 | 10.00% | $ 144,420.61 | 7.00% | $ 101,094.43 |
| 04/18/2008 | $ 5,573.00 | 10.00% | $ 6,985.13 | 7.00% | $ 4,889.59 |
| 07/01/2008 | $ 1,000,000.00 | 10.00% | $ 1,233,127.99 | 7.00% | $ 863,189.60 |
| 12/03/2008 | $ 50,000.00 | 10.00% | $ 59,534.57 | 7.00% | $ 41,674.20 |
| 12/10/2008 | $ 68,523.99 | 10.00% | $ 81,459.59 | 7.00% | $ 57,021.72 |
| 12/15/2000 | $ (68,523.99) | 10.00% | $ (136,184.98) | 7.00% | $ (95,329.49) |
| 01/26/2009 | $ 69,270.50 | 10.00% | $ 81,455.66 | 7.00% | $ 57,018.96 |
| 07/06/2009 | $ 132,677.96 | 10.00% | $ 150,168.57 | 7.00% | $ 105,118.00 |
| 07/17/2009 | $ (4,428,644.00) | 10.00% | $ (4,999,123.67) | 7.00% | $ (3,499,386.57) |
| 08/31/2009 | $ 200,000.00 | 10.00% | $ 223,299.11 | 7.00% | $ 156,309.38 |
| 10/05/2009 | $ 100,000.00 | 10.00% | $ 110,691.31 | 7.00% | $ 77,483.92 |
| 12/01/2009 | $ 100,000.00 | 10.00% | $ 109,130.73 | 7.00% | $ 76,391.51 |
| 12/09/2009 | $ 123,833.74 | 10.00% | $ 134,869.44 | 7.00% | $ 94,408.61 |
| 03/09/2010 | $ 100,000.00 | 10.00% | $ 106,447.64 | 7.00% | $ 74,513.35 |
| 04/09/2010 | $ 400,000.00 | 10.00% | $ 422,395.62 | 7.00% | $ 295,676.93 |
| 05/18/2010 | $ 125,000.00 | 10.00% | $ 130,663.93 | 7.00% | $ 91,464.75 |
| 06/16/2010 | $ 125,000.00 | 10.00% | $ 129,671.46 | 7.00% | $ 90,770.02 |
| 07/22/2010 | $ 50,000.00 | 10.00% | $ 51,375.77 | 7.00% | $ 35,963.04 |
| 07/27/2010 | $ 75,000.00 | 10.00% | $ 76,960.99 | 7.00% | $ 53,872.69 |
| 08/18/2010 | $ 125,000.00 | 10.00% | $ 127,515.40 | 7.00% | $ 89,260.78 |
| 08/18/2010 | $ 37,500.00 | 10.00% | $ 38,254.62 | 7.00% | $ 26,778.23 |
| 09/08/2010 | $ 125,000.00 | 10.00% | $ 126,796.71 | 7.00% | $ 88,757.70 |
| 10/20/2010 | $ 125,000.00 | 10.00% | $ 125,359.34 | 7.00% | $ 87,751.54 |
| 11/05/2010 | $ 125,000.00 | 10.00% | $ 124,811.77 | 7.00% | $ 87,368.24 |
| 12/13/2010 | $ 125,000.00 | 10.00% | $ 123,511.29 | 7.00% | $ 86,457.91 |
| 01/12/2011 | $ 125,000.00 | 10.00% | $ 122,484.60 | 7.00% | $ 85,739.22 |
| 02/17/2011 | $ 125,000.00 | 10.00% | $ 121,252.57 | 7.00% | $ 84,876.80 |
| 03/22/2011 | $ 137,500.00 | 10.00% | $ 132,135.52 | 7.00% | $ 92,494.87 |
| 04/14/2011 | $ 125,000.00 | 10.00% | $ 119,336.07 | 7.00% | $ 83,535.25 |
| 04/25/2011 | $ 15,867.00 | 10.00% | $ 15,100.26 | 7.00% | $ 10,570.18 |
| 05/17/2011 | $ 125,000.00 | 10.00% | $ 118,206.71 | 7.00% | $ 82,744.70 |
| 06/06/2011 | $ 125,000.00 | 10.00% | $ 117,522.25 | 7.00% | $ 82,265.57 |
| 07/18/2011 | $ 110,000.00 | 10.00% | $ 102,154.69 | 7.00% | $ 71,508.28 |
| 08/01/2011 | $ 27,500.00 | 10.00% | $ 25,433.26 | 7.00% | $ 17,803.29 |
| 08/04/2011 | $ 110,000.00 | 10.00% | $ 101,642.71 | 7.00% | $ 71,149.90 |
| 09/28/2011 | $ 137,500.00 | 10.00% | $ 124,982.89 | 7.00% | $ 87,488.02 |
| 10/04/2011 | $ 137,500.00 | 10.00% | $ 124,757.02 | 7.00% | $ 87,329.91 |
| 10/21/2011 | $ 125,000.00 | 10.00% | $ 112,833.68 | 7.00% | $ 78,983.57 |
| 10/24/2011 | $ 110,000.00 | 10.00% | $ 99,203.29 | 7.00% | $ 69,442.30 |
| 11/17/2011 | $ 247,500.00 | 10.00% | $ 221,581.11 | 7.00% | $ 155,106.78 |
| 12/23/2011 | $ 137,525.00 | 10.00% | $ 121,767.52 | 7.00% | $ 85,237.26 |
| 12/27/2011 | $ 139,951.45 | 10.00% | $ 123,762.68 | 7.00% | $ 86,633.88 |
| 12/27/2011 | $ 10.00 | 10.00% | $ 8.84 | 7.00% | $ 6.19 |
| 01/25/2012 | $ 75,000.00 | 10.00% | $ 65,728.95 | 7.00% | $ 46,010.27 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AN**

**Interest on Payments to 400 S. La Brea, LLC, from Debtor through 10/30/2020**

| Date per Bank Statement | Deposit Amount | 10% Annualized | Interest Amount as of 10/30/2020 Using Federal Rate | 7% Annualized | Interest Amount as of 10/30/2020 Using State Rate |
|---|---|---|---|---|---|
| 01/31/2012 | $ 28,904.57 | 10.00% | $ 25,284.08 | 7.00% | $ 17,698.86 |
| 02/03/2012 | $ 50,000.00 | 10.00% | $ 43,696.10 | 7.00% | $ 30,587.27 |
| 03/02/2012 | $ 125,000.00 | 10.00% | $ 108,282.00 | 7.00% | $ 75,797.40 |
| 03/02/2012 | $ 12,500.00 | 10.00% | $ 10,828.20 | 7.00% | $ 7,579.74 |
| 03/26/2012 | $ 72,000.00 | 10.00% | $ 61,897.33 | 7.00% | $ 43,328.13 |
| 04/05/2012 | $ 36,031.28 | 10.00% | $ 30,876.91 | 7.00% | $ 21,613.84 |
| 04/12/2012 | $ 36,000.00 | 10.00% | $ 30,781.11 | 7.00% | $ 21,546.78 |
| 05/08/2012 | $ 280,186.00 | 10.00% | $ 237,573.18 | 7.00% | $ 166,301.23 |
| 06/05/2012 | $ 142,279.21 | 10.00% | $ 119,549.59 | 7.00% | $ 83,684.72 |
| 07/05/2012 | $ 125,000.00 | 10.00% | $ 104,004.11 | 7.00% | $ 72,802.87 |
| 08/03/2012 | $ 125,000.00 | 10.00% | $ 103,011.64 | 7.00% | $ 72,108.15 |
| 09/05/2012 | $ 125,000.00 | 10.00% | $ 101,882.27 | 7.00% | $ 71,317.59 |
| 10/25/2012 | $ 137,500.00 | 10.00% | $ 110,188.23 | 7.00% | $ 77,131.76 |
| 11/23/2012 | $ 137,500.00 | 10.00% | $ 109,096.51 | 7.00% | $ 76,367.56 |
| 11/28/2012 | $ (137,500.00) | 10.00% | $ (108,908.28) | 7.00% | $ (76,235.80) |
| 01/31/2013 | $ 100,000.00 | 10.00% | $ 77,453.80 | 7.00% | $ 54,217.66 |
| 02/07/2013 | $ 25,000.00 | 10.00% | $ 19,315.54 | 7.00% | $ 13,520.88 |
| **Pre-Petition Total** | $ 6,904,687.49 | | $ 7,762,216.85 | | $ 5,433,551.79 |
| **Net Transfer Back to Debtor Post-Petition:** | | | | | |
| 02/22/2013 | $ 137,500.00 | 10.00% | $ 105,670.77 | 7.00% | $ 73,969.54 |
| 03/01/2013 | $ 137,525.00 | 10.00% | $ 105,426.42 | 7.00% | $ 73,798.49 |
| 12/31/2013 | $ (2,781,587.73) | 10.00% | $ (1,900,085.25) | 7.00% | $ (1,330,059.68) |
| 03/11/2013 | $ 137,500.00 | 10.00% | $ 105,030.80 | 7.00% | $ 73,521.56 |
| 03/26/2013 | $ 48,000.00 | 10.00% | $ 36,468.17 | 7.00% | $ 25,527.72 |
| 03/26/2013 | $ 104,660.00 | 10.00% | $ 79,515.81 | 7.00% | $ 55,661.07 |
| 04/17/2013 | $ 136,975.19 | 10.00% | $ 103,242.35 | 7.00% | $ 72,269.65 |
| 05/21/2013 | $ 138,174.50 | 10.00% | $ 102,860.09 | 7.00% | $ 72,002.06 |
| 06/06/2013 | $ 150,000.00 | 10.00% | $ 111,006.16 | 7.00% | $ 77,704.31 |
| 07/05/2013 | $ 150,000.00 | 10.00% | $ 109,815.20 | 7.00% | $ 76,870.64 |
| 07/09/2013 | $ 40,000.00 | 10.00% | $ 29,240.25 | 7.00% | $ 20,468.17 |
| 08/06/2013 | $ 150,000.00 | 10.00% | $ 108,501.03 | 7.00% | $ 75,950.72 |
| 09/24/2013 | $ 165,000.00 | 10.00% | $ 117,137.58 | 7.00% | $ 81,996.30 |
| 10/24/2013 | $ 165,000.00 | 10.00% | $ 115,782.34 | 7.00% | $ 81,047.64 |
| 11/26/2013 | $ 165,000.00 | 10.00% | $ 114,291.58 | 7.00% | $ 80,004.11 |
| 12/13/2013 | $ 165,000.00 | 10.00% | $ 113,523.61 | 7.00% | $ 79,466.53 |
| 01/17/2014 | $ 165,000.00 | 10.00% | $ 111,942.51 | 7.00% | $ 78,359.75 |
| 02/21/2014 | $ 165,000.00 | 10.00% | $ 110,361.40 | 7.00% | $ 77,252.98 |
| 03/20/2014 | $ 150,000.00 | 10.00% | $ 99,219.71 | 7.00% | $ 69,453.80 |
| 04/22/2014 | $ 165,000.00 | 10.00% | $ 107,650.92 | 7.00% | $ 75,355.65 |
| 04/23/2014 | $ (165,000.00) | 10.00% | $ (107,605.75) | 7.00% | $ (75,324.02) |
| 04/24/2014 | $ 165,000.00 | 10.00% | $ 107,560.57 | 7.00% | $ 75,292.40 |
| 05/28/2014 | $ 234,001.22 | 10.00% | $ 150,363.00 | 7.00% | $ 105,254.10 |
| 06/17/2014 | $ 226,600.00 | 10.00% | $ 144,366.38 | 7.00% | $ 101,056.47 |
| 07/18/2014 | $ 226,600.00 | 10.00% | $ 142,443.15 | 7.00% | $ 99,710.20 |
| 08/21/2014 | $ 226,600.00 | 10.00% | $ 140,333.80 | 7.00% | $ 98,233.66 |
| 09/25/2014 | $ 226,600.00 | 10.00% | $ 138,162.41 | 7.00% | $ 96,713.69 |
| 10/22/2014 | $ 175,000.00 | 10.00% | $ 105,407.26 | 7.00% | $ 73,785.08 |
| 10/23/2014 | $ 51,600.00 | 10.00% | $ 31,065.95 | 7.00% | $ 21,746.17 |
| 11/24/2014 | $ 100,000.00 | 10.00% | $ 59,329.23 | 7.00% | $ 41,530.46 |
| 11/25/2014 | $ 100,000.00 | 10.00% | $ 59,301.85 | 7.00% | $ 41,511.29 |
| 12/04/2014 | $ 26,600.00 | 10.00% | $ 15,708.75 | 7.00% | $ 10,996.12 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT AN**

**Interest on Payments to 400 S. La Brea, LLC, from Debtor through 10/30/2020**

| Date per Bank Statement | Deposit Amount | 10% Annualized | Interest Amount as of 10/30/2020 Using Federal Rate | 7% Annualized | Interest Amount as of 10/30/2020 Using State Rate |
|---|---|---|---|---|---|
| 12/29/2014 | $ 100,000.00 | 10.00% | $ 58,370.98 | 7.00% | $ 40,859.69 |
| 12/30/2014 | $ 120,000.00 | 10.00% | $ 70,012.32 | 7.00% | $ 49,008.62 |
| 01/02/2015 | $ 6,600.00 | 10.00% | $ 3,845.26 | 7.00% | $ 2,691.68 |
| 01/16/2015 | $ 226,600.00 | 10.00% | $ 131,151.92 | 7.00% | $ 91,806.35 |
| 02/19/2015 | $ 100,000.00 | 10.00% | $ 56,947.30 | 7.00% | $ 39,863.11 |
| 02/25/2015 | $ 126,600.00 | 10.00% | $ 71,887.31 | 7.00% | $ 50,321.12 |
| 03/23/2015 | $ 3,121.50 | 10.00% | $ 1,750.26 | 7.00% | $ 1,225.18 |
| 03/19/2015 | $ 226,600.00 | 10.00% | $ 127,305.46 | 7.00% | $ 89,113.82 |
| 04/29/2015 | $ 226,600.00 | 10.00% | $ 124,761.83 | 7.00% | $ 87,333.28 |
| 05/19/2015 | $ 160,000.00 | 10.00% | $ 87,216.97 | 7.00% | $ 61,051.88 |
| 05/21/2015 | $ 66,600.00 | 10.00% | $ 36,267.60 | 7.00% | $ 25,387.32 |
| 05/26/2015 | $ 11,973.00 | 10.00% | $ 6,503.61 | 7.00% | $ 4,552.53 |
| 06/22/2015 | $ 200,000.00 | 10.00% | $ 107,159.48 | 7.00% | $ 75,011.64 |
| 06/26/2015 | $ 33,398.00 | 10.00% | $ 17,857.99 | 7.00% | $ 12,500.59 |
| 07/21/2015 | $ 150,000.00 | 10.00% | $ 79,178.64 | 7.00% | $ 55,425.05 |
| 07/29/2015 | $ 40,000.00 | 10.00% | $ 21,026.69 | 7.00% | $ 14,718.69 |
| 08/03/2015 | $ 43,398.00 | 10.00% | $ 22,753.50 | 7.00% | $ 15,927.45 |
| 09/01/2015 | $ 13,398.00 | 10.00% | $ 6,918.17 | 7.00% | $ 4,842.72 |
| 08/31/2015 | $ 220,000.00 | 10.00% | $ 113,659.14 | 7.00% | $ 79,561.40 |
| 09/30/2015 | $ 233,398.00 | 10.00% | $ 118,663.95 | 7.00% | $ 83,064.77 |
| 10/05/2015 | $ 212,180.00 | 10.00% | $ 107,585.86 | 7.00% | $ 75,310.10 |
| 10/23/2015 | $ 21,218.00 | 10.00% | $ 10,654.02 | 7.00% | $ 7,457.81 |
| 11/04/2015 | $ 212,180.00 | 10.00% | $ 105,843.11 | 7.00% | $ 74,090.18 |
| 12/14/2015 | $ 150,000.00 | 10.00% | $ 73,182.75 | 7.00% | $ 51,227.93 |
| 12/23/2015 | $ 62,180.00 | 10.00% | $ 30,183.47 | 7.00% | $ 21,128.43 |
| 01/25/2016 | $ 60,000.00 | 10.00% | $ 28,583.16 | 7.00% | $ 20,008.21 |
| 01/29/2016 | $ 173,398.00 | 10.00% | $ 82,414.49 | 7.00% | $ 57,690.14 |
| 02/26/2016 | $ 133,398.00 | 10.00% | $ 62,380.23 | 7.00% | $ 43,666.16 |
| 02/29/2016 | $ 75,000.00 | 10.00% | $ 35,010.27 | 7.00% | $ 24,507.19 |
| 03/03/2016 | $ 25,000.00 | 10.00% | $ 11,649.56 | 7.00% | $ 8,154.69 |
| 03/30/2016 | $ 150,000.00 | 10.00% | $ 68,788.50 | 7.00% | $ 48,151.95 |
| 04/01/2016 | $ 114,595.32 | 10.00% | $ 52,489.52 | 7.00% | $ 36,742.66 |
| **Post-Petition Total** | $ 5,144,784.00 | | $ 2,905,041.38 | | $ 2,033,528.97 |
| | | | | | |
| **Total Pre and Post Petition** | $ 12,049,471.49 | | $ 10,667,258.22 | | $ 7,467,080.76 |

**Exhibit B**

**Documents Reviewed**

1. Various Pleadings and Legal Filings, including:

   a. Voluntary Petition United States Bankruptcy Court Central District of California, Los Angeles Division Art & Architecture and Ace Gallery February 12, 2013

   b. Submission of Amended and Corrected Schedules of Assets and Liabilities and Statement of Financial Affairs, April 4, 2013, United States Bankruptcy Court Submission of Amended and Corrected Schedules of Assets and Liabilities and Statement of Financial Affairs April 4, 2013

   c. Notice of Motion and Motion of Debtor and Debtor in Possession for Order Authorizing Debtors to Obtain Financing Pursuant to 11 U.S.C. § 364(C)(2) and (3); Memorandum of Points and Authorities; Declaration of Douglas Chrismas in Support Thereof, August 7, 2013

   d. United States Bankruptcy Court Notice of Motion and Motion of Debtor in Possession for order Authorizing Debtors to Obtain Financing Pursuant to 11 U.S.C § 364(c)(2) and (3); Memorandum of Points and Authorities; Declaration of Douglas Chrismas in Support Thereof August 28, 2013

   e. Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C § 364(c)(2) and (3) August 28, 2013

   f. Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364(C)(2) and (3), August 30, 2013

   g. United States Bankruptcy Court Ace Gallery New York Corporation's Objection to Committee of Unsecured Creditors' Subpoena to Produce Documents and Information Issued to City National Bank February 8, 2016

   h. Term Sheet Between the Official Committee of Unsecured Creditors of Art & Architecture Books of the 21st Century, Art & Architecture Books of the 21st Century, Douglas Chrismas, and Ace Museum, a California Corporation, February 11, 2015

   i. United States Bankruptcy Court Stipulation Between Plan Agent and Internal Revenue Service Regarding the Release of any Lien of the Internal Revenue Service Against Proceeds of the Sale of the Beverly Hills Property April 14, 2016

   j. United States Bankruptcy Court Order Approving Stipulation for Transfer to Plan Agent of Debtor's Funds held in Client Trust Account by Levene, Neale, Bender, Yoo & Brill L.L.P. April 29, 2016

   k. United States Bankruptcy Court Order on "Omnibus Motion of Official Committee of Unsecured Creditors: (1) Disallowing Secured Claims of each of the Internal Revenue Service [Claim NO. 1], the California Employment Development Department [Claim NO. 26-1] , and California Board of Equalization [Claim NO. 4-1] to the Extent Deemed Secured by Liens Against the Proceeds of the Debtor's Sale of the Beverly Hills Property; and (2) Deeming any such Liens Against Sale Proceeds Released", May 3, 2016

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

l. Status Report of Sam S. Leslie Re First 30 Days of Operation and Supporting Declaration of Timothy Kincaid, May 12, 2016, including exhibits [Bates 00001 to 00067]

m. United States Bankruptcy Court Status Report of Sam S. Leslie RE First 30 Days of Operation and Supporting Declaration of Timothy Kincaid, June 14, 2016, including exhibits

n. United States Bankruptcy Court Order Granting "Motion of Plan Agent for Approval of Settlement Agreement with Employment Development Department", June 15, 2016

o. Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction, October 19, 2017, including exhibits

p. United States Bankruptcy Court Declaration of Eric Wilson, August 9, 2018, including exhibits

q. Declaration of Jennifer Ziegler, March 6, 2019, including exhibits

r. Memorandum Decision On: (1) Motion of Douglas Chrismas for Order Pursuant to Bankruptcy Rule 2004 and Bankruptcy Code Sections 105 and 1142; and (II) Motion of Plan Agent Sam S. Leslie for Protective Order Re: 2004 Examination Requested by Douglas Chrismas, December 6, 2019

s. United States Bankruptcy Court Sixth Amended Consolidated Complaint February 19, 2020

2. Deposition Transcripts

   a. Deposition of Eric Wilson, July 26, 2013, including exhibits

   b. Deposition of Douglas Chrismas, July 30, 2013

   c. Deposition of Douglas J. Chrismas January 28, 2016, including exhibits

   d. Deposition of Douglas James Chrismas, Volume I, August 7, 2019, including exhibits 0001 to 0006, 0007 to 0157

   e. Deposition of Douglas James Chrismas, Volume II, October 4, 2019, including exhibits 0158 to 0231

   f. Deposition of Douglas James Chrismas, Volume III, October 18, 2019, including exhibits 0232 to 0283

   g. Deposition of Eric Wilson, November 11, 2019, including exhibits 0001 to 0022

3. Various Correspondence including emails and memos but not limited to

   a. Documents from Grobstein Teeple

   b. Documents from Michael Straus

   c. Shirley Holst emails and communications

   d. Declaration of Victor Sahn

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

   e. Declaration of Eric Wilson

f. Term Sheet Between the Official Committee of Unsecured Creditors of Art & Architecture Books of The 21st Century, Art & Architecture Books of The 21st Century, Douglas Chrismas, And Ace Museum, A California Corporation.

g. Contemporaneous emails from the Debtor's servers

h. Emails between Fortuna Asset and Gary Mendelson regarding eviction

4. Financial Records

a. Contemporaneous financial records from the Debtor's accounting and computer systems, including trial balances

b. Invoices issued by Ace Gallery New York, Ace Gallery Los Angeles, and Ace Gallery; and other art sale invoices with no letterhead

c. Inventory of owned and consigned artworks

d. Monthly Operating Reports (MOR), 1-36

e. Tax returns of Ace Gallery New York for 2012 and 2013

f. Tax returns of Ace Museum for 2009 to 2014

g. Tax returns of Art & Architecture Books of the 21st Century for 1999 to 2014 and miscellaneous tax documents

h. Debtor's Exhibit Binder Volume 3, Ace Gallery July 2013 Inventory [BATES 000001 to 000087 and 002196 to 002261]

5. Timothy Kincaid's work product, including spreadsheets, invoices, correspondence, and bank records supporting his declaration dated October 19, 2017

6. Bank Records

a. Ace Museum

i. City National Bank Account 6347 bank statements, deposits, check images, and wire transfers

ii. Citibank 6021 bank statements

iii. Citibank 9097 bank statements and wires

b. Ace Gallery New York Corporation

i. Bank statements, deposits, wire transfers, and check images for City National Bank Account 0229

ii. Bank statements, deposits, wire transfers, and check images for City National Bank Account 4733

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

    c. Ace Gallery New York, Inc.

i. Bank statements and checks images for Wells Fargo Account 9951

d. Art & Architecture Books of the 21st Century DBA Ace Gallery

i. Bank statements and deposits for City National Bank Account 2337

ii. Bank statements and deposits for City National Bank Account 8410

iii. Bank statements and deposits for City National Bank Account 8437

iv. Bank statements, check images, and wire transfers for City National Bank Account 0176

v. Bank statements, deposits, check images, and wire transfers for City National Bank Account 8402

vi. Correspondence from City National Bank

vii. Bank statements and wire transfers for Union Bank 0156

viii. Bank statements for Wells Fargo 0373

e. 400 S. La Brea, LLC [including CATHAY 00001 to CATHAY 00679]

i. Cathay Bank mortgage 1842 and 4286 documents and transaction history

ii. Cathay Bank checking 1679 documents, including bank statements, deposits, check images, and wire transfers

f. Douglas Chrismas

i. Union Bank 1530 checks, bank statements, and wires

ii. Union Bank 2963 bank statements

7. Other

a. Documents related to Herb Alpert Foundation donations to Ace Museum

b. Various contracts and agreements including but not limited to artist contracts and consignment agreements

c. 400 S. La Brea, LLC, lease documents

d. "Art and Architecture Comparable P&L" prepared by Engel & Engel, LLP (Exhibit 2)

e. Entity documents, such as statements of information, articles of incorporation, and fictitious business name statements

f. California Board of Accountancy licensing details for license 46676 – Leslie, Sam Stuart

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

BIT C
ART SALES
TION & INC., ACE MUSEUM, AND 400 S. LA BREA, LLC

| Artist | Piece / Description |
|---|---|
| ı, LAURIE | [OTHER SALE] Packing and crating for *MONDAY MORNING, 2006, SH3/LN4, (TRIPTYCH WITH DOORS THAT OPEN)* |
| ı, LAURIE | [OTHER SALE] Packing and crating for *ON, 2008, SH1/LN4* |
| 'ARMERS | *DUK FUG* , 2012 |
| 'ARMERS | *JERK OFF* , 2012 |
| 'ARMERS | *ATETEEN* , 2010 |
| 'ARMERS | *SOUTHERN COMFORT (HELLO KITTY),* 2010 |
| 'ARMERS | *ARMAGETNOUTOFHERE* , 2011 |
| 'ARMERS | *medU.S.A.* , 2011 |
| 'ARMERS | *CHILD SOLDIER* , 2011 |
| 'ARMERS | *REGAL BEER* , 2010 |
| 'ARMERS | *BUTTERSCOTCH* , 2010 |
| 'ARMERS | *CHANGO44 NIKE* , 2010 |
| 'ARMERS | *PLASTICO* , 2011 |
| ı, LAURIE | *REALITY TV* , 2009 |
| ı, LAURIE | *ICON* , 2003 |
| , MARY | *UNTITLED (GREY GRID WITH RED),* 1988 |
| 'ARMERS | *44 SKULL* , 2010 |
| 'ARMERS | *VAMPIRITO* , 2010 |
| 'ARMERS | *PRO SPORTS* , 2010 |
| 'ARMERS | *ALBERT MEDINA* , 2010 |
| 'ARMERS | *AMOR* , 2009 |
| 'ARMERS | *O LORD MY MISTAKES* , 2010 |
| 'ARMERS | *OLD SCHOOL* , 2011 |
| BRIAN | *UNTITLED (SPECTRUM)* , 2013 |
| 'ARMERS | *WATERMELON SPIDER* , 2011 |
| GARY | *AYRE* , 2012 |
| , MARY | *UNTITLED (WHITE 4 INNER BAND BEVELED)* , 2012 |
| , MARY | *UNTITLED (WHITE 1 INNER BAND BEVELED)* , 2012, SH29/LN7 |
| , MARY | *UNTITLED (WHITE 1 INNER BAND BEVELED)* , 2012, *SH30/LN1* |
| , MARY | *UNTITLED (WHITE 1 INNER BAND W/OUTER BAND, BEVELED)* , 2012 |
| S, ROBERT | *WORKING DRAWING FOR VERTICAL COLUMN, HORIZONTAL COLUMN, HANGING SLAB* , 1973 |
| BEN | *ROADTRIP VIDEO PAINTING,* 2013 |
| GARY | *METAL PAINTING #2* , 2011 |
| 'ENET, BERNAR | [OTHER SALE] 50% SHARE OF THE COST OF THE AD ON THE BACK COVER OF THE MAY/JUNE ISSUE OF FLASH ART MAGAZINE |
| R, JUSTIN | *SPACEBOY V,* 2013 |
| :, CARL | *100 ACE ZINC SQUARE* , 2007 |
| , MARY | *UNTITLED (WHITE INNER BAND)* , 2012 |
| :, CARL | [OTHER SALE] FREIGHT FOR: 100 ACE ZINC SQUARE |
| , JOHN | *MARITIME #18 (BLACK PEARL)* , 2004 |
| 'ARMERS | *UNTITLED (AMERICAN FLAG THEME),* 2013 |
| ı, LAURIE | *WANDA ALWAYS WANTED TO BE A SEX OBJECT,* 1991 |
| R, JUSTIN | *UNTITILED* , 2013 |
| 'ARMERS | *METEOR SHOWER* , 2013 |

**BIT C**
**ART SALES**
**TION & INC., ACE MUSEUM, AND 400 S. LA BREA, LLC**

| Artist | Piece / Description |
|---|---|
| ), DAVID | *FAST LINE* , 2006 |
| . PHIL | *UNTITLED* , 2013 [4' x 3'] |
| GARY | *ONE (WITH THE) STING #3* , 2011 |
| IAN, HELEN | *UNTITLED #18* , 2012 |
| IAN, HELEN | *UNTITLED #19* , 2012 |
| IAN, HELEN | *UNTITILED (BLUE SPHERE)* , 2013 |
| . PHIL | *UNTITLED, 2013 [5' x 4']* |
| , BERNAR | *INDETERMINED LINE* , 1990 |
| :HARLES | *FLOR DE INCINO* , 2012 |
| IAN, HELEN | [OTHER SALE] Commission due to Ace Gallery on direct sale of art |
| ALEX | *YOUNG GIRLS HAIR* , 2012 |
| GARY | *METALINES 1* , 2013 |
| GARY | *METALINES 2* , 2013 |
| IAN, HELEN | *UNTITLED (ELLIPTICAL SPHERIOD)* , 1969 |
| , MARY | *1 WHITE PAINTING* , 1968 |
| , MARY | *1 BLACK PAINTING* , 1979 |
| TINE, DE WAIN | *COLUMN GRAY,* 1972-75 [1 of 2] |
| TINE, DE WAIN | *COLUMN GRAY,* 1972-75 [2 of 2] |
| TINE, DE WAIN | *SKYLINE 001* , 2004 |
| TINE, DE WAIN | *COLUMN GRAY #5* , 1970 |
| TINE, DE WAIN | *COLUMN GRAY #1* , 1970 |
| TINE, DE WAIN | *COLUMN GRAY #2* , 1970 |
| TINE, DE WAIN | *COLUMN GRAY WITH CLOUD* , 1969-70 |
| TINE, DE WAIN | *DIAMOND COLUMN BLUE* , 1968 |
| I, GISELA | *RECTANGLE TORQUE GLO-POD (IRIDESCENT HOT RED/PINK),* 2013 |
| IAN, HELEN | *SPHERE (RED, PALE BLIE EYES)* ,2013 |
| I, GISELA | *SKEWED SQUARE GLO-POD (IRIDESCENT INDIGO GLUE),* 2014 |
| R, JUSTIN | *UNTITLED* , 2009 |
| I, GISELA | *DOME MELT GLO-POD (IRIDESCENT BLUE GREEN)* , 2014 |
| , MARY | *UNTITLED (WHITE INNER BANK WITH FLAD WHITE OUTER BANDS, BEVELED)* , 2012 |
| NDER, PETER | *SEVEN PART BAR, 2013* |
| I, GISELA | *SLAB GLO-POD (IRIDESCENT GREEN BLUE)* , 2013 |
| I, GISELA | *OVOID GLO-POD (IRIDESCENT AQUA VIOLET),* 2013 |
| I, GISELA | *OVOID GLO-POD (IRIDESCENT AQUA GOLD)* , 2013 |
| TINE, DE WAIN | *RING AGATE,* 1968 |
| TINE, DE WAIN | [OTHER SALE] CRATING FOR: RING AGATE, 1968 |
| IAN, HELEN | *UNTITLED (SPHERE)* , 2014 |
| NDER, PETER | [OTHER SALE] DELIVERY AND INSTALLATION FOR: SEVEN PART BAR, 2013 |
| ALEX | *PLANE CRASH* , 2013 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**BIT C**
**ART SALES**
**TION & INC., ACE MUSEUM, AND 400 S. LA BREA, LLC**

| Artist | Piece / Description |
|---|---|
| ALEX | *BOY IN COSTUME,* 2013 |
| TINE, DE WAIN | *CANTILEVERED PROJECTIONS* , 1965 |
| IAN, HELEN | *UNTITLED (SPHERE)* , 2013-14 |
| , MARY | *UNTITLED - WHITE INNER BAND, BEVELED* , 20112 |
| R, JUSTIN | *EMBEDDED, BEVELED* , 2010 |
| R, JUSTIN | *FEEDBACK LOOP II* , 2010 |
| , MARY | *UNTITLED (WHITE MULTI INNER BAND BEVELED)* , 2013 |
| | |
| I, LAURIE | *HUNG UP AND OVER* , 2003 |
| , MARY | *UNTITLED (WHITE LIGHT SERIES)* , 1966 |
| IAN, HELEN | *UNTITLED (DISC),* 2014 |
| TINE, DE WAIN | *SMOKE GREY COLUMN,* 1972 |
| I, LAURIE | [OTHER SALE] DISCUSSION W/ DOUGLAS CHRISMAS AND LIPTON, LAURIE |
| IAN, HELEN | *UNTITLED (COLUMN #1)* , 2010 |
| I, LAURIE | *BONE CHINA,* 2009 |
| | [OTHER SALE] RENTAL OF ACE GALLERY BEVERLY HILLS (VENUE) |
| , MARY | *UNTITLED* , 2010 |
| GARY | *LLUVIAL* , 1991 |
| IAN, HELEN | *UNTITLED (BLUE & GREEN WITH ACRYLIC ROD),* 2014 |
| , MARY | *UNTITLED (BLACK/WHITE BANDS BEVELED)* , 2005 |
| JDY | [OTHER SALE] CRATING AND PACKING FOR: SNOW WHITE |
| IE, RUTH | *BLUE ORANGE 5-V6032 (ORANGE OCRE), INTERPLAY SERIES,* 2005 |
| , MARY | *UNTITLED (WHITE MULTI INNER BAND BEVELED)* , 2012 |
| IAN, HELEN | *UNTITLED (RED),* 1991 |
| TINE, DE WAIN | *CIRCLE, SEPIA TO ROSE,* 1970 |
| , MARY | [OTHER SALE] DELIVERY AND COLLECTION OF MARY CORSE ARTWORKS |
| GARY | *THREE PLANETS* , 2011 |
| ARMERS | *VARRIO,* 2012 |
| R, JUSTIN | *VIVISECTION (1)* , 2012 |
| NDER, PETER | *FLOW LIME TABLE WEDGE* , 2014 |
| I, LAURIE | *ROUND AND ROUND,* 2012 |
| , MARY | *Untitled, 2010 White Flat w/ 3 Inner Bands* |
| I, GISELA | *ULTRA SPHEROID GLO-POD (IRIDESCENT LILAC)* , 2014 |
| IAN, HELEN | *UNTITLED (COLUMN #8)* , 2011 |
| .DI, NATALIE | *RED EYE* , 2014 |
| I, GISELA | *OVOID GLO-POD (IRIDESCENT ORANGE* ), 2013 |
| , MARY | *UNTITLED (WHITE INNER BAND BEVELED)* , 2010 |
| , MARY | *UNTITLED (GOLD)* , 1975 |
| IAN, HELEN | *UNTITLED SPHERE (BRIGHT GREEN WITH CROSSED RODS)* , 2014 |
| I, ALEXANDER | *SITTING WITH DOLORES,* 2015 |
| | |
| .DI, NATALIE | *QUARTER PAST* , 2014 |
| , MARY | *WHITE MULTIPLE INNER BAND BEVELED,* 2012 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

BIT C
ART SALES
TION & INC., ACE MUSEUM, AND 400 S. LA BREA, LLC

| Artist | Piece / Description |
|---|---|
| , MARY | *UNTITLED (WHITE, BLACK & RED)* , 2014 |
| , MARY | *UNTITLED (BLACK, WHITE)* , 2014 [102" x 72"] |
| I, GISELA | *ULTRA SPHEROID GLO-POD (IRIDESCENT ORANGE)* , 2014 |
| .DI, NATALIE | *SOCKET* , 2011 |
| I, ALEXANDER | *INDRANI (WHITE, BLACK & RED)* , 2015 |
| , MARY | *UNTITLED (WHITE, BLACK & RED),* 2015 |
| , MARY | *UNTITLED (WHITE INNER BAND WITH FLAT WHITE OUTER BAND)* , 2012 |
| .DI, NATALIE | *UNTITLED,* 2015 |
| I, GISELA | *HYPER ELLIPSOID GLO-POD (IRIDESCENT BLUE),* 2014 |
| LLER, MARTIN | [OTHER SALE] MOUNTING AND FRAMING FOR FOUR MARTIN SCHOELLER PHOTOGRAPHS AND INSTALLATION AT CUT BEVERLY |
| , MARY | *UNTITLED (WHITE BLACK BAND, BEVELED)* , 2006 |
| , MARY | *UNTITLED (BLUE, BLACK, AND WHITE)* , 2015 |
| , MARY | *UNTITLED (BLACK, WHITE)* , 2014 [72" x 48"] |
| , MARY | *UNTITLED (YELLOW, BLACK, WHITE)* , 2015 |
| , MARY | *UNTITLED (BLACK LIGHT), 1989* |
| I, ALEXANDER | *THE TWO OF THEM,* 2014 |
| .DI, NATALIE | *DUME,* 2012 |
| , MARY | *UNTITLED (RED DOUBLE ARCH)* , 1999 |
| I, ALEXANDER | *THE TWO OF US* , 2015 |
| I, ALEXANDER | *WITH DOG* , 2015 |
| MATT | *MELTDOWN* , 2008 |
| MATT | *MELTDOWN* , 2007 |
| , MARY | *UNTITLED (WHITE MULTIPLE INNER BAND, BEVELED)* , 2012 |
| , MARY | *UNTITLED (WHITE INNER BAND), 2003* |
| ELLSWORTH | *BLOCK ISLAND II* , 1960 |
| , MARY | *UNTITLED (WHITE MULTIPLE INNER BAND, BEVELED),* 2012 [with flat sides beveled] |
| IS, SAM | *UNTITLED,* 1964 |
| , MARY | *UNTITLED (WHITE/YELLOW INNERBAND, BEVELED)* , 2015 |
| , DAVID | *SILVER,* 2014 |
| I, ALEXANDER | *MOVEMENT IN TIME* , 2015 |
| I, ALEXANDER | *IN LIMBO* , 2015 |
| I, ALEXANDER | *THE ORANGE SHIRT* , 2015 |
| , MARY | *UNTITLED (WHITE DIAMOND, POSITIVE STRIPE)* , 1965 |
| BEN | *LADDERS SERIES* , 2015 |
| NDER, PETER | *5/24/15 (PINK PUFF)* , 2015 |
| I, LAURIE | *ILLUSION OF CONTROL TOWER* , 2012 |
| , MARY | *UNTITLED (SHADOW PAINTING, BLACK BEVELED SERIES),* 1993 |
| TINE, DE WAIN | *SMOKE GREY COLUMN* , 1972-73 [23 1/2" x 10 1/4" x 9 1/2'] |
| , MARY | *BLACK GLITTER, WHITE BEADS* , 1975 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

BIT C
ART SALES
TION & INC., ACE MUSEUM, AND 400 S. LA BREA, LLC

| Artist | Piece / Description |
|---|---|
| HENBERG, ROBERT | *JOUST (JAMMER),* 1976 |
| I, GISELA | *SLAB OVOPOID GLO-POD (IRIDESCENT ORANGE PINK)* , 2014 |
| IAN, HELEN | *STANDING DISK, YELLOW IN TONE* |
| HENBERG, ROBERT | *STALLION (JAMMER),* 1976 |
| VAN, TARA | *COLONY* , 2002 |
| , JONATHAN | *THE MOMENT BEFORE YOU REALIZE YOU ARE NOT LOST* , 2005 |
| , MARY | *UNTITLED, (BLACK LIGHT GRID SERIES)* , 1987 |
| Y, SYLVIE | *LIFE CAN GET HEAVY MASCARA SHOULDN'T* , 1999 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT D**

**DEPOSITS OF DEBTOR'S DIP AND OTHER LOANS DEPOSITED INTO ACE MUSEUM AND ACE GALLERY NEW YORK CORPORATION AND REPAYMENTS OF DEBTOR'S DIP LOANS REPAID/TRANSFERRED BACK TO DEBTOR'S ACCOUNTS FROM ACE GALLERY NEW YORK CORPORATION**

**CITY NATIONAL BANK (CNB)**

| | Date per Bank Statement | Amount Deposited (Repaid or Transferred Back to Debtor) | Bank Account |
|---|---|---|---|
| | **Debtor's DIP and Other Loans Deposited into Ace Museum:** | | |
| | 04/11/2013 | $ 79,982.00 | CNB #6347 |
| | 04/23/2014 | $ 84,980.00 | CNB #6347 |
| | 05/12/2014 | $ 84,980.00 | CNB #6347 |
| | 05/14/2014 | $ 74,980.00 | CNB #6347 |
| | 05/30/2014 | $ 99,980.00 | CNB #6347 |
| | 08/20/2014 | $ 134,980.00 | CNB #6347 |
| | 10/23/2014 | $ 51,980.00 | CNB #6347 |
| | 11/20/2014 | $ 179,980.00 | CNB #6347 |
| | 02/24/2015 | $ 124,980.00 | CNB #6347 |
| [A] | **Total Debtor's DIP and Other Loans Deposited into Ace Museum** | $ 916,822.00 | |
| | **Debtor's DIP and Other Loans Deposited into Ace Gallery New York Corporation:** | | |
| | 03/07/2013 | $ 159,982.00 | CNB #0229 |
| | 09/16/2013 | $ 1,124,980.00 | CNB #0229 |
| | 09/16/2013 | $ 199,980.00 | CNB #0229 |
| | 09/16/2013 | $ 450,000.00 | CNB #0229 |
| | 02/19/2014 | $ 39,980.00 | CNB #0229 |
| | 12/18/2014 | $ 319,980.00 | CNB #0229 |
| | 01/02/2015 | $ 219,980.00 | CNB #0229 |
| | 05/15/2015 | $ 99,980.00 | CNB #0229 |
| [B] | **Total Debtor's DIP and Other Loans Deposited into Ace Gallery New York Corporation** | $ 2,614,862.00 | |
| | **Repayments of Debtor's DIP and Other Loans Repaid from Ace Gallery New York Corporation:** | | |
| | 05/21/2013 | $ (51,000.00) | CNB #0229 |
| | 11/15/2013 | $ (17,257.41) | CNB #0229 |
| [C] | **Total Repayments of Debtor's DIP and Other Loans Repaid from Ace Gallery New York Corporation** | $ (68,257.41) | |
| | **Debtor's DIP Loans Transferred Back to Debtor from Ace Gallery New York Corporation:** | | |
| [D] | 09/17/2013 | $ (421,186.12) | CNB #0229 |
| [E] | **Debtor's DIP Loans Transferred Back to Debtor from Ace Gallery New York Corporation** | $ (421,186.12) | |
| [A]+[B]+[C]+[E] | **Net Total** | $ 3,042,240.47 | |

**Note:**

The amounts listed above are deposit amounts as shown in Ace Museum CNB #6347 and Ace Gallery New York Corporation CNB #0229 bank records.

The amounts may be less than the actual loan amounts sent by the DIP lender due to wire fees.

[D] $421,186.12 was transferred to Ace Gallery Client Trust Account - Levine Neale Bender Yoo & Brill TTES

BRG

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT E**
**PAYMENTS TO 400 S. LA BREA, LLC**
**DEPOSITED INTO CATHAY BANK #1679**

| | Date per Bank Statement | | Deposit Amount | Paid from | Paid From Account |
|---|---|---|---|---|---|
| | **Pre-Petition:** | | | | |
| | 07/24/2006 | $ | 1,000,000.00 | Debtor | La Jolla Bank |
| | 12/01/2006 | $ | 109,208.78 | Debtor | La Jolla Bank |
| | 03/27/2007 | $ | 112,815.45 | Debtor | Citibank |
| | 05/03/2007 | $ | 6,951.00 | Debtor | Citibank |
| | 06/06/2007 | $ | 1,500,000.00 | Debtor | Citibank |
| | 12/04/2007 | $ | 114,623.28 | Debtor | Union Bank |
| | 01/02/2008 | $ | 1,500,000.00 | Debtor | Union Bank |
| | 03/25/2008 | $ | 114,623.27 | Debtor | Union Bank |
| | 04/18/2008 | $ | 5,573.00 | Debtor | Union Bank |
| | 07/01/2008 | $ | 1,000,000.00 | Debtor | Union Bank |
| | 12/03/2008 | $ | 50,000.00 | Debtor | Union Bank |
| | 12/10/2008 | $ | 68,523.99 | Debtor | Union Bank |
| | 12/15/2008 | $ | (68,523.99) | Debtor | Union Bank |
| | 01/26/2009 | $ | 69,270.50 | Debtor | Union Bank |
| | 07/06/2009 | $ | 132,677.96 | Debtor | Union Bank |
| [A] | **Pre-Petition Payments Before Lease Transfer to Ace Museum** | **$** | **5,715,743.24** | | |
| | 08/31/2009 | $ | 200,000.00 | Ace Museum | Citibank #9097 |
| | 10/05/2009 | $ | 100,000.00 | Ace Museum | Citibank #9097 |
| | 12/01/2009 | $ | 100,000.00 | Ace Museum | Citibank #9097 |
| | 12/09/2009 | $ | 123,833.74 | Ace Museum | Citibank #9097 |
| | 03/09/2010 | $ | 100,000.00 | Ace Museum | Citibank #9097 |
| | 04/09/2010 | $ | 400,000.00 | Ace Museum | Citibank #9097 |
| | 05/18/2010 | $ | 125,000.00 | Ace Museum | Citibank #9097 |
| | 06/16/2010 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 07/22/2010 | $ | 50,000.00 | Ace Museum | CNB #6347 |
| | 07/27/2010 | $ | 75,000.00 | Ace Museum | CNB #6347 |
| | 08/18/2010 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 08/18/2010 | $ | 37,500.00 | Ace Museum | CNB #6347 |
| | 09/08/2010 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 10/20/2010 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 11/05/2010 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 12/13/2010 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 01/12/2011 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 02/17/2011 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 03/22/2011 | $ | 137,500.00 | Ace Museum | CNB #6347 |
| | 04/14/2011 | $ | 125,000.00 | Debtor | CNB #0176 |
| | 04/25/2011 | $ | 15,867.00 | Debtor | CNB #0176 |
| | 05/17/2011 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 06/06/2011 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 07/18/2011 | $ | 110,000.00 | Ace Museum | CNB #6347 |
| | 08/01/2011 | $ | 27,500.00 | Ace Museum | CNB #6347 |
| | 08/04/2011 | $ | 110,000.00 | Ace Museum | CNB #6347 |
| | 09/28/2011 | $ | 137,500.00 | Debtor | CNB #0176 |
| | 10/04/2011 | $ | 137,500.00 | Debtor | CNB #0176 |
| | 10/21/2011 | $ | 125,000.00 | Debtor | CNB #0176 |
| | 10/24/2011 | $ | 110,000.00 | Debtor | CNB #0176 |
| | 11/17/2011 | $ | 247,500.00 | Debtor | CNB #0176 |
| | 12/23/2011 | $ | 137,525.00 | Debtor | CNB #0176 |
| | 12/27/2011 | $ | 139,951.45 | Debtor | CNB #0176 |
| | 12/27/2011 | $ | 10.00 | Debtor | CNB #0176 |
| | 01/25/2012 | $ | 75,000.00 | Debtor | CNB #0176 |
| | 01/31/2012 | $ | 28,904.57 | Debtor | CNB #0176 |
| | 02/03/2012 | $ | 50,000.00 | Debtor | CNB #0176 |
| | 03/02/2012 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 03/02/2012 | $ | 12,500.00 | Debtor | CNB #0176 |
| | 03/26/2012 | $ | 72,000.00 | Debtor | CNB #0176 |
| | 04/05/2012 | $ | 36,031.28 | Debtor | CNB #0176 |
| | 04/12/2012 | $ | 36,000.00 | Debtor | CNB #0176 |
| | 05/08/2012 | $ | 280,186.00 | Debtor | CNB #0176 |
| | 06/05/2012 | $ | 142,279.21 | Debtor | CNB #0176 |
| | 07/05/2012 | $ | 125,000.00 | Ace Museum | CNB #6347 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT E**
**PAYMENTS TO 400 S. LA BREA, LLC**
**DEPOSITED INTO CATHAY BANK #1679**

| | Date per Bank Statement | | Deposit Amount | Paid from | Paid From Account |
|---|---|---|---|---|---|
| | 08/03/2012 | $ | 125,000.00 | Debtor | CNB #0176 |
| | 09/05/2012 | $ | 125,000.00 | Ace Museum | CNB #6347 |
| | 10/25/2012 | $ | 137,500.00 | Debtor | CNB #0176 |
| | 11/23/2012 | $ | 137,500.00 | Debtor | CNB #0176 |
| | 11/28/2012 | $ | (137,500.00) | Debtor | CNB #0176 |
| | 01/31/2013 | $ | 100,000.00 | Ace Museum | CNB #6347 |
| | 02/07/2013 | $ | 25,000.00 | Debtor | CNB #0176 |
| [B] | **Pre-Petition Payments After Lease Transfer to Ace Museum** | **$** | **5,617,588.25** | | |
| [C] = [A] + [B] | **Pre-Petition Total** | **$** | **11,333,331.49** | | |
| | **Post-Petition:** | | | | |
| | 02/22/2013 | $ | 137,500.00 | Ace Museum | CNB #6347 |
| | 03/01/2013 | $ | 137,525.00 | Ace Gallery New York Corpo | CNB #0229 |
| | 03/11/2013 | $ | 137,500.00 | Ace Museum | CNB #6347 |
| | 03/26/2013 | $ | 48,000.00 | Ace Gallery New York, Inc. | Wells Fargo #9951 |
| | 03/26/2013 | $ | 104,660.00 | Ace Museum | CNB #6347 |
| | 04/17/2013 | $ | 136,975.19 | Ace Museum | CNB #6347 |
| | 05/21/2013 | $ | 138,174.50 | Ace Museum | CNB #6347 |
| | 06/06/2013 | $ | 150,000.00 | Ace Museum | CNB #6347 |
| | 07/05/2013 | $ | 150,000.00 | Ace Museum | CNB #6347 |
| | 07/09/2013 | $ | 40,000.00 | Ace Museum | CNB #6347 |
| | 08/06/2013 | $ | 150,000.00 | Ace Museum | CNB #6347 |
| | 09/24/2013 | $ | 165,000.00 | Ace Museum | CNB #6347 |
| | 10/24/2013 | $ | 165,000.00 | Ace Museum | CNB #6347 |
| | 11/26/2013 | $ | 165,000.00 | Ace Museum | CNB #6347 |
| | 12/13/2013 | $ | 165,000.00 | Ace Museum | CNB #6347 |
| | 01/17/2014 | $ | 165,000.00 | Ace Museum | CNB #6347 |
| | 02/21/2014 | $ | 165,000.00 | Ace Museum | CNB #6347 |
| | 03/20/2014 | $ | 150,000.00 | Ace Museum | CNB #6347 |
| | 04/22/2014 | $ | 165,000.00 | Ace Museum | CNB #6347 |
| | 04/23/2014 | $ | (165,000.00) | Ace Museum | CNB #6347 |
| | 04/24/2014 | $ | 165,000.00 | Ace Museum | CNB #6347 |
| | 05/28/2014 | $ | 234,001.22 | Ace Museum | CNB #6347 |
| | 06/17/2014 | $ | 226,600.00 | Ace Museum | CNB #6347 |
| | 07/18/2014 | $ | 226,600.00 | Ace Museum | CNB #6347 |
| | 08/21/2014 | $ | 226,600.00 | Ace Museum | CNB #6347 |
| | 09/25/2014 | $ | 226,600.00 | Ace Museum | CNB #6347 |
| | 10/22/2014 | $ | 175,000.00 | Ace Museum | CNB #6347 |
| | 10/23/2014 | $ | 51,600.00 | Ace Museum | CNB #6347 |
| | 11/24/2014 | $ | 100,000.00 | Ace Museum | CNB #6347 |
| | 11/25/2014 | $ | 100,000.00 | Ace Museum | CNB #6347 |
| | 12/04/2014 | $ | 26,600.00 | Ace Museum | CNB #6347 |
| | 12/29/2014 | $ | 100,000.00 | Ace Museum | CNB #6347 |
| | 12/30/2014 | $ | 120,000.00 | Ace Museum | CNB #6347 |
| | 01/02/2015 | $ | 6,600.00 | Ace Museum | CNB #6347 |
| | 01/16/2015 | $ | 226,600.00 | Ace Museum | CNB #6347 |
| | 02/19/2015 | $ | 100,000.00 | Ace Museum | CNB #6347 |
| | 02/25/2015 | $ | 126,600.00 | Ace Museum | CNB #6347 |
| | 03/19/2015 | $ | 226,600.00 | Ace Museum | CNB #6347 |
| | 03/23/2015 | $ | 3,121.50 | Ace Museum | CNB #6347 |
| | 04/29/2015 | $ | 226,600.00 | Ace Museum | CNB #6347 |
| | 05/19/2015 | $ | 160,000.00 | Ace Museum | CNB #6347 |
| | 05/21/2015 | $ | 66,600.00 | Ace Museum | CNB #6347 |
| | 05/26/2015 | $ | 11,973.00 | Ace Museum | CNB #6347 |
| | 06/22/2015 | $ | 200,000.00 | Ace Museum | CNB #6347 |
| | 06/26/2015 | $ | 33,398.00 | Ace Museum | CNB #6347 |
| | 07/21/2015 | $ | 150,000.00 | Ace Museum | CNB #6347 |
| | 07/29/2015 | $ | 40,000.00 | Ace Museum | CNB #6347 |
| | 08/03/2015 | $ | 43,398.00 | Ace Museum | CNB #6347 |
| | 08/31/2015 | $ | 220,000.00 | Ace Museum | CNB #6347 |
| | 09/01/2015 | $ | 13,398.00 | Jennifer Kellen | Citibank (Cashier's Check) |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT E**
**PAYMENTS TO 400 S. LA BREA, LLC**
**DEPOSITED INTO CATHAY BANK #1679**

| | Date per Bank Statement | Deposit Amount | Paid from | Paid From Account |
|---|---|---|---|---|
| | 09/30/2015 | $ 233,398.00 | Ace Museum | CNB #6347 |
| | 10/05/2015 | $ 212,180.00 | Ace Museum | CNB #6347 |
| | 10/23/2015 | $ 21,218.00 | Ace Museum | CNB #6347 |
| | 11/04/2015 | $ 212,180.00 | Ace Museum | CNB #6347 |
| | 12/14/2015 | $ 150,000.00 | Ace Museum | CNB #6347 |
| | 12/23/2015 | $ 62,180.00 | Ace Museum | CNB #6347 |
| | 01/25/2016 | $ 60,000.00 | Ace Museum | CNB #6347 |
| | 01/29/2016 | $ 173,398.00 | Ace Museum | CNB #6347 |
| | 02/26/2016 | $ 133,398.00 | Ace Museum | CNB #6347 |
| | 02/29/2016 | $ 75,000.00 | Ace Museum | CNB #6347 |
| | 03/03/2016 | $ 25,000.00 | Ace Museum | CNB #6347 |
| | 03/30/2016 | $ 150,000.00 | Ace Museum | CNB #6347 |
| [D] | 04/01/2016 | $ 114,595.32 | Henning Freybe | HSBC |
| [E] | **Post-Petition Total** | **$ 7,926,371.73** | | |
| [C] + [E] | **Pre- and Post- Petition Total** | **$ 19,259,703.22** | | |

**Note:**

[D] Payment to 400 S. La Brea, LLC, from art purchaser

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT F**

**400 S. LA BREA, LLC, LEASE PAYMENTS FROM DEBTOR'S FUNDS**

| | | |
|---|---|---|
| | **Pre-Petition Lease Payments from Debtor's Funds:** | |
| [A] | Paid by Debtor | $ 7,911,997.75 |
| [B] | Less: Net Transfers to Debtor from Ace Museum | (1,007,313.32) |
| [C] = [A] + [B] | **Total Pre-Petition Lease Payments from Debtor's Funds** | **$ 6,904,684.43** |
| | **Post-Petition Lease Payments from Debtor's Funds:** | |
| | Post-Petition Debtor's Funds Paid Directly to 400 S. La Brea, LLC, From: | |
| [D] | Art purchaser | 114,595.32 |
| [E] | Ace Gallery New York Corporation & Inc. | 185,525.00 |
| [F] = [D] + [E] | Post-Petition Debtor's Funds Paid Directly to 400 S. La Brea, LLC | $ 300,120.32 |
| | Post-Petition Net Debtor's Funds Not Returned to Debtor: | |
| [G] | Deposits Of Debtor's Art Sales into Ace Museum | 918,000.00 |
| [H] | Deposits Of Debtor's DIP and Other Loans Deposited into Ace Museum | 916,822.00 |
| [I] | Transfers From Debtor To Ace Museum | 322,180.00 |
| [J] | Transfers To Debtor From Ace Museum | (1,434,692.02) |
| [K] | Net Transfers In From (Out To) Ace Gallery New York Corporation and Inc. | 4,744,332.02 |
| [L] = Sum [G] to [K] | Total Post-Petition Net Debtor's Funds Not Returned to Debtor | $ 5,466,642.00 |
| [M] = [F] + [L] | **Total Post-Petition Lease Payments from Debtor's Funds** | **$ 5,766,762.32** |
| [N] = [C] + [M] | **Total 400 S. La Brea, LLC, Lease Payments from Debtor's Funds** | **$ 12,671,446.75** |

**Notes & Sources:**

| | |
|---|---|
| [A] | Exhibit E |
| [B] | Exhibit AG |
| [D] | Exhibit E, Exhibit Y |
| [E] | Exhibit E |
| [G] | Exhibit C |
| [H] | Exhibit D |
| [I] | Exhibit AD |
| [J] | Exhibit AD |
| [K] | Exhibit AC |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT G**

**400 S. LA BREA, LLC, MORTGAGE PAYMENTS**

| Date per Bank or Mortgage Statement | Amount Paid | | Mortgage Account |
|---|---|---|---|
| **Pre-Petition:** | | | |
| 07/27/2006 | $ | 91,390.28 | #1842 |
| 09/11/2006 | $ | 91,222.13 | #1842 |
| 10/13/2006 | $ | 88,279.48 | #1842 |
| 11/01/2006 | $ | 91,222.13 | #1842 |
| 12/11/2006 | $ | 88,279.48 | #1842 |
| 01/11/2007 | $ | 91,222.13 | #1842 |
| 02/09/2007 | $ | 91,222.12 | #1842 |
| 03/12/2007 | $ | 82,394.18 | #1842 |
| 04/11/2007 | $ | 91,222.13 | #1842 |
| 04/30/2007 | $ | 88,279.48 | #1842 |
| 06/07/2007 | $ | 91,222.13 | #1842 |
| 07/05/2007 | $ | 88,279.48 | #1842 |
| 08/10/2007 | $ | 91,222.13 | #1842 |
| 09/07/2007 | $ | 91,222.13 | #1842 |
| 10/10/2007 | $ | 88,279.48 | #1842 |
| 11/07/2007 | $ | 83,823.46 | #1842 |
| 12/07/2007 | $ | 80,628.59 | #1842 |
| 01/10/2008 | $ | 81,637.50 | #1842 |
| 02/08/2008 | $ | 80,796.75 | #1842 |
| 03/07/2008 | $ | 60,534.50 | #1842 |
| 04/09/2008 | $ | 64,233.83 | #1842 |
| 05/09/2008 | $ | 58,012.23 | #1842 |
| 06/10/2008 | $ | 59,945.97 | #1842 |
| 07/07/2008 | $ | 58,012.23 | #1842 |
| 08/08/2008 | $ | 75,012.00 | #1842 |
| 09/10/2008 | $ | 75,012.00 | #1842 |
| 10/08/2008 | $ | 75,012.00 | #1842 |
| 11/10/2008 | $ | 75,012.00 | #1842 |
| 12/10/2008 | $ | 75,012.00 | #1842 |
| 01/08/2009 | $ | 75,012.00 | #1842 |
| 02/10/2009 | $ | 75,012.00 | #1842 |
| 03/11/2009 | $ | 75,012.00 | #1842 |
| 04/10/2009 | $ | 75,012.00 | #1842 |
| 05/11/2009 | $ | 75,012.00 | #1842 |
| 06/10/2009 | $ | 75,012.00 | #1842 |
| 07/09/2009 | $ | 51,992.97 | #1842 |
| 07/17/2009 | $ | 23,019.03 | #1842 |
| 08/10/2009 | $ | 75,012.00 | #1842 |
| 09/03/2009 | $ | 75,012.00 | #1842 |
| 10/08/2009 | $ | 75,012.00 | #1842 |
| 11/10/2009 | $ | 75,012.00 | #1842 |
| 12/10/2009 | $ | 75,012.00 | #1842 |
| 01/08/2010 | $ | 75,012.00 | #1842 |
| 01/11/2010 | $ | 1,900.00 | #1842 |
| 02/10/2010 | $ | 75,012.00 | #1842 |
| 03/10/2010 | $ | 75,012.00 | #1842 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT G**

**400 S. LA BREA, LLC, MORTGAGE PAYMENTS**

| | Date per Bank or Mortgage Statement | Amount Paid | | Mortgage Account |
|---|---|---|---|---|
| | 04/09/2010 | $ | 75,012.00 | #1842 |
| | 05/19/2010 | $ | 75,012.00 | #1842 |
| | 06/11/2010 | $ | 75,012.00 | #1842 |
| | 07/19/2010 | $ | 75,012.00 | #1842 |
| | 08/18/2010 | $ | 75,012.00 | #1842 |
| | 08/31/2010 | $ | 5,400.00 | #1842 |
| | 08/31/2010 | $ | 75,012.00 | #1842 |
| | 10/13/2010 | $ | 75,012.00 | #1842 |
| | 11/10/2010 | $ | 75,012.00 | #1842 |
| | 12/10/2010 | $ | 75,012.00 | #1842 |
| | 01/10/2011 | $ | 75,012.00 | #1842 |
| | 02/10/2011 | $ | 75,012.00 | #1842 |
| | 03/10/2011 | $ | 75,012.00 | #1842 |
| | 04/11/2011 | $ | 75,012.00 | #1842 |
| | 05/10/2011 | $ | 75,012.00 | #1842 |
| | 06/10/2011 | $ | 75,012.00 | #1842 |
| [A] | 07/11/2011 | $ | 75,012.00 | #1842 |
| | 08/10/2011 | $ | 51,073.49 | #1842 |
| | 09/09/2011 | $ | 75,012.00 | #1842 |
| | 10/11/2011 | $ | 75,012.00 | #1842 |
| | 11/10/2011 | $ | 75,012.00 | #1842 |
| | 12/09/2011 | $ | 75,012.00 | #1842 |
| | 01/10/2012 | $ | 75,012.00 | #1842 |
| | 02/10/2012 | $ | 75,012.00 | #1842 |
| | 03/09/2012 | $ | 75,012.00 | #1842 |
| | 04/10/2012 | $ | 75,012.00 | #1842 |
| | 05/10/2012 | $ | 75,012.00 | #1842 |
| | 06/08/2012 | $ | 75,012.00 | #1842 |
| | 07/10/2012 | $ | 75,012.00 | #1842 |
| | 08/10/2012 | $ | 75,012.00 | #1842 |
| | 09/10/2012 | $ | 75,012.00 | #1842 |
| | 10/10/2012 | $ | 75,012.00 | #1842 |
| | 11/09/2012 | $ | 67,279.00 | #1842 |
| | 12/10/2012 | $ | 67,279.00 | #1842 |
| | 01/10/2013 | $ | 67,279.00 | #1842 |
| | 02/08/2013 | $ | 67,279.00 | #1842 |
| [B] | **Pre-Petition Total** | $ | 6,050,673.44 | |
| | **Post-Petition:** | | | |
| | 03/08/2013 | $ | 67,279.00 | #1842 |
| | 04/10/2013 | $ | 67,279.00 | #1842 |
| | 05/10/2013 | $ | 67,279.00 | #1842 |
| [A] | 06/07/2013 | $ | 67,279.00 | #1842 |
| [A] | 07/08/2013 | $ | 31,634.61 | #1842 |
| [A] | 07/08/2013 | $ | 35,644.39 | #1842 |
| | 08/09/2013 | $ | 67,279.00 | #4286 |
| | 09/06/2013 | $ | 67,279.00 | #4286 |

**EXHIBIT G**

**400 S. LA BREA, LLC, MORTGAGE PAYMENTS**

| | Date per Bank or Mortgage Statement | Amount Paid | | Mortgage Account |
|---|---|---|---|---|
| | 10/10/2013 | $ | 67,279.00 | #4286 |
| | 11/12/2013 | $ | 67,279.00 | #4286 |
| | 12/10/2013 | $ | 67,279.00 | #4286 |
| | 01/10/2014 | $ | 67,279.00 | #4286 |
| | 02/07/2014 | $ | 67,279.00 | #4286 |
| | 03/07/2014 | $ | 67,279.00 | #4286 |
| | 04/10/2014 | $ | 67,279.00 | #4286 |
| | 05/12/2014 | $ | 67,279.00 | #4286 |
| | 06/09/2014 | $ | 67,279.00 | #4286 |
| | 07/10/2014 | $ | 67,279.00 | #4286 |
| | 08/04/2014 | $ | 67,113.00 | #4286 |
| | 09/05/2014 | $ | 67,113.00 | #4286 |
| | 10/07/2014 | $ | 67,113.00 | #4286 |
| | 11/06/2014 | $ | 67,113.00 | #4286 |
| | 12/12/2014 | $ | 67,113.00 | #4286 |
| | 01/12/2015 | $ | 67,113.00 | #4286 |
| | 02/12/2015 | $ | 67,113.00 | #4286 |
| | 03/11/2015 | $ | 67,113.00 | #4286 |
| | 04/13/2015 | $ | 67,113.00 | #4286 |
| | 05/11/2015 | $ | 67,113.00 | #4286 |
| | 06/08/2015 | $ | 67,113.00 | #4286 |
| | 07/07/2015 | $ | 67,113.00 | #4286 |
| | 08/11/2015 | $ | 67,113.00 | #4286 |
| | 09/09/2015 | $ | 67,113.00 | #4286 |
| | 10/13/2015 | $ | 67,113.00 | #4286 |
| | 11/09/2015 | $ | 67,113.00 | #4286 |
| | 12/09/2015 | $ | 67,113.00 | #4286 |
| | 01/11/2016 | $ | 67,113.00 | #4286 |
| | 02/08/2016 | $ | 67,113.00 | #4286 |
| | 03/09/2016 | $ | 67,113.00 | #4286 |
| [C] | **Post-Petition Total** | $ | 2,486,003.00 | |
| [B] + [C] | **Pre- and Post- Petition Total** | $ | 8,536,676.44 | |

**Note:**

[A] This mortgage payment is listed in 400 S. La Brea, LLC, Cathay Bank mortgage documents Bates-stamped CATHAY 00202 to CATHAY 00230.
The 400 S. La Brea, LLC, Cathay Bank #1679 checking account bank statement page for the month was not included in the checking account documents Bates-stamped CATHAY 00231 to CATHAY 00679.
The other payments in the exhibit were found in Cathay Bank checking account #1679 documents and mortgage #1842 or #4286 documents.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT H**
**NET DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Contribution In From Member (Distribution Paid Out to Member) | | Member | | |
|---|---|---|---|---|
| **Amount In From (Out To) Member** | **Name** | **Daryoush Dayan** | **Kamran Gharibian** | **Michael Smith** |
| (660,641.19) | Daryoush Dayan Trust | $ (660,641.19) | | |
| (7,245.00) | Smith-Emery Geoservices | | | $ (7,245.00) |
| (1,370,992.60) | Daryoush Dayan Trust | $ (1,370,992.60) | | |
| (2,250.00) | Smith-Emery Geoservices | | | $ (2,250.00) |
| (675,000.00) | Daryoush Dayan Trust | $ (675,000.00) | | |
| (675,000.00) | Kamran Gharibian | | $ (675,000.00) | |
| (150,000.00) | Michael Smith | | | $ (150,000.00) |
| (235,125.00) | Daryoush Dayan Trust | $ (235,125.00) | | |
| (377,500.00) | Daryoush Dayan Trust | $ (377,500.00) | | |
| (52,250.00) | Michael Smith | | | $ (52,250.00) |
| (235,125.00) | Kamran Gharibian | | $ (235,125.00) | |
| (6,144.20) | Smith-Emery Geoservices | | | $ (6,144.20) |
| (3,746.80) | Smith-Emery Geoservices | | | $ (3,746.80) |
| (14.61) | Dayan Property Services LLC | $ (14.61) | | |
| (13,350.98) | Smith-Emery Geoservices | | | $ (13,350.98) |
| 75,100.00 | Daryoush Dayan Trust | $ 75,100.00 | | |
| (25.08) | Dayan Property Services LLC | $ (25.08) | | |
| 75,100.00 | Daryoush Dayan | $ 75,100.00 | | |
| 120,000.00 | Daryoush Dayan | $ 120,000.00 | | |
| 12,500.00 | Daryoush Dayan | $ 12,500.00 | | |
| (1,479.00) | Smith-Emery Geoservices | | | $ (1,479.00) |
| 75,100.00 | Daryoush Dayan | $ 75,100.00 | | |
| (27.63) | Dayan Property Services LLC | $ (27.63) | | |
| (13.80) | Dayan Property Services LLC | $ (13.80) | | |
| 79,500.00 | Daryoush Dayan | $ 79,500.00 | | |
| (2.09) | Dayan Property Services LLC | $ (2.09) | | |
| (75,000.00) | Daryoush Dayan Trust | $ (75,000.00) | | |
| (12.66) | Dayan Property Services LLC | $ (12.66) | | |
| 23,000.00 | Daryoush Dayan | $ 23,000.00 | | |
| 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| (2.43) | Dayan Property Services LLC | $ (2.43) | | |
| (120,000.00) | Daryoush Dayan Trust | $ (120,000.00) | | |
| (10,000.00) | Daryoush Dayan Trust | $ (10,000.00) | | |
| 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| (28.65) | Dayan Property Services LLC | $ (28.65) | | |
| (24,000.00) | Daryoush Dayan Trust | $ (24,000.00) | | |
| 90,500.00 | Daryoush Dayan | $ 90,500.00 | | |
| 75,100.00 | Daryoush Dayan | $ 75,100.00 | | |
| 2,000.00 | Daryoush Dayan | $ 2,000.00 | | |
| (25,000.00) | Daryoush Dayan Trust | $ (25,000.00) | | |
| (324,000.00) | Daryoush Dayan Trust | $ (324,000.00) | | |
| 3,500.00 | Daryoush Dayan Trust | $ 3,500.00 | | |
| 1,300.00 | Daryoush Dayan Trust | $ 1,300.00 | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT H**
**NET DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Contribution In From Member (Distribution Paid Out to Member) | | Member | | |
|---|---|---|---|---|
| Amount In From (Out To) Member | Name | Daryoush Dayan | Kamran Gharibian | Michael Smith |
| (45,000.00) | Daryoush Dayan Trust | $ (45,000.00) | | |
| 25,000.00 | Daryoush Dayan | $ 25,000.00 | | |
| 60,000.00 | Daryoush Dayan Trust | $ 60,000.00 | | |
| (120,000.00) | Daryoush Dayan Trust | $ (120,000.00) | | |
| 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| (50,000.00) | Daryoush Dayan Trust | $ (50,000.00) | | |
| (75,000.00) | Daryoush Dayan | $ (75,000.00) | | |
| (48,000.00) | Daryoush Dayan Trust | $ (48,000.00) | | |
| (36,000.00) | Daryoush Dayan Trust | $ (36,000.00) | | |
| 80,500.00 | Daryoush Dayan | $ 80,500.00 | | |
| (125,000.00) | Daryoush Dayan Trust | $ (125,000.00) | | |
| 75,000.00 | Daryoush Dayan | $ 75,000.00 | | |
| (124,000.00) | Daryoush Dayan Trust | $ (124,000.00) | | |
| 1,425.00 | Daryoush Dayan Trust | $ 1,425.00 | | |
| (125,000.00) | Daryoush Dayan Trust | $ (125,000.00) | | |
| 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| 1,500.00 | Daryoush Dayan Trust | $ 1,500.00 | | |
| 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| (125,000.00) | Daryoush Dayan Trust | $ (125,000.00) | | |
| 18,800.00 | Daryoush Dayan Trust | $ 18,800.00 | | |
| 75,000.00 | Daryoush Dayan Trust | $ 75,000.00 | | |
| (125,000.00) | Daryoush Dayan Trust | $ (125,000.00) | | |
| 75,000.00 | Daryoush Dayan | $ 75,000.00 | | |
| (120,000.00) | Daryoush Dayan Trust | $ (120,000.00) | | |
| 3,500.00 | Daryoush Dayan | $ 3,500.00 | | |
| 75,000.00 | Daryoush Dayan | $ 75,000.00 | | |
| (137,000.00) | Daryoush Dayan Trust | $ (137,000.00) | | |
| 77,000.00 | Daryoush Dayan | $ 77,000.00 | | |
| (125,000.00) | Daryoush Dayan Trust | $ (125,000.00) | | |
| (12,746.47) | Daryoush Dayan Trust | $ (12,746.47) | | |
| 75,000.00 | Daryoush Dayan | $ 75,000.00 | | |
| (125,000.00) | Daryoush Dayan Trust | $ (125,000.00) | | |
| (47,000.00) | Daryoush Dayan Trust | $ (47,000.00) | | |
| 2,500.00 | Daryoush Dayan | $ 2,500.00 | | |
| 25,000.00 | Daryoush Dayan Trust | $ 25,000.00 | | |
| (102,000.00) | Daryoush Dayan Trust | $ (102,000.00) | | |
| 75,000.00 | Daryoush Dayan | $ 75,000.00 | | |
| (3,750.00) | DDI LLC | $ (3,750.00) | | |
| (25,000.00) | Daryoush Dayan Trust | $ (25,000.00) | | |
| (13,500.00) | Daryoush Dayan Trust | $ (13,500.00) | | |
| (22,500.00) | Daryoush Dayan Trust | $ (22,500.00) | | |
| (13,500.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (13,500.00) | |
| (22,500.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (22,500.00) | |
| (13,500.00) | Daryoush Dayan Trust | $ (13,500.00) | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT H**
**NET DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Contribution In From Member (Distribution Paid Out to Member) | | Member | | |
|---|---|---|---|---|
| Amount In From (Out To) Member | Name | Daryoush Dayan | Kamran Gharibian | Michael Smith |
| (3,000.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (3,000.00) |
| (5,000.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (5,000.00) |
| (13,500.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (13,500.00) | |
| (3,000.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (3,000.00) |
| (24,750.00) | Daryoush Dayan Trust | $ (24,750.00) | | |
| (24,750.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (24,750.00) | |
| (5,500.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (5,500.00) |
| (18,000.00) | Daryoush Dayan Trust | $ (18,000.00) | | |
| (18,000.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (18,000.00) | |
| (4,000.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (4,000.00) |
| (75,000.00) | Daryoush Dayan Trust | $ (75,000.00) | | |
| (50,000.00) | Daryoush Dayan Trust | $ (50,000.00) | | |
| 55,000.00 | Daryoush Dayan | $ 55,000.00 | | |
| (60,000.00) | Daryoush Dayan Trust | $ (60,000.00) | | |
| (70,000.00) | Daryoush Dayan Trust | $ (70,000.00) | | |
| 44,000.00 | Daryoush Dayan | $ 44,000.00 | | |
| (36,000.00) | Daryoush Dayan Trust | $ (36,000.00) | | |
| (197,000.00) | Daryoush Dayan Trust | $ (197,000.00) | | |
| (2,500.00) | Daryoush Dayan Trust | $ (2,500.00) | | |
| 391,500.00 | Daryoush Dayan | $ 391,500.00 | | |
| (175,500.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (175,500.00) | |
| (39,000.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (39,000.00) |
| (175,500.00) | Daryoush Dayan Trust | $ (175,500.00) | | |
| (27,000.00) | Daryoush Dayan Trust | $ (27,000.00) | | |
| (27,000.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (27,000.00) | |
| (6,000.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (6,000.00) |
| (20,250.00) | Daryoush Dayan Trust | $ (20,250.00) | | |
| (20,250.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (20,250.00) | |
| (22,500.00) | Daryoush Dayan Trust | $ (22,500.00) | | |
| (4,500.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (4,500.00) |
| (22,500.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (22,500.00) | |
| (5,000.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (5,000.00) |
| (20,250.00) | Daryoush Dayan Trust | $ (20,250.00) | | |
| (4,500.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (4,500.00) |
| (20,250.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (20,250.00) | |
| 72,000.00 | Daryoush Dayan | $ 72,000.00 | | |
| 6,000.00 | Daryoush Dayan | $ 6,000.00 | | |
| (78,000.00) | Daryoush Dayan Trust | $ (78,000.00) | | |
| (22,500.00) | Daryoush Dayan Trust | $ (22,500.00) | | |
| (5,000.00) | Smith & Alexandria C T Smith F Michael D Smith as trustee Michael | | | $ (5,000.00) |
| (22,500.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (22,500.00) | |
| 60,000.00 | Daryoush Dayan Trust | $ 60,000.00 | | |
| 70,000.00 | Daryoush Dayan | $ 70,000.00 | | |
| 68,000.00 | Daryoush Dayan | $ 68,000.00 | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT H**
**NET DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Contribution In From Member (Distribution Paid Out to Member) | | Member | | |
|---|---|---|---|---|
| **Amount In From (Out To) Member** | **Name** | **Daryoush Dayan** | **Kamran Gharibian** | **Michael Smith** |
| (5,633,548.19) | | $ (4,022,207.21) | $ (1,290,375.00) | $ (320,965.98) |
| (167,500.00) | Daryoush Dayan Trust | $ (167,500.00) | | |
| (15,000.00) | Daryoush Dayan Trust | $ (15,000.00) | | |
| (82,500.00) | Daryoush Dayan Trust | $ (82,500.00) | | |
| (67,500.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (33,750.00) | Daryoush Dayan Trust | $ (33,750.00) | | |
| (33,750.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (33,750.00) | |
| (7,500.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (7,500.00) |
| (13,500.00) | Daryoush Dayan Trust | $ (13,500.00) | | |
| (45,000.00) | Daryoush Dayan Trust | $ (45,000.00) | | |
| (13,500.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (13,500.00) | |
| (45,000.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (45,000.00) | |
| (3,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (3,000.00) |
| (10,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (10,000.00) |
| 25,000.00 | Daryoush Dayan Trust | $ 25,000.00 | | |
| (38,500.00) | Daryoush Dayan Trust | $ (38,500.00) | | |
| (13,500.00) | Gharibian Living Trust Kamran Gharibian, as Trustee | | $ (13,500.00) | |
| (3,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (3,000.00) |
| (33,750.00) | Daryoush Dayan Trust | $ (33,750.00) | | |
| (7,500.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (7,500.00) |
| (33,750.00) | Kamran Gharibian | | $ (33,750.00) | |
| (15.06) | Dayan Property Services LLC | $ (15.06) | | |
| (40,500.00) | Kamran Gharibian | | $ (40,500.00) | |
| (9,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (9,000.00) |
| (40,500.00) | Daryoush Dayan Trust | $ (40,500.00) | | |
| (20,000.00) | Daryoush Dayan | $ (20,000.00) | | |
| 5,000.00 | Daryoush Dayan | $ 5,000.00 | | |
| (40,500.00) | Daryoush Dayan Trust | $ (40,500.00) | | |
| (40,500.00) | Kamran Gharibian | | $ (40,500.00) | |
| (9,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (9,000.00) |
| (6.33) | Dayan Property Services LLC | $ (6.33) | | |
| (95,000.00) | Daryoush Dayan | $ (95,000.00) | | |
| (22,500.00) | Daryoush Dayan Trust | $ (22,500.00) | | |
| 50,000.00 | Daryoush Dayan | $ 50,000.00 | | |
| (22,500.00) | Kamran Gharibian | | $ (22,500.00) | |
| (5,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (5,000.00) |
| (11.32) | Dayan Property Services LLC | $ (11.32) | | |
| (42,750.00) | Kamran Gharibian | | $ (42,750.00) | |
| (9,500.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (9,500.00) |
| (42,750.00) | Daryoush Dayan Trust | $ (42,750.00) | | |
| (70,000.00) | Daryoush Dayan | $ (70,000.00) | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT H**
**NET DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Contribution In From Member (Distribution Paid Out to Member) | | Member | | |
|---|---|---|---|---|
| Amount In From (Out To) Member | Name | Daryoush Dayan | Kamran Gharibian | Michael Smith |
| 70,000.00 | Daryoush Dayan Trust | $ 70,000.00 | | |
| (38,250.00) | Daryoush Dayan Trust | $ (38,250.00) | | |
| (38,250.00) | Kamran Gharibian | | $ (38,250.00) | |
| (5.51) | Dayan Property Services LLC | $ (5.51) | | |
| (8,500.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (8,500.00) |
| (70,000.00) | Daryoush Dayan | $ (70,000.00) | | |
| 70,000.00 | Daryoush Dayan | $ 70,000.00 | | |
| (40,500.00) | Daryoush Dayan Trust | $ (40,500.00) | | |
| (40,500.00) | Kamran Gharibian | | $ (40,500.00) | |
| (9,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (9,000.00) |
| (75,000.00) | Daryoush Dayan Trust | $ (75,000.00) | | |
| 68,000.00 | Daryoush Dayan | $ 68,000.00 | | |
| (33,750.00) | Daryoush Dayan Trust | $ (33,750.00) | | |
| (33,750.00) | Kamran Gharibian | | $ (33,750.00) | |
| (7,500.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (7,500.00) |
| (75,000.00) | Daryoush Dayan Trust | $ (75,000.00) | | |
| 71,000.00 | Daryoush Dayan | $ 71,000.00 | | |
| 7,000.00 | Daryoush Dayan | $ 7,000.00 | | |
| (40,500.00) | Daryoush Dayan | $ (40,500.00) | | |
| (40,500.00) | Kamran Gharibian | | $ (40,500.00) | |
| (9,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (9,000.00) |
| (69,000.00) | Daryoush Dayan | $ (69,000.00) | | |
| 70,000.00 | Daryoush Dayan Trust | $ 70,000.00 | | |
| (69,750.00) | Daryoush Dayan Trust | $ (69,750.00) | | |
| (15,500.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,500.00) |
| (69,750.00) | Kamran Gharibian | | $ (69,750.00) | |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (6.58) | Dayan Property Services LLC | $ (6.58) | | |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (67,500.00) | Daryoush Dayan Trust | $ (67,500.00) | | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (72,000.00) | Daryoush Dayan | $ (72,000.00) | | |
| (72,000.00) | Kamran Gharibian | | $ (72,000.00) | |
| (16,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (16,000.00) |
| (20,000.00) | Daryoush Dayan | $ (20,000.00) | | |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT H**
**NET DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Contribution In From Member (Distribution Paid Out to Member) | | Member | | |
|---|---|---|---|---|
| Amount In From (Out To) Member | Name | Daryoush Dayan | Kamran Gharibian | Michael Smith |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (75,000.00) | Daryoush Dayan | $ (75,000.00) | | |
| 65,000.00 | Daryoush Dayan | $ 65,000.00 | | |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (75,000.00) | Daryoush Dayan | $ (75,000.00) | | |
| 65,000.00 | Daryoush Dayan | $ 65,000.00 | | |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| 6,000.00 | Daryoush Dayan | $ 6,000.00 | | |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (78,750.00) | Daryoush Dayan Trust | $ (78,750.00) | | |
| (17,500.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (17,500.00) |
| (78,750.00) | Kamran Gharibian | | $ (78,750.00) | |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (67,500.00) | Daryoush Dayan | $ (67,500.00) | | |
| (67,500.00) | Kamran Gharibian | | $ (67,500.00) | |
| (15,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,000.00) |
| (157,500.00) | Kamran Gharibian | | $ (157,500.00) | |
| (157,500.00) | Daryoush Dayan Trust | $ (157,500.00) | | |
| (35,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (35,000.00) |
| 96,500.00 | Daryoush Dayan | $ 96,500.00 | | |
| (108,000.00) | Daryoush Dayan Trust | $ (108,000.00) | | |
| (108,000.00) | Kamran Gharibian | | $ (108,000.00) | |
| (24,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (24,000.00) |
| (76,500.00) | Daryoush Dayan Trust | $ (76,500.00) | | |
| (76,500.00) | Kamran Gharibian | | $ (76,500.00) | |
| (17,000.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (17,000.00) |
| (59,850.00) | Daryoush Dayan Trust | $ (59,850.00) | | |
| (13,300.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (13,300.00) |
| (59,850.00) | Kamran Gharibian | | $ (59,850.00) | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT H**
**NET DISTRIBUTIONS PAID TO MEMBERS OF 400 S. LA BREA, LLC**
**CATHAY BANK #1679**

| Contribution In From Member (Distribution Paid Out to Member) | | Member | | |
|---|---|---|---|---|
| **Amount In From (Out To) Member** | **Name** | **Daryoush Dayan** | **Kamran Gharibian** | **Michael Smith** |
| 4,000.00 | Daryoush Dayan | $ 4,000.00 | | |
| (70,515.00) | Daryoush Dayan Trust | $ (70,515.00) | | |
| (70,515.00) | Kamran Gharibian | | $ (70,515.00) | |
| (15,670.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,670.00) |
| (70,650.00) | Kamran Gharibian | | $ (70,650.00) | |
| (4,000.00) | Daryoush Dayan | $ (4,000.00) | | |
| (70,650.00) | Daryoush Dayan Trust | $ (70,650.00) | | |
| (15,700.00) | Smith & Alexandria C T Smith F Michael D Smith as Trustee Michael | | | $ (15,700.00) |
| (4,819,744.80) | | $ (2,277,809.80) | $ (2,079,765.00) | $ (462,170.00) |
| (10,453,292.99) | | $ (6,300,017.01) | $ (3,370,140.00) | $ (783,135.98) |

ɔn 400 S. La Brea, LLC, Cathay Bank checking account #1679 bank statements and documents Bates-stamped CATHAY 00231 to CATHAY 00679.
ɣere not included in the Bates range:

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

t I-1
ure (Debtor)
Sheet
Balance Ending Balances
(06/01/2006-05/31/2013)

| | [3] | [4] | [5] | [6] | [7] |
|---|---|---|---|---|---|
| | Tax Year 2008 | Tax Year 2009 | Tax Year 2010 | Tax Year 2011 | Tax Year 2012 |
| | 06/2008-05/2009 | 06/2009-05/2010 | 06/2010-05/2011 | 06/2011-05/2012 | 06/2012-05/2013 |
| | | $ 207,793.58 | $ 27,268.98 | $ 748,961.41 | $ - |
| | - | | | - | - |
| | - | | | - | - |
| 6 | 215.00 | 2,551.91 | 5.15 | 54.53 | - |
| | - | | | - | - |
| 6 | 2,528.68 | 144.47 | 24.47 | 26.47 | - |
| | - | | | - | - |
| 5 | (15,917.70) | (124.54) | (281.37) | (17.59) | - |
| | - | | | | |
| | | | | | - |
| | | | | | 76.98 |
| | | | | | 81,347.04 |
| | | | | | 29.64 |
| | | | | | 106,116.18 |
| 0 | 75.00 | 525.00 | 413.00 | 413.00 | - |
| | - | - | - | - | - |
| | | | | | - |
| | 736,717.68 | 1,587,742.73 | - | 1,422.65 | 435,776.44 |
| | | | | | - |
| | 125.00 | - | - | - | - |
| | - | - | - | - | - |
| | - | - | - | - | - |
| | - | - | - | - | - |
| 1 | 109,979.29 | 24,298.81 | - | (1,088.11) | (78,579.52) |
| 3 | 2,630,532.28 | 3,191,282.28 | 2,932,495.05 | 3,422,660.35 | 4,301,187.85 |
| 8 | 20,903.74 | 20,903.74 | 21,569.74 | 21,569.74 | 21,569.74 |
| 0 | 12,638.60 | 12,638.60 | 13,788.60 | 13,788.60 | 14,938.60 |
| | - | - | 1,648,756.92 | 1,255,728.19 | - |
| | 278.42 | 278.42 | 278.42 | 278.42 | - |
| | - | - | - | - | - |
| | - | - | - | - | - |
| | 2,999,787.95 | 365,014.32 | 1,904,720.01 | 4,022,887.61 | 4,302,545.55 |
| | - | - | - | - | - |
| 2 | 12,290.96 | 26,632.90 | 2,959.95 | 73,136.61 | - |
| 0 | 53,450.00 | 53,450.00 | 175,490.05 | 53,450.00 | 57,550.00 |
| | - | - | - | - | - |
| | - | - | - | - | - |
| 4 | 40,950.07 | 45,949.41 | 53,327.58 | 58,683.06 | 69,018.90 |
| 7 | 3,409.07 | 3,409.07 | 3,409.07 | 3,409.07 | 3,409.07 |
| 4 | 83,156.44 | 83,156.44 | 83,156.44 | 83,156.44 | 83,156.44 |
| 5 | 378,583.55 | 378,583.55 | 378,583.55 | 378,583.55 | 378,583.55 |
| 0 | 5,145.00 | 5,145.00 | 5,145.00 | 5,145.00 | 5,145.00 |
| | - | 2,585.41 | 2,585.41 | 62,568.10 | 69,693.83 |
| 8 | - | - | - | - | - |
| 0) | (163,861.00) | (195,525.00) | (202,882.00) | (202,882.00) | (242,398.00) |
| | - | - | - | - | - |
| 0 | 500,549.00 | 500,549.00 | 500,549.00 | 549.00 | 924.00 |
| **9** | **$ 7,411,537.03** | **$ 6,316,985.10** | **$ 7,551,363.02** | **$ 10,002,484.10** | **$ 9,610,091.29** |

RG

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**t I-1**
**ure (Debtor)**
**Sheet**
**Balance Ending Balances**
**(06/01/2006-05/31/2013)**

| | [3] | [4] | [5] | [6] | [7] |
|---|---|---|---|---|---|
| | **Tax Year 2008** | **Tax Year 2009** | **Tax Year 2010** | **Tax Year 2011** | **Tax Year 2012** |
| | **06/2008-05/2009** | **06/2009-05/2010** | **06/2010-05/2011** | **06/2011-05/2012** | **06/2012-05/2013** |
| 3 | 174,800.28 | 331,331.79 | 3,084,613.26 | 3,120,713.26 | 2,581,826.77 |
| | | | - | - | |
| 5 | 3,638,811.80 | 3,920,866.85 | 2,094,838.09 | 2,583,011.23 | 2,455,591.04 |
| | 74,465.32 | 41,796.86 | 30,004.36 | 4,286.03 | 33,752.92 |
| 2 | 338,458.22 | 208,398.96 | 385,773.55 | 542,687.75 | 969,025.03 |
| | - | - | - | - | - |
| 9 | 22,759.23 | 20,682.30 | 24,993.44 | 22,091.05 | 20,099.52 |
| 0 | 31,520.67 | 23,484.63 | 16,833.93 | 8,688.38 | 3,722.54 |
| | | - | 200,000.00 | - | 73,520.00 |
| 0 | - | - | - | - | 4,010.00 |
| | - | - | - | - | - |
| | - | - | - | - | - |
| 0 | 2,000,000.00 | 2,000,000.00 | 2,000,000.00 | 2,000,000.00 | 1,950,000.00 |
| | 32,000.00 | 22,000.00 | 11,900.00 | 11,900.00 | 11,900.00 |
| | | 465,817.87 | | | |
| | | 226,154.72 | | | |
| | | | - | - | 55,000.00 |
| | | | | | - |
| 5 | 62,060.83 | 23,830.68 | 101,210.90 | 235,582.24 | 66,156.47 |
| 6 | 167,459.75 | 151,421.13 | 290,994.08 | 390,300.53 | 433,543.92 |
| | - | - | - | 21,958.58 | 33,224.01 |
| | - | - | - | - | - |
| | - | - | 200,000.00 | 322,000.00 | 319,500.00 |
| 9 | 5,107,814.29 | 6,429,229.44 | 6,954,229.44 | 7,079,229.44 | 8,744,229.44 |
| 0 | - | - | - | - | - |
| | - | - | - | - | - |
| | - | 1,268,000.00 | 1,172,000.00 | 1,288,171.33 | 1,063,171.33 |
| 0 | 293,765.41 | 334,505.41 | - | (35.63) | 7,964.37 |
| | - | - | - | - | - |
| | | | 465,817.87 | 465,817.87 | 565,817.87 |
| | 190,000.00 | 190,000.00 | - | - | - |
| | - | 400,000.00 | - | - | - |
| | 65,000.00 | 480,000.00 | 480,000.00 | 480,000.00 | 480,000.00 |
| | | | - | - | - |
| | | | - | - | - |
| | | | | - | 145,000.00 |
| | | | - | - | - |
| | - | - | - | - | - |
| | - | - | - | - | - |
| | | 39,333.70 | - | - | - |
| 8 | 35,731.58 | 35,731.58 | - | - | - |
| | | | 582,758.19 | 588,716.26 | 605,711.54 |
| 5) | (937,298.04) | (1,476,068.53) | - | - | - |
| 0 | 41,965.00 | 30,165.00 | 44,760.00 | 36,565.00 | 52,565.00 |
| | 39,333.70 | | | | |
| **2** | **$ 11,378,648.04** | **$ 15,166,682.39** | **$ 18,140,727.11** | **$ 19,201,683.32** | **$ 20,675,331.77** |
| 0 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| 5) | (2,440,624.83) | (3,968,946.01) | (8,848,197.29) | (10,587,864.09) | (10,526,367.83) |

**RG**

USAO_00014227

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

t I-1
ure (Debtor)
Sheet
Balance Ending Balances
(06/01/2006-05/31/2013)

| | [3] | [4] | [5] | [6] | [7] |
|---|---|---|---|---|---|
| | **Tax Year 2008** | **Tax Year 2009** | **Tax Year 2010** | **Tax Year 2011** | **Tax Year 2012** |
| | **06/2008-05/2009** | **06/2009-05/2010** | **06/2010-05/2011** | **06/2011-05/2012** | **06/2012-05/2013** |
| | - | | | - | - |
| 8) | $ (1,527,486.18) | $ (4,881,751.28) | $ (1,742,166.80) | $ 1,387,664.87 | $ (539,872.65) |
| **3)** | **$ (3,967,111.01)** | **$ (8,849,697.29)** | **$ (10,589,364.09)** | **$ (9,199,199.22)** | **$ (11,065,240.48)** |
| **9** | **$ 7,411,537.03** | **$ 6,316,985.10** | **$ 7,551,363.02** | **$ 10,002,484.10** | **$ 9,610,091.29** |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**Art Architecture Books of the 21st Century v. Ace Gallery NY Corporation et al**

**Art and Architecture Comparable P&L**

| | Per Tax Returns | | | | | | |
|---|---|---|---|---|---|---|---|
| | **2007** | **2008** | **2009** | **2010** | **2011** | **2012** | **2013** |
| Income | | | | | | | |
| Gross Recepits or Sales | $ 7,545,992 | $ 6,489,927 | $ 2,264,985 | $ 4,489,187 | $ 8,867,588 | $ 6,634,486 | $ 8,619,582 |
| COGS | (1,414,801) | (3,706,993) | (1,253,709) | (1,884,786) | (3,631,269) | (2,878,242) | (3,756,675) |
| Gross Profit | $ 6,131,191 | $ 2,782,934 | $ 1,011,276 | $ 2,604,401 | $ 5,236,319 | $ 3,756,244 | $ 4,862,907 |
| Interest | 53 | 46 | | | | | 58 |
| Capital Gain | | | | | | | |
| Sale of option to purchase 5514 Wilshire | | | | | 3,130,807 | | |
| Total Income | $ 6,131,244 | $ 2,782,980 | $ 1,011,276 | $ 2,604,401 | $ 8,367,126 | $ 3,756,244 | $ 4,862,965 |
| Expenses | | | | | | | |
| Compensation of Officers | $ (60,000) | $ (60,000) | $ (60,000) | $ (60,000) | $ (60,000) | $ (42,500) | |
| Salaries and Wages | (598,454) | (560,712) | (512,507) | (509,963) | (585,319) | (606,017) | (498,039) |
| Repairs and Maintenance | (127,014) | (19,619) | (33,944) | (42,302) | (22,140) | (7,461) | (19,728) |
| Rents | (3,109,897) | (1,907,581) | (2,260,975) | (2,318,691) | (2,664,738) | (2,734,404) | (3,417,990) |
| Subtotal | (3,895,365) | (2,547,912) | (2,867,426) | (2,930,956) | (3,332,197) | (3,390,382) | (3,935,757) |
| Taxes and Licenses | | (259,144) | (222,398) | (203,041) | (342,339) | (146,838) | (244,790) |
| Business License | (5,800) | | | | | | |
| Filing Fee | (45) | | | | | | |
| Misc | (938) | | | | | | |
| Payroll Taxes | (74,172) | | | | | | |
| Personal Property Taxes | (279) | | | | | | |
| Real Estate Taxes | (331,070) | | | | | | |
| State Tax | (3,200) | | | | | | |
| Total Taxes and Licenses | $ (415,504) | $ (259,144) | $ (222,398) | $ (203,041) | $ (342,339) | $ (146,838) | $ (244,790) |
| Interest | (860,719) | (682,522) | (614,068) | (548,092) | (2,590,375) | (431,268) | (2,326) |
| Charitable Contributions | | | | | | | |
| Misc | (350) | | | | (900) | | |
| Carryover from 2003 | (2,276) | | | | | | |
| Carryover from 2004 | (9,133) | | | | | | |
| Carryover from 2006 | (2,630) | | | | (2,630) | | |
| Carryover from 2007 | | | | | (350) | | |
| Carryover from 2008 | | | | | (250) | | |
| Carryover from 2009 | | | | | (1,750) | | |
| Carryover from 2010 | | | | | (5,750) | | |
| Disallowed Contributions due to 10% limit | 14,389 | | | | 11,630 | | |
| Total Charitable Contributions | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Depreciation | (41,373) | (48,067) | (25,830) | (7,357) | (44,445) | (15,354) | (13,624) |
| Advertising | (37,938) | (182,377) | (97,080) | (128,009) | (60,745) | 47,108 | (5,161) |
| Other Deductions | | | | | | | |
| Auto and Truck | (16,892) | (19,513) | (13,877) | (10,355) | (10,918) | (3,687) | (12,152) |
| Bank Charges and Credit Card Fees | (3,903) | (9,494) | (7,466) | (14,300) | (11,522) | (10,896) | (6,598) |
| Books and Publications | (2,827) | (3,080) | (3,033) | (2,608) | | | |
| Commissions | (195,231) | 70,306 | (89,835) | (40,636) | (43,900) | (16,820) | (51,350) |
| Delivery and Freight | (25,548) | (20,924) | (11,001) | (15,748) | (28,111) | (30,163) | (21,991) |
| Dues and Subscriptions | (6,457) | (3,987) | (3,113) | (4,547) | (9,131) | (4,947) | (3,058) |
| Exhibition Expense | (341,414) | (162,264) | (244,844) | (125,146) | (162,561) | (100,291) | (111,201) |
| Framing | | | | | | | (4,486) |
| Expenses Allocated to Affiliate | | | | | 20,527 | 7,216 | |
| Insurance | (26,142) | (78,887) | (39,647) | (46,639) | (34,685) | (37,141) | (63,128) |
| Internet | | | | | | (680) | (1,856) |
| Late Fees | | (36,851) | (7,919) | (44,839) | | (856) | |
| Lawsuit Settlement | | | (1,300,000) | | | | |
| Legal and Professional | (58,750) | (112,400) | (130,871) | (54,371) | (109,824) | 47,247 | (41,435) |
| Meals and Entertainment | (50,339) | (33,112) | (28,570) | (32,145) | (24,065) | (21,972) | (10,060) |
| Office Expense | (29,412) | (22,139) | (24,323) | (27,259) | (36,556) | (22,542) | (17,758) |
| Outside Services | (8,645) | (10,565) | (8,237) | (7,473) | (6,820) | (11,613) | (17,110) |
| Photo Expense | (5,518) | (41,393) | | (2,848) | (1,178) | (1,050) | |
| Postage | (31,488) | (23,261) | (28,400) | (15,006) | (13,900) | (16,110) | (10,351) |
| Rental Equip | | | (2,334) | | | 9,150 | (7,748) |
| Research | | | | | | (7,000) | |
| Security | (435) | (4,700) | (6,156) | (9,297) | (6,171) | (1,773) | (9,010) |

EXHIBIT 0002

*Enge*

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**Art Architecture Books of the 21st Century v. Ace Gallery NY Corporation et al**
**Art and Architecture Comparable P&L**

| | Per Tax Returns | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
| Storage | (8,613) | 5,105 | (6,469) | 2,922 | (7,169) | (3,840) | |
| Telephone | (23,661) | (23,961) | (28,260) | (26,289) | (28,744) | (25,765) | (28,749) |
| Travel | (20,733) | (13,292) | (21,829) | (4,694) | (50,866) | (12,143) | (8,784) |
| Trustee Fees | | | | | | (4,875) | (6,500) |
| Utilities | (24,337) | (8,105) | (11,661) | (7,914) | (4,829) | (47,493) | (41,548) |
| Miscellaneous | | | | | | | (2,731) |
| Total Other Deductions | $ (880,345) | $ (552,517) | $ (2,017,845) | $ (489,192) | $ (570,423) | $ (318,044) | $ (477,604) |
| Total Expenses | $ (6,131,244) | $ (4,272,539) | $ (5,844,647) | $ (4,306,647) | $ (6,940,524) | $ (4,254,778) | $ (4,679,262) |
| Net Income | $ - | $ (1,489,559) | $ (4,833,371) | $ (1,702,246) | $ 1,426,602 | $ (498,534) | $ 183,703 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**bit I-3**
**cture (Debtor)**
**of Option to Purchase 5514 Wilshire)**
**2 (06/01/2006-05/31/2013)**

| r 2007 | Tax Year 2008 | Tax Year 2009 | Tax Year 2010 | Tax Year 2011 | Tax Year 2012 |
|---|---|---|---|---|---|
| 05/2008 | 06/2008-05/2009 | 06/2009-05/2010 | 06/2010-05/2011 | 06/2011-05/2012 | 06/2012-05/2013 |
| 2,597.89 | $ 7,411,537.03 | $ 6,316,985.10 | $ 7,551,363.02 | $ 10,002,484.10 | $ 9,610,091.29 |
| 5,566.72 | $ 11,378,648.04 | $ 15,166,682.39 | $ 18,140,727.11 | $ 19,201,683.32 | $ 20,675,331.77 |
| 2,968.83) | $ (3,967,111.01) | $ (8,849,697.29) | $ (10,589,364.09) | $ (9,199,199.22) | $ (11,065,240.48) |
| 9,897.00 | $ 1,907,581.00 | $ 2,260,975.00 | $ 2,318,691.00 | $ 2,664,738.00 | $ 2,734,404.00 |
| - | $ - | $ - | $ - | $ - | $ - |
| 0,719.00 | $ 682,522.00 | $ 614,068.00 | $ 548,092.00 | $ 2,590,375.00 | $ 431,268.00 |
| - | $ (1,489,559.00) | $ (4,833,371.00) | $ (1,702,246.00) | $ 1,426,602.00 | $ (498,534.00) |
| | | | | $ 3,130,807.00 | |
| - | $ (1,489,559.00) | $ (4,833,371.00) | $ (1,702,246.00) | $ (1,704,205.00) | $ (498,534.00) |
| 0,719.00 | $ (807,037.00) | $ (4,219,303.00) | $ (1,154,154.00) | $ 886,170.00 | $ (67,266.00) |
| 154.4% | 153.5% | 240.1% | 240.2% | 192.0% | 215.1% |
| -284.0% | -286.8% | -171.4% | -171.3% | -208.7% | -186.8% |
| 1.00 | -1.18 | -6.87 | -2.11 | 0.34 | -0.16 |
| 1.00 | 0.42 | -0.68 | 0.41 | 0.68 | 0.84 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

ɔit I-4
:ture (Debtor)
f Option to purchase 5514 Wilshire)
2 (06/01/2006-05/31/2013)

| | Tax Year 2008 | Tax Year 2009 | Tax Year 2010 | Tax Year 2011 | Tax Year 2012 |
|---|---|---|---|---|---|
| 3 | 06/2008-05/2009 | 06/2009-05/2010 | 06/2010-05/2011 | 06/2011-05/2012 | 06/2012-05/2013 |
| 9 | $ 7,411,537.03 | $ 6,316,985.10 | $ 7,551,363.02 | $ 10,002,484.10 | $ 9,610,091.29 |
| 2 | $ 11,378,648.04 | $ 15,166,682.39 | $ 18,140,727.11 | $ 19,201,683.32 | $ 20,675,331.77 |
| 3) | $ (3,967,111.01) | $ (8,849,697.29) | $ (10,589,364.09) | $ (9,199,199.22) | $ (11,065,240.48) |
| 0 | $ 1,907,581.00 | $ 2,260,975.00 | $ 2,318,691.00 | $ 2,664,738.00 | $ 2,734,404.00 |
| | $ - | $ - | $ - | $ - | $ - |
| 0 | $ 682,522.00 | $ 614,068.00 | $ 548,092.00 | $ 2,590,375.00 | $ 431,268.00 |
| | $ (1,489,559.00) | $ (4,833,371.00) | $ (1,702,246.00) | $ 1,426,602.00 | $ (498,534.00) |
| 0 | $ (807,037.00) | $ (4,219,303.00) | $ (1,154,154.00) | $ 4,016,977.00 | $ (67,266.00) |
| % | 153.5% | 240.1% | 240.2% | 192.0% | 215.1% |
| % | -286.8% | -171.4% | -171.3% | -208.7% | -186.8% |
| 00 | -1.18 | -6.87 | -2.11 | 1.55 | -0.16 |
| 00 | 0.42 | -0.68 | 0.41 | 1.27 | 0.84 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT J**

**DEPOSITS OF DEBTOR'S ART SALES DEPOSITED INTO ACE GALLERY NEW YORK CORPORATION & INC.**
**CITY NATIONAL BANK (CNB) AND WELLS FARGO**

| Deposit Date per Bank Statement | | Deposit Amount | Deposited into Account | Letterhead on the Sales Invoice | Invoice Date | Invoice Number |
|---|---|---|---|---|---|---|
| 02/19/2013 | $ | 38,368.00 | Wells Fargo #9951 | ACE GALLERY | 02/18/2013 | 2000A |
| 02/26/2013 | $ | 600.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 02/18/2013 | 1541 |
| 02/28/2013 | $ | 32,000.00 | CNB #0229 | ACE GALLERY | 02/26/2013 | 2001A |
| 03/01/2013 | $ | 150,000.00 | CNB #0229 | ACE GALLERY | 03/18/2013 | 2006 |
| 03/01/2013 | $ | 84,177.00 | Wells Fargo #9951 | ACE GALLERY NEW YORK | 02/20/2013 | 2000 |
| 03/07/2013 | $ | 14,824.00 | CNB #0229 | ACE GALLERY | 03/05/2013 | 2003 |
| 03/07/2013 | $ | 10,464.00 | CNB #0229 | ACE GALLERY | 03/05/2013 | 1557B |
| 03/08/2013 | $ | 199,980.00 | CNB #0229 | ACE GALLERY | 02/28/2013 | 1557A |
| 03/15/2013 | $ | 11,900.00 | CNB #0229 | ACE GALLERY | 03/01/2013 | 2002 |
| 03/18/2013 | $ | 45,000.00 | CNB #0229 | ACE GALLERY | 03/15/2013 | 2005A |
| 03/20/2013 | $ | 27,835.00 | CNB #0229 | ACE GALLERY | 03/01/2013 | 2001 |
| 03/21/2013 | $ | 18,000.00 | CNB #0229 | ACE GALLERY | 03/20/2013 | 2005 |
| 03/27/2013 | $ | 65,000.00 | CNB #0229 | ACE GALLERY | 03/18/2013 | 2006 |
| 03/28/2013 | $ | 26,160.00 | CNB #0229 | ACE GALLERY | 03/28/2013 | 2007 |
| 04/15/2013 | $ | 49,387.50 | CNB #0229 | ACE GALLERY | 04/15/2013 | 2009 |
| 04/22/2013 | $ | 3,600.00 | CNB #0229 | ACE GALLERY | 04/16/2013 | 2010 |
| 05/06/2013 | $ | 9,355.00 | CNB #0229 | ACE GALLERY | 04/26/2013 | 2011 |
| 05/20/2013 | $ | 533,500.00 | CNB #0229 | ACE GALLERY | 05/17/2013 | 2012 |
| 05/21/2013 | $ | 125,225.00 | CNB #0229 | ACE GALLERY | 05/17/2013 | 2013 |
| 05/22/2013 | $ | 3,535.00 | CNB #0229 | ACE GALLERY | 05/22/2013 | 2014 |
| 06/03/2013 | $ | 15,260.00 | CNB #0229 | ACE GALLERY | 05/31/2013 | 2016 |
| 06/05/2013 | $ | 140,000.00 | CNB #0229 | ACE GALLERY | 05/24/2013 | 2015A |
| 06/06/2013 | $ | 20,000.00 | CNB #0229 | ACE GALLERY | 06/05/2013 | 2017 |
| 06/18/2013 | $ | 8,980.00 | CNB #0229 | ACE GALLERY | 05/28/2013 | 2015 |
| 07/02/2013 | $ | 132,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 07/02/2013 | 2020 |
| 07/03/2013 | $ | 20,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 06/25/2013 | 2019 |
| 07/08/2013 | $ | 51,200.00 | CNB #0229 | ACE GALLERY NEW YORK | 07/03/2013 | 2020A |
| 07/19/2013 | $ | 52,320.00 | CNB #0229 | ACE GALLERY | 07/22/2013 | 2021 |
| 08/02/2013 | $ | 172,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 07/30/2013 | 2022 |
| 09/04/2013 | $ | 8,980.00 | CNB #0229 | ACE GALLERY | 05/28/2013 | 2015 |
| 09/20/2013 | $ | 10,000.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 09/12/2013 | 1641A |
| 10/16/2013 | $ | 120,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 10/14/2013 | 2027 |
| 10/17/2013 | $ | 1,962.00 | CNB #0229 | ACE GALLERY NEW YORK | 10/11/2013 | 2026 |
| 10/18/2013 | $ | 37,060.00 | CNB #0229 | ACE GALLERY NEW YORK | 10/17/2013 | 2028 |
| 11/25/2013 | $ | 200,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 11/25/2013 | 2030 |
| 11/27/2013 | $ | 100,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 11/25/2013 | 2030 |
| 12/13/2013 | $ | 240,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 12/08/2013 | 2031A |
| 12/18/2013 | $ | 37,060.00 | CNB #0229 | ACE GALLERY NEW YORK | 12/17/2013 | 2031 |
| 12/24/2013 | $ | 50,000.00 | CNB #0229 | ACE GALLERY | 11/27/2013 | 1661 |
| 01/03/2014 | $ | 240,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 12/08/2013 | 2031A |
| 01/16/2014 | $ | 64,310.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/16/2014 | 2032 |
| 01/17/2014 | $ | 12,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/16/2014 | 2033 |
| 01/21/2014 | $ | 5,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/19/2014 | 2034 |
| 01/21/2014 | $ | 14,715.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/19/2014 | 2035 |
| 01/23/2014 | $ | 9,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/19/2014 | 2034 |
| 01/24/2014 | $ | 7,500.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/19/2014 | 2034 |
| 01/24/2014 | $ | 8,250.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/19/2014 | 2034 |
| 02/04/2014 | $ | 150,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 02/11/2014 | 2036 |
| 02/07/2014 | $ | 72,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 02/05/2014 | 2037 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT J**

**DEPOSITS OF DEBTOR'S ART SALES DEPOSITED INTO ACE GALLERY NEW YORK CORPORATION & INC.**

**CITY NATIONAL BANK (CNB) AND WELLS FARGO**

| Deposit Date per Bank Statement | | Deposit Amount | Deposited into Account | Letterhead on the Sales Invoice | Invoice Date | Invoice Number |
|---|---|---|---|---|---|---|
| 02/12/2014 | $ | 13,500.00 | CNB #0229 | ACE GALLERY NEW YORK | 02/11/2014 | 2036 |
| 02/18/2014 | $ | 153,900.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 11/27/2013 | 1660 |
| 03/20/2014 | $ | 38,368.00 | CNB #0229 | ACE GALLERY NEW YORK | 03/19/2014 | 2038 |
| 04/08/2014 | $ | 150,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 03/31/2014 | 2040 |
| 04/17/2014 | $ | 648.39 | CNB #0229 | ACE GALLERY NEW YORK | 04/09/2014 | 2041 |
| 04/30/2014 | $ | 39,240.00 | CNB #0229 | ACE GALLERY NEW YORK | 04/23/2014 | 2042 |
| 05/09/2014 | $ | 2,725.00 | CNB #0229 | No letterhead | 05/09/2014 | 2044 |
| 05/22/2014 | $ | 889.20 | CNB #0229 | ACE GALLERY NEW YORK | 05/02/2014 | 2043 |
| 05/27/2014 | $ | 179,850.00 | CNB #0229 | ACE GALLERY NEW YORK | 05/27/2014 | 2045 |
| 05/27/2014 | $ | 36,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 05/27/2014 | 2046 |
| 06/05/2014 | $ | 50,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 06/04/2014 | 2048 |
| 06/11/2014 | $ | 57,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 05/27/2014 | 2047 |
| 06/16/2014 | $ | 17,000.00 | CNB #0229 | ACE GALLERY | 06/13/2014 | 4449 |
| 06/16/2014 | $ | 53,850.00 | CNB #0229 | ACE GALLERY | 06/13/2014 | 4449 |
| 06/26/2014 | $ | 18,530.00 | CNB #0229 | ACE GALLERY | 06/19/2014 | 2050 |
| 06/30/2014 | $ | 325,000.00 | CNB #0229 | ACE GALLERY | 06/25/2014 | 2051 |
| 07/22/2014 | $ | 115,812.50 | CNB #0229 | ACE GALLERY | 07/21/2014 | 2052 |
| 07/23/2014 | $ | 13,090.00 | CNB #0229 | ACE GALLERY | 07/22/2014 | 2053 |
| 07/30/2014 | $ | 174,400.00 | CNB #0229 | ACE GALLERY NEW YORK | 07/29/2014 | 2054 |
| 08/07/2014 | $ | 200,000.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 07/14/2014 | 1739 |
| 09/12/2014 | $ | 12,885.00 | CNB #0229 | ACE GALLERY NEW YORK | 09/11/2014 | 2058 |
| 09/18/2014 | $ | 3,500.00 | CNB #0229 | ACE GALLERY NEW YORK | 09/17/2014 | 2059A |
| 09/22/2014 | $ | 225,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 09/22/2014 | 2060 |
| 09/24/2014 | $ | 54,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 09/24/2014 | 2061 |
| 10/20/2014 | $ | 27,250.00 | CNB #0229 | ACE GALLERY NEW YORK | 10/20/2014 | 2062 |
| 11/20/2014 | $ | 650.00 | CNB #0229 | ACE GALLERY NEW YORK | 11/18/2014 | 1769 |
| 12/04/2014 | $ | 15,696.00 | CNB #0229 | ACE GALLERY NEW YORK | 12/03/2014 | 2063 |
| 01/14/2015 | $ | 19,980.00 | CNB #0229 | ACE GALLERY NEW YORK | 12/22/2014 | 2064 |
| 01/15/2015 | $ | 188,500.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/14/2015 | 2067 |
| 01/16/2015 | $ | 43,600.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/15/2015 | 2069 |
| 01/20/2015 | $ | 74,261.20 | CNB #0229 | ACE GALLERY NEW YORK | 12/22/2014 | 2064 |
| 01/20/2015 | $ | 8,720.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/15/2015 | 2068 |
| 01/27/2015 | $ | 21,800.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 02/02/2015 | 1790 |
| 02/06/2015 | $ | 1,360.00 | CNB #0229 | ACE GALLERY NEW YORK | 01/11/2015 | 2066 |
| 02/17/2015 | $ | 108,738.80 | CNB #0229 | ACE GALLERY NEW YORK | 12/22/2014 | 2064 |
| 02/17/2015 | $ | 35,970.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 02/13/2015 | 1792 |
| 02/24/2015 | $ | 12,000.00 | CNB #0229 | No letterhead | 02/17/2015 | 2074A |
| 03/19/2015 | $ | 258,000.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 02/15/2015 | 1797 |
| 03/20/2015 | $ | 13,080.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 03/13/2015 | 1801 |
| 04/13/2015 | $ | 85,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 04/10/2015 | 2075 |
| 04/24/2015 | $ | 380,000.00 | CNB #4733 | ACE GALLERY NEW YORK | 04/23/2015 | 2076 |
| 04/24/2015 | $ | 19,200.00 | CNB #4733 | ACE GALLERY NEW YORK | 04/23/2015 | 2076 |
| 04/28/2015 | $ | 52,320.00 | CNB #0229 | ACE GALLERY NEW YORK | 04/27/2015 | 2077 |
| 05/04/2015 | $ | 7,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 05/04/2015 | 2078 |
| 05/15/2015 | $ | 252,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 04/25/2015 | 2079 |
| 05/29/2015 | $ | 28,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 05/19/2015 | 2080 |
| 06/09/2015 | $ | 211,200.00 | CNB #0229 | ACE GALLERY NEW YORK | 06/09/2015 | 2081 |
| 06/15/2015 | $ | 24,080.00 | CNB #0229 | ACE GALLERY NEW YORK | 06/12/2015 | 2082 |
| 07/06/2015 | $ | 4,800.00 | CNB #0229 | ACE GALLERY NEW YORK | 07/03/2015 | 2082A |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT J**

**DEPOSITS OF DEBTOR'S ART SALES DEPOSITED INTO ACE GALLERY NEW YORK CORPORATION & INC.**
**CITY NATIONAL BANK (CNB) AND WELLS FARGO**

| Deposit Date per Bank Statement | | Deposit Amount | Deposited into Account | Letterhead on the Sales Invoice | Invoice Date | Invoice Number |
|---|---|---|---|---|---|---|
| 07/07/2015 | $ | 165,000.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 07/04/2015 | 1826 |
| 07/15/2015 | $ | 108,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 07/15/2015 | 2084 |
| 07/16/2015 | $ | 108,000.00 | CNB #0229 | ACE GALLERY NEW YORK | 07/15/2015 | 2084 |
| 07/28/2015 | $ | 48,000.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 06/24/2015 | 1827 |
| 08/04/2015 | $ | 159,972.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 07/25/2015 | 1837 |
| 08/06/2015 | $ | 29,500.00 | CNB #4733 | ACE GALLERY LOS ANGELES | 07/25/2015 | 1838 |
| 08/11/2015 | $ | 20,165.00 | CNB #0229 | ACE GALLERY LOS ANGELES | 07/30/2015 | 1836 |
| 09/03/2015 | $ | 33,572.00 | CNB #0229 | ACE GALLERY NEW YORK | 09/03/2015 | 2089 |
| 09/17/2015 | $ | 100,000.00 | CNB #4733 | ACE GALLERY LOS ANGELES | 08/17/2015 | 1846 |
| 09/30/2015 | $ | 240,000.00 | CNB #4733 | ACE GALLERY NEW YORK | 10/01/2015 | 2092 |
| 10/02/2015 | $ | 95,000.00 | CNB #4733 | N/A - Email | 10/02/2015 | N/A |
| 10/05/2015 | $ | 4,800,000.00 | CNB #4733 | ACE GALLERY NEW YORK | 10/02/2015 | 2093 |
| 10/19/2015 | $ | 48,965.00 | CNB #4733 | ACE GALLERY LOS ANGELES | 08/25/2015 | 1848 |
| 10/22/2015 | $ | 432,000.00 | CNB #4733 | ACE GALLERY NEW YORK | 10/02/2015 | 2093 |
| 11/02/2015 | $ | 7,200.00 | CNB #4733 | ACE GALLERY NEW YORK | 10/01/2015 | 2092 |
| 11/03/2015 | $ | 15,000.00 | CNB #4733 | ACE GALLERY NEW YORK | 11/03/2015 | 2094 |
| 11/04/2015 | $ | 14,400.00 | CNB #4733 | ACE GALLERY NEW YORK | 10/01/2015 | 2092 |
| 11/18/2015 | $ | 35,928.00 | CNB #4733 | ACE GALLERY NEW YORK | 04/23/2015 | 2076 |
| 12/11/2015 | $ | 125,000.00 | CNB #4733 | ACE GALLERY NEW YORK | 12/10/2015 | 2095 |
| 01/05/2016 | $ | 36,000.00 | CNB #4733 | ACE GALLERY NEW YORK | 01/04/2016 | 2096 |
| 01/25/2016 | $ | 32,427.50 | CNB #4733 | ACE GALLERY NEW YORK | 01/25/2016 | 2097 |
| 01/25/2016 | $ | 32,427.50 | CNB #4733 | ACE GALLERY NEW YORK | 01/25/2016 | 2098 |
| 01/25/2016 | $ | 32,427.50 | CNB #4733 | ACE GALLERY NEW YORK | 01/25/2016 | 2099 |
| 01/26/2016 | $ | 150,000.00 | CNB #4733 | ACE GALLERY NEW YORK | 01/26/2016 | 2100 |
| 02/11/2016 | $ | 25,000.00 | CNB #4733 | ACE GALLERY LOS ANGELES | 04/11/2015 | 1828 |
| 02/25/2016 | $ | 73,575.00 | CNB #4733 | ACE GALLERY NEW YORK | 02/23/2016 | 2101 |
| 02/29/2016 | $ | 78,480.00 | CNB #4733 | ACE GALLERY NEW YORK | 02/26/2016 | 2102 |
| 03/10/2016 | $ | 12,000.00 | CNB #4733 | ACE GALLERY LOS ANGELES | 02/02/2016 | 1881 |
| 03/16/2016 | $ | 25,000.00 | CNB #4733 | ACE GALLERY LOS ANGELES | 04/11/2015 | 1828 |
| | $ | 14,359,941.09 | | | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**DECLARATION OF JENNIFER ZIEGLER**

I, Jennifer Ziegler, declare as follows:

1. I am a Certified Public Accountant (CPA) in California and Oregon and hold the CFF (Certified in Financial Forensics) and CFE (Certified Fraud Examiner) designations. I have worked in accounting for more than 30 years, specializing in forensic accounting for 20 of those years. I began my career as an internal auditor at UCLA, performing audits, investigating allegations of fraud, and supporting external audits by KPMG. KPMG offered me a job in which I spent five years auditing SEC registrants for insurance companies, not-for-profits, and governmental entities. I took those skills in accounting to my next role at Gursey Schneider, where I became a partner and applied my expertise in accounting-related litigation support roles. I later continued this role as a partner at Hemming Morse and then as a Managing Director at Berkeley Research Group ("BRG"), where I am currently employed.

2. I have worked on hundreds of matters over the last 20 years involving many types of businesses including, but not limited to, insurance providers, public companies, government agencies, homeowners' associations, retailers, wholesalers and start-up companies. The different kinds of retailer and wholesalers that have been the subject of my various engagements include agricultural companies, oil producers, jewelry and precious gems' wholesalers, and garment manufacturers. Many of these were litigation and/or forensic engagements that included matters pending in bankruptcy and probate courts. At times, the forensic engagements were for the purpose of calculating lost profits in a litigation context such as wrongful termination, or for related valuation work in the context of a business or partnership dissolution—all of which can, and often do, lead to testimony at trial on these types of disputes. Furthermore, many of the forensic engagements, like the engagement for the Plan Agent in this litigation, were for the purpose of tracing funds and identifying and tracking the use of funds. At other times, I assisted lenders whose borrowers had tendered incorrect financial statements to them. For these engagements, the scope of my retention was for the purpose of analyzing and coming up with an accurate financial picture of what should have been, had the financial statement(s) tendered been

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

accurate. I have also worked on criminal matters that were referred to the IRS, FTB (California Franchise Tax Board), and the FBI. I have testified in more than 70 depositions in Superior and Federal Court cases, and have qualified as an expert in 15 trials related to issues involving accounting, testimony regarding the results of my forensic investigation in cases where fraud and similar wrong doing was alleged, accountants' standards of care, and disputes resulting in damages or lost profits. I have been court-appointed as the neutral expert in two separate matters and designated as a trustee of an estate. As a result of my work in investigations, I have, on two separate occasions, overseen the financial operations for businesses while acting as the interim CFO.

3. I am the former chair of the California Society of CPAs—the largest state CPA society in the country—and am currently the chair of its Government Relations and Nominations Committees. Concurrently, I serve as a California delegate on the American Institute of CPAs Council, which is the governing and standard-setting body for CPAs in the United States. I also serve as the treasurer and a board member of the LA Center for Law and Justice, which provides free litigation services to survivors of domestic violence and sexual assault. Attached hereto as "Exhibit A" is my current CV.

4. I was retained to provide services to the Plan Agent, Sam Leslie, to evaluate and verify the conclusions presented in the October 19, 2017 declaration of Timothy Kincaid for the purpose of providing opinions and testimony relating to the issues of this litigation. My assignment expanded with the discovery of new information received after my retention, which included the review of the Debtor's books and records as well as documents produced in discovery for the primary purpose of identifying assets of the Debtor. The facts stated herein are true and correct and, if called as a witness, I could and would testify thereto.

5. I have prepared this declaration in connection with a motion that I understand will be filed by the Plan Agent pertaining to a stipulation and related documents that were signed in February 2015. For that reason, although my engagement covers a broader period from February 2013 through April 2016, much of the analysis discussed below pertains to the first 25 months of

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Art & Architecture Books of the 21st Century's (hereinafter "Debtor") Chapter 11 bankruptcy case and the financial information that the Debtor had disclosed or filed with the Court during that period.

6. In order to complete my analysis, I reviewed thousands of documents supporting the activity of the Debtor for the time period of February 2013 through April 2016, including Monthly Operating Reports (hereinafter "MOR") prepared by the Debtor and signed by Douglas Chrismas, bank statements of the Debtor that were referenced in its MORs, electronic general ledgers of the Debtor, and sales invoices of the Debtor, among other documents. I interviewed staff and accounting personnel who worked for the Debtor during this period in order to understand their accounting processes, such as sales invoice processing, inventory maintenance, cash processing, and bill payments. I also reviewed accounting documents and correspondence independently obtained from the Debtor's computers, as well as the bank records of Ace Gallery New York Corporation (hereinafter "Ace NY") and Ace Museum Corporation (hereinafter "Ace Museum"). The documents I reviewed are listed in "Exhibit B", attached hereto.

7. I understand that the Official Committee of Unsecured Creditors (hereinafter "Committee"), in furtherance of its duties, relied heavily on the Debtor's filed MORs to understand the nature of the Debtor's business and its ability to reorganize.

8. The documents that I reviewed pertaining to Ace NY included the initial Ace NY tax return for the period of February 1, 2013, through October 31, 2013, which was filed on Form 1120. The Form 1120 includes an opening balance sheet on page 5[1] showing there were no assets or capital at the formation of the corporation. This tax return establishes that Ace NY did not have any artwork or assets around the time the Debtor's bankruptcy was declared, as the February 2013 formation date is the same month as the Debtor's Chapter 11 case was filed. But

[1] Attached as Exhibit C – pg. 5 of Ace NY 2012 Form 1120

based on Ace NY's tax returns, Ace NY received $2,103,866[2] in artwork sales revenue during the nine-month period after its formation. Based on my review of the documents, including sales invoices, wire instructions, bank statements, deposit information, artist contracts, and consignment agreements, the $2 million was the Debtor's money for this 8-month time frame of February 2013 through October 2013. Although Ace NY had no assets when formed, it was able to produce $2 million of revenue—and I was able to confirm that the $2 million was from the sale of the Debtor's artwork sales.

9. As detailed above, $2 million from sales of the Debtor's artwork went to another company, Ace NY, and not the Debtor. This was consistent throughout the periods I reviewed, and the actual activity was not reflected in the Debtor's MORS filed with the court. Based on my review of 25 MORs from February 2013 through February 2015 (the relevant time period of this motion) at least 20 of the 25 MORs' important account balances--Accounts Receivable, Notes Receivable, Inventory, and Cash Receipts--were not reported accurately in the MORs, as shown in Exhibit Z. As more fully explained herein based on my review of the MORs, I opine that critical information contained in the Debtor's MORs is incorrect, not representative of the activity during the respective periods, and replete with misinformation. The following are a ***few examples*** of deficiencies in the information contained within the MORs for the months of February 2013 through November 2014.

**Monthly Operating Reports Analysis**

10. <u>Notes Receivable Balance</u> – Notes Receivable is an account to record amounts owed for services or sales that have not been paid as of the reporting period. The Debtor filed MORs[3] with the court through January 2016. I reviewed the MORs filed by the Debtor,

---

[2] Attached as Exhibit D – pg. 1 of Ace NY 2012 Form 1120

[3] I am informed that the MORs will be included in the filings of this action and therefore are not attached to my declaration.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

including the first MOR for the month ending February 28, 2013 and stamped "Filed 03/15/13". This MOR indicates there is a Notes Receivable balance of $4,501,971.82[4]. The Debtor's Submission of Amended and Corrected Schedules of Assets and Liabilities and Statement of Financial Affairs from April 2013 also lists a similar amount[5] as being due from Ace Museum to the Debtor. My understanding is that this receivable was owed by Ace Museum and is listed as an asset of the Debtor. The MOR dated November 30, 2014[6] lists the same Notes Receivable as $3,306,959.80, indicating there were repayments totaling $1,195,012.02 over the approximately 22-month period (I understand the relevance of this time period is explained in the motion). Based on my review of the documents during this time frame, millions of dollars of the Debtor's money were deposited into the bank accounts of two entities, Ace Museum and Ace NY, and some of the Debtor's money was transferred back to the Debtor and described/represented as Ace Museum's repayments of this debt. However, the source of the majority of the money was not Ace Museum, but the Debtor. Over the time period when Mr. Chrismas ran the operations from February 2013 to April 2016, more than $14 million[7] from sales of the Debtor's artwork was deposited into Ace NY's bank accounts. During the 22 months of the Chapter 11 case through November 30, 2014, approximately $5.4 million[8] from sales of the Debtor's artwork was deposited into Ace NY's bank accounts. Over this same time period, Ace NY transferred a net total of nearly $2.5 million[9] to Ace Museum. Based on my research described herein, it is my opinion and conclusion that the funds deposited to Ace NY's bank accounts, and then transferred from Ace NY to Ace Museum, were the Debtor's funds and that many of the deposits to Ace Museum's bank account were also the Debtor's funds.

---

4 Attached as Exhibit E is the MOR For the Month Ending 2/28/2013 pg. 15 of 16

5 Attached as Exhibit F is part of Schedule B – Personal Property from the April 2013 submission showing $4,482,856 is due from Ace Museum to the Debtor

6 Attached as Exhibit G is the MOR For the Month Ending 11/30/14 pg. 18 of 18

7 Attached as Exhibit H is BRG schedule "Sales Proceeds Deposited Into Ace Gallery New York Bank Accounts"

8 Ibid.

9 Attached as Exhibit I is BRG schedule "Transfers Between Ace Museum and Ace Gallery New York"

11. **Debtor in Possession Loans:** I have reviewed documents that detail Debtor in Possession (hereinafter "DIP") loans that were made to the Debtor. In some cases, the DIP proceeds were deposited directly into the Ace NY or Ace Museum accounts rather than having these DIP loan proceeds deposited into DIP accounts, as these proceeds were the Debtor's property. Many of the DIP proceeds deposited into the Ace Museum account were transferred to the Debtor and classified as reductions of the Ace Museum Loan. The following are DIP proceeds that were deposited into Ace Museum's bank account, not the Debtor's bank accounts, between February 2013 and November 2014 (detailed below):

| Date | Amount[10] |
|---|---|
| 4/11/2013 | $ 80,000 |
| 4/23/2014 | $ 85,000 |
| 5/12/2014 | $ 85,000 |
| 5/14/2014 | $ 75,000 |
| 5/30/2014 | $ 100,000 |
| 8/20/2014 | $ 135,000 |
| 10/23/2014 | $ 52,000 |
| 11/20/2014 | $ 180,000 |
| | $ 792,000 |

For example, the DIP loan of $180,000, advanced by Eric Wilson in November 2014 and deposited into the Ace Museum account, was transferred into the Debtor's account and declared on the November 2014 MOR as a repayment of the Ace Museum loan. This repayment was misrepresented, as the funds used to make the payment were directly traced back to the DIP loan proceeds received from Mr. Wilson. In short, the reduction in the Ace Museum debt was nothing more than a recycling of the Debtor's own money through Ace Museum.

12. **Artist Consignment Agreements:** I reviewed documents that included the Debtor's internal inventory records, artist contracts, and consignment sheets. All of the contracts I reviewed were signed by Douglas Chrismas on behalf of the Debtor, the majority of which were signed before the bankruptcy filing and some of which were signed after the bankruptcy

[10] Attached as Exhibit J is a wire transfer statement for Ace Museum CNB account – Telford Building LTD is Eric Wilson's company. Note each wire was reduced by a $20 wire fee.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

filing. I have not reviewed or located any contracts between Ace NY and any artist. Many of these same pieces of art were listed on Ace NY invoices, indicating the artwork was sold under the name of Ace NY when in fact the artwork appeared to be owned and/or contracted by the Debtor. For example, even though Charles Fine's *Flor De Incino* is in an inventory list in the Debtor's Exhibit Binder Volume 3[11], it was sold on an Ace NY invoice[12] and the $172,000 check payment for that invoice was deposited into Ace NY's bank account on August 2, 2013.[13] In following the trail of funds for that $172,000 invoice after it was deposited, the records indicate that, days later, $165,000 was transferred to Ace Museum's bank account on August 6, 2013[14]. Then, on the same day, $165,000 was wired out of the Ace Museum account in two wire transfers[15]—one for an Ace Museum rent expense for $150,000 and the other to the Debtor's general account for $15,000[16]. Thus, in instances such as this, funds that belonged to the Debtor were deposited first into Ace NY's bank account and then transferred to Ace Museum. Sometimes portions were subsequently transferred from Ace Museum's bank account to the Debtor's bank account, and at other times, funds were used to pay non-Debtor expenses.

13. Additionally, customers were sometimes instructed to wire funds for purchases of the Debtor's artwork to bank accounts other than the Debtor's. For example, in one method a customer was given Ace NY wire instructions with a $200,000 Ace Gallery invoice[17]. In some other instances, funds from sales of the Debtor's artwork were deposited into bank accounts other than that of the Debtor, including three sales transactions totaling $393,000 that were

---

[11] Attached as Exhibit K is the page from the Debtor's inventory listing Charles Fine's *Flor De Incino*

[12] Attached as Exhibit L is the invoice for the sale of Charles Fine's *Flor De Incino*

[13] Attached as Exhibit M are documents showing that the check was deposited into Ace Gallery NY's account

[14] Attached as Exhibit N are pages from Ace Gallery NY's and Ace Museum's bank statements showing that the $165,000 was transferred from Ace Gallery NY's account to Ace Museum's

[15] Attached as Exhibit O is a page from Ace Museum's bank statement showing the two wires out

[16] Attached as Exhibit P are documents showing the wires

[17] Attached as Exhibit Q are documents emailed to the customer including the invoice and Ace NY wire instructions.

USAO_00014242

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

deposited into the Ace Museum bank account rather than the Debtor's bank account (detailed below):

14.

| Deposit Date | Amount | Artist |
|---|---|---|
| 02/20/2013 | $ 150,000.00 | Mary Corse |
| 09/09/2013 | $ 68,000.00 | De Wain Valentine |
| 07/18/2014 | $ 175,000.00 | Mary Corse |
| TOTAL | $ 393,000.00 | |

Therefore, Ace Museum's Notes Receivable balance listed as $3,306,959.80 as of November 30, 2014, was not properly reported on the MOR Balance Sheet. These decreasing Notes Receivable balances on the MORs suggest that Ace Museum had been repaying the money owed to the Debtor. However, much of the money Ace Museum paid to the Debtor was actually the Debtor's money and was incorrectly reported as repayments of the Notes Receivable balance from Ace Museum. The bank records demonstrate to me that a small percentage of the funds used to pay down the Ace Museum loan balance during this period could have been funds donated to Ace Museum. However, a majority of the funds (more than $1 million) consisted of the Debtor's money transferred through the Ace Museum account from the Ace NY account.

15. Accounts Receivable Balance – Like Notes Receivable, Accounts Receivable is an account to record amounts owed for services or sales that have not been paid as of the reporting period. Accounts Receivable usually have shorter terms than Notes Receivable. The Debtor's business is the sale of artwork that results in either a payment of cash or a promise to pay in the future, which is recorded in Accounts Receivable. The first MOR filed by the Debtor indicated there were no Accounts Receivable as of February 28, 2013, demonstrating to me that the Debtor typically received payment in full at the time of the sale. An Accounts Receivable

USAO_00014243

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

balance of $318,990.61[18] was reported in the April 30, 2013 MOR. The amount increased to $4,359,643.13[19] through November 30, 2014. If accurate, this increase in unpaid sales clearly indicates that somebody, or a combination of entities, owes the Debtor $4.3 million for artwork sold. Yet the payment for the art has not been made as of November 30, 2014.

16. I reviewed the Debtor's Accounts Receivable listing in the accounting system, along with internally maintained spreadsheets[20], invoices, and bank records, and found that the majority of the Accounts Receivable were not supported by actual sales or prospective sales. The Accounts Receivable balance was $0 in the first MOR dated February 2013, and increased to $6,039,444 in February 2016. The internal records indicate (See Exhibit T) that there are approximately 50 outstanding invoices that comprise the Accounts Receivable balance. Based on my analysis of the detailed invoices, I found that most of the invoices did not indicate valid Accounts Receivable or were already paid. The following are a few examples (See Exhibit T for Invoices):

a. Invoice #1660 for $153,900, which is the Debtor's invoice, was included in Accounts Receivable detail. Invoice #1660 was paid in February 2014, and the proceeds were deposited into Ace NY's bank account. Yet the invoice remained on the Debtor's list of Accounts Receivable.

b. Invoice # 1632 for $92,500, which is the Debtor's Invoice dated July 27, 2013, was included in the Accounts Receivable detail. However, the invoice has a huge line through it saying it was cancelled in November 2015, which demonstrates to me that the invoice was not valid Accounts Receivable.

c. Invoice # 1696 for $431.65, which is the Debtor's Invoice dated May 13, 2014 and crossed off with a date of April 10, 2014, was included in the Accounts

---

[18] Attached as Exhibit R MOR For the Month Ending 4/30/2013 pg. 15 of 16
[19] Attached as Exhibit S MOR For the Month Ending 11/30/14 pg. 18 of 18
[20] Attached as Exhibit T Excel spread sheet "A& AR APR 15.xls"

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Receivable detail. This invoice was for delivery of artwork including "Gas for Truck". However, the invoice has a huge line through it saying it was cancelled in November 2015, which demonstrates to me that the invoice was not valid Accounts Receivable.

d. Invoice #1739 for $200,000, which is the Debtor's invoice, was included in Accounts Receivable detail. Invoice #1739 was paid in August 2014, and the proceeds were deposited into Ace NY's bank account. Yet the invoice remained on the Debtor's listing of Accounts Receivable.

The examples above reflect a small sampling of invoices making up the Accounts Receivable balance dated April 2015. I believe that the majority of sales listed in the Debtor's Accounts Receivable do not correlate to sales, have no correlation to amounts owed, and do not represent an accurate list of amounts due to the Debtor.

17. <u>Inventory</u> – Inventory represents the artwork owned by the Debtor at the Debtor's determined values. The MORs list the inventory balance each month, with the February 2013 MOR (the first MOR) stating the Debtor's inventory amounted to $3,356,134[21]. Based on my review of the documents, discussions with the Debtor's accounting personnel in charge of maintaining the inventory, and review of sales documentation, I believe that all the artwork discussed herein was the property of the Debtor or subject to the Debtor's consignment rights. Additionally, based on my review of the inventory listings, I found that the listings were misleading, as they still included artwork that had already been sold.

18. <u>Cash Receipts and Disbursements</u> - The MORs contain a one-page listing of the Debtor's monthly cash receipts and disbursements on a cash basis (this is also referred to as a profit and loss statement). Based on my analysis, there are two issues with the profit and loss statements (hereinafter "P&L") attached to each MOR filed by the Debtor with the court. First

[21] Attached as Exhibit E is the MOR For the Month Ending 2/28/2013 pg. 15 of 16

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

the P&Ls do not list any sales proceeds deposited into the Ace NY account. For example, by the filing of the last MOR the P&L reported total sale since the petition date of $11,061,741[22], which approximates the Debtor's sales but fails to account for the $14.5 million deposited into the Ace NY account. However, on a monthly basis the reported monthly sales figures varied widely from the bank records and sales invoices. In several instances, the discrepancies between sales reported on the MORs and the artwork sales proceeds deposited into the Debtor's general account are substantial. The following are just a few examples:

The May 2013 MOR shows that the Debtor's general account received the following artwork sales proceeds totaling $362,977.06[23] that month:

| | |
|---|---|
| Accounts Receivable – Post filing | $ 318,990.61 |
| General Sales | $ 43,986.45 |
| | $ 362,977.06 |

However, an analysis of bank account deposits and artwork sales invoices indicate that the Debtor received only $92,807.50 from artwork sales. Thus, of the $362,977.06 sales-related cash receipts reported on the MOR, invoices totaling $270,169.56 was not received from sales by the Debtor. That same month, Ace NY received $671,615[24] in sales deposits derived from sales of the Debtor's artwork, and transferred $255,000[25] from Ace NY's account to the Debtor's general account—an amount close to the aforementioned $270,169.56 of cash receipts reported on the MOR that do not have corresponding invoices identified. Based on my review of the bank records, it is my understanding that transfers such as this from the Ace NY account to the Debtor's account were carried out when the Debtor had an immediate need for cash to pay rent,

---

[22] See Exhibit Z for BRG Account Balance Listings
[23] Attached as Exhibit U MOR For the Month Ending 5/31/2013 pg. 1 of 16
[24] See Exhibit H BRG schedule "Sales Proceeds Deposited Into Ace Gallery New York Bank Accounts"
[25] Attached as Exhibit V are documents showing the $255,00 wire from the Ace New York bank account to the Debtor's general account

payroll, taxes, and other such immediate payment needs. The transactions below from the Debtor's bank statements show cash in from Ace NY[26] to the Debtor's account[27] on January 17, 2014. Once deposited, it was used to pay Debtor expenses like payments to artists (such as Mary Corse) and payroll expenses.

| Date | Amount | Description |
|---|---|---|
| 01/16/2014 | 6,943.44 | Prior Debtor Bank Balance |
| 01/17/2014 | 52,000.00 | Cash In: Check |
| 01/17/2014 | 10,000.00 | Cash In: Check |
| 01/17/2014 | (40,000.00) | Cash Out: Check – Mary Corse, Inc. |
| 01/17/2014 | (16,000.00) | Cash Out: Transfer – Debtor Payroll Account |

Days later and within the same month, money was once again transferred into the Debtor's account from Ace NY and then immediately used to pay Debtor expenses:

| Date | Amount | Description |
|---|---|---|
| 01/23/2014 | 5,360.41 | Prior Debtor Bank Balance |
| 01/24/2014 | 24,000.00 | Cash In: Check |
| 01/24/2014 | (22,440.00) | Cash Out: Check – LA Art Show |

19. As a second example, we identified more than $1 million in sales of the Debtor's artwork on Debtor invoices and Ace NY invoices for June 2014. The MOR for that month shows that the Debtor's account only received the following artwork sale proceeds totaling $548,650.77[28]:

---

[26] Attached as Exhibit W is Ace NY's CNB bank statement for January 2014
[27] Attached as Exhibit X is Debtor's CNB bank statement for January 2014
[28] Attached as Exhibit Y MOR For the Month Ending 6/30/14 pg. 1 of 16

USAO_00014247
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| Accounts Receivable – Post filing | $ 541,760.00 |
| Accounts Receivable – Pre filing | $ 6,360.00 |
| General Sales | $ 530.77 |
| | $ 548,650.77 |

I was able to find $517,456.65 of invoiced artwork sales in the name of the Debtor that corresponded to the deposits for that month. The Ace NY bank account received the rest of the $1 million—specifically, $521,380[29]—for sales of the Debtor's artwork. The Debtor's accounting records demonstrate that the foregoing are examples of the Debtor's regular monthly practices through April 2016. In summary, I opine that the MORs do not reflect the true activity of the Debtor. The reported artwork sales, the balance on the Notes Receivable due from Ace Museum, and the Accounts Receivable information presented in the MORs are not true reflections of the Debtor's activities, assets, or respective values.

20. Term Sheet - I reviewed a stipulation and plan support term sheet made between the Debtor, the Official Committee of Unsecured Creditors, Ace Museum, and Douglas Chrismas on or about February 11, 2015. In the plan term sheet, among other terms, the Debtor agreed[30] to generate at least $25,000 each month in sales between March 2015 and June 2015 to facilitate payments to creditors. Based on the MORs and bank statements during this time period, the goal was met; but the funds were not retained in the Debtor's account beyond June 2015. Over this same four-month period, funds from sales of the Debtor's artwork totaling more than $1,000,000 were deposited into Ace NY and Ace Museum's bank accounts instead of the Debtor's bank accounts.

//////

[29] See Exhibit H BRG schedule "Sales Proceeds Deposited Into Ace Gallery New York Bank Accounts"

[30] "Term Sheet Between the Official Committee of Unsecured Creditors of Art & Architecture Books of the 21st Century, Art & Architecture Books of the 21st Century, Douglas Chrismas, and Ace Museum, a California Corporation" pg. 5 item 6

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**SUMMATION**

Based on the analysis performed, I believe that the Accounts Receivable balance in the MORs was substantially overstated for at least 30 of the 36 MORs filed, the Ace Museum Notes Receivable balance was incorrectly reduced in 33 of the 36 MORs filed, the Inventory balance was not support by a complete inventory for all 36 MORs, and the Cash Receipts for 32 of 36 MORs were incorrect and failed to report sale proceeds that were deposited into the Ace NY account and never received by the Debtor. This is indicative of a practice of reporting incorrect information with the court.

I declare under penalty of perjury under the laws of the State of California that the preceding is true and correct. Executed this March 6, 2019, in Los Angeles, California.

*Jennifer Ziegler*

Jennifer E. Ziegler, CPA

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit A

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Curriculum Vitae

**Jennifer E. Ziegler, CPA/CFF, CFE**

BERKELEY RESEARCH GROUP, LLC
2029 Century Park East, Suite 1250 | Los Angeles, CA 90067
Direct: 310.499.4853
Cell: 213.718.1379
jziegler@thinkbrg.com

## SUMMARY

Jennifer E. Ziegler, CPA, is a managing director with Berkeley Research Group in the Century City office. She specializes in providing accounting expertise in the area of forensic accounting, litigation support, expert witness testimony, and fraud investigations. She is experienced in consulting with clients and counsel with regard to complex business disputes involving the investigation, evaluation, and quantification of economic damages.

She has over 20 years of accounting experience in a wide range of industries including insurance, healthcare providers, pharmaceuticals, startups, not-for-profits, government agencies, oil and gas, and homeowners' associations.

Her experience encompasses a diverse range of litigation matters including probate and estate disputes, shareholder and partnership disputes, post-acquisition claims, business interruption, accounting professional standards, royalty disputes, and fraud investigations.

Ms. Ziegler has testified in deposition and trial numerous times. She has also been appointed by the court as an accounting neutral, a trustee, and an executor.

## EDUCATION

B.S., Business Administration, California State University, Northridge, 1991
Emphasis in accounting

## PROFESSIONAL AFFILIATIONS

California Society of Certified Public Accountants

Chair, 2015/2016

First Vice Chair, 2014/2015

Treasurer, 2013/2014

Board of Directors, 2007, 2009–present

Chair, Government Relations 2016/2017-present

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Chair, Nominations Committee, 2018-2019, Vice Chair 2017-2018

Chair, Litigation Fraud Section, 2008–2010

Vice Chair, Litigation Fraud Section, 2006–2008

Chair, Los Angeles Chapter Litigation Section, 2006–2009

Forensic Services Section, Steering Committee 2006–2012, 2016-February 2018

Council Member, 2007–present

American Institute of Certified Public Accountants

Council, 2010–2016, 2017-present

Nominations Committee, 2018-present

Los Angeles Center for Law and Justice, Board Member March 2016 – present

Mental Health Systems, Inc. – acting CFO June – December 2016, Board member

January 2017 to present

Reading is Fundamental of Southern California

Past President and Chairman of the Board

Past Treasurer and Board of Directors member

Past Investment Committee member

Certified Public Accountant (CPA), licensed in California 1996 and Oregon 2016

Certified in Financial Forensics (CFF)

Certified Fraud Examiner (CFE)

Certified Information Technology Professional (CITP)

## LITIGATION EXPERT RETENTION

Cesar Baez vs. Pension Consulting Alliance, Inc., and Michael Moy, United States District Court, Central District of California, Case No. 2:17-cv-1938, Written Reports issued January and February 2018

JSC VTB Bank vs. Igor Mavlyanov, Stella Mavlyanova, Ilio Mavlyanov, 18016 Boris Properties, LLC, 2710 Bowman, LLC, Jasper Partner Inc., Jasper Venture Group, LLC, Jasper California LLC, Superior Court of the State of California, Los Angeles County, Case No. BC 624195, Deposition January 2018

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Kivel vs. McInerney, Superior Count of California, Deposition August and September 2017, Trial December 2017

EMSI Acquisition, Inc. et al, Superior Court of Chicago, Arbitration Decision issued July 15, 2016

S.E. Funeral Homes of California Inc. v. The Roman Catholic Archbishop of Los Angeles Los Angeles County Superior Court, Case No. BC 559142 Deposition June 2016

County of San Diego Cure Notice to Mental Health Systems, Inc., Written Reports issued May and June 2016

Correa vs. City of San Jose, et al. United States District Court, Northern District of California.CV12-05436, Written Report September 2013, Trial April 2016

Anton et al. v. Barbich Hooper et al., Superior Court of Kern County, Case No. S-1500-CV-281077-SPC, Deposition February 2016

Ronald Kirsh vs. Andrew Kirsh, ATK et al., Los Angeles County Superior Court, Case No. BC 530501, Deposition January 2015 and Trial October 2015

CSMC 2006-C5 Office 4545, LLC vs Vinod K. Gupta, United States Central District Court, Case No.: CV2:14-cv-04796 DSF-CW, Written Report July 2015, And Deposition September 2015

Marik et al. vs University Village Building, B LLC, Los Angeles County Superior Court, Case No. BC 540131, Deposition May 2015 and Trial November 2015

Klein vs. Klein, Los Angeles County Superior Court, Case No. BD 574888, Trial March, May, and June 2014

Natland vs. Robert McGowen and McGowen, Hurst, Clark & Smith, Central District of California, Southern Division SACV 13-000495, written report January 2014 and Deposition March 2014

Court appointed Monitor in re: Belasco Entertainment Theater, Inc., adv. Kim, Los Angeles County Superior Court, Case No.BC486009, December 2012

## PREVIOUS POSITIONS

Hemming Morse, Inc., and Hemming Morse, LLP

Litigation Director and Partner, May 2007–January 1, 2013

Gursey, Schneider & Co. LLP

Partner, January 2006–May 2007
Senior Manager, November 1998–December 2005

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

KPMG Peat Marwick, LLP

Manager 1997–October 1998
Senior, 1996
Staff, 1993–1995

UCLA Internal Audit Department

Assistant Auditor 1992–1993

## SEMINAR PLANNING

"Fraud in Audit, Accounting and Tax Conference," CalCPA Education Foundation, Planning Committee 2002, 2007; Co-Chair 2008, 2010–2013

"Celebrating Women," CalCPA Education Foundation, Planning Committee, 2007–2008, 2015

"Financial Statement and Tax Fraud Conference," CalCPA Education Foundation, Planning Committee, 2006

"Advanced Business Litigation Institute Conference," CalCPA Education Foundation, Planning Committee, 2002

"Litigation Service Conference," CalCPA Education Foundation, Planning Committee, 2001 and 2002

## SPEAKING ENGAGEMENTS

Twenty-seven speaking engagements for California Society of CPAs 2015/2016

"CPA Careers Panel," CSU San Bernardino, February 2013

"CPA Careers Panel," Student Night CSU Fresno, July 2012

"State Bar of California Fiduciaries, Fraud & Forensics," Monterey, October 2006, and Los Angeles, November 2006

"Financial Statements in the Courtroom," The National Judicial College, October 2002

"Expert Do's and Don'ts: Mock Trial," 2002 Advanced Business Litigation Institute Conference, May 2002

# Exhibit B

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Exhibit B

## Documents Reviewed

1. Legal Documents

   a. Declaration of Timothy Kincaid in Support of Plaintiff's Motion for Preliminary Injunction, October 19, 2017, including Exhibits

   b. Notice of Motion and Motion of Debtor and Debtor in Possession for Order Authorizing Debtors to Obtain Financing Pursuant to 11 U.S.C. § 364(C)(2) and (3); Memorandum of Points and Authorities; Declaration of Douglas Christmas in Support Thereof, August 7, 2013

   c. Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364(C)(2) and (3), August 30, 2013

   d. Status Report of Sam S. Leslie Re First 30 Days of Operation and Supporting Declaration of Timothy Kincaid, May 10, 2016

   e. Submission of Amended and Corrected Schedules of Assets and Liabilities and Statement of Financial Affairs, April 4, 2013

2. Various Correspondence including emails and memos but not limited to

   a. Documents from Grobstein Teeple

   b. Documents from Michael Strauss

   c. Shirley Holst emails and communications

   d. Declaration of Victor Sahn

   e. Declaration of Eric Wilson

   f. Term Sheet Between the Official Committee of Unsecured Creditors of Art & Architecture Books of The 21st Century, Art & Architecture Books of The 21st Century, Douglas Christmas, And Ace Museum, A California Corporation.

   g. Contemporaneous emails from the Debtor's servers

3. Financial Records

   a. Contemporaneous financial records from the Debtor's accounting and computer systems

   b. Invoices issued by Ace Gallery New York, Ace Gallery Los Angeles, and Ace Gallery

   c. Inventory of owned and cosigned artworks

   d. Monthly Operating Reports (MOR), 1-36

   e. Tax returns of Ace Gallery New York for 2012 and 2013

   f. Tax returns of Ace Museum for 20121 and 2013

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

4. Timothy Kincaid's work product, including spreadsheets, invoices, correspondence and bank records supporting his declaration dated October 19, 2017

5. Bank Records

   a. Ace Museum bank statements, deposits, check images, and wire transfers for City National Bank Account 6347

   b. Ace Gallery New York

      i. Bank statements for Wells Fargo Account 9951

      ii. Bank statements, deposits, and check images for City National Bank Account 0229

      iii. Bank statements, deposits, and wire transfers for City National Bank Account 4733

   c. Art & Architecture Books of the 21st Century DBA Ace Gallery

      i. Bank statements and deposits for City National Bank Account 2337

      ii. Bank statements and deposits for City National Bank Account 8410

      iii. Bank statements and deposits for City National Bank Account 8437

      iv. Bank statements, check images, and wire transfers for City National Bank Account 0176

      v. Bank statements, deposits, check images, and wire transfers for City National Bank Account 8402

      vi. Correspondence from City National Bank

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit C

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Form 1120 (2012) ACE GALLERY NEW YORK CORPORATION 46-2058558 Page 5

**Schedule L** Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | | | -32,426. |
| 2a Trade notes and accounts receivable | | | 93,063. | |
| b Less allowance for bad debts | | | | 93,063. |
| 3 Inventories | | | | 268,197. |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | | | |
| 6 Other current assets (attach statement) | | | | |
| 7 Loans to shareholders | | | | 50,168. |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach statement) | | | | |
| 10a Buildings and other depreciable assets | | | | |
| b Less accumulated depreciation | | | | |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 14 Other assets (attach statement) See St. 3 | | | | 826,170. |
| 15 Total assets | | 0. | | 1,205,172. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | | | 893,575. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach stmt) See St. 4 | | | | 14,009. |
| 19 Loans from shareholders | | | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | 309,000. |
| 21 Other liabilities (attach statement) | | | | |
| 22 Capital stock: a Preferred stock | | | | |
| b Common stock | | | | |
| 23 Additional paid-in capital | | | | |
| 24 Retained earnings — Approp (att stmt) | | | | |
| 25 Retained earnings — Unappropriated | | | | -11,412. |
| 26 Adjmt to shareholders' equity (att stmt) | | | | |
| 27 Less cost of treasury stock | | | | |
| 28 Total liabilities and shareholders' equity | | 0. | | 1,205,172. |

**Schedule M-1** Reconciliation of Income (Loss) per Books With Income per Return

**Note:** Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more — see instructions

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -11,412. | 7 Income recorded on books this year not included on this return (itemize): Tax-exempt interest $ | |
| 2 Federal income tax per books | | | |
| 3 Excess of capital losses over capital gains | | | |
| 4 Income subject to tax not recorded on books this year (itemize): | | 8 Deductions on this return not charged against book income this year (itemize): a Depreciation $ b Charitable contribns $ | |
| 5 Expenses recorded on books this year not deducted on this return (itemize): a Depreciation $ b Charitable contributions $ 2,492. c Travel & entertainment $ 15,746. | 18,238. | 9 Add lines 7 and 8 | 0. |
| 6 Add lines 1 through 5 | 6,826. | 10 Income (page 1, line 28) — line 6 less line 9 | 6,826. |

**Schedule M-2** Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L)

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | | 5 Distributions a Cash | |
| 2 Net income (loss) per books | -11,412. | b Stock c Property | |
| 3 Other increases (itemize): | | 6 Other decreases (itemize): | |
| | | 7 Add lines 5 and 6 | |
| 4 Add lines 1, 2, and 3 | -11,412. | 8 Balance at end of year (line 4 less line 7) | -11,412. |

CPCA0234L 12/28/12 Form 1120 (2012)

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit D

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Form **1120**

Department of the Treasury Internal Revenue Service

# U.S. Corporation Income Tax Return

For calendar year 2012 or tax year beginning 2/1, 2013, ending 10/31, 13

► Information about Form 1120 and its separate instructions is at *www.irs.gov/form1120*.

OMB No. 1545-0123

**2012**

Check if:
- a Consolidated return (attach Form 851) ☐
- b Life/nonlife consolidated return ☐
- 2 Personal holding co (attach Sch PH) ☐
- 3 Personal service corp (see instrs) ☐
- 4 Schedule M-3 attached ☐

TYPE OR PRINT

ACE GALLERY NEW YORK CORPORATION
5514 WILSHIRE BLVD.
LOS ANGELES, CA 90036

B Employer identification number: 46-2058558

C Date incorporated: 2/01/2013

D Total assets (see instructions): $ 1,205,172.

E Check if: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change

| Section | Line | Description | Ref | Amount | Line | Amount |
|---|---|---|---|---|---|---|
| INCOME | 1 a | Gross receipts or sales | 1 a | 2,103,866. | | |
| | b | Returns and allowances | 1 b | | | |
| | c | Balance. Subtract line 1b from line 1a | | | 1 c | 2,103,866. |
| | 2 | Cost of goods sold (attach Form 1125-A) | | | 2 | 1,134,038. |
| | 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | 969,828. |
| | 4 | Dividends (Schedule C, line 19) | | | 4 | |
| | 5 | Interest | | | 5 | |
| | 6 | Gross rents | | | 6 | |
| | 7 | Gross royalties | | | 7 | |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | | | 8 | |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 9 | |
| | 10 | Other income (see instructions — attach schedule) | | | 10 | |
| | 11 | **Total income.** Add lines 3 through 10 | | | 11 | 969,828. |
| DEDUCTIONS (SEE INSTRUCTIONS FOR LIMITATIONS ON DEDUCTIONS) | 12 | Compensation of officers (see instructions — attach Form 1125-E) | | | 12 | |
| | 13 | Salaries and wages (less employment credits) | | | 13 | 22,796. |
| | 14 | Repairs and maintenance | | | 14 | 2,888. |
| | 15 | Bad debts | | | 15 | |
| | 16 | Rents | | | 16 | 655,428. |
| | 17 | Taxes and licenses | | | 17 | 2,629. |
| | 18 | Interest | | | 18 | 33,926. |
| | 19 | Charitable contributions | | | 19 | 758. |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | | | 20 | |
| | 21 | Depletion | | | 21 | |
| | 22 | Advertising | | | 22 | 9,500. |
| | 23 | Pension, profit-sharing, etc, plans | | | 23 | |
| | 24 | Employee benefit programs | | | 24 | |
| | 25 | Domestic production activities deduction (attach Form 8903) | | | 25 | |
| | 26 | Other deductions (attach statement) See Statement 1 | | | 26 | 235,077. |
| | 27 | **Total deductions.** Add lines 12 through 26 | | | 27 | 963,002. |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | | 28 | 6,826. |
| | 29 a | Net operating loss deduction (see instructions) | 29 a | | | |
| | b | Special deductions (Schedule C, line 20) | 29 b | | | |
| | c | Add lines 29a and 29b | | | 29 c | |
| TAX, REFUNDABLE CREDITS, AND PAYMENTS | 30 | **Taxable income.** Subtract line 29c from line 28 (see instructions) | | | 30 | 6,826. |
| | 31 | Total tax (Schedule J, Part I, line 11) | | | 31 | 1,365. |
| | 32 | Total payments and refundable credits (Schedule J, Part II, line 21) | | | 32 | 0. |
| | 33 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ► [X] | | | 33 | 25. |
| | 34 | **Amount owed.** If line 32 is smaller than the total of lines 31 and 33, enter amount owed | | | 34 | 1,390. |
| | 35 | **Overpayment.** If line 32 is larger than the total of lines 31 and 33, enter amount overpaid | | | 35 | |
| | 36 | Enter amount from line 35 you want: Credited to 2013 estimated tax ► | | Refunded ► | 36 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer | Date | Title: President & CEO

May the IRS discuss this return with the preparer shown below (see instructions)? [X] Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check [X] if self-employed | PTIN |
|---|---|---|---|---|
| Shirley Holst C.P.A. | Shirley Holst C.P.A. | 9/15/14 | | P01451772 |

Firm's name ► Shirley Holst CPA — Firm's EIN ► 572761524

Firm's address ► 13212 Dewey St. Los Angeles, CA 90066 — Phone no. (310) 391-9542

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit E

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

BALANCE SHEET
(ACCRUAL BASIS ONLY)

| ASSETS | Current Month End | |
|---|---|---|
| Current Assets: | | |
| Unrestricted Cash | 31,711.18 | |
| Restricted Cash | 1,215.00 | |
| Accounts Receivable | | |
| Inventory | 3,356,134.05 | |
| Notes Receivable | 4,501,971.82 | |
| Prepaid Expenses | | |
| Other (Itemize)-Deposiats | 53,999.00 | |
| Total Current Assets | | 7,945,031.05 |
| Property, Plant, and Equipment | 609,716.31 | |
| Accumulated Depreciation/Depletion | (227,044.00) | |
| Net Property, Plant, and Equipment | | 382,672.31 |
| Other Assets (Net of Amortization): | | |
| Due from Insiders | | |
| Other (Itemize) | | |
| Total Other Assets | | 0.00 |
| TOTAL ASSETS | | 8,327,703.36 |
| LIABILITIES | | |
| Post-petition Liabilities: | | |
| Accounts Payable | 48,083.22 | |
| Taxes Payable | 1,508.68 | |
| Notes Payable | | |
| Professional fees | | |
| Secured Debt | | |
| Other (Itemize) | | |
| Total Post-petition Liabilities | | 49,591.90 |
| Pre-petition Liabilities: | | |
| Secured Liabilities | 6,306,557.82 | |
| Priority Liabilities | 879,245.10 | |
| Unsecured Liabilities | 13,996,719.52 | |
| Other (Itemize) | | |
| Total Pre-petition Liabilities | | 21,182,522.44 |
| TOTAL LIABILITIES | | 21,232,114.34 |
| EQUITY: | | |
| Pre-petition Owners' Equity | (12,885,656.45) | |
| Post-petition Profit/(Loss) | (18,754.53) | |
| Direct Charges to Equity | | |
| TOTAL EQUITY | | (12,904,410.98) |
| TOTAL LIABILITIES & EQUITY | | 8,327,703.36 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit F

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

IN RE ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY Case No. 2:13-bk-14135-RK
Debtor(s) (If known)

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | Due from Ace Museum c/o 5514 Wilshire Blvd., Los Angeles, CA | | 4,482,856.00 |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |

© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit G

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## X. BALANCE SHEET

(ACCRUAL BASIS ONLY)

| ASSETS | Current Month End | |
|---|---|---|
| Current Assets: | | |
| Unrestricted Cash | 486.20 | |
| Restricted Cash | 9,140.00 | |
| Lawyer's Rent Trust Account | - | |
| Accounts Receivable | 4,359,643.13 | |
| Inventory (Need to Adj for updated inventory list) | 3,254,619.02 | |
| Notes Receivable | 3,306,959.80 | |
| Prepaid Expenses | | |
| Other (Itemize)-Deposits | | |
| Total Current Assets | | 10,930,848.15 |
| | | |
| Property, Plant, and Equipment | 628,194.65 | |
| Accumulated Depreciation/Depletion | (227,044.00) | |
| Net Property, Plant, and Equipment | | 401,150.65 |
| | | |
| Other Assets (Net of Amortization): | | |
| Due from Insiders | | |
| Other (Itemize)Deposit | 60,474.00 | |
| Total Other Assets | | 60,474.00 |
| | | |
| TOTAL ASSETS | | 11,392,472.80 |
| | | |
| LIABILITIES | | |
| ›st-petition Liabilities: | | |
| Accounts Payable | | 1,789,622.77 |
| Taxes Payable | | 59,025.51 |
| Loan Payable Douglas Chrismas | | 14,094.79 |
| Loan Payable Eric Wilson | | 1,500,000.00 |
| Secured Debt | | |
| Other (Itemize) | | 16,500.00 |
| Total Post-petition Liabilities | | 3,379,243.07 |
| | | |
| Pre-petition Liabilities: | | |
| Secured Liabilities | | 1,252,884.90 |
| Priority Liabilities | | 755,054.13 |
| Unsecured Liabilities (Payments to Landlords per Cour during Sept.) | | 14,386,804.85 |
| Other (Itemize) | | |
| Total Pre-petition Liabilities (Subject to Debtor's adjustments based on its review) | | 16,394,743.88 |
| | | |
| TOTAL LIABILITIES | | 19,773,986.95 |
| | | |
| EQUITY: | | |
| Pre-petition Owners' Equity | | (9,316,265.89) |
| Post-petition Profit/(Loss) | | 934,751.74 |
| Direct Charges to Equity | | |
| TOTAL EQUITY | | (8,381,514.15) |
| | | |
| ~OTAL LIABILITIES & EQUITY | | 11,392,472.80 |

COMPILED FOR COURT

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit H

USAO_00014268
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**Sales Proceeds Deposited Into Ace Gallery New York Bank Accounts**

| Month Ending | Amount | Cumulative Balance |
|---|---|---|
| 02/28/2013 | $ 70,968.00 | $ 70,968.00 |
| 03/31/2013 | 653,340.00 | 724,308.00 |
| 04/30/2013 | 52,987.50 | 777,295.50 |
| 05/31/2013 | 671,615.00 | 1,448,910.50 |
| 06/30/2013 | 184,240.00 | 1,633,150.50 |
| 07/31/2013 | 255,520.00 | 1,888,670.50 |
| 08/31/2013 | 172,000.00 | 2,060,670.50 |
| 09/30/2013 | 18,980.00 | 2,079,650.50 |
| 10/31/2013 | 159,022.00 | 2,238,672.50 |
| 11/30/2013 | 300,000.00 | 2,538,672.50 |
| 12/31/2013 | 327,060.00 | 2,865,732.50 |
| 01/31/2014 | 360,775.00 | 3,226,507.50 |
| 02/28/2014 | 389,400.00 | 3,615,907.50 |
| 03/31/2014 | 38,368.00 | 3,654,275.50 |
| 04/30/2014 | 189,888.39 | 3,844,163.89 |
| 05/31/2014 | 219,464.20 | 4,063,628.09 |
| 06/30/2014 | 521,380.00 | 4,585,008.09 |
| 07/31/2014 | 303,302.50 | 4,888,310.59 |
| 08/31/2014 | 200,000.00 | 5,088,310.59 |
| 09/30/2014 | 295,385.00 | 5,383,695.59 |
| 10/31/2014 | 27,250.00 | 5,410,945.59 |
| 11/30/2014 | 650.00 | 5,411,595.59 |
| 12/31/2014 | 15,696.00 | 5,427,291.59 |
| 01/31/2015 | 356,861.20 | 5,784,152.79 |
| 02/28/2015 | 158,068.80 | 5,942,221.59 |
| 03/31/2015 | 271,080.00 | 6,213,301.59 |
| 04/30/2015 | 536,520.00 | 6,749,821.59 |
| 05/31/2015 | 287,000.00 | 7,036,821.59 |
| 06/30/2015 | 235,968.00 | 7,272,789.59 |
| 07/31/2015 | 433,800.00 | 7,706,589.59 |
| 08/31/2015 | 209,637.00 | 7,916,226.59 |
| 09/30/2015 | 373,572.00 | 8,289,798.59 |
| 10/31/2015 | 5,375,965.00 | 13,665,763.59 |
| 11/30/2015 | 72,528.00 | 13,738,291.59 |
| 12/31/2015 | 125,000.00 | 13,863,291.59 |
| 01/31/2016 | 283,282.50 | 14,146,574.09 |
| 02/29/2016 | 177,055.00 | 14,323,629.09 |
| 03/31/2016 | 37,000.00 | 14,360,629.09 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit I

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Transfers Between Ace Museum and Ace Gallery New York

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---|---|
| 02/22/2013 | $ (10,000.00) | $ (10,000.00) |
| 03/07/2013 | 7,500.00 | (2,500.00) |
| 03/07/2013 | (5,500.00) | (8,000.00) |
| 03/11/2013 | 135,000.00 | 127,000.00 |
| 03/20/2013 | 3,000.00 | 130,000.00 |
| 03/25/2013 | 84,000.00 | 214,000.00 |
| 04/01/2013 | (1,000.00) | 213,000.00 |
| 04/02/2013 | 1,000.00 | 214,000.00 |
| 04/02/2013 | (9,000.00) | 205,000.00 |
| 04/05/2013 | (11,000.00) | 194,000.00 |
| 04/09/2013 | (3,000.00) | 191,000.00 |
| 04/10/2013 | (2,500.00) | 188,500.00 |
| 04/17/2013 | 33,000.00 | 221,500.00 |
| 04/18/2013 | 3,500.00 | 225,000.00 |
| 05/03/2013 | (6,000.00) | 219,000.00 |
| 05/10/2013 | (500.00) | 218,500.00 |
| 05/09/2013 | (1,000.00) | 217,500.00 |
| 05/13/2013 | (1,700.00) | 215,800.00 |
| 05/20/2013 | (1,800.00) | 214,000.00 |
| 05/21/2013 | 140,000.00 | 354,000.00 |
| 05/31/2013 | (8,000.00) | 346,000.00 |
| 06/06/2013 | 150,000.00 | 496,000.00 |
| 06/20/2013 | (2,400.00) | 493,600.00 |
| 07/05/2013 | 145,000.00 | 638,600.00 |
| 07/08/2013 | 40,000.00 | 678,600.00 |
| 07/22/2013 | 15,500.00 | 694,100.00 |
| 07/25/2013 | 25,000.00 | 719,100.00 |
| 08/06/2013 | 165,000.00 | 884,100.00 |
| 08/21/2013 | (2,000.00) | 882,100.00 |
| 09/12/2013 | (4,000.00) | 878,100.00 |
| 09/17/2013 | 165,000.00 | 1,043,100.00 |
| 09/17/2013 | 65,000.00 | 1,108,100.00 |
| 09/18/2013 | 1,000.00 | 1,109,100.00 |
| 10/01/2013 | (4,000.00) | 1,105,100.00 |
| 10/17/2013 | 535.00 | 1,105,635.00 |
| 10/22/2013 | 66,000.00 | 1,171,635.00 |
| 11/01/2013 | (30,000.00) | 1,141,635.00 |
| 11/14/2013 | (15,000.00) | 1,126,635.00 |
| 11/21/2013 | 5,000.00 | 1,131,635.00 |
| 11/25/2013 | 165,000.00 | 1,296,635.00 |
| 11/26/2013 | 7,500.00 | 1,304,135.00 |
| 12/02/2013 | 1,700.00 | 1,305,835.00 |
| 12/03/2013 | 85,000.00 | 1,390,835.00 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Transfers Between Ace Museum and Ace Gallery New York

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---|---|
| 12/04/2013 | 3,687.02 | 1,394,522.02 |
| 12/13/2013 | 224,000.00 | 1,618,522.02 |
| 12/13/2013 | 7,000.00 | 1,625,522.02 |
| 12/19/2013 | 25,500.00 | 1,651,022.02 |
| 12/20/2013 | 4,000.00 | 1,655,022.02 |
| 01/17/2014 | 165,000.00 | 1,820,022.02 |
| 01/17/2014 | 500.00 | 1,820,522.02 |
| 02/12/2014 | (4,500.00) | 1,816,022.02 |
| 02/18/2014 | 10,000.00 | 1,826,022.02 |
| 02/19/2014 | 170,000.00 | 1,996,022.02 |
| 02/19/2014 | 3,125.00 | 1,999,147.02 |
| 02/27/2014 | (3,500.00) | 1,995,647.02 |
| 03/06/2014 | (5,000.00) | 1,990,647.02 |
| 03/12/2014 | 3,000.00 | 1,993,647.02 |
| 03/14/2014 | (2,200.00) | 1,991,447.02 |
| 03/24/2014 | 15,800.00 | 2,007,247.02 |
| 04/01/2014 | (2,000.00) | 2,005,247.02 |
| 04/03/2014 | (12,000.00) | 1,993,247.02 |
| 04/10/2014 | (1,000.00) | 1,992,247.02 |
| 04/24/2014 | (100.00) | 1,992,147.02 |
| 04/24/2014 | (150.00) | 1,991,997.02 |
| 04/29/2014 | (5,000.00) | 1,986,997.02 |
| 05/06/2014 | (5,000.00) | 1,981,997.02 |
| 05/08/2014 | (39,000.00) | 1,942,997.02 |
| 05/09/2014 | (500.00) | 1,942,497.02 |
| 05/12/2014 | (85,150.00) | 1,857,347.02 |
| 05/14/2014 | (75,000.00) | 1,782,347.02 |
| 05/16/2014 | (1,700.00) | 1,780,647.02 |
| 05/28/2014 | 216,900.00 | 1,997,547.02 |
| 06/02/2014 | (1,000.00) | 1,996,547.02 |
| 06/02/2014 | (9,400.00) | 1,987,147.02 |
| 06/02/2014 | (38,000.00) | 1,949,147.02 |
| 06/17/2014 | 153,000.00 | 2,102,147.02 |
| 06/18/2014 | 1,550.00 | 2,103,697.02 |
| 06/18/2014 | (1,050.00) | 2,102,647.02 |
| 06/24/2014 | (70.00) | 2,102,577.02 |
| 07/14/2014 | (3,000.00) | 2,099,577.02 |
| 07/25/2014 | 100,000.00 | 2,199,577.02 |
| 07/25/2014 | 5,000.00 | 2,204,577.02 |
| 08/18/2014 | 24,000.00 | 2,228,577.02 |
| 08/28/2014 | (18,000.00) | 2,210,577.02 |
| 09/02/2014 | (2,500.00) | 2,208,077.02 |
| 09/04/2014 | (650.00) | 2,207,427.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**Transfers Between Ace Museum and Ace Gallery New York**

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---|---|
| 09/05/2014 | (200.00) | 2,207,227.02 |
| 09/08/2014 | (800.00) | 2,206,427.02 |
| 09/09/2014 | (500.00) | 2,205,927.02 |
| 09/10/2014 | (100.00) | 2,205,827.02 |
| 09/12/2014 | (3,300.00) | 2,202,527.02 |
| 09/22/2014 | 226,300.00 | 2,428,827.02 |
| 09/25/2014 | 7,300.00 | 2,436,127.02 |
| 09/26/2014 | 40,000.00 | 2,476,127.02 |
| 09/29/2014 | 20,000.00 | 2,496,127.02 |
| 10/01/2014 | (4,200.00) | 2,491,927.02 |
| 10/06/2014 | (16,000.00) | 2,475,927.02 |
| 10/16/2014 | (200.00) | 2,475,727.02 |
| 10/20/2014 | 500.00 | 2,476,227.02 |
| 10/21/2014 | 17,000.00 | 2,493,227.02 |
| 10/22/2014 | 1,200.00 | 2,494,427.02 |
| 10/27/2014 | 350.00 | 2,494,777.02 |
| 10/27/2014 | 10.00 | 2,494,787.02 |
| 10/28/2014 | 10.00 | 2,494,797.02 |
| 11/04/2014 | (30.00) | 2,494,767.02 |
| 11/04/2014 | (300.00) | 2,494,467.02 |
| 11/10/2014 | (160.00) | 2,494,307.02 |
| 11/12/2014 | 300.00 | 2,494,607.02 |
| 11/19/2014 | (60.00) | 2,494,547.02 |
| 11/21/2014 | (1,000.00) | 2,493,547.02 |
| 11/21/2014 | (2,260.00) | 2,491,287.02 |
| 12/04/2014 | 4,500.00 | 2,495,787.02 |
| 12/08/2014 | (30.00) | 2,495,757.02 |
| 12/08/2014 | (50.00) | 2,495,707.02 |
| 12/10/2014 | (100.00) | 2,495,607.02 |
| 12/12/2014 | (550.00) | 2,495,057.02 |
| 12/12/2014 | (3,500.00) | 2,491,557.02 |
| 12/15/2014 | (200.00) | 2,491,357.02 |
| 12/23/2014 | 1,400.00 | 2,492,757.02 |
| 12/23/2014 | (7,200.00) | 2,485,557.02 |
| 01/02/2015 | 500.00 | 2,486,057.02 |
| 01/02/2015 | 500.00 | 2,486,557.02 |
| 01/02/2015 | (900.00) | 2,485,657.02 |
| 01/06/2015 | 2,600.00 | 2,488,257.02 |
| 01/06/2015 | 2,000.00 | 2,490,257.02 |
| 01/08/2015 | (800.00) | 2,489,457.02 |
| 01/09/2015 | (230.00) | 2,489,227.02 |
| 01/12/2015 | (200.00) | 2,489,027.02 |
| 01/15/2015 | (15.00) | 2,489,012.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Transfers Between Ace Museum and Ace Gallery New York

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---|---|
| 01/16/2015 | 173,000.00 | 2,662,012.02 |
| 01/16/2015 | 15,000.00 | 2,677,012.02 |
| 01/21/2015 | 70,000.00 | 2,747,012.02 |
| 02/03/2015 | (10,000.00) | 2,737,012.02 |
| 02/12/2015 | (30,000.00) | 2,707,012.02 |
| 02/18/2015 | 100,000.00 | 2,807,012.02 |
| 02/18/2015 | 10,000.00 | 2,817,012.02 |
| 02/18/2015 | 3,000.00 | 2,820,012.02 |
| 03/09/2015 | (50.00) | 2,819,962.02 |
| 03/09/2015 | (29,700.00) | 2,790,262.02 |
| 03/10/2015 | (200.00) | 2,790,062.02 |
| 03/11/2015 | (250.00) | 2,789,812.02 |
| 03/11/2015 | (260.00) | 2,789,552.02 |
| 03/19/2015 | 228,000.00 | 3,017,552.02 |
| 03/19/2015 | 5,000.00 | 3,022,552.02 |
| 03/30/2015 | (5,000.00) | 3,017,552.02 |
| 03/31/2015 | (100.00) | 3,017,452.02 |
| 04/08/2015 | (2,600.00) | 3,014,852.02 |
| 04/24/2015 | 229,000.00 | 3,243,852.02 |
| 05/05/2015 | (5,000.00) | 3,238,852.02 |
| 05/05/2015 | (10,000.00) | 3,228,852.02 |
| 05/06/2015 | (1,000.00) | 3,227,852.02 |
| 05/14/2015 | (3,000.00) | 3,224,852.02 |
| 05/18/2015 | 160,000.00 | 3,384,852.02 |
| 05/21/2015 | 66,600.00 | 3,451,452.02 |
| 05/22/2015 | (800.00) | 3,450,652.02 |
| 06/08/2015 | (6,000.00) | 3,444,652.02 |
| 06/29/2015 | (5,000.00) | 3,439,652.02 |
| 07/01/2015 | (5,000.00) | 3,434,652.02 |
| 07/03/2015 | (16,000.00) | 3,418,652.02 |
| 07/21/2015 | 150,000.00 | 3,568,652.02 |
| 07/23/2015 | 2,000.00 | 3,570,652.02 |
| 07/29/2015 | 40,000.00 | 3,610,652.02 |
| 08/03/2015 | 14,180.00 | 3,624,832.02 |
| 08/06/2015 | (33,000.00) | 3,591,832.02 |
| 08/20/2015 | (600.00) | 3,591,232.02 |
| 08/20/2015 | (1,000.00) | 3,590,232.02 |
| 09/02/2015 | (2,000.00) | 3,588,232.02 |
| 09/02/2015 | (30,000.00) | 3,558,232.02 |
| 09/23/2015 | (300.00) | 3,557,932.02 |
| 09/29/2015 | (200.00) | 3,557,732.02 |
| 09/30/2015 | 234,000.00 | 3,791,732.02 |
| 10/01/2015 | (600.00) | 3,791,132.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Transfers Between Ace Museum and Ace Gallery New York

| Date | Ace Museum Transfers In From (Out To) New York | Cumulative Balance |
|---|---:|---:|
| 10/02/2015 | (2,500.00) | 3,788,632.02 |
| 10/05/2015 | 200,000.00 | 3,988,632.02 |
| 10/19/2015 | 26,000.00 | 4,014,632.02 |
| 10/26/2015 | 3,000.00 | 4,017,632.02 |
| 11/04/2015 | 190,000.00 | 4,207,632.02 |
| 12/14/2015 | 112,000.00 | 4,319,632.02 |
| 01/14/2016 | 26,000.00 | 4,345,632.02 |
| 01/25/2016 | 60,000.00 | 4,405,632.02 |
| 01/29/2016 | 170,000.00 | 4,575,632.02 |
| 02/03/2016 | 10,000.00 | 4,585,632.02 |
| 02/22/2016 | 2,400.00 | 4,588,032.02 |
| 02/26/2016 | 73,000.00 | 4,661,032.02 |
| 02/29/2016 | 75,000.00 | 4,736,032.02 |
| 03/07/2016 | 1,300.00 | 4,737,332.02 |
| 03/16/2016 | 1,000.00 | 4,738,332.02 |
| 03/17/2016 | 1,000.00 | 4,739,332.02 |
| 03/21/2016 | 5,000.00 | 4,744,332.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit J

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

WIRE TRANSFERS

| Bank ID | Debit Account | Debit Party Name | Credit Account | Credit Party Name | Originator | Beneficiary | Tran Date | Tran Num | Amount |
|---|---|---|---|---|---|---|---|---|---|
| CNB | D/123206347 | ACE MUSEUM | [redacted] | BANK OF CHINA | | YU PENG | 20100528 | 6133 | 5455.4 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110606 | 2260 | 126000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110715 | 7447 | 110000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110729 | 9008 | 31000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110802 | 4124 | 1000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110803 | 5298 | 116000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20111117 | 2533 | 3500 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20111201 | 8082 | 10000 |
| CNB | [redacted] | WELLS FARGO BANK | D/123206347 | ACE MUSEUM | MOVE ON CIVC ACTION GENERAL ACCOUNT | | 20120222 | 4323 | 17500 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20120302 | 5717 | 125000 |
| CNB | [redacted] | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | THE HAPSMITH CO. | | 20120302 | 3247 | 97000 |
| CNB | [redacted] | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | HAPSMITH COMPANY, THE | | 20120302 | 3227 | 28000 |
| CNB | [redacted] | SILICON VALLEY BANK | D/123206347 | ACE MUSEUM | SAY MEDIA INC | | 20120615 | 8074 | 8750 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. LA BREA LLC | 20120705 | 6752 | 125000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20120905 | 6033 | 125000 |
| CNB | [redacted] | THE VISIONARY GROUP, LLC | D/123206347 | ACE MUSEUM | | | 20130111 | 5254 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130131 | 6228 | 100000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130220 | 5650 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | WELLS FARGO BANK | | Ace Gallery New York | 20130222 | 7446 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130311 | 3869 | 137500 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130311 | 839 | 8982 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130320 | 952 | 8982 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130320 | 2410 | 8982 |
| CNB | [redacted] | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20130402 | 4712 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130408 | 2065 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130408 | 4262 | 20000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20130411 | 498 | 79982 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130411 | 1849 | 78000 |
| CNB | [redacted] | AMERICAN SECURITY BANK | D/123206347 | ACE MUSEUM | HOMESTEAD ESCROW A CALIFORNIA CORP. | | 20130412 | 7354 | 125000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130412 | 7675 | 75000 |
| CNB | [redacted] | AMERICAN SECURITY BANK | D/123206347 | ACE MUSEUM | HOMESTEAD ESCROW A CALIFORNIA CORP. | | 20130412 | 7316 | 6880.45 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130417 | 6595 | 136975.2 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130417 | 5010 | 30000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130417 | 7041 | 5000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130419 | 5359 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130419 | 1846 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130423 | 6858 | 22000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130521 | 5540 | 138174.5 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130606 | 4271 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130705 | 6321 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130722 | 4282 | 15000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130726 | 3681 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130806 | 4747 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130806 | 4748 | 15000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130909 | 5793 | 68000 |
| CNB | [redacted] | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20130913 | 6084 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20131024 | 2188 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131107 | 1678 | 9000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20131114 | 2285 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131114 | 2426 | 45000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131121 | 2291 | 5000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131122 | 1826 | 7500 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20131126 | 2338 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131203 | 1738 | 85000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131204 | 1769 | 5187.02 |

CNB 000350

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CNB | | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | GENNADIY IOSIFOVICH MENDELSON | | 20131212 | 6729 | 50000 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20131213 | 3473 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | | UNION BANK OF CALIFORNIA | | Gennadiy Mendelson | 20131213 | 3178 | 50000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131213 | 3541 | 16000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131217 | 1724 | 550 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131219 | 4792 | 22800 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131220 | 4341 | 4000 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20140117 | 4709 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140128 | 2025 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140218 | 3349 | 5000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140219 | 6509 | 13000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140304 | 5102 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140312 | 2489 | 6000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140317 | 7065 | 5000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140318 | 3389 | 1000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140324 | 141 | 15800 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140408 | 5652 | 3600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140410 | 84 | 2500 |
| CNB | | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20140421 | 2472 | 80000 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20140423 | 1742 | 165000 |
| CNB | | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140423 | 433 | 84980 |
| CNB | | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140512 | 6950 | 84980 |
| CNB | | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140514 | 4673 | 74980 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20140528 | 4207 | 234001.2 |
| CNB | | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140530 | 11860 | 99980 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140606 | 8193 | 44000 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20140617 | 4848 | 226600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140708 | 89 | 22000 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20140718 | 6046 | 226600 |
| CNB | | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MORGAN STANLEY DEAN WITTER BAN 1585 | | 20140718 | 5468 | 175000 |
| CNB | | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20140718 | 3707 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140721 | 2273 | 46000 |
| CNB | D/123206347 | ACE MUSEUM | | CITIZENS BUSINESS BANK | | HELEN PASHGIAN | 20140725 | 3107 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140805 | 6947 | 13000 |
| CNB | | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20140818 | 5718 | 60000 |
| CNB | | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20140820 | 5941 | 134980 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20140821 | 3359 | 226600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140825 | 3804 | 15000 |
| CNB | D/123206347 | ACE MUSEUM | D/123722337 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140826 | 3103 | 6000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140905 | 3640 | 8000 |
| CNB | | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20140919 | 2628 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140919 | 4130 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140923 | 68 | 500 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141006 | 111 | 6000 |
| CNB | | FIRST REPUBLIC BANK | D/123206347 | ACE MUSEUM | PETER D BOASBERG | | 20141021 | 2906 | 160000 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20141022 | 3413 | 175000 |
| CNB | | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20141023 | 4013 | 51980 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20141023 | 4075 | 51600 |
| CNB | | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | ELIZABETH CHADDOCK KELLEN TTEE | | 20141023 | 4421 | 3800 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141023 | 4895 | 3300 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141023 | 147 | 400 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141104 | 2210 | 2000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141105 | 80 | 2300 |
| CNB | | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20141120 | 4786 | 179980 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141120 | 6117 | 176000 |
| CNB | | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20141124 | 6302 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20141124 | 6667 | 100000 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit K

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

CHARLES FINE ACE LOS ANGELES CONSIGNMENT

| Description / Inventory # | | Image | Fair Mkt. Value |
|---|---|---|---|
| *TABLE OF CONTENTS,* 2012<br>STEEL, CEMENT, GLASS AND VARIOUS OBJECTS, UNIQUE<br>51-3/4" (H) X 63-1/4" (W) X 66-1/2" (D) | 1 | | $200,000 |
| *GENERATED SEQUENCE, 2004*<br>ALUMINUM<br>52" X 40" X 15"<br>EDITION OF 1 of 3 | 2 | | $72,000 |
| *GENERATED SEQUENCE, 2004*<br>ALUMINUM<br>52" X 40" X 15"<br>EDITION OF 2 of 3 | 3 | | $72,000 |
| *GENERATED SEQUENCE, 2004*<br>ALUMINUM<br>52" X 40" X 15"<br>EDITION OF 3 of 3 | 4 | | $72,000 |
| *UNTITLED, 2* 006<br>BRONZE MAQUETTE<br>20" X 10-1/2" X 12-1/2" | 5 | | $56,000 |
| *FLOWER (PETRALIZED)*, 2010-2012<br>CERAMIC, CEMENT, PIGMENT<br>26" (H) X 14" (W) X 14" (D) ENCASED | 6 | | $60,000 |
| *FLOR DE INCINO,* 2012<br>PATINATED ALUMINUM<br>44" (H) X 31" (W) X 14" (D) | 7 | | $72,000 |
| *PARALLEL HISTORY I, (MAQUETTE)* 2005<br>8 BRONZE OBJECTS ON PLASTER BASE<br>22-1/2" X 30" X 7" | 8 | | $100,000 |
| *FOSSIL WEATHER,* 2001<br>OIL, ASPHALTUM, ALKYD RESIN ON CANVAS<br>58.5" X 48.5" | 9 | | $36,000 |
| *UNTITLED (PINK),* 2003<br>OIL, ASPHALTUM, ALKYD RESIN ON CANVAS<br>60" X 48" | 10 | | $36,000 |

HIGHLY CONFIDENTIAL - PROFESSIONAL EYES ONLY

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit L

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY NEW YORK

5514 WILSHIRE BOULEVARD ·11TH FLOOR
LOS ANGELES · CALIFORNIA · 90036 · TEL 323.935.0088

## BILL OF SALE

MOGUL
THOMAS PISCITELLO / NEAL WAGNER
8262 MELROSE AVENUE
LOS ANGELES, CA 90046
T: (323) 658-5130; F: (323) 658-5120
THOMAS@MOGULLIFE.COM; NEAL@MOGULLIFE.COM

JULY 30, 2013

PAGE 1 OF 1

MOGUL IS PURCHASING THE FOLLOWING WORKS OF ART FROM ACE GALLERY LOS ANGELES:

ARTIST: BERNAR VENET
TITLE: *INDETERMINED LINE,* 1990
MEDIUM: OIL STICK ON PAPER
SIZE: 59 ½" (H) X 71" (W)
PRICE: $125,000.00

ARTIST: CHARLES FINE
TITLE: *FLOR DE INCINO,* 2012
MEDIUM: PATINAED ALUMINUM
SIZE: 44" (H) X 31" (W) X 14" (D)
PRICE: $90,000.00

| | |
|---|---|
| SUBTOTAL: | $215,000.00 |
| LESS: 20% DISCOUNT FOR PAYMENT UPON RECEIPT OF INVOICE | -$43,000.00 |
| NO SALES TAX (RESALE NUMBER ON FILE) | |
| TOTAL AMOUNT DUE UPON RECEIPT OF INVOICE: | $172,000.00 |

DOUGLAS CHRISMAS
DIRECTOR AND CHIEF CURATOR

DATE July 20/13

INVOICE # 2022
DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICIT
ARTWORK. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORKS PASSES TC
PAYMENT IN FULL.

PAID 8/1/13
$ 172,000

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION UNLESS STATED OTHERWISE IN THE BODY AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, I OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER I AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEG THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TR ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSI FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHE NOTIFIED IN WRITING BEFORE SUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit M

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

MOGUL ENTERPRISES LLC
8262 MELROSE AVE
LOS ANGELES CA 90046-6821

6795

11-35 1210 CA
Dep 3 - 304

DATE 8/2/13

PAY TO THE ORDER OF Ace Gallery $ 172,000 00/100

One hundred seventy two thousand DOLLARS

Bank of America

ACH R/T 121000358

FOR

Thomas Pascitello MP

City National Bank

CHECKING DEPOSIT

| Branch | Teller | Date | Time |
|---|---|---|---|
| 11 | 5 | 08/02/13 | 05:25 PM |

Account Number
XXXXXXX0229

Deposit Amount: $172,000.00

Thank you for choosing City National
TR:94

A hold for uncollected funds may be placed on funds deposited by check or similar instrument. This could delay your ability to withdraw funds. The delay, if any, would not exceed the period of time permitted by law. You will be notified by mail if a hold is placed on you deposit. Questions regarding our uncollected funds hold policy, may be referred to a branch officer.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Page 1 (18)

**CITY NATIONAL BANK**
The way up.

Account #: 123720229

This statement: August 30, 2013
Last statement: July 31, 2013

001 0830L
ACE GALLERY NEW YORK CORPORATION
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

WITH BUSINESS ONLINE FOR MOBILE AND TREASURY NET FOR MOBILE YOU NOW HAVE SECURE, INSTANT ACCESS TO KEY BUSINESS BANKING SERVICES FROM YOUR MOBILE PHONE BROWSER. LEARN MORE AT CNB.COM/BUSINESSMOBILE.

## Business Elite Checking

**Account Summary**

| | |
|---|---|
| Account number | 123720229 |
| Minimum balance | $136.96 |
| Average balance | $25,420.75 |
| Avg. collected balance | $8,220.00 |

**Account Activity**

| | | | |
|---|---|---|---|
| Beginning balance (7/31/2013) | | | $1,360.77 |
| Credits | Deposits (2) | + 176,000.00 | |
| | Electronic cr (1) | + 10,000.00 | |
| | Other credits (1) | + 2,000.00 | |
| | Total credits | | + $188,000.00 |
| Debits | Checks paid (18) | - 19,557.99 | |
| | Electronic db (8) | - 4,602.82 | |
| | Other debits (6) | - 165,119.00 | |
| | Total debits | | - $189,279.81 |
| Ending balance (8/30/2013) | | | $80.96 |

### DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-2 | Deposit | | 172,000.00 |
| 8-30 | Deposit | | 4,000.00 |

### ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 8-26 | Incoming Wire-Dom | 10,000.00 |

### OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-21 | Account Transfer Cr. FR ACC 00123206347 | | 2,000.00 |

### CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1068 | 8-13 | 750.00 | 1126 | 8-13 | 1,500.00 | 1130 | 8-19 | 207.46 | 1134 | 8-27 | 5,650.71 |
| 1121 * | 8-19 | 560.00 | 1127 | 8-9 | 227.37 | 1131 | 8-14 | 400.00 | 1135 | 8-29 | 2,000.00 |
| 1124 * | 8-5 | 1,200.00 | 1128 | 8-9 | 250.00 | 1132 | 8-22 | 200.00 | 1136 | 8-28 | 53.40 |
| 1125 | 8 7 | 200.00 | 1129 | 8-13 | 159.05 | 1133 | 8-29 | 500.00 | 1137 | 8-30 | 1,200.00 |

EXHIBIT A - 45

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit N

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

ACE GALLERY NEW YORK CORPORATION
August 30, 2013

Page 2
Account #: 123720229

**CHECKS PAID (Continued)**

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1138 | 8-30 | 4,000.00 | 1515 * | 8-22 | 500.00 | * Skip in check sequence | | | | | |

**ELECTRONIC DEBITS**

| Date | Description | Debits |
|---|---|---|
| 8-8 | Preauthorized Debit CHASE EPAY 130808 | 500.00 |
| 8-9 | Preauthorized Debit CAPITAL ONE ONLINE PMT 130808 322039919006688 | 500.00 |
| 8-9 | Preauthorized Debit CAPITAL ONE ONLINE PMT 130808 322039919006689 | 500.00 |
| 8-9 | Preauthorized Debit CAPITAL ONE ONLINE PMT 130808 322039919006690 | 500.00 |
| 8-9 | Preauthorized Debit CAPITAL ONE ONLINE PMT 130808 322039919006691 | 500.00 |
| 8-14 | Preauthorized Debit ATT PAYMENT 130814 579821003IVRDU | 102.82 |
| 8-22 | Preauthorized Debit CHASE EPAY 130822 | 1,000.00 |
| 8-28 | Preauthorized Debit CHASE EPAY 130828 | 1,000.00 |

**OTHER DEBITS**

| Date | Description | Reference | Debits |
|---|---|---|---|
| 8-6 | Account Transfer Dr. TO ACC 00123206347 | | 165,000.00 |
| 8-16 | Monthly Service Chg TNET FOR BB ELITE WIRE MAINT FOR 07/13 | | 50.00 |
| 8-26 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 8-30 | Service Charge ENHANCED IMAGE STM | | 3.00 |
| 8-30 | Service Charge BUS PACKAGE FEE | | 50.00 |
| 30 | Maintenance Fee | | 3.00 |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|---|---|
| 7-31 | 1,360.77 | 8-8 | 6,460.77 | 8-19 | 254.07 | 8-28 | 3,836.96 |
| 8-2 | 173,360.77 | 8-9 | 3,983.40 | 8-21 | 2,254.07 | 8-29 | 1,336.96 |
| 8-5 | 172,160.77 | 8-13 | 1,574.35 | 8-22 | 554.07 | 8-30 | 80.96 |
| 8-6 | 7,160.77 | 8-14 | 1,071.53 | 8-26 | 10,541.07 | | |
| 8-7 | 6,960.77 | 8-16 | 1,021.53 | 8-27 | 4,890.36 | | |

Thank you for banking with City National Bank

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**CITY NATIONAL BANK**
The way up.

Page 1 (17)

Account #: 123206347

This statement: August 30, 2013
Last statement: July 31, 2013

0830L

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001
ACE MUSEUM
5514 WILSHIRE BLVD
LOS ANGELES CA 90036

WITH BUSINESS ONLINE FOR MOBILE AND TREASURY NET FOR MOBILE YOU NOW HAVE SECURE, INSTANT ACCESS TO KEY BUSINESS BANKING SERVICES FROM YOUR MOBILE PHONE BROWSER. LEARN MORE AT CNB.COM/BUSINESSMOBILE.

## Non-Profit Checking Account

**Account Summary**

| | |
|---|---|
| Account number | 123206347 |
| Minimum balance | $522.36 |
| Average balance | $3,954.25 |
| Avg. collected balance | $3,247.00 |

**Account Activity**

| | | | |
|---|---|---|---|
| Beginning balance (7/31/2013) | | | $1,855.22 |
| Credits | Deposits (3) | + 11,800.00 | |
| | Electronic cr (0) | + 0.00 | |
| | Other credits (1) | + 165,000.00 | |
| | Total credits | | + $176,800.00 |
| Debits | Checks paid (17) | - 9,031.08 | |
| | Electronic db (2) | - 165,000.00 | |
| | Other debits (3) | - 2,014.00 | |
| | Total debits | | - $176,045.08 |
| Ending balance (8/30/2013) | | | $2,610.14 |

### DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-1 | Deposit | | 6,600.00 |
| 8-16 | Deposit | | 2,500.00 |
| 8-27 | Deposit | | 2,700.00 |

### OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-6 | Account Transfer Cr. FR ACC 0012370228 | | 165,000.00 |

### CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2479 | 8-12 | 223.32 | 2485 | 8-16 | 700.00 | 2490 | 8-19 | 47.53 | 2495 | 8-21 | 1,492.58 |
| 2481 * | 8-6 | 961.97 | 2486 | 8-7 | 935.71 | 2491 | 8-20 | 31.65 | 2497 * | 8-30 | 297.53 |
| 2482 | 8-8 | 685.13 | 2487 | 8-8 | 527.78 | 2492 | 8-27 | 198.50 | * Skip in check sequence | | |
| 2483 | 8-27 | 25.00 | 2488 | 8-14 | 274.93 | 2493 | 8-29 | 91.19 | | | |
| 2484 | 8-5 | 1,470.40 | 2489 | 8-14 | 574.17 | 2494 | 8-23 | 493.69 | | | |

EXHIBIT U - 328

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit O

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**ACE MUSEUM**
**August 30, 2013**

**Page 2**
**Account #: 123206347**

**ELECTRONIC DEBITS**

| Date | Description | Debits |
|---|---|---|
| 8-6 | Tnet Wire Out-Dom | 150,000.00 |
| 8-6 | Wire Tsfr Debit | 15,000.00 |

**OTHER DEBITS**

| Date | Description | Reference | Debits |
|---|---|---|---|
| 8-6 | Service Charge TNET WIRE OUT-DOM | | 10.00 |
| 8-6 | Service Charge WIRE TSFR DEBIT | | 4.00 |
| 8-21 | Account Transfer Dr. TO ACC 00123720229 | | 2,000.00 |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|---|---|
| 7-31 | 1,855.22 | 8-7 | 5,073.14 | 8-16 | 4,587.81 | 8-23 | 522.36 |
| 8-1 | 8,456.22 | 8-8 | 3,860.23 | 8-19 | 4,540.28 | 8-27 | 2,998.86 |
| 8-5 | 6,984.82 | 8-12 | 3,636.91 | 8-20 | 4,508.63 | 8-29 | 2,907.67 |
| 8-6 | 6,008.86 | 8-14 | 2,787.81 | 8-21 | 1,016.05 | 8-30 | 2,610.14 |

Thank you for banking with City National Bank

EXHIBIT U - 329

USAO_00014290

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit P

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

WIRE TRANSFERS

| Bank ID | Debit Account | Debit Party Name | Credit Account | Credit Party Name | Originator | Beneficiary | Tran Date | Tran Num | Amount |
|---|---|---|---|---|---|---|---|---|---|
| CNB | D/123206347 | ACE MUSEUM | [redacted] | BANK OF CHINA | | YU PENG | 20100528 | 6133 | 5455.4 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110606 | 2260 | 126000 |
| CNB | D/113210176· | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110715 | 7447 | 110000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110729 | 9008 | 31000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110802 | 4124 | 1000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110803 | 5298 | 116000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20111117 | 2533 | 3500 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20111201 | 8082 | 10000 |
| CNB | [redacted] | WELLS FARGO BANK | D/123206347 | ACE MUSEUM | MOVE ON CIVC ACTION GENERAL ACCOUNT | | 20120222 | 4323 | 17500 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20120302 | 5717 | 125000 |
| CNB | [redacted] | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | THE HAPSMITH CO. | | 20120302 | 3247 | 97000 |
| CNB | [redacted] | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | HAPSMITH COMPANY, THE | | 20120302 | 3227 | 28000 |
| CNB | [redacted] | SILICON VALLEY BANK | D/123206347 | ACE MUSEUM | SAY MEDIA INC | | 20120615 | 8074 | 8750 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. LA BREA LLC | 20120705 | 6752 | 125000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20120905 | 6033 | 125000 |
| CNB | [redacted] | THE VISIONARY GROUP, LLC | D/123206347 | ACE MUSEUM | | | 20130111 | 5254 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130131 | 6228 | 100000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130220 | 5650 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | WELLS FARGO BANK | | Ace Gallery New York | 20130222 | 7446 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130311 | 3869 | 137500 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130311 | 839 | 8982 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130320 | 952 | 8982 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130320 | 2410 | 8982 |
| CNB | [redacted] | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20130402 | 4712 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130408 | 2065 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130408 | 4262 | 20000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20130411 | 498 | 79982 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130411 | 1849 | 78000 |
| CNB | [redacted] | AMERICAN SECURITY BANK | D/123206347 | ACE MUSEUM | HOMESTEAD ESCROW A CALIFORNIA CORP. | | 20130412 | 7354 | 125000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130412 | 7675 | 75000 |
| CNB | [redacted] | AMERICAN SECURITY BANK | D/123206347 | ACE MUSEUM | HOMESTEAD ESCROW A CALIFORNIA CORP. | | 20130412 | 7316 | 6880.45 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130417 | 6595 | 136975.2 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130417 | 5010 | 30000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130417 | 7041 | 5000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130419 | 5359 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130419 | 1846 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130423 | 6858 | 22000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130521 | 5540 | 138174.5 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130606 | 4271 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130705 | 6321 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130722 | 4282 | 15000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130726 | 3681 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130806 | 4747 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130806 | 4748 | 15000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130909 | 5793 | 68000 |
| CNB | [redacted] | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20130913 | 6084 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | | CATHAY BANK | | 400 S. La Brea LLC | 20131024 | 2188 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131107 | 1678 | 9000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20131114 | 2285 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131114 | 2426 | 45000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131121 | 2291 | 5000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131122 | 1826 | 7500 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20131126 | 2338 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131203 | 1738 | 85000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131204 | 1769 | 5187.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**400 S LA BREA LLC**
910 Broadway, Suite 110
Santa Monica, CA 90401

**Statement**

**Account** 400 acemuse ACE MUSEUM
**Prop Name** 400 S LA BREA, LLC
**Assigned Spaces**

Douglas Chrismas
ACE MUSEUM
5514 Wilshire Blvd.
Los Angeles, CA 90036

**Date** 09/20/2017
**Payment** $ ____________

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 02/08/2013 | ACH | 0.00 | 25,000.00 | 433,084.19 |
| 02/19/2013 | Legal Fees (Shabani & Shabani 02/2013) | 1,146.00 | 0.00 | 434,230.19 |
| 02/21/2013 | Chk# 30302584 - :CHECKscan Payment | 0.00 | 137,500.00 | 296,730.19 |
| 03/01/2013 | ach | 0.00 | 137,525.00 | 159,205.19 |
| 03/01/2013 | Base Rent Commercial (03/2013) | 125,000.00 | 0.00 | 284,205.19 |
| 03/06/2013 | Late Fee, 10% of $125000.00 | 12,500.00 | 0.00 | 296,705.19 |
| 03/11/2013 | Chk#ACH | 0.00 | 137,500.00 | 159,205.19 |
| 03/25/2013 | Chk# 0060900660 | 0.00 | 48,000.00 | 111,205.19 |
| 03/25/2013 | Chk# 30302669 | 0.00 | 104,660.00 | 6,545.19 |
| 04/01/2013 | Base Rent Commercial (04/2013) | 125,000.00 | 0.00 | 131,545.19 |
| 04/05/2013 | Insurance Premium (04/05/2013 - 04/05/2014) | 5,430.00 | 0.00 | 136,975.19 |
| 04/06/2013 | Late Fee, 10% of $125000.00 | 12,500.00 | 0.00 | 149,475.19 |
| 04/08/2013 | Penalty:2012-1st installment Property tax (Parcel#5507- | 239.67 | 0.00 | 149,714.86 |
| 04/08/2013 | Penalty:2012-1st Installment tax (Parcel#5507-009-023) | 87.58 | 0.00 | 149,802.44 |
| 04/17/2013 | ACH | 0.00 | 136,975.19 | 12,827.25 |
| 04/18/2013 | Penalty:2012-2nd Installment Property tax (Parcel#5507- | 249.67 | 0.00 | 13,076.92 |
| 04/18/2013 | Penalty:2012-2nd installment Property tax (Parcel#5507- | 97.58 | 0.00 | 13,174.50 |
| 05/01/2013 | Base Rent Commercial (05/2013) | 200,000.00 | 0.00 | 213,174.50 |
| 05/06/2013 | Late Fee, 10% of $200000.00 | 20,000.00 | 0.00 | 233,174.50 |
| 05/21/2013 | ACH | 0.00 | 138,174.50 | 95,000.00 |
| 06/01/2013 | Base Rent Commercial (06/2013) | 200,000.00 | 0.00 | 295,000.00 |
| 06/06/2013 | ACH | 0.00 | 150,000.00 | 145,000.00 |
| 06/06/2013 | Late Fee, 10% of $50,000.00 | 5,000.00 | 0.00 | 150,000.00 |
| 07/01/2013 | Base Rent Commercial (07/2013) | 200,000.00 | 0.00 | 350,000.00 |
| 07/05/2013 | ACH | 0.00 | 150,000.00 | 200,000.00 |
| 07/05/2013 | Chk# 002471 - :CHECKscan Payment | 0.00 | 40,000.00 | 160,000.00 |
| 07/06/2013 | Late Fee, 10% of $10,000.00 | 1,000.00 | 0.00 | 161,000.00 |
| 08/01/2013 | Base Rent Commercial (08/2013) | 200,000.00 | 0.00 | 361,000.00 |
| 08/06/2013 | ACH | 0.00 | 150,000.00 | 211,000.00 |
| 08/06/2013 | Late Fee, 10% of $50,000.00 | 5,000.00 | 0.00 | 216,000.00 |
| 09/01/2013 | Base Rent Commercial (09/2013) | 200,000.00 | 0.00 | 416,000.00 |
| 09/07/2013 | Late Fee Late Fee, 10% of $200000.00 | 20,000.00 | 0.00 | 436,000.00 |
| 09/18/2013 | Chk# 30353476 - :CHECKscan Payment | 0.00 | 165,000.00 | 271,000.00 |
| 10/01/2013 | Base Rent Commercial (10/2013) | 200,000.00 | 0.00 | 471,000.00 |
| 10/07/2013 | Late Fee Late Fee, 10% of $200,000.00 | 20,000.00 | 0.00 | 491,000.00 |
| 10/24/2013 | ACH | 0.00 | 165,000.00 | 326,000.00 |
| 11/01/2013 | Base Rent Commercial (11/2013) | 200,000.00 | 0.00 | 526,000.00 |
| 11/06/2013 | Late Fee Late Fee, 10% of $200,000.00 | 20,000.00 | 0.00 | 546,000.00 |
| 11/26/2013 | ACH | 0.00 | 165,000.00 | 381,000.00 |
| 12/01/2013 | Base Rent Commercial (12/2013) | 200,000.00 | 0.00 | 581,000.00 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 2,427,148.02 | 2,427,148.02 |

400 SLB 003352

EXHIBIT X - 488

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**CITY NATIONAL BANK**
The way up.

Page 1 (80) A&A-71

Account #: 123718402

This statement: August 30, 2013
Last statement: July 31, 2013

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001 0830K
ART AND ARCHITECTURE BOOKS OF THE 21ST
CENTURY DBA ACE GALLERY (GENERAL ACCT)
DIP CASE NO. 2:13-BK-14135-RK
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

WITH BUSINESS ONLINE FOR MOBILE AND TREASURY NET FOR MOBILE YOU NOW HAVE SECURE, INSTANT ACCESS TO KEY BUSINESS BANKING SERVICES FROM YOUR MOBILE PHONE BROWSER. LEARN MORE AT CNB.COM/BUSINESSMOBILE.

## Checking Account

**Account Summary**

| | |
|---|---|
| Account number | 123718402 |
| Minimum balance | $3,701.06 |
| Average balance | $101,339.28 |
| Avg. collected balance | $100,777.00 |

**Account Activity**

| | | | |
|---|---|---|---|
| Beginning balance (7/31/2013) | | | $4,182.62 |
| Credits | Deposits (10) | + 7,067.34 | |
| | Electronic cr (11) | + 939,765.00 | |
| | Other credits (2) | + 87,108.09 | |
| | Total credits | | + $1,033,940.43 |
| Debits | Checks paid (80) | - 356,570.34 | |
| | Electronic db (12) | - 515,315.59 | |
| | Other debits (30) | - 53,320.00 | |
| | Total debits | | - $925,205.93 |
| Ending balance (8/30/2013) | | | $112,917.12 |

## DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-1 | Deposit | | 91.00 |
| 8-1 | Deposit | | 120.00 |
| 8-2 | Deposit | | 500 00 |
| 8-2 | Deposit | | 3,760.00 |
| 8-14 | Deposit | | 161.00 |
| 8-14 | Deposit | | 669.18 |
| 8-16 | Deposit | | 27.00 |
| 8-16 | Deposit | | 1,020.00 |
| 8-27 | Deposit | | 181.00 |
| 8-27 | Deposit | | 538.16 |

## ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 8-5 | Preauthorized Credit NPC MERCH PYMT PROC 130805 0012677845 | 100.00 |
| 8-5 | Preauthorized Credit NPC MERCH PYMT PROC 130805 0012677845 | 100.00 |
| 8-6 | Wire Tsfr Credit | 15,000.00 |
| 8-8 | Incoming Wire-Dom | 179,980.00 |
| 8-12 | Incoming Wire-Dom | 28,965.00 |
| 8-12 | Incoming Wire-Dom | 500,000.00 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit Q

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**From:** Ace Gallery Accounting
**To:** mrosedale@monrovia.com
**Cc:** Jennifer D Kellen
**Subject:** Invoice 2055
**Date:** Tuesday, August 05, 2014 12:01:59 PM
**Attachments:** Invoice 2055.pdf
Untitled attachment 00084.htm
ACE GALLERY NEW YORK - WIRE INSTRUCTIONS.pdf
Untitled attachment 00087.htm

---

Miles,

In case you do not have it on hand, please find the invoice attached to this email as well.

Sincerely,
Lauren

CONTROLLER
ACE GALLERY LOS ANGELES
5514 WILSHIRE BOULEVARD
LOS ANGELES, CALIFORNIA 90036
T. 323.935.4824
accounting@acegallery.net

Begin forwarded message:

**From:** Ace Gallery Accounting <accounting@acegallery.net>
**Date:** August 5, 2014 11:52:21 AM PDT
**To:** mrosedale@monrovia.com
**Cc:** Jennifer D Kellen <JENNIFERKELLEN@ACEGALLERY.NET>

Miles,

Attached are wire instructions for making payment today on Helen Pashgian's Disc.
Once issued could you please provide me with the wire confirmation so that I may trace payment.

Sincerely,
Lauren Gullotta

CONTROLLER
ACE GALLERY LOS ANGELES

5514 WILSHIRE BOULEVARD
LOS ANGELES, CALIFORNIA 90036
T. 323.935.4824
accounting@acegallery.net

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY

5514 WILSHIRE BOULEVARD ·11TH FLOOR
LOS ANGELES · CALIFORNIA · 90036 · TEL 323.935.0088

## BILL OF SALE

MARCY MILLER & MILES ROSEDALE
BALTIMORE, MD

AUGUST 1, 2014
PAGE 1 OF 1

MARCY MILLER & MILES ROSEDALE ARE PURCHASING THE FOLLOWING WORK OF ART FROM ACE GALLERY:

| | | |
|---|---|---|
| ARTIST: | HELEN PASHGIAN | |
| TITLE: | *UNTITLED (DISC)*, 2014 | |
| MEDIUM: | RESIN | |
| SIZE: | 60"(DIAMETER)<br>BASE: 36"(H) X 30"(W) X 30"(D) | |
| PRICE: | | $250,000.00 |

| | |
|---|---|
| 20% DISCOUNT FOR IMMEDIATE PAYMENT: | -$50,000.00 |
| NO CA SALES TAX, TO BE SHIPPED OUT OF STATE | |
| TOTAL DUE UPON RECEIPT OF INVOICE: | $200,000.00 |

*PLEASE NOTE CRATING, SHIPPING AND INSURANCE ARE ADDITIONAL

(WIRING INSTRUCTIONS ATTACHED)

**PLEASE SUPPLY THE FEDERAL REFERENCE NUMBER OF ALL WIRES TO ACCOUNTING@ACEGALLERY.NET SO THAT PAYMENT MAY BE TRACED IF NECESSARY.

[signature] Aug 1/14
DOUGLAS CHRISMAS DATE
DIRECTOR AND CHIEF CURATOR

INVOICE #2055
CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION UNLESS STATED OTHERWISE IN THE BODY OF THE INVOICE ABOVE. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY LOS ANGELES UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. PURCHASER AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID. ANY DEPOSIT BE RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHES TO RESELL THE ARTWORK, ACE GALLERY MUST BE NOTIFIED IN WRITING BEFORESUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY NEW YORK

5514 WILSHIRE BOULEVARD ·11TH FLOOR
LOS ANGELES · CALIFORNIA · 90036 · TEL 323.935.0088

INVOICE PAYMENT INSTRUCTIONS:

PLEASE WIRE FUNDS TO THE FOLLOWING ACCOUNT:

**PLEASE, NOTE OUR NEW ACCOUNT NUMBER:**

ACE GALLERY NEW YORK
ACCT #: 123-720-229
CITY NATIONAL BANK
400 NORTH ROXBURY DRIVE
BEVERLY HILLS, CA 90210 USA
ABA#: 122016066
SWIFT #: CINAUS6L

PLEASE EMAIL BANK WIRE CONFIRMATION TO ACCOUNTING@ACEGALLERY.NET FOR THE ABILITY OF TRACING FUNDS IF NECESSARY.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit R

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

X. BALANCE SHEET
(ACCRUAL BASIS ONLY)

| ASSETS | Current Month End | |
|---|---|---|
| Current Assets: | | |
| Unrestricted Cash | 147,738.22 | |
| Restricted Cash | 140.77 | |
| Accounts Receivable | 318,990.61 | |
| Inventory (Will be updated in June) | 3,366,374.23 | |
| Notes Receivable | 4,256,971.82 | |
| Prepaid Expenses | | |
| Other (Itemize)- | | |
| Total Current Assets | | 8,090,215.65 |
| Property, Plant, and Equipment | 609,006.79 | |
| Accumulated Depreciation/Depletion | (227,044.00) | |
| Net Property, Plant, and Equipment | | 381,962.79 |
| Other Assets (Net of Amortization): | | |
| Due from Insiders | | |
| Other (Itemize) Deposits | 58,374.00 | |
| Total Other Assets | | 58,374.00 |
| TOTAL ASSETS | | 8,530,552.44 |
| LIABILITIES | | |
| Post-petition Liabilities: | | |
| Accounts Payable | 139,563.38 | |
| Taxes Payable | 30,957.65 | |
| Loan Payable: Douglas Chrismas | 15,098.75 | |
| Professional fees | | |
| Secured Debt | | |
| Other (Itemize) Security Deposit | | |
| Total Post-petition Liabilities | | 185,619.78 |
| Pre-petition Liabilities: | | |
| Secured Liabilities | 5,504,557.82 | |
| Priority Liabilities | 887,470.10 | |
| Unsecured Liabilities | 15,923,564.48 | |
| Other (Itemize) | | |
| Total Pre-petition Liabilities | | 22,315,592.40 |
| TOTAL LIABILITIES | | 22,501,212.18 |
| EQUITY: | | |
| Pre-petition Owners' Equity | (14,012,572.53) | |
| Post-petition Profit/(Loss) | 41,772.02 | |
| Direct Charges to Equity | | |
| TOTAL EQUITY | | (13,970,800.51) |
| TOTAL LIABILITIES & EQUITY | | 8,530,411.67 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit S

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## X. BALANCE SHEET

(ACCRUAL BASIS ONLY)

| ..SETS | Current Month End | |
|---|---|---|
| Current Assets: | | |
| Unrestricted Cash | 486.20 | |
| Restricted Cash | 9,140.00 | |
| Lawyer's Rent Trust Account | - | |
| Accounts Receivable | 4,359,643.13 | |
| Inventory (Need to Adj for updated inventory list) | 3,254,619.02 | |
| Notes Receivable | 3,306,959.80 | |
| Prepaid Expenses | | |
| Other (Itemize)-Deposits | | |
| Total Current Assets | | 10,930,848.15 |
| Property, Plant, and Equipment | 628,194.65 | |
| Accumulated Depreciation/Depletion | (227,044.00) | |
| Net Property, Plant, and Equipment | | 401,150.65 |
| Other Assets (Net of Amortization): | | |
| Due from Insiders | | |
| Other (Itemize)Deposit | 60,474.00 | |
| Total Other Assets | | 60,474.00 |
| TOTAL ASSETS | | 11,392,472.80 |
| LIABILITIES | | |
| petition Liabilities: | | |
| Accounts Payable | | 1,789,622.77 |
| Taxes Payable | | 59,025.51 |
| Loan Payable Douglas Chrismas | | 14,094.79 |
| Loan Payable Eric Wilson | | 1,500,000.00 |
| Secured Debt | | |
| Other (Itemize) | | 16,500.00 |
| Total Post-petition Liabilities | | 3,379,243.07 |
| Pre-petition Liabilities: | | |
| Secured Liabilities | | 1,252,884.90 |
| Priority Liabilities | | 755,054.13 |
| Unsecured Liabilities (Payments to Landlords per Cour during Sept.) | | 14,386,804.85 |
| Other (Itemize) | | |
| Total Pre-petition Liabilities (Subject to Debtor's adjustments based on its review) | | 16,394,743.88 |
| TOTAL LIABILITIES | | 19,773,986.95 |
| EQUITY: | | |
| Pre-petition Owners' Equity | | (9,316,265.89) |
| Post-petition Profit/(Loss) | | 934,751.74 |
| Direct Charges to Equity | | |
| TOTAL EQUITY | | (8,381,514.15) |
| T .L LIABILITIES & EQUITY | | 11,392,472.80 |

COMPILED FOR COURT

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit T

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | | | | | | |
|---|---|---|---|---|---|---|
| Jun-13 | | | | | | |
| Inv 1621 | | | 72,000.00 | Charles | IN RESTORATION | |
| Inv 1622 | | | 52,000.00 | Frost | | |
| Inv 1623 | | | 50,000.00 | Frost | IN EXHIBITION | |
| Inv 1624 | | | 36,000.00 | Frost | IN EXHIBITION | |
| Inv 1624 | | | 180,000.00 | Venet | IN EXHIBITION | |
| | | | 4,897.93 | OLD BAL | | |
| Jul-13 | | 394,897.93 | | | | |
| Inv 1632 | | | 92,500.00 | Schoelle | ARTIST HAS NOT FINISHED COMMISSIONEI | |
| Aug 13-Sept 13 | | | | | | |
| Inv 1649 | | | 216,637.50 | Venet | IN EXHIBITION | |
| INV 1648 | | | (400.00) | OVERPAID INVOICE | | |
| OCT | | | | | | |
| INV 1652 | | | 300,000.00 | CORSE (2 | OUT OF COUNTRY 4 MOS | |
| NOV | | | | | | |
| INV 1660 | | | 153,900.00 | VALLENT | INTERNATIONAL MONEY DELAY | |
| INV1661 | | | 225,000.00 | VALLENTINE (3) | INTERNATIONAL MONEY DELAY | |
| INV 1661 | | | (125,000.00) | PD 4/14 | | |
| DEC | | | | | | |
| INV 1664 | | | 500,000.00 | CORSE | | |
| FEB | | | | | | |
| IN V 1681 | | | 113,360.00 | LIPTON | | |
| 1681 | | | (83,500.00) | 14-Jul | 1,787,395.43 | |
| MAR | | | | | | |
| INV 1684 | REICH | | 650,000.00 | | | |
| INV 1689 | | | 78,480.00 | | | OVER 120 |
| APR | | | | | | |
| 1693 | | | 247.20 | | | |
| 1695 | | | 1,012.00 | | | |
| 1696 | | | 431.65 | | | |
| 1697 | | | 206.65 | | | |
| 1698 | | | 300,000.00 | | | |
| 1699 | | | 1,060.15 | | | |
| 1700 | | | 277.92 | | | |
| 1701 MILLER | | | 49,050.00 | | | |
| 1701 | 5/14/2014 | | (47,000.00) | | 1,033,765.57 | 120 |
| MAY | | | | | | |
| 1702 | | | 247.2 | | | |
| 1704 | | | 270 | | | |
| 1705 RECH | | | 84000 | | | |
| | | | -8400 | | | |
| 1336 | | | -777.56 | | | |
| 1706 | | | 29000 | | | |
| 1709 FED EX | | | 12650 | | | |
| 1710 | | | 1860 | | | |
| 1713 | | | 45000 | | 163849.64 | 90 |
| JUNE | | | | | | |
| | FED EX ADJ | | (8,602.00) | | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | | | |
|---|---|---|---|
| INV 1355 SALES TAX BOASBERG | (5,985.00) | | |
| 1715 TRENTO | 374.40 | | |
| 1717 SPECTOR | 279.00 | | |
| 1716 COOPER | 417.47 | | |
| 1718 HESTON | 284.10 | | |
| 1719 AMBAC | 240.00 | | |
| 1721 RECH | 43,200.00 | | |
| 1724 STRAUS | 140,000.00 | | |
| 1725 RECH | 54,000.00 | | |
| 1726 NASHER | 175,000.00 | | |
| 1727 DELIJA | 87,200.00 | | |
| PASHGIAN | (54,000.00) | | |
| UNIDENTIFIED | (25,000.00) | 407,407.97 | 60 |
| JULY | | | |
| 1730 TRENTO | 562.50 | | |
| 1731 KASME | 290.00 | | |
| 1732 CORAG | 430.00 | | |
| 1733 BEERS | 414.00 | | |
| 1734 PETZEL | 560.00 | | |
| 1735 PETZEL | 142.50 | | |
| 1736 ROSEN | 150.00 | | |
| 1737 LEBO | 380.00 | | |
| 1738 PASHGIAN | 118.98 | | |
| 1739 MILLER | 200,000.00 | | |
| 1740 KHADR | 74,120.00 | | |
| 1744 RESET | 600.00 | | |
| 1744 RESET | 600.00 | 278,367.98 | 30 |
| | 3,670,786.59 | | |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY LOS ANGELES

5514 WILSHIRE BOULEVARD · LOS ANGELES · CALIFORNIA · 90036 ·
TEL 323.935.4411 · FAX 323.202.1082 · ACEGALLERY@ACEGALLERY.NET

## BILL OF SALE

ALMINE RECH
ALMINE RECH GALLERY
20 RUE DE L'ABBAYE ABDIJSTRAAT
B-1050 BRUSSELS
TEL. +32 (0)2 648 56 84; FAX. +32 (0)2 648 56 84

NOVEMBER 27, 2013

PAGE 1 OF 1

THIS IS TO INVOICE ALMINE RECH GALLERY OF BRUSSELS FOR THE PURCHASE OF THE FOLLOWING ARTWORKS BY DEWAIN VALENTINE FROM ACE GALLERY LOS ANGELES:

DEWAIN VALENTINE
*COLUMN GRAY*, 1972-75
CAST POLYESTER RESIN
23-3/8" (H) X 10-1/4" (W) X 9-5/8" (D)

PRICE: $90,000.00 USD

DEWAIN VALENTINE
*COLUMN GRAY*, 1972-75
CAST POLYESTER RESIN
23-3/8" (H) X 10-1/4" (W) X 9-5/8" (D)

PRICE: $90,000.00 USD

DEWAIN VALENTINE
*SKYLINE 001*, 2004
ACRYLIC PAINT ON ACRYLIC CONSTRUCTION
48" (H) X 72" (W) X 3-1/4" (D

PRICE: $76,500.00 USD
*(INCLUDES 10% DISCOUNT AT TIME OF SALE)

| | |
|---|---|
| SUBTOTAL: | $256,500.00 |
| DISCOUNT PER CONSIGNMENT AGREEMENT (LESS 40%) | -$102,600.00 |
| TAX (ARTWORK TO BE SHIPPED OUT-OF-STATE) | $0.00 |
| TOTAL DUE UPON RECEIPT OF INV[OICE] | $153,900.00 |
| **TOTAL PAYMENT** | **$153,900.00** |

(WIRING INSTRUCTIONS ATTA[CHED])

2/13/14 TRO
PAID
$54,000 SHS/LW1
$54,000 SHS/LW2
$45900 SH2/LW7
$153,900

DOUGLAS CHRISMAS
DIRECTOR

INVOICE #1660

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION UNLESS STATED OTHERWISE IN THE BODY OF THE INVOICE ABOVE. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY LOS ANGELES UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID. ANY DEPOSIT RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY

5514 WILSHIRE BOULEVARD · LOS ANGELES · CALIFORNIA · 90036 ·
TEL 323.935.4411 · FAX 323.202.1082 · ACEGALLERY@ACEGALLERY.NET

## INVOICE

JULY 27, 2013

STEPHEN JAVARAS
HIGHER PICTURES
980 MADISON AVENUE
NEW YORK, NY 10075
T: 212.249.6100; STEPHEN@HIGHERPICTURES.COM

1 OF 1

STEPHEN JAVARAS IS PURCHASING THE FOLLOWING WORK OF ART FROM ACE GALLERY:

ARTIST: MARTIN SCHOELLER
TITLE: *ANGELINA JOLIE*, 2013
MEDIUM: C-PRINT
SIZE: 89" X 72"
EDITION: 1 OF 2

PRICE: $90,000.00

| | |
|---|---|
| ADD: MOUNTING AND FRAMING | $2,500.00 |
| SUBTOTAL: | $92,500.00 |

NO SALES TAX (SHIPPIED OUT OF STATE, RESALE CERTIFICATE)

TOTAL DUE AS PER THE PAYMENT TERMS BELOW: $92,500.00

PAYMENT TERMS:

1) 50% IMMEDIATE PAYMENT VIA WIRE TRANSFER UPON RECEIPT OF INVOICE VIA ELECTRONIC MAIL;
2) 50% VIA WIRE TRANSFER WHEN MOUNTING AND FRAMING IN COMPLETED (BEFORE SHIPPING, APPROXIMATELY 4 WEEKS FROM RECEIPT OF 1ST PAYMENT).

(WIRING INSTRUCTIONS ATTACHED)

[signature] July 27/13

DOUGLAS CHRISMAS DATE
DIRECTOR AND CHIEF CURATOR

Cancel 11/2015

DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICITY OF THE ABOVE DESCRIBED ARTWORK. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORK PASSES TO THE BUYER UPON RECEIPT OF PAYMENT IN FULL

INVOICE #1632

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION UNLESS STATED OTHERWISE IN THE BODY OF THE INVOICE ABOVE. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. PURCHASER AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID, ANY DEPOSIT BE RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHES TO RESELL THE ARTWORK, ACE GALLERY MUST BE NOTIFIED IN WRITING BEFORE SUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY

5514 WILSHIRE BOULEVARD · LOS ANGELES · CALIFORNIA · 90036 ·
TEL 323.935.4411 · ACEGALLERY@ACEGALLERY.NET

## INVOICE

April 10, 2014
~~MAY 13, 2014~~

RESOLUTION
1801 CENTURY PARK EAST, 23rd FLOOR
LOS ANGELES, CA 90067
T: (424) 274 4200

PAGE 1 OF 1

INVOICE FOR DELIVERY AND INSTALLATION OF THE FOLLOWING WORK OF ART FROM ACE GALLERY:

ARTIST: BEN JONES
TITLE: *VIDEO PAINTING 2*

| | |
|---|---|
| 1 PREPARATOR + TRUCK X 4.75 HOURS ($90.00 PER HOUR) | $427.50 |
| GAS FOR TRUCK | $4.15 |
| TOTAL: | $431.65 |

May 13/14

Cancel 1/2015

DOUGLAS CHRISMAS  DATE
DIRECTOR AND CHIEF CURATOR

DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICITY OF THE ABOVE DESCRIBED ARTWORKS. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORKS PASSES TO THE BUYER UPON RECEIPT OF PAYMENT IN FULL.

INVOICE #1696

CLIENT IS RESPONSIBLE FOR CRATING, INSURANCE, PACKING, DELIVERY, AND INSTALLATION UNLESS STATED OTHERWISE IN THE BODY OF THE INVOICE ABOVE. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY LOS ANGELES UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. PURCHASER AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID, ANY DEPOSIT BE RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHES TO RESELL THE ARTWORK, ACE GALLERY MUST BE NOTIFIED IN WRITING BEFORE SUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY LOS ANGELES

5514 WILSHIRE BOULEVARD · LOS ANGELES · CALIFORNIA · 90036 ·
TEL 323.935.4411 · ACEGALLERY@ACEGALLERY.NET

## BILL OF SALE

MARCY MILLER & MILES ROSEDALE
BALTIMORE, MD

JULY 14, 2014
PAGE 1 OF 1

MARCY MILLER & MILES ROSEDALE ARE PURCHASING THE FOLLOWING WORK OF ART FROM ACE GALLERY NEW YORK:

| | | |
|---|---|---|
| ARTIST: | HELEN PASHGIAN | |
| TITLE: | *UNTITLED (DISC)*, 2014 | |
| MEDIUM: | RESIN | |
| SIZE: | 60"(DIAMETER)<br>BASE: 36"(H) X 30"(W) X 30"(D) | |
| PRICE: | | $250,000.00 |

| | |
|---|---|
| 20% DISCOUNT FOR IMMEDIATE PAYMENT: | -$50,000.00 |
| NO CA SALES TAX, TO BE SHIPPED OUT OF STATE | |
| TOTAL DUE UPON RECEIPT OF INVOICE: | $200,000.00 |

*PLEASE NOTE CRATING, SHIPPING AND INSURANCE ARE ADDITIONAL

(WIRING INSTRUCTIONS ATTACHED)

**PLEASE SUPPLY THE FEDERAL REFERENCE NUMBER OF ALL WIRES TO ACCOUNTING@ACEGALLERY.NET SO THAT PAYMENT MAY BE TRACED IF NECESSARY.

DOUGLAS CHRISMAS DATE
DIRECTOR AND CHIEF CURATOR

INVOICE #1739

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION UNLESS STATED OTHERWISE IN THE BODY OF THE INVOICE ABOVE. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY LOS ANGELES UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. PURCHASER AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID, ANY DEPOSIT BE RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHES TO RESELL THE ARTWORK, ACE GALLERY MUST BE NOTIFIED IN WRITING BEFORESUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit U

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

In Re:
Art and Architecture Books of the 21st Century
Debtor(s).

CHAPTER 11 (BUSINESS)

| | |
|---|---|
| Case Number: | 2:13-bk-14135-RK |
| Operating Report Number: | 4 - AMENDED |
| For the Month Ending: | 5/31/2013 |

I. CASH RECEIPTS AND DISBURSEMENTS
A. (GENERAL ACCOUNT*)

| | | | |
|---|---|---|---|
| 1. TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS | | | 747,163.67 |
| 2. LESS: TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL ACCOUNT REPORTS | | | 658,730.74 |
| 3. BEGINNING BALANCE: | | | 88,432.93 |
| 4. RECEIPTS DURING CURRENT PERIOD: | | | |
| Accounts Receivable - Post-filing | | 318,990.61 | |
| Accounts Receivable - Pre-filing | | | |
| General Sales | | 43,986.45 | |
| Other (Specify) | Parking Lot Receipts | 18,832.52 | |
| Other | Insurance Reimb-Water Damage | 24,375.00 | |
| Other | Legal Fees Refund | 1,083.00 | |
| Other (Specify) | Rent Income & Misc | 1,823.00 | |
| Transfer from Rent Account | | 65,880.56 | |
| TOTAL RECEIPTS THIS PERIOD: | | | 474,971.14 |
| 5. BALANCE: | | | 563,404.07 |
| 6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD | | | |
| Transfers to Other DIP Accounts (from page 2) | | 61,200.00 | |
| Disbursements (from page 2) | | 420,659.55 | |
| TOTAL DISBURSEMENTS THIS PERIOD:*** | | | 481,859.55 |
| 7. ENDING BALANCE: | | | 81,544.58 |

8. General Account Number(s): [redacted]8402

Depository Name & Location: City National Bank
400 N Roxbury Dr
Beverly Hills, Ca. 90210

* All receipts must be deposited into the general account.
** Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold, to whom, terms, and date of Court Order or Report of Sale.
***This amount should be the same as the total from page 2.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit V

USAO_00014312
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**CHECKS PAID**

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 1018 | 5-22 | 1,129.60 | 1041 | 5-6 | 800.36 | 1059 | 5-30 | 3,535.00 |
| 1020 * | 5-3 | 250.00 | 1042 | 5-7 | 481.12 | 1060 | 5-23 | 25,000.00 |
| 1029 * | 5-1 | 750.00 | 1043 | 5-3 | 1,743.55 | 1062 * | 5-28 | 11,600.00 |
| 1030 | 5-8 | 9,375.00 | 1044 | 5-6 | 200.00 | 1063 | 5-30 | 2,900.00 |
| 1031 | 5-3 | 100.20 | 1045 | 5-3 | 1,200.00 | 1064 | 5-22 | 7,500.00 |
| 1032 | 5-3 | 5,000.00 | 1046 | 5-8 | 1,000.00 | 1065 | 5-22 | 7,500.00 |
| 1033 | 5-21 | 40,000.00 | 1048 * | 5-7 | 5.44 | 1066 | 5-29 | 40.24 |
| 1034 | 5-6 | 702.51 | 1049 | 5-23 | 500.00 | 1067 | 5-29 | 1,012.00 |
| 1035 | 5-9 | 48.34 | 1050 | 5-24 | 7.35 | 1069 * | 5-24 | 24.71 |
| 1036 | 5-8 | 214.83 | 1051 | 5-17 | 500.00 | 1070 | 5-29 | 9,600.00 |
| 1037 | 5-8 | 7.17 | 1054 * | 5-20 | 1,824.85 | 1072 * | 5-24 | 992.90 |
| 1038 | 5-9 | 2,000.00 | 1056 * | 5-23 | 947.88 | 1073 | 5-24 | 3,000.00 |
| 1039 | 5-7 | 800.00 | 1057 | 5-21 | 6,000.00 | 113901 * | 5-15 | 500.00 |
| 1040 | 5-9 | 500.00 | 1058 | 5-28 | 13,000.00 | | | |

* Skip in check sequence

**ELECTRONIC DEBITS**

| Date | Description | Debits |
|---|---|---|
| 5-2 | Preauthorized Debit BARCLAYCARD US CREDITCARD 130502 | 1,000.00 |
| 5-7 | Preauthorized Debit CHASE EPAY 130507 | 1,000.00 |
| 5-8 | Preauthorized Debit CAPITAL ONE PHONE PYMT 130507 312739879045749 | 1,000.00 |
| 5-15 | Preauthorized Debit CAPITAL ONE PHONE PYMT 130514 313439879000435 | 200.00 |
| 5-21 | Tnet Wire Out-Intl | 2,077.80 |
| 5-21 | Tnet Wire Out-Intl | 4,000.00 |
| 5-21 | Tnet Wire Out-Intl | 5,593.18 |
| 5-21 | Tnet Wire Out-Intl | 51,000.00 |
| 5-21 | Wire Tsfr Debit | 255,000.00 |
| 5-22 | Preauthorized Debit CHASE EPAY 130522 | 2,000.00 |
| 5-22 | Preauthorized Debit EFBOARDOFEQUALIZ BOE E-PAY ELF*00015252024*00 00000655200*000522 76803*20130521/ | 6,552.00 |
| 5-23 | Wire Tsfr Debit | 47,808.09 |
| 5-28 | Preauthorized Debit CAPITAL ONE PHONE PYMT 130524 314439869001964 | 1,000.00 |
| 5-29 | Preauthorized Debit CAPITAL ONE ONLINE PMT 130528 314839919220990 | 299.00 |

**OTHER DEBITS**

| Date | Description | Reference | Debits |
|---|---|---|---|
| 5-6 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 5-9 | NSF Paid Item Fee FOR OVERDRAFT CHECK # 1040 | | 37.00 |
| 5-16 | Monthly Service Chg TNET FOR BB ELITE WIRE MAINT FOR 04/13 | | 50.00 |
| 5-20 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 5-21 | Account Transfer Dr. TO ACC 00123206347 | | 140,000.00 |
| 5-21 | Service Charge TNET WIRE OUT-INTL | | 15.00 |
| 5-21 | Service Charge TNET WIRE OUT-INTL | | 15.00 |
| 5-21 | Service Charge TNET WIRE OUT-INTL | | 15.00 |
| 5-21 | Service Charge TNET WIRE OUT-INTL | | 15.00 |
| 5-21 | Service Charge WIRE TSFR DEBIT | | 4.00 |
| 5-22 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 5-23 | Service Charge WIRE TSFR DEBIT | | 4.00 |

EXHIBIT A - 27

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

A&A-33

ART AND ARCHITECTURE BOOKS OF THE 21ST
May 31, 2013

Page 2
Account #: 123718402

**DEPOSITS (Continued)**

| Date | Description | Reference | Credits |
|---|---|---|---|
| 5-10 | Deposit | | 46.00 |
| 5-10 | Deposit | | 475.00 |
| 5-10 | Deposit | | 9,354.89 |
| 5-13 | Deposit | | 124.00 |
| 5-13 | Deposit | | 856.00 |
| 5-14 | Deposit | | 65.00 |
| 5-14 | Deposit | | 72.00 |
| 5-14 | Deposit | | 1,083.00 |
| 5-15 | Deposit | | 63.00 |
| 5-15 | Deposit | | 834.00 |
| 5-17 | Deposit | | 68.00 |
| 5-17 | Deposit | | 81.00 |
| 5-17 | Deposit | | 455.00 |
| 5-17 | Deposit | | 13,897.50 |
| 5-20 | Deposit | | 136.00 |
| 5-20 | Deposit | | 234.00 |
| 5-20 | Deposit | | 15,020.11 |
| 5-21 | Deposit | | 95.00 |
| 5-24 | Deposit | | 237.52 |
| 5-24 | Deposit | | 643.00 |
| 5-24 | Deposit | | 800.00 |
| ?8 | Deposit | | 1,374.00 |
| ,0 | Deposit | | 120.00 |
| 5-30 | Deposit | | 1,330.00 |
| 5-30 | Deposit | | 11,445.00 |
| 5-31 | Deposit | | 777.00 |

**ELECTRONIC CREDITS**

| Date | Description | Credits |
|---|---|---|
| 5-2 | Incoming Wire-Dom | 23,400.00 |
| 5-6 | Incoming Wire-Dom | 40,565.00 |
| 5-6 | Preauthorized Credit SQUARE INC 130504A2 130506 | .49 |
| 5-6 | Preauthorized Credit NPC MERCH PYMT PROC 130506 0012677845 | 100.00 |
| 5-6 | Preauthorized Credit SQUARE INC 130506B2 130506 | 1,319.62 |
| 5-9 | Preauthorized Credit NPC MERCH PYMT PROC 130509 0012677845 | 200.00 |
| 5-16 | Preauthorized Credit NPC MERCH PYMT PROC 130516 0012677845 | 1,308.00 |
| 5-20 | Preauthorized Credit NPC MERCH PYMT PROC 130520 0012677845 | 3,600.00 |
| 5-21 | Wire Tsfr Credit | 255,000.00 |
| 5-28 | Preauthorized Credit NPC MERCH PYMT PROC 130528 0012677845 | 200.00 |
| 5-31 | Preauthorized Credit NPC MERCH PYMT PROC 130531 0012677845 | 100.00 |

**OTHER CREDITS**

| Date | Description | Reference | Credits |
|---|---|---|---|
| 5-1 | Account Transfer Cr. FR ACC 00123722337 | | 59,080.56 |
| 5-9 | Account Transfer Cr. FR ACC 00123722337 | | 6,800.00 |

**CHECKS PAID**

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1066 | 5-7 | 30.00 | 1076 * | 5-3 | 502.02 | 1084 | 5-1 | 4,875.00 | 1091 | 5-6 | 15.15 |
| 1067 | 5-6 | 30.00 | 1080 * | 5-28 | 40.00 | 1088 * | 5-3 | 12.25 | 1092 | 5-8 | 611.40 |
| 1068 | 5-2 | 30.00 | 1082 * | 5-31 | 135.00 | 1089 | 5-7 | 7.35 | 1094 * | 5-3 | 20.66 |
| 1071 * | 5-9 | 30.00 | 1083 | 5-7 | 16.80 | 1090 | 5-22 | 7.07 | 1095 | 5-6 | 120.60 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

WIRE TRANSFERS

| Bank ID | Debit Account | Debit Party Name | Credit Account | Credit Party Name | Originator | Beneficiary | Tran Date | Tran Num | Amount |
|---|---|---|---|---|---|---|---|---|---|
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | G/09811201000 | WELLS FARGO BANK | | ACE GALLERY NEW YORK | 20130225 | 7939 | 23000 |
| CNB | [redacted] | WELLS FARGO BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MARK G PARKER | ART AND ARCHITECTURE BOOKS OF THE | 20130226 | 2533 | 600 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | 1/CEM YILMAZ | | 20130228 | 943 | 32000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | LEHMANN-MAUPIN LLC | | 20130301 | 8851 | 150000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130301 | 9869 | 137525 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | CITIBANK, NEW YORK | | Judith Walsh - Art Smart Adventures | 20130304 | 1671 | 25500 |
| CNB | G/09811201000 | WELLS FARGO BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ACE GALLERY NEW YORK | | 20130305 | 5665 | 33000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130306 | 3149 | 55000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20130307 | 6833 | 159982 |
| CNB | [redacted] | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | GOLDEN HILL PROPERTIES, LLC. | | 20130307 | 3689 | 25288 |
| CNB | [redacted] | WIRE SUSPENSE LIABILITY ACCOUNT | D/123720229 | ACE GALLERY NEW YORK CORPORATION | FREYBE GOURMET FOODS LTD | | 20130308 | 3414 | 199980 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | JPMORGAN CHASE BANK, NA | | Professional Fine Art Services | 20130311 | 3690 | 10000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | HSBC BANK USA, NA | | Matthew Hope | 20130312 | 4550 | 4000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | PIA L B ANDERSEN | | 20130315 | 507 | 11900 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JAGHI TRADE A/S | ACE GALLERY LOS ANGELES | 20130320 | 997 | 27835 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20130321 | 2212 | 18000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | LEHMANN-MAUPIN LLC | | 20130327 | 2775 | 65000 |
| CNB | [redacted] | THE BANKERS BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JON COOPER | | 20130328 | 8266 | 26160 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JAN GHISALBERTI | | 20130506 | 1089 | 9355 |
| CNB | [redacted] | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JANE B HOLZER SOLE PROP | | 20130520 | 6406 | 533500 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130521 | 5539 | 255000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | HSBC BANK USA, NA | | Telford Building Ltd Louisa Court | 20130521 | 5537 | 51000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | HSBC BANK USA, NA | | Zhongcheng Huatai (Beijing) | 20130521 | 5536 | 5593.18 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | HSBC BANK USA, NA | | Matthew Hope | 20130521 | 5535 | 4000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | EURO FX CLEARING - EUR | | Oranienburger Str. 45 GmbH | 20130521 | 5538 | 2077.8 |
| CNB | [redacted] | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JANE B HOLZER SOLE PROP | | 20130522 | 1977 | 3535 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123722337 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130523 | 7441 | 47808.09 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | EDWARD GREENSPAN | | 20130606 | 1238 | 20000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JAN GHISALBERTI | | 20130618 | 1114 | 8980 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | EURO FX CLEARING - EUR | | Oranienburger Str. 45 GmbH | 20130619 | 3784 | 3315.24 |
| CNB | [redacted] | TEXAS CAPITAL BANK, N.A. | D/123720229 | ACE GALLERY NEW YORK CORPORATION | L DIANE ANSBERRY RAHARDJA | | 20130702 | 6379 | 132000 |
| CNB | [redacted] | HSBC BANK USA, NA | D/123720229 | ACE GALLERY NEW YORK CORPORATION | BELARUS ASSOCIATED INC | | 20130703 | 5621 | 20000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JENNIFER KELLEN | | 20130708 | 6564 | 51200 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ANDREA NASHER TTEE | | 20130826 | 4735 | 10000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JAN GHISALBERTI | | 20130904 | 1183 | 8980 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20130916 | 5166 | 1124980 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20130916 | 481 | 649980 |
| CNB | [redacted] | MICHAEL ALLEN MADDEN | D/123720229 | ACE GALLERY NEW YORK CORPORATION | | | 20131016 | 7528 | 1962 |
| CNB | [redacted] | PACIFIC TRUST BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | STEVEN EGLASH | | 20131018 | 3415 | 37060 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | EURO FX CLEARING - EUR | | Oranienburger Str. 45 GmbH | 20131024 | 4150 | 4495.62 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20131125 | 7699 | 200000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20131127 | 1232 | 100000 |
| CNB | [redacted] | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ALMINE RUIZ PICASSO | | 20131213 | 47 | 120000 |
| CNB | [redacted] | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | BERNARD RUIZ PICASSO | | 20131213 | 283 | 120000 |
| CNB | [redacted] | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ARG/ALMINE RECH GALLERY | | 20131224 | 121 | 50000 |
| CNB | [redacted] | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ALMINE RUIZ PICASSO | | 20140103 | 31 | 120000 |
| CNB | [redacted] | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | BERNARD RUIZ PICASSO | | 20140103 | 188 | 120000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | [redacted] | REDWOOD CREDIT UNION | | DEIRDRE OBRIEN | 20140110 | 6428 | 4000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | MICHAEL S STRAUS | | 20140117 | 158 | 80000 |
| CNB | [redacted] | UBS AG | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JEFF BROTMAN SUSAN BROTMAN- | | 20140204 | 2380 | 150000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ROBERT B STRONG | | 20140207 | 1773 | 72000 |
| CNB | [redacted] | UBS AG | D/123720229 | ACE GALLERY NEW YORK CORPORATION | JEFF BROTMAN SUSAN BROTMAN- | | 20140212 | 3942 | 13500 |
| CNB | [redacted] | BANK OF AMERICA, N.A., NY | D/123720229 | ACE GALLERY NEW YORK CORPORATION | ARG SA:ALMINE RECH GALLERY | ACE GALLERY | 20140218 | 338 | 153900 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123720229 | ACE GALLERY NEW YORK CORPORATION | TELFORD BUILDING LTD | | 20140219 | 5407 | 39980 |
| CNB | [redacted] | THE BANK OF NEW YORK MELLON | D/123720229 | ACE GALLERY NEW YORK CORPORATION | FREYBE H | | 20140408 | 653 | 150000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140409 | 64 | 125000 |
| CNB | [redacted] | THE BANK OF NEW YORK MELLON | D/123720229 | ACE GALLERY NEW YORK CORPORATION | FREYBE H | | 20140417 | 4096 | 648.39 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140501 | 5726 | 40000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123722337 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140512 | 7059 | 60000 |
| CNB | D/123720229 | ACE GALLERY NEW YORK CORPORATION | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20140514 | 5000 | 75000 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit W

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**CITY NATIONAL BANK**
The way up.

Page 1 (22)

Account #: 123720229

This statement: January 31, 2014
Last statement: December 31, 2013

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001 0830L
ACE GALLERY NEW YORK CORPORATION
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

TRAVELING ABROAD THIS WINTER? GET THE CASH YOU NEED BEFORE YOU LEAVE. WE CAN PROVIDE POPULAR FOREIGN CURRENCIES, OFTEN ON THE SAME DAY. CONTACT YOUR RELATIONSHIP MANAGER OR NEAREST BANKING OFFICE FOR RATES AND DETAILS.

**Business Elite Checking**

| Account Summary | |
|---|---|
| Account number | 123720229 |
| Minimum balance | $4,433.75 |
| Average balance | $73,069.82 |
| Avg. collected balance | $62,222.00 |

| Account Activity | | | |
|---|---|---|---|
| Beginning balance (12/31/2013) | | | $4,433.75 |
| Credits | Deposits (5) | + 108,275.00 | |
| | Electronic cr (3) | + 320,000.00 | |
| | Other credits (1) | + 500.00 | |
| | Total credits | | + $428,775.00 |
| Debits | Checks paid (22) | - 249,849.44 | |
| | Electronic db (10) | - 10,500.00 | |
| | Other debits (12) | - 165,765.50 | |
| | Total debits | | - $426,114.94 |
| Ending balance (1/31/2014) | | | $7,093.81 |

**DEPOSITS**

| Date | Description | Reference | Credits |
|---|---|---|---|
| 1-16 | Deposit | | 64,310.00 |
| 1-21 | Deposit | | 4,500.00 |
| 1-21 | Deposit | | 14,715.00 |
| 1-23 | Deposit | | 9,000.00 |
| 1-24 | Deposit | | 15,750.00 |

**ELECTRONIC CREDITS**

| Date | Description | Credits |
|---|---|---|
| 1-3 | Incoming Wire-Dom | 120,000.00 |
| 1-3 | Incoming Wire-Dom | 120,000.00 |
| 1-17 | Incoming Wire-Dom | 80,000.00 |

**OTHER CREDITS**

| Date | Description | Reference | Credits |
|---|---|---|---|
| 1-22 | Credit Memo | | 500.00 |

EXHIBIT A - 70

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

ACE GALLERY NEW YORK CORPORATION
January 31, 2014

Page 2
Account #: 123720229

CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1213 | 1-7 | 130,000.00 | 1219 | 1-10 | 400.00 | 1226 * | 1-17 | 500.00 | 1238 * | 1-24 | 24,000.00 |
| 1214 | 1-10 | 200.00 | 1220 | 1-13 | 7,500.00 | 1227 | 1-17 | 52,000.00 | 1239 | 1-29 | 400.00 |
| 1215 | 1-17 | 2,000.00 | 1221 | 1-27 | 1,500.00 | 1229 * | 1-17 | 10,000.00 | 1243 * | 1-29 | 400.00 |
| 1216 | 1-16 | 4,795.20 | 1222 | 1-22 | 600.00 | 1230 | 1-21 | 500.00 | 6449 * | 1-23 | 500.00 |
| 1217 | 1-17 | 199.56 | 1223 | 1-22 | 156.00 | 1231 | 1-22 | 6,000.00 | | | |
| 1218 | 1-14 | 198.68 | 1224 | 1-27 | 500.00 | 1235 * | 1-24 | 7,500.00 | | | |

* Skip in check sequence

ELECTRONIC DEBITS

| Date | Description | Debits |
|---|---|---|
| 1-8 | Preauthorized Debit CAPITAL ONE ONLINE PMT 400739919187878 7501235149CHRISMAS CCD | 500.00 |
| 1-8 | Preauthorized Debit CHASE EPAY TEL 57195186131049 | 1,000.00 |
| 1-8 | Preauthorized Debit CAPITAL ONE ONLINE PMT 400739919005262 8217915701CHRISMAS CCD | 1,000.00 |
| 1-10 | Tnet Wire Out-Dom | 4,000.00 |
| 1-16 | Preauthorized Debit CAPITAL ONE ONLINE PMT 401539919493032 8213109887CHRISMAS CCD | 500.00 |
| 1-16 | Preauthorized Debit CAPITAL ONE ONLINE PMT 401539919493033 7501235149CHRISMAS CCD | 500.00 |
| 1-16 | Preauthorized Debit BARCLAYCARD US CREDITCARD TEL DOUGLAS CHRISM | 500.00 |
| 1-16 | Preauthorized Debit CHASE EPAY TEL 57195186131049 | 1,000.00 |
| 1-23 | Preauthorized Debit CAPITAL ONE ONLINE PMT 402239919194489 8676879547CHRISMAS CCD | 500.00 |
| 1-23 | Preauthorized Debit CHASE EPAY TEL 57195186131049 | 1,000.00 |

OTHER DEBITS

| Date | Description | Reference | Debits |
|---|---|---|---|
| 1-3 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 1-3 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 1-10 | Service Charge TNET WIRE OUT-DOM | | 10.00 |
| 1-16 | Monthly Service Chg TNET FOR BB ELITE WIRE MAINT FOR 12/13 | | 50.00 |
| 1-17 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 1-17 | Account Transfer Dr. TO ACC 00123206347 | | 500.00 |
| 1-17 | Account Transfer Dr. TO ACC 00123206347 | | 165,000.00 |
| 1-29 | NSF Paid Item Fee FOR OVERDRAFT CHECK # 1239 | | 37.00 |
| 1-30 | NSF Paid Item Fee FOR OVERDRAFT CHECK # 1243 | | 37.00 |
| 1-31 | Service Charge ENHANCED IMAGE STM | | 3.00 |
| 1-31 | Service Charge BUS PACKAGE FEE | | 50.00 |
| 1-31 | Maintenance Fee | | 39.50 |

DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|---|---|
| 12-31 | 4,433.75 | 1-13 | 99,797.75 | 1-22 | 18,810.31 | 1-30 | 7,186.31 |
| 1-3 | 244,407.75 | 1-14 | 99,599.07 | 1-23 | 25,810.31 | 1-31 | 7,093.81 |
| 1-7 | 114,407.75 | 1-16 | 156,563.87 | 1-24 | 10,060.31 | | |
| 1-8 | 111,907.75 | 1-17 | 6,351.31 | 1-27 | 8,060.31 | | |
| 1-10 | 107,297.75 | 1-21 | 25,066.31 | 1-29 | 7,223.31 | | |

Thank you for banking with City National Bank

EXHIBIT A - 71

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

CITY NATIONAL BANK The way up.

Account # : 123720229

| Check | Paid | Amount |
|---|---|---|
| 1226 | Paid 01/17/2014 | $500.00 |
| 1227 | Paid 01/17/2014 | $52000.00 |
| 1229 | Paid 01/17/2014 | $10000.00 |
| 1230 | Paid 01/21/2014 | $500.00 |
| 1231 | Paid 01/22/2014 | $6000.00 |
| 1235 | Paid 01/24/2014 | $7500.00 |

EXHIBIT A - 74

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**Account # : 123720229**

| Check | Paid | Amount |
| --- | --- | --- |
| 1238 | Paid :01/24/2014 | $24000.00 |
| 1239 | Paid :01/29/2014 | $400.00 |
| 1243 | Paid :01/29/2014 | $400.00 |
| 6449 | Paid :01/23/2014 | $500.00 |

EXHIBIT A - 75

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Account #: 123720229

| Check | Paid | Amount |
|---|---|---|
| 1219 | Paid :01/10/2014 | $400.00 |
| 1220 | Paid :01/13/2014 | $7500.00 |
| 1221 | Paid :01/27/2014 | $1500.00 |
| 1222 | Paid :01/22/2014 | $600.00 |
| 1223 | Paid :01/22/2014 | $156.00 |
| 1224 | Paid :01/27/2014 | $500.00 |

EXHIBIT A - 72

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



CITY NATIONAL BANK The way up.

Account # : 123720229

| Check | Paid | Amount |
|---|---|---|
| 1213 | Paid 01/07/2014 | $130000.00 |
| 1214 | Paid 01/10/2014 | $200.00 |
| 1215 | Paid 01/17/2014 | $2000.00 |
| 1216 | Paid 01/16/2014 | $4795.20 |
| 1217 | Paid 01/17/2014 | $199.56 |
| 1218 | Paid 01/14/2014 | $198.68 |

EXHIBIT A - 73

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit X

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**CITY NATIONAL BANK**
The way up.

Page 1 (65) A&A-134

Account #: 123718402

This statement: January 31, 2014
Last statement: December 31, 2013

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001 0830K
ART AND ARCHITECTURE BOOKS OF THE 21ST
CENTURY DBA ACE GALLERY (GENERAL ACCT)
DIP CASE NO. 2:13-BK-14135-RK
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

TRAVELING ABROAD THIS WINTER? GET THE CASH YOU NEED BEFORE YOU LEAVE. WE CAN PROVIDE POPULAR FOREIGN CURRENCIES, OFTEN ON THE SAME DAY. CONTACT YOUR RELATIONSHIP MANAGER OR NEAREST BANKING OFFICE FOR RATES AND DETAILS.

## Checking Account

| Account Summary | |
|---|---|
| Account number | 123718402 |
| Minimum balance | $2,778.38 |
| Average balance | $66,004.18 |
| Avg. collected balance | $63,724.00 |

| Account Activity | | | |
|---|---|---|---|
| Beginning balance (12/31/2013) | | | $34,774.44 |
| Credits | Deposits (8) | + 241,620.00 | |
| | Electronic cr (8) | + 507,430.00 | |
| | Other credits (1) | + 91,000.00 | |
| | **Total credits** | | + $840,050.00 |
| Debits | Checks paid (65) | - 385,238.72 | |
| | Electronic db (10) | - 1,278.93 | |
| | Other debits (18) | - 43,269.04 | |
| | **Total debits** | | - $429,786.69 |
| Ending balance (1/31/2014) | | | $445,037.75 |

### DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 1-7 | Deposit | | 700.00 |
| 1-7 | Deposit | | 130,000.00 |
| 1-10 | Deposit | | 20,000.00 |
| 1-17 | Deposit | | 62,000.00 |
| 1-24 | Deposit | | 24,000.00 |
| 1-29 | Deposit | | 60.00 |
| 1-30 | Deposit | | 60.00 |
| 1-30 | Deposit | | 4,800.00 |

### ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 1-6 | Preauthorized Credit MERCH BANKCARD NET SETLMT CCD ACE GALLERY MERCH BANKCARD NET SETLMT 6800 01010150626 ACE G | 100.00 |
| 1-8 | Preauthorized Credit MERCH BANKCARD NET SETLMT CCD ACE GALLERY MERCH BANKCARD NET SETLMT 6800 01010150626 ACE G | 200.00 |
| 1-9 | Preauthorized Credit MERCH BANKCARD NET SETLMT CCD ACE GALLERY MERCH BANKCARD NET SETLMT 6800 01010150626 ACE G | 130.00 |
| 1-13 | Incoming Wire-Dom | 70,000.00 |
| 1-28 | Wire Tsfr Credit | 10,000.00 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

A&A-135

ART AND ARCHITECTURE BOOKS OF THE 21ST
January 31, 2014

Page 2
Account #: 123718402

ELECTRONIC CREDITS (Continued)

| Date | Description | Credits |
|---|---|---|
| 1-29 | Incoming Wire-Dom | 30,000.00 |
| 1-30 | Incoming Wire-Dom | 37,000.00 |
| 1-30 | Incoming Wire-Dom | 360,000.00 |

OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 1-10 | Account Transfer Cr. FR ACC 00123722337 | | 91,000.00 |

CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1577 | 1-13 | 249.44 | 1661 | 1-10 | 4,567.46 | 1682 | 1-13 | 3,022.40 | 1701 * | 1-29 | 57.80 |
| 1626 * | 1-13 | 3.49 | 1662 | 1-14 | 271.77 | 1683 | 1-24 | 22,440.00 | 1702 | 1-27 | 58.80 |
| 1628 * | 1-3 | 100.00 | 1663 | 1-2 | 309.08 | 1684 | 1-16 | 25.00 | 1703 | 1-27 | 58.50 |
| 1643 * | 1-2 | 53.24 | 1664 | 1-3 | 199.78 | 1685 | 1-29 | 21.99 | 1704 | 1-24 | 292.50 |
| 1646 * | 1-6 | 16,000.00 | 1666 * | 1-2 | 412.00 | 1686 | 1-13 | 1,350.00 | 1705 | 1-29 | 482.38 |
| 1648 * | 1-3 | 27.22 | 1668 * | 1-15 | 758.00 | 1687 | 1-14 | 182,766.08 | 1706 | 1-24 | 281.46 |
| 1649 | 1-3 | 27.22 | 1669 | 1-10 | 19,008.00 | 1689 * | 1-15 | 699.12 | 1707 | 1-24 | 298.55 |
| 1650 | 1-3 | 482.38 | 1670 | 1-9 | 74,263.00 | 1690 | 1-16 | 348.02 | 1708 | 1-29 | 122.61 |
| 1651 | 1-2 | 180.48 | 1672 * | 1-21 | 2,154.93 | 1691 | 1-27 | 300.00 | 1709 | 1-29 | 1,115.72 |
| 1652 | 1-2 | 1,496.47 | 1673 | 1-9 | 271.42 | 1692 | 1-17 | 30.50 | 1710 | 1-29 | 84.70 |
| 1653 | 1-2 | 1,794.50 | 1674 | 1-10 | 804.48 | 1693 | 1-21 | 1,521.47 | 1712 * | 1-27 | 45.00 |
| 1654 | 1-16 | 136.68 | 1676 * | 1-14 | 71.91 | 1694 | 1-17 | 759.00 | 1713 | 1-27 | 76.30 |
| 1656 * | 1-2 | 2,112.84 | 1677 | 1-17 | 40,000.00 | 1695 | 1-22 | 1,103.46 | 1714 | 1-30 | 18.90 |
| 1657 | 1-3 | 347.64 | 1678 | 1-10 | 88.32 | 1696 | 1-21 | 75.00 | 1717 * | 1-31 | 151.19 |
| 1658 | 1-3 | 85.85 | 1679 | 1-10 | 19.62 | 1697 | 1-21 | 48.00 | | | |
| 1659 | 1-14 | 869.00 | 1680 | 1-15 | 236.15 | 1698 | 1-21 | 48.00 | | | |
| 1660 | 1-16 | 40.00 | 1681 | 1-14 | 46.00 | 1699 | 1-23 | 48.00 | | | |

* Skip in check sequence

ELECTRONIC DEBITS

| Date | Description | Debits |
|---|---|---|
| 1-2 | Preauthorized Debit NORTHERN LEASING LEASE PMT 1759183A:0102 ART AND ARCHITECTU CCD | 67.36 |
| 1-6 | Preauthorized Debit CAPITAL ONE ONLINE PMT 400339919006043 7501235149CHRISMAS CCD | 200.00 |
| 1-6 | Preauthorized Debit CAPITAL ONE ONLINE PMT 400339919006044 8213109887CHRISMAS CCD | 200.00 |
| 1-10 | Preauthorized Debit U. P. S. UPS BILL 140040000F89312 ACE CONTEMPORARY E CCD | 41.22 |
| 1-10 | Preauthorized Debit MERCH BANKCARD BILLNG CCD ART & ARCHITEC MERC | 198.32 |
| 1-16 | Preauthorized Debit ATT PAYMENT 422760003IVRDT BLANK NAME CCD | 30.06 |
| 1-17 | Preauthorized Debit U. P. S. UPS BILL 140110000F89312 ACE CONTEMPORARY E CCD | 91.58 |
| 1-23 | Preauthorized Debit ATT PAYMENT TEL ACE GALLERYDIP | 169.03 |
| 1-24 | Preauthorized Debit U. P. S. UPS BILL 140180000F89312 ACE CONTEMPORARY E CCD | 146.73 |
| 1-31 | Preauthorized Debit U. P. S. UPS BILL 140250000F89312 ACE CONTEMPORARY E CCD | 134.63 |

OTHER DEBITS

| Date | Description | Reference | Debits |
|---|---|---|---|
| 1-2 | Account Transfer Dr. TO ACC 00123718410 | | 8,000.00 |
| 1-7 | Account Transfer Dr. TO ACC 00123718410 | | 1,000.00 |
| 1-8 | Account Transfer Dr. TO ACC 00123718410 | | 6,706.64 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

CITY NATIONAL BANK
The way up.

A&A-136

ART AND ARCHITECTURE BOOKS OF THE 21ST
January 31, 2014

Page 3
Account #: 123718402

**OTHER DEBITS (Continued)**

| Date | Description | Reference | Debits |
|---|---|---|---|
| 1-8 | Account Transfer Dr. TO ACC 00123718437 | | 8,900.00 |
| 1-10 | Account Transfer Dr. TO ACC 00123718410 | | 1,051.34 |
| 1-13 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 1-13 | Wires-Fax Notify REF #140113-004843 | | 4.00 |
| 1-16 | Monthly Service Chg BUSINESS ONLINE AD D'L ACCTS FOR 12/13 | | 6.00 |
| 1-17 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123718410 | | 16,000.00 |
| 1-21 | Account Transfer Dr. TO ACC 00123718410 | | 500.00 |
| 1-21 | Account Transfer Dr. TO ACC 00123718410 | | 1,034.06 |
| 1-28 | Wires-Fax Notify REF #140128-002025 | | 4.00 |
| 1-29 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 1-29 | Wires-Fax Notify REF #140129-004567 | | 4.00 |
| 1-30 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 1-30 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 1-30 | Wires-Fax Notify REF #140130-001755 | | 4.00 |
| 1-30 | Wires-Fax Notify REF #140130-004925 | | 4.00 |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|---|---|
| 12-31 | 34,774.44 | 1-9 | 42,667.32 | 1-17 | 12,062.36 | 1-28 | 15,368.57 |
| 1-2 | 20,348.47 | 1-10 | 127,888.56 | 1-21 | 6,680.90 | 1-29 | 43,516.47 |
| 1-3 | 19,078.38 | 1-13 | 193,246.23 | 1-22 | 5,577.44 | 1-30 | 445,323.57 |
| 1-6 | 2,778.38 | 1-14 | 9,221.47 | 1-23 | 5,360.41 | 1-31 | 445,037.75 |
| 1-7 | 132,478.38 | 1-15 | 7,528.20 | 1-24 | 5,901.17 | | |
| 1-8 | 117,071.74 | 1-16 | 6,943.44 | 1-27 | 5,362.57 | | |

**OVERDRAFT/RETURN ITEM FEES**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

Thank you for banking with City National Bank

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Page : 7
Account # : 123718402

A&A-140

| Check | Paid | Amount |
|---|---|---|
| 1670 | Paid 01/09/2014 | $74263.00 |
| 1672 | Paid :01/21/2014 | $2154.93 |
| 1673 | Paid :01/09/2014 | $271.42 |
| 1674 | Paid :01/10/2014 | $804.48 |
| 1676 | Paid :01/14/2014 | $71.91 |
| 1677 | Paid :01/17/2014 | $40000.00 |
| 1678 | Paid :01/10/2014 | $88.32 |
| 1679 | Paid :01/10/2014 | $19.62 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



Page : 8
Account # : 123718402

A&A-141

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT)
1680
1/9/13
PAY TO THE ORDER OF STAPLES $ 236.15
Two hundred and thirty six dollars 15/00 DOLLARS
MEMO NTE # 280.00

1680 Paid 01/15/2014 $236 15

(323) 935-4411
ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT)
1681
1/9/13
PAY TO THE ORDER OF USPS $ 46.00
forty six dollars & 00/00 DOLLARS
MEMO NTE $50.00

1681 Paid 01/14/2014 $46 00

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT)
1682

1682 Paid 01/13/2014 $3022 40

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT)
1683
PAY TO THE ORDER OF LA ART SHOW

1683 Paid 01/24/2014 $22440 00

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT)
1684
$ 25.00

1684 Paid 01/16/2014 $25 00

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT)
1685
PAY TO THE ORDER OF FORBES MAGAZINE $ 21.99

1685 Paid 01/29/2014 $21 99

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT)
1686
$1,350.00

1686 Paid 01/13/2014 $1350 00

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT)
1687

1687 Paid 01/14/2014 $182766 08

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



Page : 4
Account # : 123718402

A&A-137

1577 Paid 01/13/2014 $249 44

1626 Paid 01/13/2014 $3 49

1628 Paid :01/03/2014 $100 00

1643 Paid 01/02/2014 $53 24

1646 Paid :01/06/2014 $10000 00

1648 Paid 01/03/2014 $27 22

1649 Paid 01/03/2014 $27 22

1650 Paid 01/03/2014 $482 38

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Page : 5
Account # : 123718402

A&A-138

1651 Paid :01/02/2014 $180.48

1652 Paid :01/02/2014 $1496.47

1653 Paid :01/02/2014 $1794.50

1654 Paid :01/16/2014 $136.68

1656 Paid :01/02/2014 $2112.84

1657 Paid :01/03/2014 $347.64

1658 Paid :01/03/2014 $85.85

1659 Paid :01/14/2014 $869.00

USAO_00014330

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



Page : 6
Account # : 123718402

A&A-139

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT) DIP CASE NO. 2:13-BK-14135-RK
1660
12/30/13
PAY TO THE ORDER OF SACHA BARRY $ $40.00
Forty and No/100 Dollars DOLLARS
MEMO 12/28/13 HOURS
⑈001660⑈ ⑆122016066⑆ 123-718402⑈

1660 Paid 01/16/2014 $40.00

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT) DIP CASE NO. 2:13-BK-14135-RK
1661
PAY TO THE ORDER OF L.A. DEPT OF WATER & POWER $ $4,567.46
Four Thousand Five Hundred and Sixty Seven and 46/100 Dollars DOLLARS
MEMO ACCOUNT NUMBER
⑈001661⑈ ⑆122016066⑆ 123-718402⑈

1661 Paid 01/10/2014 $4567.46

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT) DIP CASE NO. 2:13-BK-14135-RK
1662
12/30/13
PAY TO THE ORDER OF MID WEST WHOLESALE LIGHTING CORP $ 271.77
Two Hundred Seventy One 77/100 DOLLARS
MEMO NTE $360.00
⑈001662⑈ ⑆122016066⑆ 123-718402⑈

1662 Paid 01/14/2014 $271.77

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT) DIP CASE NO. 2:13-BK-14135-RK
1663
12/31/13
PAY TO THE ORDER OF CBM CONTRACTORS BUILDING $ 309.08
three Hundred nine dollar and 08/100 DOLLARS
MEMO NTE $330.00
⑈001663⑈ ⑆122016066⑆ 123-718402⑈

1663 Paid 01/02/2014 $309.08

001664
Charge To: 87JWCZ09AUJHFK 01/03/14
Pay to the order of: OFFICE DEPOT $199.78 DOLLARS
ABA 122016066 Account 123718402 Pre-Authorized Payment
⑈001664⑈ ⑆122016066⑆ 123-718402⑈ ⑈0000019978⑈

1664 Paid 01/03/2014 $199.78

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT) DIP CASE NO. 2:13-BK-14135-RK
1666
1/2/14
PAY TO THE ORDER OF CASH $ $412.00
Four Hundred and Twelve and No/100 Dollars DOLLARS
MEMO REIMBURSEMENT FOR CASH OUT OF POCKET
⑈001666⑈ ⑆122016066⑆ 123-718402⑈

1666 Paid 01/02/2014 $412.00

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT) DIP CASE NO. 2:13-BK-14135-RK
1668
1/2/14
PAY TO THE ORDER OF SHELLEY HOIST $ $758.00
Seven Hundred and Fifty Eight and No/100 Dollars DOLLARS
MEMO DECEMBER 2013
⑈001668⑈ ⑆122016066⑆ 123-718402⑈

1668 Paid 01/16/2014 $758.00

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT) DIP CASE NO. 2:13-BK-14135-RK
1669
1/2/14
PAY TO THE ORDER OF THE ESTATE OF PENTTI K KOURI $ $19,008.00
Nineteen Thousand and Eight and No/100 Dollars DOLLARS
MEMO ACE GALLERY PER SETTLEMENT AGREEMENT
⑈001669⑈ ⑆122016066⑆ 123-718402⑈

1669 Paid 01/10/2014 $19008.00

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Page :    9
Account # : 123718402                    A&A-142



CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



Page : 10
Account # : 123718402

A&A-143



USAO_00014333
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Page : 11
Account # : 123718402

A&A-144

USAO_00014334

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER



Page : 12
Account # : 123718402

A&A-145

ART AND ARCHITECTURE BOOKS OF THE 21ST CENTURY DBA ACE GALLERY (GENERAL ACCT)
LOS ANGELES, CA

1717

PAY TO THE ORDER OF L.A. DEPT OF WATER & POWER $ 151.19

One Hundred and Fifty One and 19/100 Dollars DOLLARS

MEMO ACCOUNT # 277 418 0000

1717 Paid 01/31/2014 $151.19

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit Y

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

| In Re: Art and Architecture Books of the 21st Century Debtor(s). | CHAPTER 11 (BUSINESS) | |
|---|---|---|
| | Case Number: | 2:13-bk-14135-RK |
| | Operating Report Number: | 17 |
| | For the Month Ending: | 6/30/14 |

I. CASH RECEIPTS AND DISBURSEMENTS
A. (GENERAL ACCOUNT*)

| | | | |
|---|---|---|---|
| 1. TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS | | | 7,499,294.71 |
| 2. LESS: TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL ACCOUNT REPORTS | | | 7,497,968.39 |
| 3. BEGINNING BALANCE: | | | 1,326.32 |
| 4. RECEIPTS DURING CURRENT PERIOD: | | | |
| Accounts Receivable - Post-filing | | 541,760.00 | |
| Accounts Receivable - Pre-filing | | 6,360.00 | |
| General Sales | | 530.77 | |
| Other (Specify) | Customer Deposit | | |
| Other | Ace Museum | 44,000.00 | |
| Other | Rent Income & Misc | 3,827.86 | |
| Transfer from Lawyer's Trust Account | | 1,154.71 | |
| Transfer from Rent Account | | 99,500.00 | |
| TOTAL RECEIPTS THIS PERIOD: | | | 697,133.34 |
| 5. BALANCE: | | | |
| 6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD | | | |
| Transfers to Other DIP Accounts (from page 2) | | 75,771.71 | |
| Disbursements (from page 2) | | 531,798.04 | |
| TOTAL DISBURSEMENTS THIS PERIOD:*** | | | 607,569.75 |
| 7. ENDING BALANCE: | | | 90,889.91 |

8. General Account Number(s): [redacted]402

Depository Name & Location:
City National Bank
400 N Roxbury Dr
Beverly Hills, Ca. 90210

* All receipts must be deposited into the general account.
** Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold, o whom, terms, and date of Court Order or Report of Sale.
*** his amount should be the same as the total from page 2.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# Exhibit Z

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**Ace Museum Loan Balance**

| MOR # | Period End Date | Ace Museum Loan (Account Receivable Pre-petition) | Balance Correct? |
|---|---|---|---|
| 1 | 2/28/2013 | $ 4,501,971.82 | Yes |
| 2 | 3/31/2013 | $ - | No |
| 2 Amended | 3/31/2013 | $ 4,501,971.82 | Yes |
| 3 | 4/30/2013 | $ 4,501,971.82 | Yes |
| 3 Amended | 4/30/2013 | $ 4,256,971.82 | No |
| 4 | 5/31/2013 | $ 4,501,971.82 | Yes |
| 4 Amended | 5/31/2013 | $ 4,256,971.82 | No |
| 5 | 6/30/2013 | $ 4,501,971.82 | Yes |
| 5 Amended | 6/30/2013 | $ 4,256,971.82 | No |
| 6 | 7/31/2013 | $ 4,216,971.02 | No |
| 7 | 8/31/2013 | $ 4,201,971.82 | No |
| 8 | 9/30/2013 | $ 4,064,896.82 | No |
| 9 | 10/31/2013 | $ 4,053,896.82 | No |
| 10 | 11/30/2013 | $ 3,987,396.82 | No |
| 11 | 12/31/2013 | $ 3,803,859.80 | No |
| 12 | 1/31/2014 | $ 3,793,859.80 | No |
| 13 | 2/28/2014 | $ 3,775,859.86 | No |
| 14 | 3/31/2014 | $ 3,738,059.80 | No |
| 15 | 4/30/2014 | $ 3,731,959.80 | No |
| 16 | 5/31/2014 | $ 3,731,959.80 | No |
| 17 | 6/30/2014 | $ 3,687,959.80 | No |
| 18 | 7/31/2014 | $ 3,687,959.80 | No |
| 19 | 8/31/2014 | $ 3,591,959.80 | No |
| 20 | 9/30/2014 | $ 3,516,459.80 | No |
| 21 | 10/31/2014 | $ 3,506,759.80 | No |
| 22 | 11/30/2014 | $ 3,306,959.80 | No |
| 23 | 12/31/2014 | $ 3,262,959.80 | No |
| 24 | 1/31/2015 | $ 3,260,359.80 | No |
| 25 | 2/28/2015 | $ 3,252,359.80 | No |
| 26 | 3/31/2015 | $ 3,252,359.80 | No |
| 27 | 4/30/2015 | $ 3,230,359.80 | No |
| 28 | 5/31/2015 | $ 3,225,859.80 | No |
| 29 | 6/30/2015 | $ 3,168,859.80 | No |
| 30 | 7/31/2015 | $ 3,168,859.80 | No |
| 31 | 8/31/2015 | $ 3,168,859.80 | No |
| 32 | 9/30/2015 | $ 3,168,859.80 | No |
| 33 | 10/31/2015 | $ 3,165,359.80 | No |
| 34 | 11/30/2015 | $ 3,165,359.80 | No |
| 35 | 12/31/2015 | $ 3,227,539.80 | No |
| 36 | 1/31/2016 | $ 3,187,539.80 | No |

**BRG Work Product**

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

## Accounts Receivable

| MOR # | Period End Date | Accounts Receivable Post-petition | Support for Balance? |
|---|---|---|---|
| 1 | 2/28/2013 | 0.00 | Yes |
| 2 | 3/31/2013 | 0.00 | Yes |
| 2 Amended | 3/31/2013 | 0.00 | Yes |
| 3 | 4/30/2013 | 0.00 | Yes |
| 3 Amended | 4/30/2013 | 318,990.61 | No |
| 4 | 5/31/2013 | 0.00 | Yes |
| 4 Amended | 5/31/2013 | 418,112.00 | No |
| 5 | 6/30/2013 | 0.00 | Yes |
| 5 Amended | 6/30/2013 | 503,032.93 | No |
| 6 | 7/31/2013 | 1,317,977.85 | No |
| 7 | 8/31/2013 | 1,031,004.43 | No |
| 8 | 9/30/2013 | 1,669,890.43 | No |
| 9 | 10/31/2013 | 1,484,015.43 | No |
| 10 | 11/30/2013 | 1,970,915.43 | No |
| 11 | 12/31/2013 | 2,371,615.43 | No |
| 12 | 1/31/2014 | 2,203,315.43 | No |
| 13 | 2/28/2014 | 2,167,343.45 | No |
| 14 | 3/31/2014 | 3,402,384.78 | No |
| 15 | 4/30/2014 | 3,395,944.60 | No |
| 16 | 5/31/2014 | 3,815,566.32 | No |
| 17 | 6/30/2014 | 3,862,968.01 | No |
| 18 | 7/31/2014 | 3,855,901.66 | No |
| 19 | 8/31/2014 | 3,947,748.93 | No |
| 20 | 9/30/2014 | 4,268,188.10 | No |
| 21 | 10/31/2014 | 4,212,705.40 | No |
| 22 | 11/30/2014 | 4,359,643.13 | No |
| 23 | 12/31/2014 | 4,488,463.63 | No |
| 24 | 1/31/2015 | 4,003,413.63 | No |
| 25 | 2/28/2015 | 4,882,821.13 | No |
| 26 | 3/31/2015 | 5,122,855.89 | No |
| 27 | 4/30/2015 | 5,231,193.63 | No |
| 28 | 5/31/2015 | 5,173,358.70 | No |
| 29 | 6/30/2015 | 5,370,733.70 | No |
| 30 | 7/31/2015 | 5,538,600.70 | No |
| 31 | 8/31/2015 | 5,649,038.70 | No |
| 32 | 9/30/2015 | 6,002,787.70 | No |
| 33 | 10/31/2015 | 5,283,247.70 | No |
| 34 | 11/30/2015 | 5,481,074.55 | No |
| 35 | 12/31/2015 | 5,894,782.05 | No |
| 36 | 1/31/2016 | 6,039,444.40 | No |

BRG Work Product

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| MOR # | Period End Date | Receipts per MOR - Accounts Receivable Post Filing |
|---|---|---|
| 1 | 2/28/2013 | 0.00 |
| 2 | 3/31/2013 | 0.00 |
| 2 Amended | 3/31/2013 | 0.00 |
| 3 | 4/30/2013 | 92,122.54 |
| 3 Amended | 4/30/2013 | 0.00 |
| 4 | 5/31/2013 | 255,000.00 |
| 4 Amended | 5/31/2013 | 318,990.61 |
| 5 | 6/30/2013 | 415,901.00 |
| 5 Amended | 6/30/2013 | 415,901.00 |
| 6 | 7/31/2013 | 56,000.00 |
| 7 | 8/31/2013 | 738,965.00 |
| 8 | 9/30/2013 | 1,471.50 |
| 9 | 10/31/2013 | 485,740.00 |
| 10 | 11/30/2013 | 0.00 |
| 11 | 12/31/2013 | 119,280.00 |
| 12 | 1/31/2014 | 596,000.00 |
| 13 | 2/28/2014 | 166,000.00 |
| 14 | 3/31/2014 | 303,196.00 |
| 15 | 4/30/2014 | 391,845.75 |
| 16 | 5/31/2014 | 176,055.48 |
| 17 | 6/30/2014 | 541,760.00 |
| 18 | 7/31/2014 | 488,089.82 |
| 19 | 8/31/2014 | 317,738.38 |
| 20 | 9/30/2014 | 251,935.80 |
| 21 | 10/31/2014 | 387,982.50 |
| 22 | 11/30/2014 | 225,637.27 |
| 23 | 12/31/2014 | 459,609.50 |
| 24 | 1/31/2015 | 822,932.00 |
| 25 | 2/28/2015 | 49,340.00 |
| 26 | 3/31/2015 | 338,387.50 |
| 27 | 4/30/2015 | 519,412.56 |
| 28 | 5/31/2015 | 371,600.00 |
| 29 | 6/30/2015 | 234,000.00 |
| 30 | 7/31/2015 | 198,415.00 |
| 31 | 8/31/2015 | 232,395.00 |
| 32 | 9/30/2015 | 219,988.00 |
| 33 | 10/31/2015 | 1,025,190.00 |
| 34 | 11/30/2015 | 356,273.00 |
| 35 | 12/31/2015 | 251,610.00 |
| 36 | 1/31/2016 | 0.00 |
|  | Total | 11,061,741.67 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Form **1120**

Department of the Treasury
Internal Revenue Service

# U.S. Corporation Income Tax Return

For calendar year 2012 or tax year beginning 2/1, 2013, ending 10/31, 12

▸ Information about Form 1120 and its separate instructions is at www.irs.gov/form1120.

OMB No. 1545-0123

**2012**

Check if:
a Consolidated return (attach Form 851). . [ ]
b Life/nonlife consolidated return. . . . . . [ ]
2 Personal holding co (attach Sch PH) . . . [ ]
3 Personal service corp (see instrs). . . [ ]
4 Schedule M-3 attached . . . . . . . [ ]

TYPE OR PRINT

ACE GALLERY NEW YORK CORPORATION
5514 WILSHIRE BLVD.
LOS ANGELES, CA 90036

B Employer identification number: 46-2058558
C Date incorporated: 2/01/2013
D Total assets (see instructions): $ 1,205,172.

E Check if: (1) [ ] Initial return (2) [ ] Final return (3) [ ] Name change (4) [ ] Address change

| Section | Line | Description | Ref | Amount |
|---|---|---|---|---|
| INCOME | 1a | Gross receipts or sales | 1a | 2,103,866. |
| | b | Returns and allowances | 1b | |
| | c | Balance. Subtract line 1b from line 1a | 1c | 2,103,866. |
| | 2 | Cost of goods sold (attach Form 1125-A) | 2 | 1,134,038. |
| | 3 | Gross profit. Subtract line 2 from line 1c | 3 | 969,828. |
| | 4 | Dividends (Schedule C, line 19) | 4 | |
| | 5 | Interest | 5 | |
| | 6 | Gross rents | 6 | |
| | 7 | Gross royalties | 7 | |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | 8 | |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | 9 | |
| | 10 | Other income (see instructions — attach schedule) | 10 | |
| | 11 | **Total income.** Add lines 3 through 10 ▸ | 11 | 969,828. |
| DEDUCTIONS (SEE INSTRUCTIONS FOR LIMITATIONS ON DEDUCTIONS) | 12 | Compensation of officers (see instructions — attach Form 1125-E) ▸ | 12 | |
| | 13 | Salaries and wages (less employment credits) | 13 | 22,796. |
| | 14 | Repairs and maintenance | 14 | 2,888. |
| | 15 | Bad debts | 15 | |
| | 16 | Rents | 16 | 655,428. |
| | 17 | Taxes and licenses | 17 | 2,629. |
| | 18 | Interest | 18 | 33,926. |
| | 19 | Charitable contributions | 19 | 758. |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 20 | |
| | 21 | Depletion | 21 | |
| | 22 | Advertising | 22 | 9,500. |
| | 23 | Pension, profit-sharing, etc, plans | 23 | |
| | 24 | Employee benefit programs | 24 | |
| | 25 | Domestic production activities deduction (attach Form 8903) | 25 | |
| | 26 | Other deductions (attach statement) See Statement 1 | 26 | 235,077. |
| | 27 | **Total deductions.** Add lines 12 through 26 ▸ | 27 | 963,002. |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | 28 | 6,826. |
| | 29a | Net operating loss deduction (see instructions) | 29a | |
| | b | Special deductions (Schedule C, line 20) | 29b | |
| | c | Add lines 29a and 29b | 29c | |
| TAX, REFUNDABLE CREDITS, AND PAYMENTS | 30 | **Taxable income.** Subtract line 29c from line 28 (see instructions) | 30 | 6,826. |
| | 31 | Total tax (Schedule J, Part I, line 11) | 31 | 1,365. |
| | 32 | Total payments and refundable credits (Schedule J, Part II, line 21) | 32 | 0. |
| | 33 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ▸ [X] | 33 | 25. |
| | 34 | **Amount owed.** If line 32 is smaller than the total of lines 31 and 33, enter amount owed | 34 | 1,390. |
| | 35 | **Overpayment.** If line 32 is larger than the total of lines 31 and 33, enter amount overpaid | 35 | |
| | 36 | Enter amount from line 35 you want: Credited to 2013 estimated tax ▸ Refunded ▸ | 36 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer ____ Date ____ ▸ President & CEO (Title)

May the IRS discuss this return with the preparer shown below (see instructions)? [X] Yes [ ] No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check [X] if self-employed | PTIN |
|---|---|---|---|---|
| Shirley Holst C.P.A. | Shirley Holst C.P.A. | 9/15/14 | | P01451772 |

Firm's name ▸ Shirley Holst CPA — Firm's EIN ▸ 572761524

Firm's address ▸ 13212 Dewey St.
Los Angeles, CA 90066 — Phone no. (310) 391-9542

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Form 1120 (2012) ACE GALLERY NEW YORK CORPORATION 46-2058558 Page 5

**Schedule L** Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | | | -32,426. |
| 2a Trade notes and accounts receivable | | | 93,063. | |
| b Less allowance for bad debts | | | | 93,063. |
| 3 Inventories | | | | 268,197. |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | | | |
| 6 Other current assets (attach statement) | | | | |
| 7 Loans to shareholders | | | | 50,168. |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach statement) | | | | |
| 10a Buildings and other depreciable assets | | | | |
| b Less accumulated depreciation | | | | |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 14 Other assets (attach statement) See St 3 | | | | 826,170. |
| 15 Total assets | | 0. | | 1,205,172. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | | | 893,575. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach stmt) See St 4 | | | | 14,009. |
| 19 Loans from shareholders | | | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | 309,000. |
| 21 Other liabilities (attach statement) | | | | |
| 22 Capital stock: a Preferred stock | | | | |
| b Common stock | | | | |
| 23 Additional paid-in capital | | | | |
| 24 Retained earnings — Approp (att stmt) | | | | |
| 25 Retained earnings — Unappropriated | | | | -11,412. |
| 26 Adjmt to shareholders' equity (att stmt) | | | | |
| 27 Less cost of treasury stock | | | | |
| 28 Total liabilities and shareholders' equity | | 0. | | 1,205,172. |

**Schedule M-1** **Reconciliation of Income (Loss) per Books With Income per Return**
**Note:** Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more — see instructions

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -11,412. | 7 Income recorded on books this year not included on this return (itemize): Tax-exempt interest $ | |
| 2 Federal income tax per books | | | |
| 3 Excess of capital losses over capital gains | | | |
| 4 Income subject to tax not recorded on books this year (itemize): | | 8 Deductions on this return not charged against book income this year (itemize): a Depreciation $ b Charitable contribns $ | |
| 5 Expenses recorded on books this year not deducted on this return (itemize): a Depreciation $ b Charitable contributions $ 2,492. c Travel & entertainment $ 15,746. | 18,238. | 9 Add lines 7 and 8 | 0. |
| 6 Add lines 1 through 5 | 6,826. | 10 Income (page 1, line 28) — line 6 less line 9 | 6,826. |

**Schedule M-2** **Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L)**

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | | 5 Distributions a Cash | |
| 2 Net income (loss) per books | -11,412. | b Stock c Property | |
| 3 Other increases (itemize): | | 6 Other decreases (itemize): | |
| | | 7 Add lines 5 and 6 | |
| 4 Add lines 1, 2, and 3 | -11,412. | 8 Balance at end of year (line 4 less line 7) | -11,412. |

CPCA0234L 12/28/12 Form 1120 (2012)

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY NEW YORK

5514 WILSHIRE BOULEVARD ·11TH FLOOR
LOS ANGELES · CALIFORNIA · 90036 · TEL 323.935.0088

## BILL OF SALE

MOGUL
THOMAS PISCITELLO / NEAL WAGNER
8262 MELROSE AVENUE
LOS ANGELES, CA 90046
T: (323) 658-5130; F: (323) 658-5120
THOMAS@MOGULLIFE.COM; NEAL@MOGULLIFE.COM

JULY 30, 2013

PAGE 1 OF 1

MOGUL IS PURCHASING THE FOLLOWING WORKS OF ART FROM ACE GALLERY LOS ANGELES:

ARTIST: BERNAR VENET
TITLE: *INDETERMINED LINE,* 1990
MEDIUM: OIL STICK ON PAPER
SIZE: 59 ½" (H) X 71" (W)
PRICE: $125,000.00

ARTIST: CHARLES FINE
TITLE: *FLOR DE INCINO,* 2012
MEDIUM: PATINAED ALUMINUM
SIZE: 44" (H) X 31" (W) X 14" (D)
PRICE: $90,000.00

| | |
|---|---|
| SUBTOTAL: | $215,000.00 |
| LESS: 20% DISCOUNT FOR PAYMENT UPON RECEIPT OF INVOICE | -$43,000.00 |
| NO SALES TAX (RESALE NUMBER ON FILE) | |
| TOTAL AMOUNT DUE UPON RECEIPT OF INVOICE: | $172,000.00 |

[signature] July 20/13

DOUGLAS CHRISMAS
DIRECTOR AND CHIEF CURATOR
DATE

INVOICE # 2022
DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICIT ARTWORK. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORKS PASSES TC PAYMENT IN FULL.

PAID 8/1/13
$ 172,000

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION UNLESS STATED OTHERWISE IN THE BODY AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, I OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER I AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGA THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRA ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSI FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHE NOTIFIED IN WRITING BEFORE SUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**EXHIBIT L**

CHARLES FINE ACE LOS ANGELES CONSIGNMENT

| Description / Inventory # | | Image | Fair Mkt. Value |
|---|---|---|---|
| *TABLE OF CONTENTS,* 2012<br>STEEL, CEMENT, GLASS AND VARIOUS OBJECTS, UNIQUE<br>51-3/4" (H) X 63-1/4" (W) X 66-1/2" (D) | 1 | | $200,000 |
| *GENERATED SEQUENCE, 2004*<br>ALUMINUM<br>52" X 40" X 15"<br>EDITION OF 1 of 3 | 2 | | $72,000 |
| *GENERATED SEQUENCE, 2004*<br>ALUMINUM<br>52" X 40" X 15"<br>EDITION OF 2 of 3 | 3 | | $72,000 |
| *GENERATED SEQUENCE, 2004*<br>ALUMINUM<br>52" X 40" X 15"<br>EDITION OF 3 of 3 | 4 | | $72,000 |
| *UNTITLED,* 2006<br>BRONZE MAQUETTE<br>20" X 10-1/2" X 12-1/2" | 5 | | $56,000 |
| *FLOWER (PETRALIZED)*, 2010-2012<br>CERAMIC, CEMENT, PIGMENT<br>26" (H) X 14" (W) X 14" (D) ENCASED | 6 | | $60,000 |
| *FLOR DE INCINO,* 2012<br>PATINATED ALUMINUM<br>44" (H) X 31" (W) X 14" (D) | 7 | | $72,000 |
| *PARALLEL HISTORY I, (MAQUETTE)* 2005<br>8 BRONZE OBJECTS ON PLASTER BASE<br>22-1/2" X 30" X 7" | 8 | | $100,000 |
| *FOSSIL WEATHER,* 2001<br>OIL, ASPHALTUM, ALKYD RESIN ON CANVAS<br>58.5" X 48.5" | 9 | | $36,000 |
| *UNTITLED (PINK),* 2003<br>OIL, ASPHALTUM, ALKYD RESIN ON CANVAS<br>60" X 48" | 10 | | $36,000 |

HIGHLY CONFIDENTIAL - PROFESSIONAL EYES ONLY
ACE000003

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**MOGUL ENTERPRISES LLC**
8262 MELROSE AVE
LOS ANGELES CA 90046-6821

6795

11-35 1210 CA

Dep 3 - 304

DATE 8/2/13

PAY TO THE ORDER OF Ace Gallery $ 172,000 00/100

One hundred seventy two thousand 00/100 DOLLARS

Bank of America
ACH R/T 121000358

FOR

Thomas Perciballe

City National Bank

CHECKING DEPOSIT

| Branch | Teller | Date | Time |
|---|---|---|---|
| 11 | 5 | 08/02/13 | 05:25 PM |

Account Number
XXXXXXX0229

Deposit Amount: $172,000.00

Thank you for choosing City National
TR:94

A hold for uncollected funds may be placed on funds deposited by check or similar instrument. This could delay your ability to withdraw funds. The delay, if any, would not exceed the period of time permitted by law. You will be notified by mail if a hold is placed on you deposit. Questions regarding our uncollected funds hold policy, may be referred to a branch officer.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Page 1 (18)

**CITY NATIONAL BANK**
The way up.

Account #: 123720229

This statement: August 30, 2013
Last statement: July 31, 2013

001 0830L
ACE GALLERY NEW YORK CORPORATION
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

WITH BUSINESS ONLINE FOR MOBILE AND TREASURY NET FOR MOBILE YOU NOW HAVE SECURE, INSTANT ACCESS TO KEY BUSINESS BANKING SERVICES FROM YOUR MOBILE PHONE BROWSER. LEARN MORE AT CNB.COM/BUSINESSMOBILE.

## Business Elite Checking

**Account Summary**

| | |
|---|---|
| Account number | 123720229 |
| Minimum balance | $136.96 |
| Average balance | $25,420.75 |
| Avg. collected balance | $8,220.00 |

**Account Activity**

| | | | |
|---|---|---|---|
| Beginning balance (7/31/2013) | | | $1,360.77 |
| Credits | Deposits (2) | + 176,000.00 | |
| | Electronic cr (1) | + 10,000.00 | |
| | Other credits (1) | + 2,000.00 | |
| | Total credits | | + $188,000.00 |
| Debits | Checks paid (18) | - 19,557.99 | |
| | Electronic db (8) | - 4,602.82 | |
| | Other debits (6) | - 165,119.00 | |
| | Total debits | | - $189,279.81 |
| Ending balance (8/30/2013) | | | $80.96 |

### DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-2 | Deposit | | 172,000.00 |
| 8-30 | Deposit | | 4,000.00 |

### ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 8-26 | Incoming Wire-Dom | 10,000.00 |

### OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-21 | Account Transfer Cr. FR ACC 00123206347 | | 2,000.00 |

### CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1068 | 8-13 | 750.00 | 1126 | 8-13 | 1,500.00 | 1130 | 8-19 | 207.46 | 1134 | 8-27 | 5,650.71 |
| 1121 * | 8-19 | 560.00 | 1127 | 8-9 | 227.37 | 1131 | 8-14 | 400.00 | 1135 | 8-29 | 2,000.00 |
| 1124 * | 8-5 | 1,200.00 | 1128 | 8-9 | 250.00 | 1132 | 8-22 | 200.00 | 1136 | 8-28 | 53.40 |
| 1125 | 8 7 | 200.00 | 1129 | 8-13 | 159.05 | 1133 | 8-29 | 500.00 | 1137 | 8-30 | 1,200.00 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

ACE GALLERY NEW YORK CORPORATION
August 30, 2013

Page 2
Account #: 123720229

CHECKS PAID (Continued)

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1138 | 8-30 | 4,000.00 | 1515 * | 8-22 | 500.00 | * Skip in check sequence | | | | | |

ELECTRONIC DEBITS

| Date | Description | Debits |
|---|---|---|
| 8-8 | Preauthorized Debit CHASE EPAY 130808 | 500.00 |
| 8-9 | Preauthorized Debit CAPITAL ONE ONLINE PMT 130808 322039919006688 | 500.00 |
| 8-9 | Preauthorized Debit CAPITAL ONE ONLINE PMT 130808 322039919006689 | 500.00 |
| 8-9 | Preauthorized Debit CAPITAL ONE ONLINE PMT 130808 322039919006690 | 500.00 |
| 8-9 | Preauthorized Debit CAPITAL ONE ONLINE PMT 130808 322039919006691 | 500.00 |
| 8-14 | Preauthorized Debit ATT PAYMENT 130814 579821003IVRDU | 102.82 |
| 8-22 | Preauthorized Debit CHASE EPAY 130822 | 1,000.00 |
| 8-28 | Preauthorized Debit CHASE EPAY 130828 | 1,000.00 |

OTHER DEBITS

| Date | Description | Reference | Debits |
|---|---|---|---|
| 8-6 | Account Transfer Dr. TO ACC 00123206347 | | 165,000.00 |
| 8-16 | Monthly Service Chg TNET FOR BB ELITE WIRE MAINT FOR 07/13 | | 50.00 |
| 8-26 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 8-30 | Service Charge ENHANCED IMAGE STM | | 3.00 |
| 8-30 | Service Charge BUS PACKAGE FEE | | 50.00 |
| 8-30 | Maintenance Fee | | 3.00 |

DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|---|---|
| 7-31 | 1,360.77 | 8-8 | 6,460.77 | 8-19 | 254.07 | 8-28 | 3,836.96 |
| 8-2 | 173,360.77 | 8-9 | 3,983.40 | 8-21 | 2,254.07 | 8-29 | 1,336.96 |
| 8-5 | 172,160.77 | 8-13 | 1,574.35 | 8-22 | 554.07 | 8-30 | 80.96 |
| 8-6 | 7,160.77 | 8-14 | 1,071.53 | 8-26 | 10,541.07 | | |
| 8-7 | 6,960.77 | 8-16 | 1,021.53 | 8-27 | 4,890.36 | | |

Thank you for banking with City National Bank

EXHIBIT A - 46

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**CITY NATIONAL BANK**
The way up.

Page 1 (17)

Account #: 123206347

This statement: August 30, 2013
Last statement: July 31, 2013

0830L

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001
ACE MUSEUM
5514 WILSHIRE BLVD
LOS ANGELES CA 90036

WITH BUSINESS ONLINE FOR MOBILE AND TREASURY NET FOR MOBILE YOU NOW HAVE SECURE, INSTANT ACCESS TO KEY BUSINESS BANKING SERVICES FROM YOUR MOBILE PHONE BROWSER. LEARN MORE AT CNB.COM/BUSINESSMOBILE.

## Non-Profit Checking Account

**Account Summary**

| | |
|---|---|
| Account number | 123206347 |
| Minimum balance | $522.36 |
| Average balance | $3,954.25 |
| Avg. collected balance | $3,247.00 |

**Account Activity**

| | | | |
|---|---|---|---|
| Beginning balance (7/31/2013) | | | $1,855.22 |
| Credits | Deposits (3) | + 11,800.00 | |
| | Electronic cr (0) | + 0.00 | |
| | Other credits (1) | + 165,000.00 | |
| | Total credits | | + $176,800.00 |
| Debits | Checks paid (17) | - 9,031.08 | |
| | Electronic db (2) | - 165,000.00 | |
| | Other debits (3) | - 2,014.00 | |
| | Total debits | | - $176,045.08 |
| Ending balance (8/30/2013) | | | $2,610.14 |

### DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-1 | Deposit | | 6,600.00 |
| 8-16 | Deposit | | 2,500.00 |
| 8-27 | Deposit | | 2,700.00 |

### OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-6 | Account Transfer Cr. FR ACC 00123720228 | | 165,000.00 |

### CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2479 | 8-12 | 223.32 | 2485 | 8-16 | 700.00 | 2490 | 8-19 | 47.53 | 2495 | 8-21 | 1,492.58 |
| 2481 * | 8-6 | 961.97 | 2486 | 8-7 | 935.71 | 2491 | 8-20 | 31.65 | 2497 * | 8-30 | 297.53 |
| 2482 | 8-8 | 685.13 | 2487 | 8-8 | 527.78 | 2492 | 8-27 | 198.50 | | | |
| 2483 | 8-27 | 25.00 | 2488 | 8-14 | 274.93 | 2493 | 8-29 | 91.19 | | | |
| 2484 | 8-5 | 1,470.40 | 2489 | 8-14 | 574.17 | 2494 | 8-23 | 493.69 | | | |

* Skip in check sequence

EXHIBIT U - 328

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

WIRE TRANSFERS

| Bank ID | Debit Account | Debit Party Name | Credit Account | Credit Party Name | Originator | Beneficiary | Tran Date | Tran Num | Amount |
|---|---|---|---|---|---|---|---|---|---|
| CNB | D/123206347 | ACE MUSEUM | [redacted] | BANK OF CHINA | | YU PENG | 20100528 | 6133 | 5455.4 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110606 | 2260 | 126000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110715 | 7447 | 110000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110729 | 9008 | 31000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110802 | 4124 | 1000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20110803 | 5298 | 116000 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20111117 | 2533 | 3500 |
| CNB | D/113210176 | ART AND ARCHITECTURE BOOKS OF THE | D/123206347 | ACE MUSEUM | | | 20111201 | 8082 | 10000 |
| CNB | [redacted] | WELLS FARGO BANK | D/123206347 | ACE MUSEUM | MOVE ON CIVC ACTION GENERAL ACCOUNT | | 20120222 | 4323 | 17500 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20120302 | 5717 | 125000 |
| CNB | [redacted] | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | THE HAPSMITH CO. | | 20120302 | 3247 | 97000 |
| CNB | [redacted] | UNION BANK OF CALIFORNIA | D/123206347 | ACE MUSEUM | HAPSMITH COMPANY, THE | | 20120302 | 3227 | 28000 |
| CNB | [redacted] | SILICON VALLEY BANK | D/123206347 | ACE MUSEUM | SAY MEDIA INC | | 20120615 | 8074 | 8750 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. LA BREA LLC | 20120705 | 6752 | 125000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20120905 | 6033 | 125000 |
| CNB | [redacted] | THE VISIONARY GROUP, LLC | D/123206347 | ACE MUSEUM | | | 20130111 | 5254 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130131 | 6228 | 100000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130220 | 5650 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | G/09811201000 | WELLS FARGO BANK | | Ace Gallery New York | 20130222 | 7446 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130311 | 3869 | 137500 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130311 | 839 | 8982 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130320 | 952 | 8982 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | YELLOWHOUSE EVENTS INC | | 20130320 | 2410 | 8982 |
| CNB | [redacted] | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20130402 | 4712 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130408 | 2065 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE 2 | | | 20130408 | 4262 | 20000 |
| CNB | [redacted] | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20130411 | 498 | 79982 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130411 | 1849 | 78000 |
| CNB | [redacted] | AMERICAN SECURITY BANK | D/123206347 | ACE MUSEUM | HOMESTEAD ESCROW A CALIFORNIA CORP. | | 20130412 | 7354 | 125000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130412 | 7675 | 75000 |
| CNB | [redacted] | AMERICAN SECURITY BANK | D/123206347 | ACE MUSEUM | HOMESTEAD ESCROW A CALIFORNIA CORP. | | 20130412 | 7316 | 6880.45 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130417 | 6595 | 136975.2 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130417 | 5010 | 30000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130417 | 7041 | 5000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130419 | 5359 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130419 | 1846 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130423 | 6858 | 22000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130521 | 5540 | 138174.5 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130606 | 4271 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130705 | 6321 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130722 | 4282 | 15000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130726 | 3681 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20130806 | 4747 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20130806 | 4748 | 15000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20130909 | 5793 | 68000 |
| CNB | [redacted] | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20130913 | 6084 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20131024 | 2188 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131107 | 1678 | 9000 |
| CNB | [redacted] | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20131114 | 2285 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131114 | 2426 | 45000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131121 | 2291 | 5000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131122 | 1826 | 7500 |
| CNB | D/123206347 | ACE MUSEUM | [redacted] | CATHAY BANK | | 400 S. La Brea LLC | 20131126 | 2338 | 165000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131203 | 1738 | 85000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20131204 | 1769 | 5187.02 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**400 S LA BREA LLC**
910 Broadway, Suite 110
Santa Monica, CA 90401

**Statement**

**Account** 400 acemuse ACE MUSEUM
**Prop Name** 400 S LA BREA, LLC
**Assigned Spaces**

Douglas Chrismas
ACE MUSEUM
5514 Wilshire Blvd.
Los Angeles, CA 90036

**Date** 09/20/2017
**Payment** $

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 02/08/2013 | ACH | 0.00 | 25,000.00 | 433,084.19 |
| 02/19/2013 | Legal Fees (Shabani & Shabani 02/2013) | 1,146.00 | 0.00 | 434,230.19 |
| 02/21/2013 | Chk# 30302584 - :CHECKscan Payment | 0.00 | 137,500.00 | 296,730.19 |
| 03/01/2013 | ach | 0.00 | 137,525.00 | 159,205.19 |
| 03/01/2013 | Base Rent Commercial (03/2013) | 125,000.00 | 0.00 | 284,205.19 |
| 03/06/2013 | Late Fee, 10% of $125000.00 | 12,500.00 | 0.00 | 296,705.19 |
| 03/11/2013 | Chk#ACH | 0.00 | 137,500.00 | 159,205.19 |
| 03/25/2013 | Chk# 0060900660 | 0.00 | 48,000.00 | 111,205.19 |
| 03/25/2013 | Chk# 30302669 | 0.00 | 104,660.00 | 6,545.19 |
| 04/01/2013 | Base Rent Commercial (04/2013) | 125,000.00 | 0.00 | 131,545.19 |
| 04/05/2013 | Insurance Premium (04/05/2013 - 04/05/2014) | 5,430.00 | 0.00 | 136,975.19 |
| 04/06/2013 | Late Fee, 10% of $125000.00 | 12,500.00 | 0.00 | 149,475.19 |
| 04/08/2013 | Penalty:2012-1st installment Property tax (Parcel#5507- | 239.67 | 0.00 | 149,714.86 |
| 04/08/2013 | Penalty:2012-1st Installment tax (Parcel#5507-009-023) | 87.58 | 0.00 | 149,802.44 |
| 04/17/2013 | ACH | 0.00 | 136,975.19 | 12,827.25 |
| 04/18/2013 | Penalty:2012-2nd Installment Property tax (Parcel#5507- | 249.67 | 0.00 | 13,076.92 |
| 04/18/2013 | Penalty:2012-2nd installment Property tax (Parcel#5507- | 97.58 | 0.00 | 13,174.50 |
| 05/01/2013 | Base Rent Commercial (05/2013) | 200,000.00 | 0.00 | 213,174.50 |
| 05/06/2013 | Late Fee, 10% of $200000.00 | 20,000.00 | 0.00 | 233,174.50 |
| 05/21/2013 | ACH | 0.00 | 138,174.50 | 95,000.00 |
| 06/01/2013 | Base Rent Commercial (06/2013) | 200,000.00 | 0.00 | 295,000.00 |
| 06/06/2013 | ACH | 0.00 | 150,000.00 | 145,000.00 |
| 06/06/2013 | Late Fee, 10% of $50,000.00 | 5,000.00 | 0.00 | 150,000.00 |
| 07/01/2013 | Base Rent Commercial (07/2013) | 200,000.00 | 0.00 | 350,000.00 |
| 07/05/2013 | ACH | 0.00 | 150,000.00 | 200,000.00 |
| 07/05/2013 | Chk# 002471 - :CHECKscan Payment | 0.00 | 40,000.00 | 160,000.00 |
| 07/06/2013 | Late Fee, 10% of $10,000.00 | 1,000.00 | 0.00 | 161,000.00 |
| 08/01/2013 | Base Rent Commercial (08/2013) | 200,000.00 | 0.00 | 361,000.00 |
| 08/06/2013 | ACH | 0.00 | 150,000.00 | 211,000.00 |
| 08/06/2013 | Late Fee, 10% of $50,000.00 | 5,000.00 | 0.00 | 216,000.00 |
| 09/01/2013 | Base Rent Commercial (09/2013) | 200,000.00 | 0.00 | 416,000.00 |
| 09/07/2013 | Late Fee Late Fee, 10% of $200000.00 | 20,000.00 | 0.00 | 436,000.00 |
| 09/18/2013 | Chk# 30353476 - :CHECKscan Payment | 0.00 | 165,000.00 | 271,000.00 |
| 10/01/2013 | Base Rent Commercial (10/2013) | 200,000.00 | 0.00 | 471,000.00 |
| 10/07/2013 | Late Fee Late Fee, 10% of $200,000.00 | 20,000.00 | 0.00 | 491,000.00 |
| 10/24/2013 | ACH | 0.00 | 165,000.00 | 326,000.00 |
| 11/01/2013 | Base Rent Commercial (11/2013) | 200,000.00 | 0.00 | 526,000.00 |
| 11/06/2013 | Late Fee Late Fee, 10% of $200,000.00 | 20,000.00 | 0.00 | 546,000.00 |
| 11/26/2013 | ACH | 0.00 | 165,000.00 | 381,000.00 |
| 12/01/2013 | Base Rent Commercial (12/2013) | 200,000.00 | 0.00 | 581,000.00 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 2,427,148.02 | 2,427,148.02 |

400 SLB 003352

EXHIBIT X - 488

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

CITY NATIONAL BANK
The way up.

Page 1 (80) A&A-71

Account #: 123718402

This statement: August 30, 2013
Last statement: July 31, 2013

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001 0830K
ART AND ARCHITECTURE BOOKS OF THE 21ST
CENTURY DBA ACE GALLERY (GENERAL ACCT)
DIP CASE NO. 2:13-BK-14135-RK
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

WITH BUSINESS ONLINE FOR MOBILE AND TREASURY NET FOR MOBILE YOU NOW HAVE SECURE, INSTANT ACCESS TO KEY BUSINESS BANKING SERVICES FROM YOUR MOBILE PHONE BROWSER. LEARN MORE AT CNB.COM/BUSINESSMOBILE.

## Checking Account

| Account Summary | |
|---|---|
| Account number | 123718402 |
| Minimum balance | $3,701.06 |
| Average balance | $101,339.28 |
| Avg. collected balance | $100,777.00 |

| Account Activity | | | |
|---|---|---|---|
| Beginning balance (7/31/2013) | | | $4,182.62 |
| Credits | Deposits (10) | + 7,067.34 | |
| | Electronic cr (11) | + 939,765.00 | |
| | Other credits (2) | + 87,108.09 | |
| | Total credits | | + $1,033,940.43 |
| Debits | Checks paid (80) | - 356,570.34 | |
| | Electronic db (12) | - 515,315.59 | |
| | Other debits (30) | - 53,320.00 | |
| | Total debits | | - $925,205.93 |
| Ending balance (8/30/2013) | | | $112,917.12 |

## DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-1 | Deposit | | 91.00 |
| 8-1 | Deposit | | 120.00 |
| 8-2 | Deposit | | 500 00 |
| 8-2 | Deposit | | 3,760.00 |
| 8-14 | Deposit | | 161.00 |
| 8-14 | Deposit | | 669.18 |
| 8-16 | Deposit | | 27.00 |
| 8-16 | Deposit | | 1,020.00 |
| 8-27 | Deposit | | 181.00 |
| 8-27 | Deposit | | 538.16 |

## ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 8-5 | Preauthorized Credit NPC MERCH PYMT PROC 130805 0012677845 | 100.00 |
| 8-5 | Preauthorized Credit NPC MERCH PYMT PROC 130805 0012677845 | 100.00 |
| 8-6 | Wire Tsfr Credit | 15,000.00 |
| 8-8 | Incoming Wire-Dom | 179,980.00 |
| 8-12 | Incoming Wire-Dom | 28,965.00 |
| 8-12 | Incoming Wire-Dom | 500,000.00 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

ARTIST: LAURIE LIPTON

CONSIGNMENTS
ACE GALLERY LOS ANGELES

| Description | | Image | Fair Mkt. Value |
|---|---|---|---|
| *TIME TRAVEL*, 2008<br>CHARCOAL AND GRAPHITE ON PAPER<br>48-1/2" (H) X 37-3/4" (W)<br>60" (H) X 49-3/4" (W) X 1-3/8" (D)FRAMED | 1 | | $ 24,000.00 |
| *KNITTER OF BONES*, 2011<br>CHARCOAL AND GRAPHITE ON PAPER<br>27-1/2" (H) X 38-3/4" (W)<br>39-1/2" (H) X 43" (W) X 1-3/8" (D)FRAMED | 2 | | $20,000.00 |
| *PANDORA'S BOX*, 2011<br>CHARCOAL AND GRAPHITE ON PAPER<br>39" (H) X 27-3/4" (W)<br>48-3/4" (H) X 37-3/4" (W) X 1-3/8" (D) FRAMED | 3 | | $ 20,000.00 |
| *PERMANENT*, 2009<br>CHARCOAL AND GRAPHITE ON PAPER<br>52-1/2" (H) X 23" (W)<br>64" (H) X 34-3/4" (W) X 1-3/8" (D) FRAMED | 4 | | $24,000.00 |
| *THE GARDEN OF EARTHLY DELIGHTS*, 2009<br>CHARCOAL AND GRAPHITE ON PAPER<br>37-1/4" (H) X 52-1/2" (W)<br>49" (H) X 64-1/4"" (W) X 1-3/8" (D)FRAMED | 5 | | $ 28,000.00 |
| *THE DEAD FACTORY*, 2009<br>CHARCOAL AND GRAPHITE ON PAPER<br>32-1/2" (H) X 51-1/2" (W)<br>44" (H) X 63-1/2" (W) X 1-3/8" (D)FRAMED | 6 | | $ 24,000.00 |
| *THE FOURTH HORSEMAN*, 2005<br>CHARCOAL AND GRAPHITE ON PAPER<br>38-1/2" (H) X 28-3/4" (W)<br>50" (H) X 40-3/4" (W) X 1-3/8" (D) FRAMED | 7 | | $ 16,000.00 |
| *MANUFACTURE*, 2009<br>CHARCOAL AND GRAPHITE ON PAPER<br>36-3/4" (H) X 50" (W)<br>48-1/2" (H) X 61-3/8" (W) X 1-3/8" (D)FRAMED | 8 | | $ 28,000.00 |
| *BUMPER TO BUMPER*, 2012<br>CHARCOAL AND GRAPHITE ON PAPER<br>38-1/2" (H) X 58" (W)<br>50"(H) X 69-1/2"(W) X 1-3/8"(D) FRAMED | 9 | | $ 30,400.00 |

HIGHLY CONFIDENTIAL - PROFESSIONAL EYES ONLY

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| Description / Inventory # | | Image | Fair Mkt. Value |
|---|---|---|---|
| *SHOP,* 2009<br>CHARCOAL AND GRAPHITE ON PAPER<br>28" (H) X 36-1/4" (W)<br>39-3/4" (H) X 48" (W) X 1-3/8" (D) FRAMED | 10 | | $20,000.00 |
| *AUGMENTAL,* 2011<br>CHARCOAL AND GRAPHITE ON PAPER<br>67" (H) X 52-3/8" (W)<br>78-1/2" (H) X 64-1/8" (W) X 1-3/8"(D)FRAMED | 11 | | $36,000.00 |
| *ROUND AND ROUND,* 2012<br>CHARCOAL AND GRAPHITE ON PAPER<br>37" (H) X 52-3/4" (W)<br>48-1/2" (H) X 64" (W) X 1-3/8"(D)FRAMED | 12 | | $28,000.00 |
| *WALKING THE DOG,* 2012<br>CHARCOAL AND GRAPHITE ON PAPER<br>61-1/2" (H) X 47-1/2" (W)<br>73-1/8" (H) X 59" (W) X 1-3/8"(D)FRAMED | 13 | | $36,000.00 |
| *VENICE BEACH,* 2011<br>CHARCOAL AND GRAPHITE ON PAPER<br>39" (H) X 28-1/2" (W)<br>50-1/4" (H) X 39-3/4" (W) X 1-3/8" (D) FRAME | 14 | | $20,000.00 |
| *PARAMBULATOR,* 2009<br>CHARCOAL AND GRAPHITE ON PAPER<br>26" (H) X 39" (W)<br>38" (H) X 50-1/2" (W) X 1-3/8" (D) | 15 | | $20,000.00 |
| *CELEBRITY,* 2006<br>CHARCOAL AND GRAPHITE ON PAPER<br>23-1/2" (H) X 63" (W)<br>35" (H) X 53" (W) X 1-3/8"(D) FRAMED | 16 | | $20,000.00 |
| *ENHANCED,* 2011<br>CHARCOAL AND GRAPHITE ON PAPER<br>38" (H) X 29" (W)<br>49-1/2" (H) X 40-5/8" (W) X 1-3/8" (D)FRAMED | 17 | | $20,000.00 |
| *DEMOCRACY,* 2012<br>CHARCOAL AND GRAPHITE ON PAPER<br>27-3/4" (H) X 34-1/2" (W)<br>39-1/8" (H) X 46-1/8" (W) X 1-3/8" (D) FRAMED | 18 | | $16,000.00 |
| *THE CONSUMPTION,* 2011<br>CHARCOAL AND GRAPHITE ON PAPER<br>39" (H) X 27-3/4" (W)<br>50-1/4"(H) X 39-1/4"(W)X 1-3/4"(D)FRAMED | 19 | | $20,000.00 |

HIGHLY CONFIDENTIAL - PROFESSIONAL EYES ONLY

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| Description | | Image | Fair Mkt. Value |
|---|---|---|---|
| *BONE CHINA*, 2010<br>CHARCOAL AND GRAPHITE ON PAPER<br>21-1/2" (H) X 22-3/4" (W)<br>33" (H) X 34-1/4" (W) X 1-3/8" (D) FRAMED | 20 | | $12,800.00 |
| *HUNG UP AND OVER*, 2003<br>CHARCOAL AND GRAPHITE ON PAPER<br>21-3/4" (H) X 14-1/2" (W) PAPER SIZ<br>33-1/2" (H) X 26-1/8" (W) FRAME SIZE | 21 | | $11,200.00 |
| *THE ILLUSION OF CONTROL TOWER*, 2012<br>CHARCOAL AND GRAPHITE ON PAPER<br>45-1/2" (H) X 122" (W) PAPER SIZE<br>56-1/2" (H) X 132-1/2" (W) FRAMED | 22 | | $68,000.00 |
| *THE FATES*, 2012<br>CHARCOAL AND PENCIL ON PAPER<br>81-1/2" (H) X 67-1/2" (W)<br>91-1/2" (H) X 79-1/2" (W) FRAMED | 23 | | $68,000.00 |
| *ON*, 2013<br>PENCIL AND CHARCOAL ON PAPER<br>8' (H) X 6' (W) | 24 | | $76,000.00 |
| | 25 | | |
| | 26 | | |
| | 27 | | |
| | 28 | | |
| TOTAL: | | | $686,400.00 |

HIGHLY CONFIDENTIAL - PROFESSIONAL EYES ONLY

ACE000063

USAO_00014355

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY

5514 WILSHIRE BOULEVARD ·11TH FLOOR
LOS ANGELES · CALIFORNIA · 90036 · TEL 323.935.0088

## INVOICE

DR. PETER BOASBERG, M.D.
829 WARNER AVENUE
LOS ANGELES, CA 90024
TEL: (310) 930 5941

JUNE 19, 2014

PAGE 1 OF 1

PETER BOASBERG IS PURCHASING THE FOLLOWING WORK OF ART FROM ACE GALLERY:

| | | |
|---|---|---|
| ARTIST: | LAURIE LIPTON | |
| TITLE: | *HUNG UP AND OVER, 2003* | |
| MEDIUM: | PENCIL AND CHARCOAL PENCIL ON PAPER | |
| SIZE: | 21 ¾" (H) X 14 ½" (W) | |
| FRAMED: | 33 ½" (H) X 26" (W) | |
| PRICE | | $20,000.00 |

| | |
|---|---|
| DISCOUNT FOR IMMEDIATE PAYMENT | $3,000.00 |
| SUBTOTAL: | $17,000.00 |
| CA SALES TAX OF 9% | $1,530.00 |
| TOTAL DUE UPON RECEIPT OF INVOICE: | $18,530.00 |

(WIRING INSTRUCTIONS ATTACHED)

*PLEASE SUPPLY THE FEDERAL REFERENCE NUMBER OF ALL WIRES TO ACCOUNTING@ACEGALLERY.NET SO THAT PAYMENT MAY BE TRACED IF NECESSARY

PAID
CK#5387
6/26/14
$18,530—
Cost $11,200

[signature] June 19/14

DOUGLAS CHRISMAS DATE
DIRECTOR AND CHIEF CURATOR
INVOICE # 2050

DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICITY OF THE ABOVE DESCRIBED ARTWORK. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORKS PASSES TO THE BUYER UPON RECEIPT OF PAYMENT IN FULL.

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY LOS ANGELES UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. PURCHASER AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID, ANY DEPOSIT BE RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHES TO RESELL THE ARTWORK, ACE GALLERY MUST BE NOTIFIED IN WRITING BEFORE SUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

WARNING: DO NOT CASH IF "SECURE CHECK" FEATURES LISTED ON BACK INDICATE TAMPERING OR COPYING

Peter Boasberg
11818 Wilshire Blvd #200
Los Angeles, CA 90025
310-231-2121

U.S. BANK NATIONAL ASSOCIATION
23rd and santa monica blvd
santa monica, ca 90404
90-3582/1222

5387

6-25-14

PAY TO THE ORDER OF ACE New York $ 18530—

eighteen thousand & five hundred & thirty & no/100 DOLLARS

MEMO

⑈005387⑈ ⑆122235821⑆ 153454144889⑈

City National Bank

CHECKING DEPOSIT

| Branch | Teller | Date | Time |
|---|---|---|---|
| 11 | 1 | 06/26/14 | 12:18 PM |

Account Number
XXXXXXX0229

Deposit Amount: $18,530.00

Thank you for choosing City National
TR:26

A hold for uncollected funds may be placed on funds deposited by check or similar instrument. This could delay your ability to withdraw funds. The delay, if any, would not exceed the period of time permitted by law. You will be notified by mail if a hold is placed on your deposit. Questions regarding our uncollected funds hold policy, may be referred to a branch officer.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

CITY NATIONAL BANK
The way up.

Page 1 (15)

**Account #:** 123720229

This statement: June 30, 2014
Last statement: May 30, 2014

**Contact us:**
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001 0830L
ACE GALLERY NEW YORK CORPORATION
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

GO GREEN, GO CONVENIENT, GO PAPERLESS. YOU CAN NOW SUPPRESS YOUR PAPER STATEMENTS FOR ALL BUSINESS CHECKING, BUSINESS SAVINGS, AND BUSINESS MONEY MARKET ACCOUNTS AND RECEIVE YOUR STATEMENTS ELECTRONICALLY.

**Business Elite Checking**

**Account Summary**

| | |
|---|---|
| Account number | 123720229 |
| Minimum balance | $-24,996.63 |
| Average balance | $40,636.43 |
| Avg. collected balance | $36,016.00 |

**Account Activity**

| | | | |
|---|---|---|---|
| **Beginning balance (5/30/2014)** | | | -$974.19 |
| **Credits** | Deposits (2) | + 89,380.00 | |
| | Electronic cr (3) | + 432,000.00 | |
| | Other credits (6) | + 74,520.00 | |
| | **Total credits** | | + $595,900.00 |
| **Debits** | Checks paid (16) | - 61,355.44 | |
| | Electronic db (11) | - 35,800.00 | |
| | Other debits (11) | - 154,750.00 | |
| | **Total debits** | | - $251,905.44 |
| **Ending balance (6/30/2014)** | | | $343,020.37 |

**DEPOSITS**

| Date | Description | Reference | Credits |
|---|---|---|---|
| 6-16 | Deposit | | 70,850.00 |
| 6-26 | Deposit | | 18,530.00 |

**ELECTRONIC CREDITS**

| Date | Description | Credits |
|---|---|---|
| 6-5 | Incoming Wire-Dom | 50,000.00 |
| 6-11 | Incoming Wire-Dom | 57,000.00 |
| 6-30 | Incoming Wire-Dom | 325,000.00 |

**OTHER CREDITS**

| Date | Description | Reference | Credits |
|---|---|---|---|
| 6-2 | Account Transfer Cr. FR ACC 00123206347 | | 1,000.00 |
| 6-2 | Account Transfer Cr. FR ACC 00123206347 | | 9,400.00 |
| 6-2 | Account Transfer Cr. FR ACC 00123206347 | | 38,000.00 |
| 6-19 | Account Transfer Cr. FR ACC 00123206347 | | 1,050.00 |
| 6-23 | NSF Returned Item CHECK 1289 | 00001289 | 25,000.00 |
| 6-24 | Account Transfer Cr. FR ACC 00123206347 | | 70.00 |

EXHIBIT A - 95

# ACE GALLERY LOS ANGELES

5514 WILSHIRE BOULEVARD · LOS ANGELES · CALIFORNIA · 90036 ·
TEL 323.935.4411 · ACEGALLERY@ACEGALLERY.NET

## BILL OF SALE

AXEL SHALSON
2641 LAKE HOLLYWOOD DRIVE
LOS ANGELES, CA 90068
TEL: W (323) 661 3602 C (213) 675 2935
EMAIL: AXEL@LAKEHOLLYWOOD.NET

~~FEBRUARY 13, 20~~15

PAGE 1 OF 1

AXEL SHALSON IS PURCHASING THE FOLLOWING WORK OF ART FROM ACE GALLERY LOS ANGELES:

| | | |
|---|---|---|
| ARTIST: | LAURIE LIPTON | |
| TITLE: | *ROUND AND ROUND*, 2012 | |
| MEDIUM: | CHARCOAL & GRAPHITE ON PAPER | |
| SIZE: | 37" (H) X 52 ¾ " (W) | |
| | 48 ½" (H) X 64" (W) X 1 3/8" (D) FRAMED | |
| PRICE | | $33,000.00 |

| | |
|---|---|
| CA SALES TAX OF 9%: | $2,970.00 |
| TOTAL DUE UPON RECEIPT OF INVOICE: | $35,970.00 |

(WIRING INSTRUCTIONS ATTACHED)

DOUGLAS CHRISMAS DATE
DIRECTOR AND CHIEF CURATOR
INVOICE # 1792

DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICITY OF THE ABOVE DESCRIBED ARTWORK. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORKS PASSES TO THE BUYER UPON RECEIPT OF PAYMENT IN FULL.

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY LOS ANGELES UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. PURCHASER AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID, ANY DEPOSIT BE RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHES TO RESELL THE ARTWORK, ACE GALLERY MUST BE NOTIFIED IN WRITING BEFORE SUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

CITY NATIONAL BANK
The way up.

Page 1 (13)

Account #: 123720229

This statement: February 27, 2015
Last statement: January 30, 2015

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001 0830L
ACE GALLERY NEW YORK CORPORATION
5514 WILSHIRE BLVD 2ND FL
LOS ANGELES CA 90036

WITH BUSINESS ONLINE FOR MOBILE AND TREASURY NET FOR MOBILE YOU NOW HAVE SECURE, INSTANT ACCESS TO KEY BUSINESS BANKING SERVICES FROM YOUR MOBILE PHONE BROWSER. LEARN MORE AT CNB.COM/BUSINESSMOBILE.

## Business Elite Checking

**Account Summary**

| | |
|---|---|
| Account number | 123720229 |
| Minimum balance | $-7,295.70 |
| Average balance | $12,076.86 |
| Avg. collected balance | $11,672.00 |

**Account Activity**

| | | | |
|---|---|---|---|
| Beginning balance (1/30/2015) | | | $24,615.80 |
| Credits | Deposits (3) | + 44,580.00 | |
| | Electronic cr (3) | + 150,738.80 | |
| | Other credits (4) | + 57,800.00 | |
| | Total credits | | + $253,118.80 |
| Debits | Checks paid (13) | - 61,611.50 | |
| | Electronic db (20) | - 104,647.00 | |
| | Other debits (13) | - 113,202.00 | |
| | Total debits | | - $279,460.50 |
| Ending balance (2/27/2015) | | | - $1,725.90 |

### DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 2-5 | Deposit | | 7,250.00 |
| 2-6 | Deposit | | 1,360.00 |
| 2-17 | Deposit | | 35,970.00 |

### ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 2-11 | Incoming Wire-Dom | 30,000.00 |
| 2-17 | Incoming Wire-Dom | 108,738.80 |
| 2-24 | Incoming Wire-Dom | 12,000.00 |

### OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 2-3 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0123206347 museum | | 10,000.00 |
| 2-12 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0123206347 Museum | | 30,000.00 |
| 2-13 | Return Item Stop Pay EFBOARDOFEQUALIZ BOE A-PAY CCD ACE GALLERY NE ELF*00000000000*00 00000890000*000599 | | 8,900.00 |
| 2-20 | Return Item Stop Pay EFBOARDOFEQUALIZ BOE A-PAY CCD ACE GALLERY NE ELF*00000000000*00 00000890000*000600 | | 8,900.00 |

EXHIBIT A - 128

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

Page 1 (8)

CITY NATIONAL BANK
The way up.

Account #: 123206347

This statement: February 27, 2015
Last statement: January 30, 2015

Contact us:
213 673-7700

City National Bank
400 N Roxbury Drive
Beverly Hills CA 90210

cnb.com

001 0830L
ACE MUSEUM
5514 WILSHIRE BLVD
LOS ANGELES CA 90036

WITH BUSINESS ONLINE FOR MOBILE AND TREASURY NET FOR MOBILE YOU NOW HAVE SECURE, INSTANT ACCESS TO KEY BUSINESS BANKING SERVICES FROM YOUR MOBILE PHONE BROWSER. LEARN MORE AT CNB.COM/BUSINESSMOBILE.

## Non-Profit Checking Account

**Account Summary**

| | |
|---|---|
| Account number | 123206347 |
| Minimum balance | $604.05 |
| Average balance | $9,848.76 |
| Avg. collected balance | $8,308.00 |

**Account Activity**

| | | | |
|---|---|---|---|
| **Beginning balance (1/30/2015)** | | | $1,774.00 |
| **Credits** | Deposits (4) | + 26,825.00 | |
| | Electronic cr (2) | + 154,980.00 | |
| | Other credits (3) | + 113,000.00 | |
| | **Total credits** | | + $294,805.00 |
| **Debits** | Checks paid (8) | - 10,094.68 | |
| | Electronic db (6) | - 245,274.75 | |
| | Other debits (10) | - 40,605.52 | |
| | **Total debits** | | - $295,974.95 |
| **Ending balance (2/27/2015)** | | | $604.05 |

### DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 2-2 | Deposit | | 5,000.00 |
| 2-2 | Deposit | | 17,500.00 |
| 2-4 | Deposit | | 3,125.00 |
| 2-25 | Deposit | | 1,200.00 |

### ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 2-12 | Incoming Wire-Dom | 30,000.00 |
| 2-24 | Incoming Wire-Dom | 124,980.00 |

### OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 2-18 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0123720229 | | 100,000.00 |
| 2-19 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0123720229 | | 10,000.00 |
| 2-26 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0123720229 | | 3,000.00 |

EXHIBIT U - 393

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

ACE MUSEUM
February 27, 2015

Page 2
Account #: 123206347

**CHECKS PAID**

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2759 | 2-3 | 600.00 | 2762 | 2-12 | 552.97 | 2765 | 2-26 | 1,019.43 | | | |
| 2760 | 2-9 | 5,000.00 | 2763 | 2-13 | 302.85 | 2767 * | 2-25 | 600.00 | | | |
| 2761 | 2-9 | 1,019.43 | 2764 | 2-25 | 1,000.00 | * Skip in check sequence | | | | | |

**ELECTRONIC DEBITS**

| Date | Description | Debits |
|---|---|---|
| 2-2 | Preauthorized Debit WASTE MANAGEMENT 8668342080 100215884679 ACE MUSEUM CCD | 351.70 |
| 2-4 | Wire Tsfr Debit A+A | 8,000.00 |
| 2-19 | Tnet Wire Out-Dom 400 LA BREA | 100,000.00 |
| 2-24 | Tnet Wire Out-Dom 400 LA BREA | 126,600.00 |
| 2-26 | Tnet Wire Out-Dom – PASHGIAN | 10,000.00 |
| 2-27 | Preauthorized Debit ATT PAYMENT 393282003IVRDW CONNIE KIM CCD | 323.05 |

**OTHER DEBITS**

| Date | Description | Reference | Debits |
|---|---|---|---|
| 2-3 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123720229 | | 10,000.00 |
| 2-4 | Service Charge WIRE TSFR DEBIT | | 4.00 |
| 2-12 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 2-12 | Transfer Debit TRANSFER TO DEPOSIT ACCOUNT 0123720229 | | 30,000.00 |
| 2-18 | Legal Process Debit | | 100.00 |
| 2-18 | Legal Process Debit | | 445.52 |
| 2-19 | Service Charge TNET WIRE OUT-DOM | | 10.00 |
| 2-24 | Service Charge INCOMING WIRE-DOM | | 13.00 |
| 2-24 | Service Charge TNET WIRE OUT-DOM | | 10.00 |
| 2-26 | Service Charge TNET WIRE OUT-DOM | | 10.00 |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|---|---|
| 1-30 | 1,774.00 | 2-9 | 2,423.87 | 2-19 | 10,999.53 | 2-27 | 604.05 |
| 2-2 | 23,922.30 | 2-12 | 1,857.90 | 2-24 | 9,356.53 | | |
| 2-3 | 13,322.30 | 2-13 | 1,555.05 | 2-25 | 8,956.53 | | |
| 2-4 | 8,443.30 | 2-18 | 101,009.53 | 2-26 | 927.10 | | |

Thank you for banking with City National Bank

EXHIBIT U - 394

USAO_00014362

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20141125 | 4704 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20141125 | 5247 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20141202 | 2447 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20141204 | 2158 | 26600 |
| CNB | G/098102408287 | THE BANK OF NEW YORK MELLON | D/123206347 | ACE MUSEUM | FREYBE H | | 20141210 | 1006 | 50000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MSB FBO ANDREA NASHER TTEE | | 20141223 | 6401 | 50000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea | 20141229 | 3991 | 100000 |
| CNB | G/098102408287 | COMERICA BANK | D/123206347 | ACE MUSEUM | THE EA TRUST | | 20141229 | 3566 | 65000 |
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20141229 | 3986 | 30000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20141230 | 3778 | 120000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20141230 | 3530 | 68000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150102 | 2872 | 6600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150106 | 3863 | 2600 |
| CNB | G/098102408287 | THE BANK OF NEW YORK MELLON | D/123206347 | ACE MUSEUM | FREYBE H | | 20150115 | 818 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150116 | 2983 | 226600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150204 | 4184 | 8000 |
| CNB | G/098102408287 | CITIZENS BUSINESS BANK | D/123206347 | ACE MUSEUM | MARGARET HELEN PASHGIAN | | 20150212 | 3734 | 30000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC. | 20150219 | 2770 | 100000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150224 | 5428 | 126600 |
| CNB | G/098102408287 | CHASE MANHATTAN BANK | D/123206347 | ACE MUSEUM | TELFORD BUILDING LTD | | 20150224 | 4899 | 124980 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CITIZENS BUSINESS BANK | | Helen Pashgian | 20150226 | 5169 | 10000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150319 | 6659 | 226600 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150403 | 2230 | 20000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150408 | 8450 | 2000 |
| CNB | D/123206347 | ACE MUSEUM | D/123718402 | ART AND ARCHITECTURE BOOKS OF THE | | | 20150514 | 4259 | 4500 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150518 | 5297 | 160000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150521 | 6648 | 66600 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150622 | 7783 | 200000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20150622 | 6017 | 200000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S La Brea LLC | 20150721 | 4647 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S La Brea LLC | 20150729 | 3258 | 40000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150803 | 4456 | 43398 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20150831 | 6037 | 225000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20150831 | 6163 | 220000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20150930 | 4249 | 233398 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20151005 | 3957 | 212180 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. La Brea LLC | 20151104 | 5527 | 212180 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S La Brea LLC | 20151214 | 7478 | 150000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20151223 | 8106 | 62180 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160125 | 5969 | 60000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160129 | 8263 | 173398 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160226 | 8319 | 133398 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S La Brea LLC | 20160229 | 12022 | 75000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160303 | 5093 | 25000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S. LA BREA LLC | 20160330 | 5434 | 150000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20160330 | 4021 | 80000 |
| CNB | G/098102408287 | CITIBANK, NEW YORK | D/123206347 | ACE MUSEUM | MICHAEL S STRAUS | | 20160330 | 3997 | 20000 |
| CNB | D/123206347 | ACE MUSEUM | G/098102408287 | CATHAY BANK | | 400 S LA BREA LLC | 20160502 | 11948 | 50000 |
| CNB | G/098102408287 | 1ST CENTURY BANK, NA | D/123206347 | ACE MUSEUM | MOTION THEORY, INC. | | 20160613 | 5841 | 1750 |

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY LOS ANGELES

5514 WILSHIRE BOULEVARD · LOS ANGELES · CALIFORNIA · 90036
TEL 323.935.4411 · ACEGALLERY@ACEGALLERY.NET

## INVOICE

HENNING & BRIGITTE FREYBE
57178 MEDINAH
LA QUINTA, CA 92253
HFREYBE@FREYBE.COM

MARCH 30, 2016

PAGE 1 OF 1

THE FREYBES ARE PURCHASING THE FOLLOWING ARTWORKS FROM ACE GALLERY LOS ANGELES:

| | | |
|---|---|---|
| ARTIST: | MARY CORSE | |
| TITLE: | *UNTITLED (BLACK LIGHT GRID SERIES)*, 1987 | |
| MEDIUM: | GLASS MICROSPHERES IN ACRYLIC ON CANVAS | |
| SIZE: | 7' (H) X 7' (W) | |
| PRICE: | | $150,000.00 |
| ARTIST: | SYLVIE FLEURY | |
| TITLE: | *LIFE CAN GET HEAVY MASCARA SHOULDN'T*, 1999 | |
| MEDIUM: | NEON | |
| SIZE: | DIMENSIONS VARIABLE | |
| PRICE: | | $50,000.00 |

SUBTOTAL: $200,000.00

NO SALES TAX (SHIP OUT OF STATE)

(CHECK INSTRUCTIONS ATTACHED)

TOTAL DUE VIA CHECK UPON RECEIPT OF INVOICE: $200,000.00

DOUGLAS CHRISMAS DATE
DIRECTOR AND CHIEF CURATOR

INVOICE #K-1013

DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICITY OF THE ABOVE DESCRIBED ARTWORK. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORKS PASSES TO THE BUYER UPON RECEIPT OF PAYMENT IN FULL.

CLIENT IS RESPONSIBLE FOR INSURANCE, PACKING, DELIVERY, AND INSTALLATION UNLESS STATED OTHERWISE IN THE BODY OF THE INVOICE ABOVE. IT IS UNDERSTOOD AND AGREED THAT ALL ARTWORK REMAINS THE PROPERTY OF ACE GALLERY UNTIL PAYMENT IN FULL. IN THE EVENT OF A RESALE, IT IS ADVISED TO RETAIN THIS INVOICE AS PROOF OF OWNERSHIP AFTER FULFILLMENT OF THE TERMS OF SALE. A COPY OF THIS INVOICE WITH THE SIGNATURE OF THE ISSUER IS RECORDED IN GALLERY'S ARCHIVES. PURCHASER AGREES TO PAY 2% PER MONTH INTEREST ON DELINQUENT ACCOUNTS. ALL SALES ARE FINAL. IF THERE IS A DISPUTE ALL LEGAL FEES WILL BE PAID BY THE LOSING PARTY. WHEN THE PURCHASER BUYS THE ABOVE LISTED ARTWORK ANY AND ALL RESPONSIBILITY AND LIABILITY OF THIS ARTWORK WILL TRANSFER TO THE PURCHASER WHEN THE PURCHASED ARTWORK(S) PHYSICALLY LEAVE THE GALLERY. IF THE TERMS OF THE INVOICE ARE NOT MET THEN THE INVOICE WILL BE CONSIDERED NULL AND VOID, ANY DEPOSIT BE RECEIVED FOR THE ABOVE ACQUISITIONS WILL NOT BE REFUNDED AND THE SALE WILL BE DEEMED CANCELLED. IF THE CLIENT WISHES TO RESELL THE ARTWORK, ACE GALLERY MUST BE NOTIFIED IN WRITING BEFORE SUCH SALE TAKES PLACE AND ACE GALLERY WILL HAVE THE RIGHT OF FIRST REFUSAL TO MATCH THE THIRD PARTY'S OFFER WITHIN FIVE CALENDAR DAYS FROM THE MOMENT IT RECEIVES WRITTEN NOTIFICATION FROM THE CLIENT.

USAO_00014364
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY LOS ANGELES

5514 WILSHIRE BOULEVARD · LOS ANGELES · CALIFORNIA · [illegible]
TEL [illegible] · ACEGALLERY@ACEGALLERY.NET

INVOICE

HENNING & BRIGITTE FREYBE
[illegible] MEDINAH
LA QUINTA, CA 92253
[illegible]@FREYBE.COM

MARCH 30, 2016

PAGE 1 OF 1

THE FREYBES ARE PURCHASING THE FOLLOWING ARTWORKS FROM ACE GALLERY LOS ANGELES:

ARTIST: MARY CORSE
TITLE: UNTITLED (BLACK LIGHT GRID SERIES), 1987
MEDIUM: GLASS MICROSPHERES IN ACRYLIC ON CANVAS
SIZE: [illegible]
PRICE: $150,000.00

ARTIST: SYLVIE FLEURY
TITLE: SHE CAN GET HEAVY MASCARA SHOULDN'T, 1999
MEDIUM: NEON
SIZE: DIMENSIONS VARIABLE
PRICE: [illegible]

SUBTOTAL: [illegible]

NO SALES TAX SHIP OUT OF STATE

(CHECK INSTRUCTIONS ATTACHED)

TOTAL DUE VIA CHECK UPON RECEIPT OF INVOICE: $209,000.00

DOUGLAS CHRISMAS DATE
DIRECTOR AND CHIEF CURATOR

INVOICE [illegible]-1013

DIRECTOR'S SIGNATURE ABOVE VERIFIES AND DOCUMENTS AUTHENTICITY OF THE ABOVE DESCRIBED ARTWORK. FULL AND CLEAR TITLE IN THE DESCRIBED ARTWORKS PASSES TO THE BUYER UPON RECEIPT OF PAYMENT IN FULL.

[illegible]

00030

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

# ACE GALLERY LOS ANGELES

5514 WILSHIRE BOULEVARD · LOS ANGELES · CALIFORNIA · 90036 ·
TEL 323.935.4411 · WWW.ACEGALLERY.NET

**INVOICE PAYMENT INSTRUCTIONS:**

PLEASE SEND FUNDS VIA ONE-DAY FED-EX TO THE FOLLOWING ADDRESS, TO BE RECEIVED ON THURSDAY, MARCH 31, 2016:

ACE GALLERY LOS ANGELES
SECOND FLOOR
5514 WILSHIRE BLVD.
LOS ANGELES, CA 90036

PLEASE WRITE TWO CHECKS AS FOLLOWS:

CHECK #1: $114,595.32
PAYABLE TO: 400 S. LA BREA LLC

CHECK #2: $85,404.68
PAYABLE TO: ACE GALLERY

TOTAL: $200,000.00

PLEASE EMAIL THE TRACKING NUMBER OF THE FED-EX ENVELOPE/PACKAGE TO ACEGALLERY@ACEGALLERY.NET FOR TRACKING ABILITY IF NECESSARY.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

D-111

https://www.wexship.com/wxchange

HENNING FREYBE
4225 ROCKRIDGE RD.
WEST VANCOUVER, B.C. V7W 1A3
(604) 922-7982

599

DATE 2016-03-30
Y Y Y Y M M D D

PAY TO THE ORDER OF 400 S. La Brea LLC US $ 114,595.32

U.S.$ one hundred fourteen thousand five hundred ninety five 32/100 DOLLARS

Security features included. Details on back.

HSBC BANK CANADA
20045 LANGLEY BY-PASS
LANGLEY, BC V3A 8R6

HSBC Premier

MEMO re. Mary Carsc

⑈599⑈ ⑆10690⑉016⑆ 008406⑉150⑈

支票帳戶存款單
CHECKING ACCOUNT DEPOSIT TICKET
CATHAY BANK

姓名 NAME 400 S. La Brea LLC

日期 DATE 4/1/16

SIGN HERE FOR CASH RECEIVED
領現金需在此簽字

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL.
存款可能無法立即取用

支票帳號 CHECKING ACCOUNT NO.

04031679

| | | |
|---|---|---|
| 現鈔 CURRENCY | | |
| 硬幣 COIN | | |
| 支票 CHECKS | 599 | 114,595.32 |
| | | |
| (OR TOTAL FROM OTHER SIDE) | | |
| SUB TOTAL | | |
| LESS CASH RECEIVED | | |
| 存款總額 TOTAL DEPOSIT $ | | 114,595.32 |

COAST SPECIALTY PRINTING (626) 359-2451 OPS-3000 (04/13)

⑆5011⑉3950⑆

CHAD KAPLAN
(310) 451-4500
FORTUNA MANAGEMENT
910 BROADWAY
SANTA MONICA CA 90401
1 LBS
1 OF 1
SHIP TO:
LI LIOU
CATHAY BANK
825 EAST VALLEY BOULEVARD
SAN GABRIEL CA 91776
CA 917 9-10
UPS GROUND
TRACKING #: 1Z 984 7Y9 03 9895 3135
BILLING: P/P
Trx Ref No.: 400

Airbill: 1Z9847Y90398953135

3/31/2016

USAO_00014367

**400 S LA BREA LLC**
910 Broadway, Suite 110
Santa Monica, CA 90401

**Statement**

**Account** 400 acemuse ACE MUSEUM
**Prop Name** 400 S LA BREA, LLC
**Assigned Spaces**

Douglas Chrismas
ACE MUSEUM
5514 Wilshire Blvd.
Los Angeles, CA 90036

**Date** 09/20/2017
**Payment** $

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | **Balance Forward** | | | 0.00 |
| 12/07/2015 | Late Fee, 10% of $212,180.00 | 21,218.00 | 0.00 | 239,595.32 |
| 12/14/2015 | ACH | 0.00 | 150,000.00 | 89,595.32 |
| 12/23/2015 | ACH | 0.00 | 62,180.00 | 27,415.32 |
| 01/01/2016 | Base Rent Commercial (01/2016) | 212,180.00 | 0.00 | 239,595.32 |
| 01/07/2016 | Late Fee, 10% of $212,180.00 | 21,218.00 | 0.00 | 260,813.32 |
| 01/25/2016 | ACH | 0.00 | 60,000.00 | 200,813.32 |
| 01/29/2016 | ACH | 0.00 | 173,398.00 | 27,415.32 |
| 02/01/2016 | Base Rent Commercial (02/2016) | 212,180.00 | 0.00 | 239,595.32 |
| 02/07/2016 | Late Fee, 10% of $212,180.00 | 21,218.00 | 0.00 | 260,813.32 |
| 02/26/2016 | ACH | 0.00 | 133,398.00 | 127,415.32 |
| 02/29/2016 | ACH | 0.00 | 75,000.00 | 52,415.32 |
| 03/01/2016 | Base Rent Commercial (03/2016) | 212,180.00 | 0.00 | 264,595.32 |
| 03/03/2016 | ACH | 0.00 | 25,000.00 | 239,595.32 |
| 03/07/2016 | Late Fee, 10% of $212,180.00 | 21,218.00 | 0.00 | 260,813.32 |
| 03/30/2016 | ACH | 0.00 | 150,000.00 | 110,813.32 |
| 04/01/2016 | Chk# 599 | 0.00 | 114,595.32 | -3,782.00 |
| 04/01/2016 | Base Rent Commercial (04/2016) | 212,180.00 | 0.00 | 208,398.00 |
| 04/04/2016 | Plan Review Fee | 1,500.00 | 0.00 | 209,898.00 |
| 04/07/2016 | Late Fee, 10% of $212,180.00 | 21,218.00 | 0.00 | 231,116.00 |
| 04/21/2016 | Insurance Premium (04/05/2016 - 04/05/2017) | 5,944.00 | 0.00 | 237,060.00 |
| 04/21/2016 | Additional Premium (04/05/2016 - 04/05/2017) | 1,627.00 | 0.00 | 238,687.00 |
| 05/01/2016 | Base Rent Commercial (05/2016) | 218,545.40 | 0.00 | 457,232.40 |
| 05/03/2016 | ACH | 0.00 | 50,000.00 | 407,232.40 |
| 05/07/2016 | Late Fee, 10% of $218,545.40 | 21,855.54 | 0.00 | 429,087.94 |
| 06/01/2016 | Base Rent Commercial (06/2016) | 218,545.40 | 0.00 | 647,633.34 |
| 06/07/2016 | Late Fee, 10% of $218545.40 | 21,854.54 | 0.00 | 669,487.88 |
| 06/13/2016 | Violation Fine for Unpermitted Construction | 356.16 | 0.00 | 669,844.04 |
| 07/01/2016 | Base Rent Commercial (07/2016) | 218,545.40 | 0.00 | 888,389.44 |
| 07/07/2016 | Late Fee, 10% of $218545.40 | 21,854.54 | 0.00 | 910,243.98 |
| 07/19/2016 | Legal Fees - Unlawful Detainer | 4,082.50 | 0.00 | 914,326.48 |
| 08/01/2016 | Chk# 30490536 | 0.00 | 100,000.00 | 814,326.48 |
| 08/01/2016 | Base Rent Commercial (08/2016) | 218,545.40 | 0.00 | 1,032,871.88 |
| 08/07/2016 | Late Fee, 10% of $218,545.40 | 21,855.54 | 0.00 | 1,054,727.42 |
| 09/01/2016 | Chk# 30490617 | 0.00 | 150,000.00 | 904,727.42 |
| 09/01/2016 | Base Rent Commercial (09/2016) | 218,545.40 | 0.00 | 1,123,272.82 |
| 09/07/2016 | Late Fee, 10% of $218545.40 | 21,854.54 | 0.00 | 1,145,127.36 |
| 09/14/2016 | Chk# 30490646 | 0.00 | 50,000.00 | 1,095,127.36 |
| 09/29/2016 | Legal Fees, Ref. Invoice #898671 | 1,359.50 | 0.00 | 1,096,486.86 |
| 09/30/2016 | Legal Fees (Vivoli) | 85.00 | 0.00 | 1,096,571.86 |
| 10/01/2016 | Chk# 30490676 | 0.00 | 50,000.00 | 1,046,571.86 |

| 0-30 Days | 31-60 Days | 61-90 Days | Above 90 Days | Amount Due |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 2,427,148.02 | 2,427,148.02 |

400 SLB 003356

EXHIBIT X - 492

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER