E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorneys
    Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756
    Facsimile: (213) 894-6265
    Email:    valerie.makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DOUGLAS J. CHRISMAS<br><br>    Defendant. | No. 2:21-cr-00127-MCS<br><br>GOVERNMENT'S REPLY TO DEFENDANT's OBJECTIONS TO PSR AND SENTENCING POSITION; DECLARATION; EXHIBITS |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Valerie L. Makarewicz, hereby replies to defendant's Objections to the Presentence Report (PSR), ECF 232, and defendant's Sentencing Memorandum, ECF 233, both filed on December 30, 2024.

**I.    The Amount of Loss is Not Zero; It's $12 Million.**

    It's not unusual that defendant argued that the loss in this case is zero -- defendant always maintained that the embezzlement from the estate to Ace Museum was for the benefit of the debtor Ace

Gallery.  Defendant continues to point to the purchase option of Ace Museum being an asset for debtor Ace Gallery when defendant's own statements belie his theory.

At trial, witness David Richardson read from Exhibit 81, a deposition of defendant taken on July 30, 2013. ECF 183, 78:6-24; Exhibit 81 at trial, attached herein and marked Exhibit A. In the deposition excerpt, defendant was asked about the purchase option for Ace Museum, which he described as being $30 million to purchase the property.  Next, defendant was asked what he thought Ace Museum property was worth, which he stated was between $30 and $40 million, based mainly upon offers defendant received from developers.

In essence, the purchase option for Ace Museum wasn't a grand bargain that would create a windfall for defendant or debtor Ace Gallery. The purchase option was equal to the worth of the property. Defendant's argument that he needed transfer money from the estate of debtor Ace Gallery to maintain the lease on Ace Museum, by his account, makes no economic sense. Defendant embezzled $15 million from the estate to maintain a property that, at defendant's best estimate, could potentially realize $10 million of profit, certainly not enough to repay the embezzled amount.[1] The economic reality is why defendant's theory of preserving Ace Museum as an asset of the estate is absurd and untrue. Defendant looted Ace Gallery for his personal benefit in maintaining his "legacy," Ace Museum. And defendant had a history of sacrificing his gallery via Chapter 11 bankruptcy -- it happened previously with his gallery, Flow Ace Gallery, just months before he plead no contest to grand theft in

---

[1] Though the 501(c) status and its own by-laws would have legally precluded Ace Museum from repaying debtor Ace Gallery.

2

August 1986. Attached herein and marked Exhibit C, In re Flow Ace Gallery Inc., Case No. 2:85-bk-02152 (C.D. Cal. filed February 20, 1985).[2]

Additionally, defendant's theory of preserving the lease for Ace Museum was considered and rejected by the Bankruptcy Court. In opposition to the Plan Agent's motion for summary judgment on conversion and breach of fiduciary duty against defendant, defendant argued that the payments of Ace Museum's lease by estate funds were necessary for the debtor Ace Gallery as a going concern. Attached herein and marked Exhibit B, Leslie v. Ace Gallery New York Corporation, Case No. 2:15-ap-01679-RK, Docket No. 913. The Bankruptcy Court considered this argument and rejected it in its Report and Recommendation granting summary judgment on these claims against defendant. See, Exhibit 2 at ECF 231-2, p. 91, ¶ 561.[3]

The government showed the Court that its calculation of loss as $12.8 million is correct by a preponderance of the evidence. Defendant's argument that the Third Circuit's holding in Banks applies is wrong, as the Sentencing Commission's adoption of the intended loss definition from the commentary to the rule in USSG 2B1.1 itself occurred in November 2024. USSG § 2B1.1(B)(1)(A) and (B). The government's loss calculation of $12.8 million is not "bloated"; it is exactly what the defendant says it is, the "the Gallery money routed through ACE New York and ACE Museum without

---

[2] Defendant has filed Chapter 11 bankruptcy at eight times. ECF 189, 24:4-8.

[3] Again, the government makes no reliance upon that defendant asserted his Fifth Amendment right to refuse to answer questions in discovery in the bankruptcy case.

3

bankruptcy court approval" less money "returned" to debtor Ace Gallery. ECF 232, 7:25-26.

## II. Additional Sentencing Enhancements

Defendant's arguments that the additional sentencing enhancements do not apply fall flat.

First, the misrepresentation in bankruptcy enhancement under USSG §2B1.1(b)(9)(B) applies: for years, defendant filed, under penalty of perjury, monthly operating reports that failed to disclose his embezzlement from the estate of debtor Ace Gallery. See Trial Exhibits 53, 54, the Monthly Operating Reports for September 2013 and July 2014, ECF 181, 139:20-140:22, ECF 191, 81:21-82:7. He failed as a fiduciary to protect assets for creditors. Defendant cites no authority that this enhancement only applies to those charged with bankruptcy fraud. It does not and is wholly applicable here. United States v. Boyle, 723 Fed.Appx. 111, 113 (3rd Cir. 2018). The phrase "the offense involved" indicates the enhancement is not limited to a single charge, let alone bankruptcy fraud under 18 U.S.C. § 157. Id. Indeed, the offense of bankruptcy fraud would always involve a fraudulent action "during the course of a bankruptcy proceeding." Id. Accordingly, the enhancement would be nonsensical if it only applied to bankruptcy fraud. Id.; citing United States v. Simpson, 796 F.3d 548, 551, 555-56 (5th Cir. 2015) (affirming imposition of the same enhancement where defendant was not charged with bankruptcy fraud).

Defendant's conduct was the proximate cause of debtor Ace Gallery's need to file bankruptcy in the first place, as well as its lack of viability during 2013 through 2016 period he was the debtor-in-possession. Zeigler opined that defendant used $11.3 million of Ace Gallery's pre-petition money pay Ace Museum's lease from its

inception on August 1, 2006, and another $7.9 million while defendant was debtor-in-possession. See Exhibit 3, ECF 231-3, pp. 27-29, 30-150-153. Zeigler finds that in 2006 through 2012, except for 2007, Ace Gallery was not able to cover its own expenses by its own generated income and was therefore insolvent. Id., p. 34. "[W]hen the Voluntary Bankruptcy was filed, Debtor paid close to $7 million dollars for expenses that were not that of the Company's, which raises the question of whether Chrismas would have had to file for Voluntary Bankruptcy." Id., p. 35. These facts, taken together, confirm that defendant use of Ace Gallery's funds to support Ace Museum caused debtor Ace Gallery's bankruptcy in the first instance, and his use of million of debtor's fund post-petition certainly caused the estate substantial financial harm, inevitably leading to its liquidation. All of these facts support the applicability of the specific offense characteristics increase of two-levels under USSG §2B1.1(b)(2)(A)(iii)[4] and the zero-point offender reduction under USSG §4C1.1(a)(6).[5]

The two-level increase under USSG §3B1.3 for abuse of position of trust is applicable. The determination that defendant abused his role as debtor-in-possession is to be made on all conduct, including relevant conduct, within the scope of USSG §1B1.3 and not solely on the basis of elements and acts cited in the counts of conviction. USSG Ch. 3, pt. B, introductory cmt. Defendant's position as debtor-

---

[4] However, defendant also caused harm to 10 or more victims and also qualifies for this two-level enhancement under USSG §2B1.1(b)(2)(A)(i). ECF 228 and 231, p. 8.

[5] In determining whether the defendant's acts or omissions resulted in "substantial financial hardship" to a victim under USSG 4C1.1(a)(6), USSG § 4C1.1(b)(3) directs the court to use the same non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to USSG § 2B1.1(b)(2)(A)(iii).

in-possession uniquely contributed in a significant way to facilitating the embezzlement. Defendant was able to transfer money from the debtor Ace Gallery to Ace Museum only because, as debtor-in-possession, the Bankruptcy Court entrusted him under the Bankruptcy Code to continue to operate under the presumption and legal obligation he was working for the benefit of the creditors. The Court expected that defendant would tell the truth of the day-to-day operations via the monthly operating reports. Defendant's lies to his own counsel about how he was spending debtor Ace Gallery's money made the detection of his scheme impossible to uncover. USSG §3B1.3, Note 1.

Defendant's arguments made throughout his objection and sentencing position that defendant was making the best decisions he could given the "impossible pressure" to maintain Ace Museum's lease suffer from a fatal flaw. Defendant lied to the Court and to the creditors for three years. Had defendant told the truth, that he was under the impression that for the sake of debtor Ace Gallery, he needed to pay the lease of Ace Museum, the parties to the bankruptcy case would have the opportunity to debate the best business decision for the estate by maintaining the lease. But defendant did not tell anyone the truth – not even his own lawyers knew he was paying millions towards Ace Museum's lease. Yes, the parties knew that Ace Museum had a lease that was being paid, but defendant told them it was being paid from donations and trustees, not debtor's funds.[6] Yes, the parties wanted Ace Museum to succeed, but for the sole reason

---

[6] See Trial Exhibit 37, ECF 190, 85:20-88:3, quoting email from defendant to a client about a trustee was going to pay a major payment. See also, 89:10-14.

that it owed debtor Ace Gallery on the $4.4 million pre-petition loan that, if repaid, could be used to pay creditors.[7] But defendant's repeated deception kept all in the dark, because defendant knew that using debtor funds to pay the lease would not be approved by the creditors or the Bankruptcy Court, but also, because it was illegal and his lawyers warned him of such.[8] Even after the Plan Agent learned of defendant's payment of Ace Museum's lease from debtor's estate, the Plan Agent had a responsibility to the court and creditors to evaluate the payment to see if it was something worth continuing for the benefit of the estate. Even then, the Plan Agent made no further payments towards Ace Museum's lease because he saw such action for what it was  -- a tremendously bad use of debtor's funds that would never result in benefit to the creditors.

### III. General Deterrence of the Public Calls for a Sentence of Incarceration.

As the parties note, embezzlement from a bankruptcy estate is rarely prosecuted, which provides just grounds for the Court to consider the public's deterrence by imposing a significant sentence herein. When defendant declared Chapter 11 bankruptcy for Ace Gallery, he was prohibited by law from doing what he wanted, when he wanted. The Court is positioned to assure the public that the bankruptcy system requires complete candor and severe consequences flow from lying to it and the creditors.

---

[7] See Trial Exhibit 58, ECF 183, 8:23-9:17; also at ECF 92-1.

[8] See Trial Exhibit 20, email by defendant's attorney, Ron Bender, to defendant wherein Bender stated if defendant "caused the debtor to have lent bankruptcy estate funds" to an entity outside the bankruptcy estate, that "would be a complete fraud on the bankruptcy court for which [defendant] can be in big trouble. ECF 191, 41:7-42:6, 45:16-47:5.

7

**IV.  Defendant's Age Should Not Factor in a Downward Departure/Variance.**

Defendant's age does not call for a drastic departure/variance from a Guidelines sentence of imprisonment to probation.  The Sentencing Commission limited departures based on age to those where a defendant is elderly and infirm and where a different form of punishment, like home confinement, might be efficient and less costly, which does not appear here.

In reality, none of the parties are the masters of time.  As such, defendant's arguments that any period of incarceration will result in his death are hyperbolic.

**V.  Conclusion**

The government read defendant's objections filed today, Docket No. 234, and acknowledges that nothing stated therein changes the government's position.

The government requests the Court impose a sentence that recognizes the harm caused by defendant, both monetarily and intangibly, against the victims and the Bankruptcy Court. In this case, the government believes it to be a Guidelines sentence of 121 months.

| | |
|---|---|
| Dated: January 6, 2025 | Respectfully submitted, |
| | E. MARTIN ESTRADA<br>United States Attorney |
| | LINDSAY GREER DOTSON<br>Assistant United States Attorney<br>Chief, Criminal Division |
| | */s/ Valerie L. Makarewicz*<br>VALERIE L. MAKAREWICZ<br>Assistant United States Attorney |
| | Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |

8