JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY DOTSON GREER
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorney
    Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0756
    Facsimile: (213) 894-6265
    Email:    valerie.makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-cr-00127-MCS |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT'S APPLICATION FOR BOND PENDING APPEAL |
| v. | |
| DOUGLAS CHRISMAS, | |
| Defendant. | |

1

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Valerie L. Makarewicz, opposes defendant's Application for Bond Pending Appeal, as follows.

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 10, 2025          Respectfully submitted,

JOSEPH T. MCNALLY
Acting United States Attorney

LINDSEY DOTSON GREET
Assistant United States Attorney
Chief, Criminal Division

/s/ Valerie L. Makarewicz
VALERIE L. MAKAREWICZ
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

I.    INTRODUCTION.......................................................1

II.   STATEMENT OF FACTS................................................2

III.  APPLICABLE LAW....................................................5

IV.   DEFENDANT IS A FLIGHT RISK........................................7

V.    DEFENDANT FAILS TO ESTABLISH THAT HIS APPEAL RAISES ANY
      SUBSTANTIAL QUESTION OF LAW OR FACT LIKELY TO RESULT IN
      REVERSAL, A NEW TRIAL, OR A REDUCED SENTENCE.....................9

      A.    The Jury Instructions Were Correctly Given...............9

      B.    Neither the Government Nor the Court Constructively
            Amended the Indictment..................................10

      C.    The Government's Witness Was Not An Expert..............13

      D.    The Court Did Not Err in Its Calculation Of Loss........15

VI.   CONCLUSION.......................................................18

Case 2:21-cr-00127-MCS    Document 254    Filed 02/10/25    Page 4 of 22   Page ID
#:4661

# TABLE OF AUTHORITIES

**Cases**

Schad v. Arizona,
  501 U.S. 624 (1991)...........................................11

Turner v. United States,
  396 U.S. 398 (1970)...........................................11

United States v. Gandy,
  926 F.3d 248 (6th Cir. 2019)..................................11

United States v. Garcia,
  340 F.3d 1013 (9th Cir. 2003)..................................6

United States v. Handy,
  761 F.2d 1279 (9th Cir. 1985)..................................5

United States v. Long,
  301 F.3d 1095 (9th Cir. 2002).................................11

United States v. Love,
  17 F. App'x 796 (10th Cir. 2001)...............................9

United States v. Miller,
  753 F.2d 19 (3d Cir. 1985)..................................5, 11

**Statutes**

18 U.S.C. § 153........................................2, 3, 8, 9

18 U.S.C. § 3143.........................................1, 5, 6

8 U.S.C. § 1101................................................7

8 U.S.C. § 1227................................................7

**Rules**

Fed. R. Crim. P. 7............................................11

Fed. R. Evid. 702............................................14

**Sentencing Guidelines**

USSG § 2B1.1.................................................16

USSG § 1B1.11...............................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

In spite the jury's verdicts against him, defendant Douglas Chrismas moves for bail pending appeal.  Defendant's motion ("Motion") adopts a scattershot approach, citing a myriad legal and factual claims, but failing to explain why any of the Court's rulings were incorrectly decided, all while ignoring the overwhelming evidence supporting his convictions.

Under the Bail Reform Act, detention at this stage is presumptively <u>mandatory</u>, and defendant bears the burden of proving that he is entitled to release pending appeal. Among other things, defendant must establish that his "appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, a new trial, or a reduced term of imprisonment shorter than the expected duration of his appeal. 18 U.S.C. § 3143(b)(1)(B). Defendant fails to meet <u>his</u> burden here.

Defendant is a lawful permanent resident of the United States and a citizen of Canada.  He was convicted of aggravated felonies in May, which makes him subject to deportation.  His risk of flight has increased exponentially, through the imposition of a custodial sentence as argued by the government at sentencing, and by the re-alignment of the government's priorities regarding immigration. Because defendant is not a citizen, he will be deported and should have been upon his conviction in this case. Because defendant cannot stay in the United States even if he wanted to, he has every incentive to abscond abroad. No bond or conditions of release can

reasonably assure defendant's appearance while his appeal is
pending.

Further, none of the issues defendant raises pose a substantial
question of law or fact, much less one likely to impact his
convictions or sentence. First, defendant again recycles his
argument regarding his incorrect belief that the clause "to the
person's own use" should apply to all of the verbs used in 18 U.S.C.
§ 153, which has been twice rejected by the Court. He argues that
the government constructively amended the indictment, again, an
issue that the court denied in its ruling on defendant's motions
under Fed. R. Crim P. 29/33. Second, defendant again recycles his
unsuccessful argument that the government's witness was an improper
and unnoticed expert witness. And finally, defendant now takes
issues with the Court's calculation of the loss attributed to
defendant's embezzlement scheme, arguing that (1) the 2018
Sentencing Guidelines should apply, and (2) that the Court failed to
make its own calculation, both of which are false.

Defendant fails to satisfy <u>his burden</u> of showing his appeal is
not for purposes of delay. In short, defendant falls far short of
meeting the requirements for bail pending appeal. The Court should
deny his Motion.

## II.  STATEMENT OF FACTS

Defendant is a lawful permanent resident of the United States
and a citizen of Canada. ECF 224 (PSR), p. 2.

Defendant was charged with three counts of embezzlement against
a bankruptcy estate in violation of 18 U.S.C. § 153. (Indictment,
ECF No. 1.) That statute applies, in relevant part, to a person who:

knowingly and fraudulently appropriates to the person's
own use, embezzles, spends, or transfers any property or
secretes or destroys any document belonging to the estate
of a debtor . . . .

18 U.S.C. § 153(a).

Prior to trial, in litigating the government's motion in limine
#5 (ECF 91), defendant argued that the clause "to the person's own
use" distributively across all four verbs. His reading, in other
words, seems to be that § 153(a) implicitly inserts the phrase "to
the person's own use" repeatedly throughout the statute, so that the
statute only applies when someone "knowingly and fraudulently [1]
appropriates to the person's own use, [2] embezzles to the person's
own use, [3] spends to the person's own use, or [4] transfers to the
person's own use" any property belonging to the estate.

The government and the Court, disagreed: "To the person's own
use" does not modify any verb other than "appropriates." (ECF 91,
pp. 3, 5-12; ECF 153, pp. 12-14. In its ruling, the Court agreed
with the 10th Circuit's interpretation of section 153 in that it
"prohibits knowing and fraudulent embezzlement, spending,
transference, etc., whether or not such activity is occasioned
toward the offender's own use." Id. at 801. In other words, the
Court found the crime of embezzlement from a bankruptcy estate was
complete once a defendant, with the requisite mens rea, acted
pursuant to one of the statutory verbs, regardless of what happened
to the funds once they left the bankruptcy estate. (ECF 153, 12:25-
13:2.) "[T]o the person's own use" follows only the verb
"appropriates," and applying the clause across all other verbs in
the statute would ]be an atextual interpretation. Id. at 14:6-13.
"Therefore, the Court does not interpret 18 U.S.C. § 153 under the

3

tortured reading proposed by Defendant, but instead interprets the statutory verbs to require appropriation of funds to a defendant's own use, or transfer of the funds, or spending of the funds, or embezzlement of the funds." Id. at 14:15-18. The Court precluded defendant from arguing that he evades liability under section 153 on the basis that he did not transfer, spend or embezzle funds from the bankruptcy estate for, or to, his own use. Id. at 15:3-5. "This defense is not legally available to him." Id. at 15:5.

The Court held a four-day jury trial starting on May 28, 2024. (ECF 163, 167, 170-171.) The jury returned a verdict of guilty on all counts on May 31, 2024. (ECF 178.) Defendant submitted pre- and post-trial motions seeking (1) an order dismissing the indictment, or alternatively imposing sanctions, for prosecutorial misconduct, (2) a judgment of acquittal on all counts, and (3) a new trial. (ECF 159, 194) (hereinafter "MTD").

In his MTD, defendant argued that the government elicited expert testimony from its witness, David Richardson, who was not noticed as an expert. (ECF 194). The Court denied defendant's motions on January 14, 2025. (ECF 238). The Court found that "aside from some explanation about what a bankruptcy estate is and explaining what debtors, creditors, and debtors-in-possession are, the Court excluded the kind of expert testimony of which Defendant complains." Id. at 13:5-8. "[T]he Court took special care not to allow Mr. Richardson to offer improper expert testimony." Id. at 16:13-15.

Defendant was sentenced on January 13, 2025 to a 24-month term of imprisonment. At the hearing, the Court found the amount of loss

to be $12,809,192, and ordered defendant to pay restitution in that amount. (ECF 242, p. 2.)

### III. APPLICABLE LAW

In enacting the Bail Reform Act of 1984, Congress intended "to reverse the presumption in favor of bail," United States v. Miller, 753 F.2d 19, 22 (3d Cir. 1985), and "to toughen the law with respect to bail pending appeal," United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985). Thus, under 18 U.S.C. § 3143(b), a defendant who has been convicted and sentenced to imprisonment is ineligible for bail unless: (1) he proves "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released;" and (2) his "appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1). Defendant bears the burden of satisfying these requirements. Handy, 761 F.2d at 1283.

In Handy, the Ninth Circuit explained that "the word 'substantial' defines the level of merit required in the question raised on appeal." Id. at 1281. A "substantial question" is one that is "fairly debatable" or "fairly doubtful." Id. at 1283. "Fairly debatable" does not merely mean the issue is "not frivolous"; rather, it "is one of more substance than would be necessary to a

1  finding that it is not frivolous." <u>Id.</u> at 1283 (emphasis added).[1]

2  "Fairly debatable" questions include those that are "novel and not

3  readily answerable," or that pose issues "debatable among jurists of

4  reason." <u>Handy</u>, 761 F.2d at 1281-82 (quotation marks omitted).

5      As a separate consideration, "the phrase 'likely to result in

6  reversal' defines the type of question that must be presented." <u>Id.</u>

7  at 1281. The "substantial question" must be one that is "likely" to

8  result in reversal, a new trial, or a reduced sentence shorter than

9  the expected duration of the appeal. 18 U.S.C. § 3143(b)(1)(B). It

10 cannot be one that would "be considered harmless, to have no

11 prejudicial effect, or to have been insufficiently preserved."

12 <u>Miller</u>, 753 F.2d at 23. While this standard does not require that

13 reversal be more likely than not, <u>Handy</u>, 761 F.2d at 1281, neither

14 is it so toothless that it eviscerates Congress' intent to

15 "tighten[] the standards for bail pending appeal." <u>Id.</u> at 1283.

16     Here, defendant's motion fails because he is a flight risk if

17 he remains on bail pending his appeal.  Additionally, defendant's

18 motion does not raise a substantial question that could result in a

19

20

21     [1] In wrongly reducing the substantial question requirement to
22 simply raising a "non-frivolous" issue, defendant relies on dicta
   from a footnote in <u>United States v. Garcia</u>, 340 F.3d 1013, 1020 n.5
23 (9th Cir. 2003). Notably, the Ninth Circuit has cited <u>Garcia</u> only
   three times in over 20 years, in unpublished, one-page summary
24 orders, none of which rely on Garcia's formulation of the
   substantial question standard nor repeat the "non-frivolous"
25 language from the footnote defendant relies on. <u>Handy</u>, which
   articulates the governing standard, expressly rejects the
26 formulation defendant advances, stating that the substantial
   question standard is "stricter than the 'not frivolous' test." 761
27 F.2d at 1282 n.1.

28                                    6

reversal or sentence shorter than the expected remaining duration of the appeal.

## IV.  DEFENDANT IS A FLIGHT RISK

Defendant is a Canadian citizen who will be deported to that country after serving his sentence.  He is a lawful permanent resident of the United States. ECF 224, p. 2.  But there is nothing "permanent" about defendant's status here. Any alien who is convicted of an "aggravated felony" is subject to deportation. 8 U.S.C. § 1227(a)(2)(A)(iii). And any fraud offense for which the loss exceeds $10,000 qualifies as an aggravated felony. 8 U.S.C. § 1101(a)(43)(M). Here, as the Court has ruled, the loss exceeds $12 million. ECF 242. Even the loss attributed to the counts of conviction are over the $10,000 threshold, which defendant admitted at sentencing. ECF 252 at 3:21-4:1. Accordingly, defendant will be stripped of his green card and deported to Canada upon the completion of his sentence. Thus, even if defendant desperately wanted to remain in the United States, it would make no difference: he simply cannot. His choice is to remain in the United States and face two years in prison and deportation to Canada, or to "self-deport" to Canada or any other country he prefers, thereby saving himself prison time and deportation proceedings. It would be irrational for defendant to stay in the United States to face justice.

Four days ago, defendant's counsel moved to be relieved as retained counsel for defendant in his appeal before the Ninth Circuit.  United States v. Chrismas, Case No. 25-324, Docket Entry 3.1. In their motion, they reviewed defendant's current financial

7

conditions, which counsel understands "qualifies Mr. Chrismas for appointed counsel on appeal." Id. at ¶ 8.  Counsel requested that new counsel from the Federal Public Defendant's office represent defendant on appeal.  Id. at ¶9.b.  As such, defense counsel recognized that defendant may no longer earn the $38,471 he stated he earned in the PSR.  ECF 224 at ¶ 75.

Defense counsel's motion to be relieved as appellate counsel was granted on February 10, 2025.  United States v. Chrismas, Case No. 25-324, Docket Entry 6.  Now, defendant no longer has his attorneys that have poured their "heart and souls" into defending him and will now meet with new appointed counsel with whom he does not have a relationship. ECF 252 at 4:11.

Also reported in the PSR was defendant's $18 million in liabilities, including the civil judgment entered by Judge Anderson for $14 million, $12.8 million of which is the restitution order by the Court. Id. By fleeing the United States, defendant escapes all of that debt —- defendant and can begin again "working to find buyers for art" and be "sought out to evaluate new artists" while he awaits 1) United States authorities to find him wherever he is abroad, and 2) have creditors enforce United States judgments against him. Id. at ¶ 65. His relationship with trial counsel is at its end.  According to defense counsel, defendant will soon vacate his apartment and will have no place to live. Despite his protests otherwise, fleeing the United States is a real option for defendant, and his risk of doing so is likely.  Defendant has failed to meet his burden that he is not a flight risk, rather, the government has shown he is one.

**V.    DEFENDANT FAILS TO ESTABLISH THAT HIS APPEAL RAISES ANY SUBSTANTIAL QUESTION OF LAW OR FACT LIKELY TO RESULT IN REVERSAL, A NEW TRIAL, OR A REDUCED SENTENCE**

**A.    The Jury Instructions Were Correctly Given.**

There was no error with the jury instruction #31 regarding the elements of the offense of embezzlement from a bankruptcy. Defendant again raises an issue regarding the "to the person's own use" clause, which the Court ruled follows only the verb "appropriates". ECF 153, 14:3-8.  After reviewing the Tenth Circuit's case law interpreting 18 U.S.C. § 153, the Eleventh Circuit's model instructions, legislative history, and principles of statutory interpretation, the Court declined to "interpret 18 U.S.C. § 153 under the tortured reading proposed by Defendant, but instead interpret[ed] the statutory verbs to require appropriation of funds to a defendant's own use, or transfer of the funds, or spending of the funds, or embezzlement of the funds."

The government provided the Court with extensive briefing of its position regarding the defendant's faulty interpretation of "for the person's own use" clause, which the government incorporates herein. ECF 106. Defendant's interpretation remains atextual. "To the person's own use" does not modify any verb other than "appropriates." And, apart from its relationship to "appropriates," it is not an element of the offense. The government provided a grammatical and logical interpretation of section 153. Id. at 5:3-6:3. The government next provided support from the cannons of statutory construction of Nearest Reasonable Referent / Last Antecedent Rule and the Series Qualifier Rule. Id. at 6:6-9:9. Next, the government provided caselaw that supported the government's

9

1    interpretation, including the Tenth Circuit's holding in <u>United</u>

2    <u>States v. Love</u>, 17 F. App'x 796 (10th Cir. 2001). <u>Id.</u> at 9:11-11:21.

3         The Court agreed with the government, not only prior to trial,

4    but also in deciding not to grant defendant's MTD. ECF 153 at 14:3-

5    15:7; ECF 238 at 10:2-11:5.

6         More fundamentally, Defendant's argument ignores the
          disjunctive nature of 18 U.S.C. § 153. As the Court noted
7         when it declined to adopt Defendant's reading of the
          statute, all that the statutory language requires for a
8         finding of embezzlement is that "a defendant, with the
          requisite mens rea, *acted pursuant to one of the statutory*
9         *verbs*, regardless of what happened to the funds once they
          left the bankruptcy estate." (Order Re: Def.'s Mot. to
10        Compel 12-13 (emphasis added).)

11   <u>Id.</u> at 10:18-23.

12        For all the reasons argued by the government, and the reasons

13   found by the Court, there was no error in jury instruction #31 given

14   by the Court.  The Court has provided defendant with multiple

15   reasons for denying his interpretation of section 153. There is

16   nothing debatable about the Court's correct reading of the statute

17   and the jury instruction given during trial. It was correct and

18   remains correct, grammatically, logically, and untortured.

19   Defendant fails to acknowledge the court's well-supported rulings as

20   a clear delay tactic.  Based on these authorities, defendant cannot

21   show that the jury instruction #31 given by the Court raises a

22   substantial question.

23        **B.    Neither the Government Nor the Court Constructively
               Amended the Indictment.**
24
          Tangential to defendant's tortured reading of section 153 is
25
     his theory that by not including "for one's own use" to every verb
26
     in the statute, the government constructively amended the indictment
27

28                                     10

by removing it from its burden of proof at trial. Again, defendant raised this issue pre- and post-trial, and the Court ruled against him.  ECF 153 at 7:23-9:24, 12:16-13:2; ECF 238 at 9:23-11:5. Defendant continues to lob unsupported and speculative statements about the case it presented to the grand jury that he has no basis to assert.

Again, in the government's opposition to defendant's MTD, ECF 204 at 17:7-20:13, the government correctly argued that when a statute may be violated by multiple means, like section 153, the government charged defendant with the statutory alternatives in the conjunctive rather than the disjunctive by using "and" rather than "or." In other words, even when the statute uses "or," the government charged defendant in the conjunctive and proved the violations in the disjunctive. Fed R. Crim P. 7(c)(1)(a count may allege . . . that the defendant committed it by one or more specified means); Turner v. United States, 396 U.S. 398, 420 (1970)(The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as defendant's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged); United States v. Long, 301 F.3d 1095, 1106 (9th Cir. 2002). The trial jury, with a disjunctive instruction, would not need to agree on which means the defendant used to commit the crime, so long as they agreed unanimously on each of the elements. Fed. R. Crim. P. 7(c), advisory committee notes, n. 2 (1944); Schad v. Arizona, 501 U.S. 624, 631 (1991) ("[A]n indictment need not specify which overt act, among

11

several named, was the means by which a crime was committed."); United States v. Gandy, 926 F.3d 248, 262-63 (6th Cir. 2019).

By eliminating one of the four means of violating the statute, the government, with the Court's agreement, proceeded to prove at least one of the remaining three means of embezzlement from Ace Gallery's bankruptcy estate. The government did not expand or broaden the Indictment, did not add or modify any essential elements to the charged offenses, and did not proceed to convict defendant on any different theory or facts for which defendant was charged. When the Court eliminated "appropriated for one's own use" from one of the four means of violating Section 153, the Court narrowed the indictment. By definition, under United States v. Miller, such narrowing does not constructively amend the Indictment. 471 U.S. 130, 140, 105 S.Ct. 1811, 85 L.Ed.2d 99(1985).

The Court disagreed with the defendant and found neither it nor the Government constructively amended the indictment.  ECF 238 at 11:4-5. As Court disagreed with defendant's reading of section 153, and found that even if he was correct, he failed to prove a constructive amendment of the indictment.  Id. at 10:2-11:5.

> As the Court noted when it declined to adopt Defendant's reading of the statute, all that the statutory language requires for a finding of embezzlement is that "a defendant, with the requisite mens rea, *acted pursuant to one of the statutory verbs*, regardless of what happened to the funds once they left the bankruptcy estate." (Order Re: Def.'s Mot. to Compel 12-13 (emphasis added).)

Id. at 10:19-23.

The government proved its case and "everything it committed itself to proving in the indictment" by showing that defendant

12

embezzled, transferred, or stole property of the bankruptcy estate.
The government did not proceed on an appropriation theory and
therefore, was not required to prove that the funds at issue were
for defendant's own use.  ECF 153 at fn. 5.  Again, when defendant
fails to acknowledge the substantial authority that supports the
Court's ruling against defendant, defendant is attempting to avoid
serving his sentence for as long as possible. No substantial
question arises, and defendant has failed to meet <u>his</u> burden in
showing that such is likely to result in a reversal, reduction in
his below-Guidelines sentence, or new trial.

### C.    The Government's Witness Was Not An Expert

The government's witness, David Richardson, was not an
unnoticed expert witness.  Without citing any authority, defendant
allege that while the Court directed Richardson to only answer from
his personal knowledge of the case, testimony based on "personal
understanding" may nonetheless constitute expert testimony.  It does
not and did not convert Richardson's answers about his experience
working as an attorney investigating the transactions that Ace
Gallery had undertaken in bankruptcy.  As the Court noted its
opinion denying defendant's MTD, aside from some explanation about
what a bankruptcy estate is and explaining what debtors, creditors,
and debtors-in-possession are, the Court excluded the kind of expert
testimony of which defendant complains. ECF 238 13:5-8. Richardson's
testimony was limited to describing what he had observed about
defendant and Ace Gallery in the course of his investigation and
reading documents with which he was familiar. Defendant frequently
raised objections, many of which the Court sustained or responsively

required the Government to rephrase or move on in its line of
questioning. Id. at 13:16-20.

 Throughout his motion, defendant insists to the court that the
government cannot overcome a presumption of prejudice. ECF 246 at
9:19-1-:3. That is not the burden in issue, and even still, the
Court ruled that defendant failed to show substantial prejudice in
denying defendant's MTD. "Nor has Defendant explained what, if any,
specific allegedly improper fact testimony caused him substantial
prejudice." Again, the focus is on defendant meeting his burden of
showing this issue (and all issues) in his motion pose a substantial
question of law or fact. The testimony elicited by the government
of Richardson is not one that raises such a question, as the Court
took steps to exclude improper expert testimony.

 The Sarkissian case defendant cites does not apply to the facts
here. In Sarkissian, the witness opined on modus operandi -—
Richardson talked about the things he saw and documents he
read/reviewed. Other than basic bankruptcy terminology, Richardson
gave no opinion, expert or lay. As the government argued in
opposing defendant's MTF, the terms Richardson explained were
foundational and commonplace, not controversial or objected to by
defendant on other grounds other than under Fed. R. Evid. 702. No
notice was needed as the government's witness was not an expert in
the slightest, and the Court conservatively kept out testimony that
had the slightest hint of "expert" testimony.

 Again, defendant has failed to meet his burden that
Richardson's testimony raised a substantial question, or that this

is not yet another attempt to delay defendant facing justice for his crimes.

### D.   The Court Did Not Err in Its Calculation Of Loss

The Court did not err in its calculation of loss attributed to defendant's crimes of embezzlement of the estate. Defendant's "arguments" that the loss is zero are absurd and fail to raise any substantial question, again failing to meet his heavy burden.

The Court was correct in finding the loss (and therefore restitution) was $12.8 million.  The government did credit defendant with the money he "returned" to the estate.  As the government explained in its objection to the PSR, some of the originally embezzled money ($15.3 million) was sent back into Ace Gallery as part of a smokescreen ($1,434,692). ECF 228 at 2:24-3:10. Most of this made its way back through Ace Museum: defendant sent the money from Ace Gallery to Ace Museum secretly, then used that same money to "repay" a loan that Ace Gallery had previously extended to Ace Museum, thereby (falsely) making it appear that Ace Museum had its own assets with which it could repay Ace Gallery. Id.

At sentencing, the Court heard defendant's argument on this topic and rejected it.  ECF 252 at 8:5-9:3, 20:6-7.  The Court adopted the PSR's calculation of loss. Id. at 20:6-7.

The fundamental difference in loss calculation found by the Court and what defendant argued (which the Court rejected) is defendant's continued theory that maintaining Ace Museum's lease was for the benefit of the estate.  Before trial, the Court denied defendant's ability to argue this point when it found 1) defendant could not present a defendant that he intended to repay the

15

bankruptcy estate (10/2/23 Mins., ECF 62), and again, 2) when it
ruled against defendant with respect to the government's Motion In
Limine #5 (ECF 153 at 12:11-15; 14:3-21; <u>see also</u> Government's
briefing at ECF 91 and 106, incorporated herein.  Ace Museum or its
lease was not a part of the bankruptcy estate—legally or factually.
The <u>loan</u> that Ace Museum owed Ace Gallery was—and it was limited by
the amount loaned, approximately $4.4 million.  As the government
argued, Ace Museum could not give any more money to Ace Gallery
above this amount, no matter if Ace Museum opted to purchase the
building and realize a gain in selling it, or if it won the lottery.
And any argument defendant makes about Ace Museum's lease being part
of the estate is imprecise and careless both factually and legally.
The only item of Ace Museum's that was part of the bankruptcy estate
was the right to receive $4.4 million from Ace Museum (or any third
party that wanted to pay off Museum's loan to Gallery), which
Gallery had allegedly "loaned" the Museum pre-petition.

Without any citation to legal support, defendant repeats that
the 2018 version of the Sentencing Guidelines should apply here and
lobs that application of any other version is a violation of the Ex
Post Facto Clause of the Constitution.  ECF 232 at 8:2-9:2.

First, no ex post facto problem occurred.  USSG §1B1.11 states
"The court shall use the Guidelines Manual in effect on the date
that the defendant is sentenced."  Second, even if the Court were to
apply the 2018 version as defendant wants, the loss calculation
would be the same.  As cited above, the only item of Museum's that
was part of the estate was the $4.4 million loan – not the lease,
not the purchase option.  Further, the 2018 version of the

Guidelines does not help defendant—the only difference is the general rule establishing loss as the greater of actual or intended loss, and definitions of actual, intended, pecuniary or reasonably foreseeable pecuniary hard are part of the application notes, not in the Guideline § 2B1.1 itself, which occurred in 2024 with Amendment 827. The actual loss, as proved by the government beyond a preponderance and determined by the Court, was $12.8 million -— this the amount of money that defendant cause the bankruptcy estate to lose.  That calculation does not change if the actual loss is part of the newly created Notes to the loss table in section 2B1.1(b)(1), or in the application notes in 2018.[2] And defendant's attempts to whittle down this number, especially to zero, by arguing he recently made good with artists by paying them back, is another example of defendant doing what he wants, when he wants to.  Taking defendant's statements that he repaid artists money as true also shows that defendant preferred who he wanted to repay.  He did not repay the estate, who is the victim and the legally entitled entity to receive any repayment to distribute to creditors according to bankruptcy law.  He chose to repay who he wanted, and conveniently forgot bankruptcy's priority of claims.

Loss in this matter is the money defendant embezzles, transferred and stole from the estate.  That number is $12.8 million which represents the amount defendant embezzled, transferred and stole for the counts he was convicted, plus relevant conduct.

---

[2] Nowhere does defendant ever explain why the 2018 version, as opposed 2021, 2023, or any other version up until the 2024 version that adopted Amendment 827 is what the Court should use.

17

Again, as with all other issues raised by defendant in his Motion, defendant fails to meet <u>his</u> burden that a substantial question arises that would change his sentence or be remanded for a new trial.

**VI.    CONCLUSION**

Defendant is a flight risk.  As a felon, defendant has lost the privilege to remain in this country.  Regardless of whether he is on bond now or when his appeal is pending, he has every incentive to leave the United States and either return to Canada and wait for extradition proceedings (which are difficult given defendant is a citizen) or leave this country at any moment without serving his sentence or facing removal proceedings.

Defendant's refusal to accept black letter law and the rulings of the Court that are also steeped in legal authority show that his appeal is aimed to delay.  As stated at sentencing "He is going to fight this as long as he has to."  ECF 252 at 29:9-10.  And the government recognizes that defendant will. However, none of defendant's argument raise a modicum of success upon appeal, nevertheless a substantial question of law or fact likely to result in reversal, a new trial, or a reduced sentence.

The Court should deny defendant's motion.