JENNIFER L. WILLIAMS (Bar No. 268782)
Email: jenn@summallp.com
MEGAN A. MAITIA (Bar No. 285271)
Email: megan@summallp.com
HAYLEY E. HUNTLEY (Bar No. 351438)
Email: hayley@summallp.com
SUMMA LLP
1010 Sycamore Avenue, Unit 117
South Pasadena, California 91030
Telephone:  (213) 260-9456
Facsimile:  (213) 835-0939

Attorney for Defendant
DOUGLAS J. CHRISMAS

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DOUGLAS J. CHRISMAS,<br><br>　　　　Defendant. | Case No. 2:21-CR-00127-MCS<br><br>**DEFENDANT DOUGLAS J. CHRISMAS'S REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER FOR BOND PENDING APPEAL** |

　　　　Defendant Douglas J. Chrismas, by and through his counsel of record, hereby submits his Reply in Support of Defendant's Motion at ECF No. 246.

Respectfully submitted,

Dated: February 24, 2025　　　*/s/ Jennifer L. Williams*

Jennifer L. Williams
Megan A. Maitia
Hayley E. Huntley
Attorneys for Douglas J. Chrismas

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government opposes Mr. Chrismas's bond pending appeal on two grounds: (1) that he is a flight risk and (2) that "he's failed to explain why any of the Court's rulings were incorrectly decided."

As to flight risk, Mr. Chrismas has established by clear and convincing evidence that he can be subject to conditions, or a combination of conditions, that will reasonably assure his appearance. Indeed, at the sentencing hearing in this case, this Court already implicitly made this finding by rejecting both the government's requests for (1) immediate remand or alternatively for (2) GPS location monitoring. The Court also explicitly found that Mr. Chrismas was amenable to supervision. The legal standard has not changed, and neither should the outcome.

As to the Court's rulings raised by Mr. Chrismas as "substantial questions of law or fact," the government unhelpfully only rehashes why the government and this Court was "right" on those issues while Mr. Chrismas was "wrong." But that's not the standard. When the correct standard is applied — not who was "right" and who was "wrong" but whether the issue is "fairly debatable" — Mr. Chrismas meets his burden. These are "fairly debatable" issues that would impact the outcome of Mr. Chrismas's case. Indeed, the government does not even attempt to argue beyond a conclusory statement that the issues raised would be considered "harmless" or not of the type that would result in a reversal, new trial, or no sentence of imprisonment.

## II. REVIEW OF LEGAL STANDARD

The government recasts the standard as one of, essentially, immigration status and whether the district court got the issues "right or wrong." As the government has this wrong, a review of the correct legal standard is necessary.

First, for context: under 18 U.S. Code § 3143(a), once a defendant is found guilty of an offense and is awaiting sentencing, the court must detain the defendant pending

sentencing "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under [the pretrial bail statute] section 3142(b) or (c)." If this standard is satisfied, the judicial officer "shall" order release under 3142(b) or (c) (*i.e.*, with the bond conditions that reasonably assure the appearance of the defendant).

Here, when Mr. Chrismas was convicted in May 2024, he met this standard and was permitted to be released under the same terms and conditions that applied pretrial—conditions which succeeded in assuring his appearance, as he showed up to court every single time. After the guilty verdict on May 31, the Court asked the government's position on continued bond pending sentencing. The government's response: "[N]o objection to that, Your Honor, as long as he [Mr. Chrismas] continues to comply with release conditions." (May 31, 2024 AM Tr. at 87:14-22.) Mr. Chrismas has continued to comply with these conditions through his January 2025 sentencing, even when he (1) knew the government was seeking a 10-year sentence and (2) understood he could be taken into custody that day if the Court so decided. Still, he appeared and was sentenced. After Mr. Chrismas's sentencing, nothing has changed about the "risk of flight" standard and the conditions imposed to reasonably assure his appearance. That standard — in subpart (b) of the same section, 18 U.S. Code § 3143 — is the same.

Of course, 18 U.S. Code § 3143(b) has the additional condition — apart from flight (or danger, which has never been argued here) — that the appeal is not for purposes of delay and raises a "substantial question of law" likely to result in reversal, a new trial, or a non-imprisonment sentence. Again, whether these issues will prevail — or are even more likely than not to prevail — is not the standard. The defendant need not show a likelihood of success on appeal. *Id.; United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003).

Where these conditions are met, the court *shall* order the release of the person under section 3142(b) or (c) of this title (under conditions outlined by the pretrial bail statute that the court believes will reasonably ensure the defendant's appearance).

## III. ARGUMENT

### A. Mr. Chrismas has already established he is not a flight risk, and additional conditions could further reassure his appearance.

The government's flight risk argument is based on misleading facts and a faulty understanding of immigration law.

**First**, the government recognizes that Mr. Chrismas is a lawful permanent resident of the United States. He is in this country **legally**.

Even assuming Mr. Chrismas could face deportation for a final conviction for a qualifying aggravated felony, the U.S. Department of Justice Board of Immigration Appeals has held that a conviction is not "final" for immigration purposes until the right to direct appellate review has been exhausted. *Matter of JM Acosta*, 27 I&N Dec. 420 (BIA 2018). In other words, any deportation analysis is premature. Mr. Chrismas is not considered deportable until after (and if) his appeal is denied. He will not — as the government asserts with no legal support — "be stripped of his green card and deported to Canada up on the completion of his sentence."

Mr. Chrismas, therefore, has every incentive to remain compliant with court appearances — his continued lawful status in the United States depends on it. Mr. Chrismas believes, as does undersigned counsel, that he has strong appeal grounds. And there is no logical reason to assume Mr. Chrismas would abandon a chance at a successful appeal only to live the life of an 80-year-old fugitive.

**Second**, the government suggests that Mr. Chrismas has an incentive to flee to avoid paying restitution. According to the government's logic, *any* defendant (regardless of immigration status) with *any* restitution judgment should be presumed a flight risk and therefore denied bond pending appeal. But that's wrong. And it strays from the evidence before the Court, including that on February 7, 2025 — after the criminal judgment was entered — Mr. Chrismas paid his $300 mandatory special assessment and $1,000 restitution payments, both of which were due immediately following this Court's criminal judgment. (*See* Decl. ¶ 2, Exhibit A, U.S. District Court Receipt No. 27350.) This shows

Mr. Chrismas's ongoing compliance with Court orders and further supports a finding that he is not a flight risk.

**Third**, the government's statements about defense counsel's relationship with Mr. Chrismas – mocking his attorneys for saying we have poured our "heart and souls" into this case but suggesting that we have now abandoned our client on appeal – has nothing to do with flight danger. Mr. Chrismas qualifies for appointed counsel on appeal and is now represented by the Federal Public Defender's Office on appeal. Undersigned counsel will continue to support Mr. Chrismas and his appointed appellate counsel throughout the appeal.

**Fourth**, the government's assertion that Mr. Chrismas will "soon vacate" his apartment and "will have no place to live" is plainly false. In seeking the government's stipulation to an extended self-surrender date (which is presently the same date as this hearing), defense counsel explained that Mr. Chrismas wants to *avoid* vacating his apartment before the bond issue is resolved. (Decl. ¶ 3, Exhibit B.) If Mr. Chrismas is permitted to stay on bond, then he will continue to live in the same apartment, where he has lived for many years.

"[T]he right to bail should be denied only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). *Truong Dinh Hung v. United States*, 439 U.S. 1326 (1978), is illustrative. In that case, the defendant had significant ties to Vietnam: he maintained contact with the Vietnamese Ambassador in Paris, had not established a permanent residence in the United States, and could avoid extradition if he fled to Vietnam. Despite this, he was entitled to bail pending appeal. Justice Brennan explained:

> But if [applicant's ties to Vietnam] suggest opportunities for flight, they hardly establish any inclination on the part of applicant to flee. And other evidence supports the inference that he is not so inclined. Applicant faithfully complied with the terms of his pretrial bail and affirmed at sentencing his faith in his eventual vindication and his intention not to flee if released on bail. He has resided continuously in this country [for nine years], and has extensive ties in the community. He has maintained a close relationship with his sister, a permanent resident of the United States [for nine years]. The equity in his

sister's Los Angeles home constitutes a substantial measure of the security for applicant's bail.

*Id*. at 1329-30; *see also Harris v. United States*, 404 U.S. 1232, 1234 (1971) (no substantial evidence of flight risk where defendant had a job and family in Los Angeles, had lived there for eight years, and had never missed a court appearance while on bail before trial).

Here, the government does not dispute Mr. Chrismas's significant and decades' long ties to Los Angeles. His supporters (many of whom wrote letters to the court) are his family. The notion that Mr. Chrismas would risk never seeing his family again — and his only home for the last sixty years — completely lacks evidentiary support and offers no basis for an inference that he would flee.

Of course, while Mr. Chrismas does not merit increased restrictions, should the Court have any concern over Mr. Chrismas's appearance, it can impose additional conditions it deems appropriate (location monitoring, curfew, home confinement, etc.).

### B. The government's arguments on the substantive appeal issues miss the mark.

With respect to each issue proffered by Mr. Chrismas, the government simply re-argues the merits and re-states this Court's findings. The government does not address the standard of whether Mr. Chrismas raises "fairly debatable" issues that would cause a meaningful result, such as a reversal or a new trial.

Here we have an 80-year-old man who was convicted for an offense that has no model jury instruction in the Ninth Circuit. Moreover, at the government's urging, this Court gave a different jury instruction from the only published model Jury Instruction from the Eleventh Circuit. The parties and the Court grappled with this legal issue for weeks, and the Court acknowledged it was a "good issue for appeal." The standard is lower even than "good issue for appeal." It is "fairly debatable." The Court should consider this a textbook "fairly debatable" issue which — if successful on appeal — would result in a new trial. *See also United States v. Wolffe*, C.D. Cal. Case No. 05-cr-398, Dkt. 762 (after 9th Cir. reversal

and remand on bond pending appeal, Judge Anderson granting bond pending appeal based on an expert "substantial issue").

## IV. CONCLUSION

Mr. Chrismas is 80 years old. If he reports to prison (which has long been documented to accelerate aging), he may not come out alive. His case satisfies the legal standard for bond pending appeal. And everyone — including the government — should want to know that he was afforded a proper appeal.

The Court should therefore grant Mr. Chrismas's motion and permit him to remain released on the same bond conditions already imposed by this Court while he pursues his appeals.

Respectfully submitted,

Dated: February 24, 2025

*/s/ Jennifer L. Williams*

Jennifer L. Williams
Megan A. Maitia
Hayley E. Huntley
Attorneys for Douglas J. Chrismas